## **EXHIBIT C**

**Engagement Agreement**



# KCC AGREEMENT FOR SERVICES

This Agreement is entered into as of the 14th day of June 2022, between First Guaranty Mortgage Corporation (together with its affiliates and subsidiaries, the "Company"),[1] and Kurtzman Carson Consultants LLC (together with its affiliates and subcontractors, "KCC"). In consideration of the premises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**Terms and Conditions**

I.      SERVICES

A.      KCC agrees to provide the Company with consulting services regarding noticing, claims management and reconciliation, plan solicitation, balloting, disbursements and any other services agreed upon by the parties or otherwise required by applicable law, government regulations or court rules or orders.

B.      KCC further agrees to provide (i) computer software support and training in the use of the support software, (ii) KCC's standard reports as well as consulting and programming support for the Company requested reports, (iii) program modifications, (iv) data base modifications, and/or (v) other features and services in accordance with the fees outlined in a pricing schedule provided to the Company (the "KCC Fee Structure").

C.      Without limiting the generality of the foregoing, KCC may, upon request by the Company, (i) provide a communications plan including, but not limited to, preparation of communications materials, dissemination of information and a call center staffed by KCC and/or (ii) provide confidential on-line workspaces or virtual data rooms and publish documents to such workspaces or data rooms (which publication shall not be deemed to violate the confidentiality provisions of this Agreement).

D.      The price listed for each service in the KCC Fee Structure represents a bona fide proposal for such services, which may be accepted in whole or in part.  Services will be provided when requested by the Company or required by applicable law, government regulations or court rules or orders.  Services are mutually exclusive and are deemed delivered and accepted by the Company when provided by KCC.

E.      The Company acknowledges and agrees that KCC will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "Company Parties") with respect to the services being provided under this Agreement.  The parties agree that KCC may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.  The Company agrees and understands that KCC shall not provide the Company or any other party with any legal advice.

---

[1] The term Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in its chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



# KCC AGREEMENT FOR SERVICES

II.      PRICES, CHARGES AND PAYMENT

A.      KCC agrees to charge and the Company agrees to pay KCC for its services at the rates and prices set by KCC that are in effect as of the date of this Agreement and in accordance with the KCC Fee Structure.  KCC's prices are generally adjusted periodically to reflect changes in the business and economic environment and are inclusive of all charges.  KCC reserves the right to reasonably increase its prices, charges and rates; provided, however, that if any such increase exceeds 15%, KCC will give thirty (30) days written notice to the Company.

B.      In addition to fees and charges for services, the Company agrees to pay KCC's reasonable transportation, lodging, and meal expenses incurred in connection with services provided under this Agreement.

C.      In addition to all fees for services and expenses hereunder, the Company shall pay to KCC (i) any fees and charges related to, arising out of, or as a result of any error or omission made by the Company or the Company Parties, as mutually determined by KCC and the Company, and (ii) all taxes that are applicable to this Agreement or that are measured by payments made under this Agreement and are required to be collected by KCC or paid by KCC to a taxing authority.

D.      Where the Company requires services that are unusual or beyond the normal business practices of KCC, or are otherwise not provided for in the KCC Fee Structure, the cost of such services shall be charged to the Company at a competitive rate.

E.      KCC agrees to submit its invoices to the Company monthly and the Company agrees that the amount invoiced is due and payable upon the Company's receipt of the invoice. KCC's invoices will contain reasonably detailed descriptions of charges for both hourly (fees) and non-hourly (expenses) case specific charges. Where total invoice amounts are expected to exceed $10,000 in any single month and KCC reasonably believes it will not be paid, KCC may require advance payment from the Company due and payable upon demand and prior to the performance of services hereunder.  If any amount is unpaid as of thirty (30) days from the receipt of the invoice, the Company further agrees to pay a late charge, calculated as one and one-half percent (1-1/2%) of the total amount unpaid every thirty (30) days.  In the case of a dispute in the invoice amount, the Company shall give written notice to KCC within ten (10) days of receipt of the invoice by the Company.  The undisputed portion of the invoice will remain due and payable immediately upon receipt of the invoice.  Late charges shall not accrue on any amounts in dispute or any amounts unable to be paid due to Court order or applicable law.  Unless otherwise agreed to in writing, the fees for print notice and media publication (including commissions) must be paid at least three (3) days in advance of those fees and expenses being incurred.  Certain fees and charges may need to be adjusted due to availability related to the COVID-19 (novel coronavirus) global health issue.

F.      In the event that the Company files for protection pursuant to chapter 11 of the United States Bankruptcy Code (a "Chapter 11 Filing"), the parties intend that KCC shall be employed pursuant to 28 U.S.C. § 156(c) to the extent possible and otherwise in accordance with applicable Bankruptcy law and that all amounts due under this Agreement shall, to the extent possible, be paid as administrative expenses of the Company's chapter 11 estate.  As soon as practicable following a Chapter 11 Filing (and otherwise in accordance with applicable law and rules and



# KCC AGREEMENT FOR SERVICES

orders of the Bankruptcy Court), the Company shall cause pleadings to be filed with the Bankruptcy Court seeking entry of an order or orders approving this Agreement (the "Retention Order"). The form and substance of the pleadings and the Retention Order shall be reasonably acceptable to KCC. If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, KCC will continue to be paid for its services in accordance with the terms of this Agreement. The parties recognize and agree that if there is a conflict between the terms of this Agreement and the terms of the Retention Order, the terms of the Retention Order shall govern during the chapter 11 or other proceeding.

G.      To the extent permitted by applicable law, KCC shall receive a retainer in the amount of $30,000.00 (the "Retainer") that may be held by KCC as security for the Company's payment obligations under the Agreement. The Retainer is due upon execution of this Agreement. In the event of a Chapter 11 Filing, KCC will first apply the Retainer to all pre-petition invoices, and thereafter, will have the Retainer replenished to the original amount. KCC shall be entitled to hold the Retainer until the termination of the Agreement. Following termination of the Agreement, KCC shall return to the Company any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

## III.    RIGHTS OF OWNERSHIP

A.      The parties understand that the software programs and other materials furnished by KCC pursuant to this Agreement and/or developed during the course of this Agreement by KCC are the sole property of KCC. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation. The Company agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement.

B.      The Company further agrees that any ideas, concepts, know-how or techniques relating to data processing or KCC's performance of its services developed or utilized during the term of this Agreement by KCC shall be the exclusive property of KCC. Fees and expenses paid by the Company do not vest in the Company any rights in such property, it being understood that such property is only being made available for the Company's use during and in connection with the services provided by KCC under this Agreement.

## IV.    NON-SOLICITATION

The Company agrees that neither it nor its subsidiaries or other affiliated companies shall directly or indirectly solicit for employment, employ or otherwise retain employees of KCC during the term of this Agreement and for a period of twelve (12) months after termination of this Agreement unless KCC provides prior written consent to such solicitation or retention.

## V.    CONFIDENTIALITY

Each of KCC and the Company, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency

# KCC AGREEMENT FOR SERVICES

or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information.

## VI.    SUSPENSION OF SERVICE AND TERMINATION

A.    This Agreement shall remain in force until terminated or suspended by either party (i) upon thirty (30) days' written notice to the other party or (ii) immediately upon written notice for Cause (defined herein).  As used herein, the term "Cause" means (i) gross negligence or willful misconduct of KCC that causes serious and material harm to the Company's reorganization under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay KCC invoices for more than sixty (60) days from the date of invoice, or (iii) the accrual of invoices or unpaid services in excess of the retainer held by KCC where KCC reasonably believes it will not be paid.

B.    In the event that this contract is terminated, regardless of the reason for such termination, KCC shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions and KCC shall provide all necessary staff, services and assistance required for an orderly transfer.  The Company agrees to pay for such services in accordance with KCC's then existing prices for such services.  If such termination occurs following entry of the Retention Order, the Company shall immediately seek entry of an order (in form and substance reasonably acceptable to KCC) that discharges KCC from service and responsibility in the Company's bankruptcy case.

C.    Any data, programs, storage media or other materials furnished by the Company to KCC or received by KCC in connection with the services provided under the terms of this Agreement may be retained by KCC until the services provided are paid for, or until this Agreement is terminated with the services paid in full.  The Company shall remain liable for all fees and expenses imposed under this Agreement as a result of data or physical media maintained or stored by KCC.  KCC shall dispose of the data and media in the manner requested by the Company.  The Company agrees to pay KCC for reasonable expenses incurred as a result of the disposition of data or media.  If the Company has not utilized KCC's services under this Agreement for a period of at least ninety (90) days,  KCC may dispose of the data or media, and be reimbursed by the Company for the expense of such disposition, after giving the Company thirty (30) days' notice.  Notwithstanding any term herein to the contrary, following entry of the Retention Order, the disposition of any data or media by KCC shall be in accordance with any applicable instructions from the clerk of the Bankruptcy Court, local Bankruptcy Court rules and orders of the Bankruptcy Court.

## VII.    SYSTEM IMPROVEMENTS

KCC strives to provide continuous improvements in the quality of service to its clients.  KCC, therefore, reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminal and other equipment and the KCC data center serving the Company, so long as any such changes do not materially interfere with ongoing services provided to the Company in connection with the Company's chapter 11 case.

# KCC AGREEMENT FOR SERVICES

VIII.    BANK ACCOUNTS

At the Company's request and subject to Court approval following any chapter 11 filing, KCC may be authorized to establish accounts with financial institutions in the name of and as agent for the Company. To the extent that certain financial products are provided to the Company pursuant to KCC's agreement with financial institutions, KCC may receive compensation from such financial institutions for the services KCC provides pursuant to such agreement.

IX.    LIMITATIONS OF LIABILITY AND INDEMNIFICATION

A.    The Company shall indemnify and hold KCC, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, judgments, liabilities and expenses (including reasonable counsel fees and expenses) (collectively, "Losses") resulting from, arising out of or related to KCC's performance under this Agreement. Such indemnification shall exclude Losses resulting from KCC's gross negligence or willful misconduct. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third-parties against any Indemnified Party. The Company shall notify KCC in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that the Company becomes aware of with respect to the services provided by KCC under this Agreement. The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

B.    Except as provided herein, KCC's liability to the Company or any person making a claim through or under the Company for any Losses of any kind, even if KCC has been advised of the possibility of such Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of KCC, shall be limited to the total amount billed or billable to the Company for the portion of the particular work which gave rise to the alleged Loss. In no event shall KCC be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement. In no event shall KCC's liability to the Company for any Losses, whether direct or indirect, arising out of this Agreement exceed the total amount billed to the Company and actually paid to KCC for the services contemplated under the Agreement; provided, however, that this limitation shall not apply to the Company during any chapter 11 case in which the Company is a debtor.

C.    The Company is responsible for the accuracy of the programs, data and information it or any Company Party submits for processing to KCC and for the output of such information. KCC does not verify information provided by the Company and, with respect to the preparation of schedules and statements, all decisions are at the sole discretion and direction of the Company. The Company reviews and approves all schedules and statements filed on behalf of, or by, the Company; KCC bears no responsibility for the accuracy or contents therein. The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs and data submitted by the Company to KCC.

D.    The Company agrees that except as expressly set forth herein, KCC makes no representations or warranties, express or implied, including, but not limited to, any implied or

# KCC AGREEMENT FOR SERVICES

express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

## X.    FORCE MAJEURE

KCC will not be liable for any delay or failure in performance when such delay or failure arises from circumstances beyond its reasonable control, including without limitation acts of God, acts of government in its sovereign or contractual capacity, acts of public enemy or terrorists, acts of civil or military authority, war, riots, civil strife, terrorism, blockades, sabotage, rationing, embargoes, epidemics, pandemics, outbreaks of infectious diseases or any other public health crises, earthquakes, fire, flood, other natural disaster, quarantine or any other employee restrictions, power shortages or failures, utility or communication failure or delays, labor disputes, strikes, or shortages, supply shortages, equipment failures, or software malfunctions.

## XI.    INDEPENDENT CONTRACTORS

The Company and KCC are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

## XII.    NOTICES

All notices and requests in connection with this Agreement shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or electronic mail or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth below:

| | |
|---|---|
| Kurtzman Carson Consultants LLC | First Guaranty Mortgage Corporation |
| 222 N. Pacific Coast Highway, 3rd Floor | 5800 Tennyson Parkway, Ste. 450 |
| El Segundo, CA  90245 | Plano, TX 75024 |
| Attn:  Drake D. Foster | Attn: General Counsel |
| Tel: (310) 823-9000 | Tel: 469-592-7239 |
| Fax: (310) 823-9133 | Fax: N/A |
| E-Mail: dfoster@kccllc.com | E-Mail: darien.oien@fgmc.com |

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

## XIII.    APPLICABLE LAW

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of California.

## XIV.    ENTIRE AGREEMENT/ MODIFICATIONS

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement



# KCC AGREEMENT FOR SERVICES

between the parties, which supersedes and merges all prior proposals, understandings, other agreements, and communications oral and written between the parties relating to the subject matter of this Agreement.  The Company represents that it has the authority to enter into this Agreement, and the Agreement is non-dischargeable under any applicable statute or law.  If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.  This Agreement may be modified only by a written instrument duly executed by an authorized representative of the Company and an officer of KCC.

## XV.    COUNTERPARTS; EFFECTIVENESS

This Agreement may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties, which delivery may be made by exchange of copies of the signature page by facsimile or electronic mail.

## XVI.    ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned without written consent by KCC to a wholly-owned subsidiary or affiliate of KCC.

## XVII.    ATTORNEYS' FEES

In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorneys' fees, court costs, and all other related expenses, which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.

[SIGNATURE PAGE FOLLOWS]

 KCC

## KCC AGREEMENT FOR SERVICES

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the first date mentioned above.

Kurtzman Carson Consultants LLC

BY: Evan Gershbein          DATE: 6/14/22
TITLE:  EVP, Corporate Restructuring Services

First Guaranty Mortgage Corporation

BY: Darien Oien          DATE: June 14, 2022
TITLE: Chief Legal Officer and General Counsel

8



# FEE STRUCTURE

## Consulting Services & Rates[1]

| Position | Hourly Rate |
|---|---|
| *Analyst* | *$25.50 - $42.50* |

The Analyst processes incoming mail, including proofs of claim, ballots, creditor correspondence and returned mail. Also assists with the generation of mailing services.

| *Technology/Programming Consultant[2]* | *$29.75 - $80.75* |
|---|---|

The Technology/Programming Consultant assists with complex system requests, including unique claim/ballot reporting and custom website updates.

| *Consultant/Senior Consultant/Director* | *$55.25 - $165.75* |
|---|---|

The Consultant is the day-to-day contact for mailings, including the preparation and filing of affidavits of service (a critical due process component). He/she also responds to creditor and counsel inquiries, maintains the public access website, identifies actionable pleadings (i.e., claims objections, notices of transfer, withdrawals, etc.) and updates the official claims register.  KCC's Consultants average over six years of experience.

The Senior Consultant manages the various data collection processes required by the Chapter 11 process. This includes, among other things, compiling the creditor matrix and Schedules/SOFAs (and generating drafts of same for counsel and advisors), reviewing and processing claims, overseeing contract review, overseeing all mailings and generating custom claim and ballot reports. KCC's Senior Consultants average over seven years of experience.

The Director is the primary contact for the company, counsel and other professionals and oversees and supports the entirety of an engagement. KCC's Directors average over twelve years of experience and are generally former practitioners.

| *Securities/Solicitation Consultant* | *$174.25* |
|---|---|

The Securities Director/Solicitation Consultant is the day-to-day contact and acts as advisor on transactions including balloting with treatment election, rights offers, exchange offers and complex plan distributions. This position handles service of related materials to banks, brokers and agents and manages tabulation and audit processes, preparing detailed reporting of results.  In addition, the Solicitation Consultant provides support on all voting, tabulation, Schedule and SOFA services and other additional complex consulting tasks.

| *Securities Director/Solicitation Lead* | *$182.75* |
|---|---|

The Solicitation Lead/Securities Director oversees all activities of the group and provides counsel with respect to solicitation and noticing events ensuring that processes employed are effective and practical for securities depositories, bank, brokers, nominees and their agents. In addition, the Solicitation Lead provides counsel on all voting, tabulation, Schedule and SOFA services and other additional complex consulting tasks.

| *Weekend, holidays and overtime* | *Waived* |
|---|---|

---

[1] Please note that additional professional services not covered by this proposal will be charged at hourly rates, including any outsourced services performed under our supervision and control. Certain fees and charges may need to be adjusted due to availability related to the COVID-19 (novel coronavirus) global health issue.

[2] Certain technology development fees may be applicable.



FEE STRUCTURE

### Printing Services & Noticing Services

| | |
|---|---|
| Printing | $0.09 per image (volume discounts apply) |
| Document folding and inserting | Waived |
| Envelopes | Varies by size |
| E-mail noticing | Waived[3] |
| Fax noticing | $0.08 per page |
| Public Securities Events | Varies by Event |
| Claim Acknowledgement Card | Waived |
| Insert creditor information into customized documents | Waived |
| Newspaper and legal notice publishing | Quote prior to publishing |

### Claims Administration & Management Expenses

| | |
|---|---|
| License fee and data storage | $0.10 per record per month |
| Database and system access (unlimited users) | Waived |
| Custom client reports | Waived |
| Access to KCC CaseView (secure, password protected) | Waived |

- Proprietary, secured, password protected portal for unlimited users
- Comprehensive case data, including extensive real time analytics on claim, solicitation and processing information
- Functionality to run or request customized reports summarizing case analytics

### KCC eServices

| | |
|---|---|
| Case website set up & hosting | Waived |
| Automated updates of case docket and claims register | Waived |
| Online claims filing (ePOC) | Waived |

### Document Management/Imaging

| | |
|---|---|
| Electronic imaging (scanning & bar coding) | $0.10 per imaged page |
| Virtual Data Room | Quote prior to VDR set-up |
| CD-ROMS (mass document storage) | Varies upon requirements |

---

[3] A set-up fee for email services larger than 100 parties may apply. This set-up fee varies depending on the total number of parties.



FEE STRUCTURE

### Call Center Support Services

| | |
|---|---|
| Case-specific voice-mail box for creditors | Waived |
| Interactive Voice Response ("IVR") | Set-up and per minute fee waived |
| Monthly maintenance charge | Waived |
| Management of Call Center | Standard hourly rates |

### Disbursements

| | |
|---|---|
| Check issuance | Quote prior to printing |
| W-9 mailing and maintenance of TIN database | See hourly rates and noticing charges |