**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| FIRST GUARANTY MORTGAGE CORPORATION, *et al.*,[1] | Case No. 22-10584 |
|  | (Joint Administration Requested) |
| Debtors. |  |

**MOTION OF THE DEBTORS FOR
ENTRY OF ORDER (I) AUTHORIZING THE DEBTORS TO CONTINUE
(A) INSURANCE PROGRAMS AND (B) PREPETITION SURETY BONDS,
AND PAY OBLIGATIONS ARISING THEREUNDER, AND (II) RELATED RELIEF**

First Guaranty Mortgage Corporation ("FGMC") and the above-referenced affiliated debtors and debtors in possession (the "Debtors") under chapter 11 of title 11 of the United States Code, §§ 101 *et seq.* (the "Bankruptcy Code"), in these chapter 11 cases (the "Chapter 11 Cases"), by and through undersigned counsel, hereby move (the "Motion") for entry of an order (substantially in the form attached hereto as **Exhibit A**, the "Order") (i) authorizing them to continue their existing insurance policies and surety bond program and pay all obligations arising thereunder, including under an insurance premium finance agreement and (ii) granting related relief.

In further support of the Motion, the Debtors respectfully state as follows:

### I.     JURISDICTION AND VENUE

1.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1(f) of the Local Rules of

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  First Guaranty Mortgage Corporation (9575); and Maverick II Holdings, LLC (5621).  The Debtors' mailing address is 5800 Tennyson Parkway, Suite 450, Plano, TX 75024.

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory predicates for the relief requested herein are Bankruptcy Code section 105(a), Bankruptcy Rule 1015(b), and Local Rule 1015-1.

## II.     BACKGROUND

A. General Background

4.     On the date hereof (the "Petition Date"), the Debtors each commenced voluntary cases for relief under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed in the chapter 11 cases.

5.     Prior to the Petition Date, FGMC was a full service, non-bank mortgage lender, offering a full suite of residential mortgage options tailored to borrowers' different financial situations.  It was one of the leading independent mortgage companies in the United States that originated residential mortgages through a national platform.  As described in more detail in the First Day Declaration, FGMC's business included the origination, purchase, service, sale and/or securitization of residential real estate mortgage loans.  However, just prior to the Petition Date, as a result of an extreme and unanticipated liquidity crisis and resultant inability to obtain additional capital, FGMC ceased all of its mortgage loan origination activity and separated nearly 80% of its workforce.  The Debtors commenced these Chapter 11 Cases to evaluate their options, accommodate their customers, and maximize and preserve value for all stakeholders.

6.      Additional information regarding the Debtors, including their business and the events leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Aaron Samples in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), filed concurrently herewith.

B.      The Debtors' Insurance Policies and Insurance Premium Financing

7.      The Debtors maintain various insurance policies providing coverage for, among other things, the Debtors' property, general liability, workers' compensation, cyber liability, automobile liability, employers' liability, umbrella coverage, mortgage bankers' bonds, mortgage bankers' professional liability, directors and officers coverage and excess liability (collectively the "Insurance Policies"), which the Debtors have obtained through third-party insurance carriers.  A list of the Insurance Policies and their corresponding premium amounts calculated on an annualized basis, are attached hereto as **Exhibit B**.[2] The premium amounts for the Insurance Policies (the "Insurance Premiums") are determined annually and are due in their entirety at policy inception or renewal.  The Debtors' aggregate annual Insurance Premiums under the Insurance Policies total approximately $880,000.

8.      The Insurance Premiums have been financed through AFCO Credit Corporation (the "Premium Financier") through October, 2022.  The monthly financing payment amount to the Premium Financier is approximately $75,000 per month and among the potential remedies available to the Premium Financier for non-payment is the ability to cancel the Insurance Policies and seek a refund of the Insurance Premiums it financed.  As of the Petition Date, the Debtors have made all monthly financing payments and believe that they have satisfied all of their obligations to the Premium Financier (the "Premium Financing Obligations"), but out of an abundance of caution, seek authority to satisfy any outstanding Premium Financing Obligations.

9.      The Debtors make such payments indirectly to the insurance carriers through their insurance broker, Lockton (the "Broker").  The Debtors employ the Broker to assist them with the

---

[2] The Debtors believe that **Exhibit B** is a complete list of the Insurance Policies.  However, to the extent that any policy has been omitted or the Debtors enter into new or replacement policies, the Debtors request that the relief sought herein apply to such policies as well.

procurement and management of the Insurance Policies.  The Broker receives compensation from the Debtors in the form of a commission fee in addition to the Insurance Premiums paid by the Debtors (the "Broker's Fees").  The employment of the Broker allows the Debtors to obtain and manage the Insurance Policies in an efficient manner and to realize considerable savings in the procurement of such policies.  As of the Petition Date, the Debtors do not believe that there are any prepetition Broker's Fees owed, but out of an abundance of caution, to the extent that any Broker's Fees may be attributed to the prepetition period, the Debtors seek authority to pay any outstanding amounts incurred prepetition.

10.     Under the Insurance Policies, the Debtors may be required to pay various deductibles, retention amounts, and administrative fees (together with the Insurance Premiums and Broker's Fees, the "Insurance Obligations"), depending upon the type of policy and claim involved.  As of the Petition Date, the Debtors to not believe that are any prepetition Insurance Obligations owed, but out of an abundance of caution seek authority to satisfy any such obligations, up to a maximum amount of $100,000.

11.     The foregoing are referred to collectively as the Debtors' Insurance Programs.

C.     The Debtors' Surety Bond Program

12.     In the ordinary course of business, the Debtors are required to provide surety bonds to certain governmental units or other public agencies to secured the Debtors' payment or performance of certain obligations (each a "Surety Bond" and collectively the "Surety Bond Program").  There may include surety bonds required by state agencies to maintain state mortgage lender, broker, and originator licenses.[3]

13.     To continue their business operations during the Chapter 11 process, the Debtors must be able to provide financial assurance to state governments, government sponsored enterprise, regulatory agencies and other third parties.  This requires the Debtors to maintain the

---

[3] Most states also require individuals to post a bond in order to obtain a notary license,  The Debtors' utilize in-house notaries to notarize a large volume of documents, including mortgage loans.  Although the notaries utilized by the Debtors are responsible for posting and maintaining their own notary bonds, the Debtors may reimburse notaries for expenses incurred in connection therewith.

existing Surety Bond Program, including satisfying applicable obligations thereunder, renewing, executing agreements and related matters.  Failing to provide, maintain or timely replace Surety Bonds could prevent the Debtors from performing essential operations.

14.     The Debtors maintain approximately 194 surety bonds, totaling approximately $38 million.  Premiums are generally determined annually and are paid by the Debtors when a bond is issued or renewed (the "Surety Bond Premiums").  The Debtors pay approximately $290,000 annually in Surety Bond Premiums.  The Debtors make such payments indirectly to the surety bond issuer through the Broker.  In connection with the Surety Bond Program, the Broker is compensated through commissions from the surety bond issuer.

15.     As a condition to issuing the Surety Bonds, Liberty Mutual Insurance Company as the surety bond issuer requires the Debtors to enter into an indemnity agreement.  The terms of such agreement require the applicable Debtor to indemnify the surety bond issuer in the event that issuer is required to pay or perform under any of the Surety Bonds it has issued.

16.     A schedule of the outstanding Surety Bonds is attached as **Exhibit C**.[4]  As of the Petition Date, approximately $9,500 of prepetition invoices are outstanding on account of the Surety Bond Program.  The Debtors seek authority to satisfy these obligations, and any other outstanding prepetition amounts related to the Surety Bond Program, following the Petition Date (collectively, the "Surety Bond Obligations").

### III.     RELIEF REQUESTED

17.     The Debtors seeks authority to pay and perform their Insurance Obligations, Premium Financing Obligations and Surety Bond Obligations whether arising pre-petition or post-petition in the ordinary course of business consistent with past practice and to continue and as applicable, renew their Insurance Policies and related premium financing arrangements and their Surety Bond Program.

---

[4] The Debtors believe that **Exhibit C** is a complete list of the Surety Bonds.  However, to the extent that any Surety Bond has been omitted, or the Debtors obtain new Surety Bonds, the Debtors request that the relief sought herein applies to such Surety Bonds as well.

18.     Nothing in the Order or this Motion is intended or should be construed as (a) an admission as to the validity or priority of any claim against the Debtors, (b) a waiver of the Debtors' rights to dispute any claim, including the validity or priority thereof, or (c) an approval, assumption, or reaffirmation of any agreement, contract, or lease whether under section 365(a) of the Bankruptcy Code or otherwise. Likewise, any payment made pursuant to the Order is not intended and should not be construed as an admission as to the validity or priority of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## IV.      <u>BASIS FOR RELIEF</u>

19.     Section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C). In addition, in many instances, the coverage provided under the Insurance Policies is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the operating guidelines issued by the Office of the United States Trustee for Region 3 (the "<u>U.S. Trustee Guidelines</u>"). Accordingly, the Debtors believe it is essential to their estates, and consistent with the Bankruptcy Code and the U.S. Trustee Guidelines, that they continue to satisfy all Insurance Obligations, Premium Financing Obligations and Surety Bond Obligations related to the Insurance Policies and related financing agreements, and the Surety Bond Program and have the authority to supplement, amend, extend, renew, or replace their Insurance Policies and Surety Bonds as needed, in their judgment, without further order of the Court.

20.     Under section 363(b) of the Bankruptcy Code, a debtor-in-possession "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate[.]" 11 U.S.C. § 363(b)(1). Section 363(c) of the Bankruptcy Code authorizes a debtor-in-possession to "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and . . . use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). Maintenance of

US_ACTIVE\121725837\V-10

their Insurance Policies and insurance financing programs, and Surety Bond Program, including payment of the prepetition and postpetition Insurance Obligations, renewing the Insurance Policies and Surety Bonds, and entering into new insurance arrangements are within the ordinary course of the Debtors' business.

21.     Further, even if the continuation and/or renewal of the Insurance Policies and Surety Bonds was not considered to be ordinary course, under applicable case law, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See, e.g., Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991); *Stephens Indus. Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Montgomery Ward Holding Corp.,* 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtors to show that a sound business purpose justifies such actions."); *In re Del. & Hudson R.R. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (stating that courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b) of the Bankruptcy Code).

22.     Moreover, section 105 of the Bankruptcy Code and the "necessity of payment" doctrine further authorize payment of pre-petition claims of those parties whose goods or services are critical to reorganization of the debtor's operations. *See, e.g., In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) ("[I]f payment of a claim which arose prior to reorganization is essential to the continued operation of the railroad during reorganization, payment may be authorized even if it is made out of corpus."); *In re Boston & Maine Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtor's continued operation); *In re Columbia Gas Sys.*, 171 B.R. 189, 192 (Bankr. D. Del. 1994) (stating that the necessity of payment doctrine is applicable where "payment is essential to continued operation of the business"); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999) (holding that section 105(a)

"provides a statutory basis for the payment of prepetition claims" under the doctrine of necessity and noting that the Supreme Court, the United States Court of Appeals for the Third Circuit, and the United States District Court for the District of Delaware all accept the authority of the bankruptcy court "to authorize payment of prepetition claims when such payment is necessary for the debtor's survival during chapter 11"). The rationale for the "doctrine of necessity" is consistent with the paramount goal of chapter 11: "facilitating the continued operation and rehabilitation of the debtor." *In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989). Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, this Court is empowered to grant the relief requested herein.

23.     The nature of the Debtors' businesses and the extent of their operations make it essential for the Debtors to maintain their Insurance Programs on an ongoing and uninterrupted basis. The nonpayment of any premiums, deductibles, or related fees under the Insurance Programs could result in one or more of the insurance carriers terminating the Debtors' existing policies, declining to renew the Debtors' policies, or refusing to enter into new insurance agreements with the Debtors in the future. If the Insurance Programs are allowed to lapse without renewal, the Debtors could be exposed to substantial liability for damages resulting to persons and property of the Debtors and others, which could negatively impact the value of the Debtors' estates. It could also impact their state and other licensures.  Furthermore, the Debtors would then be required to obtain replacement policies on an expedited basis at what would likely be a significantly higher cost. Accordingly, the Debtors must meet all of the Obligations with respect to the Insurance Programs and Surety Bond Programs.

24.     Indeed, courts in this district have routinely granted relief similar to that requested herein.  *See, e.g.*, *In re CarbonLite Holdings LLC*, Case No. 21-10527 (JTD) (Bankr. D. Del. Apr. 7, 2021); *In re Advantage Holdco*, Case No. 20-11259 (JTD) (Bankr. D. Del. June 30, 2020); *In re Hertz Corporation*, Case No. 20-11218 (MFW) (Bankr. D. Del. June 25, 2020); *In re Exide Holdings, Inc.*, Case No. 20-11157 (CSS) (Bankr. D. Del. June 18, 2020); *In re Rentpath Holdings, Inc.*, Case No. 20-10312 (BLS) (Bankr. D. Del. Mar. 10, 2020); *In re Melinta Therapeutics, Inc.*,

Case No. 19-12748 (LSS) (Bankr. D. Del. Feb. 7, 2020); *In re J & M Sales Inc.*, Case No. 18-11801 (LSS) (Bankr. D. Del. Aug. 27, 2018); *In re Samuels Jewelers, Inc.*, Case No. 18-11818 (KJC) (Bankr. D. Del. Aug. 8, 2018).

25.     Accordingly, by this Motion, the Debtors seek authority pursuant to sections 363(b) and 105(a) of the Bankruptcy Code to honor the obligations set forth above and to continue their Insurance Programs and Surety Bond Programs without interruption, as such programs were in effect as of the Petition Date.[5]

## V.     SATISFACTION OF BANKRUPTCY RULE 6003

26.     The Debtors believe that they are entitled to immediate authorization for the relief contemplated by this Motion. Pursuant to Bankruptcy Rule 6003, "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001." As described above, continuing insurance coverage during these Chapter 11 Cases is necessary to the continuation of the Debtors' business operations. Failure to receive such authorization and other relief during the first 21 days of these Chapter 11 Cases would severely disrupt the Debtors' business operations at this critical juncture, and add needless costs to the administration of these cases. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## VI.     WAIVER OF BANKRUPTCY RULES 6004(A) AND (H)

27.     The Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

---

[5] Nothing contained in this Motion or any actions taken pursuant to such relief requested is intended to or should be construed as (a) an admission as to the validity of any prepetition claim against the Debtors, (b) a waiver of the Debtors' or any other party in interest's right to dispute any prepetition claim on any grounds, or (c) a promise or requirement to pay any prepetition claim.

## VII.    <u>NOTICE</u>

Notice of this Motion shall be given to the following parties: (a) the Office of the United States Trustee; (b) counsel for the Debtors' prepetition and postpetition secured lenders; (c) AFCO Credit Corporation; (d) the Broker; (e) Liberty Mutual Insurance Company; and (f) the Debtors' thirty largest unsecured creditors on a consolidated basis.  As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## VIII.    <u>CONCLUSION</u>

WHEREFORE, the Debtors respectfully request entry of an order (i) granting the relief requested herein; and (ii) granting the Debtors such other and further relief as the Court deems just and proper.

Dated: June 30, 2022                    **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Mary F. Caloway (DE Bar No. 3059)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
        tcairns@pszjlaw.com
        mcaloway@pszjlaw.com

-and -

**DENTONS US LLP**

Samuel R. Maizel
Tania M. Moyron
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Email:   samuel.maizel@dentons.com
             tania.moyron@dentons.com

*Proposed Counsel for Debtors and Debtors in Possession*