**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FIRST GUARANTY MORTGAGE<br>CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-10584<br><br>(Joint Administration Requested) |

**MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING DEBTORS TO PAY PREPETITION CLAIMS OF CRITICAL VENDORS AND (B) GRANTING RELATED RELIEF**

First Guaranty Mortgage Corporation ("FGMC") and the above-referenced affiliated debtors and debtors in possession (the "Debtors") under chapter 11 of title 11 of the United States Code, §§ 101 *et seq.* (the "Bankruptcy Code"), in these chapter 11 cases (the "Chapter 11 Cases"), by and through undersigned counsel, hereby move (the "Motion"), pursuant to §§ 105(a), 363, 503, and 507, Bankruptcy Rules 2002, 6003, 6004, and 9014 for entry of an interim order (substantially in the form attached hereto as **Exhibit A**, the "Interim Order") and a final order (substantially in the form attached hereto as **Exhibit B**, the "Final Order") (i) approving payments to critical vendors and entry into related agreements as set forth in this Motion, with the final program being up to $800,000 with $275,000 of that being interim authority, (ii) scheduling an interim hearing to approve the proposed Interim Order and a final hearing with respect to the relief requested herein (the "Final Hearing") and (iii) granting related relief.

In further support of the Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: First Guaranty Mortgage Corporation (9575); and Maverick II Holdings, LLC (5621). The Debtors' mailing address is 5800 Tennyson Parkway, Suite 450, Plano, TX 75024.

## I. JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are Bankruptcy Code sections 105(a), 363, 503, and 507, Bankruptcy Rules 2002, 6003, 6004, and 9014, and Local Rule 9013-1.

## II. BACKGROUND

4. On the date hereof (the "Petition Date"), the Debtors each commenced voluntary cases for relief under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed in the chapter 11 cases.

5. Prior to the Petition Date, FGMC was a full service, non-bank mortgage lender, offering a full suite of residential mortgage options tailored to borrowers' different financial

situations. It was one of the leading independent mortgage companies in the United States that originated residential mortgages through a national platform. As described in more detail in the First Day Declaration, FGMC's business included the origination, purchase, service, sale and/or securitization of residential real estate mortgage loans. However, just prior to the Petition Date, as a result of an extreme and unanticipated liquidity crisis and resultant inability to obtain additional capital, FGMC ceased all of its mortgage loan origination activity and separated nearly 80% of its workforce. The Debtors commenced these Chapter 11 Cases to evaluate their options, accommodate their customers, and maximize and preserve value for all stakeholders.

6. Additional information regarding the Debtors, including their business and the events leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Aaron Samples in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), filed concurrently herewith.

7. The Debtors' ability to timely close loans and sell their mortgage loans is key to maximizing the value of their assets and creditor recoveries.

8. The Debtors have carefully analyzed their trade vendors, service providers, and software programs and determined that certain vendors and service providers ("Critical Vendors") are key to (i) maintaining their existing computer and operating systems, (ii) documenting and closing loans and (iii) selling loans into the secondary market.

### III.     RELIEF REQUESTED

9. By this Motion, the Debtors seek the entry of interim and final orders, pursuant to sections 105(a) and 363 of the Bankruptcy Code, (i) authorizing the Debtors to pay any prepetition amounts owing to the Critical Vendors in the ordinary course of business up to the Interim Critical Vendor Cap and, if approved on a final basis, the Critical Vendor Cap; (ii) approving of the form

of agreement which may be utilized by the Debtors, substantially in the form attached to the Proposed Orders (as defined herein) as **Exhibit 1** (the "Vendor Agreement"); and (iii) granting related relief.

10. Proposed forms of Interim Order and Final Order granting the relief requested herein are annexed hereto as **Exhibit A** and **Exhibit B** (the "Proposed Orders").

### A. The Debtors' Critical Vendors

11. The Debtors' business relies on continuing access to and relationships with various vendors and service providers. These Critical Vendors include IT support, software providers, third parties assisting with loan closings, third parties assisting with loan sales and certain other critical operational support vendors. Any disruption in the Debtors' access to the provision of these services to the Debtors would have a far-reaching and adverse economic and operational impact on its business.

12. The bulk of the services that the Debtors depend on are provided by a critical network of vendors and service providers that, for the most part, conduct business with the Debtors on an invoice by invoice or purchase order by purchase order basis, and not pursuant to long-term contracts. These vendors typically supply their customers with services and products on trade terms based on their experience with and perceived risk of conducting business with such customers. The Debtors believe that it would be extremely difficult, if not impossible, to replace the Critical Vendors within a reasonable time without severe disruption to the Debtors' businesses. These vendors know the Debtors practices and systems without any learning curve. Such harm would likely far outweigh the cost of payment of the Critical Vendor Claims.

13. It is essential to the success of the Debtors' goals in these Chapter 11 cases that it be able to pay the Critical Vendors to maintain the flow of services to their businesses.

14. The Debtors undertook a process to identify the Critical Vendors using the following criteria: (i) whether certain specifications prevent the Debtors from obtaining a vendor's goods or services from alternative sources within a reasonable timeframe; and (ii) if a vendor is not a sole-source or primary provider of services or products, whether the Debtors can continue to operate in the ordinary course while a replacement vendor is secured. As a result of their critical review and evaluation, the Debtors have identified a narrow subset of vendors as Critical Vendors.

15. The Debtors' loan closings and ultimate loan sales are time sensitive and the Debtors have an established team of vendors and service providers who work with them on these closings.

16. Also included in this subset of Critical Vendors are issuers of certain credit or debit cards (collectively, the "Credit Cards") to the Debtors. While the majority of payments to vendors and service providers are made by checks, the Debtors occasionally use Credit Cards in the ordinary course of their business for certain vendor payments. The Credit Cards are issued by American Express and Texas Capital Bank (Visa). Continued use of the Credit Cards are necessary for the Debtors to continue to pay certain vendors and service providers post-petition and avoid disruption of the their businesses.

17. The Debtors seek permission to pay pre-petition amounts owed on account of the Credit Cards to avoid any interruption in the ability to make disbursements post-petition. The Debtors anticipate that it would be very difficult, and perhaps impossible, to obtain new credit cards within the short time-frame needed to avoid interruptions in their disbursement processes in the event that American Express and Texas Capital Bank terminate the Debtors' Credit Cards. This would leave the Debtors in a position of having to make disbursements exclusively

by check or other forms of electronic payment, when there are some vendors who require payment by credit cards, which is understandable given their ubiquitous nature.

18.     As of the Petition Date, the Debtors will owe amounts to certain Critical Vendors (a) that have been billed and invoiced and/or (b) that have accrued immediately prior to the Petition Date for which they have not yet been invoiced or payment is not yet due. The Debtors anticipate the total amount of Critical Vendor Claims will not exceed $800,000 of which $275,000 is being requested on an interim basis.

19.     Given the importance of the goods and services provided by the Critical Vendors, it is imperative that the Debtors be granted, on an emergency basis, the flexibility and authority to satisfy the prepetition claims of the Critical Vendors up to the Interim Critical Vendor Cap and, if approved on a final basis, the Critical Vendor Cap.

### B.     Conditions to Payment

20.     Subject to the Court's approval, the Debtors intend to pay the Critical Vendor Claims only to the extent necessary to preserve the business as a going concern. To that end, in return for paying the Critical Vendor Claims, the Debtors propose that they be authorized to require that the Critical Vendors provide reasonable terms for the postpetition delivery of goods, and services. Specifically, the Debtors may choose to condition the payment of the Critical Vendor Claims upon the Critical Vendors' agreement to continue supplying goods and services to the Debtors in accordance with terms at least as favorable as those practices and programs (including credit limits, pricing, timing of payments, availability, and other terms) in place 12 months prior to the Petition Date, or such other trade terms that are acceptable to the Debtors in their discretion (the "<u>Customary Trade Terms</u>").

21. In addition, the Debtors request that, regardless of whether a Critical Vendor enters into a Vendor Agreement, if the Critical Vendors accept payment pursuant to the relief requested by this Motion and thereafter do not continue to provide goods or services on Customary Trade Terms, then: (a) the Debtors may then take any and all appropriate steps to cause such Critical Vendors to repay payments made to it on account of its prepetition claim to the extent that such payments exceed the postpetition amounts then owing to such Critical Vendors; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to re-characterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding postpetition balance and such supplier or vendor will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

### IV.    BASIS FOR RELIEF

22. Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business' going-concern value. *See, e.g., In re CoServ, L.L.C*., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *see also In re Just for Feet, Inc*., 242 B.R. 821, 826 (D. Del. 1999) (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Ionosphere Clubs, Inc*., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."); *Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398

(S.D.N.Y. 1983). In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as provided herein.

23. Pursuant to section 363(b) of the Bankruptcy Code, payment of prepetition obligations may be authorized where a sound business purpose exists for doing so. *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification). Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *CoServ*, 273 B.R. at 497.

24. In addition, the Court may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a) codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Under section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's businesses. *See Just for Feet*, 242 B.R. at 825. Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *Ionosphere Clubs*, 98 B.R. at 176.

25. Indeed, the United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981). The Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor. *Id.* (stating courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ

an immediate economic sanction, failing such payment"); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); *Just for Feet*, 242 B.R. at 824–25 (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (same).

26.     This flexible approach is particularly critical where, as here, prepetition creditors are crucial to the preservation of the Debtors' going concern value.  In *In re Structurlite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988), the bankruptcy court recognized that "a bankruptcy court may exercise its equity powers under section 105(a) of the Bankruptcy Code to authorize payment of prepetition claims where such payment is necessary 'to permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately.'" *Id*. (citations omitted).  The court explained that "a per se rule proscribing the payment of prepetition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the [Bankruptcy] Code." *Id*. at 932.

27.     Allowing the Debtors to pay the Critical Vendor Claims, pursuant to all or some of the above-referenced provisions, is especially appropriate where, as here, doing so is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code—preserving going concern value and maximizing the value of property available to satisfy creditors. *See Bank of Am. Nat'l Trust & Savs. Ass'n v. 203 N. LaSalle St. P'Ship*, 526 U.S. 434, 453 (1999).

28.     Indeed, reflecting the recognition that payment of prepetition claims of certain essential suppliers and vendors is, in fact, both critical to a debtor's ability to maximize creditor

recovery— courts in this district regularly grant relief consistent with that which the Debtors are seeking in this Motion. *See, e.g., In re BL Restaurants Holding, LLC*, No. 20-10156 (MWF) (Bankr. D. Del. Feb. 26, 2020) (interim and final orders allowing payments of up to $2 million and $5 million respectively); *In re Hospital Acquisition LLC*, Case No. 19-10998 (BLS) (Bankr. D. Del. May 8, 2019 and May 29, 2019) [Docket Nos. 45, 167] (interim and final orders authorizing payment of up to $1.5 million and $3 million, respectively, on account of claims held by critical vendors); *In re Hexion Holdings LLC*, Case No. 19-10684 (KG) (Bankr. D. Del. Apr. 2, 2019 and May 1, 2019) [Docket Nos. 102, 293] (interim and final orders authorizing payment of up to $27.1 million and $39.5 million, respectively, on account of claims held by critical vendors); *In re VER Techs. Holdco LLC*, Case No. 18-10834 (KG) (Bankr. D. Del. Apr. 6, 2018 and May 4, 2018) [Docket Nos. 69, 220] (interim and final orders authorizing payment of up to $12.7 million and $14 million, respectively, on account of claims held by critical vendors); *In re Claire's Stores, Inc.*, Case No. 18-10584 (MFW) (Bankr. D. Del. Mar. 20, 2018 and Apr. 17, 2018) [Docket Nos. 98, 279] (interim and final orders authorizing payment of up to $7.9 million and $11.7 million, respectively, on account of claims held by critical vendors).

29.     As described above, the Debtors require continued access to their Credit Cards as well as ordinary goods and services from the Critical Vendors in order to ensure the smooth operation of its business. Without that, the Debtors would not be able to continue to operate as a going concern, thereby severely jeopardizing its ongoing efforts in these Chapter 11 Cases. The Debtors therefore urge the Court to authorize the Debtor to satisfy the obligations of the Critical Vendors up to the Interim Critical Vendor Cap and, if approved on a final basis, the Critical Vendor Cap.

### V.     SATISFACTION OF BANKRUPTCY RULE 6003

The Debtors believe that they are entitled to immediate authorization for the relief contemplated by this Motion. Pursuant to Bankruptcy Rule 6003, "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001." As described above, payment of the Critical Vendor Claims during these Chapter 11 Cases is necessary to maintain relationships with the Debtors' Critical Vendors and continue the Debtors' business operations. Failure to receive such authorization and other relief during the first 21 days of these Chapter 11 Cases would severely disrupt the Debtors' business operations at this critical juncture, and add needless costs to the administration of these cases. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### VI.     WAIVER OF BANKRUPTCY RULES 6004(A) AND (H)

The Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### VII.     NOTICE

Notice of this Motion shall be given to the following parties: (a) the Office of the United States Trustee; (b) counsel to the Debtors' prepetition and postpetition secured lenders; and (c) the Debtors' thirty largest unsecured creditors on a consolidated basis. As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies

of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## VIII.  CONCLUSION

WHEREFORE, the Debtors respectfully request entry of an order (i) granting the relief requested herein; and (ii) granting the Debtors such other and further relief as the Court deems just and proper.

Dated: June 30, 2022                **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Mary F. Caloway (DE Bar No. 3059)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
       tcairns@pszjlaw.com
       mcaloway@pszjlaw.com

-and -

**DENTONS US LLP**

Samuel R. Maizel
Tania M. Moyron
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Email:  samuel.maizel@dentons.com
        tania.moyron@dentons.com

*Proposed Counsel for Debtors and Debtors in Possession*