# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FIRST GUARANTY MORTGAGE CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-10584<br><br>(Jointly Administered) |

**MOTION OF THE DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a) AND 366 AND FED. R. BANKR. P. 6003 AND 6004 FOR ENTRY OF INTERIM AND FINAL ORDERS (I) APPROVING DEBTORS' PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT TO UTILITY COMPANIES, (II) ESTABLISHING PROCEDURES FOR RESOLVING OBJECTIONS BY UTILITY COMPANIES, (III) PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE, AND (IV) GRANTING RELATED RELIEF**

First Guaranty Mortgage Corporation ("FGMC") and the above-referenced affiliated debtors and debtors in possession (the "Debtors")[2] under chapter 11 of title 11 of the United States Code, §§ 101 *et seq.* (the "Bankruptcy Code")[3] in these chapter 11 cases (the "Chapter 11 Cases"), by and through the undersigned counsel of record, hereby move (the "Motion"), pursuant to §§ 105(a) and 366 and Bankruptcy Rules 6003 and 6004, for entry of an interim order (substantially in the form attached hereto as **Exhibit A**, the "Interim Order") and a final order (substantially in the form attached hereto as **Exhibit B**, the "Final Order," and together with the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number, are: First Guaranty Mortgage Corporation (9575); and Maverick II Holdings, LLC (5621). The location of the corporate headquarters and the service address for First Guaranty Mortgage Corporation is 5800 Tennyson Parkway, Suite 450, Plano, TX 75024.

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the First Day Declaration (defined below).

[3] All references to "§" or "section" herein are to sections of the Bankruptcy Code. All references to "Bankruptcy Rules" are to provisions of the Federal Rules of Bankruptcy Procedure. All references to "Local Rules" are to provisions of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Delaware (the "Court").

Interim Order, the "Orders"): (i) approving the Debtors' proposed form of adequate assurance of payment to the Utility Companies (as defined below); (ii) establishing procedures for resolving objections by Utility Companies relating to the adequacy of the proposed adequate assurance provided by the Debtors; (iii) prohibiting the Utility Companies from altering, refusing, or discontinuing service to, or discriminating against, the Debtors on the basis of the commencement of these Chapter 11 Cases and/or any outstanding prepetition debts; (iv) scheduling a final hearing; and (v) granting related relief. In support of the Motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.  The Debtors receive essential utility services from several Utility Companies. A list of the Utility Companies and, where available, the Debtors' account number with each Utility Company is attached hereto as **Exhibit C**. By this Motion, the Debtors seek to minimize disruption of utility services to their operations and ensure a smooth transition into chapter 11. Specifically, the Debtors request approval of the form of adequate assurance of payment they will provide to their utility providers, a deposit, and procedures to resolve any dispute that may arise relating to the adequate assurance. The Debtors also request that the Court prohibit their utility providers from discontinuing or otherwise affecting the Debtors' services, subject to compliance with the proposed procedures. These measures will ensure that the Debtors maintain essential utility services to their facilities at this critical juncture in their Chapter 11 Cases, prevent irreparable harm to the Debtors' estates, and, ultimately, provide the Debtors with an opportunity to reorganize or sell their business as a going concern.

2.  In support of this Motion, the Debtors rely upon and refer this Court to the *Declaration of Aaron Samples in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration").

3. Thus, in order to maintain ongoing business operations, it is imperative the Debtors are able to rely on a consistent supply of these services. For these reasons, and as more fully explained below, the Debtors request that this Court grant the relief requested herein.

### I. JURISDICTION AND VENUE

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The statutory bases for the relief requested herein are §§ 105(a) and 366, Bankruptcy Rules 2002, 6003, and 6004, and Local Rule 9013-1.

### II. STATEMENT OF FACTS

**A.  The Chapter 11 Cases**

7. On the date hereof (the "Petition Date"), the Debtors each commenced voluntary cases for relief under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to §§ 1107(a) and 1108. No trustee, examiner, or statutory committee has been appointed in the Chapter 11 Cases.

8.      Prior to the Petition Date, FGMC was a full service, non-bank mortgage lender, offering a full suite of residential mortgage options tailored to borrowers' different financial situations.  It was one of the leading independent mortgage companies in the United States that originated residential mortgages through a national platform.  As described in more detail in the First Day Declaration, FGMC's business included the origination, purchase, service, sale and/or securitization of residential real estate mortgage loans.  However, just prior to the Petition Date, as a result of an extreme and unanticipated liquidity crisis and resultant inability to obtain additional capital, FGMC ceased all of its mortgage loan origination activity and separated nearly 80% of its workforce.  The Debtors commenced these Chapter 11 Cases to evaluate their options, accommodate their customers, and maximize and preserve value for all stakeholders.

9.      Additional information regarding the Debtors, including their business and the events leading to the commencement of these Chapter 11 Cases, is set forth in the First Day Declaration.

### B.    The Debtors' Utility Companies and Utility Services

10.     In the ordinary course of business, the Debtors obtain various essential utility services (collectively, the "Utility Services"), including electricity, water, and network/internet, from a number of utility companies (collectively, the "Utility Companies").  A nonexclusive list of the Utility Companies is attached hereto as **Exhibit C** (the "Utility Services List").

11.     The Debtors rely on the Utility Companies to provide Utility Services in all their locations other than (a) their leased executive suites where no separate utilities are procured, and (b) one location that closed several months ago and has since remained unoccupied.  In locations with Utility Services, the Debtors rely on the Utility Companies to provide necessary support to their employees, vendors, and customers.  Preserving the Utility Services on an uninterrupted basis

4

is essential to the Debtors' ongoing operations, and even a brief alteration or discontinuation of service would likely cause severe disruption to the Debtors' business.

12. The Debtors have a good historical payment record with the Utility Companies. To the best of the Debtors' knowledge, there are no defaults or arrearages of any significance for the Debtors' undisputed invoices for prepetition Utility Services, other than payment interruptions that may be caused by the commencement of these Chapter 11 Cases. Prior to the Petition Date, the Debtors spent an average of approximately $5,020 each month for Utility Services. Recently, including in the last six to eight weeks, the Debtors have also commenced new Utility Services in locations procured in an effort to expand the Company's "Retail Direct" group (the "New Utility Services").[4] Based on historical averages for Utility Services, the Debtors estimate that their cost of Utility Services (including New Utility Services) for the next thirty days will be approximately $6,420.

    **C.    Proposed Adequate Assurance of Payment**

13. The Debtors intend to pay all post-petition obligations owed to the Utility Companies in a timely manner. To provide the Utility Companies with adequate assurance pursuant to § 366, the Debtors propose to deposit cash in an amount equal to two weeks' cost of Utility Services, calculated using the historical average for such payments during the twelve (12) months prior to the Petition Date (the "Utility Deposit")—and for the New Utility Services, the historical average for such payments on account of similar Utility Services— into a newly created, segregated account for the benefit of the Utility Companies (the "Utility Deposit Account"). As

---

[4] As noted in **Exhibit C**, some of these New Utility Services do not yet have an associated account number and/or have not issued previous invoices.

of the Petition Date, the Debtors estimate that the total amount of the Utility Deposit will be approximately $3,210.

14.     The Debtors will transfer funds for the Utility Deposit into the Utility Deposit Account within twenty days after the Petition Date, which the Debtors will hold in the Utility Deposit Account for the benefit of the Utility Companies on the Utility Services List during the pendency of these Chapter 11 Cases.

15.     The Debtors may adjust the Utility Deposit if the Debtors (i) terminate any of the Utility Services provided by a Utility Company, (ii) make other arrangements with certain Utility Companies for adequate assurance of payment, (iii) determine that an entity listed on the Utility Services List is not a utility company as defined by § 366, or (iv) supplement the Utility Services List to include additional Utility Companies.

16.     The Debtors further request that the Utility Deposit be automatically available to the Debtors, without further Court order, upon the earlier of the effective date of a chapter 11 plan and closure of the Chapter 11 Cases.  Additionally, if the Debtors terminate any of the Utility Services provided by a Utility Company, the Debtors request that they be permitted to reduce the Utility Deposit to reflect the termination of that Utility Company.

17.     The Debtors submit that the Utility Deposit, in conjunction with the Debtors' ability to pay for future Utility Services in the ordinary course of business (together, the "<u>Proposed Adequate Assurance</u>"), constitutes sufficient adequate assurance to the Utility Companies in full satisfaction of § 366.

        **D.**     **<u>Proposed Adequate Assurance Procedures</u>**

18.     To balance the right of each Utility Company to evaluate the Proposed Adequate Assurance for itself and the harm to the Debtors' businesses that would result from any interruption

6

US_ACTIVE\121726777\V-5

in services provided by the Utility Companies, the Debtors propose the following adequate assurance procedures (the "Adequate Assurance Procedures") in the event that any Utility Company is not satisfied with the Proposed Adequate Assurance:

    a)    The Debtors will serve a copy of this Motion and the Interim Order on the Utility Companies on the Utility Services List within three (3) business days after entry of the Interim Order.

    b)    Subject to entry of the Interim Order, the Debtors will deposit the Utility Deposit, in the aggregate amount of $3,210, in the Utility Deposit Account within twenty (20) days after the Petition Date.

    c)    The portion of the Utility Deposit attributable to each Utility Company will be returned to the Debtors on the earlier of (i) reconciliation and payment by Debtors of the Utility Company's final invoice in accordance with applicable nonbankruptcy law following the Debtors' termination of Utility Services from such Utility Company and (ii) the earlier of (a) the effective date of any chapter 11 plan confirmed in these Chapter 11 Cases and (b) the closure of these Chapter 11 Cases; provided that there are no outstanding disputes related to post-petition payments due to the affected Utility Companies.

    d)    Any Utility Company desiring additional assurances of payment in the form of deposits, prepayments, or otherwise must serve a request for additional assurance (an "Additional Assurance Request") on the following parties: (i) proposed counsel to the Debtors, (x) Dentons US LLC, 601 South Figueroa Street, Suite 2500, Los Angeles, California 90017-5704, Attn: Samuel R. Maizel (samuel.maizel@dentons.com) and Tania M. Moyron (tania.moyron@dentons.com), and (y) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, Delaware 19801, Attn: Laura Davis Jones (ljones@pszjlaw.com); (ii) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Benjamin A. Hackman (Benjamin.A.Hackman@usdoj.gov); (iii) counsel for the DIP Lenders, (x) Greenberg Traurig, LLP, 77 West Wacker Drive, Suite 3100, Chicago, IL 60601 Attn: Nancy A. Peterman (PetermanN@gtlaw.com), and (y) Greenberg Traurig, LLP, Terminus 200, 3333 Piedmont Road NE, Suite 2500, Atlanta, GA 30305 Attn: Bethani R. Oppenheimer (oppenheimerb@gtlaw.com); and (iv) counsel for any official committee of unsecured creditors appointed in these Chapter 11 Cases.

    e)    The Additional Assurance Request must: (i) be made in writing; (ii) set forth the location(s) for which Utility Services are provided, the account number(s) for those location(s), and the outstanding balance for each account; (iii) explain why the Utility Company believes the Utility Deposit

      is not adequate assurance of payment; and (iv) certify that the Utility Company does not already hold a deposit equal to or greater than two weeks of Utility Services provided by such Utility Company.

f)     An Additional Assurance Request may be made at any time. If a Utility Company does not serve an Additional Assurance Request, the Utility Company will be (i) deemed to have received "satisfactory" adequate assurance of payment in compliance with § 366, and (ii) forbidden from discontinuing, altering, or refusing Utility Services to, or discriminating against, the Debtors on account of any unpaid prepetition charges or requiring additional assurance of payment other than the Proposed Adequate Assurance.

g)     Upon the Debtors' receipt of an Additional Assurance Request, the Debtors will negotiate with the Utility Company to resolve the Utility Company's Additional Assurance Request.

h)     The Debtors may, without further order from the Court, resolve an Additional Assurance Request by mutual agreement with a Utility Company, and the Debtors may, in connection with any such agreement, provide a Utility Company with additional adequate assurance of payment, including cash deposits, payments of any outstanding prepetition balance due to the Utility Company, prepayments, or other forms of security if the Debtors believe that such adequate assurance is reasonable.

i)     If the Debtors and the Utility Company are not able to reach an alternative resolution within thirty (30) days of receipt of the Additional Assurance Request, the Debtors will request a hearing before the Court at the next regularly scheduled omnibus hearing to determine the adequacy of assurance of payment with respect to the particular Utility Company (the "<u>Determination Hearing</u>") pursuant to § 366(c)(3), unless the Debtors and the Utility Company agree in writing to extend the period.

j)     Pending resolution of the Additional Assurance Request and Determination Hearing, the Utility Company making the Additional Assurance Request will be prohibited from altering, refusing, or discontinuing Utility Services to the Debtors on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

k)     Notwithstanding anything in these procedures to the contrary, the Debtors will request a hearing (the "<u>Final Adequate Assurance Hearing</u>") to take place no later than thirty (30) days following the Petition Date to resolve outstanding objections to these procedures in the event any are timely filed.

### E.     Subsequent Modification of Utility Services List

19. Although the Debtors have made an extensive and good faith effort to identify all of the Utility Companies and include them on the Utility Services List, certain Utility Companies may not be listed therein. To the extent the Debtors identify additional Utility Companies, the Debtors shall promptly file amendments to the Utility Services List and serve copies of the Interim or Final Order, as applicable, granting this Motion on any newly identified Utility Companies. In addition, the Debtors will increase the amount of the Utility Deposit to account for any newly identified Utility Companies. The Debtors request that the Orders bind all Utility Companies, regardless of when the Utility Companies are added to the Utility Services List.

### III.     RELIEF REQUESTED

20. Pursuant to §§ 105(a) and 366, and Bankruptcy Rules 6003 and 6004, the Debtors respectfully request the entry of the Orders: (i) approving the Debtors' proposed form of adequate assurance of payment to the Utility Companies; (ii) establishing procedures for resolving objections by Utility Companies relating to the adequacy of the proposed adequate assurance provided by the Debtors; (iii) prohibiting the Utility Companies from altering, refusing, or discontinuing service to, or discriminating against, the Debtors on the basis of the commencement of these Chapter 11 Cases and/or any outstanding prepetition debts; and (iv) granting related relief.

### IV.     BASIS FOR RELIEF

21. The relief requested in this Motion will ensure the continuation of the Debtors' business at this critical juncture as they transition into chapter 11. The relief requested also provides the Utility Companies with a fair and orderly procedure for determining requests for additional adequate assurance, without which the Debtors could be forced to address multiple requests by Utility Companies in a disorganized manner when the Debtors' efforts should be more

productively focused on continuing to operate their businesses for the benefit of all parties in interest.

    **A.**    **The Proposed Adequate Assurance Is More Than Adequate**

22.    Pursuant to § 366, a utility company may not alter, refuse, or discontinue service to, or discriminate against, a debtor *solely* on the basis of the commencement of a chapter 11 case or unpaid prepetition amounts. 11 U.S.C. § 366(a). However, a utility company may alter, refuse, or discontinue service if, during the first twenty days of a bankruptcy case, the debtor does not provide adequate assurance of payment for postpetition utility services; or if, during the first thirty days of a chapter 11 case, the debtor does not provide adequate assurance of payment for postpetition utility services in a form satisfactory the utility company. 11 U.S.C. § 366(b), (c)(2).

23.    The policy underlying § 366 is to protect debtors from utility service cutoffs upon the filing of a bankruptcy case and provide utility companies[5] with adequate assurance that debtors will in fact pay for postpetition services. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 350 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6306; *see also In re Jones*, 369 B.R. 745, 748 (B.A.P. 1st Cir. 2007) ("The purpose of § 366 is 'to prevent the threat of termination from being used to collect pre-petition debts while not forcing the utility to provide services for which it may never be paid.'") (quoting *Begley v. Philadelphia Elec. Co. (In re Begley)*, 760 F.2d 46, 49 (3d Cir. 1985)). As set forth herein, the Proposed Adequate Assurance requested in this Motion is consistent with these policy goals.

---

[5] "Utility" is not defined in the Bankruptcy Code. However, bankruptcy courts have generally limited this to entities that have a "special relationship" with debtors, in that they provide the debtors with an essential service, for which the debtors have a need for continued access. *See, e.g., Darby v. Time Warner Cable, Inc. (In re Darby)*, 470 F.3d 573 (5th Cir. 2006).

24. Section 366(c)(1)(A) defines "assurance of payment" to mean several enumerated forms of security (e.g., a cash deposit, letter of credit, certificate of deposit, surety bond, prepayment of utility consumption, or other mutually agreed upon security), while § 366(c)(1)(B) expressly excludes from such definition an administrative expense priority for a utility's claim. 11 U.S.C. § 366(c). The Bankruptcy Code does not otherwise define what makes an assurance of payment "adequate," thereby placing such determination within the reasonable discretion of the bankruptcy court. *See* 11 U.S.C. §§ 366(b) ("On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment."), 366(c)(3)(A) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2)."); *accord In re Pac. Gas & Elec. Co.*, 271 B.R. 626, 644 (N.D. Cal. 2002) ("The use of the word 'may' in the second sentence [of § 366(b)] clearly contemplates that the decision whether to order security lies within the discretion of the Bankruptcy Court."); *In re Steinebach*, 303 B.R. 634, 641 (Bankr. D. Az. 2004) ("Bankruptcy courts are afforded reasonable discretion in determining what constitutes adequate assurance . . . .") (citation omitted). However, when determining "whether an assurance of payment is adequate," a bankruptcy court may *not* consider three specific factors: (a) whether the debtors had a prepetition deposit; (b) whether the debtors paid their utility bills on time prepetition; or (c) the administrative expense priority afforded utilities postpetition. 11 U.S.C. § 366(c)(3)(B).

25. Nothing in § 366(c), however, precludes a bankruptcy court from considering other factors that could minimize the amount of the deposit, including (without limitation): (a) the right of the utility to terminate service upon nonpayment (*see In re Penn Jersey Corp*., 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987) ("We note, in this regard, . . . that the Court of Appeals has stated . . . that

a utility is well-protected, after establishment of adequate assurance, by its remedy 'to disconnect service as its remedy for non-payment' without 'recourse to the bankruptcy court,' 'even though . . . the debtor is provided with an additional layer of protection arising from any available state utility commission Regulations limiting a utility's termination rights.") (internal citations omitted)); (b) the chapter 11 estate's liquidity (*see In re Agrifos Fertilizer, L.P.*, No. 01-35220-H2-11, 2002 WL 32054779, at *5 (Bankr. S.D. Tex. Nov. 25, 2002) ("If a debtor demonstrates . . . evidence of post-petition liquidity, a deposit may not be necessary[.]") (citation omitted)); and (c) the estate's net worth and ability to pay their postpetition obligations (*see In re Best Prods. Co.*, 203 B.R. 51, 54 (Bankr. E.D. Va. 1996) ("[T]he court should consider the debtor's . . . net worth, and the debtor's present and future ability to pay post-petition obligations.") (citation omitted)).

26. Therefore, although § 366(c)(2) allows a utility company to take action if the debtor fails to provide adequate assurance of payment that the utility company deems "satisfactory," the bankruptcy court is the ultimate arbiter of what is "satisfactory" assurance after taking into consideration all the facts of the case, including the relationship between the debtor and the utility company. *See, e.g.*, *In re Penn. Cent. Transp. Co.*, 467 F.2d 100, 103-04 (3d Cir. 1972) (affirming the bankruptcy court's decision that no utility deposit was necessary where such deposits would "jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already [were] reasonably protected"); *see also Heard v. City Water Board (In re Heard)*, 84 B.R. 454, 459 (Bankr. W.D. Tex. 1987) (holding that because the utility had not had any difficulty with the debtors during 14 years of service, "the utility need[ed] no adequate assurance"). Courts construing § 366(b) have long recognized that adequate assurance of payment does not constitute an absolute guarantee of the debtor's ability to pay. *See, e.g.,.In re Caldor, Inc.—NY*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires the Bankruptcy Court to determine whether the

12

circumstances are sufficient to provide a utility with 'adequate assurance' of payment. The statute does not require an 'absolute guarantee of payment.'") (citation omitted), *aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc.—NY*, 117 F.3d 646 (2d Cir. 1997) ("Caldor II"); *In re New Rochelle Tel. Corp.*, 397 B.R. 633, 639 (Bankr. E.D.N.Y. 2008) ("Adequate assurance, however, is not a guarantee of payment; rather, it is intended to guard against the utility assuming an unreasonable risk of non-payment.") (citation omitted); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002) ("In determining adequate assurance, a bankruptcy court is not required to give a utility company the equivalent of a guaranty of payment . . . .").

27. Thus, there is nothing to prevent a court from deciding, on the facts of the case before it, that the amount required of a debtor to provide adequate assurance of payment to a utility company should be nominal or even zero. *See, e.g.*, *In re Pac-West Telecomm, Inc.*, No. 07-10562 (BLS) (Bankr. D. Del. May 2, 2007) [Docket No. 39] (approving adequate assurance in the form of a one-time supplemental prepayment to each utility company equal to the prorated amount of one week's charges).[6] Indeed, courts consider what is "need[ed] of the utility for assurance, and . . . require that the debtor supply *no more than that*, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Caldor II*, 117 F.3d at 650 (emphasis in original) (quoting *Penn Jersey*, 72 B.R. at 985); *see also Penn Cent.*, 467 F.2d at 103-04; *In re Magnesium Corp. of Am.*, 278 B.R. 698, 714 (Bankr. S.D.N.Y. 2002).

---

[6] Prior to the enactment of § 366(c), courts frequently made parallel rulings pursuant to § 366(b). *See Penn. Cent.*, 467 F.2d at 103-04 (3d Cir. 1972) (affirming the bankruptcy court's decision that no utility deposit was necessary); *Caldor II*, 117 F.3d at 650 ("Even assuming that 'other security' should be interpreted narrowly, we agree with the appellees that a bankruptcy court's authority to 'modify' the level of the 'deposit or other security,' provided for under § 366(b), includes the power to require no 'deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment.'").

28. Here, the Proposed Adequate Assurance is reasonable and satisfies the requirements of § 366. As set forth above, the Debtors fully intend to pay all postpetition obligations owed to the Utility Providers. The Debtors have a good historical payment record with the Utility Companies. To the best of the Debtors' knowledge, there are no material defaults or arrearages of any significance for the Debtors' undisputed invoices for prepetition Utility Services, other than payment interruptions that may be caused by the commencement of these Chapter 11 Cases. Additionally, the Utility Companies are protected through the Utility Deposit that will be held in a segregated account, and are afforded flexibility and an opportunity to be heard through the Adequate Assurance Procedures. Accordingly, the Proposed Adequate Assurance is reasonable and satisfies § 366. Moreover, termination of the Utility Services could result in the Debtors' inability to operate their businesses to the detriment of all stakeholders. *See In re Pilgrim's Pride Corp.*, No. 08-45664 (DML), 2009 WL 7313309, at *2 (Bankr. N.D. Tex. Jan 4, 2009) ("The consequences of an unexpected termination of utility service to [the debtors] could be catastrophic."); *In re Monroe Well Serv., Inc.*, 83 B.R. 317, 319, 322 (Bankr. E.D. Pa. 1988) (noting that without utility service the debtors would "cease operation" and that § 366 "was intended to limit the leverage held by utility companies, not increase it.").

29. Although the Debtors believe that they have a credible argument for a lower deposit than the Utility Deposit proposed herein, they believe that half (1/2) of one (1) month's deposit is more than adequate and should be more than satisfactory under the totality of the facts and circumstances. *See, e.g., Best Prods*, 203 B.R. at 54.[7] This Court has granted similar relief in other cases, including within the last month. *See, e.g.*, *In re Zosano Pharma Corp.*, Case No. 22-

---

[7] The *Best Products* court further permitted the debtor to apply prepetition deposits and prepayments to the postpetition deposits required by the court's ruling. *Id.*, at 54 n.2.

10506 (JKS) [Docket No. 33] (Bankr. D. Del. June 8, 2022); *In re GT Real Estate Holdings, LLC*, Case No. 22-10505 (KBO) [Docket No. 49] (Bankr. D. Del. June 6, 2022); *In re TPC Group Inc., et al.*, Case No. 22-10493 (CTG) [Docket No. 119] (Bankr. D. Del. June 2, 2022); *In re Tect Aerospace Group Holdings, Inc., et al.*, Case No. 21-10670 (KBO) [Docket Nos. 35, 134 ] (Bankr. D. Del. April 7 and May 5, 2021).

### B. The Adequate Assurance Procedures Are Reasonable and Appropriate

30. The proposed Adequate Assurance Procedures are reasonable because they will ensure that the essential Utility Services continue while providing a streamlined process for Utility Companies to challenge the adequacy of the Proposed Adequate Assurance or seek an alternative form of adequate assurance.

31. As explained herein and in the First Day Declaration, continued and uninterrupted utility service is critical to the Debtors' operations and the success of these Chapter 11 Cases. In contrast, pursuant to the Adequate Assurance Procedures proposed herein, the Utility Companies will not be prejudiced by continuing to provide their services to the Debtors postpetition. If a Utility Company does not believe the Proposed Adequate Assurance is "satisfactory," such Utility Company may file an objection or submit an Additional Assurance Request pursuant to the Adequate Assurance Procedures proposed herein.

32. The Court has the power to approve these Adequate Assurance Procedures pursuant to § 105(a), which provides that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). The Adequate Assurance Procedures are necessary and appropriate to carry out the provisions of the Bankruptcy Code, as they will ensure that the Utility Services are continued without prejudicing the Utility Companies.

33. A list of other recent cases in which this Court has previously granted similar relief is set forth in paragraph 29 above.

## V. COMPLIANCE WITH BANKRUPTCY RULE 6003 AND WAIVER BANKRUPTCY RULES 6004(a) AND (h)

34. Lastly, the Debtors request that the Court determine that the relief requested in this Motion complies with Bankruptcy Rule 6003 and that waiver of Bankruptcy Rules 6004(a) and (h) is appropriate.

35. Rule 6003 provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001.

36. The Third Circuit Court of Appeals has interpreted language similar to that used in Bankruptcy Rule 6003 in the context of preliminary injunctions. In that context, irreparable harm has been interpreted as an immediate harm for which money damages cannot provide adequate compensation. *See, e.g., Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 Fed. Appx. 907, 910 (3d Cir. 2007) (*citing Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)). Further, the harm must be shown to be actual and imminent, not speculative or unsubstantiated. *See, e.g., Acierno v. New Castle Cty.*, 40 F.3d 645, 653-55 (3d Cir. 1994).

37. As described in this Motion and the First Day Declaration, the Debtors respectfully submit that the relief requested herein is necessary and appropriate to ensure a smooth transition into chapter 11, to retain essential Utility Services to continue operating in the ordinary course, to normalize and maintain existing relationships with the Debtors' Utility Companies during the turbulent early stages of these bankruptcy cases, and to preserve and maximize value for the benefit

16

of the Debtors' creditors. As set forth herein, the relief requested in this Utilities Motion is essential to those objectives.

38. As a result, the Debtors respectfully submit that they have satisfied the "immediate and irreparable harm" standard of Rule 6003 of the Bankruptcy Rules and seek authority to provide adequate assurance of payment to the Utility Companies in accordance with the procedures proposed herein.

39. The Debtors further seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[an] order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the Debtors submit that granting this Motion is essential to prevent irreparable damage to the Debtors' operations, going-concern values, and their efforts to pursue a sale or restructuring of the businesses.

40. Accordingly, the relief requested herein is appropriate under the circumstances and under Bankruptcy Rules 6003 and 6004(h).

41. Finally, should the Court be inclined to grant the Motion, the Debtors also seek a waiver of the notice requirements under Bankruptcy Rule 6004(a).

## VI. RESERVATION OF RIGHTS

42. Nothing contained herein is intended or shall be construed as (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (c) a waiver of any claim or cause of action which may exist against any creditor or interest holder; or (d) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under § 365 of the Bankruptcy

17
US_ACTIVE\121726777\V-5

Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

43. The Debtors further reserve all rights to: (a) supplement the Utilities Services List if it is determined that any Utility Company has been omitted; (b) challenge the status of any entity listed on the Utilities Services List as a "utility" falling within the scope of § 366; and (c) terminate any Utility Services at any time and to seek an immediate refund of any Utility Deposit without giving effect to any right of setoff or recoupment or claim asserted by a Utility Company against the Debtors.

## VII.    NOTICE

44. The Debtors will serve notice of this Motion on: (i) the Office of the United States Trustee for the District of Delaware; (ii) all alleged secured creditors; (iii) the thirty largest general unsecured creditors appearing on the list filed in accordance with Bankruptcy Rule 1007(d); (iv) the Utility Providers; and (v) any parties requesting special notice. As this motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any Order entered in respect to this Motion as required by Local Rule 9013-1(m).

## VIII.    CONCLUSION

WHEREFORE, the Debtors respectfully request entry of an order (i) granting the relief requested herein; and (ii) granting the Debtors such other and further relief as the Court deems just and proper.

Dated:  June 30, 2022 **PACHULSKI STANG ZIEHL & JONES LLP**

By: /s/ *Laura Davis Jones*
Laura Davis Jones(DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Mary F. Caloway (DE Bar No. 3059)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
       tcairns@pszjlaw.com
       mcaloway@pszjlaw.com

-and -

**DENTONS US LLP**

Samuel R. Maizel
Tania M. Moyron
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Email:  samuel.maizel@dentons.com
        tania.moyron@dentons.com

*Proposed Counsel for Debtors and
Debtors in Possession*