# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FIRST GUARANTY MORTGAGE<br>CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-10584 (CTG)<br><br>(Joint Administration Requested) |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 507, 546, 548, 555, 556, 559, 560 AND 561 (I) AUTHORIZING DEBTORS TO ENTER INTO REPURCHASE AGREEMENT FACILITIES AND RELATED DOCUMENTS; (II) AUTHORIZING DEBTORS TO SELL AND REPURCHASE MORTGAGE LOANS IN THE ORDINARY COURSE OF BUSINESS; (III) GRANTING LIENS AND PROVIDING SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS; (IV) MODIFYING THE AUTOMATIC STAY; (V) SCHEDULING A FINAL HEARING WITH RESPECT TO THE RELIEF REQUESTED HEREIN; AND (VI) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of First Guaranty Mortgage Corporation and its debtor affiliate, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") seeking entry of an interim order (this "Interim Order") and a final order upon terms substantially similar to those contained in this Interim Order (the "Final Order") providing for, among other things, the following relief:

    (i)      authorizing, pursuant to sections 105(a) and 363(b), and, to the extent applicable, section 364(c) of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"):

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number are: First Guaranty Mortgage Corporation (54-1429575); and Maverick II Holdings, LLC (88-1305621). The location of the corporate headquarters and the service address for First Guaranty Mortgage Corporation is 5400 Tennyson Parkway, Suite 450, Plano, TX 75024.

[2]    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

(a)     First Guaranty Mortgage Corporation ("FGMC") to execute, deliver, perform under, and enter into transactions under (1) that certain Master Repurchase Agreement, to be dated on or about the DIP Closing Date (as defined below), in substantially the form attached as Exhibit B to the Motion (as the same may be amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof and hereof, the "DIP Repo Facility Agreement" and, all obligations or liabilities with respect to the DIP Repo Facility Agreement, the "DIP Repo Facility Obligations"), among FGMC, as seller, Barclays Bank PLC, as administrative agent (in such capacity, the "DIP Repo Agent"), and the buyers from time to time party thereto (collectively with the DIP Repo Agent acting on behalf of such buyers, the "DIP Repo Facility Purchasers"), and (2) all other documents related thereto, including the "Program Documents" (as defined in the DIP Repo Facility Agreement) (collectively with the DIP Repo Facility Agreement, the "DIP Repo Facility Documents"), which provide for a maximum committed amount of up to $125 million (the "DIP Repo Facility");[3]

(b)     FGMC to execute deliver, perform under, and enter into transactions under those certain Amended and Restated Master Securities Forward Transaction Agreements to be dated on or about the DIP Closing Date (as the same may be amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof and hereof, the "DIP MSFTAs" and, all obligations or liabilities with respect to the DIP MSFTAs, the "DIP MSFTA Obligations"),[4] between FGMC and the counterparties thereto (the "DIP MSFTA Counterparties"), pursuant to which, from time to time, FGMC and the DIP MSFTA Counterparties will enter into forward transactions for the purchase or sale of mortgage-backed and other asset-backed securities and such other securities as the parties thereto may determine;

(c)     FGMC to execute, deliver, and perform under certain Margin, Setoff and Netting Agreement,[5] to be dated on or about the DIP Closing Date, in substantially the form attached as Exhibit D to the Motion (as the same may

---

[3]   For purposes herein, the "DIP Repo Facility Parties" means (a) the DIP Repo Agent, acting on behalf of any other DIP Repo Facility Purchaser or otherwise acting pursuant to or in connection with the DIP Repo Facility or any DIP Repo Facility Document, and (b) the DIP Repo Facility Purchasers, in each case, in their respective capacities as such.

[4]   By separate motion, the Debtors are seeking permission to file the DIP MSFTAs under seal.

[5]   For purposes herein, the "DIP Netting Parties" means, collectively, (a) the DIP MSFTA Counterparties and (b) the DIP Repo Facility Parties, in each case, in their respective capacities as such and to the extent that they are party to a DIP Netting Agreement.

be amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof and hereof, the "<u>DIP Netting Agreement</u>" and all obligations or liabilities with respect thereto, the "<u>DIP Netting Obligations</u>") with the DIP Repo Agent, the DIP MSFTA Counterparties party thereto from time to time, and the DIP Repo Facility Parties party thereto from time to time, pursuant to which, among other things, FGMC shall grant to the DIP Repo Agent netting and setoff rights with respect to obligations of FGMC arising under the DIP Repo Facility Agreement, the DIP MSFTAs, and any other DIP Repo Documents;[6]

(d)     The Debtors to execute, deliver, and perform under that certain DIP Repo Agent Fee Letter (the "<u>Agent Fee Letter</u>") by and between the Debtors and the DIP Repo Agent, and that certain DIP Master Fee Letter by and between the Debtors, the DIP Repo Agent and the DIP Repo Facility Purchasers (the "<u>Master Fee Letter</u>"[7] and together with the DIP Repo Facility Agreement, the DIP MSFTAs, DIP Netting Agreement, and the Agent Fee Letter, the "<u>DIP Repo Documents</u>");[8] and

(e)     The DIP Repo Documents to contain, among other things, a covenant that requires FGMC to (i) have minimum liquidity on the DIP Closing Date of not less than $20 million, which amount shall be calculated based on unrestricted cash on deposit in an unencumbered account (the "<u>Unrestricted Account</u>") and amounts immediately available for borrowing under the Cash Flow DIP without restriction or subject to the discretion of the Cash Flow DIP Lender (as defined in the Cash Flow DIP Order) and (ii) have minimum liquidity of not less than (A) $[  ] million for the [60] days immediately following the DIP Closing Date and (B) $[  ] million at any point thereafter, which, in each case, shall be calculated based on unrestricted Cash on deposit in the Unrestricted Account and mounts immediately available for borrowing under the Cash Flow DIP without restriction or subject to the discretion of the Cash Flow DIP Lender.

---

[6]     For purposes herein, the "<u>DIP Repo Parties</u>" means (a) the DIP Repo Facility Parties, (b) the DIP MSFTA Counterparties, and (c) the DIP Netting Parties, in each case, in their respective capacities as such.

[7]     By separate motion, the Debtors are seeking permission to file the Agent Fee Letter and Master Fee Letter under seal.

[8]     For purposes herein, (a) "<u>DIP Closing Date</u>" means the date on which the DIP Repo Facility are entered into and become effective, which shall occur on the date that this Interim Order is entered or as soon as practicable thereafter; (b) "<u>DIP Facilities</u>" means, collectively, the DIP Repo Facility, the DIP Netting Facility, and the DIP MSFTAs; and (c) "<u>DIP Repo Obligations</u>" means, collectively, all liabilities or obligations of the Debtors and their respective affiliates under the DIP Repo Documents, including, without limitation, the DIP Repo Facility Obligations, the DIP MSFTA Obligations, the DIP Netting Obligations, and obligations under the Agent Fee Letter and Master Fee Letter.

(ii)    authorizing, pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code and the terms of the DIP Repo Facility, the DIP Repo Purchasers to purchase the B2 FIE Financed Loans (as defined below) and refinance that portion of the Prepetition Secured Note Outstanding Amount (as defined below) that was used by FGMC to fund mortgage loan originations between June 8, 2022 and the Petition Date;

(iii)    authorizing, in each case in the ordinary course of business pursuant to sections 105(a), 363(c)(1) and 363(f) of the Bankruptcy Code:

    (a)    FGMC to sell and repurchase mortgage loans and related assets pursuant to the DIP Repo Facility Documents; and

    (b)    FGMC to enter into forward transactions for the purchase or sale of mortgage backed and other asset backed securities pursuant to the DIP MSFTAs.

(iv)    granting, subject to the priorities identified herein:

    (a)    to the DIP Repo Agent, superpriority administrative expense claims pursuant to sections 364(c)(1), 503(b), and 507(b) of the Bankruptcy Code against (I) FGMC to secure FGMC's DIP Repo Obligations, which shall be senior to all other administrative expense or other claims and any other superpriority claims that may be granted in these Chapter 11 Cases (the "FGMC Superpriority Claim"), and (II) Maverick II Holdings, LLC ("Maverick II"), as guarantor of FGMC's DIP Repo Obligations, with such superpriority claim against Maverick II to be senior to all other administrative expense or other claims and any other superpriority claims that may be granted in these Chapter 11 Cases, other than the superpriority claim granted to the Cash Flow DIP Lender (as defined in the Cash Flow DIP Order), and subject in all cases to the Carve-Out (as defined in the Cash Flow DIP Order) at Maverick II (the "Maverick II Superpriority Claim" and together with the FGMC Superpriority Claim, the "DIP Superpriority Claims"); and

    (b)    to the DIP Repo Agent, on behalf of the DIP Repo Facility Parties, a "backup" first-priority lien and security interest, pursuant to section 364(c)(2) of the Bankruptcy Code, on the DIP Repo Facility Backup Collateral, to secure the obligations of FGMC under the DIP Repo Facility Documents;

    (c)    to the DIP MSFTA Counterparties, (1) a first-priority lien and security interest, pursuant to section 364(c)(2) of the Bankruptcy Code, on the DIP MSFTA Collateral (as defined below) to secure the obligations of FGMC under the DIP MSFTAs, and (2) superpriority claims pursuant to sections 364(c)(1), 503(b), and 507(b) of the Bankruptcy Code against FGMC and

4

Maverick II to secure the obligations of FGMC under the DIP MSFTAs, *pari passu* with the DIP Repo Superpriority Claims (the "DIP MSFTA Superpriority Claims");

(d)     to the DIP Repo Agent, on behalf of the DIP Netting Parties, a first-priority lien and security interest, pursuant to section 364(c)(2) of the Bankruptcy Code, on the DIP Netting Collateral (as defined below) to secure the obligations of FGMC under the DIP Netting Agreement, *pari passu* with the DIP Repo Superpriority Claims and the DIP MSFTA Superpriority Claims (the "DIP Netting Superpriority Claims," and together with the DIP Repo Superpriority Claims and the DIP MSFTA Superpriority Claims, the "DIP Superpriority Claims");

(v)     upon entry of the Final Order, with respect to the DIP Repo Obligations, the DIP Repo Liens (as defined below), and the DIP Repo Collateral (as defined below), as applicable, granting waivers of:

(a)     any Debtors' right to surcharge collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise;

(b)     the "equities of the case" exception pursuant to section 552(b) of the Bankruptcy Code; and

(c)     the equitable doctrine of marshaling or similar doctrines;

(vi)    authorizing modification of the automatic stay set forth in section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms of the DIP Repo Documents and this Interim Order;

(vii)   requesting a waiver of any applicable stay with respect to the effectiveness and enforceability of this Interim Order; and

(viii)  scheduling a final hearing with respect to the Motion (the "Final Hearing").

The Interim Hearing having been held before the Bankruptcy Court on July 1, 2022, pursuant to Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rule [ _ ] of the Bankruptcy Rules for the District of Delaware (the "Local Bankruptcy Rules"); and upon the record made by the Debtors at the Interim Hearing and after due deliberation and consideration and sufficient cause appearing therefor:

099900.16053 EMF_US 90535705v13

**THE BANKRUPTCY COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**[9]

A.    *Petition Date*.  On June 30, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

B.    *Joint Administration*.  On [ _ ], 2022, the Bankruptcy Court entered an order approving the joint administration of the Chapter 11 Cases.

C.    *Debtors in Possession*.  The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

D.    *Official Committees*.  No trustee or examiner or official committee of unsecured creditors (a "Creditors' Committee") or any other statutory committee has been appointed in these Chapter 11 Cases as of the date of this Interim Order.

E.    *Jurisdiction and Venue*.  The Bankruptcy Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157(b) and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution.  Venue for the Chapter 11 Cases is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief set forth herein are sections 105, 361, 362, 363, 364, 503, 507, 546, 548, 555, 556, 559, 560 and 561 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and Rule 4001-2 of the Local Bankruptcy Rules.

F.    *Notice*.  Adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and

---

[9]    The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.  To the extent any findings of fact constitute conclusions of law, they are adopted as such.  To the extent any conclusions of law constitute findings of fact, they are adopted as such.

6

no other further notice of the Motion or the entry of this Interim Order shall be required, except as set forth in Paragraph 40 of this Interim Order.

**G.**    *Transactions in the Ordinary Course of Business.*

a.    Prior to the Petition Date, in the ordinary course of its business, FGMC sold and repurchased mortgage loans and related assets, including, but not limited to, pursuant to terms and conditions of master repurchase agreements with (i) Customers Bank, (ii) Texas Capital Bank, National Association, (iii) J.V.B. Financial Group, LLC, as successor by merger to C&Co./PrinceRidge LLC, and (iv) Flagstar Bank, FSB (each a "Prepetition Repo Buyer" and, collectively, the "Prepetition Repo Buyers") (collectively, the "Prepetition Repo Facilities").  In addition, beginning on June 8, 2022 and continuing until the Petition Date, FGMC financed the origination of mortgage loans with loan proceeds advanced by B2 FIE XI LLC, (in such capacity, the "Prepetition Secured Noteholder") pursuant to the terms of that certain Amended and Restated Secured Promissory Note dated as of June 22, 2022 (the "Secured Promissory Note", and the mortgage loans financed thereunder, the "B2 FIE Financed Loans").  As of the Petition Date, the total outstanding amount due under the Secured Promissory Note is $18,350,771 (the "Prepetition Secured Note Outstanding Amount"), $8,050,771 of which was used to finance the B2 FIE Financed Loans.  From and after the entry of this Interim Order, FGMC's sales and repurchases of mortgage loans and related assets pursuant to the DIP Repo Facility shall constitute transactions in the ordinary course of FGMC's business within the meaning of section 363(c)(1) of the Bankruptcy Code.

b.    Prior to the Petition Date, in the ordinary course of business, FGMC entered into forward transactions for the purchase or sale of mortgage-backed and other securities,

including pursuant to "when-issued," "to-be-announced," "dollar roll" and other transactions with various regulated broker-dealers pursuant to the terms of various Master Securities Forward Transaction Agreements ("MSFTAs"), in order to, among other things, protect against potential interest rate exposure on mortgage loans originated by FGMC before such mortgage loan was permanently sold.  The Debtors propose to continue such transactions in the ordinary course of business pursuant to amended MSFTAs, to the extent not terminated by the relevant counterparties, or otherwise with the DIP MSFTA Counterparties pursuant to the DIP MSFTAs.  From and after the date of this Interim Order, FGMC's entry into such transactions under the DIP MSFTAs shall constitute transactions in the ordinary course of FGMC's business within the meaning of section 363(c)(1) of the Bankruptcy Code.

H.     *Safe Harbors*.  The DIP Repo Facility, the DIP Netting Agreement, and the DIP MSFTAs each constitute, as applicable, a "repurchase agreement," a "securities contract," a "forward contract," a "swap agreement," and a "master netting agreement," as such terms are defined in sections 101(47), 741(7)(A), 101(25), 101(53B), and 101(38A) of the Bankruptcy Code, respectively, and each non-Debtor party thereto, including the DIP Repo Agent and the other DIP Repo Parties, is a "financial institution" within the meaning of section 101(22) of the Bankruptcy Code, a "financial participant" within the meaning of section 101(22A) of the Bankruptcy Code, and/or a "repo participant" within the meaning of section 101(46) of the Bankruptcy Code, and is and shall be entitled to the safe harbor protections, rights, and remedies set forth in the Bankruptcy Code, including, but not limited to, sections 362(b)(6), 362(b)(7), 362(b)(17), 362(b)(27), 362(o), 546(e), 546(f), 546(g), 546(j), 548(c), 548(d)(2), 555, 556, 559, 560, and 561 of the Bankruptcy Code, in these Chapter 11 Cases, subject to the terms of this Interim Order.  No action or inaction

8

of any DIP Repo Party shall constitute a waiver by such DIP Repo Party of any rights and remedies under the safe harbor protections of the Bankruptcy Code.

I.          ***Interim Relief***.   Interim relief is necessary to avoid immediate and irreparable harm.  As set forth on the record at the Interim Hearing and in the *Declaration of Aaron Samples in Support of Chapter 11 Petitions and First Day Pleadings* (the "Samples Declaration") and *Declaration of Tanya Meerovich in Support of Debtors' Motions for Debtor-in-Possession Financing* (the "Meerovich Declaration"), in the absence of the immediate availability of the DIP Repo Facility, the continued operation of the Debtors' business would not be possible. Accordingly, good cause has been shown for the entry of this Interim Order.

J.     ***Findings Regarding the DIP Repo Facilities.***

a.     ***Good Cause.***   Good cause has been shown for the entry of this Interim Order.

b.     ***Immediate Need for Postpetition Liquidity.***   An immediate need exists for the Debtors to obtain access to liquidity in order to continue their operations and to administer and preserve the value of their estates.  The ability of the Debtors to maximize value for all stakeholders requires the availability of the DIP Repo Facilities and the other financial accommodations pursuant to the DIP Repo Documents.  Given the unique nature of the Debtors' capital requirements, in the absence of the availability of such funds and liquidity in accordance with the terms of the DIP Repo Documents and this Interim Order, the continued operation of the Debtors' businesses would not be possible, and serious and irreparable harm to the Debtors and their estates and creditors would occur.  The Debtors do not have sufficient available sources of working capital or other liquidity to operate their businesses in the ordinary course without access to the DIP Repo Facilities and the other financial accommodations pursuant to the DIP Repo

9

Documents.  Consummation of the transactions contemplated by the DIP Repo Documents pursuant to the terms of this Interim Order therefore is in the best interests of the Debtors' estates.

      c.   ***No Liquidity Available on More Favorable Terms***.  Given their financial condition and capital structure, despite diligent efforts, the Debtors are unable to reasonably obtain postpetition liquidity from sources other than the DIP Repo Parties on terms more favorable than those set forth in this Interim Order and the DIP Repo Documents.  The Debtors have been unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors have also been unable to obtain secured credit from other sources (i) having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a), and 507(b) of the Bankruptcy Code; (ii) secured only by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (iii) secured solely by a junior lien on property of the Debtors and their estates that is already subject to a lien.  Liquidity on a postpetition basis is not otherwise available without (x) granting to the DIP Repo Parties, the DIP Superpriority Claims and the DIP Repo Liens as set forth herein; (y) upon entry of this Interim Order, and subject to the terms and conditions of the DIP Repo Facility, providing for, and requiring, the purchase of the B2 FIE Financed Loans  and repayment the portion of the Prepetition Secured Note Outstanding Amount used to finance the B2 FIE Financed Loans (the "Prepetition B2 FIE Financed Loan Obligations"); and (z) the other protections set forth in this Interim Order and the DIP Repo Documents.  Granting the DIP Superpriority Claims and DIP Repo Liens and permitting the purchase of the B2 FIE Financed Loans as described herein are conditions to the DIP Repo Parties' agreements to provide the Debtors with the necessary liquidity they need under the DIP Repo Documents.  The DIP Superpriority Claims against FGMC shall be granted on a superpriority administrative expense basis and shall be senior

10

to all other administrative expense or other claims and any superpriority claims that may be granted in these Chapter 11 Cases. Maverick II, as the direct subsidiary of FGMC, will receive direct and indirect benefits from the transactions contemplated by the DIP Repo Documents, and its guaranty of the DIP Repo Obligations on a superpriority administrative expense basis is in the best interests of the Debtors' estates. The superpriority administrative expense claims against Maverick II granted hereunder shall be senior to all other administrative expense or other claims and any other superpriority claims that may be granted in these Chapter 11 Cases, but subject to the Carve-Out.

        d.    ***Willingness to Provide Liquidity.*** The DIP Repo Parties have indicated a willingness to engage in the transactions contemplated by the DIP Repo Facility, the DIP Repo Documents and this Interim Order in reliance on, among other things, (i) the entry by the Bankruptcy Court of this Interim Order and the Final Order, (ii) approval by the Bankruptcy Court of the terms and conditions of the DIP Repo Documents with respect to the DIP Repo Obligations, and (iii) entry of findings of the Bankruptcy Court that, among other things, (A) the DIP Repo Facility and the other financial accommodations pursuant to the DIP Repo Documents are essential to the Debtors' estates and are being extended in good faith, (B) the DIP Superpriority Claims and the DIP Repo Liens will have the protections provided for in sections 363(m) and 364(e) of the Bankruptcy Code, and (C) all terms of this Interim Order will have the protections provided for in section 363(m) of the Bankruptcy Code.

        e.    ***Good Faith (§§ 363(m) & 364(e)).***

        (i)    The DIP Repo Documents and the terms of this Interim Order were negotiated in good faith and at arm's length among the Debtors and the DIP Repo Parties.

11

(ii)    The DIP Repo Facility Parties are entering into the transactions pursuant to the DIP Repo Facility in good faith and are good faith purchasers within the meaning of section 363(m) and, to the extent applicable, section 364(e) of the Bankruptcy Code, and are therefore entitled to the full protection of section 363(m) and, to the extent applicable, section 364(e) of the Bankruptcy Code with respect to all aspects of the transactions contemplated by the DIP Repo Facilities.

(iii)   The liquidity to be provided under the DIP Repo Documents shall be deemed to have been extended in good faith and for valid business purposes and uses, within the meaning of sections 363(m) and 364(e) of the Bankruptcy Code.  The DIP Repo Parties are therefore entitled to the protection and benefits of sections 363(m) and 364(e) of the Bankruptcy Code and this Interim Order to the extent applicable.

f.    ***Final Hearing.***  At the Final Hearing, the Debtors will seek final approval of the proposed DIP Repo Facility and the other financial accommodations pursuant to the DIP Repo Documents pursuant to the Final Order, which shall be in form and substance acceptable to the DIP Repo Agent and the other DIP Repo Parties, in their sole and absolute discretion or as otherwise required under the relevant documents governing the parties' respective rights.  Notice of the Final Hearing and the Final Order will be provided in accordance with this Interim Order and no further notice, except as provided by this Interim Order, shall be required.

g.    ***Immediate Entry.***  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and Local Bankruptcy Rule 4001-2 and, to the extent applicable, Bankruptcy Rule 4001(c)(2).  The authorization granted herein on an interim basis to enter into the DIP Repo Documents and to enter into the transactions under or contemplated by the DIP Repo Documents, is necessary to avoid immediate and irreparable harm to the Debtors and their estates during the period beginning on the Petition Date through and including the date of the entry of the Final Order by this Court.  This Court concludes that the entry of this Interim Order is in the best interests of the Debtors and their estates and creditors

12

because it will, among other things, allow the Debtors to continue to operate in the ordinary course of their businesses and thereby maximize the value of their estates.

        h.    ***Notice.***  Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors, whether by facsimile, email, overnight courier or hand delivery, to certain parties as set forth in the Motion.  Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein, and the Interim Hearing constitutes adequate notice thereof and complies with the Bankruptcy Rules and Local Bankruptcy Rules, and no further notice of the relief granted herein is necessary or required.

**K.**    ***Section 506(c) Waiver***.  In the Final Order, the Debtors will request that no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or any Successor Case (as defined below) at any time shall be charged, pursuant to sections 105 or 506(c) of the Bankruptcy Code or any other legal or equitable doctrine (including unjust enrichment) or any similar principle of law, against any of the DIP Repo Parties.

**L.**    ***Section 552(b)***.  In the Final Order, the Debtors will request that the "equities of the case" exception under section 552(b) shall not apply to the DIP Repo Parties (by its terms).

**M.**    ***No Marshaling/Applications of Proceeds***.  In the Final Order, the Debtors will request that the DIP Repo Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any obligations, liens or collateral acknowledged or approved pursuant to this Interim Order or the Final Order.

        Based upon the foregoing findings and conclusions, the Motion and the record before the Bankruptcy Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED that:**

1.      ***Motion Granted.***  The Motion is granted on an interim basis to the extent set forth herein.  The Debtors are hereby authorized to enter into the DIP Repo Documents and the DIP Repo Documents are hereby approved as described further below.

2.      ***Objections Overruled.***  <u>All</u> objections to and reservations of rights with respect to the interim relief sought in the Motion and to the entry of this Interim Order, to the extent not withdrawn or resolved, are hereby overruled on the merits in their entirety.

**<u>Provisions Relating to the DIP Repo Facility</u>**

3.      ***Authorizations to Enter Into the DIP Repo Facility.***  Pursuant to sections 105(a) and 363(b), and to the extent applicable, section 364(c) of the Bankruptcy Code, FGMC is immediately authorized and empowered to (i) enter into and perform its obligations under the DIP Repo Facility Agreement, (ii) execute and deliver all other DIP Repo Documents required or advisable to implement the DIP Repo Facility, and (iii) take all actions which may be necessary or advisable for the performance by the Debtors under the DIP Repo Documents. The Debtors are hereby authorized and directed, without need to obtain further Court approval, to pay timely all amounts that are due and payable, or that become due and payable, under the DIP Repo Documents.

4.      ***Ordinary Course Transactions Approved***.  Pursuant to sections 105(a), 363(c)(1) and 363(f) of the Bankruptcy Code, FGMC is authorized to sell and repurchase mortgage loans and related assets pursuant to the DIP Repo Facility in the ordinary course of business, free and clear of any and all liens, claims, encumbrances or other interests, and any and all payments

14

or proceeds remitted to the Prepetition Repo Parties pursuant to this Interim Order (if any), shall be irrevocable and received free and clear of any claim, charge, assessment, or other liability.

5.      ***Purchase of B2 FIE Financed Loans and Refinancing of Prepetition B2 FIE Financed Loan Obligations Approved.***  Subject to the terms and conditions set forth in the DIP Repo Facility Agreement, the DIP Repo Purchasers are hereby authorized and directed to purchase all of the B2 FIE Financed Loans and refinance the Prepetition B2 FIE Financed Loan Obligations.  Upon the purchase of the B2 FIE Financed Loans, any liens on the B2 FIE Financed Loans held by the Prepetition Secured Noteholder shall be deemed automatically released and terminated,.

6.      ***Security for the DIP Repo Facility Parties.***

a.      Effective immediately upon entry of this Interim Order, the Bankruptcy Court hereby grants to the DIP Repo Agent, for the benefit of itself and the other DIP Repo Facility Parties valid, binding, enforceable, non-avoidable, automatically and properly perfected first-priority liens and security interests (the "DIP Repo Facility Liens") in (i) the Purchased Assets (as defined in the DIP Repo Facility Agreement) (collectively, the "DIP Repo Facility Backup Collateral").

b.      The DIP Repo Facility Liens are granted on the DIP Repo Facility Collateral effective as of the Petition Date without the necessity of the execution by the Debtors (or recordation or other filing or notice) of security agreements, control agreements, pledge agreements, financing statements, mortgages, schedules or other similar documents, or the possession or control by the applicable agents or any other DIP Repo Party.  As set forth below in Paragraph 26 of this Interim Order, the DIP Repo Agent or any other DIP Repo Party may, but

15

shall not be obligated to, execute, record, file, or notice such security agreements, control agreements, pledge agreements, financing statements, mortgages, schedules or other similar documents with respect to the DIP Repo Facility Liens, or possess or control the DIP Repo Facility Collateral, and the automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to implement the foregoing.

**Provisions Relating to DIP MSFTAs**

7. ***Authorizations Regarding the DIP MSFTAs.*** Pursuant to sections 105(a) and 363(b), and, to the extent applicable, section 364(c) of the Bankruptcy Code, FGMC is immediately authorized and empowered to (a) enter into and perform its obligations under the DIP MSFTAs, (b) execute and deliver all other DIP Repo Documents required or advisable to effect any DIP MSFTA, and (c) take all actions which may be necessary or advisable for the performance by the Debtors under the DIP MSFTAs.

8. ***Security for the DIP MSFTA Counterparties.***

(i) Effective immediately upon entry of this Interim Order, the Bankruptcy Court hereby grants valid, binding, enforceable, non-avoidable, automatically and properly perfected, postpetition first-priority liens and security interests, pursuant to section 364(c)(2) of the Bankruptcy Code (collectively, the "DIP MSFTA Liens") to the DIP MSFTA Counterparties, in each case, to secure FGMC's obligations under the DIP MSFTAs in, and right of setoff against, all Forward Collateral (as defined in the DIP MSFTAs) and all securities, money and other property, then or thereafter delivered by or on behalf of FGMC under such DIP MSFTA to or for the benefit of the DIP MSFTA Counterparties in connection with such DIP MSFTA or any Transaction (as defined in the DIP MSFTAs), or then or thereafter held or carried by or on behalf of FGMC in connection with the DIP MSFTA or any Transaction (as defined in the DIP

16

MSFTAs) and, in each case, all proceeds of any of the foregoing (collectively, the "<u>DIP MSFTA</u> <u>Collateral</u>").

(ii)         The DIP MSFTA Liens are granted on the DIP MSFTA Collateral effective as of the Petition Date without the necessity of the execution by the Debtors (or recordation or other filing or notice) of security agreements, control agreements, pledge agreements, financing statements, mortgages, schedules or other similar documents, or the possession or control by the applicable agents or any other DIP Repo Party.  As set forth below in Paragraph 26 of this Interim Order, the DIP Repo Agent or any other DIP Repo Party may, but shall not be obligated to, execute, record, file, or notice such security agreements, control agreements, pledge agreements, financing statements, mortgages, schedules or other similar documents with respect to the DIP MSFTA Liens, or possess or control the DIP MSFTA Collateral, and the automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to implement the foregoing.

**<u>Provisions Relating to DIP Netting Agreement</u>**

9.         ***Authorizations Regarding the DIP Netting Agreement***.   Pursuant to sections 105(a) and 363(b) and, to the extent applicable, section 364(c) of the Bankruptcy Code, FGMC is immediately authorized and empowered to (a) enter into and perform its obligations under the DIP Netting Agreement, (b) execute and deliver all other DIP Repo Documents required or advisable to effect the DIP Netting Agreement, and (c) take all actions which may be necessary or advisable for the performance by the Debtors under the DIP Netting Agreement.  Furthermore, the DIP Repo Agent is hereby authorized and empowered to exercise netting and setoff rights for the benefit of itself and the DIP Netting Parties in accordance with, and subject to, the terms and conditions set forth in the DIP Netting Agreement.

10. ***Security for the DIP Netting Parties***.

a.      Effective immediately upon entry of this Interim Order, the Bankruptcy Court hereby grants valid, binding, enforceable, non-avoidable, automatically and properly perfected, postpetition first-priority liens and security interests, pursuant to section 364(c)(2) of the Bankruptcy Code (collectively, the "DIP Netting Liens" and, together with the DIP Repo Facility Backup Liens and the DIP MSFTA Liens, the "DIP Repo Liens") to the DIP Repo Agent, for the benefit of itself and the other DIP Netting Parties, in each case, to secure FGMC's obligations under the DIP Netting Agreement, as applicable, in:[10]

   (i)      each Deposit Account, Securities Account or other trust or custodial account maintained or required to be maintained under or in connection with any DIP Repo Document;

   (ii)     all property (including Security Entitlements) now or hereafter credited to or held in any such account or otherwise held, or carried by or through, or subject to the control of any DIP Netting Party or agent thereof in connection with a DIP Repo Document whether fully paid or otherwise;

   (iii)    all rights under the DIP Repo Documents, including, without limitation, all rights of FGMC in any obligations of any DIP Netting and all rights of FGMC in or to any transaction (including Clearing Transactions), confirmations and agreements under the DIP Repo Documents;

   (iv)    all Accounts, Chattel Paper, Commodity Accounts, Commodity Contracts, Documents, General Intangibles, Instruments, Investment Property, Letter-of-Credit Rights and Securities held under or constituting collateral or security under or pursuant to any DIP Repo Documents; and

   (v)     All proceeds of the foregoing ((i) – (iv) collectively, the "DIP Netting Collateral," and, together with the DIP Repo Facility Backup Collateral and the DIP MSFTA Collateral, the "DIP Repo Collateral").

b.      The DIP Netting Liens are granted on the DIP Netting Collateral effective as of the Petition Date without the necessity of the execution by the Debtors (or recordation or

---

[10]    Capitalized terms used but not defined in items (i) – (v) of this subsection shall have the meanings set forth in the DIP Netting Agreement.

18

other filing or notice) of security agreements, control agreements, pledge agreements, financing statements, mortgages, schedules or other similar documents, or the possession or control by the applicable agents or any other DIP Repo Party.  As set forth below in Paragraph 26 of this Interim Order, the DIP Repo Agent or any other DIP Repo Party may, but shall not be obligated to, execute, record, file, or notice such security agreements, control agreements, pledge agreements, financing statements, mortgages, schedules or other similar documents with respect to the DIP Netting Liens, or possess or control the DIP Netting Collateral, and the automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to implement the foregoing.

## DIP Superpriority Claims

11. Effective immediately upon entry of this Interim Order, the DIP Repo Agent, on behalf of itself and the other DIP Repo Parties, the DIP Netting Parties, and any agents or custodians under the DIP Repo Documents, and the DIP MSFTA Counterparties, are hereby granted the DIP Superpriority Claims.  The DIP Superpriority Claims against FGMC shall be senior to all, and not subject to any, other administrative expense or other claims, including those arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code or any other superpriority claims that may be granted in these Chapter 11 Cases, including, for the avoidance of doubt, the Cash Flow DIP Superpriority Claims (as defined in the Cash Flow DIP Order) and shall ***not*** be subject to the Carve-Out (as defined in the Cash Flow DIP Order).  The DIP Superpriority Claims against Maverick II shall be senior to all other administrative expense or other claims and any other superpriority claims that may be granted in these Chapter 11 Cases.

19

12.    Notwithstanding anything to the contrary in any order or in any other document, in no event shall the Cash Flow DIP be paid down (by mandatory or voluntary prepayment) while any portion of the DIP Repo Obligations remain outstanding.

**Other Provisions Relating to the DIP Repo Documents**

13.    ***Authorized Action***.  In furtherance of the foregoing, and without further approval of this Court, each Debtor is authorized and directed to perform all acts, and to make, execute and deliver all instruments and documents, that may be necessary or required for the performance by the Debtors under the DIP Repo Documents, including, without limitation, the creation and perfection of the DIP Repo Liens described in, provided for and perfected by this Interim Order and the DIP Repo Documents.

14.    ***Validity of DIP Repo Obligations***.  Upon entry of this Interim Order, the DIP Repo Documents shall represent valid, binding, and unavoidable obligations of the Debtors, enforceable against the Debtors and their estates in accordance with their terms, subject to the terms of this Interim Order.  The DIP Repo Documents and this Interim Order constitute and evidence the validity and binding effect of the DIP Repo Obligations of the Debtors, which DIP Repo Obligations shall be enforceable against the Debtors, their estates and any successors thereto, including any trustee or other estate representative appointed in the Chapter 11 Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases (each, a "Successor Case").  No obligation, payment or transfer to the DIP Repo Agent, any other DIP Repo Party, or any other party to the DIP Repo Documents under the DIP Repo Documents or this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or any applicable law (including under sections 502(d), 544, 548, or 549 of the Bankruptcy Code), or

20

subject to any defense, reduction, set-off, recoupment, claim or counterclaim, except as otherwise expressly permitted herein.

15.    ***Treatment of DIP Repo Liens***.  The DIP Repo Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereafter granted in the Chapter 11 Cases or any Successor Case.  The DIP Repo Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Case, upon the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code (or in any Successor Case), and/or upon the dismissal of any of the Chapter 11 Cases or any Successor Case.  No lien or interest avoided and preserved for the benefit of the Debtors' estates pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Repo Liens.

16.    ***No Obligation to Make Purchases***.  The DIP Repo Parties shall have no obligation to make purchases, enter into transactions, or otherwise extend any financial accommodation under the DIP Repo Facilities unless and until the DIP Closing Date has occurred and the conditions precedent to the making of such purchases, entry into such other transactions or other extension of financial accommodation, as the case may be, under the relevant DIP Repo Documents have been satisfied in full or waived in accordance with the terms of the relevant DIP Repo Documents.

17.    ***Use of DIP Proceeds.***  From and after the Petition Date, the Debtors are authorized, subject to the satisfaction of the terms and conditions set forth in this Interim Order and the DIP Repo Documents, to use proceeds of the DIP Repo Facilities (a) to pay the Prepetition Obligations, (b) to effectuate the sale and repurchase of mortgage loans and related assets pursuant to the DIP Repo Facilities, and (c) to pay customary fees and closing costs in connection with the

21

DIP Repo Facilities and DIP Repo Documents; *provided*, *that*, the use of such proceeds shall be restricted as provided for in Paragraph 24 of this Interim Order.

18.     ***Costs, Fees, Expenses, Release, and Indemnification***.

a.     The Debtors are authorized and directed to execute, deliver, and perform under the Agent Fee Letter and the Master Fee Letter. The Debtors are authorized and directed to pay any and all reasonable and documented fees and expenses of the DIP Repo Parties and other parties to the DIP Repo Documents in connection with the DIP Repo Documents, including administrative agent fees, custodial fees, and the fees and expenses of attorneys (including Hunton Andrews Kurth LLP and Potter Anderson & Corroon LLP, as counsel to Barclays Bank PLC), advisors, accountants and other consultants, whether incurred before, on or after the Petition Date and whether or not the transactions contemplated hereby are consummated, including fees and expenses incurred in connection with (i) the preparation, negotiation and execution of this Interim Order, the DIP Repo Documents, and all related documents; (ii) the syndication and funding of any of the DIP Repo Facilities; (iii) the creation, perfection or protection of the DIP Repo Liens (including all search, filing and recording fees); (iv) the on-going administration of the DIP Repo Documents (including the preparation, negotiation and execution of any amendments, consents, waivers, assignments, restatements or supplements thereto) and the Chapter 11 Cases (including the filing of any proofs of claim); (v) the enforcement of the DIP Repo Documents or this Interim Order and related documents; (vi) any refinancing or restructuring of the DIP Repo Facilities; and (vii) any legal proceeding relating to or arising out of the DIP Repo Facilities or the other transactions contemplated by the DIP Repo Documents or this Interim Order, including the Chapter 11 Cases, in each of the foregoing cases

22

solely to the extent set forth in the applicable DIP Repo Documents. Any time professionals for the DIP Repo Parties seek payment of fees and expenses from the Debtors, each professional shall provide copies of its fee and expense statements or invoices in summary form (which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine) to the U.S. Trustee and counsel for a Creditors' Committee contemporaneously with the delivery of such fee and expense statements to the Debtors. No attorney or advisor to the DIP Repo Parties shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court. If the Debtors, the U.S. Trustee, or a Creditors' Committee objects to the reasonableness of the fees and expenses of the DIP Repo Parties, and such objection cannot be resolved, the Debtors, the U.S. Trustee, or the Creditors' Committee, as the case may be, shall file with the Court and serve on counsel for the DIP Repo Parties, within ten (10) calendar days of receipt of such invoices, an objection limited to the reasonableness of such fees and expenses and detailing with specificity which fees and/or expenses are being objected to (each a "Fee Objection"). The Debtors shall pay to the DIP Repo Parties, in accordance with the terms and conditions of this Final Order, within fifteen (15) calendar days after receipt of the applicable invoice, (a) the full amount invoiced if no Fee Objection has been timely filed, and (b) the undisputed fees, costs, and expenses reflected on any invoice to which a Fee Objection has been timely filed, in each case regardless of whether such amounts are in excess of the amounts set forth in the Budget. For the avoidance of doubt, the professional fees of the DIP Repo Parties and the DIP Lenders shall not

be subject to the provisions of sections 327, 328, 329 or 331 of the Bankruptcy Code or subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever.

b.    The Debtors, on behalf of themselves and their respective estates, forever and irrevocably release, discharge, and acquit all former, current and future DIP Repo Parties, affiliates of the DIP Repo Parties, and each of their respective former, current and future officers, employees, directors, agents, representatives, owners, members, partners, financial and other advisors and consultants, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors and successors in interest, of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, reasonable attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the DIP Repo Documents, the DIP Repo Facilities, and the Debtors' use of the liquidity provided thereunder and hereunder, including, without limitation, (x) any so-called "lender liability" or equitable subordination claims or defenses, (y) any and all claims and causes of action arising under the Bankruptcy Code, and (z) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the DIP Repo Parties.

c.    The DIP Repo Parties shall have no liability to any third party relating to the DIP Repo Documents, the DIP Repo Facilities, and the Debtors' use of the liquidity

provided thereunder and hereunder, and shall not, by virtue of entering into the transactions contemplated by the DIP Repo Facilities or otherwise complying with the DIP Repo Documents or this Interim Order, be deemed to be in control of the operations of the Debtors, to owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates. The Debtors shall, and are hereby authorized to, indemnify and hold harmless the DIP Repo Parties and their respective affiliates and Representatives (the "Indemnified Parties") from and against all losses, liabilities, claims, damages, penalties, actions, judgments, suits, expenses or disbursements of any nature whatsoever arising out of or relating to the DIP Repo Documents or this Interim Order, including the syndication of any obligations thereunder, and the Debtors' use of the liquidity provided thereunder; *provided*, *however*, that the foregoing indemnity shall not apply to any actions of any Indemnified Parties determined in a final non-appealable judgment to constitute fraud or willful misconduct.  This indemnification shall survive and continue for the benefit of all such persons or entities.

19.    ***Modification of DIP Repo Documents***.  The Debtors and the DIP Repo Parties, as applicable, are authorized, subject to the DIP Repo Documents, to implement, in accordance with the terms of the respective DIP Repo Documents, any amendments, waivers, consents or other modifications to or under the DIP Repo Documents (including any change to the number or composition of DIP Repo Facility Purchasers or DIP MSFTA Counterparties) without further order of this Court unless such amendment, waiver, consent or other modification shortens the maturity or the scheduled termination date thereunder.

20.    ***Chapter 11 Milestones***.  Subject to the Bankruptcy Court's availability, the Debtors shall comply with the milestones set forth below:

(i)     On or before the earlier of the date that is thirty (30) days following entry this Interim Order and the Cash Flow DIP Order or thirty five (35) days following the Petition Date, the orders approving the relief granted in the Interim Order and the Cash Flow DIP Order on a final basis shall have been entered by the Bankruptcy Court, and such orders shall not have been  amended, modified or supplemented (or any portions thereof reversed, stayed or vacated) other than as agreed in writing by the DIP Repo Agent (at the direction of the Required Purchasers);

(ii)    On or before the date that is fifty five (55) days following the Petition Date, the Debtors shall have obtained the Bankruptcy Court's approval of a disclosure statement for an Acceptable Plan[11] and solicitation procedures contemplating completion of a confirmation hearing with respect to an Acceptable Plan no later than one hundred (100) days following the Petition Date, which disclosure statement and solicitation procedures must otherwise be in form and substance reasonably acceptable to the Required Purchasers, and the Bankruptcy Court's approval of such disclosure statement and solicitation procedures shall not have been amended, modified or supplemented (or any portions thereof reversed, stayed or vacated) other than as agreed in writing by the DIP Repo Agent (at the direction of the Required Purchasers);

(iii)   On or before the date that is one hundred five (105) days following the Petition Date, the Debtors shall obtain entry of an order of the Bankruptcy Court confirming an Acceptable Plan, which order (i) shall be (x) in form and substance satisfactory to the Required Purchasers, to the extent relating to the termination of the commitments under the DIP Repo Facility Agreement, the payment in full in cash and full discharge of the obligations under the DIP Repo Facilities, and releases and other exculpatory provisions for the Secured Parties and (y) otherwise in form and substance reasonably satisfactory to the Required Purchasers, and (ii) shall not have been amended, modified or supplemented (or any portions thereof reversed, stayed or vacated) other than as agreed in writing by the DIP Repo Agent (at the direction of the Required Purchasers); and

(iv)    On or before the date that is one hundred fifty (150) days following the Petition Date, the effective date of an Acceptable Plan shall have occurred and all obligations under the DIP Repo Facilities shall have been indefeasibly paid in full in cash.

---

[11] "Acceptable Plan" shall mean a chapter 11 plan of reorganization in the Cases that (a) provides for the termination of the DIP Repo Parties under the DIP Repo Documents on the effective date of such plan, (b) provides for the payment in full in cash of all obligations of FGMC with respect to the DIP Repo Documents on the effective date of such plan, (c) contains release, indemnification and exculpatory provisions relating to the DIP Repo Parties that are satisfactory to the DIP Repo Parties, (d) is otherwise in form and substance reasonably satisfactory to the DIP Repo Parties, and (e) contemplates effectiveness of such plan no later than one hundred fifty (150) days following the Petition Date.

21.    ***Rights and Remedies Following a DIP Termination Event***.

a.    <u>**Events of Default**</u>.  The occurrence of any of the following events (in addition to the events of default and rights and remedies set forth in any of the DIP Repo Documents) shall constitute an event of default (collectively, the "<u>DIP Events of Default</u>"):[12]

i.    <u>Failure to Enter Interim DIP Orders</u>.  Within five (5) Business Days following the Petition Date, the Bankruptcy Court fails to enter this Interim Order or the Interim Cash Flow DIP Order;

ii.    <u>Failure to Draw</u>.  Within five (5) Business Days following the Petition Date, either (a) FGMC fails to enter into a new Transaction under the DIP Repo Facility Agreement or (b) the Initial Term Loan Commitment (as defined in the Cash Flow DIP Facility) is unavailable for FGMC to draw;

iii.    <u>Failure to Enter Final DIP Orders, Final Cash Management Order or Final OCB Order</u>.  Within thirty-five (35) calendar days following the entry of this Interim DIP Orders, the Bankruptcy Court fails to enter the Final Order, the Final Cash Flow DIP Order, the Final Cash Management Order or the Final OCB Order;

iv.    <u>Failure to Pay DIP Repo Agent for its own account or the account of any Purchaser</u>.  Failure to (a) make any payment of Price Differential or Repurchase Price or make a payment of any other sum or amount which has become due, whether by acceleration or otherwise, under any of the DIP Repo Facility Agreement, including, without limitation, payment in full in cash by the Termination Date or (b) pay any Margin Deficit when due pursuant to the DIP Repo Facility Agreement;

v.    <u>Breach of Representation</u>.  Any representation or warranty of FGMC under any DIP Repo Document is materially incorrect, subject to any applicable cure period;

vi.    <u>Breach of Covenant</u>.  A breach of any covenant or agreement of FGMC under any DIP Repo Document, subject to any applicable cure period;

vii.    <u>Breach of DIP Orders</u>.  The occurrence of a breach or violation by the Debtors of this Interim Order or the Interim Cash Flow DIP Order (or, after entry thereof, the Final Order or Final Cash Flow DIP Order) that

---

[12] Capitalized terms used in this paragraph but not defined herein shall have the meanings set forth in the DIP Repo Facility Agreement.

has not been promptly cured or waived to the satisfaction of the DIP Repo Agent (at the direction of the Required Purchasers in their sole discretion), or the termination or material reduction of the Commitments by the Cash Flow DIP Lenders under the Cash Flow DIP Facility;

viii. <u>Breach of OCB Orders or Cash Management Order</u>.  The occurrence of a breach or violation by the Debtors of any Interim OCB Order (or, after entry thereof, any Final OCB Order) or the Interim Cash Management Order (or, after entry thereof, the Final Cash Management Order) in each case, that has not been promptly cured or waived to the satisfaction of the DIP Repo Agent (at the direction of the Required Purchasers in their sole discretion);

ix. <u>Conversion of any of the Chapter 11 Cases</u>.  The conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code and the appointment of a chapter 7 trustee to effectuate the liquidation of the Debtors;

x. <u>Dismissal of any of the Chapter 11 Cases</u>.  The dismissal of any of the Chapter 11 Cases;

xi. <u>Appointment of a Chapter 11 Trustee; Loss of Exclusivity</u>.  (a) Appointment of a chapter 11 trustee in any of the Chapter 11 Cases pursuant to section 1104 of the Bankruptcy Code or otherwise, or (b) any Debtor loses the exclusive right to file a chapter 11 plan or plans in any of the Chapter 11 Cases or to solicit acceptances thereof pursuant to section 1121 of the Bankruptcy Code;

xii. <u>Chapter 11 Milestones</u>.  The Debtors fail to comply with any of the Chapter 11 Milestones; *provided*, *however*, that no DIP Event of Default shall occur if the Debtors are unable to comply with any Chapter 11 Milestone due to the Bankruptcy Court's unavailability;

xiii. <u>Modification of DIP Orders or Certain Other Orders</u>.  Any reversal, revocation or modification of any of the following orders without the prior written consent of the DIP Repo Agent (at the direction of the Required Purchasers in their sole discretion) (in the case of subclause (d) below, other than a modification that is not adverse to any of the rights, claims or interests of any Secured Party): (a) the Interim DIP Orders (or, after entry thereof, the Final DIP Orders), (b) any Interim OCB Order (or, after entry thereof, any Final OCB Order), (c) after entry thereof, any order referred to in clause (e) of the Chapter 11 Milestones, (d) after entry thereof, any of the other orders referred to in

28

the Chapter 11 Milestones or (e) the Interim Cash Management Order (or, after entry thereof, the Final Cash Management Order);

xiv.    Order Granting Relief of Automatic Stay to Third Party.  The entry of an order of the Bankruptcy Court granting any Person other than the Secured Parties (in their capacities as such) relief from the automatic stay in any of the Chapter 11 Cases in a manner that is materially adverse to the rights, claims or interests of any of the Secured Parties;

xv.    Order Granting Lien or Claim to Third Party.  The entry of an order of the Bankruptcy Court granting any Person other than the Secured Parties (in their capacities as such) a Lien or claim in or against (a) any of the DIP Repo Collateral, (b) any other material assets of FGMC, or any other Debtor  or (ii) Liens permitted under the DIP Repo Facility Agreement or arising under the Cash Flow DIP Facility; provided that it shall constitute an Event of Default if FGMC or any other Debtor shall grant any Lien to secure any indebtedness or obligations referred to in clause (xvii) below;

xvi.    Additional Indebtedness.  FGMC or any other Debtor (a) issues or incurs, or files a motion to issue or incur, any additional secured or unsecured term loan debt, debt bonds, or other debt for borrowed money (other than as provided for in the Cash Flow DIP Facility), or (b) enters into, or files a motion to approve, any other debt arrangements similar to a DIP Repo Facility Document;

xvii.    Termination of the Sponsor Guaranty. The termination of the Guaranty (the "Sponsor Guaranty") of PIMCO Bravo Fund II, L.P. (the "Sponsor");

xviii.    Chapter 11 Plan Filing.  The filing of any chapter 11 plan of reorganization (or a disclosure statement describing a chapter 11 plan of reorganization) in any of the Chapter 11 Cases or any motion to approve a sale agreement, any plan support agreement or any other asset purchase agreement or similar agreement, in any such case, that does not provide that all obligations of FGMC with respect to the DIP Repo Facility Agreement shall be indefeasibly paid in full in cash as per the terms of such agreements (other than with respect to any other asset purchase agreement or similar agreement relating to a sale or disposition on terms and conditions consented to by the Purchasers, subject to any applicable prepayment requirements set forth herein or in any other DIP Repo Document);

xix.    Exercise of Remedies by Other Creditors.  Exercise by any creditor or any agent, trustee or other representative on behalf of any creditor (other

29

than the DIP Repo Agent or the Required Purchasers in accordance with the Administration Agreement and other relevant DIP Repo Facility Agreement) of remedies (a) against any Collateral, or (b) in a manner that is materially adverse to the rights, claims or interests of any of the Secured Parties;

xx. <u>Sale, Transfer or Disposition of Servicing Rights</u>.  Any sale, transfer or other disposition of (i) any mortgage servicing rights with respect to any mortgage loans (including any manufactured housing loans) or rights to reimbursement for advances related thereto or (ii) any other assets of FGMC or any other Debtor and, in the case of this subclause (ii), the sale, transfer or other disposition of such other asset would materially impair the rights and claims of any of the Secured Parties (as determined by Required Purchasers in their sole discretion) in and to the DIP Repo Collateral (other than the sale, transfer or other disposition of such servicing rights or assets occurring in the ordinary course; provided that the outstanding Repurchase Price or other Secured Obligations (including any accrued and unpaid interest and fees with respect thereto) owed to any of the Secured Parties with respect to such sold mortgage servicing rights or any rights to reimbursement for advances related thereto or, to the extent constituting Collateral, other sold assets shall be repaid no later than substantially concurrently with such sale, transfer or other disposition);

xxi. <u>Failure to Pay at Maturity</u>.  The occurrence of a DIP Maturity Date Event of Default;

xxii. <u>Insolvency</u>.  An Act of Insolvency[13] shall have occurred with respect to the Sponsor;

xxiii. <u>Inability to Perform</u>.  FGMC, the Guarantor, or any Debtor shall admit its inability to, or its intention not to, perform such Person's obligations under any of the DIP Repo Documents to which it is a party; <u>provided</u>

---

[13] "<u>Act of Insolvency</u>" shall mean: (a) the filing of a petition, commencing, or authorizing the commencement of any case or proceeding, or the voluntary joining of any case or proceeding under any bankruptcy, insolvency, reorganization, liquidation, dissolution or similar law relating to the protection of creditors, or suffering any such petition or proceeding to be commenced by another which is consented to, not timely contested or results in entry of an order for relief; (b) the seeking of the appointment of a receiver, trustee, custodian or similar official for such party or any substantial part of the property of either; (c) the appointment of a receiver, conservator, or manager for such party by any governmental agency or authority having the jurisdiction to do so; (d) the making or offering by such party of a composition with its creditors or a general assignment for the benefit of creditors; (e) the admission by such party of its inability to pay its debts or discharge its obligations as they become due or mature; or (f) that any governmental authority or agency or any person, agency, or entity acting or purporting to act under governmental authority shall have taken any action to condemn, seize or appropriate, or to assume custody or control of, all or any substantial part of the property of such party, or shall have taken any action to displace the management of such party or to curtail its authority in the conduct of the business of such party.

<u>that</u> the filing of any of the Chapter 11 Cases or any Specified Act of Insolvency with respect to the Debtors shall not, in and of itself, be deemed any admission of Person's inability to perform;

xxiv. <u>Change in Control</u>. The occurrence of a Change in Control;

xxv. <u>Failure to Transfer</u>. FGMC fails to transfer the Purchased Assets to the DIP Repo Agent or its designee on the applicable Purchase Date (provided that the applicable Purchasers (or the DIP Repo Agent, on behalf of the applicable Purchasers) have tendered the related Purchase Price);

xxvi. <u>Judgment</u>. A post-petition final judgment or judgments for the payment of money in excess of $500,000 in the aggregate shall be rendered against FGMC by one or more courts, administrative tribunals or other bodies having jurisdiction and the same shall not be satisfied, discharged (or provision shall not be made for such discharge) or bonded, or a stay of execution thereof shall not be procured, within thirty (30) days from the date of entry thereof;

xxvii. <u>Government Action</u>. Any Governmental Authority or any person, agency or entity acting or purporting to act under governmental or regulatory authority (i) shall have taken any action to condemn, seize or appropriate, or to assume custody or control of, all or any substantial part of the property of FGMC or any Affiliate thereof, (ii) shall have taken any action to displace the management of FGMC or any Affiliate thereof or (iii) shall have taken any action to curtail its authority in any material respect in the conduct of the business of FGMC or any Affiliate thereof, or any enforcement action that either materially impairs the ability of FGMC, the Guarantor, or any other Debtor to perform its obligations under the DIP Repo Facility Agreement or prevents it from carrying on its business or a substantial part thereof, and, in the case of this subclause (iii), such action shall not have been discontinued or stayed within thirty (30) days;

xxviii. <u>Servicer Default</u>. Any third party servicer of any Purchased Assets is in default of the applicable servicing agreement entered into between such servicer and FGMC, and FGMC has not, within thirty (30) days of such default, (i) replaced such servicer with a successor servicer approved by the DIP Repo Agent in its sole discretion or (ii) repurchased all Purchased Assets subject to such servicing agreement or any other servicing agreement with such servicer;

xxix. <u>Cash Flow DIP Facility Cross Default</u>. The occurrence of an "Event of Default" under the Cash Flow DIP Facility, as in effect on the date

31

hereof, or the termination, withdrawal, reduction, or other impairment by the Cash Flow DIP Lender of its commitments under the Cash Flow DIP Facility;

xxx.  Assignment.  Assignment or attempted assignment by FGMC, the Guarantor, or any Debtor of any DIP Repo Document to which it is a party or any of its rights or obligations thereunder without first obtaining the specific written consent of the DIP Repo Agent (at the direction of the Required Purchasers in their sole discretion), or the granting by FGMC of any Lien on any Purchased Assets to any person other than DIP Repo Agent or any custodian or agent acting on behalf of the DIP Repo Agent and relevant Purchasers;

xxxi.  Security Interest.  Any of the DIP Repo Documents shall for any reason cease to create a valid, first priority security interest in any material portion of the DIP Repo Collateral purported to be covered thereby, or if any of the DIP Repo Collateral covered by such security interest, or proceeds thereof, become subject to a security interest granted to a third party;

xxxii.  Occurrence of any other Event of Default.  The occurrence of any other event of default under any DIP Repo Document (beyond any grace period, and subject to any express notice requirement, set forth in such DIP Repo Document that is applicable to such event) that has not been promptly cured or waived to the satisfaction of the DIP Repo Agent (at the direction of the Required Purchasers in their sole discretion);

xxxiii.  Enforceability.  For any reason (i) FGMC, the Guarantor, or any other Debtor shall seek to disaffirm, terminate, limit, challenge, repudiate or reduce its obligations under any DIP Repo Document (or the DIP Guaranty, as applicable) or otherwise challenge the ability of DIP Repo Agent, any Purchasers or any other Secured Party to enforce its rights and remedies thereunder or (ii) any DIP Repo Document or the DIP Guaranty,  at any time shall fail to be in full force and effect in all material respects in accordance with its terms or shall not be enforceable in all material respects in accordance with its terms;

xxxiv.  Cash Collateral Termination Event.  To the extent the Bankruptcy Court enters an order permitting the use of Cash Collateral (as defined in the Bankruptcy Code), the termination of the right to use Cash Collateral under such order (a "Cash Collateral Termination Event"); and

xxxv.  Breach of DIP Guaranty or Sponsor Guaranty.  A breach of any representation, covenant, or agreement of the DIP Guarantor under the DIP Guaranty or of the Sponsor under the Sponsor Guaranty.

An Event of Default shall be deemed to be continuing unless expressly waived by DIP Repo Agent (at the direction of the Required Purchasers in their sole discretion) in written notice to FGMC.

        b.      Upon the occurrence and during the continuance of a DIP Event of Default, the DIP Repo Agent (at the direction of the Required Purchasers in their sole discretion) may: (a) deliver a notice of a DIP Event of Default; (b) terminate any pending Funding or other extension of credit under any DIP Repo Document, declare the Secured Obligations to be due and payable, and/or place an administrative hold on any deposit account, securities account or other bank account that constitutes Collateral; and (c)(i) immediately upon the occurrence of any Immediate Event of Default,[14] and (ii) upon five (5) calendar days written notice to counsel to FGMC, the U.S. Trustee, and counsel to any Creditors' Committee in the case of any DIP Event of Default (other than an Immediate Event of Default as specified in the DIP Repo Documents) (such period, the "DIP Forbearance Period"), exercise all other rights and remedies available to the DIP Repo Agent (at the direction of the Required Purchasers in their sole discretion), any Purchaser and/or any other Secured Party pursuant to and in accordance with any of the DIP Repo Documents, DIP Guaranty, the Sponsor Guaranty, any other DIP Repo Document, this Interim Order or the Final Order, or any order of the Bankruptcy Court or otherwise. In addition, following any DIP Forbearance Period, any Purchaser, Secured Party, or any DIP Repo Party may exercise any rights to unilateral enforcement pursuant to the applicable DIP Repo Documents.

---

[14] "Immediate Event of Default" shall mean the occurrence of any of the following: (i) the Event of Default set forth in Paragraph 21(a) titled "Conversion of any of the Chapter 11 Cases"; (ii) the Event of Default set forth in Paragraph 21(a) titled "Failure to Pay at Maturity"; (iii) the Event of Default set forth in Paragraph 21(a) titled "Failure to Pay DIP Repo Agent for its own account or the account of any Purchaser"; or (iv) the Event of Default set forth in Paragraph 21(a) titled "Appointment of a Chapter 11 Trustee; Loss of Exclusivity".

33

c.     The rights and remedies set forth herein are non-exclusive may be exercised without presentment, demand, protest or other notice of any kind (except for any notice expressly required hereunder), all of which are hereby expressly waived by each of FGMC and any other Debtor.  For the avoidance of doubt, upon the occurrence and during the continuance of a DIP Event of Default, the interest rate that is used to calculate amounts due under the DIP Repo Facility Agreement (including Price Differential) shall automatically be the Default Rate without any further action required by DIP Repo Agent or any Purchaser party to the DIP Repo Facility Agreement.[15]

d.     Notwithstanding anything herein to the contrary, (i) if a DIP Event of Default exists at the end of the DIP Forbearance Period, then the DIP Repo Parties shall be permitted to immediately exercise all of their other rights and remedies under the DIP Repo Documents; and (ii) the DIP Repo Parties shall not be required to permit any funding or other financial accommodation under the DIP Repo Documents during the DIP Forbearance Period unless and until the forgoing conditions shall have been satisfied during such period.  The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary, without the need for any further order of the Bankruptcy Court, to permit the DIP Repo Parties to exercise all rights and remedies under the DIP Repo Documents and under this Interim Order, in accordance with the terms of this Interim Order.

e.     No failure on the part of the DIP Repo Agent or a DIP Repo Party to exercise, and no delay by the DIP Repo Agent or DIP Repo Party in exercising, any right, power

---

[15]    Capitalized terms used but not defined in this subsection shall have the meanings set forth in the DIP Repo Facility Agreement.

34

or remedy under this Interim Order (including rights or remedies under the safe harbor protections of the Bankruptcy Code referenced in Paragraph H of this Interim Order) or the DIP Repo Documents shall operate as a waiver of any such right, power or remedy, nor shall any single or partial exercise by the DIP Repo Agent or a DIP Repo Party of any right, power or remedy under this Interim Order (including rights or remedies under the safe harbor protections of the Bankruptcy Code referenced in Paragraph H of this Interim Order) or the DIP Repo Documents preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

22.    ***Maintenance and Disposition of DIP Repo Collateral and Cash Management***.  Until the indefeasible payment in full in cash of all DIP Repo Obligations and the termination of the obligation of the DIP Repo Parties to extend liquidity pursuant to the DIP Repo Facility, the Debtors shall maintain their cash management system as in effect as of the Petition Date, (i) subject to the DIP Repo Documents, (ii) subject to the terms of this Interim Order, and (iii) subject to any orders of the Bankruptcy Court with respect to the Debtors' cash management system. The Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Repo Collateral (or the proceeds thereof) without the prior written consent of the DIP Repo Agent or the DIP MSFTA Counterparties, as applicable, in accordance with the DIP Repo Documents, as applicable, (and no consent shall be implied from any other action, inaction, or acquiescence by the DIP Repo Agent or the DIP MSFTA Counterparties, or from any order of this Court), except as otherwise provided in the DIP Repo Documents or otherwise ordered by the Bankruptcy Court.

23.    ***Rights of Access and Information***.  Without limiting the rights of access and information afforded the DIP Repo Parties under the DIP Repo Documents, the Debtors shall

35

be, and hereby are, required to afford Representatives, agents and/or employees of the DIP Repo Agent reasonable access to: (a) the Debtors' premises, (b) knowledgeable officers of the Debtors, (c) the Debtors' books and records, (d) the Debtors' properties and other collateral of any Debtor against whom such parties are granted DIP Repo Liens under this Interim Order, (e) all reports and information furnished to the Cash Flow DIP Lender (or its advisors) under the Cash Flow DIP Documents and the Cash Flow DIP Order; and (f) the Sponsor, (or its advisors). The Debtors shall reasonably cooperate, consult with, and provide to the DIP Repo Agent and the DIP Repo Parties all such information as may be reasonably requested.

24. ***Restrictions on Use of Proceeds of the DIP Repo Facility.*** None of the DIP Repo Facilities or any proceeds thereof, or any portion of the Carve-Out (as defined in the Cash Flow DIP Order), may be used to pay, directly or indirectly by the Debtors, non-Debtor affiliates, any Creditors' Committee, any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Case, or any other party (or to pay any professional fees, disbursements, costs, or expenses incurred in connection therewith) for any of the following actions or activities without the written consent of the DIP Repo Agent and the DIP MSFTA Counterparties: (a) to seek authorization to obtain liens or security interests on any asset of the Debtors that constitutes the DIP Repo Collateral or is otherwise subject to the DIP Repo Liens or claims that are senior to, or on parity with, the DIP Superpriority Claims (other than as provided here for in this Interim Order with respect to the DIP Superpriority Claims against Maverick II); (b) to seek authorization to obtain claims against the Debtors or their property that are senior to, or *pari passu* with, the liens and claims identified in the preceding sub-clause (a); or (c) except as expressly set forth herein, directly or indirectly prepare, assert, join, commence, support, or

36

prosecute any action for any claim, counterclaim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or any other relief against, or adverse to the interests of, the DIP Repo Parties and any of their respective Representatives with respect to any transaction, occurrence, omission, action, or other matter, including, without limitation, (i) any Avoidance Action, (ii) any "lender liability" claims and causes of action, (iii) any action with respect to the validity, enforceability, priority and extent of, or asserting any defense, counterclaim, or offset to, the DIP Repo Liens, the DIP Superpriority Claims, or the DIP Repo Obligations, (iv) any action seeking to invalidate, modify, reduce, expunge, disallow, set aside, avoid, or subordinate, in whole or in part, any of the obligations identified in the preceding clause (iii), (v) any action seeking to modify any of the rights, remedies, priorities, privileges, protections, and benefits granted to the parties hereunder or under any of the documents referred to herein, including claims, proceedings, or actions that might prevent, hinder, or delay any of such parties' assertions, enforcement, realizations, or remedies on or against their collateral and rights herein, or (vi) objecting to, contesting with, or interfering with, in any way, such parties' enforcement or realization upon any of their collateral or rights, once a DIP Event of Default has occurred; *provided* that the Debtors shall be permitted to challenge the validity of any alleged DIP Event of Default.

25.    ***No Direct Obligation to Pay Allowed Fees; No Waiver of Right to Object to Fees.***  The DIP Repo Parties shall not be responsible for (i) the payment or reimbursement of any Prepetition Repo Facility Obligations or (ii) payment or reimbursement of any fees or disbursement of any professional incurred in connection with these Chapter 11 Cases, any Successor Case, or otherwise.  Nothing in this Interim Order or otherwise shall be construed: (a) to obligate the DIP Repo Parties in any way, to pay compensation to, or reimburse expenses of,

37

any professional or to guarantee that the Debtors have sufficient funds to pay such compensation

or reimbursement; (b) as consent to the allowance of any fees and expenses of any professionals;

or (c) to affect the rights of the DIP Repo Parties, or any other party in interest to object to the

allowance and payment of such fees and expenses.

26. ***Automatic Perfection of DIP Repo Liens.***

a. This Interim Order shall be sufficient and conclusive evidence of the

validity, perfection, and priority of the DIP Repo Liens without the necessity of filing or recording

financing statements, intellectual property filings, mortgages, notices of lien or similar

instruments in any jurisdiction, taking possession of or control over any assets, or taking any other

action to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Repo

Liens or to entitle the DIP Repo Parties to their respective priorities granted herein.

b. Notwithstanding the foregoing, and without in any way limiting

Paragraph 6 above, the DIP Repo Parties are hereby authorized, but not required, to file or record

(and to execute in the name of the Debtors), as their true and lawful attorneys, with full power of

substitution, to the maximum extent permitted by law, financing statements, intellectual property

filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or

control over any assets, or take any other action, as they may elect, in order to validate and perfect

the liens and security interests granted to them hereunder.  Whether or not the DIP Repo Parties

choose, in their sole discretion, to file such financing statements, intellectual property filings,

mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control

over any assets, or otherwise confirm perfection of the liens and security interests granted to the

DIP Repo Parties hereunder, such liens and security interests shall be deemed valid, perfected,

allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination

38

(subject to the priorities set forth in this Interim Order) immediately upon entry of this Interim Order.

c.    The DIP Repo Parties may, but shall not be obligated to, obtain consents from any landlord, licensor, or any other party in interest to file mortgages, financing statements, notices of lien or similar instruments, or otherwise record or perfect their security interests and liens, in which case: (i) all such documents shall be deemed to have been recorded and filed as of the time and on the date of entry of this Interim Order; and (ii) no defect in any such act shall affect or impair the validity, perfection or enforceability of such liens. The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Repo Parties to take all actions, as applicable, referenced in this sub-clause (c).

d.    The Debtors are authorized to execute and deliver promptly upon demand by the DIP Repo Parties all such financing statements, mortgages, notices and other documents as the DIP Repo Parties may reasonably request. The Debtors are authorized to, and shall, execute and deliver to the DIP Repo Parties, such agreements, financing statements, mortgages, instruments and other documents as the DIP Repo Parties may reasonably request to evidence, confirm, validate, or perfect the DIP Repo Liens and the failure by the Debtors to execute or deliver any documentation relating to the DIP Repo Liens shall in no way affect the validity, enforceability, nonavoidability, perfection, or priority of such liens.

e.    In lieu of obtaining such consents or filing any such mortgages, financing statements, notices of lien or similar instruments, the DIP Repo Parties may, but shall not be obligated to, file a true and complete copy of this Interim Order and, following entry of the Final Order, the Final Order, in any place at which any such instruments would or could be filed, together with a description of the DIP Repo Liens and DIP Repo Collateral, and such filings by

39

the DIP Repo Parties shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien or similar instruments had been filed as of the entry of this Interim Order.

    f.  The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary, without the need for any further order of the Bankruptcy Court, to permit the DIP Repo Parties to effectuate all the terms and provisions and exercise all rights and remedies under the DIP Repo Documents and this Interim Order.

    27.  ***Good Faith***.  The DIP Repo Parties have acted in good faith in connection with this Interim Order and their reliance on this Interim Order is in good faith.  Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, in accordance with sections 363(m) and 364(e) of the Bankruptcy Code, as applicable, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of the Bankruptcy Court, or any other court, the DIP Repo Parties are entitled to the protections provided in sections 363(m) and 364(e) of the Bankruptcy Code, as applicable.  Any such modification, amendment or vacatur shall not affect the validity and enforceability of the DIP Repo Obligations, the DIP Repo Liens, or the DIP Superpriority Claims.  Any liens or claims granted to the DIP Repo Parties hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

099900.16053 EMF_US 90535705v13

28.     ***Proofs of Claim***.  None of the DIP Repo Parties shall be required to file proofs of claim in the Chapter 11 Cases, including with respect to other claims not the subject of this Interim Order, and the Debtors' stipulations in this Interim Order or the Final Order shall be deemed to constitute a timely filed proof of claim.  Any order entered by the Bankruptcy Court in connection with the establishment of a bar date for any claim (including without limitation administrative claims) in the Chapter 11 Cases or any Successor Case shall not apply to the DIP Repo Parties.  Notwithstanding the foregoing, or any subsequent order of the Bankruptcy Court concerning proof of claim filing requirements, the DIP Repo Agent is authorized (but not obligated) to file a single master proof of claim in the Chapter 11 Cases on behalf of themselves and the DIP Repo Parties on account of their claims arising under the DIP Repo Documents or otherwise.

29.     ***No Third Party Rights***.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect or incidental beneficiary.

30.     ***Credit Bidding.***  No entity other than the DIP Repo Parties shall have a right to credit bid in connection with any sale that includes any DIP Repo Collateral whatsoever, unless the DIP Repo Obligations are indefeasibly paid in full in cash.

31.     ***U.S. Government***.  In determining to make any loan under the DIP Repo Documents or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Repo Documents, the DIP Repo Agent shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors, so long as the DIP Repo Parties' actions

41

do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by a Debtor, or otherwise cause liability to arise to the federal or state government or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq*., as amended, or any similar federal or state statute).  Nothing in this Interim Order or the DIP Repo Documents shall permit the Debtors to violate 28 U.S.C. § 959(b).  As to the United States, its agencies, departments, or agents, nothing in this Interim Order or the DIP Repo Documents shall discharge, release or otherwise preclude any valid right of setoff or recoupment that any such entity may have.  Nothing in this Interim Order or the DIP Repo Documents shall be construed to limit the right of any governmental unit to take any action not subject to the automatic stay.

32. ***Discharge Waiver***.  The Debtors expressly stipulate, and the Bankruptcy Court finds and adjudicates that, none of the obligations, liens or superpriority claims granted or approved by this Interim Order shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations, as applicable, have been indefeasibly paid in full in cash on or before the effective date of a confirmed plan of reorganization.

33. ***Modification of Automatic Stay***.  The automatic stay provisions of Section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary, without the need for any further order of the Bankruptcy Court, to permit the DIP Repo Parties to effectuate all the terms and provisions and exercise all rights and remedies under the DIP Repo Documents and this Interim Order.

42

34.    ***No Waiver by Failure to Seek Relief***.  The failure or delay of any DIP Repo Parties to seek relief or otherwise exercise their respective rights and remedies under this Interim Order or the documents governing such agreements or facilities, or applicable law, as the case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise.

35.    ***Binding Effect of Interim Order***.    Immediately upon entry by the Bankruptcy Court (notwithstanding any applicable Bankruptcy Rules or any other law or rule to the contrary), the terms and provisions of this Interim Order, including the liens granted herein, shall become valid and binding upon and inure to the benefit of all the parties hereto and their respective successors and assigns.  To the extent there is any applicable stay of this Interim Order, it is hereby waived.

36.    ***No Modification of Interim Order***.  The Debtors irrevocably waive the right to seek and shall not seek or consent, directly or indirectly without the prior written consent of the DIP Repo Agent and the DIP Repo Parties, which consent may be refused in their sole and absolute discretion: (a) any modification, stay, vacatur, amendment or extension of this Interim Order; and (b) the granting of a priority claim for any administrative expense or unsecured claim against the Debtors in the Chapter 11 Cases or any Successor Case, equal or superior to any lien or superpriority claim granted pursuant to this Interim Order.

37.    ***Interim Order Controls***.  In the event of any inconsistency between the terms and conditions of the DIP Repo Documents, this Interim Order, the Cash Management Orders, or the Cash Flow DIP Order, the provisions of this Interim Order shall govern and control solely to the extent of the inconsistency.

38.    ***Survival***.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) confirming any plan of

43

reorganization in the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or any Successor Case; or (d) pursuant to which the Bankruptcy Court abstains from hearing the Chapter 11 Cases or any Successor Case.  The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted pursuant to this Interim Order, notwithstanding the entry of any such order, shall continue in the Chapter 11 Cases, in any Successor Case, or following dismissal of any of the Chapter 11 Cases or any Successor Case, and shall maintain their priority as provided in this Interim Order until all obligations related thereto have been paid in full.

39.      ***Preservation of Rights Granted Under this Interim Order***.

a.      Without in any way limiting the preceding Paragraph, if an order dismissing the Chapter 11 Cases under sections 305 or 1112 of the Bankruptcy Code or otherwise is at any time entered, the Debtors shall request that such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the liens and superpriority claims granted pursuant to this Interim Order shall continue in full force and effect, shall maintain their priority as provided in this Interim Order and shall, notwithstanding such dismissal, remain binding on all parties in interest until all obligations pertaining thereto shall have been indefeasibly paid in full in cash (with interest) and the related commitments shall have been terminated in accordance with their terms and (ii) the Bankruptcy Court shall retain non-exclusive jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such claims and obligations.

b.      If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity and enforceability of any obligations incurred prior to the actual receipt by the affected parties of written notice of the effective date of such reversal, stay, modification or

44

vacation and (ii) the validity and enforceability of the liens and superpriority claims authorized or created hereby.   Notwithstanding any such reversal, stay, modification or vacation, the obligations incurred by the Debtors hereunder and under the applicable documents, prior to the actual receipt of written notice of the effective date of such reversal, stay, modification or vacation, shall be governed in all respects by the original provisions of this Interim Order, and the parties shall be entitled to all the rights, remedies, privileges and benefits of sections 363(m) and 364(e) of the Bankruptcy Code, this Interim Order and pursuant to the applicable documents.

40.     ***Final Hearing.***  The Final Hearing is scheduled for [●], 2022 at [●] [a.m. / p.m.] (Eastern Time) before the Honorable [ _____ ],   United  States  Bankruptcy  Judge,  the United States Bankruptcy Court for the District of Delaware, [ _____ ].   Any objections to the entry of the Final Order shall be filed and served on the following parties so as to be received by [●], 2022 at [●] [a.m. / p.m.] (Eastern Time):  (a) counsel to the Debtors, (b) the United States Trustee, (c) the Debtors' 50 largest unsecured non-insider creditors, (d) and counsel to Barclays Bank PLC, Hunton Andrews Kurth LLP, 200 Park Avenue, New York, NY 10166 (Attn: Peter S. Partee, Sr. and Brian Clarke) and Potter Anderson & Corroon LLP, 1313 N. Market Street, 6th Floor, Wilmington, Delaware, 19801 (Attn. Jeremy W Ryan).

41.     ***Retention of Jurisdiction***.  The Bankruptcy Court shall retain jurisdiction to enforce this Interim Order according to its terms to the fullest extent permitted by applicable law.

Dated: _____, 2022
        Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

45