## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FIRST GUARANTY MORTGAGE CORPORATION, *et al.*,[1] | Case No. 22-10584 (CTG) |
| Debtors. | (Joint Administration Requested) |
| | Re: D.I. 5, 20, 22 |
| | Hearing Date: July 1, 2022 at 10:00 a.m. (ET) |

### FLAGSTAR BANK, FSB'S PRELIMINARY OBJECTION TO
### DEBTORS' FINANCING MOTIONS AND CASH MANAGEMENT MOTION

Flagstar Bank, FSB ("Flagstar"), in its capacity as lender under the Mortgage Warehousing

Loan and Security Agreement, dated as of June 30, 2017 (as amended, restated or otherwise

modified, the "Flagstar Loan Agreement"), hereby files this preliminary objection

(the "Objection") to *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the*

*Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Authorizing the Debtors to*

*Use Cash Collateral; (III) Granting Liens and Providing Superpriority Administrative Expense*

*Status; (IV) Granting Adequate Protection; (V) Modifying the Automatic Stay; (VI) Scheduling a*

*Final Hearing; and (VII) Granting Related Relief* [D.I. 22] (the "Cash Flow DIP Motion"),

*Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Enter into*

*Repurchase Agreement Facilities; (II) Authorizing the Debtors to Sell and Repurchase Mortgage*

*Loans in the Ordinary Course of Business; (III) Granting Liens and Providing Super-priority*

*Administrative Expense Status; (IV) Modifying the Automatic Stay; (V) Scheduling a Final*

*Hearing with Respect to the Relief Requested Herein; and (VI) Granting Related Relief* [D.I. 20]

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: First Guaranty Mortgage Corporation (9575); and Maverick II Holdings, LLC (5621). The Debtors' mailing address is 5400 Tennyson Parkway, Suite 450, Plano, TX 75024.

(the "Repo DIP Motion" and together with the Cash Flow DIP Motion, the "Financing Motions")
and *Motion of the Debtors for Entry of Interim and Final Orders: (I) Authorizing Use of Cash
Management Procedures, Bank Accounts, and Certain Payment Methods; (II) Prohibiting Setoffs
and Freezing of Bank Accounts; (III) Modifying Requirements of Section 345(b) of the Bankruptcy
Code; and (IV) for Related Relief* [D.I. 5] (the "Cash Management Motion") filed by the debtors
and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases
(the "Chapter 11 Cases").  In support of this Objection, Flagstar respectfully states as follows:[2]

## PRELIMINARY STATEMENT

1.      On less than 24 hours' notice before a holiday weekend, the Debtors seek the
Court's imprimatur to enter into two DIP loan facilities (one of which has not even been filed yet)
that will, if approved, repay or roll-up junior obligations to insider affiliates, grant insiders senior
liens on debt previously secured by junior ones, and use cash collateral of the Prepetition Lenders
(including Flagstar) on a nonconsensual basis for cases that, at least currently, appear to be entirely
for the benefit of Debtors' insiders.  The Debtors' Interim DIP Budget shows no financing needs
before the week of July 17, 2022 to justify running roughshod over the rights of other secured
parties many of whom, like Flagstar, had no advance notice of the bankruptcy filing.  Given the
complex nature of these DIP loan facilities and the lack of fulsome disclosures and supporting
evidence, and considering the heightened scrutiny demanded of insider transactions and the lack
of an emergency funding need, approval of these motions should be deferred so that parties have
more time to review the materials and confer before their rights are impacted.  At the very least,

---

[2]      Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Cash Flow DIP Motion,
the Repo DIP Motion and the Cash Management Motion, as applicable.

secured lenders, like Flagstar, should have absolutely clarity on whether their liens are being primed by either of the DIP Facilities, and if so, how their liens are being adequately protected.[3]

2.      If not deferred, the Financing Motions should be denied to the extent they seek use of the Prepetition Lenders' collateral, including cash collateral, without the provision of adequate protection to the Prepetition Lenders.  Flagstar has not and does not consent to use of its collateral, including cash collateral (nor did the Debtor seek its consent) in these cases.  Therefore, the burden is on the Debtors to demonstrate that Flagstar's liens are adequately protected.  Rather than satisfy their burden, the Debtors, offer secured creditors, like Flagstar, only replacement liens on collateral they already have and claims subordinate to the superpriority claims of the DIP Lenders and the Carve-Out.  Controlling precedent in this Circuit holds that replacement liens on existing collateral are not adequate protection.  *Resolution Tr. Corp. v. Swedeland Dev. Grp. (In re Swedeland Dev. Grp.)*, 16 F.3d 552, 565 (3d Cir. 1994).

3.      Worse yet, the nature of the adequate protection offered has the effect of impermissibly priming the Prepetition Lenders' interests.  The Prepetition Lenders are offered only junior liens on their existing collateral and a junior "superpriority" claim as adequate protection for the use of their cash collateral.  This causes the Prepetition Lenders' position to be primed because their priority collateral is being consumed and will not be replaced and any purported claims they receive are made junior to the liens and claims of the Cash Flow DIP Lender.  The Debtors fail completely to call this priming to the Court's attention, let alone justify it in any way

---

[3]     Among many ambiguities, pursuant to the Interim DIP Order, the Cash Flow DIP Lender is to receive first-priority priming liens on "Prepetition Bridge Loan Collateral."  "Prepetition Bridge Loan Collateral" is defined as all collateral securing the Prepetition Bridge Loan prior to the filing.  However, no distinction is made between collateral on which the Prepetition Bridge Loan Lender had a senior lien and collateral on which the lender had only a lien junior to existing senior debt, including the collateral securing the Flagstar Loans.  *See Declaration of Aaron Samples in Support of Chapter 11 Petitions and First Day Pleadings* ("First Day Decl.") [D.I. 19] at ¶ 22. As a result, it is unclear whether the insider DIP Loans are actually priming loans.

with evidence or argument (this is just one of many failures to disclose or explain key information about the relief the Debtors are seeking).

4.      The Debtors have the burden to fully disclose and justify the relief they are seeking, including demonstrating their emergency need for financing and adequate protection of the Prepetition Lenders' positions.  Because the Debtors have failed to satisfy that burden, the Financing Motions and the Cash Management Motion should be denied.

## **BACKGROUND**

5.      On June 30, 2022 (the "Petition Date"), each of Debtors, First Guaranty Mortgage Corporation ("FGMC") and Maverick II Holdings, LLC, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      Prior to the Petition Date, Flagstar, one of the Debtors' warehouse Prepetition Lenders, made loans to Debtor FGMC to finance the origination, funding or acquisition of residential mortgage loans (the "Pledged Mortgage Loans") pursuant to the Flagstar Loan Agreement.  As security for FGMC's obligations under the Flagstar Loan Agreement, FGMC granted Flagstar a first priority security interest in, among other things:  (a) all Pledged Mortgage Loans, (b) all rights of FGMC under any and all commitments issued by (i) Ginnie Mae, Fannie Mae, Freddie Mac, another mortgage company or any other investor, purchaser or securities issuer, to guarantee, purchase or invest any of the Pledged Mortgage Loans, (c) all rights to service any of the Pledged Mortgage Loans, (d) all rights of FGMC in, to and under any mortgage-backed securities secured by, created from or representing any interest in or otherwise relating to any of the Pledged Mortgage Loans, (e) all income related to the Pledged Mortgage Loans, (f) all accounts and all other rights to the payment of the foregoing collateral, (g) the Custodial Account (as defined

in the Flagstar Loan Agreement), (h) all FGMC's deposit accounts, deposits, money, investment property or other property (except real property which is not a fixture) which are now or later in possession or control of Flagstar, or as to which Flagstar now or later controls possession by documents or otherwise, and (i) approximately $500,000 held in a restricted cash collateral account at Flagstar.  Pursuant to the Custodial Agreement, dated as of July 20, 2017 (as amended, restated or otherwise modified) by and among Flagstar, FGMC and Deutsche Bank National Trust Company, as custodian (the "Custodian"), the Custodian holds the mortgage notes and loan file for the Pledged Mortgage Loans for the benefit of Flagstar, as secured lender.

7.      As of the Petition Date, there were approximately 161 Pledged Mortgage Loans originated, funded or acquired, in whole or in part, by FGMC through advances under the Flagstar Loan Agreement.  Approximately $50 million remains outstanding under the Flagstar Loan Agreement exclusive of interest, fees and other costs, including curtailment charges that continue to accrue.

8.      Flagstar does not believe the Debtors have any equity in the Pledged Mortgage Loans which diminish in value the longer they are not sold.

## OBJECTION

9.      When a debtor proposes to prime a secured creditor's existing liens or use a secured creditor's collateral, the Bankruptcy Code requires that the debtor provide the secured creditor with adequate protection of its interests in that collateral unless the secured creditor consents.  *See* 11 U.S.C. §§ 361, 362, 363, 364; *In re Swedeland*, 16 F.3d at 564 ("A debtor has the burden to establish that the holder of the lien to be subordinated has adequate protection."). "[T]he purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy."  *Id.* at 564 (quoting *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir.

1987)).  Adequate protection "should provide the pre-petition secured creditor with the same level of protection it would have had if there had not been post-petition superpriority financing."  *Id*.

10.    Here, the Cash Flow DIP Facility should be denied because the Debtors fail to establish either the need to use the Prepetition Lenders' collateral or the sufficiency of the adequate protection purportedly being offered.  The proposed Interim Cash Flow DIP Order limits the Prepetition Lenders' Adequate Protection Liens to the "the same property of the Debtors on which the Prepetition Lenders had a perfected, first-priority security interest and lien prior to the Petition Date," which is declining in value over time.  *See* Interim Cash Flow DIP Order ¶ 15(a).  This collateral is the same collateral the Prepetition Lenders already have, and it offers no new or additional value for the liens.  Worse yet, the Adequate Protection Liens are also made subordinate to the Cash Flow DIP Liens, the DIP Repo Guarantee Liens and the Carve-Out, which has the effect of impermissibly priming the Prepetition Lenders' interests.  *Id*.  Precedent in this Circuit holds that such adequate protection is not sufficient.  *See In re Swedeland*, 16 F.3d at 565 (holding that the bankruptcy court erred in considering continuing post-petition liens in the same proceeds that the secured creditor already had liens on to be adequate protection).

11.    In addition, the Debtors fails to demonstrate the need to use any of the Prepetition Lenders' collateral, including cash collateral, especially during the Interim Period.  According to the Debtors' Initial DIP Budget, the Debtors will only expend an aggregate of $6.6 million over the first 4 weeks, leaving sufficient liquidity through the Final Hearing using only proceeds of the Cash Flow DIP Facility.  Even after the Cash Flow DIP Facility is approved on a final basis, the Debtors budget shows that the Debtors maintain a cash balance of at least $5 million for every week over the course of the remaining of 8-week period by the end of which time the Debtors are required to have sold their mortgage loans under their DIP milestones.  As there is no manifest

need for the Debtors to use Flagstar's collateral or adequate protection and Flagstar does not consent to such use for what appears to be the benefit of the Debtors' insiders, the Financing Motions should be denied.

## **RESERVATION OF RIGHTS**

12.     Flagstar reserves all rights to supplement and/or amend this preliminary objection prior to or at any interim or final hearing on the Financing Motions and the Cash Management Motion.  In addition, nothing set forth in this preliminary objection should be deemed a waiver of any objections or arguments that Flagstar may have with respect to the Financing Motions, the Cash Management Motion or any other motions filed by the Debtors.

13.     Further, to the extent the Court grants the Financing Motions and the Cash Management Motion, Flagstar expressly does not consent to the subordination of its adequate protection liens to the Carve-Out.  Such a carve out is a consensual subordination and cannot be imposed on a lienholder that does not consent.


*[Remainder of page intentionally left blank]*

## CONCLUSION

For the reasons set forth in this Objection, the Court should deny the Financing Motions and the Cash Management Motion and grant such other and further relief as it deems just and proper.

Dated:   July 1, 2022
         Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Tori L. Remington*
Robert J. Dehney (No. 3578)
Matthew B. Harvey (No. 5186)
Tori L. Remington (No. 6901)
1201 North Market Street 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989
Email: rdehney@morrisnichols.com
       mharvey@morrisnichols.com
       tremington@morrisnichols.com

-and-

**MORGAN, LEWIS & BOCKIUS LLP**
Jennifer Feldsher
T. Charlie Liu
101 Park Avenue
New York, New York 10178-0060
Telephone:  (212) 309-6000
Facsimile:  (212) 309-6001
Email:  jennifer.feldsher@morganlewis.com
        charlie.liu@morganlewis.com

*Counsel to Flagstar Bank, FSB*