# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FIRST GUARANTY MORTGAGE CORPORATION, *et al.*[1]<br><br>                              Debtors. | Chapter 11<br><br>Case No. 22-10584 (CTG)<br><br>(Jointly Administered) |

## CUSTOMERS BANK'S EMERGENCY MOTION SEEKING INTERIM AND FINAL RELIEF REQUIRING DEBTORS TO SEGREGATE AND ACCOUNT FOR CASH COLLATERAL IN COMPLIANCE WITH 11 U.S.C. § 363(C)(4)

Customers Bank, by and through its undersigned counsel, hereby submits this emergency motion (the "Motion") seeking entry of an interim order and a final order requiring the debtors and debtors-in-possession, including First Guaranty Mortgage Corporation (collectively, "FGMC" or the "Debtors") to comply with the requirements of Section 363(c)(4) of Title 11 of the United States Code (the "Bankruptcy Code") by segregating and accounting for all of Customers Bank's cash collateral, from whatever source, including payments from the Mortgage Loans (defined below) and payments on account of Related Securities (defined below). Customers Bank further requests relief requiring FGMC deposit said payments into a sequestered account created by FGMC in order to protect Customers Bank's interest in the cash collateral under the Repurchase Agreement (defined below) and provide certain information concerning such accounts. Customers Bank respectfully sets forth and represents as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: First Guaranty Mortgage Corporation (9575); and Maverick II Holdings, LLC (5621). The Debtors' mailing address is 5400 Tennyson Parkway, Suite 450, Plano, TX 75024.

4892-3116-1897\4

**PRELIMINARY STATEMENT**

1. By this Motion, Customers Bank respectfully requests that the Court enter an order enforcing the provisions of Bankruptcy Code § 363(c)(4) to protect Customers Bank's interest in the cash collateral which is now, or may hereafter be, in FGMC's possession, custody or control. Section 363(c)(4) requires the debtor and debtor-in-possession to segregate and account for any cash collateral in the debtor's possession, custody or control, absent an interested party's consent or a court order as set forth in Section 363(c)(2). Customers Bank has **not** consented to FGMC's use, sale or lease of its cash collateral, and this Court has not authorized such use, sale or lease in accordance with the provisions of Section 363(c)(2). Furthermore, such lack of consent has clearly and unequivocally been communicated to the Debtors. Accordingly, this relief is necessary to ensure Customers Bank is not prejudiced or deprived of its statutory rights under the Bankruptcy Code and its contractual rights under the Repurchase Agreement.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* entered February 29, 2012, by the United States District Court for the District of Delaware. This is a core proceeding under 28 U.S.C. § 157(b)(2) and the Court may enter an order consistent with Article III of the United States Constitution. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein include Bankruptcy Code §§ 105(a), 363, Rule 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1 of the Local Rules for the Unites States Bankruptcy Court for the District of Delaware (the "Local Rules").

## BACKGROUND

### FGMC's Relationship with Customers Bank

4. Customers Bank and FGMC are party to two financing arrangements. First, pursuant to that certain Amended and Restated Loan Agreement, dated as of July 17, 2019 (as amended, restated, supplemented, or modified from time to time, the "<u>Loan Agreement</u>"), Customers Bank has made available to FGMC a revolving credit facility in order to provide working capital. *See* Declaration of Carol MacElree (the "<u>MacElree Declaration</u>"), filed simultaneously herewith, at ¶ 2.

5. Second, pursuant to a Second Amended and Restated Master Repurchase Agreement, dated as of October 9, 2019 (as amended, restated, supplemented or modified from time to time, the "<u>Repurchase Agreement</u>"), Customers Bank agreed to provide funding to FGMC in order to facilitate FGMC's purchase or closing of mortgages in exchange for the transfer to Customers Bank of the Mortgage Loans and related assets (the "<u>Purchased Assets</u>"), with a simultaneous agreement by Customers Bank to transfer the Purchased Assets to FGMC on a date certain. *Id.* at ¶ 3 & Ex A.

6. The Purchased Assets consist of the following[2]:

    (i)    all Mortgage Loans, including the related Note and Mortgage;
    (ii)   all mortgage files and Records related to the Mortgage Loans;
    (iii)  all Servicing Rights and Servicing Records relating to the Mortgage Loans and any other collateral pledged or otherwise relating to such Mortgage Loans, all mortgage guaranties and insurance (issued by an Agency or otherwise) and any mortgage insurance certificate or other document evidencing such mortgage guaranties or insurance relating to any Mortgage Loan;
    (iv)  any Take-out Commitments to the extent relating to the Mortgage Loans;
    (v)   any Hedge Agreements to the extent relating to the Mortgage Loans;
    (vi)  all of Seller's rights as the owner of the Mortgage Loans under any agreements or contracts relating to, constituting, or otherwise governing,

---

[2] Capitalized terms not otherwise defined herein shall have the meaning(s) ascribed to them in the Repurchase Agreement.

4892-3116-1897\4

<ul>
<li>any or all of the foregoing to the extent they relate to the Mortgage Loans including the right to receive principal and interest payments with respect to the Mortgage Loans and the right to enforce such payments and all insurance policies and insurance proceeds relating to any Mortgage Loan or the related Mortgaged Property, including, but not limited to, any payments or proceeds under any related primary insurance or hazard insurance;</li>
<li>(vii)    any Property relating to any Mortgage Loan or the related Mortgaged Property;</li>
<li>(viii)    any REO Property and the related Mortgage and grant deed delivered to Buyer (whether or not recorded) related to a Transaction hereunder;</li>
<li>(ix)    all Mortgage-backed Securities (i) that are backed in whole or in part by any Mortgage Loan, (ii) identified for purchase on any purchase commitment or otherwise identified for sale or pledge to Buyer, (iii) with respect to which Buyer or a third party acting on Buyer's behalf has been identified as the nominal or beneficial owner of such Mortgage-backed Security; or (iv) which have been delivered to or have otherwise come into the possession, custody or control of Buyer or a third party acting on Buyer's behalf, together with all cash and non-cash distributions in respect of the foregoing (collectively the "Related Securities" and each a "Related Security");</li>
<li>(x)    all deposit accounts maintained in Seller's name with Buyer;</li>
<li>(xi)    any deposit accounts or any share thereof, maintained in Seller's name with any institution, related to any of the foregoing collateral or proceeds thereof, including proceeds of any Take-out Commitments;</li>
<li>(xii)    the Purchase Documents (to the extent such Purchase Documents and Seller's rights thereunder relate to the Mortgage Loans);</li>
<li>(xiii)    all Income relating to the Mortgage Loans;</li>
<li>(xiv)    all closing protection letters relating to the Mortgage Loans;</li>
<li>(xv)    any other assets or contract rights, accounts, deposit accounts (including any interest of Seller in escrow accounts), payments, rights to payment (including payments of interest or finance charges), "chattel paper", "investment property" and general intangibles to the extent that any of the foregoing relates to any Mortgage Loan;</li>
<li>(xvi)    any and all replacements, substitutions, distributions on or proceeds of any and all of the foregoing; and</li>
<li>(xvii)    any other Property, rights, title or interests as are specified on a Purchase Request and/or Trust Receipt.</li>
</ul>

*Id.* at ¶ 4 & Ex. A at § 5(a).

7.    Customers Bank understands that Rushmore Loan Management Services LLC presently acts as subservicer of the Mortgage Loans (the "Subservicer"), the Subservicer has

agreed to tender all Income from the Mortgage Loans to FGMC, and the Subservicer tenders such payment on or after the 18th calendar day of each month.[3] *Id.* at ¶ 5.

8.  On or about July 6, 2022, in accordance with and as allowed by Section 559 of the Bankruptcy Code, Customers Bank exercised its rights under Section 10(b) of the Repurchase Agreement and sent a letter to Subservicer demanding payment under Sections 9-406 and 9-607 of the Pennsylvania Uniform Commercial Code (the "9-406 Notice"). *Id.* at ¶ 6. In particular, Customers Bank demanded that the Subservicer segregate all Income collected on account of the Mortgage Loans and remit all such income to Customers Bank. *Id.* at ¶ 6 & Ex. B. To date, the Subservicer has not agreed to comply with this demand. *Id.* at ¶ 7.

9.  In order to secure FGMC's obligations under the Repurchase Agreement, Customers Bank and certain other warehouse providers entered into an Amended and Restated Joint Securities Account Control Agreement dated as of August 11, 2017 (as amended, restated, supplemented or modified from time to time, the "JSACA"), with Deutsche Bank National Trust Company ("Securities Intermediary"). *Id.* at ¶ 8 & Ex C. Pursuant to the JSACA, the Securities Intermediary agreed to establish certain joint accounts (the "JSACA Accounts") in the name of FGMC and for the benefit of Customers Bank and the other warehouse providers, as their interests may appear. *Id.* at ¶ 9 & Ex C at § 3(a). The JSACA expressly provides that FGMC shall not have any right to direct the disposition of securities or funds in the Joint Securities Account without the approval of the warehouse providers. *Id.* The Joint Securities Account currently contains securities issued or guaranteed by Fannie Mae, Freddie Mac or Ginnie Mae (collectively, the "Agencies")

---

[3] At this time, Customers Bank does not know whether there are any other entities acting as subservicer with respect to the Repurchase Agreement. *See* MacElree Declaration at fn. 3.

4892-3116-1897\4

with a value, according to information provided by FGMC, of approximately $122,000,000. *Id.* at ¶ 10.

10. One or more of the Agencies may make payments to FGMC on account of the Related Securities being held by the Securities Intermediary. Such payments are also, in part, Purchased Assets under the Repurchase Agreement. *Id.* at ¶ 11.

**The Bankruptcy Proceedings**

11. On June 30, 2022 (the "Petition Date"), FGMC and Maverick II Holdings, LLC ("Maverick") and, together with FGMC, the "Debtors") filed voluntary Chapter 11 petitions for relief in the United States Bankruptcy Court for the District of Delaware (the "Court").

12. On the Petition Date, the Debtors filed a variety of first day motions, including: (a) Motion of the Debtors for Entry of Interim and Final Orders: (I) Authorizing Use of Cash Management Procedures, Bank Accounts, and Certain Payment Methods; (II) Prohibiting Setoffs and Freezing of Bank Accounts; (III) Modifying Requirements of Section 345(b) of the Bankruptcy Code; and (IV) for Related Relief [Dkt. 5] (the "Cash Management Motion"); and (b) Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Liens and Superpriority Administrative Expense Status; (IV) Granting Adequate Protection; (V) Modifying the Automatic Stay; (VI) Scheduling a Final Hearing; and (VII) Granting Related Relief [Dkt. 22] (the "Cash Flow DIP Motion").

13. Customers Bank objected to the Cash Management Motion and Cash Flow DIP Motion. *See* Dkt. 36. Customers Bank and the Debtors ultimately resolved Customers Bank's objection (without prejudice to Customers Bank's right to object to final relief with respect to the

motions) by carving Customers Bank and its accounts and collateral out of the interim orders with respect to the Cash Management Motion and the Cash Flow DIP Motion.

14. In particular, in the interim order granting the Cash Management Motion [Dkt. 61] ("Interim Cash Management Order"), the following provisions are expressly **not** applicable to any deposit accounts located at Customers Bank, the JSACA Accounts, or any collateral for the Repurchase Agreement, including cash collateral and proceeds of collateral:

    a. The Debtors' right to make disbursements from bank accounts;

    b. The Debtors' right to close any existing bank accounts;

    c. The Debtors' right to use deposits and cash in the ordinary course; and

    d. Customers Bank's right to offset, affect, freeze, or otherwise impede the Debtors' use of any funds deposited in any bank accounts.

Interim Cash Management Order at ¶¶ 5, 6, 9, 11, & 17.

15. The interim order granting the Cash Flow DIP Motion [Dkt. 67] (the "Interim Cash Flow DIP Order" and, together with the Interim Cash Management Order, the "Interim Orders"), similarly expressly provided that the relief granted to the Debtors would **not** apply to any deposit accounts located at Customers Bank, the JSACA Accounts, or any collateral for the Repurchase Agreement, including cash collateral and proceeds of collateral. Interim Cash Flow DIP Order at ¶ 37. Thus, while the Debtors were authorized to obtain certain post-petition financing and to use certain cash collateral on an interim basis, they were not authorized to use Customers Bank's cash collateral or prime any of Customers Bank's pre-petition liens.

16. Instead, the Cash Flow DIP Liens (as defined in the Interim Cash Flow DIP Order), are only permitted to attach to the carved out accounts and collateral on a junior basis to the extent of surplus proceeds from the disposition of the collateral, if any, and shall remain junior and

subordinate in all respects to the security interests of Customers Bank in Customers Bank's collateral. *Id.* Moreover, the Cash Flow DIP Liens:

a. Shall not in any respect limit the rights of Customers Bank to exercise its rights and remedies with respect to Customers Bank's collateral;

b. Shall be automatically released without further action upon disposition of such collateral or application of such collateral to obligations of the Debtors to Customers Bank;

c. Shall not give right to any notice or other rights under the Uniform Commercial Code or otherwise in connection with the disposition or application of Customers Bank's collateral; and

d. Shall not grant the Cash Flow DIP Lender (as defined in the Interim Cash Flow DIP Order) any rights of enforcement with respect to Customers Bank's collateral.

*Id.*

### Demand to Segregate and Account for Cash Collateral

17. As noted above, the Subservicer has not yet complied with, or indicated it would comply with, the 9-406 Notice. *See* MacElree Declaration at ¶ 7.

18. Upon information and belief, the Subservicer intends to tender payment directly to FGMC on or about July 18, 2022 of principal and interest with respect to the Mortgage Loans, notwithstanding the 9-406 Notice and Customers Bank's rights under the Repurchase Agreement, the Bankruptcy Code, and the Interim Orders.

19. On July 12, 2022, Customers Bank, through counsel, sent a letter to FGMC, through counsel, demanding that FGMC segregate and account for all of Customers Bank's cash collateral which is now, and which may hereafter be, in FGMC's possession, custody, or control pursuant to Bankruptcy Code § 363(c)(4) (the "July 12 Letter"). *Id.* at ¶ 12 & Ex. D. T The July 12 Letter demanded any payments received by FGMC on the Mortgage Loans or the Related Securities be deposited and held in segregated accounts in compliance with section 363(c)(4) and that FGMC

identify the account(s) that payments from the Subservicer or otherwise on the Mortgage Loans and from the Agencies or otherwise on the Related Securities will be deposited into, including the account number(s), and expected payment amount(s). Customers Bank also requested that FGMC agree to entry of a stipulated order regarding the same. *Id.* at ¶ 12 & Ex. D.

## Meet and Confer

20. Customers Bank is in discussions with FGMC regarding the demand for segregation and accounting. However, FGMC has not yet agreed to the demands in the July 12 Letter. *Id.* at ¶ 13.

21. Customers Bank will continue to attempt to reach an agreement with FGMC. However, because an agreement has not been reached yet and significant payments are expected to be tendered by the Subservicer on or about Monday, July 18, 2022, it is necessary to file this Motion now.

22. Accordingly, in order to avoid substantial prejudice and risk to Customers Bank's cash collateral, Customers Bank seeks compliance with and enforcement of Section 363(c)(4) of the Bankruptcy Code to safeguard those rights. *Id.* at ¶ 14.

## THE REQUESTED RELIEF

23. FGMC must segregate and account for all Customers Bank's cash collateral which is now, and which may hereafter be, in its possession, custody or control pursuant to Section 363(c)(4) of the Bankruptcy Code.

24. Section 363(c)(4) of the Bankruptcy Code requires the debtor and debtor-in-possession to "segregate and account for any cash collateral in the trustee's possession, custody, or control." 11 U.S.C.A. § 363(c)(4); *see also Matter of Vill. Properties, Ltd., 723 F.2d 441, 444 (5th Cir. 1984* ("the section [§ 363(c)(4)] requires the trustee to segregate and account for any cash

collateral in his possession."); *In re Scottsdale Med. Pavilion*, 159 B.R. 295, 302 (B.A.P. 9th Cir. 1993), aff'd, 52 F.3d 244 (9th Cir. 1995) ("Sequestration of cash collateral, including rents in which a creditor has a security interest, is automatic under" 11 U.S.C. § 363(c)(4)); *Matter of Wheaton Oaks Off. Partners Ltd. P'ship*, 27 F.3d 1234, 1240 (7th Cir. 1994); *In re Direct Media Power, Inc.,* 582 B.R. 739, 752 (Bankr. N.D. Ill. 2018), aff'd, No. 18 C 7397, 2019 WL 4601736 (N.D. Ill. Sept. 23, 2019) (holding debtor was "obligated to segregate and account for the cash collateral in its possession" pursuant to 11 U.S.C. § 363(c)(4)).

25.     The obligation to sequester cash collateral is mandatory unless and until one of two conditions occurs: (i) the applicable secured party consents to the use, sell or lease of its cash collateral, or (ii) the court enters an order authorizing such act(s) pursuant to Section 363(c)(2) of the Bankruptcy Code. 11 U.S.C.A. § 363(c)(2)&(4). "The Bankruptcy Code could not be more explicit as to the duty imposed upon a [trustee] to account for" and segregate a creditor's cash collateral. *In re Four Seasons Marine & Cycle, Inc.*, 263 B.R. 764, 768–69 (Bankr. E.D. Tex. 2001); *see also Id.* (trustee "under an absolute obligation to segregate and to account for all such cash collateral" in his possession, custody, or control); *Freightliner Mkt. Dev. Corp. v. Silver Wheel Freightlines, Inc.*, 823 F.2d 362, 367 (9th Cir. 1987) (same); *In re Las Vegas Monorail Co.*, 429 B.R. 317, 326 (Bankr. D. Nev. 2010) (same); *In re Rebel Rents, Inc.*, 307 B.R. 171, 182 (Bankr. C.D. Cal. 2004) (same).

26.     Accordingly, "these principles are not subject to dispute." *Four Season Marine & Cycle, Inc.*, 263 B.R. at 768 – 69. Unsurprisingly, Courts in this district often enter orders requiring such segregation. *See e.g.*, *In re Quicksilver Resources Inc.,* No. 15-10585-LSS, 2015 WL 1388612, at *8 (Bkrtcy. D. Del. Mar. 19, 2015) ("The Debtors shall fully comply with the accounting of Cash Collateral required by Bankruptcy Code section 363(c)(4) and shall also

4892-3116-1897\4

account for cash that is deposited by or for the benefit of the Debtors into the U.S. Operating Account."); *In re Gametech Intern., Inc.*, No. 12-11964 (PJW), 2012 WL 3451784 (Bkrtcy. D. Del. July 02, 2012) (requiring debtors to segregate and account for all cash collateral which is now, and may thereafter be in their possession, custody or control in accordance with section 363(c)(4) of the Bankruptcy Code, and prohibiting the transfer of any such cash collateral to any non-debtor affiliates or subsidiaries); *In re HSRE-CDS I, LLC*, No. 11-10972, 2011 WL 4478704 (Bkrtcy. D. Del. June 09, 2011) (ordering debtor to comply with 363(c)(4) of the Bankruptcy Code and requiring debtor to provide monthly financial statements to lender).

27. To date, Customers Bank has not consented to FGMC's use, sale or lease of its cash collateral, and this Court has not authorized such use, sale or lease in accordance with the provisions of Section 363(c)(2) of the Bankruptcy Code.

28. Customers Bank requests the Court enforce Section 363(c)(4) of the Bankruptcy Code and direct FGMC to segregate all Customers Bank's cash collateral and account for any payments received by FGMC from the Subservicer or otherwise on the Mortgage Loans and from any of the Agencies or otherwise on the Related Securities. Customers Bank further requests the Court order such cash collateral to be deposited and held in segregated accounts created by FGMC in compliance with Section 363(c)(4) of the Bankruptcy Code.

29. Customers Bank also requests the Court require FGMC to provide information to Customers Bank, by no later than Monday, July 18, at 9:00 a.m. ET and each week thereafter, regarding the expected payments from the Subservicer or otherwise on the Mortgage Loans and the Agencies or otherwise on the Related Securities, including identification of the segregated accounts the payments will be deposited into, the payment amounts, the dates of payments, and

the related payment history that reconciles to the total amount of payments being remitted for tracking and potential sale approval purposes.

30. Customers Bank requests a hearing on this Motion on shortened notice at the earliest date convenient for the Court and in no event later than the close of business on Friday, July 15, 2022, in order to resolve the issues discussed herein and avoid substantial prejudice and further risk of Customers Bank's cash collateral under the Repurchase Agreement. The final hearing on this Motion may be heard on ordinary notice at the Court's already scheduled second day hearing.

## **CONCLUSION**

**WHEREFORE**, for the reasons set forth above, Customers Bank respectfully requests that the Court enter an interim order and final order enforcing Section 363(c)(4) of the Bankruptcy Code and require FGMC to: (i) segregate and account for any payments it receives from Subservicer or otherwise on the Mortgage Loans and from the Agencies or otherwise on the Related Securities; (ii) deposit such sequestered payments into a segregated account created by FGMC in compliance with Section 363(c)(4) of the Bankruptcy Code; (iii) provide information regarding the expected payments from the Subservicer or otherwise on the Mortgage Loans and the Agencies or otherwise on the Related Securities, including identification of the accounts the payments will be deposited into, the payment amounts, the dates of payments, and the related payment history that reconciles to the total amount of payments being remitted for tracking and potential sale approval purposes; and (iv) grant such other, further, and different relief as the Court deems just and proper.

4892-3116-1897\4

Dated: July 13, 2022

By: */s/ Eric Lopez Schnabel, Esq.*
Eric Lopez Schnabel, Esq.
Alessandra Glorioso, Esq.
DORSEY & WHITNEY (DELAWARE) LLP
300 Delaware Avenue
Suite 1010
Wilmington, DE  19801
Telephone: (302) 425-7171
Facsimile: (302) 261-7419
E-mail: schnabel.eric@dorsey.com
       glorioso.alessandra@dorsey.com

 -and-

Thomas O. Kelly III, Esq.
DORSEY & WHITNEY LLP
50 South Sixth Street
Suite 1500
Minneapolis, MN 55402-1498
Telephone: (612) 492-6029
Facsimile: (612) 340-2868
E-mail: kelly.tom@dorsey.com

*Counsel to Customers Bank*