**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FIRST GUARANTY MORTGAGE CORPORATION, *et al.*,[1] | ) Case No. 22-10584 (CTG) |
| | ) |
| | ) (Jointly Administered) |
| | ) |
| Debtors. | ) **Objection Deadline: August 1, 2022 at 4:00 p.m. ET** |
| | ) **Hearing Date: August 23, 2022 at 10:00 a.m. ET** |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO EMPLOY AND RETAIN FTI CONSULTING, INC. TO PROVIDE THE DEBTORS A CHIEF RESTRUCTURING OFFICER AND CERTAIN ADDITIONAL PERSONNEL, (II) DESIGNATING TANYA MEEROVICH AS CHIEF RESTRUCTURING OFFICER FOR THE DEBTORS EFFECTIVE AS OF THE PETITION DATE, AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (the "Cases") hereby apply to the Court (the "Application") for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), authorizing the Debtors to (i) employ and retain FTI Consulting, Inc. ("FTI") to provide the Debtors with a Chief Restructuring Officer ("CRO") and certain additional supportive staff of FTI to assist the CRO, and (ii) designate Tanya Meerovich as CRO in the Cases effective as of the Petition Date (as defined below). In support of this Application, the Debtors rely on the *Declaration of Tanya Meerovich* attached hereto as **Exhibit B** (the "Meerovich Declaration"). In further support of this Application, the Debtors respectfully represent as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: First Guaranty Mortgage Corporation (9575); and Maverick II Holdings, LLC (5621). The Debtors' mailing address is 5800 Tennyson Parkway, Suite 450, Plano, TX 75024.

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtor confirms its consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. § 1408.

3. The bases for the relief sought herein are sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2016-1 and 2016-2.

**BACKGROUND**

4. On June 30, 2022 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtors' chapter 11 cases. On July 14, 2022, the Office of the United States Trustee appointed an official committee of unsecured creditors in these chapter 11 cases (the "Committee").

5.  The factual background regarding the Debtors, including their current and historical business operations and the events precipitating their chapter 11 filings, is set forth in detail in the *Declaration of Aaron Samples in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 19] (the "First Day Declaration") filed on the Petition Date and fully incorporated herein by reference.

## RELIEF REQUESTED

6.  The Debtors seek entry of the Order, effective as of the Petition Date, authorizing the Debtors to (i) employ and retain FTI to provide the Debtors with a CRO as well as additional supportive staff to assist the CRO ("Hourly Temporary Staff") and (ii) designate Ms. Meerovich as the Debtors' CRO (together with the Hourly Temporary Staff, the "FTI Professionals").

## RETENTION OF FTI

### A. FTI's Qualifications

7.  In consideration of the size and complexity of their business, as well as the exigencies of the circumstances, the Debtors have determined that the services of experienced restructuring managers will substantially enhance their attempts to maximize the value of their estates.  On June 6, 2022, FTI was engaged to provide interim consulting services in connection with a potential restructuring. FTI's engagement letter was later amended to include chief restructuring officer services effective June 30, 2022 pursuant to a written consent issued by First Guaranty Mortgage Corporation's board of directors on June 29, 2022. The FTI Professionals are familiar with the Debtors' business and well qualified to act on the Debtors' behalf given their extensive knowledge and expertise with respect to chapter 11 proceedings.

8. The FTI Professionals specialize in interim management, turnaround and restructuring services, asset sales, and business transformation. FTI's debtor advisory services have included a wide range of activities targeted toward maximizing the value of a debtor's assets and recoveries to creditors, including developing or validating forecasts, working with management on operational issues, monitoring and managing cash flow and creditor relationships, negotiating with a debtor's secured lenders on the use of cash collateral, assessing and recommending cost reduction strategies, providing transactional support to market a debtor's assets (including forecasting, creating marketing materials, contacting potential buyers, and negotiating offers for debtor owned assets), preparing a debtor for a chapter 11 filing, and designing and negotiating financial restructuring packages.

9. FTI has provided similar services and personnel in recent cases in this District. *See, e.g.*, *In re Nine W. Holdings, Inc.*, 2018 Bankr. LEXIS 1998 (Bankr. D. Del. 2018); *In re The Weinstein Company Holdings, Inc.* Case No 18-10601 (MWF) (Bankr. D. Del. April, 24, 2018); *In re Zohar III, Corp.*, Case No. 18-10512 (Bankr. D. Del. June 11, 2018); *In re SFX Entertainment, Inc.*, Case No. 16-10238 (Bankr. D. Del. Mar. 3, 2016); *In re Fresh & Easy, LLC*, Case No. 15-12220 (Bankr. D. Del. Nov. 20, 2015); *In re Corinthian Colleges, Inc.*, Case No. 15-10952 (Bankr. D. Del. May 27, 2015); *In re Mineral Park, Inc.*, Case No. 14-11996 (Bankr. D. Del. Sept. 23, 2014).

10. Ms. Meerovich has the requisite experience to serve as the Debtors' CRO. Ms. Meerovich is a Senior Managing Director of FTI, with over fifteen years of experience leading complex transformations and advising on in- and out-of-court restructurings for companies across industries, with expertise in the real estate/mortgage, financial services, non-profit, insurance, healthcare, education, energy, manufacturing, infrastructure, print,

entertainment, and retail industries. Ms. Meerovich graduated from Roosevelt University with a Bachelor's degree in business management and finance. In addition, Ms. Meerovich is a Chartered Financial Analyst, a Certified Insolvency and Restructuring Advisor, and a Certified Turnaround Professional. Ms. Meerovich's recent engagements in the financial services industry include, among others: AG Mortgage Investment Trust Inc., Impac Mortgage, MFA Financial, Ocwen Financial, Residential Capital, Credit-Based Asset Servicing and Securitization, Progrexion, JH Capital, Litton Loan Servicing, Ditech Corporation, Walter Investments, and Stearns Lending. Prior to joining FTI, Ms. Meerovich was in the Financial Services Advisory group of RSM Cayman Islands, where she was involved in a number of high-profile and complex cross-border insolvency engagements in the financial services sector.

11.     FTI has significant relevant experience and expertise regarding the Debtors, their operations, and the unique circumstances of the Cases. FTI is well qualified to deal effectively and efficiently with matters that may arise in the context of the Cases. FTI has advised the Debtors that it will endeavor to coordinate with the other professionals retained in the Cases to eliminate unnecessary duplication of work. Accordingly, the Debtors submit that the retention of FTI and the designation of Ms. Meerovich as CRO on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of the Debtors' estates, creditors, and all other parties in interest, and should be granted.

B.  **Scope of Services**

12.     Subject to Court approval, the Debtors propose to retain FTI on the terms and conditions set forth in the engagement letter dated June 30, 2022 (attached hereto as **Exhibit C**, the "Engagement Letter")[2] and any order granting this Application.

13.     FTI will provide Tanya Meerovich to serve as the Debtors' CRO. The CRO, shall report to and have such duties as the Board of Directors ("Board") may from time to time determine.

14.     The Hourly Temporary Staff services may be performed by FTI or by any subsidiary of FTI, as FTI shall determine. The Hourly Temporary Staff shall report to the CRO and have such duties determined by the CRO consistent with direction by the Board.

15.     Generally, the CRO and the Hourly Temporary Staff shall perform activities and services customarily performed by a chief restructuring officer, including assisting in: (a) the operational and cash management functions of the Debtors; (b) the development of any cost reduction programs or asset conservation measures with respect to the Debtors and any underlying analysis thereof; and (c) any elements of the restructuring process with respect to the Debtors. Specific services ("Services") to be performed by the FTI Professionals will include:

---

[2] The Engagement Letter summaries contained in this Application are provided for purposes of convenience only. In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control unless otherwise set forth herein. Capitalized terms used in such summaries but not otherwise defined herein have the meanings given in the Engagement Letter.

      a.      Assisting with the management of all aspects of the Debtors' operations, including all initiatives related to managing financial operations;

      b.      Evaluating cash and liquidity requirements, including assisting the Debtors in preparing and reporting on appropriate cash and liquidity forecasts, such as a rolling 13-week cash flow forecast;

      c.      Working with the Debtors' management to preserve and maximize cash availability while preserving value in the business;

      d.      Assisting with the evaluation of strategic alternatives, including evaluating funded loans, evaluating the sale and/or wind-down of FGMC's loan pipeline and evaluating the sale or wind-down of other miscellaneous assets;

      e.      Assisting with the preparation of reports required by the Bankruptcy Code and Bankruptcy Rules, including, statements of financial affairs, schedules of assets and liabilities, and monthly operating reports;

      f.      Assisting the Debtors' management in responding to requests from, and negotiation with, investors, lenders, creditors, any official committees, and other stakeholders as requested by the Company;

      g.      Assisting in the Debtors' strategic communications with employees, vendors and other stakeholders, as needed;

      h.      Directing the efforts of external professionals, consultants, and advisors in connection with liquidation initiatives, including the negotiation of any agreements with asset purchasers, potential investors, or funding sources; and,

      i.      Performing such other services as may be reasonably requested by the Debtors, and are customary in this type of engagement.

16.      The Services do not include audit, legal, tax, environmental, accounting, actuarial, employee benefits, insurance advice, or similar specialist and other professional services which are typically outsourced and which shall be obtained directly where required by the Debtors at the Debtors' expense. Consistent with the "Jay Alix Protocol," FTI and Ms. Meerovich will not act as financial advisors retained under Bankruptcy Code § 327, claims

agents or claims administrators appointed pursuant to 28 U.S.C. § 156(c), or investors or acquirers in the Debtors' Cases.[3]

### C. FTI's Disinterestedness

17. The Debtors believe that neither the CRO nor the Hourly Temporary Staff is a "professional" whose retention is subject to approval under section 327 of the Bankruptcy Code. FTI, however, has informed the Debtors that, except as may be set forth in the Meerovich Declaration, FTI and its subsidiaries that may be performing Services to the Debtors (i) have no connection with the Debtors, their creditors, or other parties in interest in the Cases, (ii) do not hold any interest adverse to the Debtors' estates; and (iii) believe each of them is a "disinterested person" as defined within Section 101(14) of the Bankruptcy Code.

### D. Terms of Retention

18. As set forth in the Engagement Letter, the Debtors have agreed, among other things: (a) to compensate and reimburse FTI for services provided and expenses incurred by the FTI Professionals; and (b) to indemnify those persons serving as executive officers on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and to provide such persons with insurance coverage under the Debtors' director and officer liability insurance policies.

19. The CRO, Tanya Meerovich, and the Hourly Temporary Staff will continue to bill time at their standard hourly rates. The current hourly billing rates for the CRO and the Hourly Temporary Staff, based on the position held by such persons at FTI, are subject to the following ranges:

---

[3] A copy of the "Jay Alix Protocol" is available at https://www.justice.gov/ust/united-states-trustee-program-policy-and-practices-manual.

|  | Per Hour (USD) |
|---|---|
| Senior Managing Directors and Senior Advisors | $975-1,325 |
| Directors / Senior Directors / Managing Directors | $735-960 |
| Consultants/Senior Consultants | $395-695 |
| Administrative / Paraprofessionals | $160-300 |

Hourly rates are generally revised periodically. FTI will notify the Debtors in writing prior to any changes in hourly rates.

20. In addition to the fees outlined above, FTI will bill for reasonable direct expenses which are incurred on the Debtors' behalf during the Cases. Expenses include reasonable and customary out-of-pocket expenses which are billed directly to the Cases such as certain telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to the engagement. Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this matter, FTI will be compensated by the Debtors at its regular hourly rates and reimbursed for reasonable direct expenses (including reasonable, documented fees of counsel) with respect thereto.

21. In connection with FTI's original June 6, 2022 retention and in accordance with its Engagement Letter, FTI received an unapplied advance payment from the Debtors in the amount of $500,000. (the "<u>Retainer</u>"). According to FTI's books and records, during the thirty-day period before the Petition Date, the Debtors paid FTI $1,979,555.95 in the aggregate for professional services rendered, expenses incurred, and the Retainer. Due to the ordinary course and unavoidable reconciliation of fees and submission of expenses immediately before the Petition Date, FTI may have incurred, but not billed, fees and expenses incurred before the Petition Date. The Debtors request that the Court permit FTI to apply the Retainer to these amounts. Upon entry of an Order approving the relief requested herein, the Debtors will

not owe FTI any sums for periods before the Petition Date. The Debtors and FTI have agreed that any portion of the Retainer not used to compensate FTI for its prepetition services and expenses will be held by FTI, not placed in a separate account, and applied against FTI's post-petition invoices.

### E.  Indemnification and Liability Limitation

#### 1.  Indemnification

22.    As a material part of the consideration for which FTI has agreed to provide the Services described herein, the Debtors have agreed to the indemnification provisions set forth in Exhibit A to the Engagement Letter (the "Indemnification Provisions").  The Indemnification Provisions provide that the Debtors indemnify and hold harmless FTI and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contractors and employees under certain circumstances.  All requests of FTI for the payment of indemnity pursuant to the Indemnification Provisions will be made by means of an application to, and shall be subject to review by, the Court to ensure that payment of such indemnity (a) conforms to the terms of the Engagement Letter and (b) is reasonable based upon the circumstances.

23.    Notwithstanding the foregoing, the Proposed Order modifies the Indemnification Provisions so that the Debtors are only permitted to indemnify those persons serving as executive officers on the same terms as provided to the Debtors' other officers and directors under the Debtors' bylaws and applicable state law, in addition to insurance coverage under the Debtors' director and officer insurance policies.  The Proposed Order further provides that there shall be no other indemnification of FTI, its affiliates or subsidiaries, or the Hourly Temporary Staff.  The Debtors and FTI believe that the Indemnification Provisions, as modified

by the Proposed Order, are customary and reasonable for firms providing interim management services.

24.  Moreover, the terms and conditions of the Indemnification Provisions were negotiated by the Debtors and FTI at arm's-length and in good faith.  The provisions contained in the Engagement Letter, viewed in conjunction with the other terms of FTI's proposed retention, are reasonable and in the best interests of the Debtors, their estates, and creditors in light of the fact that the Debtors require FTI's services to successfully navigate the Cases.  Accordingly, the Debtors request that this Court approve the Indemnification Provisions as set forth in the Engagement Letter, as modified by the Proposed Order.

**2.  Limitation of Liability**

25.  The Engagement Letter provides that no Indemnified Person shall be liable to the Debtors, or their successors, affiliates, or assigns for damages in excess of the total amount of the fees paid to FTI under the Engagement Letter and, without limiting the generality of the foregoing, that in no event shall any Indemnified Person be liable for consequential, indirect, or punitive damages, damages for lost profits or opportunities, or other like damages or claims of any kind.  The Debtors and FTI have agreed that during the course of these Cases, any limitation of liability provisions in the Engagement Letter shall have no force or effect.

**3.  Fees and Reporting**

26.  If the Court approves the relief requested herein, FTI will be retained to provide the Debtors with the FTI Professionals and Ms. Meerovich will be designated as CRO pursuant to section 363 of the Bankruptcy Code.  Because FTI is not being employed as a professional under section 327 of the Code, FTI will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.  Instead, FTI will file with the Court, and provide notice to the U.S. Trustee and all official committees appointed in these Cases

(together with the U.S. Trustee, the "Notice Parties"), reports of compensation earned, expenses incurred, and staffing on the Cases (the "Compensation and Staffing Report") by the 30th of each month for the previous month, which will include summary charts describing the name, hourly rate, number of hours billed, and role filled by each FTI Professional; the aggregate compensation earned by FTI; the hours worked and fees by activity category (*e.g.*, cash management, operations, transaction support, etc.); and the expenses incurred by FTI. In addition, each FTI Professional will maintain during the Cases and the Compensation and Staffing Report will include (i) detailed time entry records identifying activities or issues he or she addressed on a daily basis, grouped to the nearest one-tenth of an hour (0.1 hour) for each activity category each day and (ii) detailed expense records. The first Compensation and Staffing Report shall cover the period from the Petition Date until the end of the month in which the Proposed Order is entered and shall be submitted within thirty (30) days thereafter.

27. The Compensation and Staffing Reports will be subject to review by the Court if an objection is filed by any of the Notice Parties and served on the Debtors, the Debtors' undersigned counsel, and FTI within twenty-one (21) days after the date each Compensation and Staffing Report is filed and served (the "Objection Period"). The Debtors respectfully request that they be authorized, but not directed, to pay, in the ordinary course of business, all amounts invoiced by FTI for fees and expenses incurred in connection with FTI's retention. In the event an objection is filed and served during the Objection Period and not consensually resolved, the Debtors shall deduct an amount equal to the amount objected to from the next payment to FTI until such objection is resolved, either consensually or by Court order.

28. Given the numerous issues that the FTI Professionals may be required to address in the performance of their services and the effort necessary to address all such issues as

they arise, and the market prices for such services in engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtors submit that the fee arrangements set forth in the Engagement Letter are reasonable.

## DISPUTE RESOLUTION PROVISIONS

29. The Debtors and FTI have agreed, subject to the Court's approval of this Application, that (a) any claim, dispute or difference concerning the Engagement Letter and any matter arising from it, shall be brought in the United States District Court for the District of Delaware and the appropriate Courts of the State of Delaware, and (b) FTI and the Debtors irrevocably and unconditionally agree to waive a trial by jury in any action, proceeding or counterclaim arising out of or relating to the services or the Engagement Letter.

## BASIS FOR RELIEF

30. The Debtors seek to employ and retain FTI and designate Ms. Meerovich as CRO pursuant to section 363 of the Bankruptcy Code effective as of the Petition Date. Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1)  Further, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

31. Under applicable case law, in this and other jurisdictions, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See, e.g.*, *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b) of the Bankruptcy Code); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070

(2d Cir. 1983) ("The rule we adopt requires that a judge determining a §363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

32. The relief requested herein is appropriate and warranted under each of the above standards. The decision to retain FTI and employ Ms. Meerovich as CRO and the other Hourly Temporary Staff should be authorized because it is based on a sound exercise of the Debtors' business judgment. First, as described above, Ms. Meerovich has extensive experience as a senior officer and advisor for many troubled companies. The Debtors believe that the Ms. Meerovich and the Hourly Temporary Staff will provide services that substantially benefit the Debtors' estates and creditors. FTI has extensive experience in providing turnaround and crisis management services in chapter 11 proceedings and has an excellent reputation for the services it has rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States.

33. Second, Ms. Meerovich and the Hourly Temporary Staff, working in conjunction with the Debtors' senior management, have already proven to be of invaluable assistance to the Debtors in developing financial projections, assisting in short-term cash management activities, evaluating strategic alternatives, and coordinating the Debtors' efforts to prepare for and operate in chapter 11.

34. Finally, through negotiations, the Debtors have been able to retain FTI and secure the services of Ms. Meerovich and the Hourly Temporary Staff during these chapter 11 cases on economic terms that are fair, reasonable, and beneficial to the Debtors' estates.

Moreover, the compensation arrangement provided for in this Application and the Engagement Letter is consistent with and typical of arrangements entered into by FTI and other restructuring consulting firms with respect to rendering similar services for clients such as the Debtors.

35.     In view of the foregoing, the Debtors believe that the retention of FTI and the employment of Ms. Meerovich and the Hourly Temporary Staff is a sound exercise of the Debtors' business judgment and is in the best interests of all parties in interest in these chapter 11 cases. The Debtors additionally believe that FTI is well qualified and able to represent the Debtors in a cost effective, efficient, and timely manner. FTI has indicated a willingness to act on behalf of the Debtors and to subject itself to the jurisdiction and supervision of the Court.

36.     Courts in this district and in other jurisdictions have approved relief similar to the relief requested in this Motion. *See, e.g.*, *See In re TZEW Holdco LLC, et al.,* Case No. 20-10910 (CSS) (Bankr. D. Del. May 7, 2020) (Docket No. 200); *In re Forever 21, Inc., et al,* Case No. 19-12122 (MFW) (Bankr. D. Del Nov. 4, 2019) (Docket No. 388); *In re KG Wind Down, Inc. (f/k/a Kona Grill, Inc., et al.).* Case No. 19-10953 (CSS) (Bankr. D. Del. Oct. 24, 2019) (Docket No. 465); *In re Aerogroup Int'l, Inc.*, Case No. 17-11962 (KJC) (Bankr. D. Del. Oct. 16, 2017) (Docket No. 167); *In re APP Winddown, LLC (f/k/a American Apparel, LLC)*, Case No. 16-12551 (BLS) (Bankr. D. Del. Dec. 8, 2016) (Docket No. 258); *In re Basic Energy Services, Inc.*, Case No. 16-12320 (KJC) (Bankr. D. Del. Nov. 18, 2016) (Docket No. 185); *In re UCI-Airtex Holdings, Inc.*, Case No. 16-11354 (MFW) (Bankr. D. Del. July 12, 2016).[4]

---

[4] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

37.        Based upon the foregoing, the Debtors submit that the retention of FTI and the designation of Ms. Meerovich as CRO on the terms set forth herein and in the Engagement Letter, is essential, appropriate, and in the best interests of the Debtors' estates, creditors, and other parties in interest, and should be granted in these chapter 11 cases.

38.        The Debtors further request that FTI's retention be made effective as of the Petition Date, to allow FTI to be compensated for the work performed for the Debtors prior to the Court's consideration and approval of this Application. The Debtors submit that under the circumstances, and to avoid irreparable harm to the Debtors' estates that may occur if FTI is not immediately retained, retroactive approval to the Petition Date is warranted.[5] *See, e.g., FIS Airlease II, Inc.* v. *Simon (In re FIS Airlease II, Inc.),* 844 F.2d 99, 103 (3d Cir. 1988), *cert. denied*, 488 U.S. 852 (1988); *In re Garden Ridge Corp.,* 326 B.R. 278, 281 (Bankr. D. Del. 2005); *Indian River Homes, Inc.* v. *Sussex Trust Co.,* 108 B.R. 46, 51 (D. Del. 1989) (approval of debtor's employment of attorney and real estate agent as of a prior date was not an abuse of discretion).

**NOTICE**

39.        The Debtors will provide notice of this Application to: (i) the U.S. Trustee; (ii) holders of the thirty (30) largest unsecured claims on a consolidated basis against the Debtors; and (iii) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

---

[5] Local Rule 2014-1(b) provides, in relevant part: "If the retention motion is granted, the retention shall be effective as of the date the motion was filed, unless the Court orders otherwise."

WHEREFORE, for the reasons set forth herein, in the Meerovich Declaration, and in the First Day Declaration, the Debtors respectfully request that this Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in the Application and such other and further relief as is just and proper.

Dated:  July 18, 2022

Respectfully submitted,

First Guaranty Mortgage Corporation, *et al.*,
Debtors and Debtors in Possession

 */s/ Aaron Samples*
Aaron Samples
Chief Executive Officer