**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>FIRST GUARANTY MORTGAGE<br>CORPORATION, *et al.*[1]<br><br>　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 22-10584 (CTG)<br><br>(Jointly Administered) |

**CUSTOMERS BANK'S MOTION SEEKING CONFIRMATION OF
APPLICABILITY OF 11 U.S.C. § 559 OR, IN THE ALTERNATIVE,
<u>GRANTING RELIEF FROM THE AUTOMATIC STAY AND RELATED RELIEF</u>**

Customers Bank, by and through its undersigned counsel, hereby submits this motion (the

"<u>Motion</u>") seeking entry of an order (i) confirming the applicability of section 559 of the Title 11

of the United States Code (the "<u>Bankruptcy Code</u>") to Customers Bank's Repurchase Agreement

(as defined below) with Chapter 11 debtor First Guaranty Mortgage Corporation (together with its

other debtor affiliates, collectively, "<u>FGMC</u>") or, in the alternative, granting relief from the

automatic stay pursuant to Bankruptcy Code § 362(d) to permit Customers Bank to exercise its

rights with respect to the Purchased Assets (as defined below), (ii) authorizing all third parties in

possession of any portion of the Purchased Assets (as defined below) to follow the directions of

Customers Bank in accordance with applicable non-bankruptcy law, and (iii) directing FGMC to

deliver all Purchased Assets or related information, including, without limitation, payments

received from the Subservicer (as defined below) with respect to the Mortgage Loans (as defined

below), to Customers Bank, and respectfully sets forth and represents as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: First Guaranty Mortgage Corporation (9575); and Maverick II Holdings, LLC (5621). The Debtors' mailing address is 5400 Tennyson Parkway, Suite 450, Plano, TX 75024.

## PRELIMINARY STATEMENT

1.     By this Motion, Customers Bank respectfully requests that this Court recognize and affirm the applicability of Bankruptcy Code § 559 to Customers Bank's exercise of its rights with respect to the Purchased Assets under the Repurchase Agreement and applicable non-bankruptcy law or, in the alternative, to grant relief from the automatic stay pursuant to Bankruptcy Code § 362(d) to permit Customers Bank to exercise its rights under the Repurchase Agreement and applicable non-bankruptcy law with respect to the Purchased Assets.

2.     Section 559 broadly permits counterparties to repurchase agreements to "cause the liquidation, termination or acceleration" of a repurchase agreement, including the exercise of their rights under such agreements with respect to their collateral.  Notwithstanding those protections, the Subservicer of virtually all of the Mortgage Loans included in the Purchase Assets has failed to comply with Customers Bank's repeated request that it pay directly to Customers Bank amounts received on the Mortgage Loans that would otherwise be payable to FGMC. In fact, the Subservicer paid such amounts to FGMC, which Customers Bank believes will be segregated as provided for in the *Order Approving Stipulation Preserving Status Quo Regarding Customers Bank Cash Collateral and Stipulation Pursuant to 11 U.S.C. § 363(c)(4) Preserving Status Quo Regarding Customers Bank Cash Collateral* [Dkt. 138].

3.     Section 559 permits Customers Bank to exercise its rights and remedies notwithstanding FGMC's bankruptcy filing. Given the Subservicer's failure to cooperate with Customers Bank, and the number of third parties Customers Bank needs to deal with to realize on the Purchased Assets, including additional subservicers, custodians, investors, insurers and recording offices, Customers Bank seeks an affirmative ruling that it may exercise such rights and remedies pursuant to section 559 of the Bankruptcy Code. This relief is necessary to ensure

Customers Bank is not prejudiced or deprived of its rights to liquidate, terminate and accelerate the transactions under the Repurchase Agreement.

4.      Even if Bankruptcy Code § 559 is not applicable to Customers Bank's exercise of its rights under the Repurchase Agreement – although it is – Customers Bank requests, in the alternative, that this Court grant Customers Bank relief from the automatic stay to exercise such rights. Customers Bank submits that there is cause to grant relief from the automatic stay, including a lack of adequate protection of Customers Bank's collateral. Customers Bank's collateral in this case is primarily Mortgage Loans. Pursuant to the terms of the Repurchase Agreement, FGMC was supposed to sell the collateral in the secondary market within a limited period of time, and to have protection against market movements that might affect the value of the collateral in the interim.  As a result of the bankruptcy filing, FGMC is no longer able to sell Mortgage Loans to Fannie Mae, Freddie Mac, or certain of the private investors that had committed to purchase Mortgage Loans pre-bankruptcy, and no longer has hedge agreements in place to offset any decline in the value of the Mortgage Loans. Consequently, the value of many of the Mortgage Loans has declined and may decline further, both as the loans age and as interest rates rise.

5.      FGMC is not in a position to offer Customers Bank adequate protection against the diminution in the value of its collateral, as is evident from the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Liens and Superpriority Administrative Expense Status; (IV) Granting Adequate Protection; (V) Modifying the Automatic Stay; (VI) Scheduling a Final Hearing; and (VII) Granting Related Relief* [Dkt. 22] (the "Cash Flow DIP Motion"). In short, the Cash Flow DIP Motion seeks to encumber any and

all free assets for the benefit of the DIP lender which leaves nothing for FGMC to even try to offer the other secured parties as adequate protection.

6.      Moreover, notwithstanding a direction letter from Customers Bank and numerous discussions with Customers Bank and FGMC, the Subservicer has failed to fully comply with its obligation to make payments on the Purchased Assets as demanded by Customers Bank under sections 9-607 and 9-406 of the UCC.  This failure has already created unnecessary administrative burdens and complications. As discussed in more detail below, these additional burdens and complications negatively impact the efficient management of Customers Bank's collateral and cause both Customers Bank and FGMC to expend unnecessary resources. Accordingly, it would benefit both Customers Bank and these bankruptcy estates to allow Customers Bank to manage its collateral directly without the limitations imposed by the stay.

7.      For all of these reasons, Customers Bank submits, in the alternative, that there is cause for relief from stay under Section 362(d)(1) of the Bankruptcy Code.

## **JURISDICTION AND VENUE**

8.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* entered February 29, 2012, by the United States District Court for the District of Delaware. This is a core proceeding under 28 U.S.C. § 157(b)(2) and the Court may enter an order consistent with Article III of the United States Constitution. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

9.      The statutory predicates for the relief sought herein include Bankruptcy Code §§ 105(a), 362(d), and 559, Rules 4001 and 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 4001-1 and 9013-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## BACKGROUND

10.    On June 30, 2022 (the "Petition Date"), FGMC and Maverick II Holdings, LLC

filed voluntary Chapter 11 petitions for relief in the United States Bankruptcy Court for the District

of Delaware (the "Court").

11.    Customers Bank and FGMC are party to two financing arrangements. First,

pursuant to that certain Amended and Restated Loan Agreement, dated as of July 17, 2019 (as

amended, restated, supplemented, or modified from time to time, the "Loan Agreement"),

Customers Bank has made available to FGMC a revolving credit facility in order to provide

working capital. *See* Declaration of Carol MacElree (the "MacElree Declaration"), filed

simultaneously herewith, at ¶ 2.

12.    Second, pursuant to a Second Amended and Restated Master Repurchase

Agreement, dated as of October 9, 2019 (as amended, restated, supplemented or modified from

time to time, the "Repurchase Agreement"), Customers Bank agreed to provide funding to FGMC

in order to facilitate FGMC's purchase or closing of mortgages in exchange for the transfer to

Customers Bank of the Mortgage Loans and related assets (the "Purchased Assets"), with a

simultaneous agreement by Customers Bank to transfer the Purchased Assets to FGMC on a date

certain. *Id.* at ¶ 3. A copy of the Repurchase Agreement (without schedules, exhibits, appendices

and amendments) is annexed to the MacElree Declaration as Exhibit A.

13.    The Purchased Assets consist of the following (capitalized terms are defined in the

Repurchase Agreement):

(i)    all Mortgage Loans, including the related Note and Mortgage;
(ii)    all mortgage files and Records related to the Mortgage Loans;
(iii)    all Servicing Rights and Servicing Records relating to the Mortgage Loans
and any other collateral pledged or otherwise relating to such Mortgage
Loans, all mortgage guaranties and insurance (issued by an Agency or
otherwise) and any mortgage insurance certificate or other document

evidencing such mortgage guaranties or insurance relating to any Mortgage Loan;

(iv)    any Take-out Commitments to the extent relating to the Mortgage Loans;

(v)    any Hedge Agreements to the extent relating to the Mortgage Loans;

(vi)    all of Seller's rights as the owner of the Mortgage Loans under any agreements or contracts relating to, constituting, or otherwise governing, any or all of the foregoing to the extent they relate to the Mortgage Loans including the right to receive principal and interest payments with respect to the Mortgage Loans and the right to enforce such payments and all insurance policies and insurance proceeds relating to any Mortgage Loan or the related Mortgaged Property, including, but not limited to, any payments or proceeds under any related primary insurance or hazard insurance;

(vii)    any Property relating to any Mortgage Loan or the related Mortgaged Property;

(viii)    any REO Property and the related Mortgage and grant deed delivered to Buyer (whether or not recorded) related to a Transaction hereunder;

(ix)    all Mortgage-backed Securities (i) that are backed in whole or in part by any Mortgage Loan, (ii) identified for purchase on any purchase commitment or otherwise identified for sale or pledge to Buyer, (iii) with respect to which Buyer or a third party acting on Buyer's behalf has been identified as the nominal or beneficial owner of such Mortgage-backed Security; or (iv) which have been delivered to or have otherwise come into the possession, custody or control of Buyer or a third party acting on Buyer's behalf, together with all cash and non-cash distributions in respect of the foregoing (collectively the "Related Securities" and each a "Related Security");

(x)    all deposit accounts maintained in Seller's name with Buyer;

(xi)    any deposit accounts or any share thereof, maintained in Seller's name with any institution, related to any of the foregoing collateral or proceeds thereof, including proceeds of any Take-out Commitments;

(xii)    the Purchase Documents (to the extent such Purchase Documents and Seller's rights thereunder relate to the Mortgage Loans);

(xiii)    all Income relating to the Mortgage Loans;

(xiv)    all closing protection letters relating to the Mortgage Loans;

(xv)    any other assets or contract rights, accounts, deposit accounts (including any interest of Seller in escrow accounts), payments, rights to payment (including payments of interest or finance charges), "chattel paper", "investment property" and general intangibles to the extent that any of the foregoing relates to any Mortgage Loan;

(xvi)    any and all replacements, substitutions, distributions on or proceeds of any and all of the foregoing; and

(xvii)    any other Property, rights, title or interests as are specified on a Purchase Request and/or Trust Receipt.

*Id.* At ¶ 4 & Ex. A at § 5(a).

14.    FGMC's bankruptcy filing constitutes an Event of Default under Section 9(g)(1)(i) of the Repurchase Agreement.

15.    Rushmore Loan Management Services LLC presently acts as subservicer for virtually all of the Mortgage Loans (the "Subservicer"). MacElree Declaration at ¶ 5.

16.    The Subservicer has agreed to tender all Income from the Mortgage Loans to FGMC, and the Subservicer tenders such payment on or after the 18th calendar of each month. *Id.*

17.    On or about July 6, 2022, Customers Bank exercised its rights under Section 10(b) of the Repurchase Agreement and sent a letter to Subservicer demanding payment under Section 9-406 and 9-607 of the Pennsylvania Uniform Commercial Code (the "9-406 Notice"). *Id.* at ¶ 6. In particular, Customers Bank demanded that the Subservicer segregate all Income collected on account of the Mortgage Loans and remit all such Income to Customers Bank. *Id.* At ¶ 6. A copy of the 9-406 Notice (without the enclosure to preserve the privacy of the individual mortgage borrowers listed in the enclosure) is annexed to the MacElree Declaration as Exhibit B.

18.    While the Subservicer has confirmed receipt of the 9-406 Notice, the Subservicer has not agreed to comply with the demands set forth therein. *Id.* At ¶ 7.

19.    Following extensive discussions among the Subservicer, FGMC and Customers Bank, on July 18, 2022, the Subservicer, though its general counsel, sent an e-mail to Customers Bank and its counsel stating that it would only pay part of the payments it received on the Mortgage Loans to Customers Bank, and would pay the balance to FGMC. When counsel for Customers Bank objected, reminding the Subservicer that all payments received by it on the Mortgage Loans were proceeds of Customers Bank's collateral, the Subservicer replied that if both Customers Bank and FGMC did not accept its allocation of a portion of the payments to FGMC within hours of receiving it, the Subservicer would remit all of the payments to FGMC. The information submitted

with the Subservicer's e-mail was insufficient to permit Customers Bank to effectively analyze what it would and would not receive, and FGMC appeared not to have started reconciling the Subservicer's payments information with its own records until the following day. The conditions the Subservicer placed on Customers Bank were essentially impossible to satisfy. On July 19, 2022, the Subservicer remitted all of the payments on the Mortgage Loans to FGMC. *Id.* at ¶ 8.

20.    Customers Bank and FGMC are also party to a certain Custodial Agreement, dated as of March 27, 2014 (as amended, restated, supplemented or otherwise modified from time to time), by and between Customers Bank, FGMC, and Deutsche Bank National Trust Company ("Deutsche Bank"), pursuant to which Deutsche Bank agreed to act as custodian on behalf of Customers Bank for purposes of holding the Mortgage Loans sold by FGMC to Customers Bank pursuant to the Repurchase Agreement. *Id.* at ¶ 9.

21.    On July 7, 2022, Customers Bank sent a letter to Deutsche Bank in its capacity as custodian, advising Deutsche Bank that, in light of FGMC's default under the Repurchase Agreement and pursuant to Section 5(c) of the Custodial Agreement, Deutsche Bank was to follow only Customers Bank's instructions with respect to the Mortgage Loans for which it was acting as custodian (the "July 7 Custodial Agreement Letter"). *Id.* at ¶ 10. A copy of the July 7 Custodial Agreement Letter is annexed to the MacElree Declaration as Exhibit C.

22.    On July 19, 2022, Customers Bank sent another letter to Deutsche Bank (the "July 19 Custodial Agreement Letter"), directing Deutsche Bank to deliver certain Mortgage Notes and other documents related to the Mortgage Loans to Customers Bank. A copy of the July 19 Custodial Agreement Letter (without the enclosure to preserve the privacy of the individual mortgage borrowers listed in the enclosure) is annexed to the MacElree Declaration as Exhibit D. In response, on June 19, 2022, Deutsche Bank sent Customers Bank an e-mail stating that it was

not obligated to comply with the July 19 Custodial Agreement Letter because of a technical inconsistency between the Custodial Agreement and the Repurchase Agreement. On June 20, 2022, Deutsche Bank sent another e-mail to Customers Bank requiring that it restate the indemnity in Section 14(f) of the Custodial Agreement and agree that it covered any challenge by FGMC to Customers Bank's direction. Customers Bank's counsel was required to get involved in both of these matters to persuade Deutsche Bank to comply with the July 19 Custodial Agreement Letter. After the close of business on July 20, 2022, Deutsche Bank sent Customers Bank an e-mail appearing to confirm that it will comply with the July 19 Custodial Agreement Letter. *Id.* at ¶ 11.

23.    Customers Bank desires to exercise its rights and remedies under the Repurchase Agreement in light of FGMC's default thereunder, including, but not limited to, selling the Mortgage Loans, which will require, among other things, (a) transferring the registration of the related Mortgages on MERS pursuant to the Electronic Tracking Agreement, (b) either a transfer of servicing of the Mortgage Loans or that the purchaser(s) agrees to have the Subservicer (or the other subservicers currently servicing Customers Bank's collateral) continue to service the Mortgage Loans, (c) that potential investors recognize Customers Bank's right to sell the Mortgage Loans without Court or Debtor approval, (d) that mortgage guarantors and insurers, title insurers, property and casualty insurers and potentially recording offices recognize the purchasers from Customers Bank as being FGMC's successors or assigns, and (e) delivery to Customers Bank of all cash collateral included in the Purchased Assets, including all amounts received on the Mortgage Loans by FGMC from the Subservicer (or any other subservicer in possession of Income on Customers Bank's collateral). All of those steps require cooperation from third parties and, in certain instances, from FGMC. *Id.* at ¶ 12.

**RELIEF REQUESTED**

A. **The Court Should Affirm that Bankruptcy Code § 559 Applies to Customers Bank's Exercise of its Rights Under the Repurchase Agreement**

24.    Bankruptcy Code § 559 protects repo participants, such as Customers Bank, by providing, in relevant part, as follows:

> The exercise of a contractual right of a repo participant or financial participant to cause the liquidation, termination, or acceleration of a repurchase agreement because of a condition of the kind specified in section 365(e)(1) of this title *shall not be stayed, avoided, or otherwise limited by operation of any provision of this title or by order of a court* or administrative agency in any proceeding under this title[.]

11 U.S.C. § 559 (emphasis added); *see* 11 U.S.C. § 362(b)(7) (automatic stay does not apply to exercise of remedies under a repurchase agreement).

25.    Section 559 has been construed as "giv[ing] parties to a repurchase agreement a safe harbor from the automatic bankruptcy stay, which normally prevents creditors from collecting, recovering, or offsetting debts without court approval." *In re HomeBanc Mortg. Corp.*, 945 F.3d 801, 811 (3d Cir. 2019). Essentially, section 559 "permits a non-defaulting party to liquidate collateral, according to the terms of the relevant repurchase agreement, without seeking court approval." *Id.* Bankruptcy Code § 559 was enacted to "preserve market liquidity by providing a 'safe harbor' for non-defaulting repo participants 'to terminate, liquidate or accelerate . . . repurchase agreements with the bankrupt or insolvent party.'" *Calyon N.Y. Branch v. Am. Home Mortg. Corp. (In re Am. Home Mortg., Inc.)*, 379 B.R. 503, 516 (Bankr. D. Del. 2008) (quoting H.R. Rep. 109-21, pt. 1, at 133 (2005)).

26.    The Repurchase Agreement is unquestionably a repurchase agreement for purposes of being entitled to the safe harbor protections of Bankruptcy Code § 559, as FGMC has acknowledged. *See* Declaration of Aaron Samples in Support of Chapter 11 Petitions and First Day Pleadings [Dkt. 19] (the "Samples Decl.") at ¶¶ 15-16.

27.    The Bankruptcy Code defines a "repurchase agreement" as:

    a.    providing for a transfer by a transferor,

    b.    of one of more "mortgage related securities (as defined in section 3 of the Securities Exchange Act of 1934), mortgage loans, interests in mortgage related securities or mortgage loans" or "securities that are direct obligations of, or that are fully guaranteed by, the United States or any agency of the United States" ("<u>Securities</u>"),

    c.    against the transfer of funds by the transferee of such Securities,

    d.    with simultaneous agreement by the transferee to transfer the mortgage assets to the transferor,

    e.    within a one year period or on demand against the transfer of funds.

11 U.S.C. § 101(47). The Repurchase Agreement satisfies each of the foregoing requirements – it provides for the transfer of the Purchased Assets (including Mortgage Loans and Related Securities), which Purchased Assets are backed by the Agencies, in exchange for funds and a simultaneous agreement to by Customers Bank to transfer the Purchased Assets to FGMC on a date certain. Bankruptcy Code section 559 thus applies to the Repurchase Agreement.

28.    Under section 559, repo participants (such as Customers Bank) are permitted to exercise their contractual rights "to cause the liquidation, termination, or acceleration of a repurchase agreement because of a condition of a kind specified in Section 365(e)(1) of this title[.]" FGMC defaulted under the Repurchase Agreement when it filed its Chapter 11 petition in this bankruptcy case. As a result, Customers Bank's right to exercise its remedies under the Repurchase Agreement to liquidate, terminate, or accelerate the Repurchase Agreement "shall not be stayed, avoided or otherwise limited by operation of any provision of [the Bankruptcy Code] or by order of a court or administrative agency in any proceeding under this title[.]" 11 U.S.C. § 559. Bankruptcy Code section 362(b)(7) further confirms that the automatic stay does not apply to the exercise of rights by a repo participant under a Repurchase Agreement. 11 U.S.C. § 362(b)(7).

29.     Among the remedies available to Customers Bank in the event of FGMC's default under the Repurchase Agreement are: (a) immediate sale of any or all Mortgage Loans; (b) notify all obligors under any Mortgage Loans that same has been assigned to Customers Bank and all payments shall be made directly to Customers Bank; (3) act or contract with a third party to act as servicer or subservicer of the Mortgage Loans; (4) require FGMC to assemble and make available to Customers Bank the Mortgage Loans and related records at a place designated by Customers Bank; (5) exercise remedies under the Pennsylvania Uniform Commercial Code; and (6) retain all proceeds from the sale or other disposition of the Purchased Assets. MacElree Decl. Ex A at § 10(b)(1), (5), (7), (8), (11), & (14).

30.     Customers Bank has sought to exercise certain of these remedies, including through issuance of the 9-406 Notice directing the Subservicer to segregate all Income collected on account of the Mortgage Loans and remit all such Income to Customers Bank. The Subservicer has not agreed to comply with such demand notwithstanding Customers Bank's clear contractual and statutory authority. Furthermore, Deutsche Bank, as custodian, indicated its concern with the possibility the FGMC might object before agreeing to comply with the July 19 Custodial Agreement Notice.

31.     At this time, Customers Bank desires to exercise its rights and remedies under the Repurchase Agreement, including, but not limited to, (i) obtaining from FGMC or otherwise all of the mortgage files and other information required to sell the Mortgage Loans; (ii) directing the Subservicer (or any other subservicer in possession of Income on Customers Bank's collateral) to pay all Income constituting Customers Bank's collateral directly to Customers Bank; (iii) either taking possession of the collateral files in the possession of Deutsche Bank, in its capacity as custodian, or directing that they be shipped to purchasers of the Mortgage Loans; (iv) selling the

Mortgage Loans; (v) directing the purchasers to make payment for the Mortgage Loans directly to Customers Bank; (vi) transferring the servicing on the Mortgage Loan or having the current subservicer(s) agree to service the loans for the purchasers; (vii) registering the transfer of the related Mortgages on MERS; and (viii) taking such other action as may be appropriate under the Repurchase Agreement or applicable law to realize on the Purchased Assets.

32.     In light of the problems Customers Bank has already had in exercising its clear rights under Section 559, the Repurchase Agreement and applicable non-bankruptcy law, Customers Bank respectfully requests that this Court affirm Customers Bank's authority to exercise such rights and remedies pursuant to Bankruptcy Code section 559.

**B.    In the Alternative, this Court Should Grant Customers Bank Relief from the Automatic Stay to Enforce its Rights and Remedies Under the Repurchase Agreement**

33.     Even if one were to conclude that the safe harbor under Bankruptcy Code section 559 is not available – which it is – Customers Bank respectfully submits that it is entitled to relief from the automatic stay. Section 362(a) of the Bankruptcy Code provides that upon filing of a petition for bankruptcy relief, certain actions against the bankruptcy debtor are automatically stayed, including "any act to obtain possession of property of the estate . . . or to exercise control over property of the estate."  11 U.S.C. § 362(a). As set forth below, Customers Bank is entitled to relief from the automatic stay purchase to sections 362(d)(1).

34.     Bankruptcy Code § 362(d)(1) provides that the Court may grant relief from the automatic stay provided under section 362(a) "for cause, including the lack of adequate protection[.]" What constitutes "cause" depends on the totality of circumstances of each particular case. *See In re Stone Res., Inc.*, 482 F. App'x 719, 722 (3d Cir. 2012). Adequate protection of a secured creditor's interest in property is intended "to preserve the secured creditor's position as it existed at the time of the filing." *In re Melson*, 44 B.R. 454, 456–57 (Bankr. D. Del. 1984);

*Resolution Tr. Corp. v. Swedeland Dev. Grp. (In re Swedeland Dev. Grp.)*, 16 F.3d 552, 564 (3d Cir. 1994) ("The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy." (quotation and citation omitted)). Ultimately, "the purpose of adequate protection is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use by the debtor." *Delaware Tr. Co. v. Wilmington Tr., N.A. (In re Energy Future Holdings Corp.)*, 546 B.R. 566, 581 (Bankr. D. Del. 2016) (quotation and citation omitted).

35.    Customers Bank's collateral in this case is primarily Mortgage Loans. Pursuant to the terms of the Repurchase Agreement, FGMC was supposed to sell the collateral in the secondary market within a limited period of time, and to have protection against market movements that might affect the value of the collateral. As a result of the bankruptcy filing, FGMC is no longer able to sell Mortgage Loans to Fannie Mae, Freddie Mac, or certain of the private investors that had committed to purchase Mortgage Loans, and no longer has protection against market movements. Consequently, the value of the Mortgage Loans (Customers Bank's collateral) has declined, and may decline further with each passing day, particularly as interests rates rise. MacElree Decl. at ¶ 13.

36.    Meanwhile, FGMC is not in a position to offer Customers Bank adequate protection against the diminution in value of its collateral, as is evident from the Cash Flow DIP Motion, in which the Debtors affirmed that they required an immediate infusion of cash, granted liens on all of its encumbered and unencumbered property, and offered an adequate protection package for the use of cash collateral that failed to satisfy the requirements of the Bankruptcy Code. Cash Flow DIP Motion at ¶¶ 11 & 21. There appears to be nothing available that FGMC could provide as replacement collateral – certainly nothing that would be the indubitable equivalent of any decline

14

in value of the Mortgage Loans.

37.     Finally, the Subservicer has failed to follow the instructions of Customers Bank as required under Article 9 of the UCC. This is diverting resources that could be used otherwise, which harms both Customers Bank and FGMC. For example, management and staff of FGMC have had to spend excessive and unreasonable amounts of time dealing with payments on the Mortgage Loans that would otherwise be dedicated to activities that would be of direct benefit to FGMC. FGMC is also facing continued financing costs associated with the inability to use payments on the Mortgage Loans to reduce the amount due under the Repurchase Agreement, which reduces any potential equity FGMC may have in the Purchased Assets.  Both Customers Bank and FGMC have incurred unnecessary and substantial legal costs to deal with the Subservicer. Customers Bank has also incurred unnecessary legal costs to deal with Deutsche Bank under the Custododial Agreement.  Obviously, FGMC's legal costs are direct costs of FGMC, and because Customers Bank is entitled to recover its legal costs from the Purchased Assets, its costs will also reduce any potential equity FGMC may have in the Purchased Assets. The same thing will occur if other third parties are unwilling to deal directly with Customers Bank on the Purchased Assets. MacElree Decl. ¶ 14.

38.     Accordingly, there is ample cause for the relief from the automatic stay pursuant to Bankruptcy Code § 362(d)(1) to allow Customers Bank to manage its collateral directly and to permit Customers Bank to exercise its rights and remedies under the Repurchase Agreement. Customers Bank further requests that this Court waive the 14-day stay provided for under Bankruptcy Rule 4001(a)(3) given the immediate importance of the relief sought herein.

## **CONCLUSION**

39.    Customers Bank submits that the relief sought in this Motion is far from controversial. Customers Bank simply seeks affirmation that it may exercise its contractual rights and remedies under the Repurchase Agreement, the exercise of which is authorized by the Bankruptcy Code in section 559. To the extent this Court concludes that Bankruptcy Code § 559 is not applicable, Customers Bank submits that it is entitled to relief from the automatic stay pursuant to Bankruptcy Code § 362(d) in order to exercise its rights and remedies under the Repurchase Agreement.

*[remainder of page intentionally left blank]*

**WHEREFORE,** for the reasons set forth herein, Customers Bank respectfully requests that this Court enter an order affirming the applicability of Bankruptcy Code § 559 to Customers Bank's exercise of its rights and remedies under the Repurchase Agreement or, in the alternative, granting relief from the automatic stay pursuant to Bankruptcy Code § 362(d), and granting such related relief as set forth herein, and such other, further, and different relief as this Court deems just and proper.

Dated: July 21, 2022

<div style="margin-left:40%">

By: */s/ Eric Lopez Schnabel*
Eric Lopez Schnabel, Esq.
Alessandra Glorioso, Esq.
DORSEY & WHITNEY (DELAWARE) LLP
300 Delaware Avenue
Suite 1010
Wilmington, DE  19801
Telephone: (302) 425-7171
Facsimile: (302) 425-7177
E-mail: schnabel.eric@dorsey.com
      glorioso.alessandra@dorsey.com

  -and-

Thomas O. Kelly III, Esq.
DORSEY & WHITNEY LLP
50 South Sixth Street
Suite 1500
Minneapolis, MN 55402-1498
Telephone: (612) 492-6029
Facsimile: (612) 340-2868
E-mail: kelly.tom@dorsey.com

*Counsel to Customers Bank*

</div>