**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FIRST GUARANTY MORTGAGE CORPORATION, *et al.*,[1] | Case No. 22-10584 (CTG) |
| Debtors. | Obj. Deadline: July 27, 2022, at 10am |

**UNITED STATES OF AMERICA'S OBJECTION TO THE DEBTORS'
OPERATIONAL CASH FLOW DIP FINANCING MOTION
AND DIP REPO FINANCING MOTION**

The United States of America, by undersigned counsel, hereby files its objection to (1) the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Enter into Repurchase Agreement Facilities; (II) Authorizing the Debtors to Sell and Repurchase Mortgage Loans in the Ordinary Course of Business; (III) Granting Liens and Providing Superpriority Administrative Expense Status; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing with Respect to the Relief Requested Herein; and (VI) Granting Related Relief [ECF 20] (the "Repo DIP Motion"), and (2) Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Liens and Superpriority Administrative Expense Status; (IV) Granting Adequate Protection; (V) Modifying the Automatic Stay; (VI) Scheduling a Final Hearing;

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: First Guaranty Mortgage Corporation (9575); and Maverick II Holdings, LLC (5621). The Debtors' mailing address is 5400 Tennyson Parkway, Suite 450, Plano, TX 75024.

and (VII) Granting Related Relief [ECF 22] (the "Cash Flow DIP Motion"), and in support thereof, states the following:

## INTRODUCTION

Pursuant to section 306(g) of the National Housing Act ("NHA"), the Government National Mortgage Association ("GNMA") is not bound or limited by the automatic stay or any other provision of the Bankruptcy Code when enforcing its contractual rights under its MBS Program (defined below).  GNMA has broad discretion in terminating issuing and servicing rights and maintains ownership of its mortgages backing the GNMA securities pools and other property related to the mortgages at all times. As such, GNMA is a unique entity having distinct federal statutory rights not shared by the other creditors or parties-in-interest in this bankruptcy case. Therefore, GNMA is entitled to a full preservation of its rights in the Debtor's two proposed debtor-in-possession ("DIP") financing orders, and such rights cannot be limited by either the Debtors or their DIP lenders.

## JURISDICTION AND VENUE

The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.

## REGULATORY BACKGROUND: THE GNMA MBS PROGRAM

GNMA is a wholly owned corporation within the United States Department of Housing and Urban Development. Through its Mortgage-Backed Securities Program ("MBS Program"), as authorized by section 306(g) of the NHA, and implemented by

regulations set forth at 24 C.F.R. Part 300, GNMA approves "issuers to originate or purchase groups, or pools, of mortgages backing securities" guaranteed by GNMA.[2] The purpose of the MBS Program is to attract new sources of private capital into federally insured or guaranteed residential lending programs, thereby increasing the credit available to purchase low and moderate income housing. See 12 U.S.C. § 1716.

Under the MBS Program, private lenders issue securities backed by mortgages or other home loans insured or guaranteed by the Federal Housing Administration ("FHA"), the Department of Veterans Affairs ("VA"), or the Department of Agriculture Rural Development Rural Housing Service ("RHS"). 12 U.S.C. § 1721(g). After pooling eligible mortgages to back an issue of securities, the issuer enters into a standard form Guaranty Agreement with GNMA. Copies of the standard GNMA I and GNMA II Guaranty Agreement forms are attached hereto as Exhibits A and B, respectively.[3] Under section 3.01 of the Guaranty Agreements, the issuer conveys its right, title and interest in the mortgages to GNMA. Thus, the issuer retains only nominal title to the mortgages for servicing purposes. Guaranty Agreement § 3.01. The issuer is charged with administering and servicing the mortgage pool after sale of the securities. Id. at Arts. III-IV. To service the mortgage pools, the issuer is required, at a minimum, to collect monthly payments from

---

[2] GNMA operates two MBS Programs, referred to 1 as GNMA I and GNMA II. Under the GNMA I MBS Program, the issuer makes separate monthly payments directly to each holder of securities. Under the GNMA II MBS Program, a central paying and transfer agent collects payments from the issuer and pays the securities holders. See GNMA Mortgage-Backed Securities Guide ("GNMA Guide") at 1-3(A)(discussing MBS Program authority) available at http://www.ginniemae.gov/guide/guidtoc.asp?subTitle=Issuers.

[3] The GNMA Portfolio (defined herein) includes pools under both the GNMA I and GNMA II MBS Programs, which are regulated by substantially similar Guaranty Agreements. Relevant citations included herein are the same under each form of the Guaranty Agreements.

the mortgagors, allocate all payments received to the proper account (either the principal and interest account, from which payments are passed through to the securities holders, or the tax and insurance accounts), collect delinquent mortgages, implement foreclosure actions when necessary, file insurance or guaranty claims with the appropriate agencies, and pay taxes and insurance when due. See id. at Art. IV.

The MBS Program depends upon regular and timely payments to the investors. See Guaranty Agreements Art. VI. The issuer's primary obligation is, therefore, to make timely payments to the securities holders based upon the principal and interest (and any unscheduled recovery of principal) of the underlying mortgages. Id. The issuer is required to make full and timely payments whether or not funds collected from the mortgagors are sufficient to make all payments. See Guaranty Agreements § 6.01.

To protect investors from the risks associated with borrower and issuer defaults, GNMA guarantees the timely payment of principal and interest on the securities. Guaranty Agreements Art. VIII. Congress backed this guaranty by pledging the full faith and credit of the United States Government. Thus, if the issuer is unable to make full and timely payment to the securities holders, the NHA provides that GNMA "shall make such payment as and when due in cash." 12 U.S.C. § 1721(g). This guaranty of timely payment is a primary attraction of GNMA mortgage-backed securities.

## FACTUAL BACKGROUND

First Guaranty Mortgage Corporation ("FGMC") participates in GNMA's Single-Family Mortgage-Backed Securities program operating under Issuer ID #3770.  As of the

May 2022, reporting cycle, FGMC's portfolio consists of 826 loans and 121 pools, with a remaining principal balance of $222,562,751.

FGMC is bound by several GNMA documents, including the GNMA Guide, Guaranty Agreements, MBS prospectus documents, escrow agreements, unilateral notification, notices of violation, supplements, addendums, amendments, and related agreements, (collectively, the "GNMA Agreements").

On June 30, 2022, FGMC and an affiliate (the "Debtors") filed a voluntary petition under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

That same day, the Debtors filed two DIP financing motions, one seeking the use of operational cash flow financing (the "Cash Flow DIP Motion") and the other seeking financing of a repurchase facility (the "DIP Repo Motion"). The court granted both motions on an interim basis on June 30, 2022. A hearing to determine the final authority to obtain these DIP financings is set for July 28, 2022.

GNMA, FHA, VA and RHS began good faith negotiations with the Debtors and DIP lenders to add language to both the final order authorizing the use of the cash flow DIP ("Cash Flow DIP Order") and the final order authorizing the use of the DIP Repo facility (the "DIP Repo Order") immediately after the first day hearing. To date, the parties have agreed to language preserving the rights of FHA, VA and RHS, as well as some of GNMA's rights.

However, certain of GNMA's rights remain unpreserved and thus the United States files this objection.

**ARGUMENT**

The Cash Flow DIP Order seeks to grant the Cash Flow DIP Lender senior liens and superpriority administrative claim status.  See ECF 59, ¶¶ 5(a), 6.  Similarly, the DIP Repo Order seeks to grant the DIP Repo Lender various liens in different groupings of collateral, as well as superpriority administrative claim status.  See ECF 60, ¶¶ 6(b), 8, 10, 11.

Pursuant to the MBS Program, the Debtors have only nominal title to the mortgage loans pooled and issued to a GNMA MBS pool and have no interests in the funds passed through to the MBS certificate holders, and no interests in the real estate taxes, homeowner's insurance and other fees and payments collected and escrowed on behalf of FHA, RHS, VA and other third parties.  As no lender or secured party can obtain liens or security interests in property in which the Debtors themselves have no interests, the Cash Flow DIP Order and the DIP Repo Order cannot grant any lien or security interest in property the Debtors do not own or merely hold as custodians for the benefit of non-debtors.

Also, the DIP Repo Order provides for tight milestones by which the Debtors need to sell or transfer assets and propose and effectuate a plan.  The Debtors are currently required to effectuate a plan by November 1, 2022.  This puts strain on the Debtors to accomplish their goals quickly and will lead to the typical moving parts in a mortgage origination business moving even faster than in the ordinary course in the mortgage industry.  This means it is especially important that the two DIP orders properly preserve GNMA's rights and properly preserve the Debtors' obligations to GNMA and the MBS Program, as described in further detail below.

Pursuant to the MBS Program, the Debtors are required to place and hold in escrow certain fees and payments made on mortgage loans, including, without limitation, principal and interest payments, real estate taxes and homeowners' insurance (hazard, flood and otherwise), mortgage insurance premiums, funding fees, technology fees and other related payments and fees with respect to mortgage loans that have been pooled and issued for a GNMA MBS pool.  See Guaranty Agreement Art. III, IV; see also 12 U.S.C.§§ 1702 – 1715z-25 and 24 C.F.R. parts 201 – 203 and 206 (FHA), 42 U.S.C. §§ 1471 et seq. and 7 C.F.R. part 3555 (RHS) 38 U.S.C. §§ 3701 et seq., 38 C.F.R. chapter 36 (VA).

The GNMA Agreements, 12 U.S.C. § 1716 et seq. and 24 C.F.R. Part 300 place certain obligations on the Debtors to perform as participants in the MBS Program.  These obligations include, but are not limited to, the Debtors' obligations (i) to honor and pay the GNMA buyout obligations, (ii) to pay transfer fees of approximately $250 to $500 per pool or loan package (the "GNMA Transfer Fees") when Debtors transfer the issuer responsibility for such pools or loan packages to another issuer, (iii) to pay the monthly fee for GNMA's full faith and credit guaranty (the "GNMA Guaranty Fee"), (iv) to pay the fees of the document custodian (including, as required by the GNMA Agreements, the obligation to pay fees to post letters of credit if the document custodian determines that the Debtors submitted an incomplete package of documents), (v) to pay the fees of the funds custodian, (vi) and to pay the fees of the central paying and transfer agent, including, in each instance, all obligations related to loans originated both prepetition and postpetition; (vii) to service GNMA MBS in the ordinary course, and (viii) to service all mortgages in the ordinary course.

The Debtors are subject to these obligations so long as they participate in the MBS Program, not merely when they pool and issue loans for MBS pooling.  Thus, these obligations cannot be curtailed by the Cash Flow DIP Order or the DIP Repo Order, and must be strictly preserved.

Furthermore, any DIP lender's or other party's language added to the two DIP orders cannot place liens on any mortgage loans pooled and issued in a GNMA MBS pool, any funds held in escrow or custodial accounts, and cannot alter any GNMA Agreements. To the extent any party seeks to include such language in either DIP order, that language must be stuck or revised to GNMA's approval.

## CONCLUSION

For the reasons described above, unless the Cash Flow DIP Order and the DIP Repo Order properly and completely preserve GNMA's rights and the Debtors' obligations to GNMA and other government agencies, the relief sought by the Debtors in these orders must be denied.

[remainder of page intentionally blank]

Dated:  July 27, 2022                              Respectfully submitted,


                                                   BRIAN BOYNTON
                                                   Principal Deputy Assistant Attorney General

                                                   DAVID C. WEISS
                                                   United States Attorney

                                                   /s/  Leah V. Lerman
                                                   RUTH A. HARVEY
                                                   RODNEY A. MORRIS
                                                   LEAH V. LERMAN
                                                   Civil Division
                                                   U. S. Department of Justice
                                                   1100 L Street NW, Room 7002
                                                   P. O. Box 875
                                                   Ben Franklin Station
                                                   Washington, D.C.  20044-0875
                                                   (202) 307-0452
                                                   ATTORNEYS FOR THE UNITED STATES

<u>CERTIFICATE OF SERVICE</u>

On July 27, 2022, I caused a copy of the foregoing to be served electronically through the Court's ECF system upon those who have entered an appearance in this proceeding.

Dated: July 27, 2022                    <u>/s/ Leah V. Lerman</u>
                                        Leah V. Lerman