# EXHIBIT B

**Comparison to Interim Order**

~~IN~~ THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FIRST GUARANTY MORTGAGE<br>CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-10584 (CTG)<br><br>(Jointly Administered)<br><br>**Related Docket No. 5** |

**FINAL ORDER GRANTING~~, ON AN INTERIM BASIS,~~ MOTION OF THE DEBTORS
FOR ENTRY OF INTERIM AND FINAL ORDERS: (I) AUTHORIZING USE OF CASH
MANAGEMENT PROCEDURES, BANK ACCOUNTS, AND CERTAIN PAYMENT
METHODS; (II) PROHIBITING SETOFFS AND FREEZING OF BANK ACCOUNTS;
(III) MODIFYING REQUIREMENTS OF SECTION 345(b) OF THE BANKRUPTCY
CODE; AND
(IV) ~~AND~~ FOR RELATED RELIEF**

Upon consideration of the *Motion of the Debtors for Entry of Interim and Final Orders:*

*(I) Authorizing Use of Cash Management Procedures, Bank Accounts, and Certain Payment*

*Methods; (II) Prohibiting Setoffs and Freezing of Bank Accounts; (III) Modifying Requirements*

*of Section 345(b) of the Bankruptcy Code; and (VI) Related Relief* [Docket No. 5] (the

"Motion"), filed by the Debtors[2] and upon consideration of the Declaration, and the Court having

jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and ~~§~~ 1334(b) and the Amended

Standing Order of Reference from the United States District Court for the District of Delaware

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number are:  First Guaranty Mortgage Corporation (9575); and Maverick II Holdings, LLC (5621).  The location of the corporate headquarters and the service address for First Guaranty Mortgage Corporation is 5800 Tennyson Parkway, Suite 450, Plano, TX  75024.

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion or in the Order Granting, On an Interim Basis, Motion of the Debtors for Entry of Interim and Final Orders:(I) Authorizing Use Of Cash Management Procedures, Bank Accounts, And Certain Payment Methods; (II) Prohibiting Setoffs And Freezing Of Bank Accounts; (III) Modifying Requirements Of Section 345(B) Of The Bankruptcy Code; (IV) And For Related Relief [Docket No. 61], as applicable.

dated as of February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), that the Debtors consent to entry of a final order under Article III of the United States Constitution, and venue of this case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that:

1.      The Motion is GRANTED on ~~an interim~~a final basis, as set forth herein.

2.      The Debtors are authorized in the reasonable exercise of their business judgment, to: (i) utilize their existing Cash Management System and to designate, maintain, and continue to use, with the same account numbers, the Bank Accounts (as identified on an updated Bank Account Chart attached as **Exhibit 1**) and Credit and Electronic Payment Methods, including Credit Cards, on ~~an interim~~a final basis, subject to monthly caps of $45,000.00 for the Debtors' American Express card and $40,000.00 for the Debtors' Visa card; and (ii) treat such Bank Accounts for all purposes as accounts of the Debtors as debtors-in-possession and to maintain and continue using these accounts in the same manner and with the same account numbers, styles, and document forms as those employed prior to the Petition Date, provided that once the Debtors' existing checks have been used, the Debtors shall, when reordering checks, require the designation "Debtor in Possession" and the corresponding bankruptcy case number on all checks; provided further that, with respect to checks which the Debtors or their agents print themselves, the Debtors shall begin printing the "Debtor in Possession" legend on such items within ten (10) days of the date of entry of this Order.

3.      The Banks are hereby authorized to continue to service and administer all Bank

Accounts as accounts of the Debtors as debtors-in-possession without interruption and in the ordinary course in a manner consistent with such practices prior to the Petition Date, and to receive, process, honor, and pay any and all checks, drafts, wires, or other electronic transfer requests issued, payable through, or drawn on such Bank Accounts after the Petition Date by the holders or makers thereof or other parties entitled to issue instructions with respect thereto, as the case may be; provided, however, that any such checks, drafts, wires, or other electronic transfer requests issued by the Debtors before the Petition Date may be honored only if specifically authorized by an order of this Court.

4.      Further, the Banks may rely on the representations of the Debtors with respect to whether any check, item, or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this or any other order of this Court, and such Bank shall not have any liability to any party for relying on such representations by the Debtor pursuant to this Order.

5.      The Debtors are authorized to make disbursements from the Bank Accounts other than by check, including, without limitation, via wire transfer, debit card, or other forms of electronic transfer, to the extent consistent with the Debtors' existing cash management practices.

6.      The Debtors are authorized to open any new Bank Accounts or close any existing Bank Accounts as it may deem necessary and appropriate in their sole discretion; provided, however, that the Debtors give notice within fifteen (15) days to the Office of the United States Trustee for the District of Delaware and any statutory committees appointed in these chapter 11 cases; provided, further, however that the Debtors shall open any such new Bank Account at banks that have executed a Uniform Depository Agreement with the Office of the United States

Trustee for the District of Delaware, or at such banks that are willing to immediately execute such an agreement.

7.      The Banks are authorized to charge and the Debtors are authorized to pay and honor, or allow to be deducted from the applicable Bank Account, both pre-petition and post-petition service and other fees, costs, charges, and expenses to which the Banks may be entitled under the terms of and in accordance with their contractual arrangements with the Debtors (collectively, the "Bank Fees").

8.      For banks at which the Debtors hold accounts that are not party to a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, the Debtors shall either (i) transfer funds to a bank that has executed a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, or (ii) use their good-faith efforts to cause the banks to execute a Uniform Depository Agreement in a form prescribed by the Office of the United States Trustee within thirty (30) days of the date of this Order.  The Debtors and the U.S. Trustee's rights to seek further relief from this Court on notice in the event that the aforementioned banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

9.      The Debtors are authorized, but not directed, to continue the Cash Management System and related practices as used in the ordinary course prior to the Petition Date.  This includes, without limitation, authorization for the Debtors to disburse through any means or for the applicable party as indicated on the Bank Account Chart to draft funds held in the Bank Accounts for borrower-related disbursements (*e.g.*, property taxes, hazard insurance, or similar disbursements from borrower funds) and other disbursements for funds held as custodian of or for another party, including loan investors who may have contractual entitlements to receipts

received by the Debtors— (with such borrower-related funds and other custodial disbursements collectively referred to herein as "Custodial Funds").  For the sake of clarity and without in any way limiting the generality of the preceding sentence, attached hereto as **Exhibit 2** is a chart of Bank Accounts as to which transfers of Custodial Funds are permitted in the ordinary course of the Debtors' business and/or as may be required by agreements entered into by the Debtors prior to the Petition Date; provided, however, that nothing in this Order shall allow the Debtors to use any amounts in any of the Bank Accounts that either (i) constitute the collateral for the Prepetition Loan Facilities[3] or the Prepetition Repo Facilities,[4] including, with respect to each of the foregoing, any cash collateral or proceeds of collateral or (ii) may be subject to any rights of setoff held by Texas Capital Bank, Customers Bank or Flagstar Bank.

10.    Debtor First Guaranty Mortgage Corporation ("FGMC") is a party to that certain Mortgage Selling and Servicing Contract, the Fannie Mae Selling Guide, the Fannie Mae Servicing Guide and all supplemental servicing instructions or directives provided by Fannie Mae, all applicable master agreements, recourse agreements, repurchase agreements, indemnification agreements, loss-sharing agreements, and any other agreements between Federal National Mortgage Association (together with any successor thereto, "Fannie Mae") and FGMC, and all as amended, restated or supplemented from time to time (collectively, the "Fannie Mae

---

[3] "Prepetition Loan Facilities" is defined as (a) Amended and Restated Loan Agreement, dated as of July 17, 2019 (as amended, restated, supplemented or otherwise modified from time to time), by and between FGMC and Customers Bank and any other agreements and documents executed or delivered in connection therewith or pursuant thereto; and (b) Mortgage Warehouse Loan and Security Agreement, dated as of June 30, 2017 (as amended, restated, supplemented or otherwise modified from time to time) by and between FGMC and Flagstar Bank, and any other agreements and documents executed or delivered in connection therewith or pursuant thereto.

[4] "Prepetition Repo Facilities" is defined as (a) Second Amended and Restated Master Repurchase Agreement, dated as of October 9, 2019 (as amended, restated, supplemented or otherwise modified from time to time), by and between FGMC and Customers Bank; (b) Mortgage Warehouse Agreement, dated as of August 14, 2020 (as amended, restated, supplemented or otherwise modified from time to time), by and between FGMC and Texas Capital Bank, National Association; and (c) Master Repurchase Agreement, dated as of October 25, 2012 (as amended, restated, supplemented or otherwise modified from time to time), by and between FGMC and J.V.B Financial Group, LLC, as successor by merger to C&Co./PrinceRidge LLC.

Lender Contract"), which include, among other rights, the right of Fannie Mae to terminate the Fannie Mae Lender Contract with or without cause.  Notwithstanding anything to the contrary in this Order, all funds previously or hereafter collected as servicer for Fannie Mae under the Fannie Mae Lender Contract, including all funds previously or hereafter collected by any sub-servicer (collectively, the "Fannie Mae Payments"), are and shall remain property of Fannie Mae at all times, including without limitation any funds held in any custodial accounts (as referenced in the Fannie Mae Lender Contract) and the custodial accounts identified on Exhibit 2.  Such funds shall be remitted to Fannie Mae in such amounts and at such times as provided under the terms of the Fannie Mae Lender Contract.  Furthermore, any funds remitted by Fannie Mae to FGMC post-petition (whether on account of pre-petition or post-petition transactions) shall be handled as provided in the Fannie Mae Lender Contract, including return of any excess owed to Fannie Mae thereunder.  Fannie Mae payments held in blocked accounts may be released on such terms and conditions as may be acceptable to Fannie Mae.  For the avoidance of any doubt, the Segregated Payments shall not include any Fannie Mae Payments and nothing in this Order shall limit, impact, impair or affect, in any way, the obligations of FGMC (or any sub-servicer for loans currently owned or hereafter acquired by Fannie Mae) under the Fannie Mae Lender Contract, nor shall this Order impact Fannie Mae's rights with respect to FGMC or any sub-servicer under the Fannie Mae Lender Contract.  Nothing herein gives the Debtors, any warehouse lenders, or any other party any interest in the mortgages and loans (or the proceeds thereof) owned by Fannie Mae and serviced pursuant to the Fannie Mae Lender Contract, the servicing rights associated therewith, or the Fannie Mae Lender Contract. Fannie Mae reserves all rights under the Fannie Mae Lender Contract.  To the extent of any inconsistency between the Fannie Mae Lender Contract and this Order, the Fannie Mae Lender Contract shall control.  To

the extent that Fannie Mae or Freddie Mac is granted different or additional rights or protections hereunder, Fannie Mae or Freddie Mac shall have the option (but not the obligation) to adopt comparable rights and protections at any time.

11.    FGMC is subject to the Freddie Mac Single-Family Seller/Servicer Guide ("Freddie Mac Guide"), the Freddie Mac Single-Family/Servicer Guide Plus Additional Provisions, certain applicable Master Agreements (as defined in the Freddie Mac Guide), the Purchase Contracts (as defined in the Freddie Mac Guide), Pricing Identifier Terms (as defined in the Freddie Mac Guide), supplements, addendums, Bulletins (as defined in the Freddie Mac Guide), directives, terms of business and  any other agreements between the Debtors and Federal Home Loan Mortgage Corporation ("Freddie Mac"), as amended, restated or supplemented from time to time (collectively, the "Freddie Mac Agreements"), which provide Freddie Mac the right, among other things, to: (i) terminate, at any time, all, or any portion of, Servicing (as defined by the Freddie Mac Agreements) by FGMC, and/or to suspend or disqualify FGMC as Seller or Servicer (as defined in the Freddie Mac Agreements), with or without cause, and (ii) sell, or have transferred, the Freddie Mac Servicing Contract Rights (as defined in the Freddie Mac Agreements) associated with mortgage loans that have been sold to, or subsequently acquired by, Freddie Mac (the "Freddie Mac Loans"), with any such sale or transfer being subject to Freddie Mac and its conservator, Federal Housing Finance Agency's, consent.  Notwithstanding anything to the contrary in this Order, funds previously collected by, or which shall hereafter be collected by, FGMC as Servicer (as defined in the Freddie Mac Agreements) for Freddie Mac under the Freddie Mac Agreements (including, without limitation, any and all funds previously, or which shall hereafter be, collected by any sub-servicer on account of any Freddie Mac Loans) (collectively, the "Freddie Mac Payments") are, and shall remain, at all times, the exclusive

property of Freddie Mac (including, without limitation, any funds held in any Custodial Account (as defined in the Freddie Mac Agreements) and the Custodial Account identified on Exhibit 2), all of which funds shall be remitted to Freddie Mac in such amounts, and at such times, as provided for under the terms of the Freddie Mac Agreements.  For the avoidance of any doubt, the Segregated Payments shall not include any Freddie Mac Payments and nothing in this Order shall limit, impact, impair or affect, in any way, the obligations of either FGMC (or any sub-servicer for Freddie Mac Loans) under any Freddie Mac Agreement, nor shall this Order impact Freddie Mac's rights with respect to FGMC or any sub-servicer under the Freddie Mac Agreements. Nothing in this Order gives the Debtors, any warehouse lenders, or any other party any interest in: (i) any Freddie Mac Loans or the proceeds thereof; (ii) any Servicing Contract Rights (as defined in the Freddie Mac Agreements) associated with Freddie Mac Loans; or (iii) the Freddie Mac Agreements.  Freddie Mac reserves all of its rights under the Freddie Mac Agreements, the Freddie Mac Loans, the Freddie Mac Servicing Contract and related Freddie Mac Servicing Contract Rights.  Notwithstanding anything to the contrary in this Order, to the extent there is any inconsistency between this Order and the Freddie Mac Agreements that relate to Freddie Mac Loans, the Freddie Mac Agreements shall explicitly supersede and control.

12.    10. As to Banks which are not party to a Uniform Depository Agreement with the United States Trustee for the District of Delaware (a "UDA"), the requirements of § 345(b) of the Bankruptcy Code and the U.S. Trustee Guidelines are suspended on an interim basis for a period of thirtyforty-five (3045) days from the Petition Dateentry of this Order such that the Debtors are hereby permitted to maintain their deposits in their non-UDA Bank Accounts in accordance with their existing practices without prejudice to the Debtors' ability to seek additional extensions of the 30 daysforty-five (45) day time period, and the rights and objections

of the United States Trustee for the District of Delaware are fully reserved.

13.    11. Subject to § 553 of the Bankruptcy Code, the Banks are prohibited from offsetting, affecting, freezing, or otherwise impeding the Debtors' use of any funds deposited in the Bank Accounts on or before the Petition Date, on account of, or by reason of, any claim (as defined in § 101(5)) of any such Bank against the Debtors that arose before the Petition Date, absent further order of the Court. Nothing herein shall affect any other party's rights under section 553 of the Bankruptcy Code, if any.

14.    Notwithstanding paragraph 13 above, pursuant to §§ 362, 555, and 559 of the Bankruptcy Code, Texas Capital Bank and Customers Bank are authorized to exercise their rights and remedies to liquidate, accelerate and/or terminate their relevant repurchase agreements with FGMC and any related documents, and to the extent not within the scope of § 362(b)(6) or (7), the automatic stay is hereby lifted to allow Texas Capital Bank and Customers Bank to exercise such rights and remedies and/or to set off against any amounts of the Debtors held by Texas Capital Bank or Customers Bank that constitute proceeds of their collateral.

15.    12. The Debtors shall maintain accurate and detailed records of all transfers, including intercompany transfers, so that all transactions may be readily ascertained, traced, recorded properly, and distinguished between prepetition and post-petition transactions.

16.    13. For banks at which the Debtors hold bank accounts that are party to a UDA, within fifteen (15) days of the date of entry of this Order the Debtors shall (a) contact each bank, (b) provide the bank with each of the Debtors' employer identification numbers and (c) identify each of their bank accounts held at such banks as being held by a debtor in possession in a bankruptcy case.

14.    This Order shall be without prejudice to the Debtors' rights to seek a further

~~interim waiver from this Court of such requirements or to seek approval from this Court to deviate from such requirements on a final basis.~~

17.    ~~15.~~ Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in this Order, ~~not~~nor any payment made pursuant to this Order, shall constitute, or is intended to constitute, an admission as to the validity or priority of any claim against the Debtors, a waiver of the Debtors' rights to subsequently dispute such claim, or the assumption or adoption of any agreement, contract, or lease under § 365 of the Bankruptcy Code.

18.    ~~16.~~ Despite the use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of who pays those disbursements.

19.    ~~17.~~ Notwithstanding anything in this order to the contrary, the relief sought by the Debtors in ¶¶ 5, 6, 9~~,~~ and ~~11~~13 of this ~~order~~Order shall not apply ~~(i)~~ to any ~~deposit accounts located at Customers Bank, Texas Capital Bank, or Flagstar Bank,~~of the Bank Accounts on the chart attached as **Exhibit 3**[5], without the prior written consent of ~~(ii)~~ with respect to the ~~accounts held by Deutsche~~Segregated Warehouse Bank ~~pursuant to~~Accounts, the ~~Amended and Restated Joint Securities Account Control Agreement dated as of August 11, 2017 (as amended, restated, supplemented or modified from time to time, the "JSACA") by and among Deutsche Bank National Trust Company ("Securities Intermediary"), Customers Bank, Flagstar Bank and Texas Capital Bank, or (iii) to any of the collateral for~~ the Prepetition Loan Facilities or the ~~Customers~~

---

[5] Exhibit 3 includes: (i) five (5) new accounts at Signature Bank recently opened by the Debtors, which will hold remittances to be segregated as agreed by the Debtors in the *Stipulation Pursuant to 11 U.S.C. 363(c)(4) Preserving Status Quo Regarding Customers Bank Cash Collateral* [Docket No. 138] and as set forth herein, and as identified on Exhibit 3 (such accounts, the "Segregated Warehouse Bank Accounts") and (ii) the accounts held by Deutsche Bank pursuant to the Amended and Restated Joint Securities Account Control Agreement dated as of August 11, 2017 (as amended, restated, supplemented or modified from time to time, the "JSACA") by and among Deutsche Bank National Trust Company, Customers, Flagstar, and TCB.

~~Repo Facility, including cash collateral and proceeds of collateral.  Notwithstanding anything in~~ ~~this  order  to  the  contrary,  other  than  as  set  forth  in  paragraph  37  of~~party named in the "Description of Bank Account" column in Exhibit 3, and (ii) in the case of the other accounts listed on Exhibit 3, the account bank.  In the event of a conflict between this Order and the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Authorizing  the  Debtors  to  Use  Cash  Collateral;  (III)  Granting  Liens  and  Providing Super-Priority  Administrative  Expense  Status;  (IV)  Granting  Adequate  Protection;  (V) Modifying the Automatic Stay and (VI) Granting Related Relief* (the "Final Cash Flow DIP Order"),** the ~~Interim~~Final Cash Flow DIP Order~~, no liens being granted in connection with this order  or  any  other  interim  first  day  order  shall  attach  to  the  collateral  of  Flagstar  Bank  or Customer Bank.  Nothing in this paragraph shall affect the right of the Debtors, Customers Bank or  Flagstar  Bank  to  seek  additional  relief,  including,  without  limitation,  in  the  final  first  day orders~~ shall control.  For the avoidance of doubt, the Debtors shall be permitted to use the Bank Account at Texas  Capital  Bank  ending  in  the  last  four  digits  of  7572  for  the  purpose  of payroll-related disbursements solely from proceeds of the Cash Flow DIP Loan.

20.    FGMC shall segregate and account for any payments that FGMC receives from any subservicer with respect to the Prepetition Loan Facilities or the Prepetition Repo Facilities (collectively, the "Warehouse Facilities" and each a "Warehouse Facility") or otherwise related to the mortgage loans backing the Warehouse Facilities and any portion of the payments that FGMC receives from the Agencies or otherwise related to the loans backing the Warehouse Facilities (collectively, the "Segregated Payments") and shall deposit all Segregated Payments solely in the Segregated Warehouse Bank Account related to the applicable Warehouse Facility. The Segregated Payments are proceeds of the mortgage loans and related securities under the

applicable Warehouse Facility, and the Segregated Payments shall be free and clear of all liens other than the liens on the property of which they are proceeds.  FGMC shall have no right to use the Segregated Payments.  For the avoidance of doubt:

    a.  The Segregated Payments shall not include payments on mortgage loans that have been purchased by Freddie Mac or Fannie Mae, and nothing herein prejudices Freddie Mac's or Fannie Mae's rights and interests;

    b.  The Segregated Payments shall not include payments on mortgage loans collateralized in connection with mortgage-backed securities guaranteed by Ginnie Mae (the "Ginnie Securitized Mortgage Loans"). Nothing in this Order shall affect or impair Ginnie Mae's rights and interests nor shall it affect or impair FGMC's (or any subservicer with respect to the Prepetition Loan Facilities or the Prepetition Repo Facilities) rights and obligations pursuant to any Ginnie Mae agreement regarding Ginnie Securitized Mortgage Loans, including but not limited to, obligations to deposit payments on Ginnie Securitized Mortgage Loans into appropriate custodial accounts related thereto, and remit all funds timely to security holders;

    c.  After a mortgage loan becomes a Ginnie Securitized Mortgage Loan, FGMC and any subservicer with respect to the Prepetition Loan Facilities or the Prepetition Repo Facilities shall no longer segregate payments on such loan; and

    d.  Nothing in this Order shall impair or affect FGMC's (or any subservicer with respect to the Prepetition Loan Facilities or the Prepetition Repo Facilities) obligations pursuant to any Ginnie Mae agreement, or other agreement with

any agency or instrumentality of the United States, to hold in a segregated escrow account all taxes, insurance (hazard and flood), mortgage insurance premium (MIP) payments or to pay funding fees, guaranty fees, technology fees or other payments required in connection with mortgage loans, including but not limited to those insured or guaranteed by the Federal Housing Administration (FHA), the U.S. Department of Veterans Affairs (VA), and the U.S. Department of Agriculture's Rural Housing Service (RHS).

21.    Beginning Monday, July 18, at 9:00 a.m. ET, and on a weekly basis thereafter, FGMC shall provide each Warehouse Lender with information as received from the subservicers, regarding the expected Segregated Payments, including identifying the accounts the payments will be deposited into, the payment amounts, the dates of payments, and the related payment history that reconciles to the total amount of payments being remitted for tracking and potential sale approval purposes.

22.    18. To the extent applicable, the requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

23.    19. Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

20.    The final hearing (the "Final Hearing") to consider the entry of a final order granting the relief requested in the Motion shall be held on July 28, 2022, at 10:00 a.m., prevailing Eastern Time.

21.    Any objection to the entry of a final order granting the relief requested in the Motion shall be filed with the Court and served, on or before 4:00 p.m., prevailing Eastern Time, on July 21, 2022, to (a) the Debtors; (b) proposed counsel to the Debtors, (i) Dentons US LLP,

601 South Figueroa Street, Suite 2500, Los Angeles, California 90017-5704 (Attn: Samuel R. Maizel and Tania M. Moyron) or by e-mail at samuel.maizel@dentons.com and tania.moyron@dentons.com, and (ii) Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899-8705 (Attn: Laura Davis Jones) or ljones@pszjlaw.com; (c) counsel for the Cash Flow DIP Lender, Greenberg Traurig, LLP (Attn: Nancy Peterman (PetermanN@gtlaw.com), John D. Elrod (ElrodJ@gtlaw.com), Joseph Davis (DavisJ@gtlaw.com), and Danny Duerdoth (duerdothD@gtlaw.com); (d) counsel to the official committee of unsecured creditors, if one is appointed; and (e) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Benjamin A. Hackman (Benjamin.A.Hackman@usdoj.gov).

24. 22. This Court shall retain jurisdiction to hear and determine all matters arising from

the implementation of this Order.

Document comparison by Workshare Compare on Monday, August 1, 2022
6:53:53 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_DE/239680/3 |
| Description | DOCS_DE-#239680-v3-FGMC_-_Cash_Management_Motion |
| Document 2 ID | PowerDocs://DOCS_DE/240076/1 |
| Description | DOCS_DE-#240076-v1-FGMC:_Final_cash_management_order |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 75 |
| Deletions | 40 |
| Moved from | 1 |
| Moved to | 1 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 117 |