# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FIRST GUARANTY MORTGAGE CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-10584 (CTG)<br><br>(Jointly Administered)<br><br>**Re Docket No. 328** |

**ORDER (I) AUTHORIZING (A) PRIVATE SALE AND (B) TRANSFER OF CERTAIN SERVICING RIGHTS TO BSI FINANCIAL SERVICES FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (II) APPROVING THE TERMS OF THE PURCHASE AND SALE AGREEMENT; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS; AND (IV) GRANTING RELATED RELIEF**

Upon the motion dated August 15, 2022 (the "Motion")[2] of the Debtors for an order, pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004, 6006, 9013, and 9014 (i) authorizing (a) the private sale and (b) transfer (the "Sale") of certain mortgage servicing rights to Servis One, Inc. d/b/a BSI Financial Services ("BSI" or the "Buyer"), such sale free and clear of liens, claims, encumbrances, and interests; (ii) approving the terms of the Purchase and Sale Agreement (the "Sale Agreement"); (iii) approving the assumption and assignment of certain executory contracts; and (iv) granting related relief; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference of the United States Court for*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification in the jurisdiction in which it operates, are: First Guaranty Mortgage Corporation (9575) (Virginia); and Maverick II Holdings, LLC (5621) (Delaware). The location of the corporate headquarters and service address for First Guaranty Mortgage Corporation is 5800 Tennyson Parkway, Suite 450, Plano, TX 75024.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

1

*the District of Delaware,* dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and sufficient notice of the Motion having been given under the circumstances; and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing to consider the relief requested in the Motion on August [31], 2022 (the "<u>Sale Hearing</u>"); and upon the *Declaration of Tanya Meerovich in Support of the Debtors' Motion for Private Sale of Servicing Rights*; and upon the *First Day Declaration*, and the record of the Hearing; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested is in the best interests of the Debtors, their estates, and all parties in interest; and after due deliberation; and good and sufficient cause appearing therefor;

**THE BANKRUPTCY COURT HEREBY ORDERS, ADJUDGES, AND DECREES that**[3]**:**

1. The Motion is GRANTED to the extent set forth herein.

2. The Sale Agreement (annexed hereto as an **Exhibit**) and the Sale are hereby approved as being in the best interest of the Debtors' estates and their stakeholders. The Debtors are hereby authorized and empowered to enter into, consummate, implement and perform their obligations under the Sale Agreement, and to execute, deliver, and perform such agreements, instruments, and documents and take any other actions that may be reasonably necessary and desirable to implement and effectuate the terms of the Sale Agreement, this Sale Order, and the Sale, without any further corporate action or orders of the Court.

---

[3] All findings of fact and conclusions of law set forth in this Sale Order or announced by the Court at the hearing in relation to the Motion are hereby incorporated herein to the extent not inconsistent herewith.

3. Subject to the applicable provisions provided herein concerning the Agencies, at the closing of the Sale, the Debtors shall be, and hereby are, authorized and empowered by sections 105 and 363(b) and (f) of the Bankruptcy Code, to effect the Sale. The Sale shall constitute a legal, valid and effective sale and transfer of the MSRs and vest Buyer with all rights, title, and interests of the Debtors in the MSRs, subject to the terms of the Sale Agreement.

4. The Buyer is hereby granted and is entitled to all the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code. Neither the Debtors nor the Buyer, nor any of their equity owners, officers, directors, employees, professionals or other agents have engaged in any action or inaction that would (a) cause the entry into the Sale Agreement, or consummation of the transactions contemplated thereby, to be avoided, or (b) result in costs and damages to be imposed under section 363(n) of the Bankruptcy Code. Entry into the Sale Agreement is undertaken by the parties thereto without collusion, and in good faith, as that term is used in 363(m) of the Bankruptcy Code. The reversal or modification on appeal of the authorization provided herein to enter into the Sale Agreement and consummate the transactions contemplated thereby shall not affect the validity of such transactions (including the Sale Agreement), unless such authorization is duly stayed pending such appeal.

5. The Sale is hereby approved pursuant to section 363(f) of the Bankruptcy Code, subject to the applicable provisions provided herein concerning the Agencies. The MSRs, pursuant to the Sale Agreement, shall be sold and transferred free and clear of all liens, claims, encumbrances, and interests pursuant to section 363(f) of the Bankruptcy Code; *provided that* the liens securing the DIP Repo Facility, the Cash Flow DIP Facility, the Prepetition Financing Facilities, and the Prepetition Bridge Loans (the "Secured Facilities"), in each case if and to the extent applicable to such servicing rights, shall attach to the proceeds of the MSRs, subject to the

3

priorities set forth in the Secured Facilities and further subject to the provisions of this Sale Order regarding the Agencies. The Secured Facilities' liens, claims, encumbrances, and interests are adequately protected – thus satisfying section 363(e) of the Bankruptcy Code – by having their liens, claims, encumbrances, and interests, if any, attach to the proceeds of the Sale, in the same order of priority and, with the same validity, force and effect that such liens, claims, encumbrances, and interests had before the Sale, subject to any rights, claims and defenses of the Debtors or their estates, as applicable.  Neither the Sale Agreement nor the MSRs under the Sale Agreement shall be subject to any avoidance claim or cause of action arising under section 363(n) or chapter 5 of the Bankruptcy Code.

6. Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code and subject to and conditioned upon the closing of the Sale, the Debtors' assumption and assignment to the Buyer of the Executory Contracts is approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are deemed satisfied, subject to the applicable provisions provided herein concerning the Agencies.

7. Subject to the applicable provisions provided herein concerning the Agencies, the Debtors are authorized in accordance with sections 105(a) and 365 of the Bankruptcy Code to (i) assume and assign to the Buyer the Executory Contracts free and clear of any interests of any kind or nature whatsoever, and (ii) execute and deliver to the Buyer such documents or other instruments as the Buyer reasonably deems may be necessary to assign the Executory Contracts to the Buyer.

8. Subject to the applicable provisions provided herein concerning the Agencies, the Executory Contracts shall be transferred and assigned to the Buyer and thereafter remain in full

force and effect for the benefit of the Buyer and the Debtors shall be relieved of any further liability with respect to the Executory Contracts after the assumption and assignment to the Buyer.

9. Notwithstanding anything to the contrary in (i) this Sale Order, (ii) the Motion, (iii) the Sale Agreement, (iv) any list of Executory Contracts being assumed pursuant to this Sale Order, and/or (v) any other documentation related to the Settlement Agreement, with respect to Freddie Mac[4] – (A) subject to the requirement and/or limitations set forth in subsection (G) of this paragraph, FGMC's Servicing Contract with Freddie Mac shall be deemed an Executory Contract assumed by FGMC as of the Sale Date and assigned to the Buyer as of the Transfer Date subject to all existing requirements of the Freddie Mac Guide and other applicable Freddie Mac Agreements[5] including, *without limitation*, Freddie Mac's rights to consent to any transfer of SCRs and/or the assignment of FGMC's Servicing Contract with Freddie Mac, to the Buyer, as may be provided for in the Freddie Mac Guide, and subject to any future requirements that Freddie Mac may impose on any Freddie Mac Seller/Servicer under such Freddie Mac Agreements (but such requirements shall not include any financial obligations set forth as owing to Freddie Mac in the Settlement Agreement that have already been satisfied consistent with the terms therein or any requirements or obligations which Freddie Mac has waived in writing in its sole and absolute discretion); (B) and with respect to the servicing of mortgage loans presently owned by, subsequently transferred to, or otherwise acquired by, Freddie Mac (the "Freddie Mac Loans") subject to FGMC's Servicing Contract with Freddie Mac, all references to "Mortgage Servicing

---

[4] For purposes of the Freddie Mac paragraph only, capitalized terms used, but not defined herein, shall have the meanings attributed to them in either the Motion or in the Freddie Mac Single-Family Seller/Servicer Guide, as applicable.

[5] For purposes of the Freddie Mac paragraph only, the "Freddie Mac Agreement" shall collectively include the Freddie Mac Guide, the Freddie Mac Single-Family/Servicer Guide Plus Additional Provisions, certain applicable Master Agreements, Purchase Contracts, Pricing Identifier Terms, supplements, addendums, Bulletins, directives, terms of business and any other agreements between the FGMC and Freddie Mac, as may have been, or as may be, amended, restated or supplemented from time to time.

Rights," "MSRs" and "servicing rights" shall mean "Servicing Contract Rights" or "SCRs" and any references to the rights, title and interest held by FGMC in the SCRs (with respect to the Freddie Mac Loans that are related to the transfer of SCRs or assignment of the Servicing Contract as may be contemplated or approved under this Sale Order) shall be limited to the rights, title, and interest provided to FGMC, as Transferor Servicer (as defined in the Freddie Mac Guide) and to the Buyer, as proposed Transferee Servicer (as defined in the Freddie Mac Guide) in the SCRs as provided for in the Freddie Mac Guide and other Freddie Mac Agreements, as applicable; (C) any transfer of Freddie Mac SCRs to the Buyer or to any other transferee Servicer, as applicable, shall not be free and clear of the liens, claims, encumbrances, obligations or interests currently imposed by, or which will in the future be imposed by, Freddie Mac under the Freddie Mac Guide or any other applicable Freddie Mac Agreements on any Freddie Mac Seller/Servicer; (D) without limiting any of the Buyer's other obligations, the Buyer shall assume the obligation to satisfy all ongoing origination and selling representation and warranty liability and servicing representation and warranty liability with respect to FGMC's non-bifurcated servicing portfolio of Freddie Mac Loans; (E) nothing shall grant a lien to any lender of the Debtors in (i) any of the Freddie Mac Loans, (ii) any Freddie Mac Servicing Contract Rights, (iii) any other rights or obligations under, or related to, the Freddie Mac Agreements, nor (iv) in any of the principal, interest, and funds for the payment of property taxes and insurance premiums, mortgage premiums, condominium fees, or any other amounts collected by FGMC (or any sub-servicer in connection with the Debtors' performance of their servicing obligations under the Freddie Mac Agreements); (F) nothing limits or impairs Freddie Mac's rights, or the protections provided to Freddie Mac, under any other previous orders entered by this Court; and (G) if the settlement agreement (the "Freddie Mac Settlement Agreement") attached to the *Debtors' Emergency Motion for an Order (I) Approving*

*a Settlement Agreement with Federal Home Loan Mortgage Corporation Pursuant to Fed. Bankr. R. 9019, (II) Authorizing the Sale of Certain Mortgage Loans, and (III) Granting Related Relief* (ECF No. 341) (the "<u>Freddie Mac Settlement Motion</u>") (i) has been approved by a separate order and (ii) FGMC has satisfied all of its obligations to Freddie Mac in the Freddie Mac Settlement Agreement in a manner consistent with its terms, then (iii) any financial cure claims or proofs of claim that Freddie Mac may assert against FGMC in this bankruptcy case shall be deemed compromised, settled and satisfied, *provided, however,* that until Freddie Mac has been fully satisfied that all of FGMC's obligations as set forth in the Freddie Mac Settlement Agreement have been fulfilled, then Freddie Mac shall retain all rights to assert any claims, liabilities and obligations against FGMC, and the SCRs shall not be deemed transferred, nor any of the Freddie Mac Agreements assigned, to the Buyer until such obligations under the Freddie Mac Settlement Agreement are satisfied. To the extent the Debtors' obligations to Freddie Mac are not resolved through the Credits (as defined in the Freddie Mac Settlement Agreement) against the purchase price for the Purchased Loans (as defined in the Freddie Mac Settlement Agreement), then the Debtors shall satisfy such obligations in full through a cash payment to Freddie Mac to be made no later than April 30, 2023.

10. Furthermore, notwithstanding anything to the contrary herein, with respect to the mortgage loans presently owned by, subsequently transferred to, or otherwise acquired by, Fannie Mae (the "<u>Fannie Mae Loans</u>"), the servicing rights with respect to the Fannie Mae Loans (the "<u>Fannie Mae Servicing Rights</u>"), and all other rights under or related to the Fannie Mae Mortgage Selling and Servicing Contract, the Fannie Mae Selling Guide, the Fannie Mae Servicing Guide and all supplemental servicing instructions or directives provided by Fannie Mae, all applicable master agreements, recourse agreements, repurchase agreements, indemnification agreements,

loss-sharing agreements, and any other agreements between Fannie Mae and the Debtors, and all as amended, restated or supplemented from time to time (collectively, the "Fannie Mae Lender Contract" and collectively with the foregoing rights and interests, the "Fannie Mae Interests"), nothing in this Sale Order or the Sale Agreement: (i) authorizes or permits the sale and transfer of any of the Fannie Mae Interests without the written consent of Fannie Mae, which has not yet been provided; (ii) authorizes or permits the sale and transfer of any of the Fannie Mae Interests without satisfying the outstanding obligations owed Fannie Mae under the Fannie Mae Lender Contract, which remain unpaid at this time, absent Fannie Mae's agreement (which it has not provided as of this time); (iii) relieves the Buyer, or any other party, from its contract obligations to Fannie Mae under any contracts by and among Fannie Mae and such party, including any obligations that relate to the Fannie Mae Interests; (iv) grants a lien to any lender of the Debtors in any of the Fannie Mae Interests; or (v) limits any rights or protections provided to Fannie Mae under the orders previously entered by the Court including the *Final Order Granting Motion of the Debtors for Entry of Interim and Final Orders: (i) Authorizing Use of Cash Management Procedures, Bank Accounts, and Certain Payment Methods; (ii) Prohibiting Setoffs and Freezing of Bank Accounts; (iii) Modifying Requirements of Section 345(b) of the Bankruptcy Code; and (iv) for Related Relief* (ECF No. 273), the order approving the DIP Repo Facility, and the order approving the Cash Flow DIP Loan. None of the Fannie Mae Interests shall be sold or assumed and assigned to the Buyer, or any other party, unless (a) Fannie Mae provides its written consent and (b) all obligations under the Fannie Lender Contract are satisfied or Fannie Mae has waived the right to receive such payment. For the avoidance of doubt, if any of the Fannie Mae Interests are sold and transferred after Fannie Mae provides its written consent, the proceeds of such sale shall not be subject to Paragraph 5 concerning the Secured Facilities unless the obligations owed by the Debtors to Fannie

Mae under the Fannie Mae Lender Contract have been paid in full or Fannie Mae otherwise has waived, compromised or settled the right to receive such proceeds. For the further avoidance of doubt, nothing herein or in the Sale Agreement permits, constitutes, or effectuates the assumption or assignment of the Fannie Mae Lender Contract without the further express written consent of Fannie Mae and satisfaction of sections 365(b)(1)(A)-(C) of the Bankruptcy Code on terms satisfactory to Fannie Mae.

11. Moreover, Ginnie Mae is a wholly-owned Government Corporation within the U.S. Department of Housing and Urban Development ("HUD"), pursuant to 12 U.S.C. § 1716, et seq. Ginnie Mae is a federal agency that guarantees investors the timely payment of principal and interest on mortgage-backed securities ("MBS") backed by federally insured or guaranteed mortgage loans, including, without limitation, mortgage loans insured by HUD's Federal Housing Administration ("FHA"), guaranteed by the U.S. Department of Veterans Affairs ("VA"), or guaranteed by the U.S. Department of Agriculture's Rural Housing Service ("RHS"). Notwithstanding anything contained in this Sale Order, the Motion, the Sale Agreement or any related documents, nothing shall permit the transfer and sale of any MSRs or related assets for any of the mortgage loans backing the MBS pooled for sale in the Ginnie Mae platform ("Ginnie Mae Mortgages") or any mortgage loans insured or guaranteed by FHA, VA or RHS, (a) to any entity that is not approved by Ginnie Mae, FHA, RHS or VA to participate in their respective programs, and (b) without the explicit, written consent and approval of Ginnie Mae, and nothing herein shall be construed to provide such consent or approval. Notwithstanding anything contained in this Sale Order, the Motion, the Sale Agreement or any related documents, nothing shall permit the transfer and sale of any mortgage servicing rights ("MSRs") or related assets for any of the Ginnie Mae Mortgages or any mortgage loans insured or guaranteed by FHA, VA or RHS, without (a) the

Debtors' and Buyer's compliance with applicable, non-bankruptcy law, including, without limitation, (1) all applicable Ginnie Mae statutes, regulations, rules, policies and procedures, including, without limitation, 12 U.S.C. § 1721(g), 12 U.S.C. §§ 1716 et seq. and 24 C.F.R. parts 300 - 310; (2) the Ginnie Mae Guide, all Ginnie Mae guaranty agreements, MBS prospectus documents, escrow agreements, unilateral notification, notices of violation, supplements, addendums, amendments, and related documents or agreements, (collectively, the "Ginnie Mae Agreements"); (3) all applicable FHA statutes, regulations, rules, policies and procedures, including, without limitation, 12 U.S.C.§§ 1702 – 1715z-25 and 24 C.F.R. parts 201 – 203 and 206; (4) FHA handbooks, mortgagee letters, indemnification agreements, and any other documents or agreements; (5) all RHS statutes, regulations, rules, policies and procedures, including, without limitation, 42 U.S.C. §§ 1471 et seq. and 7 C.F.R. part 3555; (6) all RHS participation agreements, user agreements, guaranty agreements and any other documents or agreements; (7) all VA statutes, regulations, rules, policies and procedures, including, without limitation, 38 U.S.C. §§ 3701 et seq., 38 C.F.R. part 36, and all administrative materials issued under such statutes or regulations; and (8) VA handbooks, user guides, circulars and any other documents or agreements (collectively "Federal Law"); (b) the Buyer's assumption of all obligations and liabilities owed by the Debtors regarding the MSRs and related assets pursuant to applicable, non-bankruptcy law, including, without limitation, maintaining all escrow and custodial accounts, properly funding all escrow and custodial accounts, maintaining all files, documents and records, and complying with any and all other requirements under Federal Law; and (c) the Debtors' and Buyer's payment of all transfer fees, custodial fees, agent fees, guaranty fees, and any and all other fees or payments required under the Ginnie Mae Agreements and Federal Law.  Notwithstanding anything contained in this Sale Order, the Motion, the Sale

10

Agreement or any related documents, nothing shall modify, impair or affect (a) Ginnie Mae's interests and rights in the Ginnie Mae Mortgages and all related collateral, including, without limitation, cash, account or collateral held or required to be held by the Debtors, the non-Debtor affiliates or subservicers as that term is defined in the Ginnie Mae Agreements, or any other party in connection with the Ginnie Mae guaranty agreements, all principal and interest custodial accounts and funds, and all taxes and insurance custodial accounts and funds, established in accordance with the Ginnie Mae program requirements (collectively, the "Ginnie Mae Collateral"); (b) FHA's, RHS's or VA's respective interests and rights in the mortgages they respectively insure or guarantee, and all related interests, including, without limitation, cash, accounts or escrow accounts held or required to be held by the Debtors or its affiliates, all principal and interest custodial accounts and funds, and all taxes and insurance custodial accounts and funds, established in accordance with the respective FHA, RHS or VA requirements; (c) Ginnie Mae's, FHA's, RHS's or VA's respective enforcement rights and powers, including, without limitation, loan-level defects responses, actions regarding fraud, misrepresentation, waste, misuse, or reassignment/reconveyance due to noncompliance, and referral actions to their respective Department offices or Offices of Inspector General; (d) Debtors' liabilities, obligations or responsibilities owed to Ginnie Mae, FHA, VA or RHS under Federal Law, regardless of whether the Ginnie Mae Agreements or other agreements are terminated by the United States; and (e) any governmental unit's rights and defenses of setoff and recoupment. Notwithstanding anything contained in this Sale Order, the Motion, the Sale Agreement or any related documents, nothing shall enjoin, bar or preclude Ginnie Mae, FHA, RHS or VA from exercising their rights pursuant to the Ginnie Mae Agreements and Federal Law in the event that the Debtors or Buyer terminate the sale pursuant to the Sale Agreement or otherwise. Notwithstanding anything contained in this

11

Sale Order, the Motion, the Sale Agreement or any related documents, nothing shall permit any entity to acquire, possess, or control (a) Ginnie Mae Mortgages or Ginnie Mae Collateral without Ginnie Mae's express, written consent and approval, or (b) any mortgage or loan insured or guaranteed by FHA, RHS or VA without compliance with applicable Federal Law. Notwithstanding anything contained in this Sale Order, the Motion, the Sale Agreement or any related documents, to the extent of any conflict between the Motion, the Sale Agreement and any related documents on the one hand, and this Sale Order on the other hand, this Sale Order shall govern.

12. None of the MSRs proposed to be sold and transferred pursuant to the Sale consist of rights to service any Mortgage Loans sold or pledged pursuant to the prepetition warehouse facilities of Customers Bank, Texas Capital Bank, National Association, J.V.B. Financial Group LLC, or Flagstar Bank, FSB.  Nothing in this Order or the Sale Agreement shall limit the rights of Customers Bank under the *Order Confirming Applicability of 11 U.S.C. § 559 and, in the Alternative, Granting Relief from the Automatic Stay and Related Relief* [D.I. 271] or of Flagstar Bank under the *Order Granting Flagstar Bank, FSB's Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)* [D.I. 317].  Further, Customers Bank reserves all rights to the Pledged Ginnie Mae Servicing Receivables (as defined in the Amended and Restated Loan Agreement dated as of July 17, 2019, as amended from time to time, between Customers Bank and FGMC), whether or not included in the Sale.

13. Notwithstanding anything contained herein to the contrary, in the event that the Sale Agreement is not consummated, the Creditors Committee shall have the right to seek expedited relief from the Bankruptcy Court, and the Agencies reserve the right to oppose any relief

sought by the Creditors Committee, including but not limited to, that such relief should not be expedited.

14. Nothing contained in the Motion or this Sale Order, nor any payment made pursuant to the authority granted by this Sale Order, shall constitute or be construed as (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (c) a waiver of any claims or causes of action which may exist against any creditor or interest holder; or (d) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code, except for those Executory Contracts that are specifically assumed and assigned pursuant to this Sale Order.

15. No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the Sale, the Motion and this Sale Order.

16. Nothing herein shall be construed to limit the right of any governmental unit (as such term is defined in section 101(27) of the Bankruptcy Code) to take any action not subject to the automatic stay. Nothing herein is or should be construed as an admission as to the validity of any claim, or a promise to pay any claim.

17. Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Sale Order shall be effective and enforceable immediately upon entry. Any party objecting to this Sale Order must exercise due diligence in filing an appeal and obtaining a stay prior to the closing of the Sale or risk its appeal being foreclosed as moot.

18. The Debtors are authorized to take all action necessary to effectuate the relief granted in this Sale Order in accordance with the Motion.

121723482
DOCS_DE:240314.1 28311/001
DOCS_DE:240479.2

19. The Sale Agreement and any related agreements, documents, or other instruments may be waived, modified, amended, or supplemented by the parties thereto, and in accordance with the terms thereof, without further order of this Court; *provided that* any such waiver, modification, amendment or supplement does not have a material adverse effect on the Buyer or the Debtors' estates.

20. This Sale Order shall inure to the benefit of the Buyer and the Debtors, and their respective successors and assigns, including but not limited to any chapter 11 or chapter 7 trustee that may be appointed in the Chapter 11 Cases, and shall be binding upon any trustee, party, entity, or fiduciary that may be appointed in connection with these Chapter 11 Cases or any other or further cases involving the Debtors, whether under chapter 7 or chapter 11 of the Bankruptcy Code.

21. To the extent any provision of this Sale Order conflicts with the terms and conditions of the Sale Agreement, this Sale Order shall govern and control.

22. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Sale Order.

**Dated: September 1st, 2022**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**

121723482
DOCS_DE:240314.1 28311/001
DOCS_DE:240479.2