**<u>EXHIBIT A</u>**

**Bidding Procedures Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FIRST GUARANTY MORTGAGE | ) | Case No. 22-10584 (CTG) |
| CORPORATION, *et al.*,[1] | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | |

**ORDER: (A) APPROVING BIDDING PROCEDURES FOR
ONE OR MORE SALES OR THE SALE OF SUBSTANTIALLY ALL OF THE
DEBTORS' ASSETS, (B) AUTHORIZING THE DEBTORS TO ENTER INTO ONE OR
MORE STALKING HORSE AGREEMENTS AND TO PROVIDE BID PROTECTIONS
THEREUNDER, (C) SCHEDULING AN AUCTION AND APPROVING THE FORM
AND MANNER OF NOTICE THEREOF, (D) APPROVING ASSUMPTION AND
ASSIGNMENT PROCEDURES, (E) SCHEDULING A SALE HEARING AND
APPROVING THE FORM AND MANNER OF NOTICE THEREOF, AND
(F) GRANTING RELATED RELIEF**

Upon consideration of the *Motion of the Debtors for Entry of Orders: (I)(A)
Approving Bidding Procedures for One or More Sales or the Sale of Substantially All of the
Debtors' Assets, (B) Authorizing the Debtors to Enter Into One or More Stalking Horse
Agreements and to Provide Bid Protections Thereunder, (C) Scheduling an Auction and Approving
the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures,
(E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A)
Approving the Sale or Sales of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and
Encumbrances, and (B) Approving the Assumption and Assignment of Executory Contracts and
Unexpired Leases; and (III) Granting Related Relief* [Docket No. __] (the "Motion")[2] filed by the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  First Guaranty Mortgage Corporation (9575); and Maverick II Holdings, LLC (5621). The Debtors' mailing address is 5800 Tennyson Parkway, Suite 450, Plano, TX 75024.

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion or in the Bidding Procedures, as applicable.

debtors and debtors in possession (collectively, the "<u>Debtors</u>") in the above-captioned chapter 11 cases (the "<u>Chapter 11 Cases</u>"); the Court having reviewed the Motion and the First Day Declaration [Docket No. 19], and having considered the statements of counsel and the evidence adduced with respect to the Motion at a hearing to consider certain of the relief requested in the Motion (the "<u>Bidding Procedures Hearing</u>"); and after due deliberation, this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates and their creditors, and the Debtors having demonstrated good, sufficient and sound business justifications for the relief granted herein;

**IT IS HEREBY FOUND AND DETERMINED THAT:[3]**

A.     <u>Jurisdiction and Venue</u>.  The district court has jurisdiction under 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     <u>Statutory and Legal Predicates</u>. The statutory and legal predicates for the relief requested in the Motion are sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014 and Local Rules 2002-1, 6004-1, and 9006-1.

C.     <u>Bidding Procedures</u>. The Debtors have articulated good and sufficient business reasons for the Court to approve the bidding procedures attached hereto as <u>Exhibit 1</u>

---

[3]  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

(the "Bidding Procedures").  The Bidding Procedures are fair, reasonable and appropriate and are designed to maximize the value in connection with the sale or sales (each, a "Sale") of one or more groups of the Debtors' assets or substantially all of the Debtors' assets (together, the "Assets") to one or more bidders (collectively, the "Sale Transaction").  The Bidding Procedures were negotiated in good faith and at arm's-length and are reasonably designed to promote a competitive and robust bidding process to generate the greatest level of interest in the Debtors' Assets.  The Bidding Procedures comply with the requirements of Local Rule 6004-1(c).

D.      Sale Notice.  The Sale Notice, the form of which is attached as Exhibit 2, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Sale Hearing, the Bidding Procedures, the Sale Transaction(s), and all relevant and important dates and objection deadlines with respect to the foregoing, and no other or further notice of the Sale Motion, the Sale Transaction, or the Auction shall be required.

E.      Assumption and Assignment Provisions.  The Debtors have articulated good and sufficient business reasons for the Court to approve the Assumption and Assignment Procedures and the Assumption and Assignment Notice attached hereto as Exhibit 3, which are fair, reasonable, and appropriate.  The Assumption and Assignment Procedures comply with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

F.      Assumption and Assignment Notice.  The Assumption and Assignment Notice, the form of which is attached hereto as Exhibit 3, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Assumption and Assignment Procedures, as well as any and all objection deadlines related thereto, and no other or further notice shall be required for the Motion and the procedures described therein, except as expressly required herein.

G.      <u>Notice</u>.  Notice of the Motion, the proposed Bidding Procedures, and the Bidding Procedures Hearing was (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and (iii) adequate and sufficient under the circumstances of the Debtors' chapter 11 cases, such that no other or further notice need be provided except as set forth in the Bidding Procedures and the Assumption and Assignment Procedures. A reasonable opportunity to object and be heard regarding the relief granted herein has been afforded to all parties in interest.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      All objections to the relief granted in this Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

**A.      The Bidding Procedures**

3.      The Bidding Procedures attached hereto as <u>Exhibit 1</u> are hereby approved, are incorporated herein by reference, and shall govern the bids and proceedings related to any Sale Transaction and the Auction.   The procedures and requirements set forth in the Bidding Procedures, including those associated with submitting a "Qualified Bid," are fair, reasonable and appropriate, and are designed to maximize recoveries for the benefit of the Debtors' estates, creditors, and other parties in interests.   The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures.

4.      The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the

effectiveness of such procedures, it being the Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order.

5. Subject to this Order and the Bidding Procedures, the Debtors, in the exercise of their reasonable business judgment and in a manner consistent with their fiduciary duties and applicable law, shall have the right to (a) determine which bidders qualify as Qualified Bidders and which bids qualify as Qualified Bids, (b) make final determinations as to which Assets the Debtors will include in an Auction (each such Asset or group of Assets, an "Auction Package"), (c) select the Baseline Bid for each Auction Package; (d) determine the amount of each Minimum Overbid, (e) determine the Leading Bid (as defined in the Bidding Procedures) for each Auction Package; (f) determine which Qualified Bid is the highest or otherwise best bid for each Auction Package (each such Qualified Bid, a "Successful Bid") and which Qualified Bid is the Backup Bid (as defined in the Bidding Procedures) after the Successful Bid for an Auction Package; (g) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of this Order or any other applicable order of the Court, the Bidding Procedures, the Bankruptcy Code or other applicable law, and/or (iii) contrary to the best interests of the Debtors and their estates, (h) cancel the Auction with respect to any or all of the Assets in accordance with the Bidding Procedures, and (i) adjourn or reschedule the Sale Hearing with respect to any Sale Transaction in accordance with the Bidding Procedures.

6. The Debtors shall have the right to, in their reasonable business judgment, and in a manner consistent with their fiduciary duties and applicable law, modify the Bidding Procedures, including to, among other things, (a) extend or waive deadlines or other terms and conditions set forth therein, (b) adopt new rules and procedures for conducting the bidding and Auction process, (c) if applicable, provide reasonable accommodations to a Stalking Horse Bidder,

or (d) otherwise modify the Bidding Procedures to further promote competitive bidding for and maximizing the value for any Sale Transaction; provided, that such extensions, waivers, new rules and procedures, accommodations and modifications (i) do not conflict with and are not inconsistent with this Order, the Bidding Procedures, the Bankruptcy Code or any order of the Bankruptcy Court, (ii) are promptly communicated to each Qualified Bidder, (iii) do not extend the Bid Deadline, the date of the Auction or the closing of the Auction, and (iv) do not allow the submission (or the Debtors' acceptance) of additional bids after, as applicable, the Bid Deadline or the close of Auction.

**B.    The Stalking Horse and Bid Protections**

7.    Pursuant to the Bidding Procedures, the Debtors are authorized, but not directed, at their discretion, to select one or more bidders to act as a Stalking Horse Bidder for any Sale Transaction and enter into any Stalking Horse Agreement with such Stalking Horse Bidder.

8.    In the event the Debtors select a Stalking Horse Bidder, as soon as reasonably practicable following the selection of a Stalking Horse Bidder, and by no later than **4:00 p.m. (prevailing Eastern time) on October 7, 2022** (the "Stalking Horse Notice Deadline"), the Debtors shall file a notice (a "Stalking Horse Notice") with detail regarding the Stalking Horse Bidder, attaching a copy of the proposed Stalking Horse Agreement, and detailing the proposed Bid Protections and serve such Stalking Horse Notice by overnight mail, email or facsimile on (i) all persons known or reasonably believed to have expressed interest in acquiring the Assets since the Petition Date, (ii) all non-Debtor parties to any executory contracts and/or unexpired leases proposed to be assumed and assigned pursuant to the Stalking Horse Agreement, and (iii) all parties that have requested notice in these chapter 11 cases as of the date of such Stalking Horse Notice.

Any objections to the Stalking Horse Notice shall be filed on or before **October 11, 2022 at 4:00 p.m. (prevailing Eastern Time)**.

9.      Subject to the Bidding Procedures and Court approval, the Debtors are authorized to provide a break-up fee and/or expense reimbursement to any Stalking Horse Bidder (together, the "Bid Protections").

**D.      Bid Deadline and Auction**

10.      Any Prospective Bidder that intends to participate in the Auction must submit in writing to the Bid Notice Parties (as defined in Section X.A of the Bidding Procedures) a Qualified Bid on or before **October 14, 2022 at 4:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline").

11.      Subject to the terms of the Bidding Procedures, if the Debtors receive more than one Qualified Bid for any Asset(s), the Debtors shall conduct an Auction for such Asset.  With respect to specific Assets for which the Debtors only receive one Qualified Bid, the Debtors, in their reasonable business judgment, may determine to consummate a Sale Transaction with the applicable Qualified Bidder (subject to Court approval).

12.      The Auction, if required, will be conducted  on **October 20, 2022, at 10:00 a.m. (prevailing Eastern Time)**, virtually through Zoom, or if permitted, at the offices of Pachulski Stang Ziehl & Jones, LLP, 919 N. Market Street, 17th Floor, Wilmington, Delaware, 19801, or at such other time and location as designated by the Debtors, after providing notice to the Sale Notice Parties provided, however, the Debtors shall have the right to hold the Auction remotely, including telephonically or by other electronic means (including, without limitation, video conferencing) as the Debtors may choose in their sole discretion so as to comply with all applicable federal, state and local laws, orders, ordinances, guidelines and guidance, including any

COVID-19 related guidelines.  If held, the Auction proceedings shall be transcribed or video recorded.

13.    Only a Qualified Bidder that has submitted a Qualified Bid shall be eligible to participate in the Auction, subject to any other limitations as the Debtors may reasonably impose in accordance with the Bidding Procedures.  Qualified Bidders participating in the Auction must appear in person or virtually (if applicable) at the Auction or through a duly authorized representative.  The Debtors may establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of or accompany each Qualified Bidder at the Auction.  Notwithstanding the foregoing, the Auction shall be conducted openly, and all creditors shall be permitted to attend.

14.    Each Qualified Bidder participating in the Auction shall confirm in writing on the record at the Auction that (a) it has not engaged in any collusion with respect to the Auction or the submission of any bid for any of the Assets and (b) its Qualified Bid that gained the Qualified Bidder admission to participate in the Auction and each Qualified Bid submitted by the Qualified Bidder at the Auction constitutes a binding, good-faith and *bona fide* offer to purchase the Assets identified in such bids.

15.    In the event the Debtors determine not to hold an Auction for some or all of the Assets, the Debtors shall file with the Court, serve on the Sale Notice Parties (as defined in Section X.B of the Bidding Procedures) and cause to be published on the website maintained by Kurtzman Carson Consultants LLC ("KCC") located at https://www.kccllc.net/fgmc (the "KCC Website"), a notice containing the following information (as applicable):

(i) a statement that the Auction for the relevant Assets has been canceled, (ii) the identity of the Successful Bidder, (iii) a copy of the Successful Bid or a summary of the material terms of such

bid, including any assumption and assignment of Contracts contemplated thereby, and (iv) the date, time and location of the applicable Sale Hearing.

16.     By the **later of (a) October 21, 2022 and (b) one day after the conclusion of the Auction**, the Debtors will file with the Court, serve on the Sale Notice Parties and cause to be published on the KCC Website, a notice setting forth the results of the Auction (the "Notice of Auction Results"), which shall (i) identify each Successful Bidder and each Backup Bidder, (ii) include a copy of each Successful Bid and each Backup Bid or a summary of the material terms of such bids, including any assumption and assignment of Contracts contemplated thereby, and (iii) set forth the Post-Auction Objection Deadline, the date, time and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise the Sale Notice Parties of the outcome of the Auction.

**E.     Credit Bidding**

17.     The Cash Flow DIP Lender and DIP Repo Guarantor, each as defined in the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Liens and Providing Super-Priority Administrative Expense Status; (IV) Granting Adequate Protection; (V) Modifying the Automatic Stay; and (VI) Granting Related Relief* [Docket No. 292] (the "Cash Flow DIP Order"), shall be entitled to credit bid (a "Credit Bid"), respectively, up to the full amount of the outstanding Cash Flow DIP Obligations  (as defined in the Cash Flow DIP Order) and up to the full amount of amounts actually advanced by the DIP Repo Guarantor under the DIP Repo Guarantee (as defined in the Cash Flow DIP Order).  No other party may credit bid.

18.     The Cash Flow DIP Lender and DIP Repo Guarantor will each be deemed to be a Qualified Bidder, for all purposes and requirements pursuant to the Bidding Procedures,

notwithstanding the requirements that a Prospective Bidder must satisfy to be a Qualified Bidder, and any Credit Bid submitted by the Cash Flow DIP or DIP Repo Guarantor will be deemed to be a Qualified Bid, for all purposes and requirements pursuant to these Bidding Procedures, notwithstanding the requirements that a Bid must satisfy to be a Qualified Bid, including the requirements, among others, that each Bid must be irrevocable and to deliver a confidentiality agreement and post a Good Faith Deposit.

**F.      Sale Hearing and Objection Procedures**

19.      Consummation of any Sale pursuant to a Successful Bid shall be subject to Court approval.  The Sale Hearing shall be held before the Court on **October 31, 2022, at 10:00 a.m. (prevailing Eastern Time)**; *provided*, that the Debtors may seek an adjournment or rescheduling of the Sale Hearing, consistent with the Bidding Procedures.

20.      All general objections to any Sale Transaction (each, a "Sale Objection") shall be (i) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof, (ii) be filed with the Court, and (iii) served on the Objection Notice Parties (as defined in Section X.D of the Bidding Procedures) by no later than **October 14, 2022, at 4:00 p.m. (prevailing Eastern Time)**  (the "Sale Objection Deadline").

21.      Following service of the Notice of Auction Results, parties may object to the conduct of the Auction and/or the particular terms of any proposed Sale Transaction in a Successful Bid (each such objection, a "Post-Auction Objection").  Any Post-Auction Objection shall be (a) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof, (b) be filed with the Court, and (c) served on the Objection Notice Parties by no later than the later of **(i) October 24, 2022, at 4:00 p.m.**

(prevailing Eastern Time) and (ii) three days prior to the Sale Hearing (the "Post-Auction Objection Deadline").

22.     Any party who fails to file and serve a timely Sale Objection or Post-Auction Objection in accordance with the terms of this Order shall be forever barred from asserting, at the Sale Hearing or thereafter, any Sale Objection or Post-Auction Objection to the relief requested in the Motion, or to the consummation or performance of the applicable Sale Transaction, including the transfer of the Assets to the applicable Successful Bidder free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, and shall be deemed to "consent" to such sale for purposes of section 363(f) of the Bankruptcy Code.

### G.     Notice of Sale Transaction

23.     The Sale Notice, substantially in the form attached hereto as Exhibit 2, is approved, and no other or further notice of any proposed Sale Transaction, the Auction, the Sale Hearing, the Sale Objection Deadline, or the Post-Auction Objection Deadline shall be required if the Debtors serve and publish the Sale Notice in the manner provided in the Bidding Procedures and this Order.

24.     By no later than the later of (a) September 23, 2022 and (b) three business days after the entry of this Order, the Debtors shall file with the Court, serve on the Sale Notice Parties and cause to be published on the KCC Website, the Sale Notice.

25.     As soon as practicable after the entry of this Order, the Debtors shall cause the information contained in the Sale Notice to be published once in the national edition of *USA Today* (the "Publication Notice").

26.     The Publication Notice complies with the provisions of Bankruptcy Rule 9008 and is deemed sufficient and proper notice of the proposed sale of the Assets, the Auction, the Sale Hearing, the Sale Objection Deadline, and the Post-Auction Objection Deadline to any other interested parties whose identities are unknown to the Debtors.

**H.    Assumption and Assignment Procedures**

27.     The Assumption and Assignment Procedures are reasonable and appropriate under the circumstances, fair to all non-Debtor parties, comply in all respects with the Bankruptcy Code, Bankruptcy Rules and Local Rules, and are approved.

28.     The Assumption and Assignment Notice, substantially in the form attached hereto as Exhibit 3, is approved, and no other or further notice of the Debtors' proposed Cure Costs with respect to Contracts listed on an Assumption and Assignment Notice is necessary or required.

29.     By **no later than the later of (a) September 23, 2022 and (b) three business days after the entry of this Order**, the Debtors shall file with the Court, serve on the applicable Counterparties and cause to be published on the KCC Website, the Assumption and Assignment Notice.

30.     Any objection to the Debtors' proposed Cure Costs or assumption and assignment on any basis (each such objection, a "Contract Objection") shall (a) be in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof, (b) be filed with the Court; and (c) served on the Objection Notice Parties by no later than the date that is **14 calendar days after service of the Cure Notice** (the "Contract Objection Deadline").

31.     The Debtors and the objecting Counterparty shall first confer in good faith to attempt to resolve the Contract Objection without Court intervention.  If the parties are unable

to consensually resolve the Contract Objection prior to the commencement of the Sale Hearing, the Court shall make all necessary determinations relating to the applicable Cure Costs or assumption and assignment and the Contract Objection at a hearing scheduled pursuant to paragraph 32 of this Order.  If a Contract Objection is resolved in a manner that is not in the best interests of the Debtors and their estates, whether or not such resolution occurs prior to or after the closing of the applicable Sale, the Debtors may determine that any Contract subject to such resolved Contract Objection no longer will be assumed and assigned in connection with the applicable Sale Transaction (subject to the terms of the applicable Sale Transaction).  All other objections to the Debtors' proposed assumption and assignment of the Debtors' right, title and interest in, to and under a Contract shall be heard at the Sale Hearing.

32.     If a timely Contract Objection cannot otherwise be resolved by the parties, the Contract Objection may be heard at the Sale Hearing or, at the Debtors' option and with the consent of the applicable Successful Bidder, be adjourned to a subsequent hearing (each such Contract Objection, an "Adjourned Contract Objection").  An Adjourned Contract Objection may be resolved after the closing date of the applicable Sale Transaction.  Upon resolution of an Adjourned Contract Objection and the payment of the applicable cure amount or resolution of the assumption and assignment issue, if any, the Contract that was the subject of such Adjourned Contract Objection shall be deemed assumed and assigned to the applicable Successful Bidder as of the closing date of the applicable Sale.

33.     If a Counterparty fails to file with the Court and serve on the Objection Notice Parties a timely Contract Objection, the Counterparty forever shall be barred from asserting any objection with regard to the proposed assumption and assignment of such Contract and the cost to cure any defaults under the applicable Contract and shall be deemed to have consented to

the assumption and assignment of the Contract in connection therewith.  The Cure Costs set forth in the applicable Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the Contract and satisfy the requirements of section 365(b) of the Bankruptcy Code, and the Counterparty to the Contract shall be bound by and deemed to have consented to the Cure Costs.

34.     In accordance with the Bidding Procedures, Qualified Bids shall be accompanied by Adequate Assurance Information (as defined in Section VI.A.8 of the Bidding Procedures).  The Debtors shall use commercially reasonable efforts to furnish all available Adequate Assurance Information to applicable Counterparties as soon as reasonably practicable following their receipt of such information.

35.     Any objection to the proposed assumption and assignment of a Contract, other than with respect to a Stalking Horse Bidder, the subject of which objection is a Successful Bidder's proposed form of adequate assurance of future performance with respect to the Contract (each, such objection, an "Adequate Assurance Objection"), shall (a) be in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof, (b) be filed with the Court, and (c) served on the Objection Notice Parties by no later than the Post-Auction Objection Deadline.

36.     The Debtors and a Counterparty that has filed an Adequate Assurance Objection shall first confer in good faith to attempt to resolve the Adequate Assurance Objection without Court intervention.  If the parties are unable to consensually resolve the Adequate Assurance Objection prior to the commencement of the Sale Hearing, the Adequate Assurance Objection and all issues of adequate assurance of future performance of the applicable Successful Bidder shall be determined by the Court at the Sale Hearing.

14

37.     If a Counterparty fails to file with the Court and serve on the Objection Notice Parties a timely Adequate Assurance Objection, the Counterparty shall be forever barred from asserting any objection to the assumption and/or assignment of a Contract with regard to adequate assurance of future performance.  The applicable Successful Bidder (or any other relevant assignee) shall be deemed to have provided adequate assurance of future performance with respect to a Contract in accordance with Bankruptcy Code sections 365(b)(1)(C), 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), notwithstanding anything to the contrary in the Contract or any other document.

38.     Successful Bidders (including any Stalking Horse Bidder or Backup Bidder ultimately named a Successful Bidder) may, pursuant to the terms of an applicable purchase agreement executed with the Debtors (including any applicable Stalking Horse Agreement), designate (a) for assumption and assignment Contracts that were not originally included in the Assets to be acquired in connection with the applicable Successful Bid and (b) Contracts that previously were included among the Assets to be acquired in connection with the applicable Successful Bid as "excluded assets" that will not be assigned to or otherwise acquired by the Successful Bidder.  The Debtors shall use commercially reasonable efforts to, as soon as reasonably practicable after the Debtors receive notice of any such designation, file with the Court, serve on the applicable Counterparties and cause to be published on the KCC Website, a notice of such designation (a "Designation Notice") containing sufficient information to apprise Counterparties of the designation of their respective Contracts.

39.     As soon as reasonably practicable after the closing of a Sale Transaction, the Debtors will file with the Court, serve on the applicable Counterparties and cause to be

published on the KCC Website, a notice containing the list of Contracts that the Debtors assumed and assigned pursuant to any asset purchase agreement with a Successful Bidder.

40.     The inclusion of a Contract or Cure Costs with respect to any Contract on any Assumption and Assignment Notice or any Notice of Auction Results, shall not constitute or be deemed a determination or admission by the Debtors, any Successful Bidder or any other party that such Contract is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code, and shall not be a guarantee that such Contract ultimately will be assumed or assigned.  The Debtors reserve all of their rights, claims and causes of action with respect to each Contract listed on any Assumption and Assignment Notice.

## I.     Other Related Relief

41.     All persons and entities that participate in the Auction or bidding for any Asset(s) during the sale process shall be deemed to have knowingly and voluntarily (i) consented to the core jurisdiction of the Court to enter any order related to the Bidding Procedures, the Auction or any other relief requested in the Motion or granted in this Order, (ii) waived any right to a jury trial in connection with any disputes relating to the Bidding Procedures, the Auction or any other relief requested in the Motion or granted in this Order, and (iii) consented to the entry of a final order or judgment in connection with any disputes relating to the Bidding Procedures, the Auction or any other relief requested in the Motion or granted in this Order, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

42.     The Debtors are authorized to take all steps and pay all amounts necessary or appropriate to implement the relief granted in this Order.

43.     This Order shall be binding on the Debtors and its successors and assigns, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors.

44.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

45.     To the extent any provisions of this Order are inconsistent with the Motion, the terms of this Order shall control. To the extent any provisions of this Order are inconsistent with the Bidding Procedures, the terms of this Order shall control.

46.     Notwithstanding the applicability of any of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014 or any other provisions of the Bankruptcy Rules or the Local Rules stating the contrary, the terms and provisions of this Order shall be immediately effective and enforceable upon its entry, and any applicable stay of the effectiveness and enforceability of this Order is hereby waived.

47.     The Debtors are authorized to make non-substantive changes to the Bidding Procedures, the Assumption and Assignment Procedures, and any related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors.

48.     This Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

## **EXHIBIT 1**

**Bidding Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FIRST GUARANTY MORTGAGE | ) | Case No. 22-10584 (CTG) |
| CORPORATION, *et al.,*[1] | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | |

## <u>BIDDING PROCEDURES</u>

The debtors and debtors in possession (collectively, the "<u>Debtors</u>") in the above-captioned chapter 11 cases (collectively, the "<u>Chapter 11 Cases</u>") will use the procedures set forth herein (the "<u>Bidding Procedures</u>") in connection with the *Motion of the Debtors for Entry of Orders: (I)(A) Approving Bidding Procedures for One or More Sales or the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Enter Into One or More Stalking Horse Agreements and to Provide Bid Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale or Sales of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. ___] (the "<u>Motion</u>") and the *Combined Disclosure Statement and Chapter 11 Plan of First Guaranty Mortgage Corporation and Debtor Affiliate* [Docket No. ___] (the "<u>Plan</u>") for the sale (the "<u>Sale</u>") of one or more groups of the Debtors' assets or substantially all of the Debtors' assets (together, the "<u>Assets</u>") to one or more bidders (each, a "<u>Sale Transaction</u>").

On September ____, 2022, the Debtors filed the Motion with the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>"). By the Motion, the Debtors sought, among other things, entry of an order approving Bidding Procedures[2] for soliciting bids for, conducting an auction (the "<u>Auction</u>") of, and consummating one or more Sale Transactions of, the Debtors' assets (the "<u>Assets</u>"), as further described herein.

On September ____, 2022, the Court entered an order approving the Motion [Docket No. [●]] (the "<u>Bidding Procedures Order</u>").

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: First Guaranty Mortgage Corporation (9575); and Maverick II Holdings, LLC (5621). The Debtors' mailing address is 5800 Tennyson Parkway, Suite 450, Plano, TX 75024.

[2] All capitalized terms not herein defined shall have the meanings ascribed to them in the Motion and/or the Bidding Procedures Order (as defined below), as applicable.

## I.    ASSETS FOR SALE

The sale of any of the Debtors' Assets shall be subject to a competitive bidding process as set forth herein and approval by the Court pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6003, 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## II.    STALKING HORSE BIDDERS AND BID PROTECTIONS

The Debtors shall be authorized, but not obligated, in consultation with the Consultation Parties, with the written consent of the Cash Flow DIP Lender, and in an exercise of their business judgment to: (a) select one or more Qualified Bidders to act as stalking horse bidders in connection with any Sale Transaction (each, a "Stalking Horse Bidder" and any bid submitted by any Stalking Horse Bidder, a "Stalking Horse Bid"), and enter into a purchase agreement(s) with respect to a Sale Transaction with such Stalking Horse Bidder (each such agreement, a "Stalking Horse Agreement"); and (b) in connection with any Stalking Horse Agreement with a Stalking Horse Bidder provide (i) a breakup fee (the "Breakup Fee"), (ii) an expense reimbursement (the "Expense Reimbursement"), and/or (iii) other forms of bid protections (together with the Breakup Fee and the Expense Reimbursement, collectively, the "Bid Protections"), which are subject to Court approval.

In the event the Debtors select a Stalking Horse Bidder, as soon as reasonably practicable following the selection of a Stalking Horse Bidder, and by no later than 5:00 p.m. (prevailing Eastern time) on October 7, 2022 (the "Stalking Horse Notice Deadline"), the Debtors shall file a notice (a "Stalking Horse Notice") with detail regarding the Stalking Horse Bidder, attaching a copy of the proposed Stalking Horse Agreement, and detailing the proposed Bid Protections and serve such Stalking Horse Notice by overnight mail, email or facsimile on (i) all persons known or reasonably believed to have expressed interest in acquiring the Assets since the Petition Date, (ii) all non-Debtor parties to any executory contracts and/or unexpired leases proposed to be assumed and assigned pursuant to the Stalking Horse Agreement, and (iii) all parties that have requested notice in these chapter 11 cases as of the date of such Stalking Horse Notice. Any objections to the Stalking Horse Notice shall be filed on or before **October 11, 2022 at 4:00 p.m. (prevailing Eastern Time)**.

## III.    KEY DATES AND DEADLINES

| SALE PROCESS KEY DATES AND DEADLINES | |
|---|---|
| **September 15, 2022, at 4:00 p.m. (prevailing Eastern Time)** | Bidding Procedures Objection Deadline |

| September 20, 2022, at 3:00 p.m. (prevailing Eastern Time) | Hearing to consider approval of Bidding Procedures and other relief requested herein (the "Bidding Procedures Hearing") |
|---|---|
| The later of (i) September 23, 2022, and (ii) three business days after the entry of the Bidding Procedures Order | Deadline for Debtors to file and serve Sale Notice |
| The later of (i) September 23, 2022, and (ii) three business days after the entry of the Bidding Procedures Order | Deadline for Debtors to file and serve Assumption and Assignment Notice |
| October 7, 2022, at 4:00 p.m. (prevailing Eastern Time) | Stalking Horse Notice Deadline: Deadline by which the Debtors must file a Stalking Horse Notice |
| October 14, 2022, at 4:00 p.m. (prevailing Eastern Time) | Sale Objection Deadline |
| October 14, 2022, at 4:00 p.m. (prevailing Eastern Time) | Bid Deadline |
| October 18, 2022, at 4:00 p.m. (prevailing Eastern Time) | Deadline for Debtors to Notify Bidders of Status as Qualified Bidders |
| October 20, 2022, at 10:00 a.m. (prevailing Eastern Time) | Auction |
| The later of (i) October 21, 2022 at 4:00 p.m. (prevailing Eastern Time) and (ii) one day after the conclusion of the Auction | Deadline for Debtors to file Notice of Auction Results |
| October 24, 2022, at 4:00 p.m. (prevailing Eastern Time) (three days prior to the Sale Hearing) | Post-Auction Objection Deadline |
| October 31, 2022, at 10:00 a.m. (prevailing Eastern Time) | Sale Hearing |

## IV.    DUE DILIGENCE

The Debtors have posted copies of all material documents related to the Assets to the Debtors' confidential electronic data room (the "Data Room"). Each person or entity (other than the Stalking Horse Bidders identified in Section II.A above) that desires to participate in the

Auction process (each, a "Prospective Bidder") and seeks access to the Data Room must first deliver to each of the Bid Notice Parties (as defined in Section X below) the following:

    A.      An executed confidentiality agreement, in form and substance satisfactory to the Debtors; and

    B.      Sufficient information, as reasonably determined by the Debtors, to allow the Debtors to determine that the interested party intends to access the Data Room for a purpose consistent with these Bidding Procedures.

Upon execution of a valid confidentiality agreement and up to and including the Bid Deadline, the Debtors shall grant any Prospective Bidder access to the Data Room or additional information allowing such Prospective Bidder to conduct due diligence on the potential acquisition of the Assets. Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets (a) to any person or entity who (i) is not a Prospective Bidder, (ii) does not comply with the participation requirements set forth above, or (iii) in the case of competitively sensitive information, is a competitor of the Debtors and (b) if and to the extent doing so would (1) violate any law to which the Debtors are subject, including any privacy law, (2) result in the disclosure of any trade secrets of third parties in breach of any contract with such third party, (3) violate any legally-binding obligation of any Debtor with respect to confidentiality, non-disclosure or privacy or (4) jeopardize protections afforded to any Debtor under the attorney-client privilege or the attorney work product doctrine (provided that, in case of each of clauses (1) through (4), the Debtors shall use commercially reasonable efforts to (x) provide such access as can be provided (or otherwise convey such information regarding the applicable matter as can be conveyed) without violating such privilege, doctrine, contract, obligation or law and (y) provide such information in a manner without violating such privilege, doctrine, contract, obligation or law. Notwithstanding the foregoing, the Debtors reserve the right, in their discretion, to withhold or limit access to any information that the Debtors determine to be sensitive or otherwise not appropriate to disclose to any Prospective Bidder.

The Debtors may terminate access to the Data Room and any other non-public information in their reasonable discretion at any time, including if (a) a Prospective Bidder fails to become a Qualified Bidder (as defined below) or (b) these Bidding Procedures are terminated. The Prospective Bidder shall return or destroy any non-public information the Debtors or their advisors provided to the Prospective Bidder in accordance with the terms of the confidentiality agreement executed by the Debtors and the Prospective Bidder.

The Debtors will work to accommodate all reasonable requests from any Stalking Horse Bidders and any Prospective Bidders for additional information and due diligence access. Each Prospective Bidder shall be required to acknowledge that it has had an opportunity to conduct any and all due diligence regarding the Assets in conjunction with submitting its Bid (as defined below).

## V.    BID DEADLINE

Any Prospective Bidder that intends to participate in the Auction must submit in writing to the Bid Notice Parties a bid (a "Bid") on or before **October 14, 2022, at 4:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline").

The Debtors may, in their reasonable judgment, and in consultation with the Consultation Parties, extend the Bid Deadline for all or certain Prospective Bidders.

## VI.    BID REQUIREMENTS

### A.    Qualified Bid Requirements

To qualify as a "**Qualified Bid,**" a Bid must be in writing and determined by the Debtors to satisfy the following requirements:

1.    Identification of Bidder.  A Qualified Bid must fully disclose the following: (a) the legal identity of each person or entity bidding for the applicable Assets and/or otherwise sponsoring, financing (including through the issuance of debt in connection with such bid) or participating in (including through license or similar arrangement with respect to the Assets to be acquired in connection with such bid) the Auction in connection with such bid and the complete terms of any such participation; and (b) any past or present connections or agreements with the Debtors or their non-debtor affiliates, any Stalking Horse Bidder(s), any other known Prospective Bidder or Qualified Bidder, the Debtors' lenders or any officer or director of any of the foregoing (including any current or former officer or director of the Debtors or their non-debtor affiliates).

2.    Purchased Assets.  A Qualified Bid must identify the following:

a.    the Assets or groups of Assets to be purchased (including any then-known executory contracts and unexpired leases (collectively, the "Contracts")) such Prospective Bidder wishes to bid on;

b.    the liabilities (including applicable cure costs), if any, to be assumed by the Prospective Bidder in the Sale Transaction, including any debt to be assumed; and

c.    if applicable, the details of any restructuring transaction (such as an asset-drop down from the Debtors to a newly-created subsidiary) contemplated by the proposed Sale Transaction.

3.    Form of Consideration.

a)    Credit Bidding.  The Cash Flow DIP Lender and DIP Repo Guarantor, each as defined in the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing;*

*(II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Liens and Providing Super-Priority Administrative Expense Status; (IV) Granting Adequate Protection; (V) Modifying the Automatic Stay; and (VI) Granting Related Relief* [Docket No. 292] (the "Cash Flow DIP Order"), shall be entitled to credit bid (a "Credit Bid"), respectively, up to the full amount of the outstanding Cash Flow DIP Obligations (as defined in the Cash Flow DIP Order) and up to the full amount of amounts actually advanced by the DIP Repo Guarantor under the DIP Repo Guarantee (as defined in the Cash Flow DIP Order). No other party may credit bid.

The Cash Flow DIP Lender and DIP Repo Guarantor will each be deemed to be a Qualified Bidder, for all purposes and requirements pursuant to the Bidding Procedures, notwithstanding the requirements that a Prospective Bidder must satisfy to be a Qualified Bidder, and any Credit Bid submitted by the Cash Flow DIP or DIP Repo Guarantor will be deemed to be a Qualified Bid, for all purposes and requirements pursuant to these Bidding Procedures, notwithstanding the requirements that a Bid must satisfy to be a Qualified Bid, including the requirements, among others, that each Bid must be irrevocable and to deliver a confidentiality agreement and post a Good Faith Deposit.

b) <u>Form of Consideration and Allocation</u>. A Bid must specify whether the Bid is an all cash offer (including confirmation that the cash component is in U.S. Dollars) or consists of certain non-cash components, such as a Credit Bid, assumption of liabilities, or other forms of consideration (and including a detailed analysis of the value of any non-cash component of the Bid) as well as the allocation of the Purchase Price among the Assets to be acquired and the liabilities to be assumed. Subject to Section VI.A.4 below, to be a Qualified Bid, a Bid (whether on an individual Asset, a package of Assets, or all Assets) must include sufficient cash consideration to pay any applicable Bid Protections, or similar payment payable to any Stalking Horse Bidder under the terms of any Stalking Horse Agreement for which the Bid is submitted.

4. <u>Minimum Bid for Stalking Horse Assets</u>. Each bid submitted in connection with Assets that are the subject of a particular Stalking Horse Bid (any such Assets, the "Stalking Horse Assets") must either (a) (i) be a bid for all of the Stalking Horse Assets in the Stalking Horse Bid and (ii) exceed the purchase price of such Stalking Horse Bid *plus* any applicable Bid Protections *plus* any applicable Initial Bid Increment or (b) propose an alternative transaction that, in the Debtors' business judgment, provides higher value or better terms than the applicable Stalking Horse Bid, including by exceeding the purchase price of such Stalking Horse Bid *plus* any applicable Bid Protections *plus* any applicable Initial Bid Increment,

and after taking into account, among other things, in light of all the Bids submitted for the Assets or any combination of Assets, whether there is sufficient cash to pay (x) any applicable Bid Protections, (y) all obligations due and owing to the Cash Flow DIP Lender and DIP Repo Guarantor (the "DIP Financing Amount"), in each case, as applicable. For the avoidance of doubt, as to clause (b) in this Section VI.A.4, the Debtors may evaluate each Bid in light of each of the factors set forth therein, but a Bid is not required to meet each factor in order to be determined a Qualified Bid.

If the value of a bid relative to the Stalking Horse Bid includes additional non-cash components (such as fewer contingencies than are in the Stalking Horse Agreement), the bidder should include an analysis or description of the value of any such additional non-cash components, including any supporting documentation, to assist the Debtors in better evaluating the competing bid.

The "Initial Bid Increment" shall be set by the Debtors at the start of the Auction, after consultation with the Consultation Parties.

5.    Proposed Asset Purchase Agreement:  A Qualified Bid must constitute a *binding and irrevocable* offer and be in the form of an asset purchase agreement reflecting the terms and conditions of the bid (each, a "Proposed Asset Purchase Agreement").  A Proposed Asset Purchase Agreement shall (a) be duly authorized and executed, (b) be based on, and marked against, a form asset purchase agreement provided by the Debtors to Prospective Bidders to reflect the proposed Sale Transaction and to show any other proposed modifications to the form purchase agreement, (b) specify the proposed purchase price for the applicable Assets, (c) identify any then-known Contracts proposed for or that may be proposed for assumption and assignment in connection with the proposed Sale.

6.    Financial Information.  A Qualified Bid must include the following:

a)    a statement that the Prospective Bidder is financially capable of timely consummating the Sale Transaction contemplated by the Prospective Bidder's Proposed Asset Purchase Agreement;

b)    sufficient evidence, as reasonably determined by the Debtors (in consultation with the Consultation Parties), to determine that the Prospective Bidder has, or can obtain, the financial wherewithal to timely consummate the Sale Transaction contemplated by the Prospective Bidder's Proposed Asset Purchase Agreement;

c)    Adequate Assurance Information (as defined in Section VI.A.8 below) with respect to any Contracts included or that may be included in the Prospective Bidder's bid.

7.      <u>Good Faith Deposit</u>.  Each Qualified Bid must be accompanied by a good faith deposit (each, a "<u>Good Faith Deposit</u>") in the form of cash (or other form acceptable to the Debtors in their sole discretion) in an amount equal to ten percent (10%) of the proposed purchase price for the applicable Assets (inclusive of any amount thereof comprising any applicable Credit Bid consideration); *provided*, that no Good Faith Deposit shall be required for any Qualified Bid that solely contains Credit Bid consideration.

Good Faith Deposits shall be deposited into a trust account maintained on behalf of the Debtors (and to be designated by Debtors) and handled in accordance with Section VII.E of these Bidding Procedures.  To the extent a Qualified Bidder increases the purchase price before, during, or after the Auction, the Debtors reserve the right to require that such Qualified Bidder adjust its Good Faith Deposit so that it equals ten percent (10%) of the increased purchase price.  The Debtors reserve the right to increase or decrease the Good Faith Deposit for one or more Qualified Bidders in their sole discretion except with respect to any Qualified Bid that solely contains Credit Bid consideration as set forth above; *provided*, the Debtors may not decrease or waive any Good Faith Deposit without consulting with the Consultation Parties.

8.      <u>Adequate Assurance</u>.  A Qualified Bid must include evidence of the Prospective Bidder's (or any other relevant assignee's) ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Prospective Bidder's (or any other relevant assignee's) ability to perform future obligations arising under any Contracts included in its bid.  The Debtors may require the following information in connection with demonstrating adequate assurance of future performance:  information evidencing the Prospective Bidder's (or any other relevant assignee's) financial wherewithal and willingness to perform under any Contracts included in the bid, which information may include (i) a corporate organizational chart or similar disclosure identifying corporate ownership and control, (ii) financial statements, (iii) tax returns and (iv) annual reports (the information described in this Section VI.A.8, the "<u>Adequate Assurance Information</u>").

All Adequate Assurance Information must be in a form that will permit its immediate dissemination to the applicable Counterparties (as defined below).

9.      <u>Representations and Warranties</u>.  A Qualified Bid must include the following representations and warranties:

a)      a statement that the Prospective Bidder has had an opportunity to conduct any and all due diligence regarding the Debtors' businesses and the applicable Assets prior to submitting its bid;

b)      a statement that the Prospective Bidder has relied solely upon its own independent review, investigation and/or inspection of any relevant documents and the Assets in making its bid and did not rely on any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Debtors' businesses or the applicable Assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in a Stalking Horse Agreement;

(c)      a statement that all proof of financial ability to consummate the applicable Sale in a timely manner and all information provided to support adequate assurance of future performance is true and correct; and

(d)      a statement that the Prospective Bidder agrees to be bound by the terms of the Bidding Procedures.

10.      <u>Authorization</u>.  A Qualified Bid must (a) include evidence of authorization and approval from the Prospective Bidder's board of directors (or comparable governing body) with respect to the submission, execution and delivery of any bid for the Assets, participation in the Auction, and closing of the Sale contemplated by the Prospective Bidder's Proposed Asset Purchase Agreement or (b) if the Prospective Bidder is an entity formed for the purpose of effecting the proposed Sale Transaction, a Qualified Bid must provide written evidence acceptable to the Debtors of authorization and the approval by the equity holder(s) of such Prospective Bidder.

11.      <u>Other Requirements</u>.  A Qualified Bid must:

a.      state that the Prospective Bidder agrees to serve as a backup bidder (a "<u>Backup Bidder</u>") if such bidder's Qualified Bid is selected at the Auction as the next highest or next best bid after the Successful Bid (as defined in Section VII.C.1 below) for the applicable Assets (each such bid, a "<u>Backup Bid</u>"); <u>provided</u>, that as to any Stalking Horse Bidder, the terms of any applicable Stalking Horse Agreement shall control as to any Backup Bidder and Backup Bid requirement.

b.      state that the bid, as may be modified before or during the Auction, represents a binding, irrevocable, good-faith and *bona fide* offer to purchase the applicable Assets and is not subject to or conditioned on any due diligence, financing, or other contingency (other than the conditions to closing under the applicable agreement), and is irrevocable until the later of (i) the applicable outside date for consummation of the applicable Sale Transaction or (ii) the Backup Bid Expiration Date (as defined in Section VII.C.2 below);

9

c.      except as otherwise may be provided in a Stalking Horse Agreement, expressly state and acknowledge that the Prospective Bidder shall not be entitled to a break-up fee, termination fee, expense reimbursement or other "bidding protection" in connection with the submission of a bid for the Assets or otherwise participating in the Auction or the Sale Process, unless otherwise granted by the Debtors and approved by an order of the Court;

d.      state that the Prospective Bidder is committed to closing the Sale contemplated in its bid as soon as practicable and in any case no later than the applicable deadline to consummate an approved Sale set forth herein;

e.      specify (i) whether the Qualified Bidder intends to hire any of the Debtors' employees and (ii) expressly proposes the treatment of the Debtors' prepetition compensation, incentive, retention, bonus or other compensatory arrangements, plans, or agreements, including offer letters, employment agreements, consulting agreements, retiree benefits, and any other employment related agreements (collectively, the "Employee Obligations");

f.      expressly waive any claim or right to assert any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code or the payment of any broker fees or costs in connection with bidding for any of the Assets and/or otherwise participating in the Auction or the Sale Process;

g.      include a covenant to cooperate with the Debtors (i) to provide pertinent factual information regarding the Prospective Bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and any other applicable regulatory requirements and (ii) to obtain Court approval of the Sale;

h.      state or otherwise estimate the types of transition services, if any, the Prospective Bidder would require of and/or provide to the Debtors, including an estimate of the time any such transition services would be required of and/or provided to the Debtors, if the Prospective Bidder's bid were selected as the Successful Bid for the applicable Assets;

i.      certify that the Prospective Bidder did not collude with any other bidders and is not otherwise a partnership, joint venture or other entity in which more than one bidder (or any affiliates of a bidder) has a direct or indirect interest, unless consented to in writing by the Debtors;

j.      include a covenant to comply with the terms of these Bidding Procedures and the Bidding Procedures Order; and

k.      include contact information for the specific person(s) the Debtors should contact in the event they have any questions about the Prospective Bidder's bid.

**B.    Bid Review Process**

The Debtors will review each Bid received from a Prospective Bidder to determine whether it meets the requirements set forth above. Based upon their evaluation of the content of each Bid, the Debtors may, as they deem appropriate in their business judgment and in a manner consistent with their fiduciary duties and applicable law, engage in negotiations with any Prospective Bidder for the purposes of (i) curing any deficiencies in a bid that prevents it from constituting a Qualified Bid, (ii) improving the terms of the Prospective Bidder's bid or (iii) otherwise promoting a more competitive bidding and Auction process with the ultimate goal of maximizing the value of the Assets.

A Bid received from a Prospective Bidder for one or more assets or substantially all of the Assets that the Debtors determine meets the requirements set forth in Section V and VI above, and is otherwise satisfactory to the Debtors, will be considered a Qualified Bid and each Prospective Bidder that submits a Qualified Bid will be considered a "Qualified Bidder." The Debtors shall inform Qualified Bidders that their Bids have been designated as Qualified Bids no later than 48 hours after such Bids are received.

For the avoidance of doubt, any Stalking Horse Agreement will be deemed a Qualified Bid, and the Stalking Horse Bidder will be deemed a Qualified Bidder, for all purposes and requirements pursuant to the Bid Procedures, notwithstanding the requirements that a Prospective Bidder must satisfy to be a Qualified Bidder. The Debtors shall, within two (2) calendar days following the Bid Deadline, inform any Stalking Horse Bidder of the Baseline Bid (as defined in Section VII.B.2) received relevant to the Assets under such Stalking Horse Bidder's Stalking Horse Agreement and shall provide copies of the Baseline Bid at the same time other Qualified Bidders receive such information.

In evaluating a Bid, the Debtors may take into consideration any and all factors that the Debtors deem reasonably pertinent, including, without limitation:

(i)      the amount of the proposed purchase price and proposed form of consideration;

(ii)     any Assets and liabilities included in, or excluded from, the bid, including any Contracts marked for assumption and assignment;

(iii)    the value to be provided to the Debtors under the bid, including the net economic effect on the Debtors' estates (taking into account any Stalking Horse Bidder's rights with respect to any Bid Protections and the DIP Financing Amount, in each case, as applicable);

11

(iv)     any benefit to the Debtors' estates from any assumption or waiver of liabilities contemplated by the bid;

(v)      any benefit to the Debtors' estates arising from the avoidance of additional costs that may be incurred as a result of the bid;

(vi)     the structure of the proposed Sale Transaction and any attendant execution risk, including conditions to, timing of and certainty of closing, termination provisions, financing contingencies, availability of financing and general financial wherewithal to meet all commitments, and any required governmental approvals;

(vii)    the impact of the proposed Sale on employees and the proposed treatment of the Employee Obligations;

(viii)   the impact of the proposed Sale on the Debtors' trade creditors, licensees and any other parties in interest; and

(ix)     any other factors the Debtors may reasonably deem relevant and consistent with their fiduciary duties; provided that in conjunction with any Credit Bid, the Debtors must have sufficient cash to pay any applicable Bid Protections pursuant to the terms of any Stalking Horse Agreement.

The Debtors will make a determination regarding the Bids that qualify as Qualified Bids and as Baseline Bids (as defined in Section VII.B.2 below) and will notify bidders whether they have been selected as Qualified Bidders by no later than **October 18, 2022 at 4:00 p.m. (prevailing Eastern Time)**.  A Qualified Bidder shall not (without the consent of the Debtors), modify, amend or withdraw its Qualified Bid, unless for the purposes of increasing the purchase price or otherwise improving the terms of the bid, as determined by the Debtors in their business judgment.

The Debtors, in their business judgment reserve the right to reject any Bid (other than any Stalking Horse Bid) if such Bid, among other things, (i) is on terms that are more burdensome or conditional than the terms of any applicable Stalking Horse Agreement, (ii) requires any indemnification of the Prospective Bidder in its Purchase Agreement, (iii) is not received by the Bid Deadline, (iv) is subject to any contingencies (including representations, warranties, covenants and timing requirements) of any kind or any other conditions precedent to such party's obligation to acquire the relevant Assets, (v) seeks any bid protections, or (vi) does not, in the Debtors' determination, include a fair and adequate price or the acceptance of which would not be in the best interests of the Debtors' estates.

Without prejudice to the rights of a Stalking Horse Bidder under the applicable Stalking Horse Agreement, the Debtors may, in their sole discretion, among other things (i) amend or waive the conditions precedent to qualifying as a Qualified Bidder, (ii) extend the Bid Deadline as to any party or with respect to any Assets, and/or (iii) postpone or cancel the Auction and terminate the proposed sale(s) for any Assets.

Notwithstanding anything to the contrary herein, with respect to a Bid for any Assets for which neither the Cash Flow DIP Lender nor the DIP Repo Guarantor have submitted a Credit

Bid, the Debtors shall not designate such Bid as a Qualified Bid unless (a) the Cash Flow DIP Lender has consented in writing to such designation or (b) the Bid is sufficient, when taking into account all other Bids that would (notwithstanding this paragraph) be Qualified Bids, to pay in full in cash all Cash Flow DIP Obligations and DIP Repo Guarantor Obligations.

## VII.    THE AUCTION

If the Debtors receive more than one Qualified Bid (including any Stalking Horse Bid) for one or more Asset or combination of Assets, the Debtors will conduct an Auction for such Asset(s). With respect to any particular Asset for which the Debtors receive only one Qualified Bid by the Bid Deadline, the Debtors may, in their business judgment, determine to consummate a Sale with the applicable Qualified Bidder without conducting an Auction.

In the event the Debtors determine not to hold an Auction for some or all of the Assets, the Debtors will file with the Court, serve on the Sale Notice Parties and cause to be published on the KCC Website, at https://www.kccllc.net/FGMC a notice containing the following information, as applicable: (i) a statement that the Auction for the relevant Assets has been canceled, (ii) the identity of the Successful Bidder, (iii) a copy of the Successful Bid or a summary of the material terms of such bid, including any assumption and assignment of Contracts contemplated thereby, and (iv) the date, time and location of the applicable Sale Hearing.

The Auction, if required, will be conducted on **October 20, 2022, at 10:00 a.m. (prevailing Eastern Time)**, virtually through Zoom, or, if permitted, at the offices of Pachulski Stang Ziehl & Jones, LLP, 919 N. Market Street, 17th Floor, Wilmington, Delaware, 19801, or at such other time and location as designated by the Debtors, after providing notice to the Sale Notice Parties; provided, however, the Debtors shall have the right to hold the Auction remotely, including telephonically or by other electronic means (including, without limitation, video conferencing) as the Debtors may choose in their sole discretion so as to comply with all applicable federal, state and local laws, orders, ordinances, guidelines and guidance, including any COVID-19 related guidelines.  If held, the Auction proceedings will be transcribed and/or video recorded.

### A.    Participants and Attendees

Only Qualified Bidders are eligible to participate in the Auction, subject to other limitations as may be reasonably imposed by the Debtors in accordance with these Bidding Procedures.  At least one (1) day prior to the Auction, each Qualified Bidder must inform the Debtors in writing whether it intends to participate in the Auction.  Qualified Bidders participating in the Auction must appear in person (or through video conferencing, if applicable) at the Auction or through a duly authorized representative.  Subject to the Auction procedures set forth in Section VII of these Bidding Procedures, all Qualified Bidders and the Consultation Parties are permitted to attend the Auction; provided, that the Debtors may, in their sole discretion, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of or accompany each Qualified Bidder at the Auction.  In addition to Qualified Bidders participating at the Auction, the Consultation Parties shall be entitled to attend the Auction.

Each Qualified Bidder participating in the Auction will be required to confirm in writing and on the record at the Auction that (i) it has not engaged in any collusion with respect to the

Auction or the submission of any bid for any of the Assets and (ii) its Qualified Bid that gained the Qualified Bidder admission to participate in the Auction and each Qualified Bid submitted by the Qualified Bidder at the Auction is a binding, good-faith and *bona fide* offer to purchase the Assets identified in such bids.

All Prospective Bidders and Qualified Bidders (including any Stalking Horse Bidder, Successful Bidder and Backup Bidder) shall be deemed to have (i) consented to the core jurisdiction of the Court to enter any order related to these Bidding Procedures, the Auction, any other relief requested in the Motion or granted pursuant to the Bidding Procedures Order or the construction or enforcement of any agreement or any other document relating to any Sale Transaction, (ii) waived any right to a jury trial in connection with any disputes relating to these Bidding Procedures, the Auction or the construction or enforcement of any agreement or any other document relating to any Sale Transaction, and (iii) consented to the entry of a final order or judgment in connection with any disputes relating to these Bidding Procedures, the Auction or the construction or enforcement of any agreement or any other document relating to any Sale Transaction, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

## B.    Auction Procedures

The Auction shall be governed by the following procedures, subject to the Debtors' right to modify such procedures in their business judgment, subject to and in accordance with these Bidding Procedures:

1.    <u>Auction Packages</u>.  Prior to the commencement of the Auction, the Debtors will make a determination regarding the Assets for which the Debtors will conduct an Auction (an "<u>Auction Package</u>").

2.    <u>Baseline Bids</u>.  Prior to the commencement of the Auction, the Debtors will determine, in their business judgment, the highest and/or best Qualified Bid submitted for each Auction Package (each such Qualified Bid, a "<u>Baseline Bid</u>").  Bidding for each Auction Package at the Auction shall commence at the amount of the applicable Baseline Bid.

3.    <u>Minimum Overbid</u>.  Bidding at the Auction for an Auction Package (or subset thereof) that is subject to Qualified Bids will begin with the Baseline Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid (a "<u>Subsequent Bid</u>") is submitted by a Qualified Bidder that (i) improves on such Qualified Bidder's immediately prior Qualified Bid and (ii) the Debtors determine that such Subsequent Bid is (A) for the first round, a higher or otherwise better offer than the Baseline Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below).

The Debtors will announce at the outset of the Auction the minimum required increments for Successive Bids (each, such bid, a "<u>Minimum</u>

14

Overbid"). The Debtors may, in their discretion, announce increases or reductions to Minimum Overbids at any time during the Auction.

Upon a Qualified Bidder's declaration of a bid at the Auction, the Qualified Bidder must state on the record its commitment to pay within two (2) business days following the Auction, if such bid were to be selected as the Successful Bid or as the Backup Bid for the applicable Auction Package, the incremental amount of the Qualified Bidder's Good Faith Deposit calculated based on the increased purchase price of such bid (such Good Faith Deposit so increased, the "Incremental Deposit Amount") if applicable.

Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by any bid subsequent to a Baseline Bid, the Debtors will, at each round of bidding, consider and/or give effect to (a) any Bid Protections payable to any Stalking Horse Bidder under an applicable Stalking Horse Agreement, including the crediting of such amounts to the applicable Stalking Horse Bidder, (b) any additional liabilities to be assumed by a Qualified Bidder under the bid, including whether such liabilities are secured or unsecured, (c) any additional costs that may be imposed on the Debtors, and (d) the treatment of the DIP Financing Amount, as applicable.

4.      Leading Bid. After the first round of bidding and between each subsequent round of bidding, the Debtors will announce the bid that they believe to be the highest or otherwise best offer for the applicable Auction Package (each such bid, a "Leading Bid") and describe the material terms thereof. Each round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a subsequent bid with full knowledge of the material terms of the Leading Bid, subject to the Debtors' authority to revise the Auction procedures to the extent permitted hereby.

The Auction will be conducted by open bidding in the presence of all other Qualified Bidders and each Qualified Bidder shall have the right to be present for all rounds of open bidding and to submit additional bids and make modifications to its Proposed Asset Purchase Agreement at the Auction to improve its bid. The Debtors may, in their business judgment, engage in discussions and negotiate with any and all Qualified Bidders participating in the Auction outside the presence of other bidders before each round of bidding, including to improve or clarify the terms of bids made.

The Debtors shall have the right to determine, in their business judgment, which bid is the highest or otherwise best bid with respect to an applicable Auction Package (including, without limitation, with respect to an Auction Package that includes all or substantially all of the Debtors' Assets) and, in accordance with the terms of these Bidding Procedures, reject, at any time,

15

without liability (except for any requirement to pay any Bid Protections under a Stalking Horse Agreement, as applicable), any bid that the Debtors deem to be inadequate or insufficient, not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, these Bidding Procedures, any order of the Court, or the best interests of the Debtors and their estates, including, without limitation, the treatment of the DIP Financing Amount, as applicable.

## C.    Auction Results

1.    <u>Successful Bids</u>.  Immediately prior to the conclusion of the Auction for an Auction Package, the Debtors will (a) determine, consistent with these Bidding Procedures, which Qualified Bid constitutes the highest or otherwise best bid(s) for the Auction Package (each such bid, a "<u>Successful Bid</u>") and (b) notify all Qualified Bidders at the Auction of the identity of the bidder that submitted the Successful Bid for the Auction Package (each such bidder, a "<u>Successful Bidder</u>") and the amount of the purchase price and other material terms of the Successful Bid.  As a condition to remaining the Successful Bidder, the Successful Bidder shall, within two (2) business days after the conclusion of the Auction, (i) if applicable, wire to the Debtors in immediately available funds the Incremental Deposit Amount, calculated based on the purchase price in the Successful Bid(s) and (ii) submit to the Debtors fully executed documentation memorializing the terms of the Successful Bid(s).

2.    <u>Backup Bids</u>.  Immediately prior to the conclusion of the Auction for an Auction Package, the Debtors will (a) determine, in a manner consistent with these Bidding Procedures, which Qualified Bid is the Backup Bid for the Auction Package and (b) notify all Qualified Bidders at the Auction for the Auction Package of the identity of the Backup Bidder for the Auction Package and the amount of the purchase price and other material terms of the Backup Bid.  Within two (2) business days after the Auction, the Backup Bidder shall submit to the Debtors execution versions of the documentation memorializing the terms of the Backup Bid(s).

A Backup Bid will remain binding on the applicable Backup Bidder until the earlier of (a) the first business day after the closing of a Sale Transaction with the Successful Bidder for the applicable Auction Package and (b) 30 days after the Sale Hearing (or such other date as may be set forth in a Stalking Horse Purchase Agreement, the "<u>Backup Bid Expiration Date</u>"). If the Sale Transaction with the applicable Successful Bidder is terminated prior to the Backup Bid Expiration Date, the Backup Bidder shall be deemed the new Successful Bidder for the applicable Auction Package and shall be obligated to consummate the Backup Bid as if it were the Successful Bid at the Auction; <u>provided</u>, that the Debtors may, in their business judgment and after providing notice to the Sale Notice Parties, elect not to pursue the Sale Transaction contemplated by the Backup Bid.

3.    <u>Notice of Auction Results</u>.  By the later of (a) **October 21, 2022** and (b) one day after the conclusion of the Auction, the Debtors will file with the Court, serve on the Sale Notice Parties and cause to be published on the KCC Website, a notice setting forth the results of the Auction (the "<u>Notice of Auction Results</u>"), which will (a) identify each Successful Bidder and each Backup Bidder, (b) include a copy of each Successful Bid and each Backup Bid or a summary of the material terms of such bids, including any proposed assumption and assignment of Contracts contemplated thereby, and (c) set forth the Post-Auction Objection Deadline (as defined in Section X.D below), the date, time and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise the Sale Notice Parties of the outcome of the Auction.

4.    The Debtors' presentation to the Bankruptcy Court for approval of a selected Qualified Bid as a Successful Bid does not constitute the Debtors' acceptance of such Bid.  The Debtors will have accepted a Successful Bid only when such Successful Bid has been approved by the Bankruptcy Court at the Sale Hearing.

**D.    Additional Auction Procedures**

The Debtors may announce at the Auction additional procedural rules (*e.g.*, among other things, the amount of time to make Subsequent Bids, the amount of the Minimum Overbid, or the requirement that parties submit "best and final" Bids) for conducting the Auction or otherwise modify these Bidding Procedures; <u>provided</u>, that such rules (i) are not materially inconsistent with the Bidding Procedures Order, these Bidding Procedures, the Bankruptcy Code or any order of the Bankruptcy Court, (ii) are disclosed to each Qualified Bidder during the Auction, (iii) do not extend the Bid Deadline or for the closing of the Auction, and (iv) do not allow the submission (or the Debtors' acceptance) of additional bids after the close of Auction.  For the avoidance of doubt, any bid for any Assets included in any Auction Package shall be subject to a determination by the Debtors, in their business judgment and in accordance with the other provisions of these Bidding Procedures, that (i) a bid for substantially all of the Debtors' Assets and/or (ii) a combination of bids that groups the Assets together differently is the highest or otherwise best offer for such Assets.

**E.    Disposition of Good Faith Deposit**

1.    <u>Prospective Bidders</u>.  Within five business days after the Debtors make final determinations as to which Prospective Bidders qualify as Qualified Bidders, a Prospective Bidder's Good Faith Deposit shall be returned to any such Prospective Bidder that did not qualify as a Qualified Bidder, as confirmed by the Debtors.  Upon the authorized return of a Prospective Bidder's Good Faith Deposit in accordance with this Section VII.E, the bid of such Prospective Bidder shall be deemed terminated and no longer binding against the Prospective Bidder.

2.    <u>Qualified Bidders</u>.

17

a)    <u>Forfeiture of Good Faith Deposit</u>.  The Good Faith Deposit of a Qualified Bidder shall be forfeited if the Qualified Bidder attempts to withdraw its Qualified Bid, except as may be permitted by these Bidding Procedures, during the time the Qualified Bid remains binding and irrevocable under these Bidding Procedures.  The Debtors and their estates shall be entitled to retain the Qualified Bidder's Good Faith Deposit as partial compensation for the damages caused to the Debtors and their estates as a result of the Qualified Bidder's failure to adhere to the terms of these Bidding Procedures and/or the relevant Qualified Bid.  In the event that a Qualified Bidder's Good Faith Deposit is deemed forfeited, such Qualified Bidder's Good Faith Deposit shall be released by wire transfer of immediately available funds to an account designated by the Debtors within two (2) business days after receipt of written notice by an authorized officer of the Debtors stating that the applicable Qualified Bidder has breached or otherwise failed to satisfy its obligations in accordance with these Bidding Procedures and the applicable Qualified Bid.

b)    <u>Return of Good Faith Deposit</u>.  With the exception of the Good Faith Deposits of Successful Bidders and Backup Bidders and any forfeiture of a Good Faith Deposit as described above, any other Qualified Bidder's Good Faith Deposit shall be returned within 5 business days after the conclusion of the Auction for the applicable Auction Package.

c)    <u>Backup Bidder</u>.  Any Backup Bidder's Good Faith Deposit shall be returned within 5 business days after the occurrence of the applicable Backup Bid Expiration Date.

d)    <u>Successful Bidder</u>.  At the closing of a Sale, the Successful Bidder shall be entitled to a credit against the purchase price for the applicable Assets in the amount of the Successful Bidder's Good Faith Deposit (and, in the case of a Successful Bidder that was a Stalking Horse Bidder where there is bidding on the Assets subject to the Stalking Horse Agreement, that Successful Bidder shall be entitled to a credit against the purchase price in an amount equal to any Bid Protections that would have been payable under the applicable Stalking Horse Agreement had the Stalking Horse Bidder not participated in the Auction).  The Good Faith Deposit of a Successful Bidder shall be forfeited if the Successful Bidder fails to consummate the applicable Sale because of a breach that entitles the Debtors to terminate the applicable asset purchase agreement with such Successful Bidder, and the Debtors and their estates shall be entitled to retain the Successful Bidder's Good Faith Deposit as partial compensation for the damages caused to the Debtors and their estates as a result of such breach.  In the event that a Successful

Bidder's Good Faith Deposit is deemed forfeited, such Good Faith Deposit shall be released by wire transfer of immediately available funds to an account designated by the Debtors within two (2) business days after receipt of written notice by an authorized officer of the Debtors stating that the applicable Successful Bidder has breached or otherwise failed to satisfy its obligations in accordance with these Bidding Procedures and the applicable Successful Bid.

## VIII.   SALE HEARING

Each Successful Bid (including any Backup Bid that is subsequently deemed a Successful Bid) will be subject to approval by the Bankruptcy Court.  The hearing to approve any Sale consummated in accordance with these Bidding Procedures (except in the case of a Sale contemplated by a Backup Bid that subsequently is deemed a Successful Bid) shall take place on **October 31, 2022, at 10:00 a.m. (prevailing Eastern Time)** (the "Sale Hearing") before the Honorable Craig T. Goldblatt, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware.

The Debtors may, in their business judgment (after consulting with the Successful Bidder(s)), adjourn or reschedule the Sale Hearing with sufficient notice to the Sale Notice Parties, including by announcing such adjournment or rescheduling at the Auction or in Court on the date of the originally scheduled Sale Hearing.

At the Sale Hearing, the Debtors will seek entry of one or more Sale Orders that: (i) authorizes and approves the Sale to the Successful Bidder(s) and/or the Backup Bidder(s), (ii) includes a finding that the Successful Bidder(s) and/or the Backup Bidder(s) is a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code, and (iii) as appropriate, exempts the Sale Transaction(s) and conveyance(s) of the Assets from any transfer tax, stamp tax or similar tax, or deposit under any applicable bulk sales statute.

## IX.    RESERVATION OF RIGHTS TO MODIFY BIDDING PROCEDURES

The Debtors reserve the right to, in their business judgment, in a manner consistent with their fiduciary duties and applicable law, modify these Bidding Procedures, including to, among other things, (a) extend or waive deadlines or other terms and conditions set forth herein, (b) adopt new rules and procedures for conducting the bidding and Auction process, (c) if applicable, provide reasonable accommodations to a Stalking Horse Bidder, or (d) otherwise modify these Bidding Procedures to further promote competitive bidding for and maximizing the value of the Assets; provided, that such extensions, waivers, new rules and procedures, accommodations and modifications (i) do not conflict with and are not inconsistent with the Bidding Procedures Order, these Bidding Procedures, the Bankruptcy Code or any order of the Bankruptcy Court, (ii) are promptly communicated to each Qualified Bidder, (iii) do not extend the Bid Deadline the date of

the Auction or the closing of the Auction, and (iv) do not allow the submission (or the Debtors' acceptance) of additional bids after, as applicable, the Bid Deadline or the close of Auction.

## X.    NOTICING

### A.    Bid Notice Parties

Qualified Bids must be submitted in writing to the following parties (collectively, the "Bid Notice Parties"):

- counsel for the Debtors, (a) Dentons US LLP, 601 S. Figuera Street, #2500, Los Angeles, CA 90017 (Attn: Samuel Maizel (samuel.maizel@dentons.com), Tania M. Moyron (tania.moyron@dentons.com), and David F. Cook (david.f.cook@dentons.com); and (b) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801 (Attn: Laura Davis Jones (ljones@pszjlaw.com), Timothy P. Cairns (tcairns@pszjlaw.com), and Mary F. Caloway (mcaloway@pszjlaw.com);

- solely to the extent they are not an active or prospective bidder with respect to the relevant Asset(s), counsel for the Cash Flow DIP Lender, (i) Greenberg Traurig, LLP, 77 W. Wacker Drive, Suite 3100, Chicago, IL 60601, Attn: Nancy A. Peterman (petermann@gtlaw.com) and Eric J. Howe (howee@gtlaw.com); (ii) Greenberg Traurig, LLP, Terminus 200, 3333 Piedmont Road NE 2500 Atlanta, GA 30305, Attn: John D. Elrod (elrodj@gtlaw.com); (iii) Greenberg Traurig, LLP, The Nemours Building, 1007 N. Orange Street, Suite 1200, Wilmington, DE 19801, Attn: Dennis A. Meloro (melorod@gtlaw.com); and

- counsel to the Committee, Thompson Coburn Hahn & Hessen LLP, 488 Madison Avenue, New York, New York 10022, Attn: Mark S. Indelicato, Esq. (mindelicato@thompsoncoburn.com), and Mark T. Power, Esq. (mpower@thompsoncoburn.com); (iv) proposed co-counsel to the Official Committee of Unsecured Creditors, Blank Rome LLP, 1201 Market Street, Suite 800, Wilmington, Delaware 19801, Attn: Regina Stango Kelbon, Esq. (regina.kelbon@blankrome.com), Victoria A. Guilfoyle, Esq. (tori.guilfoyle@blankrome.com), and Lawrence R. Thomas III, Esq. (Lorenzo.thomas@blankrome.com).

### B.    Sale Notice Parties

The "Sale Notice Parties" shall include the following persons and entities:

- counsel to any Stalking Horse Bidder;

- all persons and entities known by the Debtors to have expressed an interest to the Debtors in one or more groups of Assets or substantially all of the

20

Debtors' assets during the past 12 months, if applicable, including any person or entity that has submitted a bid for any of the Assets;

• all persons and entities known by the Debtors to have asserted any lien, claim, interest or encumbrance in the Assets (for whom identifying information and addresses are available to the Debtors);

• all relevant non-debtor parties (each, a "Counterparty") to any Contract that may be assumed or rejected in connection with a Sale Transaction;

• all of the Debtors' known creditors (for whom identifying information and addresses are available to the Debtors);

• any governmental authority known to have a claim against the Debtors in these Chapter 11 Cases;

• the office of the U.S. Trustee;

• all applicable federal, state and local taxing authorities, including the Internal Revenue Service;

• the United States Securities and Exchange Commission;

• the United States Attorney's Office for the District of Delaware;

• United States Attorney General's Office for the District of Delaware;

• the Office of the Attorney General and the Secretary of State in each state in which the Debtors operate;

• all of the parties entitled to notice pursuant to Bankruptcy Rule 2002; and

• all other parties as directed by the Court.

**C.    Sale Notice and Publication Notice**

By the later of (i) **September 23, 2022** and (ii) three (3) business days after entry of the Bidding Procedures Order, the Debtors will file with the Court, serve on the Sale Notice Parties and cause to be published on the KCC Website a notice (the "Sale Notice") setting forth (A) a description of the potential Sale Transaction(s) in accordance with these Bidding Procedures, (B) the date, time and location of the Auction and Sale Hearing, and (C) the Sale Objection Deadline and Post-Auction Objection Deadline (each as defined in Section X.D below) and the procedures for filing such objections, and, if applicable.

As soon as practicable after entry of the Bidding Procedures Order, the Debtors will cause the information contained in the Sale Notice to be published once in the national edition of *USA Today*.

### D.    Sale Objections and Post-Auction Objections

Objections to any Sale Transaction, including any objection to any sale of Assets free and clear of all liens, claims, interests and encumbrances pursuant to section 363(f) of the Bankruptcy Code (each such objection, a "Sale Objection") shall, by no later than **October 14, 2022, at 4:00 p.m. (prevailing Eastern Time)]** (the "Sale Objection Deadline"), be filed with Court and served on the following parties (collectively, the "Objection Notice Parties"):

- counsel for the Debtors, (a) Dentons US LLP, 601 S. Figuera Street, #2500, Los Angeles, CA 90017 (Attn: Samuel Maizel (samuel.maizel@dentons.com), Tania M. Moyron (tania.moyron@dentons.com), and David F. Cook (david.f.cook@dentons.com); and (b) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801 (Attn: Laura Davis Jones (ljones@pszjlaw.com), Timothy P. Cairns (tcairns@pszjlaw.com), and Mary F. Caloway (mcaloway@pszjlaw.com);

- counsel for the Cash Flow DIP Lender, (i) Greenberg Traurig, LLP, 77 W. Wacker Drive, Suite 3100, Chicago, IL 60601, Attn: Nancy A. Peterman (petermann@gtlaw.com) and Eric J. Howe (howee@gtlaw.com); (ii) Greenberg Traurig, LLP, Terminus 200, 3333 Piedmont Road NE 2500 Atlanta, GA 30305, Attn: John D. Elrod (elrodj@gtlaw.com); (iii) Greenberg Traurig, LLP, The Nemours Building, 1007 N. Orange Street, Suite 1200, Wilmington, DE 19801, Attn: Dennis A. Meloro (melorod@gtlaw.com);

- counsel to the Committee, Thompson Coburn Hahn & Hessen LLP, 488 Madison Avenue, New York, New York 10022, Attn: Mark S. Indelicato, Esq. (mindelicato@thompsoncoburn.com), and Mark T. Power, Esq. (mpower@thompsoncoburn.com); (iv) proposed co-counsel to the Official Committee of Unsecured Creditors, Blank Rome LLP, 1201 Market Street, Suite 800, Wilmington, Delaware 19801, Attn: Regina Stango Kelbon, Esq. (regina.kelbon@blankrome.com), Victoria A. Guilfoyle, Esq. (tori.guilfoyle@blankrome.com), and Lawrence R. Thomas III, Esq. (Lorenzo.thomas@blankrome.com);

- counsel for any relevant Successful Bidder(s); and

- counsel for any relevant Backup Bidder(s).

Following service of the Notice of Auction Results, Sale Notice Parties may object to the conduct of the Auction and/or the particular terms of any proposed Sale Transaction in a Successful Bid (each such objection, a "Post-Auction Objection") by no later than **later of (i) October 24, 2022, at 4:00 p.m. (prevailing Eastern Time)** (the "Post-Auction Objection Deadline"). Each Post-Auction Objection shall be filed with the Court and served on the Objection Notice Parties.

**E.      Notices Regarding Assumption and Assignment of Contracts**

The Debtors will provide all notices regarding the proposed assumption and assignment of Contracts in accordance with the Assumption and Assignment Procedures set forth in the Bidding Procedures Order.

## XI.     CONSULTATION BY THE DEBTORS

Throughout the Sale Process, the Debtors and their advisors will consult with the following parties (collectively, the "Consultation Parties"), as provided in these Bidding Procedures, or as is otherwise necessary or appropriate, as determined in the Debtors' business judgment: (i) the legal and financial advisors for the Committee and (ii) solely to the extent they are not an active or prospective bidder with respect to the any of the Asset(s), or are participating in any way in any active or prospective bid with respect to such Asset(s), the legal and financial advisors for the Cash Flow DIP Lender.

Notwithstanding the foregoing, the Debtors will not consult with or provide copies of any bids or other confidential information to any Consultation Party or any insider or affiliate of the Debtors if such party is an active or prospective bidder for any of the Asset(s) at the applicable time.  If, however, a member of the Committee submits a Qualified Bid for any of the Assets, the Committee will maintain its consultation rights as a Consultation Party, provided, that such Committee excludes the bidding Committee member from any discussions or deliberations regarding a transaction involving any of the Assets, and shall not provide any confidential information regarding any of the Assets or otherwise involving the Sale Process to the bidding Committee member.

For the avoidance of doubt, any consultation rights afforded to the Consultation Parties by these Bidding Procedures or the Bidding Procedures Order shall not in any way limit the Debtors' discretion and, except as otherwise set forth in these Bidding Procedures or the Bidding Procedures Order, shall not include the right to veto any decision made by the Debtors in the exercise of their business judgment.

## EXHIBIT 2

**Sale Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FIRST GUARANTY MORTGAGE | ) | Case No. 22-10584 (CTG) |
| CORPORATION, *et al.,*[1] | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | |

## NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, SALE HEARING AND OTHER DEADLINES RELATED THERETO

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On September ___, 2022, the above-captioned debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") filed with the United States Bankruptcy Court for the District of Delaware (the "Court") a motion [Docket No. _____] (the "Motion") seeking entry of: (a) an order (the "Bidding Procedures Order") (i) approving bidding procedures, substantially in the form attached to the Bidding Procedures Order as Exhibit 1 (the "Bidding Procedures"), to be used in connection with the sale (the "Sale") of one or more groups of the Debtors' assets or substantially all of the Debtors' assets (together, the "Assets") to one or more bidders (each, a "Sale Transaction"), (ii) authorizing the Debtor to designate a Stalking Horse Bidder and provide Bid Protections in accordance with the Stalking Horse Designation Procedures, (iii) scheduling (A) an auction of the Assets (the "Auction"), and scheduling the hearing to approve the Sale (the "Sale Hearing"), (iv) approving the form and manner of notice of the proposed Bidding Procedures, the Auction, and the Sale Hearing, substantially in the form attached to the Bidding Procedures Order as Exhibit 2 (the "Sale Notice"), (v) authorizing procedures governing the assumption and assignment of certain executory contracts and unexpired leases (the "Contracts") in connection with any Sale Transaction (the "Assumption and Assignment Procedures"), (vi) approving the form and manner of notice to each relevant non-debtor counterparty to a Contract (each, a "Counterparty") of (A) the Debtor's calculation of the amount necessary to cure any defaults under an applicable Contract (the "Cure Costs") and (B) certain other information regarding the potential assumption and assignment of Contracts in connection with the Sale Transaction, substantially in the form attached to the Bidding Procedures Order as Exhibit 3 (the "Assumption and Assignment Notice"); (b) an order or orders (each a "Sale Order"), (a) authorizing the sale or sales of the Assets free and clear of all liens, claims, interests, and encumbrances, except certain assumed liabilities and permitted encumbrances as determined by the Debtors and the Successful Bidder, with liens to attach to the

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  First Guaranty Mortgage Corporation (9575); and Maverick II Holdings, LLC (5621). The Debtors' mailing address is 5800 Tennyson Parkway, Suite 450, Plano, TX 75024.

proceeds of the sale or sales, (ii) authorizing the assumption and assignment of certain Contracts; and (c) granting related relief.

On September __, 2022, the Court entered the Bidding Procedures Order [Docket No. [●]].

## ASSETS FOR SALE

The sale of any of the Debtors' Assets shall be subject to a competitive bidding process as set forth in the Bidding Procedures and approval by the Court pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6003, 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## STALKING HORSE PROCEDURES

The Debtors shall be authorized, but not obligated, in consultation with the Consultation Parties and in an exercise of their business judgment to: (a) select one or more Qualified Bidders to act as stalking horse bidders in connection with any Sale Transaction (each, a "Stalking Horse Bidder" and any bid submitted by any Stalking Horse Bidder, a "Stalking Horse Bid"), and enter into a purchase agreement(s) with respect to a Sale Transaction with such Stalking Horse Bidder (each such agreement, a "Stalking Horse Agreement"); and (b) in connection with any Stalking Horse Agreement with a Stalking Horse Bidder provide (i) a breakup fee (the "Breakup Fee"), (ii) an expense reimbursement (the "Expense Reimbursement"), and/or (iii) other forms of bid protections (together with the Breakup Fee and the Expense Reimbursement, collectively, the "Bid Protections"), subject to Court approval.

In the event the Debtors select a Stalking Horse Bidder, as soon as reasonably practicable following the selection of a Stalking Horse Bidder, and by no later than **4:00 p.m. (prevailing Eastern time) on October 7, 2022** (the "Stalking Horse Notice Deadline"), the Debtors shall file a notice (a "Stalking Horse Notice") with detail regarding the Stalking Horse Bidder, attaching a copy of the proposed Stalking Horse Agreement, and detailing the proposed Bid Protections and serve such Stalking Horse Notice by overnight mail, email or facsimile on (i) all persons known or reasonably believed to have expressed interest in acquiring the Assets since the Petition Date, (ii) all non-Debtor parties to any executory contracts and/or unexpired leases proposed to be assumed and assigned pursuant to the Stalking Horse Agreement, and (iii) all parties that have requested notice in these chapter 11 cases as of the date of such Stalking Horse Notice. Any objections to the Stalking Horse Notice shall be filed on or before **October 11, 2022 at 4:00 p.m. (prevailing Eastern Time)**.

## KEY DATES AND DEADLINES

### A.    Bid Deadline

Any Prospective Bidder that intends to participate in the Auction must submit in writing to the Bid Notice Parties a bid (a "Bid") on or before **October 14, 2022, at 4:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline").

The Qualified Bid requirements are set forth in Section VI of the Bidding Procedures.

**B.    Auction**

If the Debtors receive more than one Qualified Bid (including any Stalking Horse Bid) for any of the Assets, the Debtors will conduct an Auction for such Asset(s). With respect to any particular Asset for which the Debtors receive only one Qualified Bid by the Bid Deadline, the Debtors may, in their business judgment, determine to consummate a Sale with the applicable Qualified Bidder without conducting an Auction.

Prior to the commencement of the Auction, the Debtors will make a determination regarding the Assets for which the Debtors will conduct an Auction (each such Asset or group of Assets, an "<u>Auction Package</u>").

The Auction, if required, will be conducted on **October 20, 2022 at 10:00 a.m. (prevailing Eastern Time)**, virtually through Zoom, or, if permitted, at the offices of Pachulski Stang Ziehl & Jones, LLP, 919 N. Market Street, 17th Floor, Wilmington, Delaware, 19801, or at such other time and location as designated by the Debtors, after providing notice to the Sale Notice Parties; <u>provided</u>, <u>however</u>, the Debtors shall have the right to hold the Auction remotely, including telephonically or by other electronic means (including, without limitation, video conferencing) as the Debtors may choose in their sole discretion so as to comply with all applicable federal, state and local laws, orders, ordinances, guidelines and guidance, including any COVID-19 related guidelines. If held, the Auction proceedings will be transcribed and/or video recorded.

By the later of (a) **October 21, 2022** and (b) one day after the conclusion of the Auction, the Debtors will file with the Court, serve on the Sale Notice Parties and cause to be published on the KCC Website, at https://www.kccllc.net/FGMC, a notice setting forth the results of the Auction (the "<u>Notice of Auction Results</u>"), which will (a) identify each Successful Bidder and each Backup Bidder, (b) include a copy of each Successful Bid and each Backup Bid or a summary of the material terms of such bids, including any proposed assumption and assignment of Contracts contemplated thereby, and (c) set forth the Post-Auction Objection Deadline, the date, time and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise the Sale Notice Parties of the outcome of the Auction.

**C.    Objection Deadlines**

1. <u>Sale Objection Deadline</u>. Objections to any Sale Transaction, including any objection to any sale of Assets free and clear of all liens, claims, interests and encumbrances pursuant to section 363(f) of the Bankruptcy Code (each such objection, a "<u>Sale Objection</u>") shall, by no later than **October 14, 2022, at 4:00 p.m. (prevailing Eastern Time)** (the "<u>Sale Objection Deadline</u>"), be filed with Court and served on the Objection Notice Parties.

2. <u>Post-Auction Objection Deadline</u>. Following service of the Notice of Auction Results, Sale Notice Parties may object to the conduct of the Auction and/or the particular terms of any proposed Sale Transaction in a Successful Bid, other than with respect to a Stalking Horse Bid (each such objection, a "<u>Post-Auction</u>

Objection") by no later than **October 24, 2022, at 4:00 p.m. (prevailing Eastern Time)**.

      **D.**    **Sale Hearing**

The Sale Hearing shall take place on **October 31, 2022, at 10:00 a.m. (prevailing Eastern Time)** before the Honorable Craig T. Goldblatt, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 N. Market Street, Wilmington, Delaware 19801.

## RESERVATION OF RIGHTS TO MODIFY BIDDING PROCEDURES

The Debtors reserve the right to, in their business judgment, in a manner consistent with their fiduciary duties and applicable law, modify these Bidding Procedures, including to, among other things, (a) extend or waive deadlines or other terms and conditions set forth herein, (b) adopt new rules and procedures for conducting the bidding and Auction process, (c) if applicable, provide reasonable accommodations to a Stalking Horse Bidder, or (d) otherwise modify these Bidding Procedures to further promote competitive bidding for and maximizing the value of the Assets; <u>provided</u>, that such extensions, waivers, new rules and procedures, accommodations and modifications (i) do not conflict with and are not inconsistent with the Bidding Procedures Order, the Bidding Procedures, the Bankruptcy Code or any order of the Bankruptcy Court, (ii) are promptly communicated to each Qualified Bidder, (iii) do not extend the Bid Deadline, the date of the Auction or the closing of the Auction, and (iv) do not allow the submission (or the Debtors' acceptance) of additional bids after, as applicable, the Bid Deadline or the close of Auction.

## ADDITIONAL INFORMATION

Copies of the Motion, the Bidding Procedures Order and the Bidding Procedures may be obtained free of charge by visiting the KCC Website at: https://www.kccllc.net/FGMC.

**FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER OR ANY OTHER APPLICABLE ORDER OF THE COURT ENTERED IN THESE CHAPTER 11 CASES MAY RESULT IN THE REJECTION OF YOUR BID AND YOUR DISQUALIFICATION FROM PARTICIPATING IN THE BIDDING FOR AND AUCTION OF ANY OF THE DEBTORS' ASSETS.**

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER, INCLUDING THE FAILURE TO FILE ANY SUCH OBJECTION BY THE APPLICABLE OBJECTION DEADLINE, SHALL FOREVER BAR SUCH PERSON OR ENTITY FROM ASSERTING, AT THE SALE HEARING OR THEREAFTER, ANY SUCH OBJECTION TO THE RELIEF REQUESTED IN THE MOTION, THE CONSUMMATION OF ANY APPLICABLE SALE TRANSACTION, INCLUDING THE SALE OF ANY ASSETS TO ONE OR MORE SUCCESSFUL BIDDER(S) FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO SECTION 363(f) OF THE BANKRUPTCY CODE BY A SUCCESSFUL BIDDER OR THE TERMS OF ANY STALKING HORSE AGREEMENT OR OTHER ASSET PURCHASE AGREEMENT EXECUTED BY THE DEBTORS.**

Dated: _____, 2022 **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/*_____
Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Mary F. Caloway (DE Bar No. 3059)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
        tcairns@pszjlaw.com
        mcaloway@pszjlaw.com

-and -

**DENTONS US LLP**

Samuel R. Maizel
Tania M. Moyron
601 S. Figueroa Street, #2500
Los Angeles, CA  90017
Telephone:  (213) 623-9300
Email:  samuel.maizel@dentons.com
        tania.moyron@dentons.com

-and-

**DENTONS US LLP**

David F. Cook
1900 K Street, NW
Washington, DC  20006
Telephone:  (202) 496-7500
Email:  david.f.cook@dentons.com

*Counsel for Debtors and Debtors in Possession*

## **EXHIBIT 3**

**Assumption and Assignment Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FIRST GUARANTY MORTGAGE | ) | Case No. 22-10584 (CTG) |
| CORPORATION, *et al.,*[1] | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

## NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION
## AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
## LEASES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL ASSETS

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On September ___, 2022, the above-captioned debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") filed with the United States Bankruptcy Court for the District of Delaware (the "Court") a motion [Docket No. _____] (the "Motion") seeking entry of: (a) an order (the "Bidding Procedures Order") (i) approving bidding procedures, substantially in the form attached to the Bidding Procedures Order as Exhibit 1 (the "Bidding Procedures"), to be used in connection with the sale (the "Sale") of one or more groups of the Debtors' assets or substantially all of the Debtors' assets (together, the "Assets") to one or more bidders (each, a "Sale Transaction"), (ii) authorizing the Debtor to designate a Stalking Horse Bidder and provide Bid Protections in accordance with the Stalking Horse Designation Procedures, (iii) scheduling (A) an auction of the Assets (the "Auction"), and scheduling the hearing to approve the Sale (the "Sale Hearing"), (iv) approving the form and manner of notice of the proposed Bidding  Procedures, the Auction, and the Sale Hearing, substantially in the form attached to the Bidding Procedures Order as Exhibit 2 (the "Sale Notice"), (v) authorizing procedures governing the assumption and assignment of certain executory contracts and unexpired leases (the "Contracts") in connection with any Sale Transaction (the "Assumption and Assignment Procedures"), (vi) approving the form and manner of notice to each relevant non-debtor counterparty to a Contract (each, a "Counterparty") of (A) the Debtor's calculation of the amount necessary to cure any defaults under an applicable Contract (the "Cure Costs") and (B) certain other information regarding the potential assumption and assignment of Contracts in connection with the Sale Transaction, substantially in the form attached to the Bidding Procedures Order as Exhibit 3 (the "Assumption and Assignment Notice"); (b) an order or orders (each a "Sale Order"), (a) authorizing the sale or sales of the Assets free and clear of all liens, claims, interests, and encumbrances, except certain assumed liabilities and permitted encumbrances as determined by the Debtors and the Successful Bidder (as defined below), with

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  First Guaranty Mortgage Corporation (9575); and Maverick II Holdings, LLC (5621). The Debtors' mailing address is 5800 Tennyson Parkway, Suite 450, Plano, TX 75024.

liens to attach to the proceeds of the sale or sales, (ii) authorizing the assumption and assignment of certain Contracts; and (iii) granting related relief.

On September ___, 2022, the Court entered the Bidding Procedures Order [Docket No. [●]].

**You are receiving this Notice because you may be a Counterparty to a Contract of the Debtors that may be assumed and assigned to a Successful Bidder for the Debtors' Assets.**

## CURE COSTS

In accordance with the Assumption and Assignment Procedures and the Bidding Procedures Order, the Debtors may, in connection with a Sale Transaction with a Successful Bidder at the Auction, seek to assume and assign to the Successful Bidder certain of their Contracts. Each of the Contracts that potentially could be assumed and assigned in connection with a Sale Transaction, together with the Debtors' calculation of Cure Costs with respect to such Contracts, is set forth on <u>Schedule 1</u> hereto. The inclusion of any Contract on Schedule 1 does not constitute an admission by the Debtors or any other party that such Contract is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code or require or guarantee that such Contract ultimately will be assumed or assigned. All rights of the Debtors with respect thereto are reserved.

## CURE OBJECTIONS

### A.    Cure Objection Deadline

Any Counterparty to a Contract that wishes to object to the Debtors' proposed Cure Costs or assumption and assignment on any basis (each such objection, a "<u>Contract Objection</u>") shall file with the Court and serve on the Objection Notice Parties its Cure Objection, which must state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof, by no later than **14 days after service of this Notice** (the "<u>Contract Objection Deadline</u>").

### B.    Resolution of Cure Objections

The Debtors and the objecting Counterparty shall first confer in good faith to attempt to resolve the Contract Objection without Court intervention. If the parties are unable to consensually resolve the Contract Objection prior to the commencement of the Sale Hearing, the Court shall make all necessary determinations relating to the applicable Cure Costs or assumption and assignment and the Contract Objection at a hearing scheduled pursuant to the following paragraph. If a Contract Objection is resolved in a manner that is not in the best interests of the Debtors and their estates, whether or not such resolution occurs prior to or after the closing of the applicable Sale Transaction (subject to the terms of the applicable Sale Transaction), the Debtors may determine that any Contract subject to such resolved Contract Objection will no longer be assumed and assigned pursuant to the applicable Sale (subject to the terms of the applicable Sale Transaction). All other objections to the proposed assumption and assignment of the Debtors' right, title and interest in, to and under a Contract will be heard at the Sale Hearing.

### C.      Adjourned Cure Objections

If a timely filed Contract Objection cannot otherwise be resolved by the parties, the Contract Objection may be heard at the Sale Hearing, or, at the Debtors' option, be adjourned to a subsequent hearing (each such Contract Objection, an "Adjourned Contract Objection"); provided, that, the determination of whether a Contract Objection may be heard at the Sale Hearing is in the Debtors' and the Court's discretion.  An Adjourned Contract Objection may be resolved after the closing date of the applicable Sale.  Upon resolution of an Adjourned Contract Objection and the payment of the applicable cure amount or resolution of the assumption and assignment issue, if any, the applicable Contract that was the subject of such Adjourned Contract Objection shall, as applicable, be deemed assumed and assigned to the applicable Successful Bidder as of the closing date of the applicable Sale.

**IF A COUNTERPARTY FAILS TO FILE WITH THE COURT AND SERVE ON THE OBJECTION NOTICE PARTIES A TIMELY CONTRACT OBJECTION, THE COUNTERPARTY FOREVER SHALL BE BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO THE COST TO CURE ANY DEFAULTS UNDER THE APPLICABLE CONTRACT AND SHALL BE DEEMED TO HAVE CONSENTED TO THE ASSUMPTION AND ASSIGNMENT OF THE CONTRACT.  THE CURE COSTS SET FORTH IN THE APPLICABLE ASSUMPTION AND ASSIGNMENT NOTICE SHALL BE CONTROLLING AND WILL BE THE ONLY AMOUNT NECESSARY TO CURE OUTSTANDING DEFAULTS UNDER THE CONTRACT AND SATISFY THE REQUIREMENTS OF SECTION 365(B) OF THE BANKRUPTCY CODE, AND THE COUNTERPARTY TO THE CONTRACT SHALL BE BOUND BY AND DEEMED TO HAVE CONSENTED TO THE CURE COSTS.**

### NOTICE OF AUCTION RESULTS

The Auction, if required, will be conducted on **October 20, 2022, at 10:00 a.m. (prevailing Eastern Time)**, virtually through Zoom, or, if permitted, at the offices of Pachulski Stang Ziehl & Jones, LLP, 919 N. Market Street, 17th Floor, Wilmington, Delaware, 19801, or at such other time and location as designated by the Debtors, after providing notice to the Sale Notice Parties; provided, however, the Debtors shall have the right to hold the Auction remotely, including telephonically or by other electronic means (including, without limitation, video conferencing) as the Debtors may choose in their sole discretion so as to comply with all applicable federal, state and local laws, orders, ordinances, guidelines and guidance, including any COVID-19 related guidelines.  If held, the Auction proceedings will be transcribed and/or video recorded.

By the later of (a) **October 21, 2022** and (b) one business day after the conclusion of the Auction, the Debtors will file with the Court, serve on the Sale Notice Parties and cause to be published on the KCC Website, at https://www.kccllc.net/FGMC, a notice setting forth the results of the Auction (the "Notice of Auction Results"), which will (a) identify each Successful Bidder and each Backup Bidder, (b) include a copy of each Successful Bid and each Backup Bid or a summary of the material terms of such bids, including any proposed assumption and assignment of Contracts contemplated thereby, and (c) set forth the Post-Auction Objection Deadline, the date, time and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise the Sale Notice Parties of the outcome of the Auction.

## ADEQUATE ASSURANCE OBJECTIONS

### A.    Adequate Assurance Objection Deadline

Any Counterparty to a Contract that wishes to object to the proposed assumption and assignment of the Contract, the subject of which objection is a Successful Bidder's (or any other relevant assignee's) proposed form of adequate assurance of future performance (each such objection, an "Adequate Assurance Objection"), shall file with the Court and serve on the Objection Notice Parties an Adequate Assurance Objection, which must state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof, by no later than the Post-Auction Objection Deadline of the **October 24, 2022, at 4:00 p.m. (prevailing Eastern Time)** (the "Adequate Assurance Objection Deadline").

### B.    Resolution of Adequate Assurance Objections

The Debtors and the objecting Counterparty shall first confer in good faith to attempt to resolve the Adequate Assurance Objection without Court intervention.  If the parties are unable to consensually resolve the Adequate Assurance Objection prior to the commencement of the Sale Hearing, the Adequate Assurance Objection and all issues of adequate assurance of future performance of the applicable Successful Bidder shall be determined by the Court at the Sale Hearing.

**IF A COUNTERPARTY FAILS TO FILE WITH THE COURT AND SERVE ON THE OBJECTION NOTICE PARTIES A TIMELY ADEQUATE ASSURANCE OBJECTION, THE COUNTERPARTY FOREVER SHALL BE BARRED FROM ASSERTING ANY OBJECTION TO THE ASSUMPTION AND/OR ASSIGNMENT OF THE APPLICABLE CONTRACT WITH REGARD TO ADEQUATE ASSURANCE OF FUTURE PERFORMANCE.  THE APPLICABLE SUCCESSFUL BIDDER (OR ANY OTHER RELEVANT ASSIGNEE) SHALL BE DEEMED TO HAVE PROVIDED ADEQUATE ASSURANCE OF FUTURE PERFORMANCE WITH RESPECT TO THE CONTRACT IN ACCORDANCE WITH BANKRUPTCY CODE SECTIONS 365(b)(1)(C), 365(f)(2)(B) AND, IF APPLICABLE, 365(b)(3), NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE CONTRACT OR ANY OTHER DOCUMENT.**

## SALE HEARING

The Sale Hearing shall take place on **October 31, 2022, at 10:00 a.m. (prevailing Eastern Time**) before the Honorable Craig T. Goldblatt, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 N. Market Street, Wilmington, Delaware 19801.

## ADDITIONAL INFORMATION

Copies of the Motion, the Bidding Procedures Order and the Bidding Procedures may be obtained free of charge by visiting the KCC Website at: https://www.kccllc.net/FGMC.

Dated: _____, 2022 **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/*_____
Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Mary F. Caloway (DE Bar No. 3059)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
        tcairns@pszjlaw.com
        mcaloway@pszjlaw.com

-and -

**DENTONS US LLP**

Samuel R. Maizel
Tania M. Moyron
601 S. Figueroa Street, #2500
Los Angeles, CA  90017
Telephone:  (213) 623-9300
Email:  samuel.maizel@dentons.com
        tania.moyron@dentons.com

-and-

**DENTONS US LLP**

David F. Cook
1900 K Street, NW
Washington, DC  20006
Telephone:  (202) 496-7500
Email:  david.f.cook@dentons.com

*Counsel for Debtors and Debtors in Possession*

## Schedule 1