# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| FIRST GUARANTY MORTGAGE ) | Case No. 22-10584 (CTG) |
| CORPORATION, *et al.*,[1] ) | |
| ) | (Jointly Administered) |
| Debtors. ) | |

## DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF STRATEGIC MORTGAGE FINANCE GROUP, LLC AS INVESTMENT BANKER TO THE DEBTORS

The above-captioned debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases hereby apply to the Court (the "Application") for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 327 and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (i) authorizing them to employ and retain Strategic Mortgage Finance Group, LLC ("STRATMOR") as their investment banker in accordance with the terms and conditions set forth in that certain engagement agreement, dated as of September 8, 2022 (the "Engagement Agreement"), a copy of which is attached as Exhibit 1 to the Proposed Order, (ii) approving the terms of STRATMOR's employment and retention, including the fee and expense structure and the indemnification,

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: First Guaranty Mortgage Corporation (9575); and Maverick II Holdings, LLC (5621). The Debtors' mailing address is 5800 Tennyson Parkway, Suite 450, Plano, TX 75024.

contribution, reimbursement, and related provisions set forth in the Engagement Agreement, (iii) waiving certain informational requirements, and (iv) granting such other and further relief as is just and proper. In support of this Application, the Debtors submit the Declaration of Garth Graham, a Senior Partner of STRATMOR (the "Declaration"), which is attached hereto as **Exhibit B** and incorporated herein and further respectfully states as follows:

## JURISDICTION AND VENUE

1. The district court has jurisdiction under 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157 pursuant to the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.

2. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. § 1408.

4. The bases for the relief sought herein are sections 327 and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 5002, and Local Rules 2014-1 and 2016-2.

## BACKGROUND

5. On June 30, 2022 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and have continued to operate and manage their

business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtors' chapter 11 cases. On July 14, 2022, the Office of the United States Trustee appointed an official committee of unsecured creditors in these chapter 11 cases (the "Committee").

6. On September 7, 2022, the Debtors filed the *Motion of the Debtors for Entry of an Order: (A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Enter Into One or More Stalking Horse Agreements and to Provide Bid Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (F) Granting Related Relief* [D.I. 406] (the "Sale Procedures Motion"). By the Sales Procedures Motion, the Debtors seek to establish bidding procedures for the potential sale (the "Sale") of all or substantially all of their assets or a sub-set thereof. A hearing on the Sale Procedures Motion is currently set for September 28, 2022 at 10:00 a.m. (prevailing Eastern time).

7. The factual background regarding the Debtors, including their current and historical business operations and the events precipitating their chapter 11 filings, is set forth in detail in the *Declaration of Aaron Samples in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 19] (the "First Day Declaration") filed on the Petition Date and fully incorporated herein by reference.

**RELIEF REQUESTED**

8. The Debtors seek entry of the Order, effective as of September 8, 2022, (i) authorizing the Debtors to employ and retain STRATMOR as their investment banker in accordance with the Engagement Agreement, (ii) approving the terms of STRATMOR's

3

employment and retention, including the fee and expense structure and the indemnification, contribution, reimbursement, and related provisions set forth in the Engagement Agreement, (iii) waiving certain informational requirements, and (iv) granting such other and further relief as is just and proper

## RETENTION OF STRATMOR

A. **STRATMOR's Qualifications**

9. The Debtors seek to retain STRATMOR as their investment banker because, among other things, STRATMOR has extensive experience and an excellent reputation in providing high quality services to debtors and creditors in mortgage-related financial restructurings and bankruptcy proceedings.

10. STRATMOR is a data-driven, mortgage advisory firm with mortgage advisors who guide our lenders and vendor clients alike to make smart strategic decisions, solve complex challenges, streamline operations, improve the borrower experience, increase profitability and accelerate growth. STRATMOR offers mortgage companies: (a) proprietary data across a wide spectrum of industry performance metrics, issues and developments; (b) professional services by experienced mortgage advisors supported by this data that enables STRATMOR to offer deeper insights into the ever-evolving mortgage industry; and (c) an unwavering commitment to objectivity, competence and integrity.

11. STRATMOR works with hundreds of the top performing mortgage banking clients in the industry and has aggregated the industry's best data base related to industry participants and financial and operational performance metrics. In addition, STRATMOR currently is working with over 20 mortgage banking entities who are seeking to acquire or sell their companies. These relationships are covered by strict non-disclosure

agreements that prevent a formal listing in this document.  STRATMOR is able to share publicly its involvement in the following completed transactions: Atlantic Home Loans Sale to Guaranteed Rate (July, 2021); Meridian Home Loans Sale to Everett Financial (December 31, 2020); Guild Mortgage purchase of Residential Mortgage Services (July 2021); Sale of Go Mortgage to GSF Mortgage Services   (November 2021); and HomePoint (Correspondent Division) sale to Planet Home Lending (May 2022).

12. The resources, capabilities and experience of STRATMOR in advising the Debtors are crucial to enabling the Debtors to implement a successful Sale.  An investment banker with a deep bench of experience, such as STRATMOR, fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals.

**B.     Services to Be Provided by STRATMOR**

13. The parties have entered into the Engagement Agreement, which governs the relationship between the Debtors and STRATMOR. The terms and conditions of the Engagement Agreement were negotiated at arm's length and in good faith between the Debtors and STRATMOR and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement.  Under the Engagement Agreement, in consideration for the compensation contemplated thereby, STRATMOR has provided and has agreed to provide the following services:[2]

> a)     commence marketing for sale certain remaining assets of the Debtors, including, but limited to: the "shell" entity containing Fannie Mae and Freddie Mac Seller/Servicer licenses; State licenses used by the Debtors

---

[2] The summaries provided in this Application are provided for convenience only. In the event of any inconsistency between any summary and the terms and provisions of the Engagement Agreement, the terms of the Engagement Agreement shall control. Capitalized terms used but not otherwise defined in the summaries of the Engagement Agreement contained herein shall have the meanings ascribed to such terms in the Engagement Agreement. In the event of any inconsistency between any summary and the terms and provisions of the Proposed Order, the terms of the Proposed Order shall control.

        to operate their business (collectively, the "Assets");

   b)   identifying prospective buyers and managing the process to solicit bids for review by the Debtors and assist in the process through closing of the transaction as outlined in the Sale Procedure Motion;

   c)   assisting in the development and distribution of selected information, documents and other materials, including, if appropriate, advising the Debtors in the preparation of an offering memorandum;

   d)   assisting the Debtors in evaluating indications of interest and proposals regarding any transaction(s) from current and / or potential lenders, equity investors, acquirers and / or strategic partners;

   e)   assisting the Debtors with the negotiation of any transaction(s), including participation in negotiations with creditors and other parties involved in any transaction(s);

   f)   providing expert advice and testimony regarding financial matters related to any transaction(s), if necessary;

   g)   attending meetings of the Board of Directors, creditor groups, official constituencies and other interested parties, as the Debtors and STRATMOR mutually agree; and

   h)   providing such other investment banking services as may be agreed upon by STRATMOR and the Debtors.

14.    The Debtors believe that STRATMOR's services will not duplicate the services that other professionals will be providing to the Debtors in these chapter 11 cases. STRATMOR will use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid unnecessary duplication of services.

**C.**    **STRATMOR's Compensation**

15.    In consideration of the services to be provided by STRATMOR, and as more fully described in the Engagement Agreement, subject to the Court's approval, the Debtors have agreed to pay STRATMOR the following proposed compensation, which is set forth in the Engagement Agreement (the "Fee and Expense Structure"):

   a)  **Monthly Fee.** The Debtors shall make monthly payments to STRATMOR of $15,000 beginning from the execution of the Engagement

6

        Agreement and continuing through the closing of a transaction with a seller (with the first three months paid in advance);

    b) **Transaction Fee.** The Debtors shall pay STRATMOR $250,000 at Closing of a transaction pursuant to the process set forth in Section II of the Engagement Agreement; and

    c) **Termination Fee.** The Debtors shall pay STRATMOR $50,000 if qualified bids are received and the Debtors do NOT proceed with a transaction for any reason.

**D.**    **The Fee and Expense Structure is Appropriate and Reasonable and Should be Approved under Section 328(a) of the Bankruptcy Code**

16.    The Debtors believe that the Fee and Expense Structure is comparable to those generally charged by investment bankers of similar stature to STRATMOR for comparable engagements, both in and out of bankruptcy proceedings, and reflects a balance between a fixed monthly fee and a contingency amount tied to the consummation and closing of the transactions and services contemplated by the Debtors and STRATMOR in the Engagement Agreement.

17.    The Fee and Expense Structure is consistent with STRATMOR's normal and customary billing practices for comparably sized and complex cases and transactions, both in and out of bankruptcy proceedings, involving the services to be provided in connection with these chapter 11 cases. Moreover, the Fee and Expense Structure is consistent with and typical of arrangements entered into by STRATMOR and other investment banks in connection with the rendering of comparable services to clients such as the Debtors.

18.    STRATMOR's knowledge of the mortgage market, financing skills and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of STRATMOR's engagement, were important factors in determining the Fee and Expense

Structure. The ultimate benefit to the Debtors derived from the services provided by STRATMOR pursuant to the Engagement Agreement cannot be measured by a reference to the number of hours expended by STRATMOR's professionals.

19. The Debtors and STRATMOR negotiated the Fee and Expense Structure to function as an interrelated, integrated unit corresponding to STRATMOR's overall services. It would be contrary to the intention of STRATMOR and the Debtors for any isolated component of the Fee and Expense Structure to be treated as sufficient consideration for any isolated portion of STRATMOR's services. Instead, the Debtors and STRATMOR intend that STRATMOR's services be considered as a whole for which STRATMOR is to be compensated by the Fee and Expense Structure in its entirety.

20. In light of the foregoing and given the numerous issues that STRATMOR may be required to address in the performance of its services pursuant to the Engagement Agreement, STRATMOR's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for STRATMOR's services for both in court and out of court engagements of this nature, the Debtors believe that the Fee and Expense Structure is fair and reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

**E.    Record Keeping and Applications for Compensation**

21. It is not the general practice of investment banking firms, including STRATMOR, to keep detailed time records similar to those customarily kept by attorneys and required by Local Rule 2016-2. Because STRATMOR does not ordinarily maintain contemporaneous time records or provide or conform to a schedule of hourly rates for professional services, the Debtors request that STRATMOR be excused from compliance with such requirements and instead

should only be required to submit, in a summary format, a reasonably detailed description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors.  Bankruptcy courts in this and other jurisdictions have approved similar waivers to the one requested in this Application.  *See*, *e.g.*, *In re M&G USA Corp.*, Case No. 17-12307 (BLS) (Bankr. D. Del. Dec. 1, 2017); *In re GenOn Energy, Inc.*, No. 17-33695 (DRJ) (Bankr. S.D. Tex, July 14, 2017); *In re rue21, inc.*, No. 17-22045 (GLT) (Bankr. W.D. Pa. June 28, 2017); *In re Answers Holdings, Inc.*, No. 17-10496 (SMB) (Bankr. S.D.N.Y. Apr. 7, 2017); *In re Ultra Petroleum Corp.*, No. 16-32202 (MI) (Bankr. S.D. Tex. June 20, 2016); *In re Sports Auth. Holdings, Inc.*, No. 16-10527 (MFW) (Bankr. D. Del. Mar. 29, 2016).

22. STRATMOR will also maintain reasonably detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.

23. STRATMOR's applications for compensation and expense reimbursement will be paid by the Debtors pursuant to the terms of the Engagement Agreement and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures established by the Court.

**F.    STRATMOR's Disinterestedness**

24. To the best of the Debtors' knowledge and belief and except to the extent disclosed herein and in the Declaration, STRATMOR: (i) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; and (ii) does not hold or represent any interest materially adverse to the Debtors or their estates.

25. As set forth in further detail in the Declaration, STRATMOR may have certain connections with creditors and other parties in interest in these chapter 11 cases. The Debtors and

STRATMOR do not believe that any of these connections constitute an interest materially adverse to the interest of the estate or of any class of creditors or equity holders in these chapter 11 cases.

26. To the extent STRATMOR discovers any material facts bearing on the matters described herein during the period of STRATMOR's retention, STRATMOR has undertaken to amend and supplement the information contained in this Application and the Declaration to disclose such facts.

27. STRATMOR did not receive any payments from the Debtors preceding the Petition Date.

28. As set forth in the Declaration, STRATMOR has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code. If any such agreement is entered into, STRATMOR has undertaken to amend and supplement the information contained in this Application and the Declaration to disclose the terms of any such agreement.

29. No promises have been received by STRATMOR, or by any professionals engaged hereunder, as to compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code.

**G.     Indemnification Provisions**

30. Among other things, the Engagement Agreement provides that the Debtors shall indemnify STRATMOR against any and all losses, claims, damages, or liabilities to which the STRATMOR may become subject in connection with the Engagement Agreement, except to the extent such losses are finally judicially determined to have resulted primarily from STRATMOR's gross negligence or willful misconduct.

31. The Debtors and STRATMOR believe that the indemnification, contribution, reimbursement, and other related provisions contained in the Engagement Agreement are customary and reasonable for investment banking engagements, both in and out of court, and, as modified by the Proposed Order, reflect the qualifications and limitations on indemnification provisions that are customary in this district and other jurisdictions.

32. The terms and conditions of the Engagement Agreement, including these provisions, were negotiated by the Debtors and STRATMOR at arm's length and in good faith. The Debtors respectfully submit that such provisions, viewed in conjunction with the other terms of STRATMOR's proposed retention, are reasonable and in the best interests of the Debtors, their estates and creditors in light of the fact that the Debtors require STRATMOR's services in these chapter 11 cases.

## BASIS FOR RELIEF

33. The Debtors seek authority to employ and retain STRATMOR as their investment banker under section 327 of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [Debtors] in carrying out the [Debtors'] duties under this title." 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

34. In addition, the Debtors seek approval of the Engagement Agreement (including the Fee and Expense Structure and the indemnification, contribution, reimbursement and other

related provisions) pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 328 of the Bankruptcy Code permits the compensation of professionals, including financial advisors and investment bankers, on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present
>
> § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* at 862 (citations omitted), *cited in Riker, Danzig, Scherer, Hyland & Perretti LLP v. Official Comm. of Unsecured Creditors (In re Smart World Techs. LLC)*, 383 B.R. 869, 874 (S.D.N.Y. 2008).

35.     The Engagement Agreement appropriately reflects (i) the nature and scope of services to be provided by STRATMOR, (ii) STRATMOR's substantial experience with respect to investment banking services related to the mortgage industry, and (iii) the Fee and Expense Structures typically utilized by STRATMOR and other leading investment bankers.

36. Similar fixed and contingency fee arrangements have been approved and implemented by courts in this and other districts in other large chapter 11 cases. *See*, *e.g.*, *In re Cloud Peak Energy Inc.*, Case No. 19-11047 (KG) (Bankr. D. Del. June 12, 2019); *In re M&G USA Corp.*, Case No. 17-12307 (BLS) (Bankr. D. Del. Dec. 1, 2017); *In re GenOn Energy, Inc.*, No. 17-33695 (DRJ) (Bankr. S.D. Tex, July 14, 2017); *In re rue21, Inc.*, No. 17-22045 (GLT) (Bankr. W.D. Pa. June 28, 2017); *In re Answers Holdings, Inc.*, No. 17-10496 (SMB) (Bankr. S.D.N.Y. Apr. 7, 2017); *In re Ultra Petroleum Corp.*, No. 16-32202 (MI) (Bankr. S.D. Tex. June 20, 2016); *In re Sports Auth. Holdings, Inc.*, No. 16-10527 (MFW) (Bankr. D. Del. Mar. 29, 2016).

## NOTICE

37. The Debtors will provide notice of this Application to the following parties, or their counsel, if known: (i) the U.S. Trustee; (ii) the Committee; and (iii) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE, for the reasons set forth herein, in the Declaration, the Debtors respectfully request that this Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in the Application and such other and further relief as is just and proper.

Dated:  September 12, 2022

Respectfully submitted,

First Guaranty Mortgage Corporation, *et al.*,
Debtors and Debtors in Possession

 */s/ Aaron Samples*
Aaron Samples
Chief Executive Officer