**<u>EXHIBIT A</u>**

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FIRST GUARANTY MORTGAGE | ) | Case No. 22-10584 (CTG) |
| CORPORATION, *et al.,*[1] | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | **Re: Docket No. _____** |
| | ) | |

**ORDER PURSUANT TO 11 U.S.C. §§ 327 AND 328(a), FED. R. BANKR. P. 2014 AND 5002, AND LOCAL RULES 2014-1 AND 2016-2 AUTHORIZING RETENTION AND EMPLOYMENT OF STRATMOR CAPITAL, INC. AS INVESTMENT BANKER TO THE DEBTORS, EFFECTIVE AS SEPTEMBER 8, 2022**

Upon the application (the "Application")[2] of the debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases for entry of an order pursuant to sections 327 and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 5002, and Local Rules 2014-1 and 2016-2, authorizing the employment and retention of STRATMOR Capital, Inc. ("STRATMOR") as its investment banker pursuant to the terms of the Engagement Agreement, dated as of September 8, 2022 (the "Engagement Agreement"), a copy of which is attached hereto as Exhibit 1; and the Court having considered the Application and the Declaration; and the district court having jurisdiction under 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157 pursuant to the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C § 157(b)(2), and that this Court may

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  First Guaranty Mortgage Corporation (9575); and Maverick II Holdings, LLC (5621). The Debtors' mailing address is 5800 Tennyson Parkway, Suite 450, Plano, TX 75024.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to those terms in the Application.

enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation, and good and sufficient cause appearing therefore, it is hereby

ORDERED, ADJUDGED AND DECREED THAT:

1. The Application is granted as set forth herein.

2. The Debtors are authorized to retain and employ STRATMOR as their investment banker pursuant to sections 327 and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 5002, and Local Rules 2014-1 and 2016-2, on the terms and conditions set forth in the Engagement Agreement and the Application, and are directed to perform their obligations set forth therein, except as expressly modified herein.

3. Notwithstanding anything in the Application to the contrary, STRATMOR is authorized to render the services set forth in the Application and the Engagement Agreement with the Debtors.

4. None of the fees payable to STRATMOR shall constitute a "bonus" or fee enhancement under applicable law.

5. The compensation, fees, and expenses payable to STRATMOR pursuant to the Engagement Agreement, together with the indemnification, reimbursement of expenses, and contribution obligations owed to STRATMOR under the Engagement Agreement, shall be subject to review only pursuant to the standard of review set forth in section 328(a) of the

Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the

Bankruptcy Code or any other standard of review.

6.      Notwithstanding the preceding paragraph, the U.S. Trustee shall retain the right to

object to the compensation, fees, and expenses to be paid to STRATMOR pursuant to the

Application and the Engagement Agreement, including the Monthly Fee and the Transaction

Fee, based on the reasonableness standard provided for in section 330 of the Bankruptcy Code,

and the Court shall consider any such objection by the U.S. Trustee under section 330 of the

Bankruptcy Code. This Order and the record relating to the Court's consideration of the

Application shall not prejudice or otherwise affect the rights of the U.S. Trustee to challenge the

reasonableness of STRATMOR's compensation, fees, and expenses under the standard set forth

in the preceding sentence. Accordingly, nothing in this Order or such record shall constitute a

finding of fact or conclusion of law binding the U.S. Trustee, on appeal or otherwise, with

respect to the reasonableness of STRATMOR's fees.

7.      The Debtors are authorized to compensate and reimburse STRATMOR pursuant

to the terms of the Engagement Agreement, subject to the procedures set forth in the Bankruptcy

Code, the Bankruptcy Rules, the Local Rules, and any other applicable orders of this Court.

8.      In light of the services to be provided by STRATMOR and the compensation

structure in the Engagement Agreement, STRATMOR and its professionals shall be excused

from: (i) any requirement to maintain or provide detailed time records in accordance with

Bankruptcy Rule 2016(a), Local Rule 2016-2, and the United States Trustee Fee Guidelines; and

(ii) conforming with a schedule of hourly rates for its professionals. Instead, notwithstanding that

STRATMOR does not charge for its services on an hourly basis, STRATMOR will nonetheless

maintain reasonably detailed time records containing summary descriptions of those services

rendered for the Debtors, and the individuals who provided those services, and will present such records together with its fee applications filed with the Court.

9.      To the extent requested in the Application, STRATMOR is granted a waiver with respect to the information requirements contained in Local Rule 2016-2(d).

10.      The Debtors shall be bound by the indemnification, contribution, reimbursement and exculpation provisions set forth in the Engagement Agreement, subject during the pendency of these cases to the following:

a.  Subject to the provisions of subparagraphs (b) and (c) below, the Debtors are authorized to indemnify, and shall indemnify, STRATMOR for any claims arising from, related to, or in connection with the services to be provided by STRATMOR as specified in the Application, but not for any claim arising from, related to, or in connection with STRATMOR's post-petition performance of any other services (other than those in connection with the engagement), unless such post- petition services and indemnification therefor are approved by this Court;

b.  The Debtors shall have no obligation to indemnify STRATMOR, or provide contribution or reimbursement to STRATMOR, for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen from such STRATMOR's bad faith, gross negligence or willful misconduct, (ii)  for a contractual dispute in which the Debtors allege the breach of STRATMOR's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003), or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing pursuant to subparagraph (c) infra, to be a claim or expense for which STRATMOR is not entitled to receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement as modified by this Order; and

c.  If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, STRATMOR believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Agreement (as modified by this Order), including, without limitation, the advancement of defense costs, STRATMOR must file an application therefor in this Court, and the Debtors may not pay any such amounts to STRATMOR before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the

period during which the Court shall have jurisdiction over any request for fees and expenses by STRATMOR for indemnification, contribution, or reimbursement, and not as a provision limiting the duration of the Debtors' obligation to indemnify STRATMOR.

11.     STRATMOR shall use its reasonable efforts to avoid any unnecessary duplication of services provided by retained professionals in these cases.

12.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

13.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry, notwithstanding the possible applicability of Bankruptcy Rule 6004, 7062, or 9014.

14.     The relief granted herein shall be binding upon any chapter 11 trustee appointed in these chapter 11 cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of these chapter 11 cases to cases under chapter 7.

15.     To the extent that this Order is inconsistent with the Engagement Agreement, the terms of this Order shall govern.

16.     This Court shall retain jurisdiction to construe and enforce the terms of this Order.

# **EXHIBIT 1**

### **Engagement Agreement**

DocuSign Envelope ID: C55BBC59-BE38-4C2F-878B-CE36265B3719



Powering Performance. Together.

# ENGAGEMENT LETTER

STRATMOR Group Agreement to Provide Transaction
Services to First Guaranty Mortgage Corporation

September 8, 2022

DocuSign Envelope ID: C55BBC59-BE38-4C2F-878B-CE36265B3719



This Engagement Letter **("Agreement")** entered into as of the 8th day of September, 2022 ("**Effective Date**"), by and between **Strategic Mortgage Finance Group, LLC**, a Georgia limited liability company, (hereinafter **"STRATMOR"**), whose principal place of business is located at 5445 DTC Parkway, Penthouse 4, Greenwood Village, CO 80111, and First Guaranty Mortgage Corporation, (hereinafter referred to as "FGMC") whose principal place of business is 5800 Tennyson Parkway, Plano TX, 75024 referred to herein as the "Parties" and each a "Party".

STRATMOR and FGMC mutually agree to enter this engagement with scope and terms as summarized below.

## I.    Introduction

FGMC recently spoke with STRATMOR Group to discuss opportunities for FGMC to complete a sale of the business through a competitive bidding process. This process will be approved by the Bankruptcy courts, with the purpose of maximizing the money available to settle the debts associated with the business. This process is being managed through a filed Chapter 11 Bankruptcy process. STRATMOR has been asked to handle the sale of certain remaining assets of the business, including the "shell" entity containing Fannie Mae and Freddie Mac Seller / Servicer licenses and, State licenses used by FGMC to operate their business. It is our understanding that these remaining assets of FGMC are being sold and the related liability, if any, will be mostly extinguished through the Bankruptcy process. Thus, STRATMOR's assumption is to commence the marketing and transaction advisory services for the sale of this "shell" as an asset that is unencumbered and devoid of any contingent liability.

STRATMOR is actively representing buyers and sellers in the mortgage industry and is offering to provide certain services to FGMC on an exclusive basis with respect to the potential sale of the entity. Note, there are many companies currently entering the market for sale, and STRATMOR has advised FGMC that the M&A market is currently in an active phase. In fact, the market for mortgage M&A activity has grown substantially,



©2022 STRATMOR Group. All Rights Reserved. Proprietary and Confidential Information – Not for External Distribution

DocuSign Envelope ID: C55BBC59-BE38-4C2F-878B-CE36265B3719



forecasted at 140% YoY, and that growth is expected to continue.

STRATMOR has been cultivating relationships with potential M&A buyers, including entities that have specifically stated a desire for a "shell entity". STRATMOR's plan will be to reach out to these buyers and actively solicit other potential buyers of the FGMC shell. We understand the time deadlines associated with the process as described in the Bid Procedure Motion filed on September 7, 2022.

The services being provided by STRATMOR are proposed as follows:

## II.    Scope and Term of the Engagement

As is customary in such an advisory role in representing the buyer, STRATMOR will assume responsibility for, and perform, at FGMC's direction, the following tasks:

- STRATMOR's role will be to identify prospects and manage the process to solicit bids for review by FGMC and assist in the process through closing of the transaction as outlined in the Bid Procedure Motion filed on September 7, 2022.
- STRATMOR makes no assurances or representations regarding the value of the selling entity, or the likelihood of success based on the compressed timeline.
- STRATMOR will commence the work immediately, including a review with FGMC for the specific assets being contemplated as part of the transaction.

The timeline and steps are shown below:

| 1 — Preparation (1 weeks) | 2 — Potential Buyer Interaction (2-3 weeks) | 3 — Letter of Intent and Detailed Diligence (1 – 4 weeks) | 4 — Signing (2 – 3 weeks) |
|---|---|---|---|
| 1. Preparation of key data and information for review<br>2. Preparation of marketing materials (teaser, CIM, financial forecast, etc.)<br>3. Creation of virtual data room<br>4. Build priority and broader outreach lists for potential buyers<br>5. Contact any existing FGMC prospects<br>6. Executive decision on go forward | 1. Sign NDA to protect confidential information<br>2. Management meetings<br>3. Assess appetite, capability and timing<br>4. Determine due diligence items and process<br>5. Provide legal template (provided by FGMC) related to the big requirements<br>6. Offers submitted<br>7. Determine "Stalking Horse Bidder" | 1. Follow up round of bidding bid round<br>2. Grant additional access to diligence information<br>3. Additional management meetings and diligence sessions<br>4. Update virtual data room<br>5. Begin drafting Purchase Agreement and ancillary legal documentation (TSA) | 1. Complete confirmatory due diligence<br>2. Legal review and definitive documentation<br>3. Executive management employment terms<br>4. Execute transaction<br>5. Premium Paid |

Between steps: "Go Forward?" (after step 1), "Go Forward?" (after step 2)

DocuSign Envelope ID: C55BBC59-BE38-4C2F-878B-CE36265B3719

STRATMOR GROUP

## III. Fees and Payment Terms

STRATMOR will serve as FGMC's exclusive transaction advisor during the term of this engagement. STRATMOR's compensation arrangement is set forth below.

- **Monthly Progress Payments** of $15,000 beginning from the execution of this Engagement Letter and continuing through the closing of a transaction with a seller, pursuant to the process set forth above. (Scope and Term of the Engagement).
    - Progress payments will continue for a minimum of three months paid in advance.
    - STRATMOR's estimation is that these total payments could be between $45,000 (no bids executed and process abandoned within 90 days) and $90,000 (LOI signed within 3 months, plus 3 months for completion of the change of control approval process).
- **Transaction Success Fee** payable at Closing of a transaction with a seller pursuant to the process set forth in Section II of this Agreement (Scope and Term of the Engagement), of $250,000.
- **Termination Fee of $50,000** if qualified bids are received and FGMC does NOT proceed with a transaction for any reason.
    - If FGMC were to terminate this engagement and then subsequently be acquired by the same entity within 12 months that was identified and qualified by STRATMOR during this search engagement, then STRATMOR will be entitled to the Transaction Success Fee as summarized above as if the engagement had not been terminated.
- Under the terms of our Exclusive Seller side Engagement relationship, FGMC agrees to provide STRATMOR with the name of any Buyer Prospects under current negotiations or who have made contact with FGMC or their advisors. These Prospects will be subject to all payment and fee terms as outlined in this Engagement Agreement as if the prospect was identified by STRATMOR.
- **Legal Expenses:** Note, we assume there will NOT be excess legal requirements, and that the legal requirements are handled by FGMC and other advisors. However, any excess legal requirements or work required by the bankruptcy process other than described in the bid procedures document of September 7, 2022, will be charged at $500/hour.
- STRATMOR will be reimbursed for reasonable, documented travel expenses incurred in the execution of this Engagement; however, no travel shall be

©2022 STRATMOR Group. All Rights Reserved. Proprietary and Confidential Information – Not for External Distribution

DocuSign Envelope ID: C55BBC59-BE38-4C2F-878B-CE36265B3719



undertaken without prior written approval from FGMC, and all travel shall follow FGMC's vendor guidelines and travel policies.

## IV.   Staffing

Garth Graham and David Hrobon will have primary responsibility for execution of this proactive acquisition search engagement.

It should be noted that STRATMOR assumes that FGMC is prepared to substantially contribute to the project management tasks necessary for the due diligence and closing process. If additional project management resources are required, STRATMOR can provide those experienced resources on a time and materials basis with such additional fees to be agreed upon in writing in advance by FGMC.

## V.   Confidential Information

Each Party will use the same care and discretion to avoid disclosure of the other Party's Proprietary Information [as defined in the Mutual Non-Disclosure Agreement entered by FGMC and STRATMOR as of even date herewith (the "NDA")] as is required by the NDA. Before disclosing a Party's Proprietary Information to any other party, the disclosing Party shall ensure that there is a written non-disclosure agreement with the receiving party sufficient to require that party to treat Confidential Information in accordance with this Agreement; provided that if the Proprietary Information being disclosed belongs to FGMC, such non-disclosure agreement shall be in form and substance reasonably acceptable to FGMC. The provisions of this paragraph shall survive any termination or expiration of this Agreement.

## VI.   Disclaimer

Each party to the proposed transaction is responsible for its own due diligence. This Agreement does not create rights enforceable by any person or entity not a party hereto. All rights under this Agreement inure only to those parties expressly indemnified herein. STRATMOR is not and shall not be construed as a fiduciary of FGMC and shall have no fiduciary duties or liabilities to those affiliated with FGMC or any other person by virtue of this Agreement for STRATMOR's engagement hereunder. All fiduciary duties are hereby expressly waived.

Please note that as part of the presentation of our analysis and material associated with any seller, STRATMOR or any of its affiliates or representatives makes no representation, warranty or guaranty of any kind, express or implied, as to the accuracy, completeness or reasonableness of the information provided or any other written or oral communication

DocuSign Envelope ID: C55BBC59-BE38-4C2F-878B-CE3626583719



STRATMOR

transmitted or made available to any recipient. The Company and STRATMOR and their representatives expressly disclaim any and all liability based on or arising from, in whole or in part, such information, errors therein or omissions therefrom.

FGMC shall indemnify STRATMOR against any and all losses, claims, damages, or liabilities to which the STRATMOR may become subject in connection with this agreement, except to the extent such losses are finally judicially determined to have resulted primarily from STRATMOR's gross negligence or willful misconduct.

The Parties acknowledge that they have read this Agreement, understand it, and agree to its terms and conditions.

**Agreed and Accepted:**

| | |
|---|---|
| **Strategic Mortgage Finance Group, LLC** | **First Guaranty Mortgage Corporation** |
| a Georgia limited liability company | a Texas Limited Liability Corporation |
| By: _Garth Graham_ <br> — 68A771E243CF40E | By: _(signature)_ |
| Name: Garth Graham | Name: Aaron Samples |
| Title: Senior Partner | Title: CEO |
| Date: September 9, 2022 \| 2:20:49 PM MDT | Date: September 12, 2022 |
| garth.graham@stratmorgroup.com | |

©2022 STRATMOR Group. All Rights Reserved. Proprietary and Confidential Information – Not for External Distribution

DocuSign Envelope ID: C55BBC59-BE38-4C2F-878B-CE36265B3719



## Addendum A: STRATMOR Bios

### Garth Graham, Senior Partner

Garth Graham heads STRATMOR Group's marketing strategy and execution practice, which focuses on lead generation and lead management methods and practices primarily for the consumer direct and retail mortgage origination channels. Graham has over 25 years of experience in sales and marketing, ranging from Fortune 500 companies to successful startups, including management of two of the most successful e-commerce platforms.

As an executive with ABN-AMRO, Graham was part of the executive group and author of the 5-year strategic plan that led to the successful $9 billion sale of the mortgage company to Citigroup in March of 2007 which closed before the market downturn.

At ABN, Graham managed the mortgage.com retail mortgage and Interfirst wholesale channel ecommerce platforms. Administering an over $5M annual marketing budget, Garth was responsible for retention and cross sell activities for over 2M customers. He launched marketing campaigns in support of mortgage.com consumer portal, generating over 650,000 web site visitors per month, resulting in $22B in originations and $280M in operating profit over a 4-year period. He successfully delivered direct response rates of over 4%, with a 250% return on marketing investment.

Graham was a founder and key member of the executive management team at Mortgage.com and led the company through its dramatic expansion in the late 90s and successful IPO in 2000, before its ultimate sale to ABN AMRO.  Mortgage.com originated the first mortgage through the Internet in 1997 and was the original platform for the Quicken and Microsoft mortgage initiatives.

Graham also worked for 9 years at Chase Manhattan Mortgage, where he developed the corporate and affinity marketing programs, securing Fortune 500 accounts, including the successful sale of Union Member Mortgage Program, an exclusive relationship between Chase Mortgage and the 13 million members of the AFL-CIO.

Graham's regular columns in National Mortgage News and American Banker are widely read. He has been quoted extensively in industry periodicals, resulting in over 40 million press impressions over his career. Graham studied Economics and Computer Science at the University of Virginia and has completed Six Sigma Champion and Green Belt Training. He lives in Fort Lauderdale, FL with his wife Joan.

DocuSign Envelope ID: C55BBC59-BE38-4C2F-878B-CE36265B3719



## David Hrobon, Principal

David Hrobon is a Principal with more than 35 years' experience in mortgage banking. One of the most recognized and respected veterans of the industry, David's specialties include strategic management, mergers and acquisitions, organizational re-design, loan operations and process and performance management.  He has held sales, sales management, ops management, corporate support positions and senior and executive leadership roles over the course of his career.  His broad and extensive experience has provided him with a valuable perspective.

David began his mortgage career in 1985 and worked for a combination of independent and bank-owned lenders of varied sizes, including, the Kissell Company, CitiFed Mortgage, Sears Mortgage, Medallion Mortgage, Consumer Mortgage and WestAmerica Mortgage before joining Wintrust Financial in 2004. He most recently served as Chairman and CEO of Wintrust Mortgage and represented the mortgage company on several of the bank holding company's committees: Operating Committee, Strategic Initiatives Committee, Enterprise and Mortgage Risk Committees, Digital Experience Committee, Compliance Committee and Retail Partners Committee.  Under David's leadership, Wintrust Mortgage grew from a mid-sized independent lender in 2004 to the 8th largest bank-owned retail lender nationwide in 2020.  Wintrust Mortgage originated nearly a third of its loan volume via their consumer-direct channel, approximately 25% of it's volume through it's captive relationship with the bank holding company and the balance was via self-sourced Loan Officers, located in offices across the U.S.

Throughout his 17-year tenure at Wintrust, David was an active buyer of independent mortgage companies and leveraged six separate retail acquisitions to help address internal strategic objectives – adding production and servicing scale, leadership talent, technology resources, government loan mix, state diversity, government loan mix and, making changes to origination channel mix.  As such, he has significant experience and rich insights into related due-diligence, contract negotiation, buyer and seller motivations and fears, evaluation of origination platform models and cultural alignment, as well as effective methods to transition and onboard acquired employees.

A graduate of Ohio Wesleyan University, David earned a bachelor's degree in economics, which included a study program in Geneva, Switzerland. He also attended postgraduate classes at the University of Chicago, The Ohio State University, and the University of Dayton.

©2022 STRATMOR Group. All Rights Reserved. Proprietary and Confidential Information – Not for External Distribution