IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FIRST GUARANTY MORTGAGE CORPORATION, *et al.*,[1]<br><br>　　　　　　　　　Debtors. | ) Chapter 11<br>)<br>) Case No. 22-10584 (CTG)<br>)<br>) Jointly Administered<br>)<br>) **Objection Deadline: October 24, 2022 at 12:00**<br>) **p.m.**<br>) **Hearing Date: October 31, 2022 at 10:00 a.m.** |

**KARI CRUTCHER'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY TO (I) FILE MOTION TO TRANSFER VENUE IN TRIAL COURT; (II) SERVE COMPLAINT ON ALL DEFENDANTS; AND (III) PROCEED WITH THE LITIGATION IN THIS DISTRICT**

Ms. Kari Crutcher ("Ms. Crutcher"), relator in a *qui tam* action in the name of the United States,[2] moves (the "Motion") the Court for relief from the automatic stay to permit Ms. Crutcher to: (i) file a motion with the United States District Court for the Northern District of Georgia (the "Georgia District Court") to transfer venue of her Litigation to the United States District Court for the District of Delaware (the "Delaware District Court"); (ii) serve the complaint on all defendants in the action: Debtor First Guaranty Mortgage Company, Pacific Investment Management Company, LLC, PIMCO Investments, LLC, Aaron Samples, Andrew Peters, Jill Winters, and Suzy Lindblom; and (iii) proceed with the Litigation before the Delaware District Court. In support of the Motion, Ms. Crutcher respectfully submits as follows:

---

[1]　　The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: First Guaranty Mortgage Corporation (9575); and Maverick II Holdings, LLC (5621). The Debtors 'mailing address is 5800 Tennyson Parkway, Suite 450, Plano, TX 75024.

[2]　　The qui tam action is styled *United States of America ex el. Kari Crutcher v. First Guaranty Mortgage Corporation, et al.*, Civil Action No. 16-CV-03812-SCJ (the "Litigation").

**PRELIMINARY STATEMENT**[3]

1. Prior to the Debtors' petition date, Ms. Crutcher filed a complaint, since amended, against the Defendants (defined below) in the Georgia District Court, alleging claims under the False Claims Act. The Litigation is a *qui tam* civil fraud action brought by Ms. Crutcher on behalf of the United States, seeking damages and penalties of over eighty million dollars ($80,000,000) in connection with the Debtors' origination of residential mortgage loans.

2. In a *qui tam* action like Ms. Crutcher's, after a complaint is filed by the *qui tam* plaintiff, the United States has the unilateral right to intervene. Here, the United States declined. On August 17, 2022, the United States filed a notice of election to decline intervention with the Georgia District Court, and the court unsealed the amended complaint on August 30, 2022. Under the False Claims Act, Ms. Crutcher is now authorized to proceed with the action on behalf of the United States. Because the amended complaint was only recently unsealed, Ms. Crutcher has not served the Defendants with the amended complaint.

3. Now that the Debtors have filed petitions for relief in this Court, there are two courts with overlapping subject-matter jurisdiction over the action and personal jurisdiction over the Defendants: this Court (via this District's standing order of reference) and the Georgia District Court. As set forth below, Ms. Crutcher believes that this District is better suited to determine her claims against the Debtors and the other Defendants.

4. However, as it relates to the Debtor, any action by Ms. Crutcher in the Georgia District Court is subject to the automatic stay. As such, Ms. Crutcher hereby moves this Court to allow her to file a motion to transfer in the Georgia District Court (seeking a transfer of venue

---

[3] Capitalized terms used in this Preliminary Statement and not otherwise defined herein have the meanings assigned to them in a later section of the Motion.

from the District of Georgia to the Delaware District Court), allow her to serve the complaint on all Defendants, and to proceed with the Litigation before the Delaware District Court.

5.     Transferring the Litigation to this District would promote judicial economy and avoid inconsistent rulings for all parties involved.  Ms. Crutcher's claim against the Debtor is nondischargeable under the Bankruptcy Code and may be a gating issue to confirmation of a plan that seeks a discharge.  Ms. Crutcher's estimated $80 million claim dwarfs the total $51.7 million estimated claims pool of unsecured creditors in the Disclosure Statement, so her vote may swing the entire class.  If this Court confirms a plan with broad third-party releases, as proposed in the Debtors' Plan, Ms. Crutcher respectfully submits that it should be this District, and not the Georgia District Court, that determines the effect of those plan releases on Ms. Crutcher's claims against the non-debtor Defendants.

6.     A claim as significant as this—alleging tens of millions of dollars in fraud against HUD and FHA perpetuated by FGMC and the Defendants—should not be determined in separate fora.  This District is the more favorable venue, and the Motion should be granted.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over the Motion pursuant 28 U.S.C. §§ 157 and 1334.

8.     This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (b)(2)(G), and (b)(2)(O).

9.     The statutory basis for the relief requested in this Motion is 11 U.S.C. § 362 (the "Bankruptcy Code").

## BACKGROUND

10.    On June 30, 2022, the above-captioned debtors (the "Debtors" and, when referring only to First Guaranty Mortgage Company, the "Debtor" or "FGMC") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.

3

11.     On October 13, 2016, Ms. Crutcher, as relator, filed a *qui tam* complaint in the Georgia District Court against the Debtor.  On June 29, 2022, Ms. Crutcher filed an amended complaint (the "Complaint"),[4] naming as additional defendants Pacific Investment Management Company, LLC, PIMCO Investments, LLC, Aaron Samples, Andrew Peters, Jill Winters, and Suzy Lindblom[5] (collectively, along with FGMC, "Defendants").  The Complaint seeks to recover treble damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729–3733 ("FCA"), for damages sustained by the United States Department of Housing and Urban Development ("HUD") in connection with FGMC's origination of residential mortgage loans underwritten and approved by FGMC and endorsed for Federal Housing Administration ("FHA") insurance.

12.     As detailed in the Complaint, Ms. Crutcher alleges that the Debtor, a lender approved by HUD to originate and underwrite single-family residential mortgages insured by HUD, knowingly approved loans that violated FHA rules while falsely certifying compliance with those rules.  The Debtor's conduct allowed it to profit from these loans, even if the borrowers defaulted on their mortgages.  As the risk was entirely on FHA when the noncompliant loans defaulted, the Defendants' actions caused millions of dollars in losses to HUD.

---

[4]     A copy of the Complaint is attached as **Exhibit B**.
[5]     The first-day declaration [D.I. 19] ("Sample Decl.") provides that an affiliate of Pacific Investment Management Company LLC is the Debtors' prepetition bridge lender.  Sample Decl. ¶ 20. Mr. Samples is the current Chief Executive Officer of FGMC.  *See*, *e.g.*, Sample Decl. ¶ 1.  Mr. Peters is the former Chief Executive Officer of FGMC.  Compl. ¶ 32. Ms. Winters is the Vice President, National Underwriting of FGMC.  Compl. ¶ 38. Ms. Lindblom is Chief Operating Officer of the Debtor. Compl. ¶ 37. The Complaint alleges that these other defendants developed and managed the Debtor's policies and practices regarding underwriting and origination of government loans.  See, e.g., Compl. ¶ 33.  Under the *Park* doctrine, these non-debtor parties have exposure to False Claims Act liability as they had the authority and responsibility to prevent false claims. *See United States v. Park*, 421 U.S. 658 (1975); *United States v. Movtady*, 13 F. Supp. 3d 325, 333 (S.D.N.Y. 2014) (refusing to dismiss claims against owner and operator of mortgage lender in False Claims Act mortgage fraud action); *United States v. Hodge*, 933 F.3d 468, 472 (5th Cir. 2019), *as revised* (Aug. 9, 2019) (affirming $268.8 million jury verdict in False Claims Act action against mortgage lender and its CEO related to FHA fraud); *see also United States ex. rel. Bowman v. Computer Learning Ctrs.*, 73 F'App'x 735, 736 (5th Cir. 2003) (False Claims Act action could proceed against non-bankrupt parties or co-defendants).

13. On August 11, 2022, Ms. Crutcher informally requested copies of insurance policies from the Debtors, potentially covering the claims alleged by Ms. Crutcher against the Defendants. The Debtors did not respond. Accordingly, in connection with this Motion, Ms. Crutcher will be serving formal discovery requests on the Debtors, requesting such documents and related information.

14. On August 17, 2022, the United States filed a notice to decline intervention, allowing Ms. Crutcher to proceed with the action in the name of the United States. *See* 31 U.S.C. § 3730(c)(3) (providing that if the government declines to intervene, the relator has the right to conduct the action). The Georgia District Court unsealed the Complaint on August 30, 2022. Ms. Crutcher now, through this Motion, seeks relief from the automatic stay to pursue the Litigation by filing a motion to transfer venue, serve all Defendants, and proceed with the Litigation before the Delaware District Court.

15. On September 7, 2022, the Debtors filed a combined plan and disclosure statement [D.I. 405] (the "Plan" and "Disclosure Statement"). The Disclosure Statement estimates a total of $51.7 million in unsecured non-priority claims.

**ARGUMENT**

**I.    This District Has Jurisdiction Over the Litigation.**

16. Federal district courts are vested with original and exclusive subject matter jurisdiction over chapter 11 cases, and original but not exclusive jurisdiction of all proceedings "arising in" and "related to" a bankruptcy case. *See* 28 U.S.C. §§ 1334(a)–(b). In this District, bankruptcy cases are referred to this Court. *See Amended Standing Order of Reference in United States District Court for the District of Delaware*, dated February 29, 2012.

17. Ms. Crutcher's claims against the Debtor are now subject to the claims allowance process of Sections 501 and 502 of the Bankruptcy Code, as well as implicated in the standards for confirmation of any Plan under sections 1129(a)(1) and 1141(d)(6), and thus her Litigation against the Debtor are proceedings "arising under" chapter 11. *See, e.g.*, *In re Sportsman's Warehouse, Inc.*, 457 B.R. 372, 384 (Bankr. D. Del. 2011) (defining "arising under" as proceedings where the Bankruptcy Code creates the cause of action or provides the substantive rights). On the other hand, section 1334 only creates jurisdiction over Ms. Crutcher's claims against the non-debtor Defendants if they are "related to" these chapter 11 cases. The test for "related to" jurisdiction is whether the proceeding "could conceivably have any effect on the estate being administered in bankruptcy." *Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984).

18. In this case, Ms. Crutcher's allegations against FGMC and the non-debtor Defendants in the Litigation, if proven true, would have a significant effect on the Debtors' bankruptcy estate, meeting the *Pacor* test. The non-debtor director and officer Defendants have a right of indemnification against the Debtor relating to Ms. Crutcher's claims,[6] creating a sufficient "related to" connection for jurisdiction. *See In re LTC Holdings, Inc.*, 587 B.R. 25, 39 (Bankr. D. Del. 2018) (finding that an officer's contractual right of indemnification against debtor was sufficient to confer "related to" jurisdiction). While Ms. Crutcher has no specific knowledge of

---

[6] The Debtor's articles of incorporation are available on the Virginia Secretary of State's website, and provide, in relevant part:

> To the full extent permitted by the Act, as it exists on the date hereof or as hereafter amended, the Corporation shall indemnify and hold harmless any person who was or is a party to any proceeding, including a proceeding brought by or in the right of the Corporation or brought by or on behalf of shareholders of the Corporation, by reason of the fact that such person is or was an eligible person against any liability incurred by such person in connection with such proceeding, except for liability resulting from such person's having engaged in willful misconduct or a knowing violation of the criminal law.

Amended and Restated Articles of Incorporation of First Guaranty Mortgage Corporation, Art. VI, ¶ 3 (Mar. 11, 2016).

the PIMCO-related Defendants' rights of indemnity, they surely exist as well. In any event, PIMCO's obligations to third parties relating to its relationship with the Debtors, such as Ms. Crutcher's, will be front-and-center in these chapter 11 cases,[7] and feature prominently in the Debtors' Plan, which contains broad third-party releases.

19. Accordingly, Ms. Crutcher's multi-million dollar claims against the Debtor, potentially making her the largest creditor in the unsecured creditor class, and Ms. Crutcher's claims against other Defendants are sufficient to confer subject matter jurisdiction to this District.

## II. Cause Exists to Grant Relief from the Automatic Stay.

### A. The Legal Standards for Stay Relief.

20. "Cause" is not defined by Section 362(d)(1), and it is a flexible concept for which courts often conduct a fact-intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the automatic stay. *See Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997); *see also In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007).

21. In *Izzarelli v. Rexene (In re Rexene Prods. Co.)*, 141 B.R. 574, 577-78 (Bankr. D. Del. 1992), this Court developed a three-prong balancing test to determine whether there is "cause" to grant relief from the automatic stay to allow pending litigation in another court to proceed:

> (i) Whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit;
>
> (ii) Whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and

---

[7] Indeed, the official committee of unsecured creditors characterizes these chapter 11 cases as having been "commenced for the sole benefit" of PIMCO, and an effort for the Debtors to "complete the winddown of their remaining pipeline of mortgage loan applications such that PIMCO can avoid adverse publicity and potential claims by third-parties." *See Objection of the Official Committee of Unsecured Creditors to Debtors' Motions (I) to Obtain Debtor-in-Possession "Repo" Financing and (II) to Obtain Debtor-in-Possession "Cash Flow" Financing* [D.I. 199], ¶¶ 1, 2.

      (iii)    Whether the creditor has a probability of prevailing on the merits.

*Id.*; *see also In re Abeinsa Holding, Inc.*, No. 16-10790 (KJC), 2016 WL 5867039, at *2–5 (Bankr. D. Del. Oct. 6, 2016) (applying the *Rexene* factors and granting relief from the automatic stay).

      22.    Further, this Court has also considered general policies underlying the automatic stay when deciding whether to grant stay relief including: (i) whether relief would result in a partial or complete resolution of the issues; (ii) lack of any connection with or interference with the bankruptcy case; (iii) whether the other proceeding involves the debtor as a fiduciary; (iv) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (v) whether the debtor's insurer has assumed full responsibility for defending it; (vi) whether the action primarily involves third parties; (vii) whether litigation in another forum would prejudice the interest of other creditors; (viii) whether the judgment claims arising from the other action is subject to equitable subordination; (ix) whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor; (x) the interest of judicial economy and the expeditious and economical resolution of litigation; (xi) whether the parties are ready for trial in the other proceeding; and (xii) impact of the stay on the parties and the balance of harm. *See SCO Grp.*, 395 B.R. at 857 (citation omitted).

      23.    Once the movant makes a *prima facie* case for relief from the automatic stay, the burden of going forward and the burden of persuasion shifts to the party opposing relief on all issues. 11 U.S.C. § 362(g); *see also Save Power Ltd. v. Pursuit Athletic Footwear, Inc. (In re Pursuit Athletic Footwear, Inc.)*, 193 B.R. 713, 718 (Bankr. D. Del. 1996) (finding that the initial burden in proving a *prima facie* case of cause is on the movant, which if proved, must be rebutted by the non-movant). Applying these principles, as set forth below, this Court should modify the

automatic stay to allow Ms. Crutcher to file a motion to transfer venue with the Georgia District Court, serve all Defendants, and proceed with the Litigation before the Delaware District Court.[8]

### B. There Would Be No "Great Prejudice" to the Bankruptcy Estates.

24. Granting this Motion would not prejudice the Debtors or their estates. Given the size of Ms. Crutcher's claim, determination of Ms. Crutcher's claim may be necessary in the context of Plan voting. The Debtors may argue that Ms. Crutcher's action may increase their attorneys' fees, but any such argument should be disregarded: The mere fact that a debtor might have to defend or incur related litigation expenses has been held as an insufficient reason to deny a motion for relief from the stay. *See In re Keen Corp.*, 171 B.R. 180, 185 (Bankr. S.D.N.Y. 1994) ("[i]ncreased litigation costs do not rise to the level of 'great prejudice'"); *see also In re Anton*, 145 B.R. 767, 770 (Bankr. E.D.N.Y. 1992) ("The cost of defending litigation, by itself, has not been regarded as constituting 'great prejudice,' precluding relief from the automatic stay."). Indeed, increased attorneys' fees may be no factor at all if the Debtors have insurance coverage[9] relating to Ms. Crutcher's claims.

25. Further, the other creditors in the Debtors' bankruptcy will not be harmed by the relief requested in this Motion. Notably, Ms. Crutcher is not seeking permission to take action against the Debtors' property by, for example, enforcing any money judgment. *See, e.g., In re G.S. Distrib., Inc.*, 331 B.R. 552, 567–68 (Bankr. S.D. N.Y. 2005) (finding that granting stay relief to movant in order to pursue litigation in district court would not prejudice the debtor's other

---

[8] Since the Complaint was sealed until only recently, service of the Complaint was not possible until now. Ms. Crutcher intends to request that the Debtors accept service on behalf of the Debtor and the directors and officer Defendants, and request that counsel for the PIMCO-related DIP lender entity accept service on behalf of the PIMCO-related defendants. However, if counsel refuses to accept service, Ms. Crutcher intends to formally serve those parties.

[9] Ms. Crutcher has informally requested the Debtors' insurance policies, with no response. Along with this Motion, Ms. Crutcher has served formal discovery requests on the Debtors, requesting information and documents relating to insurance coverage.

9

creditors because the movant would not be able to enforce any money judgment it may receive without permission from the court). Rather, Ms. Crutcher will limit her relief against the Debtors to the Debtors' insurance policy proceeds.

26. Accordingly, Ms. Crutcher submits that this first *Rexene* factor—no great prejudice to the bankruptcy estates—weighs in favor of granting the Motion.

    **C.    The Hardship to Ms. Crutcher of the Status Quo Outweighs any Hardship to the Debtors by Granting This Motion.**

27. The prejudice to Ms. Crutcher by the maintenance of the stay considerably outweighs that of the Debtors, if any. Absent the relief from this Court, the Litigation would likely remain unresolved and administratively stayed by the Georgia District Court. Meanwhile, these chapter 11 cases would be moving forward with confirmation and broad third-party releases of the Defendants, with the resolution of these significant claims unresolved in Georgia District Court.

28. Nor is it a feasible option to sever the Debtor from the Litigation, or only move forward with the Litigation against the non-debtor Defendants. That would almost certainly be wasteful and unproductive, resulting in two courts (in this District and the Georgia District Court) having to determine claims relating to the same alleged misconduct through two different processes and timetables.

29. Accordingly, Ms. Crutcher submits that the second *Rexene* factor—hardship on the movant, and weighing of hardship—cuts in favor of granting the Motion.

    **D.    Ms. Crutcher Has a Probability of Prevailing on the Merits.**

30. Ms. Crutcher seeks permission from this Court to request the Georgia District Court transfer venue to the Delaware District Court. Under 28 U.S.C. § 1412, a court "may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or

for the convenience of the parties." 28 U.S.C. § 1412. In the Eleventh Circuit, where the Georgia District Court is located, the considerations for when transfer of venue is appropriate are:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

31. This Court has exclusive jurisdiction over the Debtors' chapter 11 cases, and original but not exclusive jurisdiction over Ms. Crutcher's claims. The non-Debtor Defendants are current or former officers of the Debtor, and a PIMCO affiliate is before this Court as the DIP lender. In other words, this Court is already tasked with determining all of the fundamental issues with the Debtors' reorganization, and the necessary parties are either already before the Court or easily within reach. Given these facts, Ms. Crutcher expects that the Georgia District Court will grant her motion to transfer venue to this District.

32. Turning to the merits of the underlying action, Ms. Crutcher satisfies her burden there, too. It is well established that "[e]ven a slight probability of success on the merits may be sufficient to warrant stay relief in the appropriate case." *See American Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 152 B.R. 420, 426 (D. Del. 1993). Indeed, "[t]he required showing is very slight." *Rexene*, 141 B.R. at 578.

33. This "slight" showing is easily met by the allegations made in the Complaint, which plausibly allege claims that the Debtor and the other Defendants violated the FCA. For example,

> (a) The Debtor annually certified to HUD that it was following all of HUD's guidelines, rules, and regulations, when in fact it knew

11

it did not, and had no intention of providing such services. Compl. ¶ 5.

(b)     The Debtor's false statements in both individual loans as well as in its initial and annual certifications fraudulently induced HUD to extend insurance coverage on home loans, as well as pay for losses on covered loans. *Id.* ¶ 6.

(c)     The Debtor made these false certifications repeatedly with regard to its underwriting and quality control processes and each false certification independently triggers the Debtor's liability. *Id.* ¶ 7.

(d)     The Debtor failed to live up to its obligations under the FHA Direct Endorsement program, and the Debtor's management instituted and encouraged practices that led underwriters to break HUD rules and to approve ineligible loans. *Id.* ¶ 8.

(e)     These policies and practices included the Debtor allowing exceptions to HUDs underwriting requirements, manipulating key data, waiving conditions and documentation requirements, pressuring underwriters to approve loans ineligible for FHA insurance, and encouraging underwriters to disregard risks that were evident in the loan files. *Id.* ¶ 9.

34.     Accordingly, Ms. Crutcher submits that she easily meets her light burden to demonstrate "a slight probability of success" under the third *Rexene* factor.

**E.     The General Policies Underlying the Automatic Stay Also Favor Granting the Motion.**

35.     The general policies underlying the automatic stay also supports granting the Motion. Granting relief will allow for the complete resolution of the issues in a single forum and avoid duplication and the risk of inconsistent results. Granting relief will not interfere with the bankruptcy cases; if anything, having these FCA claims in this District will assist in the Plan process, as any Plan that discharges valid FCA claims is not confirmable, *see* 11 U.S.C. §§ 1129(a)(1), 1141(d)(6), and determination of Ms. Crutcher's claims for voting purposes may be necessary for confirmation of the Debtors' Plan.

10/04/2022 SL1 1806448v3 117183.00001

36. Indeed, one of the key issues in these chapter 11 cases may be PIMCO's exposure for its prepetition role with the Debtors. *See Objection of the Official Committee of Unsecured Creditors to Debtors' Motions (I) to Obtain Debtor-in-Possession "Repo" Financing and (II) to Obtain Debtor-in-Possession "Cash Flow" Financing* [D.I. 199] ¶ 1 ("When viewed in its entirety, this bankruptcy process is not designed to maximize value for the Debtors' estates, but rather to minimize PIMCO's exposure and losses."); *id.* ¶ 45 (arguing that the proposed DIP lien on claims or causes of action against directors and officers would be PIMCO effectively obtaining *de facto* releases for the directors and officers). In this respect, having Ms. Crutcher's claims against PIMCO heard in this District will assist in resolution of those issues as well.

**III.   The Stay of Any Order Granting this Motion Should Be Waived.**

37. Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure provides, "An order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." This fourteen-day stay is designed to guard against situations where the party granted relief is allowed to take some action that cannot be undone, or which action could make an appeal moot. *See generally*, 9 Collier on Bankruptcy ¶ 4001.05 (Alan N. Resnick & Henry J. Sommer eds., 16th ed).

38. It is important to note, though, that Rule 4001(a)(3) is only a default rule, which can be modified if a court orders otherwise. *Id.* Ms. Crutcher respectfully submits that the 14-day stay serves no relevant purpose here and should be waived in any order granting this Motion. If the Motion is granted, there is no "bell that cannot be unrung," if some party appeals the order. For these reasons, Ms. Crutcher requests that any order granting this Motion be effective immediately.

**NOTICE**

39. Notice of this Motion is being provided to (a) the Debtors and all of the other Defendants in the Litigation, (b) the Office of the United States Trustee; (c) the Official Committee of Unsecured Creditors, (d) the United States attorneys appearing for the United States in the Georgia District Court Litigation, and (e) all parties who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.

**CONCLUSION**

For the foregoing reasons, Ms. Crutcher requests that this Court enter the Order attached hereto as **Exhibit A**, to permit Ms. Crutcher to: (i) file a motion with the Georgia District Court in the case captioned *United States of America ex el. Kari Crutcher v. First Guaranty Mortgage Corporation, et al.*, Civil Action No. 16-CV-03812-SCJ, to transfer venue from the Georgia District Court to the Delaware District Court; (ii) serve the Complaint on all Defendants in the Litigation; and (iii) proceed with the Litigation before the Delaware District Court (or in whichever court is determined to have appropriate jurisdiction).

Dated: October 4, 2022

Respectfully submitted,

**STEVENS & LEE, P.C.**

/s/ *Joseph H. Huston, Jr.*
Joseph H. Huston, Jr. (No. 4035)
919 North Market Street, Suite 1300
Wilmington, DE  19801
Telephone: (302) 425-3310
Fax:    (610) 371-7972
Email: joseph.huston@stevenslee.com

-and-

10/04/2022 SL1 1806448v3 117183.00001

**THOMAS & SOLOMON LLP**

J. Nelson Thomas, Esquire
693 East Avenue
Rochester, NY 14607
Telephone: (585) 272-0540
Email: nthomas@theemploymentattorneys.com

*Counsel for Kari Crutcher*

10/04/2022 SL1 1806448v3 117183.00001