**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FIRST GUARANTY MORTGAGE<br>CORPORATION, *et al.*,[1]<br><br>Debtors. | ) Chapter 11<br>)<br>) Case No. 22-10584 (CTG)<br>)<br>) (Jointly Administered)<br>)<br>)<br>) Hearing Date: October 31, 2022 at 10:00 a.m. (ET)<br>) Obj. Deadline: October 24, 2022 at 4:00 p.m. (ET) |

**DEBTORS' OBJECTION TO PROOF OF**
**CLAIM NO. 124 SOLELY FOR VOTING PURPOSES**

The above-captioned debtors and debtors in possession (the "Debtors"), pursuant to sections 105(a) and 502(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), and Rules 3007 and 3018(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby file this objection ("Objection"), for voting purposes only, to Proof of Claim numbered 124 (the "Claim") filed by Kari Crutcher (the "Claimant"), and in support hereof, respectfully state the following:

**Preliminary Statement**

1. By order dated October 7, 2022 (the "Solicitation Procedures Order"), the Court approved (i) on an interim basis, the disclosures (the "Disclosures") in the *Amended Chapter 11 Combined Plan & Disclosure Statement of First Guaranty Mortgage Corporation and Debtor Affiliate* [D.I. 518] (together with all exhibits thereto and as it may be further amended, modified or supplemented, the "Combined Plan") as containing adequate information

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: First Guaranty Mortgage Corporation (9575); and Maverick II Holdings, LLC (5621). The Debtors' mailing address is 5800 Tennyson Parkway, Suite 450, Plano, TX 75024.

within the meaning of section 1125 of Bankruptcy Code, and (ii) procedures for soliciting creditor votes on the Combined Plan. With the assistance of their administrative advisor, the Debtors have commenced soliciting votes from creditors holding claims entitled to vote pursuant to the terms of the Solicitation Procedures Order.

2. On September 20, 2022, the Claimant originally asserted her unliquidated and highly speculative litigation claim in an undetermined amount, which was enumerated as proof of claim No. 93 (the "Original Claim"). On September 28, 2022, the day of the hearing on interim approval of Disclosures in the Combined Plan and the Voting Record Date (defined below), the Claimant subsequently amended the Original Claim to a general unsecured claim, in the amount of $81,361,126.92, to create a single "blocking" vote in the class of general unsecured claims for the Combined Plan. Indeed, as Claimant admits, permitting the Claimant to vote the full amount of its $81,361,126.92 Claim would disenfranchise all other general unsecured creditors with respect to voting on the Combined Plan. *See, Kari Crutcher's Motion For Relief From The Automatic Stay To (I) File Motion To Transfer Venue In Trial Court; (II) Serve Complaint On All Defendants; And (III) Proceed With The Litigation In This District* [D.I. 509, at 3] (the "Motion for Relief from Stay") ("Ms. Crutcher's estimated $80 million claim dwarfs the total $51.7 million estimated claims pool of unsecured creditors in the Disclosure Statement, so her vote may swing the entire class.").

3. Such an inequitable result should not be permitted where the Claim (a) is based on speculative and wholly unliquidated recovery from litigation on a claim that belongs to the United States government, and (b) consists primarily of unsubstantiated asserted "treble damages" and penalties that may well not be allowable under the Bankruptcy Code.

DOCS_DE:240996.7 28311/00

**Jurisdiction and Statutory Authority**

4.   This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief sought herein are sections 105(a) and 502(b) of the Bankruptcy Code and Bankruptcy Rules 3007 and 3018(a).

**Background**

**A.   General Background**

5.   On June 30, 2022 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtors' chapter 11 cases.

6.   On July 14, 2022, the Office of the United States Trustee appointed an official committee of unsecured creditors in these chapter 11 cases (the "Committee").

7.   The factual background regarding the Debtors, including their current and historical business operations and the events precipitating their chapter 11 filings, is set forth in detail in the *Declaration of Aaron Samples in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 19] (the "First Day Declaration") filed on the Petition Date and fully incorporated herein by reference.

**B.   Background Relevant to Motion**

8.   On October 6, 2022, the Debtors filed the Combined Plan. A hearing to consider final approval of the Disclosures and confirmation of the Plan is scheduled for October 31, 2022 (the "Confirmation Hearing"). The Solicitation Procedures Order established

3

September 28, 2022 as the date (the "Voting Record Date") for the purposes of determining the creditors and equity interest holders entitled to receive a solicitation package and to vote on the Combined Plan.

9. On September 20, 2022, the Claimant filed the Original Claim in an unliquidated amount for damages alleged in a qui tam action under the False Claims Act (the "Qui Tam Action") in the *United States District Court for the Northern District of Georgia* (the "Georgia District Court"), C.A. No. 16-CV-03812-SCJ.

10. On August 30, 2022, the Georgia District Court entered an order unsealing the Qui Tam Action, including the amended complaint filed on June 29, 2022 (the "Amended Qui Tam Complaint"). *See* Georgia District Court, Docket No. 29.

11. On the Voting Record Date, Claimant filed the Claim, which superseded the Original Claim, and asserted a general unsecured claim in the amount of $81,361,126.92, based on alleged damages and penalties asserted in the Qui Tam Action.

12. In the Qui Tam Action, Claimant (i) alleges, on behalf of the United States of America – which declined to intervene - that Debtor First Guaranty Mortgage Corporation ("FGMC") committed civil fraud by making false claims to the United States Department of Housing and Urban Development ("HUD"), and (ii) seeks treble damages and civil penalties for damages alleged to have been suffered by HUD as a result of FGMC's alleged fraud. As set forth above, the Qui Tam Action was only recently unsealed after the United States declined to intervene and take over the Qui Tam Action and the Amended Qui Tam Complaint has not yet been served on the Debtors. *See* Motion for Relief from Stay, at 9, fn. 8. Accordingly, the Qui Tam Action is in the infancy stages of litigation. The Debtors vigorously dispute the allegations contained in the Amended Qui Tam Complaint.

13. On October 4, 2022, as set forth above, Claimant filed the Motion for Relief from Stay, seeking relief from the automatic stay to, *inter alia*, file a motion in the Georgia District Court to transfer venue of the Qui Tam Action to the District of Delaware and to proceed with the Qui Tam Action in this District. In the Motion for Relief from Stay, Claimant acknowledges that the Claim potentially presents a "gating issue" for confirmation and that "…[Claimant's] vote may swing the entire class." Motion for Relief from Stay, at ¶ 5. A hearing on the Motion for Relief from Stay is currently scheduled at the same time as the Confirmation Hearing.

14. Reduction of the Claim for voting purposes is warranted (i) to prevent Claimant from having a "blocking" vote on the Combined Plan for a litigation-based claim owned by the government and where the complaint has yet to even be served on the Debtors, and (ii) wherein the Claimant asserts tens of millions of dollars in speculative damages and penalties that would not be allowable under the Bankruptcy Code.

### Request for Relief

15. By this Objection, the Debtors seek entry of an order stating that the Claim is reduced, for voting purposes only, to the amount of $1.00. While the Debtors do not, in this Objection, object to the Claim for any purpose other than voting, they retain their rights and powers, and those of their estates and successors in interest, to object to the Claim for any and all other purposes, including any distributions under the Combined Plan.

**Basis for Relief Requested**

A. **The Claim May be Allowed in a Reduced Amount for Voting Purposes**

16. A creditor is entitled to vote to accept or reject a chapter 11 plan if its claim is "allowed under section 502" of the Bankruptcy Code. 11 U.S.C. § 1121(a). Section

5

502(a) of the Bankruptcy Code provides that a proof of claim "is deemed allowed, unless a party in interest objects." 11 U.S.C. § 502(a).  Pursuant to section 502(b) of the Bankruptcy Code, if an objection to a claim is made, the court, after notice and a hearing, must determine the amount of the claim fixed as of the date of the filing of the petition.  11 U.S.C. § 502(b).

17. Holders of claims and interests are only permitted to vote on a plan to the extent that their claims are "allowed."  *See* 11 U.S.C. § 1126(a).  Bankruptcy Rule 3018(a) provides that "[n]otwithstanding objection to a claim or interest, the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr. P. 3018(a). The determination whether to temporarily allow a claim for voting purposes lies within the discretion of the bankruptcy court.  *In re Pac Sunwear of Cal., Inc.*, 2016 Bankr. LEXIS 2976 (Bankr. D. Del. 2016).

18. Neither the Bankruptcy Code nor the Bankruptcy Rules provide any guidelines for determining how to temporarily allow a claim for voting purposes. *See, In re Experient Corp.*, 535 B.R. 386, 405) (Bankr. D. Colo. 2015)  ("The Bankruptcy Code and Rules do not provide the courts with any guidance about how and when to temporarily allow a claim.") (internal citations omitted).

19. Courts recognize that Bankruptcy Rule 3018(a) also permits a party in interest to seek to disallow a claim for voting purposes.  Indeed, as noted by one bankruptcy court, "[t]he court has broad authority to determine whether to allow or disallow a claim for purposes of voting" under Bankruptcy Rule 3018(a).  *In re Mangia Pizza Invs., L.P.*, 480 B.R. 669, 679 (Bankr. W.D. Tex. 2012); *see also In re Zolner*, 173 B.R. 629, 633 (Bankr. N.D. Ill. 1994) (noting that a court must exercise its discretion to allow or disallow claims under

6

Bankruptcy Rule 3018(a) "based on reasoned analysis"); *In re Goldstein*, 114 B.R. 430, 433 (Bankr. E.D. Pa. 1990) (same); *Collier on Bankruptcy* ¶ 9-3018[5] (16th ed. rev. 2020) ("The court, however, regardless of the circumstances, has the discretion to allow or disallow all or part of the claim for voting purposes.") (citations omitted;  hereinafter "*Collier*").

20. At least one court has stated that a factor to be considered when determining the proper amount of a claim for voting purposes is ensuring that " …the voting power is commensurate with the creditor's economic interests in the case." *In re Pac Sunwear of Cal., Inc.*, *supra*, at *9.  As discussed below, allowing Claimant to vote the full $81 million Claim gives her voting power out of sync with her economic interest in these cases.

B. **The Claim Amount has not been Liquidated**

21. The Claim, which simply attaches a copy of the Amended Qui Tam Complaint as supporting documentation, has yet to be adjudicated in any forum.  The Amended Qui Tam Complaint was only recently unsealed by the Georgia District Court following the United States' decision not to intervene and take over the case.  At some point, the Claim will be liquidated, most likely in this Court since Claimant has filed a proof of claim and consented to this Court's jurisdiction.  But that day has not yet come.  Allowing Claimant to vote the essentially unliquidated Claim, and potentially "kill" the Combined Plan, would be detrimental to the Debtors, their estates and all other unsecured creditors.  Claimant could become the sole determining vote for the general unsecured class, a grossly inequitable result given that the Claim is based solely on a filed complaint that has not been subjected to any judicial scrutiny.

C.     **The Claim Includes Millions in Speculative Penalties and Treble Damages**

22.     The Amended Qui Tam Complaint, despite its impressive length, does not provide any basis for a claim of over $80 million.  The amount is wholly speculative.  It apparently includes the treble damages and penalties sought in the Amended Qui Tam Complaint.

23.     The Bankruptcy Code generally disfavors allowance of penalties.  Section 726(a)(4) of the Bankruptcy Code expressly subordinates claims for "any fine, penalty, or forfeiture, or for multiple, exemplary or punitive damages.  Courts have recognize that not subordinating penalty claims "… would penalize the general unsecured creditors … ." *In re Envirodyne Indus. V. American Express (In re Envirodyne Indus.)*, 176 B.R. 825 (Bankr. N.D. IL 1995); s*ee also, In re Friedman's Inc.*, 356 B.R. 766 (Bankr. S.D. Ga. 2006) (non-compensatory penalty claims should be subordinated to unsecured claims to prevent dilution of creditors' dividends under a plan.)

24.     Here, the Claim is grossly overstated, speculative, unsupported, disputed and subject to litigation.  The Court should reduce the amount of the Claim to $1.00 for voting purposes only.  Failure to do so will give Claimant's vote outsized weight to the detriment of the Debtors and the Debtors' other unsecured creditors.

D.     **Claimant's Interest in Claim is Limited**

25.     It is indisputable that the qui tam claim that forms the basis of the Claim belongs to the United States and not to Claimant.  "Although the relator has standing to pursue the FCA claim, the [Debtor] nevertheless 'is liable to the United States Government.'" *In re Hawker Beechcraft, Inc.*, 493 B.R. 696, 711 (Bankr. S.D.N.Y. 2013), *rev'd in part*, 515 B.R. 416 (S.D.N.Y. 2014). Similarly, "[w]hile relators indisputably have a stake in the outcome of False

8

Claims Act qui tam cases that they initiate, *the Government remains the real party in interest* in any such action." *United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 93 (2d Cir. 2008) (emphasis added). While Claimant has standing to bring and prosecute the Qui Tam Action, her standing does not change the nature of the underlying debt: "[t]he debt is *owed to the Government* and not to the relator." *Id.* (Emphasis added). This fact is underscored by the limitations imposed on a relator once the United States declines to intervene in a qui tam action. For instance, "…a relator cannot agree to settle a qui tam claim … without the government's consent." *In re Immunology Partners Inc.*, 2013 Bankr. LEXIS 1402, *6 (Bankr. D. Del. 2013).

26. At least one court has determined that a relator's sole *personal* claim against the debtor is limited to the recovery of attorneys' fees and expenses if and when the qui tam action is decided in the government's favor. *In re Hawker Beechcraft, Inc.*, 493 B.R. 696, 711-712 (Bankr. S.D.N.Y. 2013), *rev'd in part*, 515 B.R. 416 (S.D.N.Y. 2014). Here, that amount is currently unliquidated and unknown. Indeed, the relator's interest does not fully materialize until the litigation is complete and the relator prevails, and, thus, is "merely a by-product" of the suit itself. *In re Hawker Beechcraft, Inc.*, 493 B.R. at 711-12.

27. For all the foregoing reasons, the Court should sustain this Objection and reduce the amount of the Claim to $1.00 for purposes of voting on the Combined Plan. Alternatively, the Court could allow the Claim in a de minimis amount for voting purposes.

### General Reservation of Rights

28. Nothing herein is intended to prejudice the Debtors' right to object to the Claim or any other claim, and the Debtors expressly reserve all substantive or procedural objections that they may have.

29. Except as expressly provided herein, nothing herein is intended or should be construed as: (a) an admission as to the validity of any prepetition claim against any Debtor; (b) a waiver of any party's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (e) a waiver of any Debtor's rights under the Bankruptcy Code or any other applicable law; or (g) a waiver of the Debtors' rights to file counterclaims against the holder of the Claim or any other claim.

30. The Debtors further reserve the right to object in the future to the allowance of the Claim for distribution under the Combined Plan.

## Notice

31. The Debtors will serve copies of this Objection on: (a) Claimant, (b) the Office of the United States Trustee, (c) the United States Department of Justice, (d) counsel to the Committee, and (e) all parties who have requested notices in these cases pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that, in light of the nature of the relief requested herein, that no further notice need be given.

## No Previous Request

32. No previous request for the relief sought herein has been made to this or to any other Court.

DOCS_DE:240996.7 28311/00

**Conclusion**

WHEREFORE, the Debtors respectfully request that the Court enter an order, in substantially in the form attached hereto as **Exhibit A**, (i) allowing the Claim in the amount of $1.00 solely for purposes of voting on the Combined Plan; and (iii) granting the Debtors such other and further relief as is just and proper.

Dated:  October 17, 2022                    **PACHULSKI STANG ZIEHL & JONES LLP**

　　　　　　　　　　　　　　　　　　　　 /s/ Laura Davis Jones
　　　　　　　　　　　　　　　　　　　　Laura Davis Jones (DE Bar No. 2436)
　　　　　　　　　　　　　　　　　　　　Timothy P. Cairns (DE Bar No. 4228)
　　　　　　　　　　　　　　　　　　　　Mary F. Caloway (DE Bar No. 3059)
　　　　　　　　　　　　　　　　　　　　919 North Market Street, 17th Floor
　　　　　　　　　　　　　　　　　　　　P.O. Box 8705
　　　　　　　　　　　　　　　　　　　　Wilmington, Delaware 19899 (Courier 19801)
　　　　　　　　　　　　　　　　　　　　Tel:　　(302) 652-4100
　　　　　　　　　　　　　　　　　　　　Fax:　　(302) 652-4400
　　　　　　　　　　　　　　　　　　　　Email:　ljones@pszjlaw.com
　　　　　　　　　　　　　　　　　　　　　　　　tcairns@pszjlaw.com
　　　　　　　　　　　　　　　　　　　　　　　　mcaloway@pszjlaw.com

　　　　　　　　　　　　　　　　　　　　-and-
　　　　　　　　　　　　　　　　　　　　Samuel R. Maizel (*Pro Hac Vice*)
　　　　　　　　　　　　　　　　　　　　Tania M. Moyron (*Pro Hac Vice*)
　　　　　　　　　　　　　　　　　　　　**DENTONS US LLP**
　　　　　　　　　　　　　　　　　　　　601 S. Figueroa Street #2500
　　　　　　　　　　　　　　　　　　　　Los Angeles, CA 90017
　　　　　　　　　　　　　　　　　　　　Telephone:  (213) 623-9300
　　　　　　　　　　　　　　　　　　　　Email:  samuel.maizel@dentons.com
　　　　　　　　　　　　　　　　　　　　　　　　 tania.moyron@dentons.com

　　　　　　　　　　　　　　　　　　　　Claude D. Montgomery (*Pro Hac Vice*)
　　　　　　　　　　　　　　　　　　　　**DENTONS US LLP**
　　　　　　　　　　　　　　　　　　　　1221 Avenue of the Americas
　　　　　　　　　　　　　　　　　　　　New York, NY 10020
　　　　　　　　　　　　　　　　　　　　Telephone: (212) 632-8390
　　　　　　　　　　　　　　　　　　　　Email: claude.montgomery@dentons.com

　　　　　　　　　　　　　　　　　　　　*Counsel to Debtors and Debtors in Possession*