IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>FIRST GUARANTY MORTGAGE CORPORATION, *et al.*,[1]<br>Debtors. | Chapter 11<br><br>Case No. 22-10584(CTG)<br><br>(Jointly Administered) |

**DEBTORS' OBJECTION TO MOTION OF TIAA, FSB TO COMPEL THE
DEBTOR TO ASSUME OR REJECT EXECUTORY CONTRACTS**

First Guaranty Mortgage Corporation, ("FGMC"), and the above-referenced affiliated debtors and debtors in possession (collectively, the "Debtors")[2] in these chapter 11 cases (the "Chapter 11 Cases"), by and through the undersigned counsel of record, hereby object (this "Objection"), to the *Motion to Compel the Debtor to Assume or Reject Executory Contracts* [Docket No. 503] (the "Motion to Compel") filed by TIAA, FSB ("TIAA"). In support of this Objection, the Debtors respectfully state as follows:

**PRELIMINARY STATEMENT**

1. TIAA's Motion to Compel seeks an order compelling the Debtors to reject the Servicing Agreements. The Motion to Compel is scheduled for a hearing on October 31, 2022, the same day as the Debtors' confirmation hearing (the "Confirmation Hearing" on the *Amended Combined Disclosure Statement and Chapter 11 Plan of First Guaranty Mortgage Corporation and Debtor Affiliate* [Docket No. 518] (the "Amended Plan"). The Debtors will reject the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number are: First Guaranty Mortgage Corporation (9575); and Maverick II Holdings, LLC (5621). The location of the corporate headquarters and the service address for First Guaranty Mortgage Corporation is 5800 Tennyson Parkway, Suite 450, Plano, TX 75024.

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Motion or in the Servicing Agreements, as applicable.

Servicing Agreement through the Amended Plan, unless a buyer of assets proposes to assume the agreements as part of the Remaining Assets Sale (defined below). Consequently, the Debtors respectfully submit there is no need for the Court to address TIAA's request in the Motion to Compel, as it will be unnecessary once the Servicing Agreements are rejected through the Amended Plan. As set forth below, the Debtors should not be forced to reject the Servicing Agreements prior to that date since, among other things, a potential buyer may be interested in the Debtors assuming and assigning the Servicing Agreements. Based on the foregoing, the Debtors request to the Court deny the Motion to Compel, or alternatively, continue the Motion to Compel to a later date.

## BACKGROUND

2. On June 30, 2022 (the "Petition Date"), the Debtors commenced their Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, §§ 101 *et seq.* (the "Bankruptcy Code") with this Court.

3. The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to §§ 1007(a) and 1108. To date, no trustee, examiner, or statutory committee has been appointed in these cases by the United States Trustee (the "U.S. Trustee").

4. On July 14, 2022, the Office of the U.S. Trustee appointed an official committee of unsecured creditors (the "Committee").

5. Prior to the Petition Date, FGMC was a full-service, non-bank mortgage lender, offering a full suite of residential mortgage options tailored to borrowers' different financial situations. It was one of the leading independent mortgage companies in the United States that originated residential mortgages through a national platform. FGMC's business included the origination, purchase, service, sale, and/or securitization of residential real estate mortgage loans.

Additional information regarding the Debtors' businesses and capital structure, as well as a description of the events precipitating the filing of these Chapter 11 Cases, is set forth in the Declaration of Aaron Samples in Support of Chapter 11 Petitions and First Day Pleadings [Docket No. 19] (the "Samples First Day Declaration" or the "First Day Declaration"), as well as the Declaration of Tanya Meerovich [Docket No. 27] (the "Meerovich First Day Declaration", and together with the Samples First Day Declaration, the "First Day Declarations"), which are fully incorporated herein by reference.

6. On September 6, 2022, the Debtors filed the *Combined Disclosure Statement and Chapter 11 Plan of First Guaranty Mortgage Corporation and Debtor Affiliate* [Docket No. 405]. On October 6, 2022, the Debtors filed the Amended Plan. The Plan provides, at Section 13.1, that:

> Except with respect to (i) executory contracts or unexpired leases that were previously assumed or rejected by order of the Bankruptcy Court, (ii) executory contracts or unexpired leases that are the subject of a pending motion to assume or reject, pursuant to section 365 of the Bankruptcy Code, or (iii) executory contracts or unexpired leases that are scheduled by the Debtors and the Cash Flow DIP Lender to be assumed as of the Effective Date, as set forth in the Plan Supplement, on the Effective Date, each executory contract and unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to section 365 of the Bankruptcy Code; … . The Confirmation Order shall constitute an order of the Bankruptcy Court approving such assumptions and rejections, as applicable, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.

*See* Amended Plan at §13.1.

7. On October 7, 2022, this Court entered an *Order (I) Granting Interim Approval of the Disclosures; (II) Scheduling a Combined Hearing to Consider Final Approval of the Disclosures and Confirmation of the Combined Plan, and Setting Deadlines Related Thereto; (III) Approving Solicitation Packages and Procedures; (IV) Approving the Forms of Ballot; and (V) Granting Related Relief* [Docket No. 524] (the "Disclosure Statement Approval Order"). The

Disclosure Statement Approval Order scheduled the Confirmation Hearing for October 31, 2022. The Motion to Compel is scheduled to be heard that same day.

8. Prepetition, the Debtors entered into executory contracts and leases of personal property, including the Servicing Agreements. The Debtors and TIAA are also parties to that certain Sale Agreement, dated as of October 1, 2015 and that certain Sale Agreement dated as of January 4, 2016 (together, the "Sale Agreements" and collectively with the Servicing Agreements, the "Agreements")[3].

9. The Agreements provide that TIAA would acquire ownership of certain mortgage loans and that the Debtor would service such loans. Each of the Sale Agreements require FGMC to enter into a related Servicing Agreement as a condition to closing the Sale Agreement. The Debtors are independent contractors and are not an agent of TIAA under the Agreements.[4] The Debtors are permitted to retain one or more subservicers for the Mortgage Loans. Rushmore Loan Management Services LLC acted as Subservicer under the Agreements.

10. The Agreements require the Debtors to make Servicing Advances in certain circumstances, and to repurchase Mortgage Loans in other circumstances. The Debtors, as Servicer, normally are entitled to recoup Servicing Advances from collections based upon certain Mortgage Loan payments and other receipts, such as Mortgage Loan liquidation and insurance proceeds.

---

[3] As provided in the Notice of Cure Costs (defined below), the inclusion of any contract on Schedule 1 of the Notice of Cure Costs and reference to such contract in this Objection does not constitute an admission by the Debtors or any other party that such contract is an executory contract within the meaning of the Bankruptcy Code, and the Debtors reserve any and all rights.

[4] Pursuant to Section 2.01 of the 2015 Servicing Agreement: "With respect to the Mortgage Loans to be serviced hereunder, from and after the Closing Date, the Servicer, as an independent contractor, shall service and administer the Mortgage Loans, and shall have full power and authority, acting alone, to do any and all things in connection with such servicing and administration which the Servicer may deem necessary or desirable, consistent with the terms of this Servicing Agreement and with Accepted Servicing Practices."

11.     As of the Petition Date, the Debtors made Servicing Advances for the benefit of TIAA that had not yet been recouped in excess of $1.2 million. Since the Petition Date, the Debtors have continued to make advances to protect TIAA's interest in an ultimate recovery from Mortgage Loans sold to it pursuant to the Agreements. The advance and repurchase obligations provided for in the Agreements benefit TIAA because, among other things, they allow the Mortgage Loans to continue to be insured by federal agencies, such as the Federal Housing Administration. The Debtors have incurred a post-petition net loss of approximately $70,000 on account of Servicing Advances made with no corresponding reimbursement. In the business judgment of the Debtors, absent recovery of the outstanding balance of Servicing Advance through a transaction which has not yet materialized and may never occur, continued performance under the Agreements should cease, as such performance is detrimental to the estates.

12.     On September 7, 2022, the Debtors sought approval for bidding procedures of one or more sales of substantially all of the Debtors assets (the "<u>Remaining Asset Sales</u>").[5] Pursuant to the Bidding Procedures Order, a successful bidder for the Remaining Asset Sales may designate contracts to be assumed by the Debtors and assigned to the successful bidder pursuant to §365 of Bankruptcy Code. In furtherance of the Remaining Assets Sales process, the Debtors listed the Servicing Agreements as among the executory contracts that the Debtors may seek to assume at the request of a successful bidder. See *Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Sale of Substantially*

---

[5] See *Motion of the Debtors for Entry of Orders: (I)(A) Approving Bidding Procedures for One or More Sales of the Sale of Substantially all of the Debtors' Assets, (B) Authorizing the Debtors to Enter into One or More Stalking Horse Agreements and to Provide Bid Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II) (A) Approving the Sale or Sales of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and Granting Related Relief* [Docket No. 406].

*All Assets* filed on October 4, 2022 [Docket No. 512] ("Notice of Cure Costs"). If the Servicing Agreements are designated to be assumed, the Debtors will seek to assume the Servicing Agreements and assign them to a desiring successful bidder. In that event, the Debtor must, *inter alia,* cure any existing defaults pursuant to §365(b) of the Bankruptcy Code, including resolution of any related counterparty disputes over property of the estate.

13.     On September 20, 2022, the Debtors advised TIAA (the "September 20 Letter") that the Servicing Agreements were a burden to the estate and proposing that TIAA sell the Mortgage Loan portfolio, including the related servicing rights, so that the sale proceeds, net of expenses, could be allocated between TIAA and the Debtors. On September 22, 2022, TIAA advised the Debtors that TIAA has no interest in selling the Mortgage Loan portfolio and instead requested that the Debtors reject the Servicing Agreements.

14.     On October 13, 2022, the Debtors responded to TIAA (the "October 13 Letter") advising TIAA of the Debtors' intent to reject the Servicing Agreements through the Amended Plan and that since the Debtors are not TIAA's agent, TIAA's claims under the Servicing Agreements, if any, constitute general unsecured rejection damages claims.

## OBJECTION

15.     As TIAA concedes in its Motion to Compel, the Servicing Agreements are a burden to the Debtors and their estates. As of the Petition Date, the Debtors made Servicing Advances not yet recouped in excess of $1.2 million. Since the Petition Date, the Debtors have continued to make Servicing Advances for the benefit of TIAA as owner of the Mortgage Loans sold to it pursuant to the Agreements. The Debtors cannot continue to make these Servicing Advances or otherwise continue to perform under the Agreements, as such performance will result in a net loss to the estates, and will not provide for the near term recovery of the balance of Servicing Advances

not yet recouped in the ordinary course of performance under the Agreements. As such, rejection of the Agreements is in the best interest of the Debtors and their estates, and any claim resulting from the Debtors' rejection of the Agreements, including the Servicing Agreements will constitute a general unsecured rejection damages claim.

16. Absent a transaction in which the Debtors rights under the Agreements are sold or otherwise settled by agreement with TIAA, the Debtors intend to reject the Servicing Agreements through the Amended Plan. The Servicing Agreements, therefore, will be rejected upon entry of the confirmation order. Nonetheless, the Debtors should be able to preserve their right to assume and assign the Agreements, should a bidder be interested in them.

17. Given that the pendency of the Remaining Asset Sales process and the timeline for entry of the confirmation order coincides with the date on which this Court will hear this Motion, it is likely that it will not be necessary for this Court to enter a separate order rejecting the Servicing Agreements.

18. Further, if the Court considers the Motion to Compel on the merits, as opposed to dismissing it as moot, TIAA has the burden to demonstrate cause for accelerating rejection. *In re Dana Corp.*, 350 B.R. 144, 147 (Bankr. S.D.N.Y. 2006). Courts have recognized that the burden on a party seeking to compel a debtor to assume or reject an executory contract is significant, so that requests to accelerate the assumption or rejection of an executory contract are "rarely granted." 3 COLLIER ON BANKRUPTCY ¶ 365.05[2][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). In deciding whether to compel a debtor to assume or reject an executory contract, courts generally consider, among other things, the damage that the other party to the contract would suffer, beyond compensation available under the Bankruptcy Code; and the importance of the

contract to the debtor's business and reorganization. *In re Hernandez*, 287 B.R. 795, 805-06 (Bankr. D. Ariz. 2002) (citing *Theatre Holding Corp. v. Mauro*, 681 F.2d 102, 105 (2d Cir. 1982)).

19.    Here, given that the Agreements may be important to a potential buyer, and the existing deadline set by the Amended Plan for a decision whether to reject by the Debtors is virtually identical to the deadline sought by TIAA, so that TIAA will suffer no damage from the Court denying the Motion to Compel under these circumstances, these factors weigh heavily in favor of denying the Motion to Compel. *See, e.g., Hernandez*, 287 B.R. at 806-07 (denying motion to compel because requiring the debtors to reject the agreement would result in significant harm to the debtors and their creditors).

## CONCLUSION

For the reasons set forth in this Objection, the Court should deny the Motion to Compel and grant such other and further relief as it deems just and proper.

Dated: October 19, 2022                        **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Mary F. Caloway*
Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Mary F. Caloway (DE Bar No. 3059)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899 (Courier 19801)
Tel: (302) 652-4100
Fax: (302) 652-4400
Email: ljones@pszjlaw.com
       tcairns@pszjlaw.com
       mcaloway@pszjlaw.com

-and-

Samuel R. Maizel (Pro Hac Vice)
Tania M. Moyron (Pro Hac Vice)
**DENTONS US LLP**
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Email: samuel.maizel@dentons.com
       tania.moyron@dentons.com

Lauren Macksoud (Pro Hac Vice)
Claude Montgomery (Pro Hac Vice)
**DENTONS US LLP**
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 632-8390
Email: lauren.macksoud@dentons.com
       claude.montgomery@dentons.com

*Counsel for Debtors and Debtors in Possession*