IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FIRST GUARANTY MORTGAGE CORPORATION, *et al.*,[1] | Case No. 22-10584 |
| Debtors. | (Jointly Administered) |
| | **Related to D.I. 406** |

**LIMITED OBJECTION BY TIAA, FSB TO DEBTORS' MOTION FOR ENTRY OF ORDER APPROVING THE SALE   SALES OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES**

TIAA, FSB ("TIAA Bank"), a party in interest in the above-styled bankruptcy case, asserts this Limited Objection (the "Objection") to the *Motion of the Debtors' for Entry of Orders: (I)(A) Approving Bidding Procedures for One or More Sales or the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Enter Into One or More Stalking Horse Agreements and to Provide Bid Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale or Sales of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Doc. 406] (the "Sale Motion") filed by First Guaranty Mortgage Corporation (the "Debtor").  In support, TIAA Bank states the following:

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, are: First Guaranty Mortgage Corporation (9575); and Maverick II Holdings, LLC (5621). The location of the corporate headquarters and the service address for the Debtors are 5800 Tennyson Parkway, Suite 450, Plano, Texas 75024.

**INTRODUCTION**

Through the Sale Motion the Debtor seeks the Court's approval of a sale of substantially all of its assets free and clear of liens, claims, interests, and encumbrances. TIAA Bank does not oppose a sale of the assets owned by the Debtor that are part of its bankruptcy estate. However, the Debtor services mortgage loans owned by TIAA Bank and is holding no less than $636,419.71 collected by the Debtor as servicer of those loans. These serviced loans and funds are owned by TIAA Bank and are not property of the Debtor's bankruptcy estate; the estate has no right or claim to them. The Debtor must be prohibited from transferring these funds to a purchaser to the extent such transfer is contemplated by the Sale Motion.

**BACKGROUND**

1. On June 30, 2022 (the "Petition Date"), the Debtor filed its voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

2. Prior to the Petition Date, the Debtor and TIAA Bank (f/k/a "EverBank") entered into that certain Servicing Agreement dated as of October 1, 2015 regarding Residential Fixed Rate FHA-Insured Mortgage Loans (the "2015 Servicing Agreement"). A redacted copy of the 2015 Servicing Agreement is attached as **Exhibit "A."**[2]

3. The Debtor and TIAA Bank also are parties to that certain Servicing Agreement dated as of January 4, 2016 regarding Residential Fixed Rate FHA-Insured Mortgage Loans (the "2016 Servicing Agreement" and together with the 2015 Servicing Agreement, the "Servicing Agreements"). A redacted copy of the 2016 Servicing Agreement is attached as **Exhibit "B."**

4. The terms of the Servicing Agreements are identical in all material respects.

---

[2] All exhibits attached are incorporated herein by reference.

2

5. The preamble of each of the Servicing Agreements recognizes that TIAA Bank was acquiring ownership of certain mortgage loans (referred to as the "Mortgage Loans") and that the Servicing Agreements would prescribe the manner of servicing of the Mortgage Loans by the Debtor.

6. Section 2.01 of each of the Servicing Agreements provides as follows:

Each Servicing File delivered to or in the possession of the [Debtor] shall be held by the [Debtor] in order to service the Mortgage Loans pursuant to this Servicing Agreement and are and **shall be held in trust by the [Debtor] for the benefit of [TIAA Bank] as the owner thereof**. The [Debtor's] possession of any portion of the Mortgage File shall be at the will of [TIAA Bank] for the sole purpose of facilitating servicing of the related Mortgage Loan pursuant this Servicing Agreement, and such retention and possession by the [Debtor] shall be in a custodial capacity only. The ownership of the Mortgage File shall be vested in [TIAA Bank] and the ownership of all records and documents with respect to the related Mortgage Loan prepared by or which come into the possession of the [Debtor] shall immediately vest in [TIAA Bank] and shall be retained and maintained, **in trust**, by the [Debtor] at the will of [TIAA Bank] in such custodial capacity only. **The portion of each Servicing File retained by the [Debtor] pursuant to this Servicing Agreement shall be segregated from the other books and records of the [Debtor] and shall be appropriately marked to clearly reflect ownership of the related Mortgage Loan by [TIAA Bank].**

(Emphasis added).

7. Section 2.02 of the Servicing Agreements provides:

All funds received by the [Debtor] on or in connection with a Mortgage Loan after the Cut-Off Date **shall be received and held by the [Debtor] in trust for the benefit of [TIAA Bank] as the owner of the Mortgage Loans pursuant to the terms of this Servicing Agreement.**

(Emphasis added).

8. Section 3.02 of the Servicing Agreements obligates the Debtor to diligently collect payments for the Mortgage Loans. Section 3.03 of the Servicing Agreements requires the Debtor to segregate the funds collected in a separate custodial account (the "Custodial Account"). Specifically, the provision states as follows:

> The [Debtor] shall, or shall cause any Subserver to, segregate and hold all funds collected and received pursuant to the Mortgage Loans separate and apart from any of its own funds and general assets and shall establish and maintain one or more Custodial Accounts in the form of time deposit or demand accounts, titled "First Guranty Mortgage Corporation in trust for [TIAA Bank], FHA Mortgage Loans."

Section 3.03 of the Servicing Agreements.

9. Section 3.03 of the Servicing Agreements goes on to list the types of payments that are to be deposited into the Custodial Account which payments include, but are not limited to, principal and interest payments collected for the Mortgage Loans.

10. Withdrawals from the Custodial Account by the Debtor are allowed under Section 3.04 of the Servicing Agreements for only limited reasons:

    a. to make payments to TIAA Bank;

    b. to pay itself the Servicing Fee permitted under the Servicing Agreements;

    c. to pay itself interest earned from the Custodial Account;

    d. to clear the Custodial Account upon termination of the Servicing Agreements;

    e. to transfer funds to another permitted deposit account; and

    f. to withdraw funds deposited in the Custodial Account in error.

Section 3.04 also requires the Debtor to maintain a separate accounting for each Mortgage Loan serviced.

11. On the seventh (7th) day of each month (known as the "<u>Remittance Day</u>") the Debtor is required to remit to TIAA Bank <u>all</u> amounts deposited in the Custodial Account. *See* Section 4.01 of the Servicing Agreements. No exceptions are made.

12. The Servicing Agreements also entitle TIAA Bank to accounting records regarding the servicing of the Mortgaged Loans. *See* Sections 3.04, 5.02, 5.03, and 5.04.

13. The Debtor's obligations under the Servicing Agreements are not limited solely to collecting loan payments owned by TIAA Bank, however. Section 3.11 of the Servicing

Agreements provides that the Debtor is required to pay property taxes, insurance and other charges related to the Mortgage Loans. While the Servicing Agreements recognize that some of the Mortgage Loans will have escrow payments associated with them, the agreements recognize that that will not always be the case and obligate the Debtor to take steps to have the individual borrowers satisfy such obligations. In the event the borrowers fail to do so, the Debtor is obligated to make such payments from its own funds:

> To the extent that a Mortgage Loan does not provide for Escrow Payments, the Servicer shall, or shall cause any Subservicer to, determine that any such payments are made by the Mortgagor at the time they first become due and shall, if necessary, advance funds to effect such payments in accordance with Accepted Servicing Practices. The [Debtor] shall pay or cause all such bills to be paid irrespective of a Mortgagor's faithfull performance in the payment of same or the making of the related Escrow Payments, and **the [Debtor] shall make Servicing Advances from its own funds to effect such payments.**

Section 3.11 of the Servicing Agreements. (Emphasis added).

14. The term "Servicing Advances" is defined by the Servicing Agreements as:

> All customary, reasonable and necessary "out of pocket" costs and expenses (including reasonable attorneys' fees and disbursements) incurred in the performance by the [Debtor] of its servicing obligations, including, but not limited to, the cost of (a) the preservation, restoration and protection of the Mortgaged Properties, (b) any enforcement or administrative or judicial proceedings, including foreclosures, (c) the management and liquidation of the Mortgaged Property if such Mortgaged Property is acquired in satisfaction of the related Mortgage, (d) taxes, assessments, water rates, sewer rents and other charges which are or may become a lien upon a Mortgaged Property, and Policy premiums and fire and hazard insurance coverage and (e) compliance with the obligations set forth in Section 3.11.

Article I of the Servicing Agreements.

15. Of course, the Servicing Agreements contemplate recovery by the Debtor of Servicing Advances it makes, but only from specific sources:

> The [Debtor] shall be reimbursed for Servicing Advances on and related to a Mortgage Loan **only** from (i) any recovery from the related Mortgagor, Liquidation Proceeds, Insurance Proceeds or Condemnation Proceeds of

5

amounts that directly relate to the amounts advanced, subject to [TIAA Bank's] prior right to payment due with respect to the related Mortgage Loan pursuant to this Servicing Agreement or (ii) any payment of a portion of the FHA Claim Proceeds pursuant to Section 3.17.

Section 4.03 of the Servicing Agreements. (Emphasis added).

16. Of particularly importance in this matter is the last paragraph of Section 3.04 which states as follows:

Notwithstanding anything set forth herein with respect to the reimbursement of costs or expenses incurred by the [Debtor], neither the [Debtor] nor any Subservicer shall at any time receive, or be entitled to receive, any reimbursement (from the Custodial Account, any other account, the Owner or otherwise) for Uncovered Losses or for any costs, expenses and fees incurred by it or on its behalf and resulting from (i) an Uncovered Loss, (ii) breach of any covenant, condition, representation or warranty made by the [Debtor,] or (iii) the [Debtor's] or Subservicer's failure to service and administer the Mortgage Loans in strict accordance with the terms of this Servicing Agreement, including without limitation Accepted Servicing Practices.

Section 3.04 of the Servicing Agreements.

17. The Debtor has not remitted any payments due TIAA Bank under the Servicing Agreements since the Petition Date. Further, the Debtor has not complied with its reporting requirements under the Servicing Agreements, which leaves TIAA Bank unable to determine exactly how much money the Debtor is holding that is due to TIAA Bank.

18. In order to obtain an accounting of the amounts wrongfully withheld by the Debtor and to obtain a court determination as to whether the funds currently withheld by the Debtor are part of the Debtor's estate, TIAA Bank has filed the adversary proceeding styled *TIAA, FSB vs. First Guaranty Mortgage Corp.* (A.P. 22-50423) (the "Adversary Proceeding").

19. On the evening of Thursday, October 13, 2022, the Debtor provided reports to TIAA Bank indicating $636,419.71 in loan payments had been collected by the Debtor for loans

owned by TIAA Bank and serviced by the Debtor, but which were not remitted to TIAA Bank. These payments are property of TIAA Bank and not of the Debtor.

20. It is black-letter law that a debtor in possession can use Section 363 of the Bankruptcy Code to sell only assets owned by it that constitute property of the estate. *In re Forty-Eight Insulations, Inc.*, 133 B.R. 973 (Bankr. N.D. Ill. 1991) ("Another party's interests do not become property of the estate, and therefore cannot be sold under section 363, which deals with sales of only property of the estate."). It also is black-letter law that property owned by a non-debtor third party cannot be part of a debtor's bankruptcy estate. *See In re Whitehall Jewelers Holdings, Inc.*, No. 08-11261, 2008 WL 2951974 at *4 (Bankr. D. Del. July 28, 2008) (Gross, J.) ("A bankruptcy court may not allow the sale of property as 'property of the estate' without first determining whether the property is property of the estate.").

21. The Servicing Agreements make clear that the serviced loans and payments collected thereunder by the Debtor are not owned by the Debtor, but instead are owned by TIAA Bank. And to the extent there is any ambiguity (which there is not), Section 541(d) of the Bankruptcy Code clears any confusion by addressing this specific situation:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property or an interest in such a mortgage, sold by the debtor but as to which the debtor retain legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. 541(d).

22. At the time the Debtor filed its Statement of Financial Affairs, the Debtor seems to have recognized its limited role with the respect to the mortgage loans owned by TIAA Bank serviced by the Debtor. Such is evidenced by the fact the Debtor deliberately excluded as

7

SL1 1810542v1 117162.00001

disclosed assets (a) custodial accounts (including the Custodial Account maintained for TIAA Bank) and (b) real properties foreclosed by the Debtor securing serviced loans. The Debtor's Statement of Financial Affairs provides the following explanations:

> • Bank Accounts (AB3). The reflected bank balances are as of June 30, 2022. In instances where FGMC is acting in a custodial capacity on behalf of third parties, such banks accounts and amounts are excluded.
>
> ***
>
> • Real Property (AB55 through AB59). FGMC may hold title to certain foreclosed properties behalf of an investor, such as Massachusetts Mutual Life Insurance Company or Teachers Insurance and Annuity Associate of America Bank for whom FGMC serves as servicer, or for an underlying investor such as the Department of Housing and Urban Development ("HUD"), the Department of Agriculture, or the Department of Veteran's Administration. In these instances, FGMC is not the true owner of the property, but instead holds title for the beneficial owner, the investor. Properties for which FGMC holds title not in its own right, but on behalf of a beneficial owner are not included in Schedule AB55. In rare instances, the investor, such as HUD may decline to accept conveyance of the property following foreclosure, reconvey the property to FGMC due to a defect, or FGMC may opt to file a claim with an investor without conveying title in order to subsequently sell such property to a third-party. Such properties are included in Schedule AB55.

Debtor's Statement of Financial Affairs at 6-7 [D.I. 368].

23.    Here, the loans serviced by the Debtor and payments collected under those loans as servicer on behalf of TIAA Bank simply are not owned by the Debtor. Ownership of the underlying loans rests with TIAA Bank and as a result, ownership of the loan payments collected by the Debtor for these loans also rests with TIAA Bank. *See In re Cambridge Mortg. Corp.*, 92 B.R. 145, 151 (Bankr. D.S.C. 1988).

24.    Whether the Debtor is seeking to transfer TIAA Bank's loans or funds as part of the sale transaction is unclear. Therefore, TIAA Bank files this Objection to the extent the loans or funds are contemplated as part of the transaction.

WHEREFORE, TIAA Bank requests the Court to enter an order (a) denying approval of the sale transaction contemplated by the Sale Motion to the extent the transaction contemplates

transfer of loans owned by TIAA Bank and serviced by the Debtor as well as funds collected by the Debtor on TIAA Bank's behalf under the Servicing Agreements; and (b) granting such other and further relief as is just and proper.

Dated:  October 20, 2022

        Jeremy L. Retherford
        BALCH & BINGHAM LLP
        1901 Sixth Avenue North, Suite 1500
        Birmingham, Alabama  35203-4642
        Telephone: (205) 226-3479
        Facsimile: (205) 488-5693
        Email: jretherford@balch.com

        -and-

        *Joseph H. Huston, Jr.*
        Joseph H. Huston, Jr. (No. 4035)
        STEVENS & LEE, P.C.
        919 North Market Street, Suite 1300
        Wilmington, Delaware 19801
        Telephone: (302) 425-3310
        Facsimile: (610) 371-7972
        E-mail: joseph.huston@stevenslee.com

        *Attorneys for TIAA, FSB*