**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FIRST GUARANTY MORTGAGE CORP., et al,[1]<br><br>     Debtors. | Chapter 11<br>Bankr. Case No.  22-10584 (CTG)<br>(Jointly Administered) |
| LORI BUCKLEY, GAYLE ZECH, ROBERTA MARTINEZ, JENNIFER JACKSON and JAMES DAVIES, on behalf of themselves and all others similarly situated,<br><br>     Plaintiff,<br><br>   v.<br><br>FIRST GUARANTY MORTGAGE CORP., et al.<br><br>     Debtors. | Adv. Pro. No. 22-50387-CTG |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF**
**LORI BUCKLEY, GAYLE ZECH, ROBERTA**
**MARTINEZ, JENNIFER JACKSON AND JAMES DAVIES ON**
**BEHALF OF THEMSELVES AND OTHERS SIMILARLY**
**SITUATED, TO CONFIRMATION OF DEBTORS'**
**AMENDED COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN AND**
**NOTICE OF ELECTION BY THE WARN CLAIMANTS TO OPT-OUT OF THIRD-**
**PARTY RELEASES CONTAINED IN THE PLAN**

   Lori Buckley, Gayle Zech, Roberta Martinez, Jennifer Jackson and James Davies, on

behalf of themselves and all others similarly situated (the "WARN Claimants"), submits this

Limited Objection and Reservation of Rights (the "Objection") to the confirmation of Debtors'

Amended Combined Disclosure Statement and Chapter 11 Plan (D.I., 525 the "Plan").[2] Further,

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: First Guaranty Mortgage Corporation (9575); and Maverick II Holdings, LLC (5621). The Debtors' mailing address is 5400 Tennyson Parkway, Suite 450, Plano, TX 75024.

[2] The Plan comprises a combined plan and disclosure statement but is referred to herein as the "Plan".

WARN Claimants hereby provide notice of their election not to grant (i.e., opt out of) the releases set forth in Section 16.2(b) of the Plan).

## INTRODUCTION

1.    The WARN Claimants do not object to confirmation of the Plan except insofar as it does not establish an adequate claims reserve for the WARN Claimants' approximate $4.8 million priority wage claim; as such, the Plan is not feasible.

## FACTUAL BACKGROUND

**A.    General Background**

2.    The Debtors operated a full service, non-bank mortgage lender that originated residential mortgages through a national platform.

3.    On June 30, 2022, Debtors each filed a Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code. (Bankr. No. 22-10584) (Bankr. No. 22-10583). On July 1, 2022, the Debtors' cases were consolidated for joint administration. (Bankr. No.22-10584 (CTG), D.I. 56).

**B.  Background of the WARN Act Claims**

4.    Debtors employed approximately 470 employees who worked at, reported to, or, received assignments from facilities in Plano, Texas, Henderson, Nevada and Fort Worth, Texas (collectively, the "Facilities") and who, in the aggregate, worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States.

5.    Debtors were an "employer," as that term is defined in section 2101(a)(1) of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 – 2109 (the "WARN Act") and continued to operate as a business until they decided to order mass layoffs or plant closings at the Facilities.

6.      On or about June 24, 2022, Debtors ordered mass layoffs and/or plant closings, as those terms are defined by 29 U.S.C. § 210l(a)(2) and 20 C.F.R. § 639.3(i), at the Facilities, affecting some 470-or-so employees.

7.      The mass layoffs or plant closings at the Facilities resulted in "employment losses" as that term is defined by 29 U.S.C. §2101(a)(2) for at least fifty of Debtors' employees as well as thirty-three percent (33%) of Debtors' workforce at the Facilities, excluding "part-time employees," as that term is defined by 29 U.S.C. § 2l01 (a)(8).

8.      The WARN Claimants were terminated without cause on their part, as part of or as the reasonably foreseeable consequence of the mass layoffs or plant closings ordered at the Facilities.

9.      The WARN Claimants are "affected employees", within the meaning of 29 U.S.C. § 210l (a)(5).

10.      Debtors were required by the WARN Act to give the WARN Claimants at least 60 days advance written notice of their terminations.

11.      Debtors failed to give the WARN Claimants written notice that complied with the requirements of the WARN Act.

12.      The WARN Claimants are "aggrieved employees" as that term is defined in 29 U.S.C. § 2104(a)(7).

13.      Debtors failed to pay the WARN Claimants their respective wages, salary, commissions, bonuses, accrued vacation and personal time off for 60 days following their respective terminations, and failed to make the pension and 401(k) contributions and provide employee benefits under COBRA for 60 days from and after the dates of their respective terminations.

14.     On June 30, 2022, WARN Claimants commenced an adversary proceeding against the Debtors, in this Court (Bankr. No. 22-10584 (CTG), Adv. Pro. No. 22-10584 (CTG),  Adv. D.I. 31) (the "Adversary Proceeding"). The Adversary Proceeding Complaint ("Complaint") asserts WARN Act damages for the WARN Claimants as entitled to wage priority claim treatment under 11 U.S.C. § 507(a)(4) and (5), and any remainder as a general unsecured claim, as well as reasonable attorneys' fees and expenses under 29 U.S.C. § 2104(a)(6). (Adv. D.I. 1, Prayer for Relief).

15.     In its Answer to the Complaint, First Guaranty Mortgage Corp. admits that it employed each of the named Plaintiffs until June 24, 2022 (Adv. D.I. 15, ¶¶ 7, 11, 15, 18, 24), that on June 24, 2022 Plaintiffs were served with notice that they would be separated from employment on June 24, 2022 (Adv. D.I. 15, ¶¶ 30, 31), that Plaintiffs were not served with written notice prior to June 24, 2022 (Adv. D.I. 15, ¶ 32), that Plaintiffs' last day of employment was June 24, 2022 (Adv. D.I. 15, ¶33), that its headquarters are located in Plano, Texas and that it operated facilities in Henderson, Nevada and Fort Worth Texas (Adv. D.I. 15, ¶¶ 37, 38), and that its books and records contain the identity of putative class members as well as their rate of pay and benefits (Adv. D.I. 15, ¶¶ 44, 45).

16.     On October 14, 2022, WARN Claimants filed a motion for class certification, which seeks certification of a class comprised of Plaintiffs and all persons (i) who worked at, received assignments from, or reported to one of the Facilities (ii) who were terminated without cause beginning on or about June 24, 2022 and within 30 days of that date, or were terminated without cause as the reasonably foreseeable consequence of the mass layoff and/or plant closing ordered on or about June 24, 2022, (iii) who are "affected employees" within the meaning of 29

U.S.C. § 2101(a)(5) and (iv) who have not filed a timely request to opt-out of the class. (Adv. D.I. 16).

17.    Debtors admit in the Plan that the "June 24 RIF", as they described it, resulted in the termination of approximately 471 employees.  (D.I. 525, p. 36 of 98).

18.    The WARN Claimants' claims against the Debtors under the WARN Act (the "WARN Claims") comprise, in whole or in part, priority claims under 11 U.S.C. §§ 507(a)(4) and (a)(5) because they are wage and benefit claims arising within 180 days of the Debtors' bankruptcy filings.

19.    The WARN Claimants estimate that their WARN Claim total is $6.2 million of which approximately $4.8 million (not including litigation fees and expenses) constitutes a § 507(a)(4) wage priority amount comprising the Priority WARN Act Claim under the Plan.

### C. The Plan

20.    The Plan provides that Priority Non-Tax Claims (defined as including a "Priority WARN Act Claim") are unimpaired (D.I. 525, pp. 31, 66 of 98).  It estimates those Claims to total $1,534,196.  (D.I. 525, p. 14 of 98).

21.    The Plan defines a "Priority WARN Act Claim" as "a Claim or any portion of a Claim that seeks damages under the WARN Act and that meets the requirements and falls within the limitations of Bankruptcy Code § 507(a)(4)".  *Id*. at 31 of 98.  .

22.    The Plan defines a "Priority Tax Claim" as "a Claim of a Governmental Unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code".  *Id*. at 31 of 98.

23.    The Plan provides that, based upon the Debtors' current projections, holders of Allowed Administrative Claims, Priority Claims (defined in the Plan as "a Priority Non-Tax Claim or a Priority Tax Claim") and Other Secured Claims will be paid in full under the Plan, while

holders of Allowed General Unsecured Claims will receive a projected distribution to be determined based on various assumptions. *Id*. at 31, 52 of 98. The Plan does not provide an estimate of the total amount of those claims.

## **ARGUMENT**

24. The Plan is unconfirmable because it is not feasible. 11 U.S.C. § 1129(a)(11).

25. Section 1129(a)(9) requires that priority claims be paid in full.

26. As noted, the Plan provides for Priority Claims to be paid in full, but it does not contain sufficient means to accomplish this. Where a plan does not contain sufficient means to pay priority claims in full, it is not feasible. *See In re Harbin*, 486 F.3d 510, 518 (9th Cir. 2007) (bankruptcy court erred in confirming plan where it did not consider impact of appeal of conditionally disallowed claim on plan feasibility); *In re Holmes*, 301 B.R. 911, 915 (Bankr. M.D. Ga. 2003) (chapter 11 plan not feasible where debtor merely hoped to compromise IRS claim and "[d]ebtor does not have the ability to pay the IRS's priority tax claim of $9,372,245 over a term of sixty months as proposed in his Chapter 11"); *In re Thornhill*, 268 B.R. 570, 573 (Bankr. E.D. Cal. 2001) (chapter 13 plan not feasible where it did not provide for payment of priority and secured claims in full).

27. The proper method of addressing priority claims is to establish a disputed claims reserve sufficient to pay all disputed priority claims in full. While the Plan says it will pay in full all Allowed Administrative Claims, Priority Claims and Other Secured Claims it provides no estimate of the total of these claim amounts or other information on which to predicate an assumption that the Priority WARN Act Claims will, in fact, be paid in full.

28.     Although the Debtors state in the Plan that "the Debtors believe that the liquidation pursuant to the Combined Plan and Disclosure Statement will meet the feasibility requirements of the Bankruptcy Code" (D.I. 525, p. 51 of 98), Debtors have not provided evidence of this.

29.     There is certainly no guaranty that Debtors will be able to fund $4.8 million in Priority WARN Act Claims.  If Debtors have no uncertainty as to the ability to pay such claims in full, then Debtors should have no objection to reserving at least $4.8 million as the Priority WARN Act Claim reserve.

## CONCLUSION

For all of these reasons, this Court should either deny confirmation of the Plan or require that the Debtors expressly reserve for the full value of all Priority Claims, including the Priority WARN Act Claims.  Further, WARN Claimants should be deemed to have opted-out of the Third Party Releases included in the Plan (i.e., the releases set forth in Section 16.2(b) of the Plan) based on their opt-out election, noted herein.

DATED:  October 26, 2022                    Respectfully submitted,

                                    By:     /s/ Christopher D. Loizides
                                            Christopher D. Loizides (No. 3968)
                                            **LOIZIDES, P.A.**
                                            1225 King Street, Suite 800
                                            Wilmington, Delaware 19801
                                            Telephone: (302) 654-0248
                                            Facsimile: (302) 654-0728
                                            E-mail: loizides@loizides.com

OF COUNSEL:

**RAISNER ROUPINIAN LLP**
Jack A. Raisner
René S. Roupinian
270 Madison Avenue, Suite 1801
New York, New York 10016
Telephone: (212) 221-1747
Facsimile: (212) 221-1747

Email: rsr@raisnerroupinian.com
Email: jar@raisnerroupinian.com

**LANKENAU & MILLER, LLP**
Stuart J. Miller (SJM 4276)
100 Church Street, 8th FL
New York, NY 10007
P: (212) 581-5005
F: (212) 581-2122
Email: stuart@lankmill.com

**THE GARDNER FIRM, P.C.**
Mary E. Olsen (OLSEM4818)
M. Vance McCrary (MCCRM4402)
182 St. Francis Street
Suite 103
Mobile, Alabama 36602
P: (251) 433-8100
F: (251) 433-8181
Email: molsen@thegardnerfirm.com

*Attorneys for Plaintiffs and the putative class*