## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| FIRST GUARANTY MORTGAGE | ) Case No. 22-10584 (CTG) |
| CORPORATION, *et al.,*[1] | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Objection Deadline: TBD** |
| | ) **Hearing Date: TBD** |

**DEBTORS' MOTION FOR ENTRY OF ORDER IN AID OF CONFIRMATION OF DEBTORS' PLAN (I) APPROVING FIRST AMENDMENT TO CASH FLOW DIP CREDIT AGREEMENT INCREASING AVAILABLE TERM LOAN COMMITMENTS; (II) PROVIDING FOR ADDITIONAL FUNDING CONTEMPLATED BY THE PLAN; (III) AMENDING APPROVED DIP BUDGET; AND (IV) GRANTING RELATED RELIEF**

First Guaranty Mortgage Corporation ("FGMC") and Maverick II Holdings, LLC ("Maverick"), the below-referenced affiliated debtors and debtors in possession (together, the "Debtors") under chapter 11 of title 11 of the United States Code, §§ 101 et seq. (the "Bankruptcy Code"), in these chapter 11 cases hereby file this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 105, 361, 362,364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e), 503, 506, 507, 552 and 1142 of the Bankruptcy Code and Rules 2002, 4001(c), 6004, 9013 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the First Amendment to Senior Secured Superpriority Debtor-in-Possession Term Loan Agreement and Security Agreement dated as of October [31], 2022(the "Cash Flow DIP Amendment "), by and between FGMC (the "Borrower") and Maverick as the Guarantor, and LVS II SPE XXXIV LLC (the "Lender" or "Cash

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  First Guaranty Mortgage Corporation (9575); and Maverick II Holdings, LLC (5621). The Debtors' mailing address is 5800 Tennyson Parkway, Suite 450, Plano, TX 75024.

Flow DIP Lender"), a true and correct copy of which is attached as <u>Exhibit 1</u> to the Proposed Order,.  In support thereof, the Debtors hereby state as follows:

## PRELIMINARY STATEMENT

1.      The Debtors seek authority to enter into the First Amendment ("<u>First Amendment</u>") to Senior Secured Superpriority Debtor-in-Possession Term Loan Agreement and Security Agreement (the "<u>Cash Flow DIP Credit Agreement</u>") provided by LVS II SPE XXXIV LLC (the "<u>Cash Flow DIP Lender</u>").  The relief sought in this Motion is critical for the Debtors to obtain the necessary liquidity to pay their ordinary course operating costs incurred on or prior to consummation of the Debtors proposed Amended Combined Plan, establish reserves and fund administrative expenses and priority claims in connection with the Plan (as defined below), which is set for hearing on confirmation on October 31, 2022.  As shown by Declaration of Tanya Meerovich In Support of  Confirmation of the Amended Combined Disclosure Statement and Chapter 11 Plan dated October 28, 2022 [D.I. 631],  the Plan has the support of the Official Committee of Unsecured Creditors , the Cash Flow DIP Lender and one or more of the classes of creditors, and the additional liquidity described below is crucial to achieving consummation of the Plan in order to rationally winddown the business and maximize the value of the balance of the estates' assets.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware,* dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and pursuant to Rule 9013-1(f) of the Local Rules of the Bankruptcy Court for the District of Delaware ("<u>Local Rules</u>") the Debtors consent to the entry of a final order by

this Court in connection with this Motion to the extent that it is later determined that this Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

3.      Venue of the above-captioned case and this Motion are proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105(a), 361, 362, 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3) and 364(e), 507, 552 and 1142 the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003(b), 6004(a), 6004(h), and 9014, and 9013-1, and Local Rules 2002-1, 4001-1, 4001-2 and 9013-1.

## **BACKGROUND**

5.      On June 30, 2022 (the "Petition Date"), the Debtors commenced the Chapter 11 Cases.  The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

6.      Additional information regarding the Debtors' businesses and capital structure, as well as a description of the events precipitating the filing of these Chapter 11 Cases, is set forth in the *Declaration of Aaron Samples In Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 19] (the "First Day Declaration"), which is fully incorporated herein by reference.

7.      On June 30, 2022, the Debtors filed the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Liens and Superpriority Administrative Expense Status; (IV) Granting Adequate Protection; (V) Modifying the Automatic Stay; (VI) Scheduling a Final Hearing; and (VII) Granting Related Relief* [Docket

No. 22] (the "Cash Flow DIP Motion").  Through the Cash Flow DIP Motion, the Debtors sought interim and final approval of the Cash Flow DIP Facility pursuant to the terms of the Cash Flow DIP Credit Agreement.

8.      On July 1, 2022, the Bankruptcy Court entered the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Liens and Superpriority Administrative Expense Status; (IV) Granting Adequate Protection; (V) Scheduling a Final Hearing; (VI) Modifying the Automatic Stay; and (VII) Granting Related Relief* [Docket No. 67](the "Interim Cash Flow DIP Order").

9.      On August 4, 2022, the Bankruptcy Court entered the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Liens and Providing Super-Priority Administrative Expense Status; (IV) Granting Adequate Protection; (V) Modifying the Automatic Stay; and (VI) Granting Related Relief* [Docket No. 292] (the "Final Cash Flow DIP Order").

10.      On October 7, 2022, The Bankruptcy Court entered *Order (I) Granting Interim Approval of the Disclosures; (II) Scheduling a Combined Hearing to Consider Final Approval of Disclosures and Confirmation of the Combined Plan, and Setting Deadlines Related Thereto: (III) Approving Solicitation Packages and Procedures: (IV) Approving the Forms of Ballot; and (V) Granting Related Relief* [Docket No. 524](the "Conditional Approval Order").  Immediately thereafter, the Debtors filed the *Amended Combined Disclosure Statement and Chapter 11 Plan of First Guaranty Mortgage Corporation and Debtor Affiliate* [Docket No. 525] (as subsequently

amended, supplemented or otherwise modified, the "Plan"), which includes, among other things, the terms of the Committee Settlement, as defined therein.[2]

11.    Pursuant to the terms of the Committee Settlement, the Cash Flow DIP Lender committed to provide additional funding to the Debtors and Liquidating Trust as follows: (i) prior to or on the Effective Date, the DIP Budget Amount;[3] (ii) on the Effective Date, the Additional Administrative Claims Amount;[4] and (iii) on the Effective Date, the Trust Funding Amount[5].

12.    In accordance with the Committee Settlement the Cash Flow DIP Lender has agreed to provide the additional funding through an increase of its commitments under the Cash Flow DIP Facility to include the Effective Date Loans.  Pursuant to the Cash Flow DIP Amendment and the commitment to make the Effective Date Loans, the Operating Amount of the Delayed Draw Commitment will increase from $22,000,000 to an aggregate amount of $29,000,000.00, the Additional Administrative Claims Amount will be $1,200,000.00, and the Trust Funding Amount will be $5,500,000.00.  Together with the existing commitments under the Cash Flow DIP Facility, the increased commitments will provide the Debtors' estates with $51,700,000.00 in available postpetition financing from the Cash Flow DIP Lender.  The interest rate, the default rate and commitment fees remain unchanged under the Cash Flow DIP Amendment, and the Maturity date is extended to 127 days after the Petition Date to and including November 4, 2022.

13.    The First Amendment implements the increased commitments and maturity date change described and above. However, the First Amendment does not require any changes to the

---

[2] Pursuant to the Plan, the Committee Settlement means the settlement reached between the Debtors, the Committee and the Cash Flow DIP Lender resolving the Committee's objections to the previous version of the Combined Plan and Disclosure Statement, which terms are incorporated into Section 14 thereof.
[3] DIP Budget Amount has the meaning provided in the Plan.
[4] Additional Administrative Claims Amount has the meaning provided in the Plan, but will not exceed $1,200,000.00.
[5] Trust Funding Amount has the meaning provided in the Plan, but will not exceed $5,500,000.00.

Final Cash Flow DIP Order other than the increase in commitments and change in maturity date described above. The stipulations, waivers and releases provided for under the Final Cash Flow DIP Order are to be preserved unaltered, amended or modified by the proposed order approving the First Amendment (the "Cash Flow DIP Amendment Order"). As such the requirements of a hearing and notice has been met by virtue of the notice of the Amended Plan given to creditors and other interested parties. The requirements of Local Rule 4000-1 with respect to the matrix summary of material terms appears below only to the extent of proposed changes to the Cash Flow DIP Documents, as defined in the Final Cash. See below at paragraph [24].

14. It is a condition to Cash Flow DIP Lender's obligation to make Effective Date Loans, that the Bankruptcy Court enter an order approving the Cash Flow DIP Amendment, including the amended Approved DIP Budget (as defined in the Final Cash Flow DIP Amendment Order) and authorizing the Debtors to borrow and Lender to make, the Effective Date Loans. Under the Cash Flow DIP Amendment, the use of Effective Date Loans shall be only in accordance with the Plan and Confirmation Order (as defined in the Plan).

15. The Debtors have an immediate and critical need to obtain the funds to be made available pursuant to the additional Commitments under the Cash Flow DIP Amendment in order to fund administrative expenses and priority claims under the proposed Plan, to fund the winddown of the Debtors' business and to fund efforts to recover assets belonging to the Debtors' estates. In the absence of the availability of funds in accordance with the additional extensions of credit under the Cash Flow DIP Amendment and the proposed Final Cash Flow DIP Amendment Order, the required funding for consummation of the Plan would not be possible. The access of the Debtors to sufficient working capital to complete the winddown and to provide the Trust Funding Amount requires recourse to additional liquidity through the Cash Flow DIP Amendment Facility to

achieve a successful reorganization. Consummation of the transactions contemplated by the Cash Flow DIP Amendment and the Cash Flow DIP Amendment Order is therefore in the best interests of the Debtors' estates.

16.     Pursuant the Cash Flow DIP Amendment, the Debtors and the Cash Flow DIP Lender have agreed to modified budgets consistent with the Debtors' agreed use of the increased Operating Amount, the Additional Administrative Claims Amount and the Trust Funding. The Approved DIP Budget is attached to the Cash Flow DIP Amendment as Exhibit A. The Cash Flow Lender and the Committee have agreed on the Trust Funding Amount as being sufficient to fund estimated post-Effective Date costs and expenses of the Liquidating Trust. The agreed Trust Budget for the Liquidating Trust is attached as Exhibit D, to the Amended, Modified, and Restated Combined Disclosure Statement and Chapter 11 Plan of First Guaranty Mortgage Corporation and Debtor Affiliate.[D.I. --]

## **RELIEF REQUESTED**

17.     By this Motion, the Debtors seek entry of the attached order: (I) approving the Cash Flow DIP Amendment; (II) authorizing the Debtors' execution of the Cash Flow DIP Amendment as Borrower and Guarantor; and (III) authorizing the Debtors to incur additional obligations contemplated by the Cash Flow DIP Amendment, which obligations shall become Cash Flow DIP Obligations (as defined in the Final Cash Flow DIP Order), which shall be afforded all of the claims, liens, and other rights set forth in, and shall be subject to the terms of, the (a) Cash Flow DIP Documents (as amended by the Cash Flow DIP Amendment), including the Final Cash Flow DIP Order and (a) the Plan and Confirmation Order. The Debtors do not seek to modify any, and wish to preserve all, other provisions of the Final Cash Flow DIP Order.

## BASIS FOR RELIEF REQUESTED

18.     The Cash Flow DIP Amendment represents a reasonable approach to funding of obligations related to consummation of the Plan, with the support of the Committee and the Cash Flow DIP Lender, which the Debtors submit should be approved.

19.     **Summary of Terms of DIP Financing**. In accordance with Bankruptcy Rules 4001(b)—(d) and Local Rule 40012(a), the below chart summarizes the changes to significant terms of the Cash Flow DIP Facility  proposed by Cash Flow DIP Amendment, the Cash Flow DIP Amendment  Order and Cash Flow DIP Documents.

| SUMMARY OF CHANGES TO MATERIAL TERMS OF DIP FACILITY[6] | | |
|---|---|---|
| **DIP Facility** Bankruptcy Rule 4001(c)(1)(B); Local Rule 4001-2(i)(B) | Under the Cash Flow DIP Amendment, the Cash Flow DIP Lender's commitment shall consist of (a) a senior secured, superpriority multi-draw term loan facility, in the aggregate amended amounts not to exceed the sum of (i) $29,000,000.00 (the "Operating Amount") plus (ii) $5,500,000.00 (the "Trust Funding Amount" as defined in the Plan), plus (iii) the $1,200,000 (the "Additional Administrative Claim Amount" as defined in the Plan), and leaving unchanged (iv) the Mortgage Loan Funding Amount not to exceed $16,000,000 (v) the Pipeline Sale Transaction Funding Amounts, and (iv) the roll up facility consisting of the Prepetition Bridge Loan Obligations that are remaining after the Prepetition B2 FIE Financed Loan Obligations are refinanced by the DIP Repo Facility (i.e., the Roll-Up Obligations), which Roll-Up Obligations shall be converted into a portion of the outstanding Cash Flow DIP Obligations.  . | Cash Flow DIP Credit Agreement at p.1  Definitions  Cash Flow DIP Credit Agreement Amendment at §2 |

---

[6] This summary is qualified in its entirety by reference to the applicable provisions of the Cash Flow DIP Credit Amendment Agreement. To the extent there exists any inconsistency between this summary and the provisions of the Cash Flow DIP Credit Amendment Agreement or the Final Cash Flow DIP Order or  the Cash Flow DIP Amendment Order, the provisions of the Cash Flow DIP Credit Amendment Agreement,  the Final Cash Flow DIP Order or the Cash Flow DIP Amendment Order, as applicable, shall control.

| | | |
|---|---|---|
| **Borrowing Limits** Bankruptcy Rule4001(c)(1)(B); Local Rule 4001-2(i)(A), (a)(iii) | Modified as set forth above. | Id. |
| **Budget** Bankruptcy Rule 4001(c)(1)(B) | Approved Budget shall have the meaning set forth in the Final Cash Flow DIP Amendment Order, as amended pursuant to the Committee Settlement (as defined in the Plan) | Plan at p.9 |
| **Maturity Date** Bankruptcy Rule 4001(c)(1)(B), Local Rule 4001-2(a)(ii); Local Rule 4001- 2(a)(i)(B), (M), (a)(ii) | The termination date (the "Termination Date") of the Cash Flow DIP Facility changed solely to provide Milestone (j) is extended 127 days after the Petition date if the Plan is not consummated. | DIP Credit Agreement at p.19 <br><br> Cash Flow DIP Amendment at Milestone (j) |
| **Milestones** Bankruptcy Rule 4001(c)(1)(B)(vi) | Amendment changes Milestone (j) Plan consummation to November 4, 2022 (127 days after the Petition Date) | Cash Flow DIP Credit Agreement at 12-13 <br><br> Cash Flow DIP Credit Amendment |
| **Conditions to Closing of DIP Facility** Bankruptcy Rule 4001(c)(1)(B); Local Rule 4001-2(a)(i)(E) | Usual and Customary for facilities of this type. | Cash Flow DIP Credit Agreement §6 <br><br> Cash Flow DIP Credit Amendment |
| | | |
| **Effect of Debtors' Stipulations on Third Parties** Bankruptcy Rule 4001(c)(1)(B)(iii), (vii), (viii) | Unchanged. | Final Cash Flow DIP Order ¶23(a) |
| | | |
| **Provisions that Immediately Approve All Terms and Conditions of the** | Cash Flow DIP Amendment authorizes immediate borrowing authority to lend Effective Date Loans on or prior to Effective Date and the facility terminates on the Effective Date of the Plan or 127 days after the Petition Date. | Cash Flow DIP Amendment |

| Underlying Loan Agreement | | |
|---|---|---|
| **Budget**<br><br>Local Rule 4001-2(a)(iii) | The Approved DIP Budget as changed by virtue of the Committee Settlement under the Plan.<br><br>The Cash Flow DIP Amendment increases available funding in an amount the Debtors believe should be sufficient to properly fund winddown activities and pursue financial asset recoveries. | Cash Flow DIP Amendment |

20.     The above summary is qualified in its entirely by reference to the Cash Flow DIP Credit Agreement and the Cash Flow DIP Amendment.

**A.      Entry into the Cash Flow DIP Facility is an Exercise of the Debtors' Sound Business Judgment**

21.     The Debtor seeks to acquire addition funding to meet its agreed funding requirements with the Creditors' Committee.   With adequate funding, satisfaction of administrative and priority claims becomes more certain  and the economic threat to the ability of the Liquidating Trust to function in accordance with its obligations under the Plan is minimized.

22.     Section 364 of the Bankruptcy Code authorizes a debtor to obtain secured or superpriority financing under certain circumstances as discussed in detail below. Courts grant debtors considerable deference in acting in accordance with their business judgment in obtaining postpetition secured credit, so long as the agreement to obtain such credit does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code. *See, e.g., In re L.A. Dodgers LLC,* 457 B.R. 308, 313 (Bankr. D**.** Del. 2011) ("[C]ourts will almost always defer to the business judgment of a debtor in the selection of the lender."); *In re Barbara K Enters., Inc.,* No. 08-11474 (MG), 2008 WL 2439649, at *14 (Bankr. S.D.N.Y. June 16, 2008) (explaining that courts defer to a debtor's business judgment "so long as a request for financing does not `leverage the bankruptcy process' and unfairly cede control of the reorganization to one party in interest"); *In re Farmland*

*Indus., Inc.,* 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003) (noting that approval of postpetition financing requires, among other things, an exercise of "sound and reasonable business judgment"); *In re Trans World Airlines, Inc.,* 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving a postpetition loan and receivables facility because such facility "reflect[ed] sound and prudent business judgment"); *In re Ames Dep't Stores, Inc.,* 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 [of the Bankruptcy Code] is to be utilized on grounds that permit [a debtor's] reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest.").

23.     Here, the Debtors were fortunate to secure postpetition financing and seek only to amend the facility to increase accessible funding commitments to satisfy the Committee Settlement under the Plan.

24.     For the reasons set forth above, the Debtors, in an exercise of their sound business judgment, submit that execution of the Cash Flow DIP Amendment is a rational exercise  of the Debtors business judgement made with the full support of the Creditors Committee.

## NOTICE

25.     Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee for the District of Delaware; (ii) the Official Committee of Unsecured Creditors; (iii) the Debtors' secured lenders; (iv) MassMutual; and (v) parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that no other or further notice is necessary or required.  Notice of the hearing to consider confirmation of the Plan has been given pursuant to Bankruptcy Rule 2002 and the Conditional Approval Order.

## **CONCLUSION**

WHEREFORE, the Debtors request that this Court enter an order, in substantially the same form as the Proposed Order and grant such other and further relief as may be just and proper.

Dated: October 31, 2022

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Mary F. Caloway*
Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899 (Courier 19801)
Tel:     (302) 652-4100
Fax:     (302) 652-4400
Email:  ljones@pszjlaw.com
             tcairns@pszjlaw.com

-and-

Samuel R. Maizel (*Pro Hac Vice*)
Tania M. Moyron (*Pro Hac Vice*)
**DENTONS US LLP**
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Email: samuel.maizel@dentons.com
             tania.moyron@dentons.com

Lauren Macksoud (*Pro Hac Vice*)
Claude D. Montgomery (*Pro Hac Vice*)
**DENTONS US LLP**
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 632-8390
Email: lauren.macksoud@dentons.com
             claude.montgomery@dentons.com

David F. Cook (DE Bar No. 6352)
**DENTONS US LLP**
1900 K Street, NW
Washington, DC 20006
Telephone:  (202) 496-7500
Email:  david.f.cook@dentons.com

*Counsel for Debtors and Debtors in Possession*

12

# EXHIBIT A
## PROPOSED ORDER

DOCS_DE:241128.2 28311/001
US_ACTIVE\122582052\V-2
US_ACTIVE\122591947\V-5
*ACTIVE 683034397v2*

US_ACTIVE\122591947\V-7
DOCS_DE:241189.1 28311/001