# Exhibit A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>FIRST GUARANTY MORTGAGE<br>CORPORATION, *et al.*,[1]<br><br>    Debtors. | Chapter 11<br><br>Case No. 22-10584 (CTG)<br><br>(Jointly Administered)<br><br>**Ref. Docket Nos. 22 and 67** |

**[PROPOSED] ORDER IN AID OF CONFIRMATION OF DEBTORS' PLAN (I)
APPROVING FIRST AMENDMENT TO CASH FLOW DIP CREDIT
AGREEMENT INCREASING AVAILABLE TERM LOAN COMMITMENTS;
(II) PROVIDING FOR ADDITIONAL FUNDING CONTEMPLATED  BY THE
PLAN; (III) AMENDING APPROVED DIP BUDGET; AND (IV) GRANTING
RELATED RELIEF**

Upon the motion, dated October 30, 2022 (the "Cash Flow DIP Amendment Motion"), of

First Guaranty Mortgage Corporation ("FGMC") and Maverick II Holdings, LLC ("Maverick"),

the debtors and debtors in possession (together, the "Debtors") in the above-captioned chapter 11

cases (the "Cases"), seeking entry of an order in aid of confirmation of Debtors' Plan on shortened

notice (the "Cash Flow DIP Amendment Order"), pursuant to sections 105, 361, 362, 363,

364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506, 507, 552 and 1142 of chapter 11 of

title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001(c), 6004, 9013 and

9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1,

4001-1, 4001-2 and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United

States Bankruptcy Court for the District of Delaware (the "Local Rules"), *inter alia*:

  (i)  approving First Amendment to Senior Secured Superpriority Debtor-in-Possession
       Term Loan Agreement and Security Agreement by and between FGMC as

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification
number are:  First Guaranty Mortgage Corporation (9575); and Maverick II Holdings, LLC (5621).  The Debtors'
mailing address is 5800 Tennyson Parkway, Suite 450, Plano, TX 75024.

Borrower (the "Borrower") and Maverick as Guarantor and LVS II SPE XXXIV LLC (the "Lender" or "Cash Flow DIP Lender"), a true and correct copy of which is attached as Exhibit 1 hereto (the "Cash Flow DIP Amendment");

(ii)    authorizing, pursuant to sections 105(a), 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e), of the Bankruptcy Code, the Debtors to execute, deliver, perform under and enter into transactions under that certain Cash Flow DIP Amendment providing for the additional funding contemplated by the Committee Settlement as defined in the *Amended Combined Disclosure Statement and Chapter 11 Plan of First Guaranty Mortgage Corporation and Debtor Affiliate* [Docket No. 525](the "Plan");

(iii)    modifying and amending the Approved DIP Budget as defined in the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Liens and Providing Super-Priority Administrative Expense Status; (IV) Granting Adequate Protection; (V) Modifying the Automatic Stay; and (VI) Granting Related Relief* [Docket No. 292] (the "Final Cash Flow DIP Order") in the manner approved by the Cash Flow DIP Lender and agreed to by the Debtors in connection with confirmation of the Plan;

(iv)    preserving, subject to the Carve-Out as defined in the Final Cash Flow DIP Order, the priorities identified in the Final Cash Flow DIP Order, the grant of superpriority claims therein and the Cash Flow DIP Liens to the Cash Flow DIP Lender as granted therein;

(v)    preserving unaltered, modified or amended the stipulations, releases and waivers made by the Debtors pursuant to the Final Cash Flow DIP Order;

(vi)    authorizing the Debtors to use the proceeds of the Additional Commitments as defined in the Cash Flow DIP Amendment in accordance with this Cash Flow DIP Amendment Order, the Final Cash Flow DIP Order, the Cash Flow DIP Documents[2] and the Confirmation Order; and

(vii)    modifying the automatic stay to the extent set forth herein and in the Cash Flow DIP Documents.

The United States Bankruptcy Court for the District of Delaware (the "Court") having

considered the Cash Flow DIP Amendment Motion, the exhibits attached thereto, the declarations

in support of the Cash Flow DIP Motion as referenced therein and the Cash Flow DIP Documents

---

[2] The meaning of defined terms not set forth herein shall have the meaning set forth in the Final Cash Flow DIP Order.

(including the Cash Flow DIP Amendment); and the Court having (i) entered the Order Shortening Notice on Cash Flow DIP Amendment Motion and (ii) scheduled a hearing (the "<u>DIP Amendment Hearing</u>") on the Cash Flow DIP Amendment Motion on October 31, 2022, at 10:00 a.m. (prevailing Eastern Time), to consider entry of this Cash Flow DIP Amendment Order in aid of confirmation of the Plan; and notice of the DIP Amendment Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b) (c), and (d); and the Final Hearing having been held and conducted, and all objections, if any, to the relief requested in the Cash Flow DIP Amendment Motion having been withdrawn, resolved or overruled after due consideration thereof; and pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, notice of the Cash Flow DIP Amendment Motion and the relief sought at the DIP Amendment Hearing having been given by the Debtors; and this Court having considered the Cash Flow DIP Amendment Motion and all pleadings related thereto, including the record made by the Debtors at the hearing on confirmation of the Plan and the DIP Amendment Hearing; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE PLEADINGS AND THE RECORD, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A.    <u>Petition Date</u>. On June 30, 2022 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

B.    <u>Joint Administration</u>.  On July 1, 2022, the Court entered an order approving the joint administration of the Cases. [Docket No. 132].

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as appropriate, pursuant to Bankruptcy Rule 7052.

C.      <u>Debtors in Possession</u>.  Since the Petition Date, the Debtors have continued in the management and operation of their businesses and properties as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

D.      <u>Jurisdiction and Venue</u>.  This Court has core jurisdiction over the Cases, the Cash Flow DIP Amendment Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue for the Cases and proceedings on the Cash Flow DIP Amendment Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Court may enter a final order consistent with Article III of the United States Constitution.  The predicates for the relief sought herein are sections 105, 361, 362, 363(c), 363(e), 364(c), 364(d)(1), 364(e), 503, 506, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, 9013 and 9014, and Local Rules 2002-1, 4001-1, 4001-2 and 9013-1.

E.      <u>The Committee</u>.  On July 14, 2022, the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>") appointed an official committee of unsecured creditors in the Cases [Docket No. 132] pursuant to section 1102 of the Bankruptcy Code (a "<u>Creditors' Committee</u>").

F.      <u>Final Cash Flow DIP Order</u>.  On August 4, 2022, the Court entered the Final Cash Flow DIP Order.

G.      <u>Findings Regarding Corporate Authority</u>.  The Debtors have all requisite corporate power and authority to execute and deliver the Cash Flow DIP Amendment and to execute any related documents to which they are parties to and to perform their obligations thereunder.

H.      <u>Findings Regarding Additional Postpetition Financing Commitments</u>.

(a)      *Good Cause*.  Having considered the Declaration of Tanya Meerovich In Support of Confirmation of the Amended Combined Disclosure Statement and Chapter 11 Plan dated October 28, 2022 [D.I. 631] and proffered in support of the Cash Flow DIP Amendment Motion

4

as well as the other declarations and evidence submitted by the Debtors in these cases, and having considered the entire record before this Court, including representations of interested parties and all evidence presented to the Court, it is apparent to this Court that good and sufficient cause has been shown for the entry of this Final Cash Flow DIP Amendment Order.

(b)     *The Plan Process is Mature.* Pursuant to the terms of the Committee Settlement, as defined in the Debtors' *Amended Combined Disclosure Statement and Chapter 11 Plan of First Guaranty Mortgage Corporation and Debtor Affiliate* [Docket No. 525], the Cash Flow DIP Lender committed to provide additional funding to the Debtors and Liquidating Trust as follows: (i) prior to or on the Effective Date, the DIP Budget Amount;  (ii) on the Effective Date, the Additional Administrative Claims Amount;  and (iii) on the Effective Date, the Trust Funding Amount.  In accordance with the Committee Settlement, the Cash Flow DIP Lender has agreed to provide the Effective Date Loans as additional funding through an increase of the Available Term Loan Commitments under the Cash Flow DIP Facility.  Pursuant to the Cash Flow DIP Amendment at the request of the Debtors, and subject to the terms of Cash Flow DIP Documents, the Plan, and the Confirmation Order, the Operating Amount of the Delayed Draw Commitment will increase from $22,000,000 to an aggregate amount of $29,000,000.00, the Additional Administrative Claims Amount is fixed at $1,200,000 and the Trust Funding Amount will be fixed at $5,500,000.00, together with the original Mortgage Loan Funding Amount of $16,000,000. Such funding provides the Debtors' estates with over $51,700,000.00 in available postpetition financing to be fully borrowed by the Debtors on or before the Effective Date of the Plan . The interest rate and commitment fees remain unchanged under the Cash Flow DIP Amendment, and the Maturity date is extended to and through the earlier of (a) the Effective Date or (b) November 4, 2022.

5

(c)     *Necessity of Amendment to Cash Flow DIP Facility*.   The Debtors have an immediate and critical need to obtain the funds to be made available pursuant to the additional Commitments under the Cash Flow DIP Amendment in order to fund administrative expenses and priority claims under the proposed Plan, to fund the winddown of the Debtors' business and fund efforts to recover assets belonging to the Debtors' estates.   In the absence of the availability of funds in accordance with the additional extensions of credit under the Cash Flow DIP Amendment and this Final Cash Flow DIP Amendment Order, the required funding for consummation of the Plan would not be possible.   The access of the Debtors to sufficient working capital to complete the winddown of the Debtors and their estates and consummate the Plan requires recourse to additional liquidity through additional Commitments under the Cash Flow DIP Facility. Consummation of the transactions contemplated by the Cash Flow DIP Amendment and this Cash Flow DIP Amendment Order is supported by the Creditors Committee and is in the best interests of the Debtors' estates.

(d)     *No Financing Available on More Favorable Terms*.   Given their financial condition and capital structure, and despite their diligent efforts, the Debtors are unable to reasonably obtain from other sources sufficient postpetition liquidity, and the Cash Flow DIP Facility is the only such operational financing facility available at this time.   The Debtors have been unable to obtain secured credit from other sources (i) having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a), and 507(b) of the Bankruptcy Code; (ii) secured only by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (iii) secured solely by a junior lien on property of the Debtors and their estates that is already subject to a lien.   A loan facility in the amount provided by the Cash Flow DIP Amendment is not otherwise available to the Debtors without granting the Cash Flow DIP Lender superpriority claims

6

and superpriority priming liens and security interests, pursuant to sections 364(c)(1), (2), (3), and 364(d) of the Bankruptcy Code, as provided in this Cash Flow DIP Amendment Order, the Final Cash Flow DIP Order and the Cash Flow DIP Documents.  Having proposed the Plan with the support of the Committee and the Cash Flow DIP Lender and after considering the advantages and disadvantages of the proposed terms of Cash Flow DIP Amendment, the Debtors have concluded, in the exercise of their prudent business judgment, that moving forward with the proposed Cash Flow DIP Amendment is the best financing alternative reasonably available.  The Cash Flow DIP Amendment will permit the Debtors to consummate the Plan and windup their businesses in a value maximizing manner.  Additionally, in light of the Plan proposed with the support of the Committee, the extensions of credit under the Cash Flow DIP Amendment are fair and reasonable and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

(e)      *Willingness to Provide Liquidity*.  As reflected in the terms of the Plan, the Cash Flow DIP Lender has indicated a willingness to engage in the transactions contemplated by the Cash Flow DIP Amendment in reliance on, among other things, (i) prior approval by the Court of the terms and conditions of the Cash Flow DIP Documents with respect to the Cash Flow DIP Obligations, and (ii) entry of findings of the Court that the Cash Flow DIP Amendment and the other financial accommodations pursuant to the Cash Flow DIP Documents are essential to the Debtors' estates and are being extended in good faith.

(f)      *Good Faith*.  The Cash Flow DIP Amendment has been negotiated in good faith and at arm's length among the Debtors, the Cash Flow DIP Lender, and their respective representatives.  All of the Cash Flow DIP Obligations arising under, in respect of, or in connection with the Cash Flow DIP Amendment and Cash Flow DIP Documents shall be deemed to have

7

been extended by the Cash Flow DIP Lender in accordance with the Cash Flow DIP Documents and in good faith as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall therefore be entitled to the full protection of section 364(e) of the Bankruptcy Code and the terms, conditions, benefits and privileges of this Final Cash Flow DIP Order regardless of whether this Final Cash Flow DIP Order is subsequently reversed, vacated, modified or otherwise no longer in full force and effect or the Cases are subsequently converted or dismissed, unless the occurrence of the Cash Flow DIP Obligations pursuant to this Final Cash Flow DIP Order is stayed pending appeal.

I.        Consideration.  The Debtors will receive and have received fair consideration and reasonably equivalent value in exchange for access to the Cash Flow DIP Facility and all other financial accommodations provided under the Cash Flow DIP Facility, the Cash Flow DIP Documents, and this Final Cash Flow DIP Order.  The terms of the Cash Flow DIP Facility pursuant to the Cash Flow DIP Documents, including the Cash Flow DIP Amendment and the use of the Cash Flow DIP Collateral (including the cash collateral) pursuant to this Final Cash Flow DIP Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment and constitute reasonably equivalent value and fair consideration.

J.        Notice and Hearing. The Hearing was held pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2) on shortened notice pursuant to Fed. R. Bankr. P. 2002(a)(2) and Local Rule 9006-1(e) on October 31, 2022 at 10:00 a.m. (prevailing Eastern Time).  The Court had directed notice of Plan confirmation be given pursuant to the *Order (I) Granting Interim Approval of the Disclosures; (II) Scheduling a Combined Hearing to Consider Final Approval of Disclosures and Confirmation of the Combined Plan, and Setting Deadlines Related Thereto: (III) Approving*

US_ACTIVE\122592109\V-9
DOCS_DE:241191.1 28311/001

*Solicitation Packages and Procedures: (IV) Approving the Forms of Ballot; and (V) Granting Related Relief* [Docket No. 524]("<u>Conditional Approval Order</u>"). The Court also entered an order shortening notice and authorizing response concurrently with the commencement of this hearing before the Court. Adequate and sufficient notice of the Hearing and the relief requested in the Cash Flow DIP Amendment Motion has been provided by the Debtors, whether by facsimile, email overnight courier or hand delivery, to: (i) the U.S. Trustee, (ii) counsel to the Committee (iii) counsel to the Prepetition Bridge Lender, (iv) respective counsel for each of the Prepetition Repo Facility Purchasers, (v) counsel to Flagstar, (vi) counsel to Customers, (vii) counsel to the Cash Flow DIP Lender, (viii) counsel to the DIP Repo Lender, (ix) the Debtors' twenty (20) largest unsecured creditors on a consolidated basis (excluding insiders),  and (x) any other party entitled to notice pursuant to Local Rule 9013-1(m).  Under the circumstances, the notice given by the Debtors of the hearing on Confirmation and Cash Flow DIP Amendment Motion, the relief requested therein, and the Hearing constitutes adequate notice thereof and complies with the Bankruptcy Rules and Local Rules, and no further notice of the relief granted herein is necessary or required.

Based upon the foregoing findings and conclusions, the Cash Flow DIP Amendment Motion and the record before the Court with respect to the Cash Flow DIP Amendment Motion, good and sufficient cause appearing therefore, **IT IS HEREBY ORDERED** that:

1.    <u>Motion Granted and Additional Financing Approved</u>.    The Cash Flow DIP Amendment Motion is granted on a final basis as set forth in this Final Cash Flow DIP Amendment Order and the Cash Flow DIP Documents.  The Debtors are hereby authorized to enter into the Cash Flow DIP Amendment, and execute all necessary documents in connection therewith.  All objections to the Cash Flow DIP Amendment Motion and to this Final Cash Flow DIP Amendment

Order to the extent not withdrawn, waived, settled or resolved are hereby denied and overruled on the merits.

2. <u>Effectiveness</u>.  Subject to the terms hereof, this Final Cash Flow DIP Amendment Order shall become immediately effective and enforceable upon the date this Final Cash Flow DIP Amendment Order is signed by the Court and entered on the docket in the Cases, and there shall be no stay of execution or effectiveness of this Final Cash Flow DIP Order.

3. <u>Authorization of Incurrence of Additional Cash Flow DIP Obligations</u>.  The Debtors are authorized to incur additional obligations contemplated by the Cash Flow DIP Amendment.  Upon the execution and effectiveness of the Cash Flow DIP Amendment, such additional obligations shall become Cash Flow DIP Obligations (as defined in the Final Cash Flow DIP Order), which shall be afforded all of the claims, liens, and other rights set forth in, and shall be subject to the terms of, the (i) Cash Flow DIP Documents (as amended by the Cash Flow DIP Amendment), including the Final Cash Flow DIP Order and (ii) the Plan and Confirmation Order.

4. <u>Final Cash Flow DIP Order</u>.  Other than as expressly set forth herein, nothing in this Order shall modify the terms of the Final Cash Flow DIP Order.  For the avoidance of doubt and without limiting the generality of the foregoing:

(a)    The Findings, Stipulations and Releases contained in the Final Cash Flow DIP Order remain unchanged and are not affected by entry of this Order.

(b)    The reservations of rights and protections for the United States and the Government Sponsored Entities contained in contained in paragraphs 38 of the Final Cash Flow DIP Order remained unchanged and are not affected by entry of this Order.

10

(c)    The limitations on the Final Cash Flow DIP Order contained in paragraphs 39 - 40 for the benefit of the parties in interest identified therein remain unchanged and are not affected by entry of this Order.

(d)    Other than any restrictions on the occurrence of additional Cash Flow DIP Obligations, the terms of the Final DIP Repo order remain unchanged and are not affected by entry of this Order.

5.    <u>Retention of Jurisdiction</u>. This Court has and shall retain jurisdiction to enforce this Order according to its terms to the fullest extent permitted by law.

11

Exhibit A
Proposed Cash Flow DIP Amendment Order

**THIS FIRST AMENDMENT** dated as of October [31], 2022 (this "<u>First Amendment</u>") to the **SENIOR SECURED SUPERPRIORITY DEBTOR-IN-POSSESSION TERM LOAN AGREEMENT AND SECURITY AGREEMENT** dated as of July 1, 2022 (as heretofore amended, supplemented or otherwise modified, the "<u>Agreement</u>") among Maverick II Holdings, LLC, a Delaware limited liability company ("<u>Maverick</u>"), which is a debtor and debtor-in-possession in the Chapter 11 Cases (as defined below), First Guaranty Mortgage Corporation, a Virginia corporation (the "<u>Borrower</u>"), which is a debtor and debtor-in- possession in the Chapter 11 Cases, the other Guarantors (as defined below), each of which is a debtor and debtor-in-possession in the Chapter 11 Cases, and LVS II SPE XXXIV LLC (the "<u>Lender</u>") is entered into among Maverick, the Borrower, and the Lender.

## R E C I T A L S

A.     On June 30, 2022 (the "<u>Petition Date</u>"), the Borrower, and certain of its Subsidiaries and Affiliates (collectively, the "<u>Debtors</u>") filed voluntary petitions to commence cases (the "<u>Chapter 11 Cases</u>") under title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") and continued in the possession of their assets and in the management of their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

B.     On June 30, 2022, the Debtors filed the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Liens and Superpriority Administrative Expense Status; (IV) Granting Adequate Protection; (V) Modifying the Automatic Stay; (VI) Scheduling a Final Hearing; and (VII) Granting Related Relief [Docket No. 22] (the "<u>Cash Flow DIP Motion</u>").

C.     Through the Cash Flow DIP Motion, the Debtors sought interim and final approval of the DIP Facility pursuant to the terms of the Agreement.

D.     On July 1, 2022, the Bankruptcy Court entered *the Interim Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Liens and Superpriority Administrative Expense Status; (IV) Granting Adequate Protection; (V) Scheduling a Final Hearing; (VI) Modifying the Automatic Stay; and (VII) Granting Related Relief* [Docket No. 67] (the "<u>Interim Cash Flow DIP Order</u>").

E.      On August 4, 2022, the Bankruptcy Court entered *the Final Order (I) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Liens and Providing Super-Priority Administrative Expense Status; (IV) Granting Adequate Protection; (V) Modifying the Automatic Stay; and (VI) Granting Related Relief* [Docket No. 292] (the "<u>Final Cash Flow DIP Order</u>").

F.     On October 7, 2022, the Debtors filed the *Amended Combined Disclosure Statement and Chapter 11 Plan of First Guaranty Mortgage Corporation and Debtor Affiliate*

Exhibit A
Proposed Cash Flow DIP Amendment Order

[Docket No. 525] (as subsequently amended, supplemented or otherwise modified, the "<u>Plan</u>"), which includes, among other things, the terms of the Committee Settlement, as defined therein.

G.    The Borrower has requested that the Lender agree to certain amendments to the Agreement in furtherance of the terms of the Plan, including the Committee Settlement.

H.    The parties hereto are willing to amend the Agreement on the terms and subject to the conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein and of the loans, extensions of credit and commitments hereinafter referred to, the parties hereto agree as follows:

Section 1.    <u>Defined Terms</u>.  Capitalized terms used but not otherwise defined herein (including in the preamble and recitals hereto) have the meanings assigned to them in the Agreement (as amended hereby).

Section 2.    <u>Amendment to Agreement</u>.  Effective as of the Amendment Effective Date:

(a)    The following definitions are hereby added to, or amend and restate the applicable definitions set forth in, Section 1.02 of the Agreement in the appropriate alphabetical order:

"<u>Additional Administrative Claims Amount</u>" has the meaning set forth in the Plan, provided that the Effective Date Commitment for such amount shall not exceed $1,200,000.00.

"<u>Approved DIP Budget</u>" shall mean the amended DIP Budget attached to the First Amendment as Exhibit A.

"<u>Commitment</u>" means with respect to the Lender, the sum of the Lender's Initial Term Loan Commitment, Delayed Draw Commitment, and Effective Date Commitment, as applicable, in effect at such time.

"<u>Delayed Draw Commitment</u>" includes, as of the Amendment Effective Date, the commitment of Lender to make the Delayed Draw Loans inclusive of the Operating Amount.

"<u>DIP Amendment Order</u>" means an order of the Bankruptcy Court, in form and substance satisfactory to the Borrower and the Lender, approving the First Amendment.

"<u>Effective Date Commitment</u>" means the commitment of the Lender to make the Effective Date Loans hereunder, which shall be the sum of (i) the Additional Administrative Claims Amount and (ii) the Trust Funding Amount.

"<u>Effective Date Loans</u>" means the loans made by the Lender pursuant to Section 2.01(d).

"<u>Effective Date Loans Availability Period</u>" means the period from and including the date of the entry of the DIP Amendment Order to the Termination Date.

Exhibit A
Proposed Cash Flow DIP Amendment Order

"Loans" means the Initial Term Loans, the Delayed Draw Loans, the Roll-Up Loans, and the Effective Date Loans made or deemed to be made by the Lender to the Borrower pursuant to this Agreement.

"Operating Amount" means $29,000,000.00.

"Plan Effective Date" means the "Effective Date" as defined in the Plan.

"Trust Funding Amount" has the meaning set forth in the Plan, provided that such amount shall not exceed $5,500,000.00.

(b)    Subparts (i) and (j) of the definition of "Milestones" are hereby amended by replacing "110 days" and "120 days", respectively, with "127 days".

(c)    Section 2.01 is hereby amended by adding a new subsection (d) as follows:

(d)    Effective Date Loans.  Subject to the terms and conditions set forth herein, including the entry of the DIP Amendment Order and the occurrence of the Plan Effective Date, the Lender agrees to make Effective Date Loans to the Borrower, in each case, in accordance with the Plan.  Anything contained herein or in any other Loan Document to the contrary notwithstanding, Lender shall have no obligation to make any Effective Date Loans in an amount that would result in the aggregate amount of Effective Date Loans exceeding the Lender's Effective Date Commitment. The Effective Date Commitment shall terminate automatically and without notice to any Person on the earlier to occur of (a) the Plan Effective Date (and subject to the occurrence thereof) upon the funding of such Loans or (b) the Termination Date.

(d)    Section 2.03 is hereby amended by adding a new subsection (d) as follows:

(d)    To request the Effective Date Loans, the Borrower shall notify the Lender in writing of such request not later than 11:00 a.m., New York City time, two Business Days before the date of the proposed borrowing. Each such Borrowing Request shall be irrevocable. For the avoidance of doubt, the Borrower may make its request for the Effective Date Loans prior to the occurrence of the Plan Effective Date, provided that the Lender shall have no obligation to make such Effective Date Loans other than in connection with the occurrence of the Plan Effective Date.

(e)    Section 7.18 is hereby amended by adding the following sentence at the end of such section:

The Effective Date Loans shall be used only in accordance with the Plan, Confirmation Order (as defined in the Plan), and DIP Amendment Order.

(f)    Section 9.01 is hereby amended and restated in its entirety as follows:

9.01 Compliance with Approved DIP Budget.  The Delayed Draw Loans can be used only in accordance with the Approved DIP Budget, on an aggregate line item basis, without variances and without the ability to carry over excess in one line item

Exhibit A
Proposed Cash Flow DIP Amendment Order

to a different line item.  If aggregate disbursements for any line item exceed the aggregate budgeted amount for such line item, such additional amount shall be treated as an Additional Administrative Claims Amount for purposes of distributions under the Plan.

(g)    The Agreement is amended by adding Exhibit C in appropriate alphabetical order in the form of Exhibit C attached hereto.

Section 3.    Representations and Warranties.  The Borrower and Guarantors represent and warrant to the Lender that:

(a)    This First Amendment has been duly executed and delivered by Borrower and each Guarantor and constitutes a legal, valid and binding obligation of the Borrower and such Guarantor, as applicable, enforceable in accordance with its terms, subject to entry of the DIP Amendment Order and subject to any restrictions arising on account of Borrower's or any Subsidiaries' status under the Bankruptcy Code.

(b)    Before and after giving effect to this Amendment, the representations and warranties set forth in Article VII of the Agreement (other than those set forth in Section 7.17 of the Agreement) are true and correct in all material respects (in all respects in the case of representations and warranties qualified by materiality in the text thereof) on and as of the Amendment Effective Date with the same effect as if made on and as of such date, except to the extent such representations and warranties expressly relate to an earlier date, in which case they were so true and correct as of such earlier date.

Section 4.    Counterparts; Effectiveness.

(a)    This First Amendment may be executed in counterparts (and by different parties hereto on different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract. Delivery of an executed counterpart of a signature page of this Agreement by telecopy or other electronic transmission shall be effective as delivery of a manually executed counterpart of this Agreement.

(b)    This First Amendment Agreement shall become effective as of the first date (the "Amendment Effective Date") on which each of the following conditions is satisfied (or waived by the Lender:

(i)    The First Amendment shall have been executed by the Lender and the Lender shall have received counterparts hereof which, when taken together, bear the signatures of each of the other parties hereto, and thereafter shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assign.

(ii)    The Bankruptcy Court shall have entered the DIP Amendment Order and such DIP Amendment Order shall not have been vacated, reversed, modified, amended or stayed.

(iii)    The Lender shall have received an amended Approved DIP Budget that is in form and substance satisfactory to the Lender.

Exhibit A
Proposed Cash Flow DIP Amendment Order

Section 5.    <u>Effect of this First Amendment</u>.

(a)    Except as expressly set forth herein, this First Amendment shall not by implication or otherwise limit, impair, constitute a waiver of, or otherwise affect the rights and remedies of the Lender under the Agreement or any other Loan Document, and shall not alter, modify, amend or in any way affect any of the terms, conditions, obligations, covenants or agreements contained in the Agreement or any other Loan Document, all of which are ratified and affirmed in all respects and shall continue in full force and effect. Nothing herein shall be deemed to entitle the Borrower to any other consent to, or any other waiver, amendment, modification or other change of, any of the terms, conditions, obligations, covenants or agreements contained in the Agreement or any other Loan Document in similar or different circumstances.

(b)    On and after the Amendment Effective Date, each reference in the Agreement to "this Agreement", "herein", "hereunder", "hereto", "hereof" and words of similar import shall, unless the otherwise requires, refer to the Agreement as amended hereby, and each reference to the Credit Agreement in any other Loan Document shall be deemed to be a reference to the Agreement as amended hereby.  This First Amendment shall constitute a "Loan Document" for all purposes of the Agreement and the other Loan Documents.

Section 6.    **<u>Applicable Law</u>.    THIS FIRST AMENDMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK**.

[SIGNATURES BEGIN NEXT PAGE]

Exhibit A
Proposed Cash Flow DIP Amendment Order

The parties hereto have caused this Agreement to be duly executed as of the day and year first above written.


BORROWER:                    FIRST GUARANTY MORTGAGE
                             CORPORATION


                             By: _____
                             Name: Aaron Samples
                             Title: CEO


GUARANTOR:                   MAVERICK II HOLDINGS, LLC


                             By: _____
                             Name: Aaron Samples
                             First Guaranty Mortgage Company,
                             As Sole Member of Maverick II Holdings, LLC

Exhibit A
Proposed Cash Flow DIP Amendment Order

LENDER:                              LVS II SPE XXXIV LLC, as the Lender

                                     By: _____
                                     Name: Jason Steiner
                                     Title: Authorized Person

# Exhibit A

## EXHIBIT B

### (Approved DIP Budget)

*($ in millions)*

| | Actuals Through 23-Oct-22 | Forecast Through Effective Date | Post Effective Date Payments | Total |
|---|---|---|---|---|
| Operating Disbursements | $ (8.1) | $ (4.8) | $ (5.1) | **$ (18.0)** |
| Debtor Professional Fees | (1.9) | (3.1) | (10.6) | **(15.5)** |
| Lender Professional Fees | (1.3) | - | (0.5) | **(1.7)** |
| Committee Professional Fees | - | (0.1) | (1.4) | **(1.5)** |
| **Total Disbursements** | **$ (11.3)** | **$ (7.9)** | **$ (17.6)** | **$ (36.8)** |

US_ACTIVE\122262256\V-5

Exhibit A
Proposed Cash Flow DIP Amendment Order

**EXHIBIT C**
**FORM OF BORROWING REQUEST FOR EFFECTIVE DATE LOANS**

[_____], 20[___]

First Guaranty Mortgage Corporation, a Virginia corporation (the "Borrower"), pursuant to Section 2.03 of the Senior Secured Superpriority Debtor-in- Possession Term Loan Agreement, dated as of July 1, 2022, among First Guaranty Mortgage Corporation, the Borrower, the Guarantors from time to time party thereto, and LVS II SPE XXXIV LLC (such agreement as the same may be amended, supplemented or restated from time to time, the "Credit Agreement") (unless otherwise defined herein, each capitalized term used herein is defined in the Credit Agreement), hereby requests a Loan as follows:

(i)     Aggregate amount of the requested Loan is $[_____];

(ii)    Date of the borrowing of such Loan is [_____], 20[___];

(iii)   Such Loan comprises $[_____] of the Additional Administrative Claims Amount and $[_____] of the Trust Funding Amount.

(iv)    Total Credit Exposure on the date hereof (i.e., outstanding principal amount of Loans without regard to the Loans requested hereby) is $[_____];

(v)     Pro forma total Credit Exposure on the date hereof (after giving effect to the requested Loans) is $[_____]; and

(vi)    Location and number of the deposit account or accounts to which funds are to be disbursed is as follows:

[_____]
[_____]
[_____]
[_____]
[_____]

Exhibit A
Proposed Cash Flow DIP Amendment Order

The undersigned certifies that the undersigned is the [_____] of the Borrower, and that as such the undersigned is authorized to execute this certificate on behalf of the Borrower. The undersigned further certifies, represents and warrants on behalf of the Borrower that the Borrower is entitled to receive the requested Loan under the terms and conditions of the Credit Agreement.

FIRST GUARANTY MORTGAGE
CORPORATION


By: _____
Name: _____
Title: _____