## **EXHIBIT A**

### (Liquidation Analysis)

As part of the chapter 11 process, section 1129(a)(7) of the Bankruptcy Code requires that a bankruptcy court determine that a chapter 11 plan provides, with respect to each class, that each holder of a claim or an equity interest in such class either (i) has accepted the plan or (ii) will receive or retain under the plan value that is not less than the amount that the holder would receive if the debtors had liquidated under chapter 7.

Prior to the Petition Date, the Debtors' business included the origination, purchase, service, sale, and/or securitization of residential real estate mortgage loans. However, due to adverse market conditions, the Debtors experienced significant operating losses and cash flow challenges, and ceased all origination activity. Further, the Cash Flow DIP Facility requires the Debtor to meet the following milestones: 1) the sale of all or substantially all of the Debtors' Mortgage Servicing Rights ("MSR") portfolio; 2) sale of all or substantially all of FGMC's pipeline of loans; 3) sale of loans funded pre-petition; and 4) substantial cessation of all loan operations.

Given the limited operational activity, upon conversion of the cases to chapter 7, it is anticipated that a chapter 7 trustee would primarily focus on liquidating remaining assets and effectuate the wind-down of the Estates. Remaining assets may include 1) excess proceeds from the sale of loans pledged to pre-petition warehouse and repo lenders; 2) holdbacks from the sale of mortgage servicing rights and servicing advances to BSI; 3) United States Department of Housing and Urban Development claims; 4) servicing advances, including advances associated with early buyout; 5) counterparty claims, including holdbacks from prepetition loan and MSR sales, correspondent lender claims and sub-servicer claims; and 6) property, plant & equipment and real estate owned properties.

A number of factors in a chapter 7 liquidation would affect the chapter 7 trustee's ability to sell the Debtors' remaining assets. Among other things, the primary risks are expected to include challenges associated with liquidating the assets in an expedited manner due to various operational and/or regulatory challenges, inability to collect accounts receivables given expected required negotiations with various parties some of whom may have the ability to set-off these amounts, and costs associated with the monetization of certain assets may exceed initial expectations. Additionally, there is a risk that the employee base necessary to effectuate a wind-down would deteriorate despite efforts to retain key individuals who are best positioned to maximize value for the creditors. Absent these employees, the chapter 7 trustee is expected to be challenged to effectuate certain asset sales and collection of the Debtors' receivables, most of which require some level of institutional knowledge and legacy data.

If the Chapter 11 Cases were converted to chapter 7 cases, given the magnitude of senior claims, certain priority and general unsecured creditors are expected to receive no recovery.

Further, the Debtors' Estates would incur the costs of payment of a statutorily allowed commission to the chapter 7 trustee, as well as the costs of counsel and other professionals retained by the chapter 7 trustee. The Debtors believe that such amounts, over the same liquidation time period, would exceed the amount of expenses that will be incurred in implementing the Plan and winding up the affairs of the Debtors in the Chapter 11 Cases. Under the Plan, the Debtors contemplate an orderly administration and winding down of the Estates by certain parties that are familiar with the Debtors, their assets and affairs, and their creditors and liabilities. Such familiarity will allow the Liquidating Trust to complete liquidation of the remaining assets (including prosecution of Causes of Action), and distribute the net proceeds to creditors more efficiently and expeditiously than a chapter 7 trustee. Additionally, the Estates would suffer additional delays, as a chapter 7 trustee and his/her counsel took time to develop a necessary learning curve in order to complete the administration of the Estates (including the prosecution of Causes of Action). Also, a new time period for the filing of claims would commence under Bankruptcy Rule 1019(2), possibly resulting in the filing of additional Claims against the Estates.