**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | : Chapter 11 |
| | : |
| FIRST GUARANTY MORTGAGE | : Case No. 22-10584 (CTG) |
| CORPORATION, *et al.*, | : |
| | : Jointly Administered |
| Debtors.[1] | : |
| | : **Docket Ref. No. 518** |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**
**(I) APPROVING DISCLOSURES ON A FINAL BASIS AND (II) CONFIRMING THE**
**AMENDED COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF**
**FIRST GUARANTY MORTGAGE CORPORATION AND DEBTOR AFFILIATE**

Upon consideration of the (I) final approval of the disclosures contained in the *Amended Combined Disclosure Statement and Chapter 11 Plan of First Guaranty Mortgage Corporation and Debtor Affiliate* [Solicitation Version - Docket No. 525] which has been updated and restated and filed as Docket No. 652 and attached hereto as <u>Exhibit A</u> (together with all exhibits thereto, and as may be amended, modified, or supplemented[2], the "<u>Plan</u>") proposed by the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") and (II) confirmation of the Plan; the Disclosures having been approved on an interim basis pursuant to that certain *Order (I) Granting Interim Approval of the Disclosures, (II) Scheduling a Combined Hearing to Consider Final Approval of the Disclosures and Confirmation of the Combined Plan and Setting Deadlines Related Thereto; (III) Approving Solicitation Packages and Procedures; (IV) Approving the Forms of Ballot; and (V) Granting Related Relief* [Docket No. 524] (the "<u>Plan Procedures Order</u>")

---

[1] The Debtors, along with the last four digits of each Debtor's tax identification number, are: First Guaranty Mortgage Corporation (9575); and Maverick II Holdings, LLC (5621). The Debtors' mailing address is 5800 Tennyson Parkway, Suite 450, Plano, TX 75024.

[2] The Plan Supplement is filed at Docket No. 551 and the Amended Exhibit To Plan Supplement is filed at Docket No. 609 (collectively, the "<u>Plan Supplement</u>").

1

pursuant to the relief sought in *Debtors' Motion for Entry of an Order (I) Granting Interim Approval of the Adequacy of Disclosures in the Combined Disclosure Statement and Plan; (II) Scheduling a Combined Confirmation Hearing and Setting Deadlines Related Thereto; (III) Approving Solicitation Packages and Procedures; (IV) Approving the Form of Ballots; and (V) Granting Related Relief* [Docket No. 407]; upon the affidavits of service filed reflecting compliance with the notice and solicitation requirements of the Plan Procedures Order [Docket Nos. 574 and 610] (the "Notice Affidavits"); and as evidenced by the Notice Affidavits, the applicable notices having been sent to the applicable creditors and interest holders entitled to notice of the Confirmation Hearing and/or non-voting status [Docket Nos. 526, 527 and 528] (the "Confirmation Hearing Notices"); and the Debtors having filed *Debtors Objection to Proof of Claim No. 124 Solely for Voting Purposes* [Docket No. 561] (the "Voting Objection"); and upon the *Declaration of Andres A. Estrada Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Amended Combined Disclosure Statement and Chapter 11 Plan of First Guaranty Mortgage Corporation and Debtor Affiliate* [Docket No. 625] and the *Notice of Filing of Final Voting Declaration* [Docket No. 641]; (together, the "Voting Declaration"); and upon the *Declaration of Tanya Meerovich in Support of Confirmation of the Amended Combined Disclosure Statement and Chapter 11 Plan of First Guaranty Mortgage Corporation and Debtor Affiliate* [Docket No. 631] (the "Meerovich Declaration") and the *Declaration of Aaron Samples in Support of Confirmation of the Amended Combined Disclosure Statement and Chapter 11 Plan of First Guaranty Mortgage Corporation and Debtor Affiliate* [Docket No. 626] and the *Amended Declaration of Aaron Samples in Support of Confirmation of the Amended Combined Disclosure Statement and Chapter 11 Plan of First Guaranty Mortgage Corporation and Debtor Affiliate* [Docket No. 369] (together, the "Samples Declaration") (and together with the Meerovich

Declaration, collectively the "Confirmation Declaration"); and upon the *Order in Aid of Confirmation of Debtors' Plan (I) Approving First Amendment to Cash Flow DIP Credit Agreement Increasing Available Term Loan Commitments; (II) Providing for Additional Funding Contemplated by the Plan; Amending Approved DIP Budget; and (IV) Granting Related Relief* [Docket No. 665] (the "Order in Aid of Confirmation"); and upon the *Memorandum of Law in Support of Confirmation of the Amended Combined Disclosure Statement and Chapter 11 Plan of First Guaranty Mortgage Corporation and Debtor Affiliate* [Docket No. 628] (the "Confirmation Memorandum"); and any and all objections to the Plan[3] or related relief having been resolved and/or overruled by this Court pursuant to this Confirmation Order; and a hearing to consider Confirmation having been commenced on October 31, 2022 and concluded (the "Confirmation Hearing"); and upon the evidence adduced and proffered and the arguments of counsel made at the Confirmation Hearing; and this Court having reviewed all documents in connection with Confirmation and having heard all parties desiring to be heard; and upon the record of the chapter 11 cases; and after due deliberation and consideration of all of the foregoing; and sufficient cause appearing therefor; this Court hereby makes the following:

## Findings of Fact and Conclusions of Law

A.      **Findings of Fact and Conclusions of Law.** The findings and conclusions set forth herein and in the Plan Procedures Order, together with the findings of fact and conclusions of law

---

[3] The following objections to confirmation of the Plan were filed: (i) Limited Objection of Kari Crutcher [Docket No. 600], (ii) Limited Objection and Reservation of Rights of the Federal National Mortgage Association [Docket No. 601], (iii) Customer Bank's Limited Objection and Reservation of Rights [Docket No. 603] (the "Customers Bank Objection"), (iv) Limited Objection and Reservation of Rights of Lori Buckley, Gayle Zech, Roberta Martinez, Jennifer Jackson and James Davies on behalf of themselves and those similarly situated [Docket No. 604] (the "WARN Objection"), (v) Objection of the United States Trustee [Docket No. 605] (the "US Trustee Objection"), (vi) Flagstar Bank, FSB's Joinder to Customer Bank's Limited Objection [Docket No. 606] (the "Flagstar Objection") and (vii) Limited Objection and Reservation of Rights of Lynx Whole Loan Acquisition LLC [Docket No. 615] (the "Lynx Objection").

US_ACTIVE\122519033\V-18

set forth in the record of the Confirmation Hearing, constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable to these proceedings pursuant to Bankruptcy Rules 7052 and 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      **Capitalized Terms.** Capitalized terms used herein, but not defined herein, shall have the respective meanings attributed to such terms in the Plan.

C.      **Jurisdiction and Venue.** This Court has jurisdiction over the chapter 11 cases pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court may enter a final order consistent with Article III of the United States Constitution, and the Debtors consent to entry of this Confirmation Order under the Local Rules and Article III of the United States Constitution. Venue of these proceedings and the chapter 11 cases is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      **Chapter 11 Petitions.** On June 30, 2022 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).  No party has requested the appointment of a trustee or examiner in the chapter 11 cases.  An Official Committee of Unsecured Creditors has been appointed.  [Docket No. 132].

E.     **Judicial Notice.** This Court takes judicial notice of the docket in the chapter 11 cases, including the dockets of any adversary proceedings initiated in the cases, maintained by the Clerk of this Court and/or its duly appointed agent, including, without limitation, all pleadings, notices, and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before this Court during the chapter 11 cases, including, without limitation, the Confirmation Hearing.

F.     **Disclosures.**  The Disclosures within the Plan provides holders of Claims entitled to vote on the Plan with adequate information to make an informed decision as to whether to vote to accept or reject the Plan in accordance with Section 1125 of the Bankruptcy Code.

G.     **Plan Supplement.** Prior to the Confirmation Hearing, the Debtors filed the Plan Supplement. The Plan Supplement complies with the terms of the Plan, and the filing and notice of the Plan Supplement was appropriate and complied with the requirements of the Bankruptcy Code and the Bankruptcy Rules, and no other or further notice is or shall be required. The Debtors are authorized to modify the Plan Supplement documents following entry of this Confirmation Order in a manner consistent with this Confirmation Order and/or the Plan.

H.     **Mailing of Solicitation and Confirmation Materials.** As is evidenced by the Voting Declaration and the Notice Affidavits, the transmittal and service of the Plan, the Ballots and the Confirmation Hearing Notices were adequate and sufficient under the circumstances, and all parties required to be given notice of the Plan and the Confirmation Hearing (including the deadline for filing and serving objections to Confirmation of the Plan and final approval of the Disclosures) have been given due, proper, timely, and adequate notice thereof in accordance with the Plan Procedures Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law, and such parties have had an opportunity to

appear and be heard with respect thereto. No other or further notice of the Plan and the Confirmation Hearing is required.

I.      **Voting.** The procedures by which the Ballots for acceptance or rejection of the Plan and Release Opt-Out Forms were distributed and tabulated under the circumstances of the chapter 11 cases were fair, properly conducted, and complied with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, applicable non-bankruptcy law and the Disclosure Statement Order.

J.      **Bankruptcy Rule 3016(a).** In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtors as the plan proponents.

K.      **Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)).** As set forth below, the Plan complies with all of the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

L.      **Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).** The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. In addition to Administrative Claims, Priority Tax Claims, DIP Claims, and Professional Fee Claims, which need not be classified, the Plan designates seven Classes of Claims and Interests. The Claims or Interests placed in each Class are substantially similar to other Claims or Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between Holders of Claims and Interests. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

M.      **Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)).** Section 10 of the Plan specifies that Class 1 (Priority Non-Tax Claims) and Class 2 (Other Secured Claims) are Unimpaired under the Plan. Thus, section 1123(a)(2) of the Bankruptcy Code is satisfied.

US_ACTIVE\122519033\V-18

N.        **Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).**

Section 10 of the Plan designates Class 3 (Secured Prepetition Facility Claims including subclasses

A to E thereof), Class 4 (Loan Settlement Claims), Class 5 (Prepetition LVS II Offshore Guaranty

Claims), Class 6 (General Unsecured Claims) and Class 7 (Interests) as Impaired and specifies the

treatment of Claims and Interests in such Classes. Thus, section 1123(a)(3) of the Bankruptcy Code

is satisfied.  There are no claims within Class 4 currently.

O.        **No Discrimination (11 U.S.C. § 1123(a)(4)).** The Plan provides for the same

treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of

a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.

Thus, section 1123(a)(4) of the Bankruptcy Code is satisfied.

P.        **Implementation of the Plan (11 U.S.C. § 1123(a)(5)).** The Plan and the

Liquidating Trust Agreement provide adequate and proper means for the Plan's implementation.

Thus, section 1123(a)(5) of the Bankruptcy Code is satisfied.

Q.        **Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).** The Plan does not

provide for the issuance of any securities, including non-voting securities, and the Debtors are

being dissolved as soon as practicable after the Effective Date. Therefore, section 1123(a)(6) of

the Bankruptcy Code is satisfied.

R.        **Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)).** Section 14.5 of the

Plan provides that the Liquidating Trust shall be governed by the Liquidating Trustee in

consultation with the Oversight Committee. On the Effective Date, the Debtors have appointed

FTI Consulting as the Liquidating Trustee, to oversee the Liquidating Trust and the wind-down of

the Debtors' estates.  In the event the Liquidating Trustee is removed by the Bankruptcy Court,

resigns or is replaced pursuant to the Liquidating Trust Agreement, or otherwise vacates its

US_ACTIVE\122519033\V-18

position, a successor Liquidating Trustee shall be appointed as set forth in the Liquidating Trust Agreement.  Therefore, section 1123(a)(7) of the Bankruptcy Code is satisfied.

S.        **Additional Plan Provisions (11 U.S.C. § 1123(b)).** The Plan's provisions are appropriate, in the best interests of the Debtors and their Estates, and consistent with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

T.        **Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).** The Debtors have exercised reasonable business judgment in determining to either assume, assume and assign, or reject each of the Debtors' remaining Executory Contracts and Unexpired Leases as provided for in the Plan, the Plan Supplement, and this Confirmation Order, and any such assumptions and rejections are justified and appropriate in the chapter 11 cases. The Debtors' exercise of reasonable business judgment in determining to either assume, assume and assign, or reject each of the Debtors' remaining Executory Contracts and Unexpired Leases is justified and appropriate in the chapter 11 cases for the reasons set forth in the Disclosure Statement, the Confirmation Memorandum, and the Confirmation Declaration.

U.        **Compromises and Settlements Under and in Connection with the Plan (11 U.S.C. § 1123(b)(3)).** All of the settlements and compromises pursuant to and in connection with the Plan comply with the requirements of section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019. The Plan provides, for among other things, the Committee Settlement, the

Debtor/Estate Release, and the Third Party Release.  Accordingly, the Plan is consistent with section 1123(b) of the Bankruptcy Code.

a.    **Committee Settlement**.  The Committee Settlement, as incorporated into the Plan, is in accordance with section 1123(b)(3)(A) of the Bankruptcy Code and represents a valid exercise of the Debtors' business judgment.  The Committee Settlement was entered into in good faith and is: (a) the product of extensive arms'-length negotiations by and between the Debtors, the Committee, and the Cash Flow DIP Lender; (b) in the best interests of the Debtors, their Estates, and the holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) an integral element of the transactions incorporated into the Plan; and (e) consistent with sections 105, 1123, and 1129 of the Bankruptcy Code, other provisions of the Bankruptcy Code, Bankruptcy Rule 9019, and other applicable law.

b.      **Debtor/Estate Release**.  The Debtor/Estate Release set forth in Section 16.2(a) of the Plan is in accordance with section 1123(b) of the Bankruptcy Code and represents a valid exercise of the Debtors' business judgment under Bankruptcy Rule 9019.  The Debtor/Estate Release is fair and equitable, is a key component of the Plan, and otherwise constitutes a settlement of Claims and Causes of Action under section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019. Releases of the Released Parties by the Debtors and the other Debtor/Estate Releasors are critically important to the success of the Plan, which embodies the settlement of certain claims with the Debtors' primary stakeholders, including the Cash Flow DIP Lender and its Related Persons and implements the concessions and compromises made by the parties to the restructuring transactions contemplated by the Plan.  Each of the Released Parties afforded value and provided consideration to the Debtors and Estates, aided in the reorganization process and played an integral role in the formulation and implementation of the Plan. The Plan reflects the settlement and resolution of several complex issues, and the Debtor/Estate Release is an integral part of the consideration to be provided in exchange for the compromises and resolutions embodied in the Plan. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, of the Debtor/Estate Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor/Estate Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (b) a good faith settlement and compromise of the Claims and Causes of Action released by the Debtor/Estate Release; (c) in the best interests of the Debtors, the  Estates and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after

10

due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Liquidating Trust,

or the Debtors' respective Estates asserting any Claim or Cause of Action released pursuant to the

Debtor/Estate Release.

c.    **Third Party Release**.  The Third Party Release set forth in Section 16.2(b) of the Plan is an essential provision of the Plan.  The Confirmation Hearing Notices, Ballots, and Voting Instructions explicitly and conspicuously stated that potential Releasing Parties could opt out of the Third Party Release and included the language of the Third Party Release.   Thus, each Releasing Party was given due and adequate notice that they would be granting the Third Party Release by failing to opt out of the Third Party Release prior to the deadline to do so.  Accordingly, the Third Party Release is consensual.  The Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) consensual; (b) essential to the Confirmation of the Plan, important to the overall objectives of the Plan and an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) materially beneficial to, and in the best interests of the Debtors and their respective Estates and stakeholders; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release; (i) within the jurisdiction of this Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); and (j) consistent with sections 105, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

d.        **Exculpation**.  The exculpation provisions set forth in Section 16.1 of the Plan are essential to the Plan.  The record in these Chapter 11 Cases fully supports the exculpation provisions set forth in Section 16.1 of the Plan.

e.        **Injunction.**  The injunction provisions set forth in Section 16.3 of the Plan are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the Debtor/Estate Release, the Third Party Release, and the exculpation provisions in  Section 16.1 of the Plan.

V.        **Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).** Pursuant to section 1129(a)(2) of the Bankruptcy Code, the Debtors have complied with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1122, 1123, 1124, 1125, and 1126 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Plan Procedures Order governing notice, disclosure, and solicitation in connection with the Plan, the Plan Supplement, and all other matters considered by this Court in connection with the chapter 11 cases.

W.        **Plan Proposed in Good Faith and Not by Means Forbidden by Law (11 U.S.C. § 1129(a)(3)).** The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. In determining that the Plan has been proposed in good faith, this Court has examined the totality of the circumstances surrounding the filing of the chapter 11 cases, the Plan itself, and the process leading to its formulation. The Plan is the result of extensive arm's length negotiations among the Debtors, the Committee and the Cash Flow DIP Lender. It is clear that the Plan promotes the objectives and purposes of the Bankruptcy Code.

X.        **Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).** The procedures set forth in the Plan for this Court's approval of the fees, costs, and expenses to be paid

in connection with the chapter 11 cases, or in connection with the Plan and incident to the chapter 11 cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

Y.    **Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).** Upon the occurrence of the Effective Date, each of the Debtors' directors and officers shall be deemed to have resigned. The initial Liquidating Trustee is identified in the Section 14.5(a) of the Plan and shall be appointed as the sole remaining officer and director of both of the Debtors.  The initial Oversight Committee members shall be Eric Knight, Gerry Tywoniuk and David Galfus.  Thus, the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

Z.    **No Rate Changes (11 U.S.C. § 1129(a)(6)).**   After the Confirmation Date, the Debtors will not have any businesses involving the establishment of rates over which any regulatory commission has or will have jurisdiction.   Therefore, the provisions of section 1128(a)(6) do not apply to the Plan.

AA.    **Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).** The "best interests" test is satisfied as to all Impaired Classes under the Plan, as each Holder of a Claim or Interest in such Impaired Classes will receive or retain property of a value, as of the Effective Date, that is not less than the amount that such Holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

BB.    **Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).** Class 1 (Priority Non-Tax Claims) and Class 2 (Other Secured Claims) are left unimpaired under the Plan.  Each of Class 5 (Prepetition LVS II Offshore Guaranty Claims) and Class 6 (General Unsecured Claims) has voted to accept the Plan in accordance with the Bankruptcy Code, thereby satisfying section 1129(a)(8) as to those Classes. Class 3 (Secured Prepetition Facility Claims) and Class 7

(Interests), is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Accordingly, section 1129(a)(8) of the Bankruptcy Code has not and cannot be satisfied. The Plan, however, is still confirmable because it satisfies the nonconsensual confirmation provisions of section 1129(b), as set forth below.

No claims were identified and assigned to Class 4 (Loan Settlement Claims).  As such, Class 4 is not included the tabulation results.

CC.    **Treatment of Administrative Claims, Professional Fee Claims, Priority Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9)).** The treatment of Administrative Claims, Priority Tax Claims and Professional Fee Claims, and other Priority Claims pursuant to Sections II and III of the Plan satisfies section 1129(a)(9) of the Bankruptcy Code.

DD.    **Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).**  Class 6 (General Unsecured Claims) is an Impaired Class of Claims that voted to accept the Plan, determined without including any acceptance of the Plan by any insider. Therefore, section 1129(a)(10) of the Bankruptcy Code is satisfied.

EE.    **Feasibility (11 U.S.C. § 1129(a)(11)).** The Plan provides for the dissolution of the Debtors as soon as practicable after the Effective Date and the liquidation of the Debtors' property. Thus, section 1129(a)(11) of the Bankruptcy Code is satisfied.   The Debtors have ceased originating and servicing loans and have started the process of winding down their businesses prior to the Confirmation Hearing.

FF.    **Payment of Fees (11 U.S.C. § 1129(a)(12)).** All fees payable under 28 U.S.C. § 1930 have been paid or will be paid on or before the Effective Date pursuant to the Plan, thus satisfying section 1129(a)(12) of the Bankruptcy Code.

GG.  **Miscellaneous   Provisions   (11   U.S.C.   §§ 1129(a)(13)-(16)).**   Sections 1129(a)(13)-(16) of the Bankruptcy Code are inapplicable to Confirmation, as the Debtors (i) are not obligated to pay retiree benefits (as defined in section 1114(a) of the Bankruptcy Code) (section 1129(a)(13)), (ii) have no domestic support obligations (section 1129(a)(14)), (iii) are not individuals (section 1129(a)(15)), and (iv) are not nonprofit corporations (section 1129(a)(16)).

HH.  **No Unfair Discrimination; Fair and Equitable Treatment (11 U.S.C. § 1129(b)).** Class 3 voted against the Plan.  The holders of Class 3 Claims hold Secured Prepetition Facility Claims in unliquidated amounts.  The amount of each Class 3 Claim will be determined by whether the holder of such Class 3 Claim liquidates its collateral in an amount in excess of the obligations set forth in each Prepetition Repo Agreement.  If a holder of a Class 3 Claim liquidates its collateral in an amount that exceeds the obligations in its corresponding Prepetition Repo Agreement, such holder will have a $0 Claim.  The Plan is fair and equitable to the holders of Class 3 Claims because the Plan provides that Class 3 Claims will receive their collateral or the value of their collateral or the indubitable equivalent thereof.

The classification and treatment of Interests in Class 7 (Interests), which is deemed to have rejected the Plan, is proper pursuant to section 1122 of the Bankruptcy Code, does not discriminate unfairly, and is fair and equitable pursuant to section 1129(b)(1) of the Bankruptcy Code. There is no Class of Claims or Interests junior to the Holders of Interests in Class 7 that will receive or retain property under the Plan on account of their Claims or Interests. Accordingly, the Plan does not violate the absolute priority rule, does not discriminate unfairly, and is fair and equitable with respect to each Class that is deemed to have rejected the Plan. Thus, the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to Classes 3 and 7.

II.    **Only One Plan (11 U.S.C. § 1129(c)).** The Plan is the only chapter 11 plan currently proposed in the chapter 11 cases, and section 1129(c) of the Bankruptcy Code is therefore satisfied.

JJ.    **Principal Purpose (11 U.S.C. § 1129(d)).** The principal purpose of the Plan is neither the avoidance of taxes, nor the avoidance of the application of section 5 of the Securities Act of 1933, and no governmental unit has objected to Confirmation on any such grounds. Accordingly, section 1129(d) of the Bankruptcy Code is inapplicable.

KK.    **Satisfaction of Confirmation Requirements.** Based upon the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code, and should be confirmed.

LL.    **Good Faith Solicitation (11 U.S.C. § 1125(e)).** The Debtors and their officers, directors, employees, advisors, Professionals Persons, and agents have acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order in connection with all of their respective activities relating to the solicitation of acceptances of the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and they are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the injunction and exculpation provisions set forth in Article 16 of the Plan and in this Confirmation Order.

MM.    **Implementation**.   All documents and agreements necessary to implement transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement (including, among others, the Liquidating Trust Agreement), have been negotiated in good faith and at arms'-length, are in the best interests of the Debtors and their Estates, and shall,

upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law. The Debtors and the Liquidating Trustee, as applicable, are authorized to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby.

NN.    **Retention of Jurisdiction.** This Court may properly retain jurisdiction over the matters set forth in Section 18 of the Plan and/or section 1142 of the Bankruptcy Code.

OO.    **Sale.** On September 29, 2022, the Bankruptcy Court entered the Order: (A) Approving Bidding Procedures for One or More Sales or the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Enter into One or More Stalking Horse Agreements and to Provide Bid Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof, and (F) Granting Related Relief (Docket No. 499) (the "Bidding Procedures Order and Sale Motion"). In accordance with the Bidding Procedures Order and Sale Motion, LVS II SPE XXXIV LLC and/or its designee (the "LVS Bidder") submitted a letter of intent dated October 20, 2022 for purposes of submitting a bid to take title to certain of the Debtors' intellectual property and other assets referred to in the Attachment 1 thereto (the "IP-Related Assets"). The hearing on the Bidding Procedures Order and Sale Motion has been adjourned until after the anticipated Effective Date of the Plan.

**Based upon the foregoing findings, and upon the record made before this Court at the Confirmation Hearing, and good and sufficient cause appearing therefor, it is hereby ORDERED, ADJUDGED AND DECREED THAT:**

### Confirmation of the Plan

1.      The Plan, as and to the extent modified by this Confirmation Order, is approved and confirmed pursuant to section 1129 of the Bankruptcy Code. Any objections to the Plan not otherwise withdrawn, resolved, or otherwise disposed of are overruled and denied.

2.      The terms of the Plan are incorporated by reference into (except to the extent modified by this Confirmation Order), and are an integral part of, this Confirmation Order.

### Final Approval of the Disclosures

3.      The Disclosures are approved as adequate on a final basis pursuant to Section 1125 of the Bankruptcy Code.

### Compromises and Settlements Under the Plan

4.      Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, upon the Effective Date, all settlements and compromises set forth in the Plan, including the Committee Settlement, or announced on the record at the Confirmation Hearing are approved in all respects, and constitute good faith compromises and settlements.

### Classification and Treatment

5.      The Plan's classification scheme is approved. The classifications set forth on the Ballots (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes, (c) may not be relied upon by any Holder as representing the actual classification of such Claim under the Plan

for distribution purposes, and (d) shall not be binding on the Debtors and the Liquidating Trustee except for Plan voting purposes.

## Authorization to Implement the Plan

6.    The Debtors and the Liquidating Trustee, as applicable, are authorized to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan, and to execute, enter into, or otherwise make effective all documents arising in connection therewith, including, without limitation, all Plan Documents, prior to, on, and after the Effective Date.

7.    On the Effective Date, the officers of the Debtors and the Liquidating Trustee are authorized to do all things and to execute and deliver all agreements, documents, instruments, notices, and certificates as are contemplated by the Plan and to take all necessary actions required in connection therewith, in the name of and on behalf of the Debtors.   In accordance with Bankruptcy Code section 1142(b), upon the entry of this Confirmation Order, the Debtors, and the Liquidating Trustee, each acting by and through its respective officers and agents, are authorized to take any and all actions necessary or appropriate to implement the Plan, including, without limitation, (i) consummating the Committee Settlement; (ii) forming the Liquidating Trust, entering into the Liquidating Trust Agreement (substantially in the form attached hereto as Exhibit B), and complying with, and satisfying the obligations set forth under, the Liquidating Trust Agreement; and (iii) complying with, and satisfying the obligations set forth under, the Plan, in each case, without any further order of the Court.   The Liquidating Trust shall be deemed for all purposes to have been created in connection with the Plan and this Confirmation Order.   On the Effective Date, each of the Debtors' then-current directors and officers shall be deemed to have resigned and the Liquidating Trustee shall automatically be the sole remaining officer and director of the Debtors, without the need for any meeting of or resolution by the Board of Directors.

Following the Effective Date, the Liquidating Trustee is given full power of attorney and has authority to execute and/or endorse any documentation on behalf of the Debtors in furtherance of the Plan and the Debtors' liquidation, including, but not limited to, authorizing the transfer of title to the IP-Related Assets pursuant to the Bidding Procedures Order and Sale Motion or to the Liquidating Trust.

8.      The approvals and authorizations specifically set forth in this Confirmation Order are not intended to limit the authority of the Liquidating Trustee, the Debtors, or any officer thereof to take any and all actions necessary or appropriate to implement, effectuate, and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order.

9.      For the avoidance of doubt, the Plan and this Confirmation Order in no way authorize or approve any incentive payments under sections 105 or 503 of the Bankruptcy Code.

## **Enforceability of the Plan**

10.      Pursuant to sections 1123(a), 1141(a) and 1142 of the Bankruptcy Code, the Plan and all Plan Documents (including, but not limited to, the Liquidating Trust Agreement) shall be, and hereby are, valid, binding and enforceable.  The current form of the Liquidating Trust Agreement is attached as Exhibit B to this Order.

11.      Except to the extent otherwise provided in this Confirmation Order and the Plan and pursuant to Section 15 of the Plan, on the Effective Date, the Debtors shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Liquidating Trust all of their rights, title, and interest in and to all of the Liquidating Trust Assets, then held by the Debtors free and clear of all liens, claims, and encumbrances,  provided, however, that title to the IP-Related Assets shall remain with the Debtors until they are either sold pursuant to the Bidding Procedures Order and Sale Motion or transferred to the Liquidating Trust; provided, further, however, that notwithstanding anything to the contrary in the Plan or this Confirmation Order, so

21

long as title to any assets, including the IP-Related Assets, remain with the Debtors, the Cash

Flow DIP Liens (as defined in the Final Cash Flow DIP Order) shall continue to attach to such

assets, including the IP-Related Assets, to secure the Debtors' obligations under, and pursuant to

the terms of, the Cash Flow DIP Documents.

### Preservation of Causes of Action and Litigation

12.     Except as otherwise provided in the Plan or this Confirmation Order (a) in

accordance with Section 1123(b)(3) of the Bankruptcy Code and Sections 14.7 and 15 of the Plan,

any retained Causes of Action or Litigation that the Debtors may hold against any Entity shall vest

upon the Effective Date in the Liquidating Trust and (b) after the Effective Date, the Liquidating

Trustee shall have the exclusive right, authority, and discretion to determine and to initiate, file,

prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any

such retained Causes of Action and Litigation, in accordance with the terms of the Plan and the

Liquidating Trust Agreement and without further order of this Bankruptcy Court, in any court or

other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the

Chapter 11 Cases.

### Reservation of Causes of Action and Litigation

13.     Unless a Cause of Action or Litigation against a holder or other Entity is expressly

waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including

this Confirmation Order), including pursuant to the Debtor/Estate Release or the Third Party

Release, the Debtors and the Liquidating Trustee expressly reserve such Cause of Action or

Litigation  for later adjudication by the Liquidating Trustee, including, without limitation, Causes

of Action or Litigation not specifically identified or described in the Plan Supplement or elsewhere

or of which the Debtors may presently be unaware or which may arise or exist by reason of

US_ACTIVE\122519033\V-18

additional facts or circumstances unknown to the Debtors at this time or facts or circumstances which may change or be different from those the Debtors now believe to exist. No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action or Litigation upon, after, or as a consequence of the Confirmation or Consummation or after the entry of this Confirmation Order or Effective Date based on the Plan, or this Confirmation Order, except where such Causes of Action or Litigation have been released in the Plan or any other Final Order. The Debtors and Liquidating Trustee's rights to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Person or Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, is expressly reserved.

## **Wind-Up and Dissolution of the Debtors**

14.    The Debtors shall be dissolved as provided in the Plan and this Confirmation Order after title to the IP Related Assets are either sold pursuant to the Bidding Procedures Order and Sale Motion or transferred to the Liquidating Trust.  On the Effective Date and after title to the IP Related Assets are either sold pursuant to the Bidding Procedures Order and Sale Motion or transferred to the Liquidating Trust or as soon thereafter as is reasonably practicable, the Liquidating Trustee shall wind-up the affairs of the Debtors, if any, subject to the Plan, the Confirmation Order and the Liquidating Trust Agreement, and the Liquidating Trustee shall prepare and file (or cause to be prepared and filed) on behalf of the Debtors, all tax returns, reports, certificates, forms, or similar statements or documents (collectively, "Tax Returns") required to be filed or that the Liquidating Trustee otherwise deems appropriate, including the filing of amended Tax Returns or requests for refunds, for all taxable periods ending on, prior to, or after the Effective

Date. In connection therewith, the Debtors and the Liquidating Trustee are authorized to surrender to the applicable governmental authorities all licenses that the Debtors used to operate their business to the extent they have not already done so to date.

### Cancellation of Interests, Existing Securities, and Agreements

15.     On the Effective Date, except to the extent otherwise provided in the Plan or in this Confirmation Order, all notes, instruments, certificates, and other documents evidencing Claims or Interests, shall be deemed cancelled and surrendered without any need for a holder of a Claim or Interest (a "Holder") to take further action with respect thereto and the obligations of the Debtors thereunder or in any way related thereto shall be deemed satisfied in full and discharged; *provided*, *however*, that notwithstanding Confirmation or Consummation, any such agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of allowing Holders to receive distributions under the Plan; *provided further*, *however*, that on the Effective Date all Interests shall be deemed cancelled and extinguished. Holders of Interests shall not receive any distribution or retain any property pursuant to the Plan.

### Method of Distribution Under the Plan

16.     The Liquidating Trustee shall make all distributions required to be made to Holders of Allowed Claims pursuant to the Plan and the Liquidating Trust Agreement. The Liquidating Trust shall hold and distribute the Liquidating Trust Assets, the  Professional Fee Reserve and the Disputed Claim Reserve in accordance with the provisions of the Plan and the Liquidating Trust Agreement.

17.     The Liquidating Trustee shall make all distributions required to be made to such Holders of Allowed Claims pursuant to the Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall not be required to give any bond or surety or other security for the performance of the Liquidating Trustee's duties as disbursing agent unless otherwise ordered by

this Court.  At the option of the Liquidating Trustee, any Cash payment to be made from the Liquidating Trust by any means deemed appropriate by the Liquidating Trustee, including by check or wire transfer or as otherwise required or provided in applicable agreements.

### The Liquidating Trust

18.    **Administration of the Liquidating Trust**.  The Liquidating Trust Agreement, substantially in the form attached hereto as Exhibit B, is hereby approved.  The appointment of FTI Consulting as the initial Liquidating Trustee and the retention of the professionals by the Liquidating Trust, on the terms set forth in the Plan and Liquidating Trust Agreement, is hereby approved.  The Liquidating Trustee shall be compensated in the manner set forth in and consistent with the Liquidating Trust Agreement. The Liquidating Trustee and the Oversight Committee shall both have all powers, rights, duties and protections afforded the Liquidating Trustee and the Oversight Committee, respectively, under the Plan, this Confirmation Order, and the Liquidating Trust Agreement.

19.    **Interests in the Liquidating Trust**. There shall be one class of interests in the Liquidating Trust. The Liquidating Trust shall issue the Liquidating Trust Interests to the Holders of Cash Flow DIP Claims and Class 6 Claims in accordance with Sections 8.4(b), 10.6 and 14.5 of the Plan. Liquidating Trust Interests shall be uncertificated. Beneficiaries of the Liquidating Trust Interests shall be bound by the Liquidating Trust Agreement.

20.    **Liquidating Trust Assets**.  The Liquidating Trust shall consist of the Liquidating Trust Assets. On the Effective Date, the Liquidating Trust Assets shall vest in the Liquidating Trust free and clear of all liens, claims, and encumbrances, except to the extent otherwise provided in the Plan, including, without limitation, pursuant to Sections 14.5 and 15.3 of the Plan or in this Confirmation Order. The transfer of the Liquidating Trust Assets to the Liquidating Trust shall not affect any attorney-client privilege, the work-product privilege, and any other applicable

evidentiary privileges of the Debtors, which such privileges shall be expressly transferred and assumed by the Liquidating Trust.

21.    **Distribution of Liquidating Trust Assets.**    The Liquidating Trustee shall distribute the appropriate net proceeds of the Liquidating Trust Assets to the Beneficiaries pursuant to the terms of the Plan and the Liquidating Trust Agreement.

22.    The Liquidating Trustee shall utilize, in accordance with the Liquidating Trust Agreement and the Plan, Cash from the Liquidating Trust Assets Account in amounts sufficient to (i) fund costs and expenses of the Liquidating Trust, including, without limitation, the fees and expenses of the Liquidating Trustee, its professionals, and the professionals retained in these cases, (ii) compensate the Liquidating Trustee, and (iii) satisfy other liabilities incurred by the Liquidating Trust in accordance with the Plan or the Liquidating Trust Agreement (including any taxes imposed on the Liquidating Trust or in respect of the Liquidating Trust Assets).

**Executory Contracts and Unexpired Leases**

23.    The assumption of the executory contracts or unexpired leases identified on the list filed with the Plan Supplement or separately (the "Assumed Executory Contract and Unexpired Leases List"), including, without limitation, any Insurance Policies being assumed, is approved.

24.    Except any executory contract or unexpired lease (a) identified on the Assumed Executory Contracts and Unexpired Leases List including without limitation, any assumed Insurance Policies, (b) which is the subject of a separate motion or notice to assume or reject filed by the Debtors and pending as of the Confirmation Hearing, (c) that previously expired or terminated pursuant to its own terms, or (d) that was previously assumed or rejected by any of the Debtors, each of the Debtors' other executory contracts and unexpired leases shall be deemed rejected as of the Effective Date in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code and such rejection is approved.

25.     Subject to paragraphs 46 and 47, each executory contract and unexpired lease assumed pursuant to the Plan or by Order of this Court, and not assigned to a third party on or prior to the Effective Date, shall be transferred to the Liquidating Trust and be deemed a Liquidating Trust Asset.

26.     **Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim arising from the rejection of executory contracts or unexpired leases ("Rejection Claims") pursuant to Confirmation of the Plan or otherwise must be Filed with the Claims and Balloting Agent no later than the later of 30 days after the Effective Date or 30 days after the effective date of rejection. Rejection Claims shall be classified as Class 6 General Unsecured Claims and shall be treated in accordance with Section 10.6 of the Plan, as applicable. Any Rejection Claims that are not timely filed pursuant to Section 13 of the Plan or this Confirmation Order shall be forever disallowed and barred**.

### Disputed Claims

27.     Except as otherwise provided in the Plan, the Liquidating Trustee shall have the right to object to all Claims on any basis.  Subject to further extension by the Bankruptcy Court with or without notice, the Liquidating Trustee may object to the allowance of all Claims on or before the Claim Objection Deadline. From and after the Effective Date, the Liquidating Trust shall succeed to all of the rights, defenses, offsets, and counterclaims of the Debtors and the Estates in respect of all Claims, and in that capacity shall have the exclusive power to prosecute, defend, compromise, settle, and otherwise deal with all such objections.

28.     **All objections to Claims shall be Filed by the Claims Objection Deadline;** *provided*, **that no such objection may be filed with respect to any Claim or Interest after a Final Order has been entered Allowing such Claim or Interest.**

### Administrative Claims

29.     **All requests for payment of an Administrative Claim (other than a Professional Fee Claim) arising or deemed to have arisen after September 30, 2022 must be filed with this Court and served to the Debtors, the Liquidating Trustee and the Cash Flow DIP Lender on or before the date that is 60 days after the Effective Date.**  In the event of an objection to allowance of an Administrative Claim, this Court shall determine the Allowed amount of such Administrative Claim.  Nothing herein shall be deemed to extend existing deadlines established for filing certain Administrative Claims, including pursuant to the Bar Date Order.

### Professional Fee Claims Reserve Account and Professional Fee Claims

30.     On or as soon as practicable after the Effective Date, Liquidating Trustee shall establish the Professional Fee Reserve and fund such reserve in an amount equal to the estimated Professional Fee Claims.  The Professional Fee Reserve shall be used solely for the payment of Allowed Professional Fee Claims in accordance with Section 8.3 of the Plan.

31.     **All final applications for payment of Professional Fee Claims must be Filed with this Court and served on the Debtors,  the Liquidating Trustee, and the U.S. Trustee on or before 45 days after the Effective Date or such later date as may be agreed to by the Liquidating Trustee.**   Upon approval of the fee applications by the Bankruptcy Court, the Liquidating Trustee shall pay Professionals from the Professional Fee Reserve all of their respective Allowed Professional Fee Claims.

32.     For the avoidance of doubt neither the amount of the Allowed Professional Fee Claims for any Professional, nor the amount included in the Professional Fee Reserve for such Professional, shall exceed the line-item amount for such Professional set forth in the Approved DIP Budget; *provided, however*, to the extent Allowed Professional Fee Claims of Professionals retained by the Committee exceed the amount(s) set forth in the Approved DIP Budget, such

Professional(s) shall be paid such additional amounts from the GUC Share of Net Liquidating Trust Proceeds subject to approval by the Bankruptcy Court.

33.     The Professional Fee Reserve shall be closed once all required payments have been made.  Any funds remaining in the Professional Fee Reserve after all required payments have been made shall be transferred to the Cash Flow DIP Lender.

## Release, Injunction, Exculpation and Related Provisions

34.     The release, injunction, exculpation, and related provisions set forth in Article 16 of the Plan are hereby approved and authorized in their entirety, and such provisions are effective and binding on all Persons and Entities as and to the extent provided for therein.

35.     **Debtor Releases**. Notwithstanding anything in the Plan to the contrary, subject to paragraphs 45, 46 and 47 of this Order, and pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after and subject to the occurrence of the Effective Date, the Debtors and the Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any cause of action, by, through, for, or because of the foregoing entities (collectively, the "Debtor/Estate Releasors"), hereby release (the "Debtor/Estate Release") each Released Party, and each Released Party is deemed released by the Debtor/Estate Releasors from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtor/Estate Releasors, as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor/Estate Releasors would have been legally entitled to assert in its own right, or on behalf of the holder of any Claim or Interest or other entity, based on

or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the Debtors' liquidation, the Chapter 11 Cases, the purchase, sale, transfer of any security, asset, right, or interest of the Debtors and the ownership thereof, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party (including pursuant to the Prepetition Bridge Loan Agreement, the Cash Flow DIP Documents, the DIP Repo Facility Agreement, DIP BCI MSFTA, or DIP Netting Agreement), the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of, or solicitation of votes on, the Plan or related agreements, instruments, or other documents, or any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, actual fraud, bad faith, or gross negligence (in each case subject to determination of such by final order of a court of competent jurisdiction) but in all respects such Released Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan; provided, that the foregoing Debtor/Estate Release shall not operate to waive or release any obligations of any party under the Plan or any other document, instrument, or agreement executed to implement the Plan; and further provided that nothing herein shall act as a discharge of the Debtor.

Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval, of the Debtor/Estate Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor/Estate Release is: (a) in exchange for the good and valuable consideration provided by the

Released Parties; (b) in the best interests of the Debtors, the Estates and all holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) a bar to any of the Debtor/Estate Releasors asserting any Claim or Cause of Action released pursuant to the Debtor/Estate Release.

36.    **Release by Holders of Claims and Interests**. Notwithstanding anything in the Plan to the contrary, subject to paragraphs 45, 46 and 47 of this Order , on and after and subject to the occurrence of the Effective Date, each of the Releasing Parties hereby release (the "Third Party Release") each Released Party, and each of the Debtors, the Estates, and the Released Parties is hereby deemed released from, any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of any of the Debtors or the Estates, as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the Debtors' liquidation, the Chapter 11 Cases, the purchase, sale, transfer of any security, asset, right, or interest of the Debtors and the ownership thereof, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Combined Plan and Disclosure Statement, the business or contractual arrangements between the Debtor and any Released Party (including pursuant to the Prepetition Bridge Loan Agreement, the Cash Flow DIP Documents, the DIP Repo Facility Agreement, DIP BCI MSFTA, or DIP Netting Agreement), the restructuring of Claims and Interests prior to or in

the Chapter 11 Cases, the negotiation, formulation, or preparation of, or solicitation of votes on, the Plan or related agreements, instruments, or other documents or any other act or omission, transaction, agreement, event, or other occurrence relating to the Debtors taking place on and before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, actual fraud, bad faith, or gross negligence (in each case subject to determination of such by final order of a court of competent jurisdiction) but in all respects such Released Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the Third Party Release shall not release any obligations of any party under the Plan or any other document, instrument, or agreement executed to implement the Plan.

Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the Third Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Third Party Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) in the best interests of the Debtors and all holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) a bar to any of the Releasing parties asserting any Claim or Cause of Action released pursuant to the Third Party Release.

37.    **Release of Liens**. Except as otherwise provided in the Plan, this Confirmation Order or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, and subject to paragraphs 45, 46 and 47 of this Order, on the Effective Date and transfer to the Liquidating Trust, all mortgages, deeds of trust, Liens, pledges, or other security interests

against any property of the Debtors and their Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtors and their successors and assigns, including the Liquidating Trust, in accordance with the Plan.

38.    **Exculpation**. The Exculpated Parties will neither have nor incur any liability (the "Exculpation") to any entity for any action in good faith taken or omitted to be taken between the Petition Date and Effective Date in connection with or related to the Chapter 11 Cases, the sale or other disposition of the Debtors' assets or the formulation, preparation, dissemination, implementation, Confirmation, or Consummation of the Plan or any agreement created or entered into in connection with the Plan; provided, however, that this limitation will not affect or modify the obligations created under the Plan, or the rights of any holder of an Allowed Claim to enforce its rights under the Plan, and shall not release any action (or inaction) constituting willful misconduct, fraud, bad faith, or gross negligence (in each case subject to determination of such by final order of a court of competent jurisdiction); provided that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan, and such reasonable reliance may be asserted as a  form a defense to any such claim, Cause of Action, or liability.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of votes on the Plan and, therefore, are not, and will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or Distributions made pursuant to the Plan. The Exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability. Without limiting the generality of the foregoing,

33

each Debtor, each Estate, and each Exculpated Party shall be entitled to and granted the protections and benefits of section 1125(e) of the Bankruptcy Code. Notwithstanding anything to the contrary in the foregoing, the releases and exculpations set forth above do not release any post-Effective Date obligations of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed or deemed executed to implement the Plan, or any executory contract or unexpired lease assumed during the Chapter 11 Cases or under the Plan.

Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the Exculpation, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Exculpation is: (a) in exchange for the good and valuable consideration provided by the Exculpated Parties; (b) in the best interests of the Debtors and all holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) a bar to any party from asserting any Claim or Cause of Action released pursuant to the Exculpation. For the avoidance of doubt, the Exculpated Parties do not include employees of the Debtors. Neither the Liquidating Trustee nor the Indemnified Parties will receive prospective exculpation for post-Effective Date acts or omissions.

39. **Injunction**. In implementation of the Plan, except as otherwise expressly provided in the Confirmation Order or the Plan, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold or may hold Claims against or Interests in the Debtors, the Liquidating Trust, or the Estates that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtors, the Estates, the Liquidating Trust, or any of the Liquidating Trust Assets with respect to

34

any such Claim or Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtors, the Estates, the Liquidating Trust, or any of the Liquidating Trust Assets with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Debtors, the Estates, the Liquidating Trust, or any of the Liquidating Trust Assets with respect to any such Claim or Interest; and (d) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest, including, without limitation, the Debtor/Estate Release, the Third Party Release, or the Exculpation.  Nothing contained in this Section shall prohibit the holder of a timely filed Proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of the Plan, or enjoin or prohibit the interpretation or enforcement by the Claimant of any of the obligations of the Debtors or the Liquidating Trust under the Plan.

### Resolution of Formal Objections to the Plan

40.    <u>United States Trustee</u>.  In order to resolve the US Trustee Objection, the Debtors have, among other things, revised Section 14.1 of the Plan and amended paragraph 38 above.

41.    <u>Customers Bank</u>.  The Customers Bank Objection has been resolved by adding or amending certain language in the Plan.  Notwithstanding anything to the contrary in the Plan or this Order, neither the Plan nor the Order shall in any way release, limit, modify, waive, or impede any and all rights, claims, causes of action, or defenses that Customers Bank, the LVS II Offshore Guarantor, or any other non-Debtor party may have against one another, including claims asserted in the action styled *Customers Bank v. LVS II Offshore, L.P.*, pending in the Court of Common Pleas of Berks County, Pennsylvania, Docket No. 22-13974.  Nothing contained in the Plan or this

Order shall or shall be deemed to limit or otherwise impair the rights of Customers Bank, or the Debtors or their Estates under the Customers Bank 559 Order.

42.    <u>Flagstar</u>.  The Flagstar Objection has also been resolved as a result of the changes that appear in this Order and in the Plan.  Nothing contained in the Plan or this Order shall or shall be deemed to limit or otherwise impair Flagstar's rights, or the Debtors or their Estates' rights, under the Flagstar Lift Stay Order.

43.    <u>WARN</u>.  The Debtors have resolved the WARN Objection through agreed revisions to the Plan.

44.    <u>Lynx</u>.  The Lynx Objection is hereby resolved.  Notwithstanding anything to the contrary in the Plan or this Order, Lynx Whole Loan Acquisition LLC's ("<u>Lynx</u>") rights, if any, to assert a claim against the Liquidating Trust or the Debtors, for constructive trust or otherwise, and to request that the Court order the Debtors or Liquidating Trust to segregate and hold in trust amounts required by the mortgage loan purchase and sale agreements between Lynx and FGMC are preserved, as are any and all of the Debtors', Liquidating Trusts' and the Cash Flow DIP Lenders' rights, if any, to assert defenses, including setoff or recoupment, by counterclaim or otherwise.

<b><u>Resolution of Informal Objections to the Plan</u></b>

45.    <u>United States of America</u>. In resolution of an informal objection from the United States of America, the following language is hereby adopted and approved:

> Notwithstanding anything in the Plan, this Order, the Order in Aid of Confirmation or any Plan Supplement or other documents (collectively, "<u>Documents</u>"):

> As to the United States of America ("<u>United States</u>"), nothing in the Documents shall:

(1) discharge, release, enjoin, bar, impair or otherwise preclude (a) any obligation or liability owed to the United States that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code, (b) any claim of the United States arising after the Confirmation Date, (c) any obligation or liability of any entity or person under police or  regulatory statutes or regulations to any Governmental Unit as the owner, lessor, lessee, licensee, or operator of property or rights to property that such entity or person owns, operates, licenses, or leases after the Confirmation Date; (d) any right, defense, claim, suit or cause of action of, or obligation or liability owed to, the United States on the part of any non-debtor; or (e) any claim, obligation, or liability preserved or established in the order authorizing the sale of mortgage servicing rights, Docket No. 390 (the "Sale Order");

(2) release, nullify, bar, enjoin or preclude the enforcement of any police or regulatory power;

(3) authorize the assumption, sale, assignment or other transfer of any federal or state (i) grants, (ii) grant funds, (iii) contracts, (iv) property, including but not limited to, intellectual property, data and patents, (v) leases, (vi) participation rights, (vii) agreements, (viii) applications, (ix) licenses, (x) permits, (xi) registrations, (xii) authorizations, (xiii) approvals, (xiv) any loans pooled for securitization with Ginnie Mae, (xv) any loans insured or guaranteed by the Federal Housing Administration ("FHA"), U.S. Department of Agriculture's Rural Housing Service ("RHS"), or U.S. Department of Veterans Affairs ("VA"), or (xvi) the discontinuation of any obligations thereunder (collectively, "Federal Interests"), without compliance by the Debtors and any purchaser with all terms of the Federal Interests, as applicable, and with all applicable non-bankruptcy law;

(4) be interpreted to set cure amounts or to require the United States to novate, approve or otherwise consent to the assumption, sale, assignment or transfer of any Federal Interests;

(5) confer exclusive jurisdiction to the Bankruptcy Court with respect to the Federal Interests, claims, rights, defenses, obligations, liabilities, and causes of action, except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code);

(6) waive, alter, or otherwise limit the United States' rights with respect to the Federal Interests, including but not limited to, licenses, permits, authorizations; loans insured or guaranteed by FHA, RHS or VA, and loans pooled for securitization for Ginnie Mae;

(7) affect any setoff or recoupment rights and defenses of the United States and such rights and defenses are preserved;

(8) constitute an approval or consent by the United States without compliance with all applicable legal requirements and approvals under non-bankruptcy law;

(9) be construed as a compromise or settlement of any claim, right, obligation, liability, cause of action, or interest of the United States;

(10) modify the scope of Bankruptcy Code Section 502 with respect to the claims of the United States;

(11) require the United States to file an administrative claim in order to receive payment for any liability described in Section 503(b)(1)(B) and (C) pursuant to Section 503(b)(1)(D) of the Bankruptcy Code;

(12) make prospective determinations as to the pre-petition nature of any Federal Interest;

(13) enjoin or estop the United States from asserting against the Debtors any claim, liability or obligation assumed by any purchaser that the United States would otherwise be entitled to assert against the Debtors and the Debtors' estates under applicable law; or

(14) require the United States to file any rejection damages claims, if any, earlier than December 27, 2022, the date by which Governmental Units must file unsecured proofs of claim [Dkt. 382] (the "Government Bar Date"), unless the order authorizing the rejection of an executory contract with a Governmental Unit, if any, establishes a date later than December 27, 2022, to file proofs of claim for rejection damages, or alter the treatment of rejection damages claims, if any, under the Bankruptcy Code.

Administrative expense claims of the United States allowed pursuant to the Plan or the Bankruptcy Code shall accrue interest and penalties as provided by non-bankruptcy law until paid in full; provided however, that nothing contained herein shall prohibit the Liquidating Trustee from objecting to or seeking a waiver of any penalties. Priority Tax Claims of the United States allowed pursuant to the Plan or the Bankruptcy Code will be paid in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code. To the extent allowed Priority Tax Claims (including any penalties, interest or additions to tax entitled to priority under the Bankruptcy Code) are not paid in full in cash on the Effective Date, then such Priority Tax Claims shall accrue interest commencing on the Effective Date at the rate set forth in Section 511 of the Bankruptcy Code. Moreover, nothing shall affect a release, injunction or otherwise preclude any claim whatsoever against any Debtor or any of the Debtors' Estates by or on behalf of the United States for any liability arising a) out of pre-petition or post-petition tax periods for which a return has not been filed or b) as a result of a pending audit or audit that may be performed with respect to any pre-petition or post-petition tax period. Further, nothing shall enjoin the

United States from amending any claim against any Debtor or any of the Debtors' Estates with respect to any tax liability a) arising out of pre-petition or post-petition tax periods for which a tax return has not been filed or b) from a pending audit or audit that may be performed with respect to any pre-petition or post-petition tax period. Any liability arising a) out of pre-petition or post-petition tax periods for which a return has not been filed or b) as a result of a pending audit or audit which may be performed with respect to any pre-petition or post-petition tax period shall be paid in accordance with 1129(a)(9)(A) and (C) of the Bankruptcy Code. Without limiting the foregoing but for the avoidance of doubt, nothing contained in the Documents shall be deemed to bind the United States to any characterization of any transaction for tax purposes or to determine the tax liability of any person or entity, including, but not limited to, the Debtors and the Debtors' estates, nor shall the Documents be deemed to have determined the federal tax treatment of any item, distribution, or entity, including the federal tax consequences of this Plan, nor shall anything in the Documents be deemed to have conferred jurisdiction upon the Bankruptcy Court to make determinations as to federal tax liability and federal tax treatment except as provided under Section 505 of the Bankruptcy Code. Nothing in these paragraphs impacts rights or obligations under previously entered Sale Order.

Notwithstanding anything in the Documents, the Debtors, Liquidating Trustee and any purchaser shall abide by and comply with all federal statutes, regulations, rules, policies and procedures, including, without limitation, (1) all applicable Ginnie Mae statutes, regulations, rules, policies and procedures, including, without limitation, 12 U.S.C. § 1721(g), 12 U.S.C. §§ 1716 et seq. and 24 C.F.R. parts 300 - 310; (2) the Ginnie Mae Guide, all Ginnie Mae guaranty agreements, MBS prospectus documents, escrow agreements, unilateral notification, notices of violation, supplements, addendums, amendments, and related documents or agreements, (collectively, the "Ginnie Mae Agreements"); (3) all applicable FHA statutes, regulations, rules, policies and procedures, including, without limitation, 12 U.S.C.§§ 1702 – 1715z-25 and 24 C.F.R. parts 201 – 203 and 206; (4) FHA handbooks, mortgagee letters, indemnification agreements, and any other documents or agreements; (5) all RHS statutes, regulations, rules. Policies and procedures, including, without limitation, 42 U.S.C. §§ 1471 et seq. and 7 C.F.R. part 3555; (6) all RHS participation agreements, user agreements, guaranty agreements and other documents or agreements; (7) all VA statutes, regulations, rules, policies and procedures, including, without limitation, 38 U.S.C. §§ 3701 et seq., 38 C.F.R. part 36, and all administrative materials issued under such statutes or regulations; and (8) VA handbooks, user guides, circulars, audit letters, hold harmless agreements, and any other documents or agreements.

Further, the first paragraph of the Plan's Section 12.5 is deemed modified as follows with respect

to the United States:

Except as otherwise agreed or ordered by the Bankruptcy Court, any and all proofs of claim filed after the Government Bar Date shall not be treated as an Allowed Claim for purposes of Distribution without any further notice or action, and holders of such Claims may not receive any Distributions on account of such Claims, unless the Bankruptcy Court has entered an order deeming such Claim to be timely filed; provided, however, that this foregoing clause shall not apply to claims covered by 11 U.S.C. §503(b)(1)(D).

46.     _Federal Home Loan Mortgage Corporation_.  In resolution of an informal objection from the Federal Home Loan Mortgage Corporation ("_Freddie Mac_"), the following language is hereby adopted and approved:

Notwithstanding anything to the contrary in: (i) this Order; (ii) Plan; (iii) the Plan Supplement; (iv) the  Liquidating Trust Agreement; (v) any Order approving the sale or transfer of the Debtors' remaining assets and/or approving the assumption and assignment of executory contracts and/or unexpired leases; (vi) any Sale Transactions; (vii) any cure list filed in connection with the Plan, Plan Supplement or any Sale Transactions; (viii) any other Plan-related documents; (ix) the Order in Aid of Confirmation; and/or (x) in any exhibits, schedules or appendices to the foregoing (collectively, and as may be amended, the "_Plan/Sale-Related Documents_") – (A) FGMC's Servicing Contract (as defined in the Freddie Mac _Single-Family Seller/Servicer Guide_, the ("_Freddie Mac Guide_")[4] with the Federal Home Loan Mortgage Corporation ("_Freddie Mac_") has been assumed by FGMC as of September 15, 2022 pursuant to the _Order (I) Authorizing (A) Private Sale and (B) Transfer of Certain Servicing Rights to BSI Financial Services Free and Clear of Liens, Claims, Encumbrances, and Interests; (II) Approving the Terms of the Purchase and Sale Agreement; (III) Approving the Assumption and Assignment of Executory Contracts; and (IV) Granting Related Relief_ (ECF No. 390) (the "_BSI Sale Order_") and, subject to Freddie Mac's consent and other applicable requirements under the Freddie Mac Agreements[5], shall be assigned to BSI as of November 1, 2022; (B) any and all Servicing Contract Rights held by FGMC for any loans that FGMC sold to, or serviced for, Freddie Mac (collectively,

---

[4] The Freddie Mac Guide is available on the AllRegs® website of ICE Mortgage Technology, Inc., which operates the AllRegs brand ("AllRegs") and which posts the Guide under license from and with the express permission of Freddie Mac at the following address:  https://www.allregs.com/tpl/public/fhlmc_freesite_tll.aspx).

Capitalized terms used, but not otherwise defined in this paragraph 46 of this Confirmation Order or in the Plan, shall have the meanings attributed to them in the Freddie Mac Guide.

[5] The "Freddie Mac Agreements" include, among other agreements, as applicable: the Freddie Mac Guide, the Freddie Mac _Single-Family Seller/Servicer Guide_ Plus Additional Provisions, certain applicable Master Agreements, Purchase Contracts, Pricing Identifier Terms, supplements, addendums, Bulletins, directives, terms of business, Servicing Provisions, and any other agreements between the Debtors and Freddie Mac, as amended, restated or supplemented from time to time.

the "Freddie Mac Loans") shall be transferred to BSI in accordance with the BSI Sale Order, subject to Freddie Mac's consent and other applicable Guide Requirements, on November 1, 2022 (except with respect to any Servicing Contract Rights relating to Freddie Mac Loans as to which Freddie Mac may otherwise have explicitly approved a different transfer date); and (C) other than with respect to rights and agreements set forth in (A) and (B) of this paragraph, no other actual or purported agreements with Freddie Mac, nor any other actual or purported rights or interests held or asserted by the Debtors with respect to Freddie Mac, shall be transferred, sold, assigned or otherwise conveyed to any other person or entity without Freddie Mac's explicit consent and without satisfying all requirements of all applicable Freddie Mac Agreements.

Notwithstanding anything to the contrary in the Plan/Sale-Related Documents, nothing shall limit, alter, impair, waive, discharge, release, enjoin or impact, in any way, the rights, payments, claims, indemnities, releases, and other protections provided to, or obligations owing to Freddie Mac under the: (1) *Order on Debtors' Motion for an Order (I) Approving a Settlement Agreement with Federal Home Loan Mortgage Corporation Pursuant to Fed. R. Bankr. P. 9019, (II) Authorizing the Sale of Certain Mortgage Loans, and (III) Granting Related Relief* (ECF No. 386) (the "Freddie Mac Settlement Order") and the Court-approved Settlement Agreement annexed to the Freddie Mac Settlement Order as Exhibit 1 (the "Freddie Mac Settlement Agreement"); (2) the BSI Sale Order; and/or (3) any other previous Order entered by this Court in these Chapter 11 Cases for which protections have been afforded to Freddie Mac (collectively, the Orders referenced in (1) through (3) of this paragraph, the "Freddie Mac Orders"), nor shall anything in the Plan/Sale-Related Documents limit, alter, impair, waive, discharge, release, exculpate, enjoin or impact, in any way, the obligations of (A) the Debtors under, or pursuant to, the Freddie Mac Orders and Freddie Mac Agreements (including, *without limitation*, the indemnification obligations provided to Freddie Mac pursuant to the Freddie Mac Settlement Order), (B) BSI under the BSI Sale Order and applicable Freddie Mac Agreements, or (C) any other person or entity subject to the Freddie Mac Agreements. For the avoidance of any doubt, except to the extent that Freddie Mac is satisfied that such obligation has been fulfilled in accordance with the terms of the Freddie Mac Settlement Agreement, Freddie Mac's rights, powers, prerogatives, remedies, payment or lien priorities, lien rights, security interests and claims against the Debtors or any other entity, including, without limitation,  in, under or with respect to, any Freddie Mac Loans or any Freddie Mac Agreements, or any rights to setoff or recoupment that Freddie Mac may have or assert, shall not be discharged, enjoined, impaired, released, modified, or limited in any respect and are all expressly preserved.

Each of the Debtors, the Liquidating Trust, and the Liquidating Trustee, as applicable, shall perform all remaining obligations under the Freddie Mac Orders and Freddie Mac Agreements whether arising prior to, or after, the Effective Date and are directed to maintain compliance with the Freddie Mac Orders and Freddie Mac Agreements. Freddie Mac shall not be required to take any other action to

preserve any of its rights, claims, or defenses against the Debtors, the estates or the Liquidating Trust, all of which are expressly preserved and shall survive entry of this Order, the Plan's discharge and injunction provisions, and the effectiveness of the Plan.  If the Debtors, the Liquidating Trust, or the Liquidating Trustee fail to satisfy all of the obligations owing to Freddie Mac, then Freddie Mac shall be permitted to seek recovery against the Debtors, or the Liquidating Trust (as applicable), and Freddie Mac shall reserve its rights, if any, to recovery against the Liquidating Trust.  Neither the automatic stay nor any post-confirmation injunction shall apply to Freddie Mac's exercise of any rights or remedies under the Freddie Mac Agreements, including, without limitation, with respect to Freddie Mac's rights to unilaterally terminate or transfer servicing of loans owned by Freddie Mac.

Immediately upon the entry of this Confirmation Order, the Debtors, the Liquidating Trust, and the Liquidating Trustee are authorized to enter into, and perform under, any agreements or settlements with Freddie Mac, including with respect to the resolution of claims, the termination of servicing rights, or the transfer of servicing rights, without further court approval or order.

Notwithstanding anything to the contrary in the Plan/Sale-Related Documents, Freddie Mac shall not be deemed a "Releasing Party" under the Third Party Releases granted pursuant to the Plan or this Confirmation Order, nor shall Freddie Mac be bound by any Third Party Releases granted in the Plan or this Confirmation Order; *provided, however*, that nothing shall limit, diminish, impair, waive or enjoin, in any way, the releases and indemnities provided to Freddie Mac under, or pursuant to, the Freddie Mac Settlement Order and the Freddie Mac Settlement Agreement.

To the extent that any conflict exists between paragraph 46 of this Confirmation Order and any other provision of the Confirmation Order or other Plan/Sale-Related Documents, the terms of this paragraph 46 shall explicitly supersede and control.

47.    <u>Federal National Mortgage Association.</u>  In resolution of an informal objection from the Federal National Mortgage Association ("<u>Fannie Mae</u>"), the following language is hereby adopted and approved:

<u>Fannie Mae</u>.  Notwithstanding anything to the contrary in: (i) this Confirmation Order; (ii) the Plan; (iii) the Plan Supplement; (iv) the Liquidating Trust Agreement; (v) any Order approving the sale or transfer of the Debtors' remaining assets and/or approving the assumption and assignment of executory contracts and/or unexpired leases; (vi) any Sale Transactions; (vii) any cure list filed in connection with the Plan, the Plan Supplement or any Sale Transactions; (viii) any other Plan-related documents; (ix) the Order in Aid of Confirmation; and/or (x) in any exhibits, schedules or appendices to the foregoing (collectively,

and as may be amended, the "Plan/Sale-Related Documents"), (A) pursuant to the Fannie Mae Settlement Agreement, (1) FGMC's responsibility for all Selling Representations and Warranties (as defined in the Fannie Mae Settlement Agreement) and all Servicing Obligations (as defined in the Fannie Mae Settlement Agreement) in each case associated with the Transfer Loans (as defined in the Fannie Mae Settlement Agreement) have been assumed by BSI as of September 15, 2022 pursuant to the Order (I) Authorizing (A) Private Sale and (B) Transfer of Certain Servicing Rights to BSI Financial Services Free and Clear of Liens, Claims, Encumbrances, and Interests; (II) Approving the Terms of the Purchase and Sale Agreement; (III) Approving the Assumption and Assignment of Executory Contracts; and (IV) Granting Related Relief (ECF No. 390) (the "BSI Sale Order"), (2) Fannie Mae has purchased from FGMC the Purchase Loans (as defined in the Fannie Mae Settlement Agreement), which were sold to Fannie Mae "servicing released" to BSI, and (3) upon completion of the Sale, Transfer and Loan Purchases (each as defined in the Fannie Mae Settlement Agreement), Fannie Mae will issue a letter confirming FGMC's voluntary termination of the Lender Contract (as defined the Fannie Mae Settlement Agreement, the "Fannie Mae Lender Contract"), including any rights to sell loans to, or service loans for, Fannie Mae; and (B) other than with respect to rights and agreements set forth in subclause (A) of this paragraph, no other actual or purported agreements with Fannie Mae, nor any other actual or purported rights or interests held or asserted by the Debtors with respect to Fannie Mae, shall exist or be transferred, sold, assigned or otherwise conveyed to any other person or entity.

Notwithstanding anything to the contrary in the Plan/Sale-Related Documents, nothing shall limit, alter, impair, waive, discharge, release, enjoin or impact, in any way, the rights, payments, claims, indemnities, releases, and other protections provided to, or obligations owing to Fannie Mae under the: (1) Order on Debtors' Motion for an Order (I) Approving a Settlement Agreement with Federal National Mortgage Association [sic] to Fed. R. Bankr. P. 9019, (II) Authorizing the Sale of Certain Mortgage Loans, and (III) Granting Related Relief (ECF No. 426) (the "Fannie Mae Settlement Order") and the Settlement Agreement (as defined in the Fannie Mae Settlement Order) (the "Fannie Mae Settlement Agreement"); (2) the BSI Sale Order; and/or (3) any other previous Order entered by this Court in these Chapter 11 Cases for which protections have been afforded to Fannie Mae (collectively, the Orders referenced in (1) through (3) of this paragraph, the "Fannie Mae Orders"), nor shall anything in the Plan/Sale-Related Documents limit, alter, impair, waive, discharge, release, exculpate, enjoin or impact, in any way, the obligations of (A) the Debtors under, or pursuant to, the Fannie Mae Orders and the Fannie Mae Lender Contract (including, without limitation, the indemnification obligations provided to Fannie Mae pursuant to the Fannie Mae Settlement Order) or (B) BSI under the BSI Sale Order and its contractual relationship with Fannie Mae. For the avoidance of any doubt, except to the extent that Fannie Mae is satisfied that an obligation has been fulfilled in accordance with the terms of the Fannie Mae Settlement Agreement, Fannie Mae's rights, powers, prerogatives, remedies, payment or lien priorities, lien rights,

security interests and claims against the Debtors or any other entity, including, without limitation, in, under or with respect to, any loan sold or services by FGMC to or for Fannie Mae, including the Transfer Loans and the Purchase Loans, or any rights to setoff or recoupment that Fannie Mae may have or assert, shall not be discharged, enjoined, impaired, released, modified, or limited in any respect and all are expressly preserved.

Each of the Debtors, the Liquidating Trust, and the Liquidating Trustee, as applicable, shall perform all remaining obligations under the Fannie Mae Orders and, to the extent not terminated in accordance with their terms or the terms of the Fannie Mae Settlement Agreement, the Fannie Mae Lender Contract whether arising prior to, or after, the Effective Date and are directed to maintain compliance with the Fannie Mae Orders and the Fannie Mae Lender Contract.  Fannie Mae shall not be required to take any other action to preserve any of its rights, claims, or defenses against the Debtors, their estates or the Liquidating Trust, all of which are expressly preserved and shall survive entry of this Order, the Plan's discharge and injunction provisions, and the effectiveness of the Plan.  If the Debtors, the Liquidating Trust, or the Liquidating Trustee fail to satisfy all of the obligations owing to Fannie Mae, then Fannie Mae shall be permitted to seek recovery against the Debtors, or the Liquidating Trust (as applicable), and Fannie Mae shall reserve its rights, if any, to recovery against the Liquidating Trust.  Neither the automatic stay nor any post-confirmation injunction shall apply to Fannie Mae's exercise of any rights or remedies under the Fannie Mae Settlement Agreement or the Fannie Mae Lender Contract, including, without limitation, with respect to Fannie Mae's rights to unilaterally terminate servicing rights or cause the transfer of servicing rights on loans owned by Fannie Mae.

Immediately upon the entry of this Confirmation Order, the Debtors, the Liquidating Trust, and the Liquidating Trustee are authorized to enter into, and perform under, any agreements or settlements with Fannie Mae, including with respect to the resolution of claims, the termination of servicing rights, or the transfer of servicing rights, without further court approval or order.

Notwithstanding anything to the contrary in the Plan/Sale-Related Documents, Fannie Mae shall not be deemed a "Releasing Party" under the Third Party Releases granted pursuant to the Plan or this Confirmation Order, nor shall Fannie Mae be bound by any Third Party Releases granted in the Plan or this Confirmation Order; provided, however, that nothing shall limit, diminish, impair, waive or enjoin, in any way, the releases and indemnities provided to Fannie Mae under, or pursuant to, the Fannie Mae Settlement Order and the Fannie Mae Settlement Agreement.

To the extent that any conflict exists between this paragraph 47 and any other provision of the Confirmation Order or other Plan/Sale-Related Documents, the terms of this paragraph 47 shall explicitly supersede and control.

48.    <u>TIAA Bank FSB</u>.  In resolution of an informal objection from TIAA Bank, FSB (fka Everbank, FSB)("<u>TIAA</u>"), the following language is hereby adopted and approved:

Treatment of TIAA Servicing Remittances:

Upon entry of the Confirmation Order, the Debtors are hereby authorized and directed to reject each Servicing Agreement between the Debtors and TIAA Bank, FSB (fka Everbank, FSB) ("<u>TIAA</u>") relating to Residential Fixed Rate FHA-Insured Mortgage Loans dated October 1, 2015 and January 4, 2016 (the "<u>TIAA SAs</u>") and any related mortgage loan sale agreement to the extent of any remaining obligations imposed upon the Debtors or otherwise related to the mortgage loans subject to the TIAA SAs (the "<u>TIAA Mortgage Loans</u>"). Debtors and TIAA shall take reasonable steps to cooperate in the transition of the servicing obligations and servicing advances in accordance with applicable servicing laws, rules and regulations, provided however that such cooperation shall not require the unreasonable expenditure of funds by the Liquidating Trustee. Nothing herein shall constitute a waiver by TIAA or the Debtors of any rights of setoff or recoupment to the extent found to exist.

FGMC shall (i) account to TIAA for all monies that it has received prior to, on, and, following the Petition Date and that it receives, in each case, from Rushmore Loan Management Services, LLC ("<u>Rushmore</u>") pursuant to including, without limitation, all amounts that FGMC has paid to itself or its subservicer pursuant to the TIAA SAs since the Petition Date, and (ii) segregate, deposit, and hold in trust for the benefit of the parties all funds received by the Debtors from Rushmore pursuant to the subservicing agreement related to the TIAA SAs following the Petition Date (excluding any remittances actually paid to TIAA), without further offset, setoff, recoupment, payment of Servicing Fees, or recovery of Servicing Advances made on the TIAA Mortgage Loans, absent further order of this Court or the prior written consent of TIAA. TIAA's rights to pursue claims and administrative expenses against the estate, if any, are hereby preserved, as are the Debtors' and Liquidating Trustee's rights to pursue claims and defenses belonging to the estates, if any.

FGMC shall direct Rushmore to take direction from TIAA in respect of the Mortgage Loans and use its reasonable efforts to secure an acknowledgement from such subservicers of such direction no later than seven (7) days following the date on which the Bankruptcy Court enters the Confirmation Order. Provided however, any such direction shall not constitute a waiver of the Debtors' interest in property of the Debtors' estates on account of prepetition or postpetition Servicing Advances, Servicing Fees, Ancillary Income, FHA or other claims, which interest in property of the Debtors' estates, if any, is hereby preserved. Provided further, any such direction to Rushmore shall require Rushmore to remit to Debtors any

recovery of Serving Advances collected prior to entry of the Confirmation Order, which remittance shall be held in accordance with paragraph (2).

TIAA's Request for Allowance and Payment of Administrative Expense Claim [Doc. 548] is hereby held in abeyance pending further order of the Bankruptcy Court.

49.    Carrington.  The Debtors have filed a Notice of Settlement in connection with the

*Term Sheet for Proposed Settlement with Carrington Mortgage Services, LLC* [Docket No. 649]

the ("Carrington Settlement").  The Carrington Settlement is hereby approved by virtue of entry

of this Order and the Debtors are hereby authorized and directed to execute any documentation

reasonably necessary to implement the Carrington Settlement.

## Payment of Statutory Fees

50.    All fees payable pursuant to 28 U.S.C. § 1930(a)(6) and any interest assessed

pursuant to 31 U.S.C. § 3717 ("Quarterly Fees") that are owed prior to the Effective Date shall be

paid by the Debtors in full in cash on the Effective Date. After the Effective Date, any and all

Quarterly Fees shall be paid in full in cash when due and payable. The Debtors shall file all

monthly operating reports due prior to the Effective Date when they become due, using UST Form

11-MOR. After the Effective Date, the Liquidating Trustee and each of the post-Effective Date

Debtors shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they

become due. Each and every one of the Debtors, whether existing pre- or post-Effective Date, and

Liquidating Trust shall remain obligated to pay Quarterly Fees until the earliest of that particular

Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy

Code. The U.S. Trustee shall not be treated as providing any release under the Plan. The U.S.

Trustee shall not be required to file any proof of claim or any request for administrative expense

for Quarterly Fees. The provisions of this paragraph shall control notwithstanding any other

provision(s) in the Combined Plan and Disclosure Statement to the contrary.

**Liquidating Trust Professionals**

51.     Dentons US LLP, Pachulski, Stang, Ziehl & Jones LLP and such other professionals as the Liquidating Trustee may retain hereinafter (the "Retained Liquidating Trust Professionals") may be retained as counsel to the Liquidating Trust, pursuant to the Liquidating Trust Agreement.  Any Retained Liquidating Trust Professional may be compensated pursuant to the terms of the Liquidating Trust Agreement and, for the avoidance of doubt, shall not be required to comply with sections 330 and 331 of the Bankruptcy Code solely with respect to such Retained Liquidating Trust Professional's retention and compensation or payment for work performed for the Liquidating Trust.

**Notice of Entry of Confirmation Order and Effective Date**

52.     Pursuant to Bankruptcy Rules 2002 and 3020(c), the Debtors are hereby authorized to serve a notice of entry of this Confirmation Order and the occurrence of the Effective Date, substantially in the form attached hereto as Exhibit C (the "Notice of Confirmation and Effective Date") on the Effective Date, on all Holders of Claims against or Interests in the Debtors and all other Persons on whom the Confirmation Hearing Notice was served. The form of the Notice of Confirmation and Effective Date is hereby approved in all respects. The Notice of Confirmation and Effective Date shall constitute good and sufficient notice of the entry of this Confirmation Order and of the relief granted herein, including, without limitation, any bar dates and deadlines established under the Plan and this Confirmation Order, and no other or further notice of the entry of this Confirmation Order, the occurrence of the Effective Date, and any such bar dates and deadlines need be given.

**Retention of Jurisdiction**

53.     Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of this Confirmation Order and the occurrence of the Effective Date, on and after the Effective

Date, this Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases, the Plan, and each of the Plan Documents, to the extent provided under applicable law, including, among other things, to take the actions specified in Article 18 of the Plan.

### References to Plan Provisions

54.     The failure to specifically include or to refer to any particular article, section, or provision of the Plan or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, and such article, section, or provision shall have the same validity, binding effect, and enforceability as every other article, section, or provision of the Plan, it being the intent of this Court that the Plan (as and to the extent modified by this Confirmation Order) be confirmed in its entirety.

### Rules Governing Conflicts Between Documents

55.     In the event that any provision of the Plan is inconsistent with the provisions of the Plan Supplement, and any other Order in the Chapter 11 Cases, or any other agreement to be executed by any Person pursuant to the Plan, the provisions of the Plan shall control and take precedence; *provided*, *however*, that this Confirmation Order shall control and take precedence in the event of any inconsistency between this Confirmation Order, any provision of the Plan, and any of the foregoing documents.

### Extension of Injunctions and Stays

56.     Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays provided for in the chapter 11 cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (including any injunctions or stays contained in or arising from the Plan or this Confirmation Order), shall remain in full force and effect.

US_ACTIVE\122519033\V-18

## Section 1146 Exemption

57.     Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, or the re-vesting, transfer or sale of any real or personal property of the Debtors pursuant to, in implementation of, or as contemplated by the Plan, shall not be taxed under any state or local law imposing a stamp tax, transfer tax or any similar tax or fee.

## Headings

58.     Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

## No Stay of Confirmation Order

59.     Notwithstanding Bankruptcy Rules 3020(e) and 6004(h) and any other Bankruptcy Rule to the contrary, to the extent applicable, there is no reason for delay in the implementation of this Confirmation Order and, thus, this Confirmation Order shall be effective and enforceable immediately upon entry.

**Dated: November 2nd, 2022**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**

US_ACTIVE\122519033\V-18