**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br>FIRST GUARANTY MORTGAGE CORPORATION, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-10584 (CTG)<br><br>(Jointly Administered)<br><br>**Ref. Docket Nos. 712 and 750** |

**OBJECTION OF B2 FIE XI LLC AND LVS II SPE XXXIV LLC TO *QUI TAM* PLAINTIFF KARI CRUTCHER'S MOTION FOR LIMITED RELIEF FROM THE PERMANENT INJUNCTION OF THE DEBTORS' CONFIRMED CHAPTER 11 PLAN TO ALLOW HER TO FILE A MOTION TO TRANSFER HER *QUI TAM* ACTION TO THE DISTRICT OF DELAWARE AND TO PURSUE THE *QUI TAM* ACTION AGAINST THE DEBTOR AS NOMINAL DEFENDANT**

B2 FIE XI LLC (the "Prepetition Bridge Lender") and LVS II SPE XXXIV LLC (the "Cash Flow DIP Lender") submit this objection ("Objection") to Qui Tam *Plaintiff Kari Crutcher's Motion for Limited Relief from the Permanent Injunction of the Debtors' Confirmed Chapter 11 Plan to Allow Her to File a Motion to Transfer Her* Qui Tam *Action to the District of Delaware and to Pursue the* Qui Tam *Action Against the Debtor as Nominal Defendant* [Docket No. 712] (the Injunction Relief Motion") filed by Kari Crutcher, the relator (the "Relator") in a *qui tam* action (the "*Qui Tam* Action") pending in the United States District Court for the Northern District of Georgia ("Georgia District Court"). In support of the Objection, the Prepetition Bridge Lender and Cash Flow DIP Lender represent as follows:

**PRELIMINARY STATEMENT**

1. The Prepetition Bridge Lender and Cash Flow DIP Lender join in and adopt the arguments made by the Liquidating Trustee in her objection to the Injunction Relief Motion. In

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: First Guaranty Mortgage Corporation (9575); and Maverick II Holdings, LLC (5621). The Debtors' mailing address is 5400 Tennyson Parkway, Suite 450, Plano, TX 75024.

the interest of brevity, those arguments will not be repeated here.  In addition, the Cash Flow DIP Lender and the Prepetition Bridge Lender, the largest beneficiaries of the Liquidating Trust, submit the below additional points regarding the impact that the Relator's requested relief would have on the Liquidating Trust and its creditor beneficiaries.

2.      The Cash Flow DIP Lender (and, prior to the Petition Date, the Prepetition Bridge Lender) provided the funding that made confirmation of the Plan possible.  It will not be repaid in full.  To facilitate confirmation of the Plan, the Cash Flow DIP Lender agreed to a recovery formula in which it shares distributions from the Liquidating Trust with unsecured creditors.  But even with this agreement in place, the available resources to pay for administration of the trust and provide a recovery to secured and unsecured creditors are extremely limited.  The Relator's request for relief from the Plan injunction to ramp up the *Qui Tam* Action litigation jeopardizes the Liquidating Trust's ability to make distributions to creditors.  Instead of focusing on resolving claims filed in these Chapter 11 Cases, including the proof of claim filed by the Relator, allowance of the Injunction Relief Motion would compel the Liquidating Trust to incur immediate additional administrative expenses to defend and participate in the litigation of a lone unsecured creditor in the Georgia District Court rather than the Bankruptcy Court.  Those litigation costs are outside the Liquidation Trust's budget and would erode what are already minimal recoveries to trust beneficiaries to address the demands of a single contingent unsecured claim contrary to the primary purpose of the Plan's injunction.

3.      The harm to the Liquidating Trust and its beneficiaries if the Relator is free to pursue her requested relief is particularly acute due to the Liquidating Trust's limited resources and already dim prospects for creditor recoveries.  It also far outweighs any harm to the Relator from requiring her to live with the choice she already made to commence her suit in Georgia

District Court and file a proof of claim in these Chapter 11 cases. The Injunction Relief Motion should be denied.

## BACKGROUND

### A. The Chapter 11 Cases

4. On June 30, 2022 (the "Petition Date"), First Guaranty Mortgage Corporation ("FGMC") and Maverick II Holdings, LLC ("Maverick"), the above-referenced affiliated debtors and debtors in possession (together, the "Debtors"), commenced these cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

5. Just weeks before the Petition Date, the Prepetition Bridge Lender provided the Debtors with more than $18 million in bridge loans (the "Prepetition Bridge Loans"). The Cash Flow DIP Lender then committed to provide postpetition debtor-in-possession financing (the "Cash Flow DIP Facility") that included up to more than $42 million of new money to, among other things, fund the costs of these cases, as well as a portion of the mortgages in the Debtors' pipeline. On August 4, 2022, the Court entered the *Final Order (i) Authorizing the Debtors to Obtain Postpetition Operational Cash Flow Financing; (ii) Authorizing the Debtors to Use Cash Collateral; (iii) Granting Liens and Providing Super-Priority Administrative Expense Status; (iv) Granting Adequate Protection; (v) Modifying the Automatic Stay; and (vi) Granting Related Relief* [Docket No. 292], which approved the Cash Flow DIP Facility, including the roll-up of the Prepetition Bridge Loans, on a final basis.

### B. The Plan and Liquidating Trust

6. On November 2, 2022, the Court entered an order [Docket No. 671] (the "Confirmation Order") confirming the *Amended Combined Disclosure Statement and Chapter 11*

3

*Plan of First Guaranty Mortgage Corporation and Debtor Affiliate* [Docket No. 652] (the "Plan").[2]  As reflected in a notice that the Debtors filed on November 7, 2022 [Docket No. 678], the Effective Date of the Plan occurred on November 6, 2022.

7.      The terms of the Plan incorporate settlements reached among the Debtors, the Cash Flow DIP Lender, and key stakeholders in the cases, including the creditors' committee. Pursuant to those terms, the Cash Flow DIP Lender funded an additional approximately $14 million to the Debtors on or about the Plan Effective Date, to be used by the Debtors to, among other things, pay administrative claims not in the original DIP budget and to fund the costs of the Liquidating Trust.

8.      Under the Plan, the Liquidating Trustee is permitted to use the Trust Funding Amount (which is the amount the Cash Flow DIP Lender funded to cover the Liquidating Trust's expenses) only in accordance with the Trust Budget. *See* Plan § 14.3(c).  The Cash Flow DIP Lender funded the full Trust Funding Amount on or about the Plan Effective Date.  The Liquidating Trustee cannot use proceeds generated by the Liquidating Trust to pay trust expenses without the consent of the Cash Flow DIP Lender.  *Id.* § 14.5(d)(i).

9.      The Cash Flow DIP Lender is the largest beneficiary of the Liquidating Trust. The Net Liquidating Trust Proceeds are to be distributed to the Cash Flow DIP Lender until it has been repaid for the Trust Funding Amount and the Additional Administrative Claims Amount.  *Id.* § 14.5(d).  After that, the Net Liquidating Trust Proceeds are to be distributed 75% to the Cash Flow DIP Lender and 25% to general unsecured creditors.  *Id.*

10.     The Plan includes the Debtor/Estate Release, which releases all claims that the Debtors could assert, and all claims that other parties could assert on behalf of the Debtors,

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.

against the Released Parties. *Id.* § 16.2(a). Among others, the Prepetition Bridge Lender, the Cash Flow DIP Lender, and the PIMCO Defendants (as defined below) are Released Parties.

## OBJECTION

11. The Relator cannot meet her heavy burden to establish that cause exists to modify the Plan's injunction to litigate against FGMC in the *Qui Tam* Action. The Plan, like all Chapter 11 plans, establishes a process for the orderly and economical resolution of prepetition claims. In a case like this, where creditor recoveries are minimal, debtors and their post-confirmation vehicles (here, the Liquidating Trust) must be judicious in how they spend their limited resources dealing with prepetition claims, particularly those that involve lengthy and complicated litigation. Plan injunctions promote efficiency and fair treatment of all creditors by prohibiting creditors from continuing to pursue prepetition litigation outside the plan's claim process. Because of the harm, among other reasons, posed to the Liquidating Trust and its beneficiaries, the Relator cannot meet her heavy burden to justify an exemption from the Plan's injunction.

12. Suggesting that FGMC would be a "nominal" defendant in the *Qui Tam* Action underestimates the impact that the Relator's requested relief will have on the Liquidating Trust. The Liquidating Trust would be compelled to participate in ongoing motion practice in the case and, if motions to dismiss were to be denied wholly or partially, costly discovery will commence at the expense of funds that would be otherwise available to pay dividends to creditors. As the largest beneficiary of the Liquidating Trust, and as the party that funded these cases (including the Liquidating Trust) even though its DIP financing claims will not be repaid in full, the Cash Flow DIP Lender essentially would be underwriting the Relator's litigation of her contingent and unsecured claim in district court even though she filed a proof of claim in these Chapter 11 cases. Every dollar incurred by the Liquidating Trust dealing with the Relator further increases the

losses to the Cash Flow DIP Lender and makes it less likely that general unsecured creditors will obtain any recovery. It also deflects the Liquidating Trust's limited resources away from the trust's primary purpose: winding down the Debtors and liquidating trust assets for the benefit of *all* creditors.

## **CONCLUSION**

13. For the reasons set forth above, the Relator cannot meet her burden to establish that relief from the Plan's injunction is appropriate. Accordingly, the Court should deny the Injunction Relief Motion.

[*Remainder of page intentionally left blank.*]

ACTIVE 684662697v6

| | |
|---|---|
| Dated: January 24, 2023 | GREENBERG TRAURIG, LLP |

*/s/ Dennis A. Meloro*
Dennis A. Meloro (DE Bar No. 4435)
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000
Facsimile: (302) 661-7360
Email: melorod@gtlaw.com

-and-

Nancy A. Peterman (admitted *pro hac vice*)
Eric J. Howe (admitted *pro hac vice*)
Danny Duerdoth
77 West Wacker Dr., Suite 3100
Chicago, Illinois 60601
Telephone: (312) 456-8400
Facsimile: (312) 456-8435
Email:    petermann@gtlaw.com
          howee@gtlaw.com
          duerdothd@gtlaw.com

Counsel for LVS II SPE XXXIV LLC, as Cash Flow DIP Lender, and B2 FIE XI LLC as Prepetition Bridge Lender

*ACTIVE 684662697v6*