**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FIRST GUARANTY MORTGAGE CORPORATION et al.[1],<br><br>          Debtors. | Chapter 11<br><br>Case No. 22-10584 (CTG)<br><br>(Jointly Administered)<br><br>**Re: Dkt. Nos. 834, 846, 857**<br><br>**Hearing Date August 15, 2023 at 2:00 p.m.**<br>**Supp. Obj. Deadline: July 27, 2023 (extended by agreement)** |

### SERVIS ONE, INC. D/B/A BSI FINANCIAL SERVICES'S SUPPLEMENTAL OBJECTION TO THE LIQUIDATING TRUSTEE'S MOTION FOR ORDER AUTHORIZING THE DESTRUCTION OF CERTAIN RECORDS PURSUANT TO BANKRUPTCY CODE SECTIONS 105 AND 363

Servis One, Inc. d/b/a BSI Financial Services ("BSI"), by its undersigned counsel, submits this Supplemental Objection (the "Supplemental Objection") to the Liquidating Trustee's Motion for Order Authorizing the Destruction of Certain Records (the "Motion") [Dkt. No. 834], and the Liquidating Trustee's Omnibus Reply in Support of the Motion ("Reply") [Dkt. No. 857-2], and in furtherance of BSI's Objection to the Motion (the "Initial Objection") [Dkt. No. 846], and respectfully states as follows:

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number were: First Guaranty Mortgage Corporation (9575) ("the Debtor") and Maverick II Holdings, LLC (5621) (collectively, the "Debtors"). The service address for First Guaranty Mortgage Corporation is 5400 Tennyson Parkway, Suite 450, Plano, TX 75024.

## PRELIMINARY STATEMENT[2]

1.      The Court should deny Motion because the Liquidating Trustee's Reply did not resolve BSI's and other parties' objections.  First, the Liquidating Trustee's Reply still maintains that she has *not* reviewed or catalogued all of the Records to be Destroyed and has not provided a log detailing the contents of the physical or electronic Records to be Destroyed. As such, the Liquidating Trustee still cannot actually confirm whether any of the missing Loan Documents requested by BSI are contained in the physical or electronic records. [Dkt. No. 857 *generally* & Dkt. No. 834 ¶29]. Therefore, the Liquidating Trustee has not demonstrated sound business judgment in seeking authorization from the Court to destroy all records.

2.      Second, the Liquidating Trustee's argument that BSI's Initial Objection should be overruled because it did not object to the Plan should be rejected because FGMC was required and had already agreed to provide the requested loan records pursuant to the Court-approved PSA,[3] prepetition servicing agreements, such as the Servicing Transfer Agreement and Interim Servicing Agreement, mortgage servicing regulations and Fannie Mae, Freddie Mac and Ginnie Mae Servicing Guidelines. [Dkt. No. 857-2 p. 2]. Thus, BSI had no reason to believe that it needed to object to the confirmation of the Plan (especially since the purpose of objecting is to ensure a creditor's rights to repayment are adequately protected in the debtor's bankruptcy) solely to re-assert FGMC's duty to transfer the Loan Documents. BSI had requested said documents on multiple occasions, both pre- and post-petition, and was under the impression that they would be

---

[2] Initially, the Liquidating Trustee failed to address the fact that the Motion was procedurally improper, since the Liquidating Trustee failed to provide notice of the same to BSI, who is clearly an interested party, and failed to provide the required 14 days for creditors and all interested parties to object to the Motion. Although the Liquidating Trustee "granted extensions of the objection deadline to numerous parties," that did not cure the procedural defect of improper notice. [Doc No. 857 pg. 2 ¶6]. The Liquidating Trustee's failure to address this issue constitute an admission of its failure to comply with Bankruptcy Rule 6007.

[3] Capitalized terms shall have the same meaning as defined terms in BSI's Initial Objection. [Dkt. No. 846].

provided particularly since BSI had received assurances of the same from FGMC.  As such, BSI had no reason to believe, at time of confirmation of the Plan, that the missing Loan Documents would not be provided, or would be destroyed.[4]

3.      Third, BSI does not request that the Liquidating Trustee "expend resources it does not have, to identify documents that relate to *prepetition* mortgage servicing rights," as BSI has already identified the specific missing documents previously requested from FGMC and has provided said list to the Liquidating Trustee for review and to expediate a resolution. The Liquidating Trustee's assertion that Section 13 of the confirmed Plan contained a vague rejection of unspecified "executory contracts or unexpired leases" did not sufficiently put BSI on notice or give BSI any reason to believe that FGMC would be rejecting or refusing to carry out its contractual obligations to transfer the Loan Documents under any mortgage servicing rights transfer agreements. [Dkt. No. 857 pg. 5].  Importantly, the Interim Servicing Agreement that the Liquidating Trustee now claims was rejected was incorporated into Section 5.10 of the Plan. Further, even if such prepetition agreements were deemed rejected, BSI's rights under such agreements survived, and, therefore, the Loan Documents still must be provided to BSI.

4.      Fourth, despite the Liquidating Trustee's argument to the contrary, the Loan Documents – whether they are associated with pre-petition or post-petition transfers – must be preserved and transferred to BSI to comply with Fannie Mae, Freddie Mac and Ginnie Mae's servicing guidelines.

5.      Fifth, the Joint Marketing Agreement (defined below) was defined in, and

---

[4] Similarly, BSI did not have a reason to request "modifications of the Trust Agreement with respect to the indefinite preservation of historical information relating to any of its prepetition agreements with FGMC." [Dkt. No. 857-2 p. 2]. BSI does not seek "indefinite preservation" of the Loan Documents, but rather seeks the production of missing Loan Documents it previously requested and that FGMC is obligated to provide to BSI.

incorporated into, the PSA, and no written notice of termination of the Joint Marketing Agreement was provided to BSI. Thus, the Liquidating Trustee must provide any missing Loan Documents related to loans that were subject to the Joint Marketing Agreement.

6. Finally, the Reply misconstrues the applicability of 12 C.F.R. § 1026.25, which requires the Liquidating Trustee to transfer the missing Loan Documents to BSI.

7. For all these reasons, the Court should issue an order denying the Motion and directing the Liquidating Trustee to provide all the physical and electronic documents requested by BSI in the list of missing Loan Documents provided to the Liquidating Trustee, pertaining to the loans for which servicing rights were transferred from FGMC to BSI.

## **ARGUMENT**

### I. **The Liquidating Trustee Still Seeks to Immediately Destroy Physical Loan Records that May Pertain to Servicing Rights that Were Transferred to BSI Post-Petition**

The Liquidating Trustee contends that it "only intends to immediately destroy the Debtors' physical Records to be Destroyed, none of which are in the hands of custodians for the owners of prepetition loan originations and sales or relate to the loans or servicing rights transferred to BSI pursuant to the PSA or the BSI Sale Order" and inconsistently concludes that "these records are not relevant to the BSI Sale or the BSI serviced loans purchased after 2020"; yet, the Liquidating Trustee already conceded that it has not actually reviewed the physical Records to be Destroyed and is thus unaware of its contents. [Dkt. No. 857 pg.6; Meerovich Supp. Decl. ¶11]. Moreover, the Liquidating Trustee asserts that "[a]ll of the physical Records to be Destroyed pre-date 2019 and no physical records have been transferred for storage at any of FGMC's physical records storage facilities since 2019. The physical Records to be Destroyed include the following categories of documents: operational, financial, and **loan level documents**." *See id.* (emphasis added). However, based on BSI's records, there are 47 missing documents related to loans that

were originated from 2009 through 2019, and the servicing rights for such loans were transferred to BSI *post-petition*. The 47 missing documents include loan applications, tax information, escrow waivers, closing disclosures and Certificates of Reasonable Value and Guarantees, among other loan level documents. Thus, contrary to the Liquidating Trustee's assertion, the physical Documents to be Destroyed *may* contain some of the missing Loan Documents and may be relevant to the BSI Sale and BSI serviced loans purchased after 2020. Notably, the Liquidating Trustee also has not provided a log or list of the physical records (or electronic records), despite BSI's request, so that BSI can review and determine whether any relevant Loan Documents are contained therein.

Further, the Liquidating Trustee does not indicate what steps will be taken to determine whether any of the electronic records are necessary to perform her duties under the Trust Agreement or whether any of those documents relate to the missing Loan Documents previously requested by BSI. The Liquidating Trustee's statements regarding the contents of the physical and electronic records are simply too vague and generalized to adequately demonstrate sound business judgment or allow BSI and other interested parties to know with any degree of certainty that the Records to be Destroyed do *not* contain any of the missing Loan Documents it previously requested from FGMC.

The Liquidating Trustee claims that the "remaining documents which BSI asserts are required to be transferred (totaling over 2,700 documents) relate to loans which predate both the Petition Date and the BSI Sale Order. [Doc No. 857-2 pg. 8 (citing Meerovich Supp. Decl., ¶ 7)]. However, just because the loans originated pre-petition does not mean that they are not subject to the Servicing Agreements, the PSA, or the Sale Order. Therefore, the date of loan origination is irrelevant to the Court's determination of whether the Liquidating Trustee is obligated to provide

5

the missing Loan Documents.  In sum, the Court should deny the Motion because the physical

Documents to be Destroyed may contain some of the missing BSI Loan Documents.

## II.    The Liquidating Trustee's Vague Rejection of Executory Contracts in the Plan Should Not Extend to Prior Servicing Agreements Between FGMC and BSI

The Liquidating Trustee's argument that it rejected the April 1, 2021 Servicing Agreement

and Interim Servicing Agreement (collectively, the "Servicing Agreements") in the Debtor's Plan

and Confirmation Order fails because BSI was not given any actual notice of the rejection of these

specific Servicing Agreements and even if BSI is deemed to be on notice, the Liquidating Trustee's

purported rejection does not rescind the Servicing Agreements or void its obligations to transfer

the required Loan Documents. [Dkt. No. 857 pg. 8; citing Dkt. No. 671-1 at 80].

### A.  The Liquidating Trustee Failed to Provide Sufficient Notice of FGMC's Specific Intent to Reject the Servicing Agreements and the Interim Servicing Agreement Was Incorporated into the Plan

Under 11 U.S.C. § 365, the Liquidating Trustee "may assume or reject any executory

contract or unexpired lease of the debtor . . . [i]f there has been a default in an executory contract

or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the

time of assumption of such contract or lease, the trustee (A) cures, or provides adequate assurance

that the trustee will promptly cure, such default other than a default that is a breach of a provision

relating to the satisfaction of any provision . . . (B) compensates, or provides adequate assurance

that the trustee will promptly compensate, a party other than the debtor to such contract or lease,

for any actual pecuniary loss to such party resulting from such default; and (C) provides adequate

assurance of future performance under such contract or lease." 11 U.S.C. § 365(a)-(b). "Thus, the

debtor party must take full account of the cost to cure all existing defaults owed to the non-debtor

party when assessing whether the contract is beneficial to the estate." *In re Nat'l Gypsum Co.*, 208

F.3d 498, 506 (5th Cir. 2000).

6

While the Bankruptcy Code does not provide a concrete definition of "executory contract," it is well settled in the Third Circuit that "[an executory contract is] a contract under which the obligation[s] of both the bankrupt and other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *In re Rupari Holding Corp.*, No. 17-10793 (KJC), 2017 WL 5903498, at *2 (Bankr. D. Del. Nov. 28, 2017); *see also In re Avianca Holdings S.A.*, 618 B.R. 684, 695 (Bankr. S.D.N.Y. 2020); *In re Penn Traffic Co.*, 524 F.3d 373 (2d Cir. 2008). If both parties to a contract have unperformed material obligations, the contract is executory and is capable of being rejected or assumed under section 365 of the Bankruptcy Code. *In re Rupari Holding Corp.*, 2017 WL 5903498, at *2. "Most courts have adopted Professor Countryman's definition of an executory contract as 'a contract under which the obligation of both the [debtor] and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.' Under Countryman's 'material breach' test, a prepetition contract is executory when both sides are still obligated to render substantial performance. Where such performance remains due on only one side, the contract is non-executory, and hence, neither assumable nor rejectable." *In re Avianca Holdings S.A.*, 618 B.R. 684, 695 (Bankr. S.D.N.Y. 2020) (citation omitted).

"[T]he authority to reject an executory contract is vital to the basic purpose of a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization." *In re Nat'l Gypsum Co.*, 208 F.3d 498, 505 (5th Cir. 2000).

The Bankruptcy Code is "replete with provisions requiring proper notice" to interested parties. *In re Thane Int'l, Inc.*, 586 B.R. 540, 548 (Bankr. D. Del. 2018) (holding that creditors did

not receive proper notice under Section 365 and the Sale Motion failed all six requirements under

Bankruptcy Rule 6006(f)) (citing *In re Nat'l Gypsum Co.*, 208 F.3d 498, 503 (5th Cir. 2000)).   In

*In re Nat'l Gypsum Co.*, the Fifth Circuit noted that "the debtor had a responsibility to assure that

the **non-debtor party was on notice of the debtor's specific intent** to assume the contract" which

National Gypsum failed to meet because "there existed a fact question whether Century was sent

copies of crucial notices and mailings that the bankruptcy court had ordered to be sent to all

affected parties." The Fifth Circuit held that National Gypsum was not able to demonstrate that

Century received either the plan or the notice enumerating which executory contracts National

Gypsum intended to assume and that proofs demonstrated that "Century knew of the

commencement of National Gypsum's Chapter 11 reorganization, **not of the specific intent to**

**assume**. Consequently, the district court found that Century's due process rights had been

violated." *In re Nat'l Gypsum Co.*, 208 F.3d 498, 503 (5th Cir. 2000).

Bankruptcy Rule 6006 governs Assumption, Rejection or Assignment of an Executory

Contract or Unexpired Lease and subsection (c) requires that "notice of a motion . . . shall be given

to the other party to the contract or lease." Fed. R. Bankr. P. 6006(c). Bankruptcy Rule 6006(f)

requires that any omnibus motion to reject or assume multiple executory contracts that are not

between the same parties shall:

> (1) state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;
> (2) list parties alphabetically and identify the corresponding contract or lease;
> (3) specify the terms, including the curing of defaults, for each requested assumption or assignment;
> (4) specify the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assignment;
> (5) be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases; and
> (6) be limited to no more than 100 executory contracts or unexpired leases.

Fed. R. Bankr. P. 6006(f)(1)-(6).

Here, Schedule G – Executory Contracts and Unexpired Leases attached to the voluntary petition, lists BSI on page 704, and in the "State what the contract or lease is for and the nature of debtor's interest" vaguely identifies "Joint Marketing Agreement," "Servicing Agreement" and "Servicing Transfers" [Dkt. No. 367 pg. 704]. Such vague disclosures were insufficient to provide notice to BSI of Debtors' or the Liquidating Trustee's intention to reject the prepetition Servicing Agreements that the Trustee claims were rejected.

Additionally, no specific notice of intent to reject the Servicing Agreements was communicated to BSI, and the Liquidating Trustee fails to point to any satisfaction of the notice requirement [Dkt. No. 857 *generally*]. Similarly, the Motion to Approve the Sale did not provide specific notice of the Liquidating Trustee's intent to reject the Servicing Agreements since they were not referenced or listed anywhere. [Dkt. No. 328 ¶¶59-61].

Further still, the Debtors' Omnibus Motion sought an Order (I) authorizing Debtors to (A) Reject Certain Unexpired Leases effective as of July 29, 2022; and (B) Abandon Certain Property Associates Therewith; and (II) Granting Certain Related Relief sought to "cut off claims and liabilities which would otherwise accrue from the unused, unoccupied Premises that the Debtors leases" pertaining to real property, as well as the abandonment of personal property remaining on the Premises. [Dkt. No. 244 ¶4]. However, the Omnibus Motion **does not seek to reject the Servicing Agreements with BSI as required by Rule 6006(f)**. *Id.* Debtors failed to satisfy the requirements of Bankruptcy Rule 6006(f) since they failed to "*state in a conspicuous place* that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion" and since the Motion failed to "list parties alphabetically and *identify the corresponding contract or lease* . . . ." Unsurprisingly, the Court's Order granting the Debtors' Omnibus Motion makes no reference to BSI or the Servicing Agreements. [Dkt. No. 361 & 361-

1]. As such, the Liquidating Trustee cannot now claim, without providing BSI with any notice of a specific intent to reject, that the Servicing Agreements were rejected under the confirmed Plan.

The Liquidating Trustee solely points to Section 13 of the Plan, which indicates, as follows:

**SECTION 13**
**TREATMENT OF EXECUTORY CONTRACTS**
**AND UNEXPIRED LEASES**

13.1    <u>Rejection / Assumption</u>.

Except with respect to (i) executory contracts or unexpired leases that were previously assumed or rejected by order of the Bankruptcy Court, (ii) executory contracts or unexpired leases that are the subject of a pending motion to assume or reject, pursuant to section 365 of the Bankruptcy Code, or (iii) executory contracts or unexpired leases that are scheduled by the Debtors and the Cash Flow DIP Lender to be assumed as of the Effective Date, as set forth in the Plan Supplement, on the Effective Date, each executory contract and unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed <u>rejected</u> pursuant to section 365 of the Bankruptcy Code; *provided, however*, that nothing in this Section shall cause the rejection, breach, or termination of any contract of insurance benefiting the Debtors and the Estates, the Debtors' officers, managers and directors and/or the Liquidating Trust. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such assumptions and rejections, as applicable, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date. Nothing in this Section shall be construed as an acknowledgement that a particular contract or agreement is executory or is properly characterized as a lease.

The non-Debtor parties to any rejected personal property leases shall be responsible for taking all steps necessary to retrieve the personal property that is the subject of such executory contracts and leases, and neither the Debtors nor the Liquidating Trust shall bear any liability for costs associated with such matters.

[Dkt. No. 671-1 at 80]. However, Section 13 does not refer to the Servicing Agreements between FGMC and BSI, and the Plan did not annex a list of the executory contracts Debtors sought to reject under section 365 of the Bankruptcy Code. [Dkt. No. 671]. As such, the Liquidating Trustee did not give any **specific notice** to BSI that it intended to reject its obligations under the Servicing Agreements, including transferring the required Loan Documents.

More importantly, Section 5.10 of the Plan, which discusses the BSI Sale Motion, incorporated the Interim Servicing Agreement, which the Liquidating Trustee contends was

10

rejected: "The Transfer Date is expected to occur on November 1, 2022. . . . In addition, FGMC and BSI entered into that certain Interim Servicing Agreement, dated as of September 15, 2022, pursuant to which FGMC, as interim servicer, shall, or shall cause its subservicer to, service the related mortgage loans on behalf of BSI for the interim period between the Closing Date and the Transfer Date." [Dkt. No. 671-1 at 48].[5]  Therefore, the Liquidating Trustee's attempt to now claim that the Servicing Agreements were previously rejected is unsupported and constitutes a violation of BSI's due process rights.

### B. The Trustee's Obligations Under the Servicing Agreements Were Not Rescinded as a Matter of Law

Even if this Court finds that sufficient notice of rejection was provided to BSI, the purported rejection does not rescind the Servicing Agreements or render them completely inoperative. As such, BSI's rights, which were granted under the Servicing Agreements, survive despite any purported rejection.

The United States Supreme Court held that "rejection of an executory contract gives rise to a claim for breach of contract against the debtor, but it does not operate as a termination or rescission of the rejected contract, so a debtor cannot evade its pre-rejection grant of rights." *Missing Product Holdings, Inc. v. Tempnology, LLC*, --- U.S. ---, 139 S. Ct. 1652, 203 L.Ed.2d 876 (2019). The Supreme Court explained that "rejection is a breach, and the consequences of such breach are determined by "non-bankruptcy contract law." *Id.* at 1662.  Thus, "a debtor's rejection of an executory contract in bankruptcy has the same effect as a breach outside of bankruptcy." *Id.* at 1666. That is, the rejection "does not eliminate rights to the contract already conferred on the non-breaching party." *Id.* at 1659. "It gives the counterparty a claim for damages,

---

[5] Additionally, the Confirmation Order did *not* reflect the Servicing Agreements.

while leaving intact the rights the counterparty has received under the contract." *Id.* at 1661. "A rejection breaches a contract but does not rescind it. And that means all the rights that would originally survive a contract breach, remain in place." *Id.* at 1657-58.

Notably, any purported rejection of the Servicing Agreements does not negate the Liquidating Trustee's legal obligation to retain and transfer Loan Documents to BSI based on mortgage servicing regulations and the Fannie Mae, Freddie Mac and Ginnie Mae Guidelines. These obligations were not impaired, discharged or waived in any way, as made clear in the Court's Confirmation Order, which specifically states, as follows, with respect to Freddie Mac:

> Notwithstanding anything to the contrary in the Plan/Sale-Related Documents, nothing shall limit, alter, impair, waive, discharge, release, enjoin or impact, in any way, the rights, payments, claims, indemnities, releases, and other protections provided to, or obligations owing to Freddie Mac under the: (1) *Order on Debtors' Motion for an Order (I) Approving a Settlement Agreement with Federal Home Loan Mortgage Corporation Pursuant to Fed. R. Bankr. P. 9019, (II) Authorizing the Sale of Certain Mortgage Loans, and (III) Granting Related Relief* (ECF No. 386) (the "Freddie Mac Settlement Order") and the Court approved Settlement Agreement annexed to the Freddie Mac Settlement Order as Exhibit 1 (the "Freddie Mac Settlement Agreement"); (2) the BSI Sale Order; and/or (3) any other previous Order entered by this Court in these Chapter 11 Cases for which protections have been afforded to Freddie Mac (collectively, the Orders referenced in (1) through (3) of this paragraph, the "Freddie Mac Orders"), **nor shall anything in the Plan/Sale-Related Documents limit, alter, impair, waive, discharge, release, exculpate, enjoin or impact, in any way, the obligations of (A) the Debtors under, or pursuant to, the Freddie Mac Orders and Freddie Mac Agreements** (including, *without limitation*, the indemnification obligations provided to Freddie Mac pursuant to the Freddie Mac Settlement Order), **(B) BSI under the BSI Sale Order and applicable Freddie Mac Agreements,** or (C) any other person or entity subject to the Freddie Mac Agreements. For the avoidance of any doubt, except to the extent that Freddie Mac is satisfied that such obligation has been fulfilled in accordance with the terms of the Freddie Mac Settlement Agreement, Freddie Mac's rights, powers, prerogatives, remedies, payment or lien priorities, lien rights, security interests and claims against the Debtors or any other entity, including, without limitation, in, under or with respect to, any Freddie Mac Loans or any Freddie Mac Agreements, or any rights to setoff or recoupment that Freddie Mac may have or assert, shall not be discharged, enjoined, impaired, released, modified or limited in any respect and are all expressly preserved.

Each of the Debtors, the Liquidating Trust, and the Liquidating Trustee, as applicable **shall perform all remaining obligations under the Freddie Mac Orders** and Freddie Mac Agreements whether arising prior to, or after, the Effective Date and are directed to maintain compliance with the Freddie Mac Orders and Freddie Mac Agreements. **Freddie Mac shall not be required to take any other action to preserve any of its rights, claims, or defenses** against the Debtors, the estates or the Liquidating Trustee, all of which are expressly preserved and shall survive entry of this Order the Plan's discharge and injunction provisions, and the effectiveness of the Plan. …

[Dkt. No. 671 ¶46].

Similarly, the Court's Confirmation Order contains the same language with respect to

Fannie Mae:

**Notwithstanding anything to the contrary in the Plan/Sale-Related Documents, nothing shall limit, alter, impair, waive, discharge, release, enjoin or impact, in any way, the rights, payments, claims, indemnities, releases, and other protections provided to, or obligations owing to Fannie Mae** under the: (1) Order on Debtors' Motion for an Order (I) Approving a Settlement Agreement with Federal National Mortgage Association [sic] to Fed. R. Bankr. P. 9019, (II) Authorizing the Sale of Certain Mortgage Loans, and (III) Granting Related Relief (ECF No. 426) (the "Fannie Mae Settlement Order") and the Settlement Agreement (as defined in the Fannie Mae Settlement Order) (the "Fannie Mae Settlement Agreement"); (2) the BSI Sale Order; and/or (3) any other previous Order entered by this Court in these Chapter 11 Cases for which protections have been afforded to Fannie Mae (collectively, the Orders referenced in (1) through (3) of this paragraph, the "Fannie Mae Orders"), **nor shall anything in the Plan/Sale-Related Documents limit, alter, impair, waive, discharge, release, exculpate, enjoin or impact, in any way, the obligations of (A) the Debtors under, or pursuant to, the Fannie Mae Orders** and the Fannie Mae Lender Contract (including, without limitation, the indemnification obligations provided to Fannie Mae pursuant to the Fannie Mae Settlement Order) or **(B) BSI under the BSI Sale Order and its contractual relationship with Fannie Mae. …**

Each of the Debtors, the Liquidating Trust, and the Liquidating Trustee, as applicable shall perform all remaining obligations under the Fannie Mae Orders and, to the extent not terminated in accordance with their terms or the terms of the Fannie Mae Settlement Agreement, the Fannie Mae Lender Contract whether arising prior to, or after, the Effective Date and **are directed to maintain compliance** with the Fannie Mae Orders and the Fannie Mae Lender Contract. F**annie Mae shall not be required to take any other action to preserve any of its rights, claims, or defenses against the Debtors**, their estates or the Liquidating Trust, all of which are expressly preserved and shall survive entry of this Order, the Plan's discharge and injunction provisions, and the effectiveness of the Plan. …

13

[Dkt. No. 671 ¶47].

Likewise, the Court's Confirmation Order contains the same language with respect to

Ginnie Mae:

> **Notwithstanding anything in the Documents, the Debtors, Liquidating Trustee and any purchase shall abide by and comply with all federal statutes, regulations, rules, policies and procedures, including, without limitation, (1) all applicable Ginnie Mae statutes, regulations, rules, policies and procedures, including, without limitations,** 12 U.S.C. § 1721(g), 12 U.S.C. §§ 1716 et seq. and 24 C.F.R. parts 300 - 310; **(2) the Ginnie Mae Guide,** all Ginnie Mae guaranty agreements, MBS prospectus documents, escrow agreements, unilateral notification, notices of violation, supplements, addendums, amendments, and related documents or agreements, (collectively, the "Ginnie Mae Agreements"); (3) all applicable FHA statutes, regulations, rules, policies and procedures, including, without limitation, 12 U.S.C.§§ 1702 – 1715z-25 and 24 C.F.R. parts 201 – 203 and 206; (4) FHA handbooks, mortgagee letters, indemnification agreements, and any other documents or agreements; (5) all RHS statutes, regulations, rules. Policies and procedures, including, without limitation, 42 U.S.C. §§ 1471 et seq. and 7 C.F.R. part 3555; (6) all RHS participation agreements, user agreements, guaranty agreements and other documents or agreements; (7) all VA statutes, regulations, rules, policies and procedures, including, without limitation, 38 U.S.C. §§ 3701 et seq., 38 C.F.R. part 36, and all administrative materials issued under such statutes or regulations; and (8) VA handbooks, user guides, circulars, audit letters, hold harmless agreements, and any other documents or agreements.

[Dkt. No. 671 ¶45].

These portions of the Confirmation Order prohibit the Liquidating Trustee from

unilaterally rejecting its obligations to Fannie Mae and Freddie Mac under the Fannie Mae and

Freddie Mac Orders and obligations to Ginnie Mae consistent with the Ginnie Mae Agreements.

### III.    The Liquidating Trustee Is Still Required to Comply with Fannie Mae, Freddie Mac, and Ginnie Mae Servicing Guidelines Which Require the Retention and Transfer of Loan Documents Even if Such Documents Pertain to Pre-Petition Transfers

A majority of the BSI loans in question are Fannie Mae, Freddie Mac and Ginnie Mae

loans, which are subject to each governmental agency's applicable Servicing Guidelines. As stated

in BSI's Initial Objection [Dkt. No. 846 Point III.C], the applicable Fannie Mae Servicing

Guidelines require Debtor to transfer the Loan Documents to BSI, whether in physical form or other form:

> ***All records related to loans (including all data and materials representing, based on, or compiled from such records) sold to or serviced for Fannie Mae are Fannie Mae's property*** and any other owner of a participation interest in the loan regardless of their physical form or characteristics or whether they are developed or originated by the loan seller, servicer, or others. . . . ***If the seller does not service the loan, it must transfer the loan file to the servicer.***

*See* A2-4.1-02 Ownership and Retention of Loan Files and Records at https://selling-guide.fanniemae.com/Selling-Guide/Doing-Business-with-Fannie-Mae/Subpart-A2-Lender-Contract/Chapter-A2-4-Loan-Files-and-Records/Section-A2-4-1-Establishment-Ownership-Retention-/1645975541/A2-4-1-02-Ownership-and-Retention-of-Loan-Files-and-Records-12-19-2017.htm#Record.20Retention.20Requirements (emphasis added). Thus, the Liquidating Trustee's Destruction of Loan Documents would result in a breach of Fannie Mae's Servicing Guidelines.

Similarly, Chapter 3300 of the Freddie Mac Servicing Guide covers Mortgage File Contents and Retention, and Chapter 3301.1 specifically states: "Sellers and Transferor Servicers that ***retain copies of any or all of the Mortgage file must do so until the later of seven years after*** all associated representation and warranty obligations expire as set furth in Loan Coverage Advisor or after any Transfer of Servicing."[6] The Freddie Mac Servicing Guide also required FGMC to "supply[] and (if applicable) caus[e] its Custodian to supply all reports, documents and information (including, but not limited to, all Mortgage records specified in Section 8101.7) requested by Freddie Mac on the date specified by Freddie Mac."[7] Additionally, the Liquidating Trustee should

---

[6] *See* Chapter 3301 at https://guide.freddiemac.com/app/guide/section/3301.1#:~:text=Sellers%20and%20Transferor%20Servicers%20that,after%20any%20Transfer%20of%20Servicing (emphasis added).

[7] Freddie Mac Servicing Guide § 3606.3 at https://guide.freddiemac.com/app/guide/section/3603.3.

not be permitted to destroy any documents or information related to a Freddie Mac Loan, as such documents and information are the property of Freddie Mac:  "The Mortgage file, its contents and any copies (and all associated data and information, whether stored electronically or otherwise) are and remain at all times the property of Freddie Mac."  *See* Freddie Mac Servicing Guide § 3301.1.

Similarly, Part 3 "Record Keeping" of Chapter 14 of Ginnie Mae's Servicing Guide entitled "Pool and Loan Package Administration," generally requires that the "Issuer must retain records for each pool or loan package of mortgage for the life of the pool or loan package."  *See* Chapter 14 Pool and Loan Package Administration, Part 3 Record Keeping at https://www.ginniemae.gov/issuers/program_guidelines/MBSGuideLib/Chapter_14.pdf.     As such, regardless of whether some of the missing Loan Documents pertain to pre-petition or post-petition loans, FGMC still must comply with its obligations under the applicable Fannie Mae, Freddie Mac, and Ginnie Mae Servicing Guidelines.[8]  Accordingly, the Liquidating Trustee must retain and transfer the missing Loan Documents to BSI and should not be authorized to destroy the Documents to be Destroyed until such transfers are completed.

## IV.  The Liquidating Trustee Is Required to Transfer the Loan Documents It Determined Relate to a Prepetition Joint Marketing Agreement with BSI

In its Reply, the Liquidating Trustee claims that it identified 330 Loan Documents, which it concludes it is not required to transfer "which the Liquidating Trustee has determined relate to a prepetition Joint Marketing Agreement with BSI." [Dkt. No. 857-2, pgs. 2-3].  However, the

---

[8] The Liquidating Trustee may not be authorized to destroy (convert) Fannie Mae, Freddie Mac and Ginnie Mae's property, namely the missing Loan Documents in its possession.  *See, e.g.*, *Thyroff v. Nationwide*, 8 N.Y.3d 283 (N.Y. 2007) (holding that unauthorized disposition of electronic records may be subject to a claim for conversion under New York common law); *Fremont Indemnity Co. v. Fremont General Corp.*, 148 Cal. App. 4th 97, 119 (Cal. Ct. App. 2007) (cause of action for conversion may be maintained for the disposition of "intangible personal property . . . in a manner that is inconsistent with the plaintiff's property rights").

PSA was approved by the Court and it incorporates and defines the Joint Marketing Agreement as "that certain joint marketing services agreement entered into by and between Seller and Purchaser and dated as of March 4, 2021, pursuant to which Seller and Purchaser agreed to the terms of jointly marketing Seller's loan products to borrowers of mortgage loans as to which Purchaser would own the Servicing Rights thereto." [Dkt. No. 390-1, pg. 7]. Further, Article II, Section 2.02 of the PSA provides that "the servicing rights with respect to any refinances of such mortgage loans shall be assigned to Purchaser under the Joint Marketing Agreement and the related transfer agreement on a flow basis in the ordinary course, for no fee and at no cost to Purchaser." [Dkt. No. 390-1, pg. 10].

Notably, the Joint Marketing Agreement provides that "[e]ach Party will reasonably cooperate with the other Party to make available such files and records that the other party may reasonably request." Supplemental Nayani Decl., Ex. 1. The Joint Marketing Agreement also states that the "Agreement will start as of the Effective Date shown in the preamble and will continue for eighteen (18) months (the "Initial Term"). After the Initial Terms, this Agreement will automatically renew and extend for a period of twelve (12) months **unless either Party provides written notice of termination to the other Party at least ninety (90) calendar days prior to the end of the Initial Term or any renewal term."** *Id.* at ¶7; Ex. 1. No such written notice of termination was provided by FGMC to BSI. *See id.* at ¶9. As such, the Liquidating Trustee cannot claim that FGMC rejected the Joint Marketing Agreement or that it is somehow inoperable.

## V. The Liquidating Trustee Misconstrues a Creditor's Requirements Under 12 C.F.R. § 1026.25

The Liquidating Trustee's Reply claims that "no applicable laws or mortgage servicing regulations require that the Liquidating Trustee turnover historic loan documents related to loans

17

or mortgage servicing rights sold or assigned prepetition pursuant to prepetition agreements which have been rejected by the Debtors." [Dkt. No. 857 p.8-9]. As such, the Liquidating Trustee also misconstrues BSI's arguments regarding the application of 12 C.F.R. § 1026.25, claiming it only applies to loan originators. [Dkt. No. 857-2 pgs. 8-9 ("This regulation, however, requires a loan originator to make certain disclosures to the underlying borrower at the time of the origination and does not apply to the Liquidating Trustee nor the Trust.")]. 12 C.F.R. § 1026.25 applies to creditors and further requires that "[i]f a creditor sells, transfers, or otherwise disposes of its interest in a mortgage loan subject to § 1026.19(f) and does not service the mortgage loan, the creditor **shall provide a copy of the disclosures required under § 1026.19(f)(1)(i)[9] or (f)(4)(i)[10] to the owner or servicer of the mortgage as part of the transfer of the loan file."** 12 C.F.R. § 1026.25(ii)(B) (emphasis added). Therefore, any loans for which the servicing rights were sold from FGMC, or otherwise transferred, to BSI are subject to this requirement to transfer the loan file to the new owner or servicer of such loans. Accordingly, FGMC must comply with 12 C.F.R. § 1026.25.

## CONCLUSION

For all these reasons, BSI respectfully requests that this Court deny the Liquidating Trustee's Motion until all of the Debtor's records are properly reviewed and segregated to ensure that BSI's previously requested Loan Documents pertaining to the servicing rights for the 1063 loans it purchased from Debtor be retained and transferred as required by the Court's Order approving the PSA, the Servicing Agreement, Interim Servicing Agreement, the Joint Marketing

---

[9] 12 C.F.R. § 1026.19(f)(1)(i) states that "in a transaction subject to paragraph (e)(1)(i) of this section, the creditor shall provide the consumer with the disclosures required under § 1026.38 reflecting the actual terms of the transaction." These are clearly loan level documents that must be preserved and provided to BSI.

[10] 12 C.F.R. § 1026.19(f)(4)(i) (Transactions involving a seller requires that in a "transaction subject to paragraph (e)(1)(i) of this section that involves a seller, the settlement agent shall provide the seller with the disclosures in § 1026.38 that relate to the seller's transaction reflecting the actual terms of the seller's transaction.").

Agreement, Fannie Mae Orders, Freddie Mac Orders, Fannie Mae Servicing Guidelines, the Freddie Mac Servicing Guide, Ginnie Mae Servicing Guide and applicable mortgage servicing regulations.

Dated: July 27, 2023  
      Wilmington, Delaware

**BLANK ROME LLP**

*/s/ Lawrence R. Thomas III*  
Lawrence R. Thomas III (DE No. 6935)  
1201 N. Market Street, Suite 800  
Wilmington, DE 19801  
Tel: (302) 425-6439  
Email: lorenzo.thomas@blankrome.com

**BLANK ROME LLP**  
Diana M. Eng (admitted *pro hac vice*)  
1271 Avenue of the Americas  
New York, NY 10020  
Tel: (212) 885-5572  
Email: diana.eng@blankrome.com

*Counsel for Interested Party Servis One, Inc. d/b/a BSI Financial Services*