# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FIRST GUARANTY MORTGAGE CORPORATION, *et al.*,[1]<br><br>Debtors. | ) Chapter 11<br>)<br>) Case No. 22-10584 (CTG)<br>)<br>) Jointly Administered<br>)<br>) **Objection Deadline: August 16, 2023 at 4:00 p.m.**<br>) **Hearing Date: September 5, 2023 at 10:00 a.m.**<br>) |

## KARI CRUTCHER'S RENEWED MOTION FOR LIMITED RELIEF FROM THE PERMANENT INJUNCTION OF THE DEBTORS' CONFIRMED CHAPTER 11 PLAN

Ms. Kari Crutcher (the "**Relator**"), the relator in a *qui tam* action pending in the United States District Court for the Northern District of Georgia (the "**Georgia District Court**"), *United States ex rel. Kari Crutcher v. First Guaranty Mortgage Corporation*, No. 16-cv-3812-TWT (N.D. Ga.) ("t**he *qui tam* action**" or "**Crutcher**"), renews her motion for limited relief from the permanent injunction (the **"Permanent Injunction"**) of the Amended and Modified Chapter 11 Plan of First Guaranty Mortgage Corporation ("**FGMC**") and debtor affiliates (collectively the "**Debtor**") that was entered in this case on November 1, 2022. *See* D.I. 524. Granting this relief would permit Relator to (1) file an unopposed motion in the District Court for the Northern District of Georgia to transfer venue of her *qui tam* action to the District Court for the District of Delaware;[2]

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: First Guaranty Mortgage Corporation (9575); and Maverick II Holdings, LLC (5621). The Debtors 'mailing address is 5800 Tennyson Parkway, Suite 450, Plano, TX 75024.

[2] Counsel has repeatedly discussed with counsel for PIMCO, defendants in the *qui tam* action, transferring the *qui tam* to the District of Delaware since the Court's July 11, 2023, hearing. PIMCO and Peters have now stated that they do not intend to oppose transfer. Counsel is currently confirming that the Trustee will not oppose Relator's proposed motion to transfer. While counsel expects the proposed motion in the Northern District of Georgia to transfer the *qui tam* will be unopposed, Relator requests relief from this Court to file the motion to transfer in the Northern District of Georgia, whether or not a party opposes that motion.

and (2) pursue the *qui tam* action against the Debtor with relief limited to proceeds from sources other than the bankruptcy estate or liquidation trust, including, but not limited to, any available insurance proceeds.[3]

## FACTUAL AND PROCEDURAL BACKGROUND

1. On October 13, 2016, Relator filed the *qui tam* action in the Northern District of Georgia against the Debtor. The *qui tam* complaint seeks to recover damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729–33 ("**FCA**"), for false claims to the United States Department of Housing and Urban Development ("**HUD**") resulting from FGMC's faulty underwriting of residential mortgage loans approved and endorsed by FGMC for Federal Housing Administration ("**FHA**") insurance. Complaint, *United States ex rel. Crutcher v. First Guaranty Mortg. Corp.*, No. 16-cv-3812-TWT (N.D. Ga. Oct. 13, 2016). The Complaint also seeks damages for the retaliation Relator faced for blowing the whistle on FGMC, as well as attorneys' fees for Relator's attorneys' work on this case. *Id.*

2. FGMC was a lender approved by HUD to originate and underwrite single-family residential mortgages and endorse those loans for government insurance without any prior review by the government. In the *qui tam* action, Relator alleges that FGMC knowingly approved loans that violated FHA rules and falsely certified compliance with those rules, resulting in tens of millions of dollars of losses to HUD. *Id.*

3. The United States investigated the claims and made a determination that FGMC's FCA liability exceeded the amount of money FGMC could pay without declaring bankruptcy. See the attached Declaration of J. Ferris (the "**Ferris Decl.**") at 3, Exhibit 1. The United States then negotiated a settlement based on FGMC's maximum ability to pay at $29 million, paid over five

---

[3] Relator does not waive any right to recover from the bankruptcy estate or liquidated trust, but acknowledges that such rights are not the subject of Relator's renewed motion and will remain subject to the Court's injunction,

years. See Exhibit 2 ( the "**Draft Settlement Agreement**"). That settlement value was agreed to in principle, but the settlement was not finalized due to Relator's concern with the five-year payment period and the lack of protections should FGMC declare bankruptcy. Ferris Decl. at 5.

4. On June 30, 2022, FGMC filed for bankruptcy in this Court.

5. On August 17, 2022, the United States declined to intervene in the *qui tam*. Notice of Election to Decline Intervention, *Crutcher*, No. 16-cv-3812-TWT, D.I. 28. Relator encouraged the United States to decline so that the Relator could take on the expense and time of addressing the complicated procedural issues raised by bankruptcy, as well as the additional collection risk raised by bankruptcy. Ferris Decl. at 7.[4]

6. On June 29, 2022, Relator filed an amended complaint naming as additional defendants Pacific Investment Management Company, LLC and PIMCO Investments, LLC (collectively "**PIMCO**" or the "**PIMCO Defendants**"), Aaron Samples, Andrew Peters, Jill Winters, and Suzy Lindblom. *See Crutcher*, No. 1:16-cv-3812-TWT, D.I. 19. Relator later moved to voluntarily dismiss the individuals as defendants, but subsequently sought to re-add Peters. *See id.*, D.I. 70 (voluntarily moving to dismiss Individual Defendants); *id.*, D.I. 81 (Motion to File Supplemental Second Amended Complaint that re-adds Peters as a defendant).

7. April 21, 2023, the judge in the *qui tam* action recused himself and a new judge was assigned to the case. *See* Order, *Crutcher*, No. 1:16-Cv-3812-TWT, D.I. 89.

8. On June 15, 2023, the Northern District of Georgia granted Relator's motion to file the amended complaint, which added direct False Claims Act claims against PIMCO and Peters

---

[4] A declination is not a decision on the merits, particularly here where the United States had already negotiated a settlement. *See* Statement of Interest of the United States at 3, *United States ex rel. Wood v. Siemens Medical Sols.*, No. 21-cv-1947 (MKB) (JRC) (E.D.N.Y. Sept. 23. 2022), D.I. 33 (stating a declination of intervention "proves only that the Government declined to intervene in this matter" and that courts "should not consider the Government's declination decision as having any bearing on the merits of the case").

08/02/2023 SL1 1941801v1 117183.00001

for causing FGMC's submission of false claims, as well as piercing the corporate veil and alter ego claims against PIMCO. Order, *Crutcher*, No. 16-cv-3812-TWT, D.I. 93 (granting Relator's Motion to Amend and denying Defendants' Motion to Dismiss); *see generally* Second Am. Compl., *Crutcher*, No. 16-cv-3812-TWT, D.I. 94. The Second Amended Complaint specifically added two sections, "Peters was Responsible for FGMC and its Fraud," ¶¶ 175-88, and "PIMCO Took Over FGMC and Encouraged the Fraud" ¶¶ 189-207, which detailed the actions Peters and PIMCO took at FGMC to cause FGMC's false claims. Second Am. Compl., *Crutcher*. No. 16-cv-3812-TWT, D.I. 94.

9. FGMC purchased at least six policies that may insure damages for Relator's claims. First, there is an AIG Portfolio Select Policy that contains coverage grants for Directors' and Officers' (D&O), Fiduciary Liability insurance and Corporate Counsel, and Employment Practices Liability Insurance (EPLI) (*See* Exhibit 3). AIG issued a partial denial and reservation of rights letter to FGMC related to this case (*See* Exhibit 4). North River (Crum & Foster) issued an excess liability policy for both D&O and EPLI insurance coverage grants (*See* Exhibit 5). North River issued a denial letter to FGMC related to this case (*See* Exhibit 6). Endurance American (Sompo) issued an excess liability policy for the D&O (*See* Exhibit 7). Axis issued an excess liability policy for the D&O (*See* Exhibit 8). XL Specialty (AXA XL), issued a Side A excess liability policy for the D&O (*See* Exhibit 9). AXA XL sent an acknowledgement letter to FGMC related to this case (*See* Exhibit 10). Lloyd's Mortgage Bankers issued a Brokers' Professional Indemnity Certificate (Executives and Officers – E&O) policy (*See* Exhibit 11). Lloyd's issued a reservation of rights letter to FGMC related to this case (*See* Exhibit 12).

10. Relator filed a Motion seeking limited relief from the Permanent Injunction. *See* D.I. 712. This Court then held a hearing on Relator's motion on July 11, 2023.

11. After the hearing on Relator's motion, the Court denied the motion without prejudice. *See* Order, D.I. 878. At the hearing, the Court requested that Relator present a "sharpened" renewed motion that "tells [the Court] clearly" what relief the Relator is seeking, why Relator is entitled to that relief, and the evidence showing that Relator is entitled to that relief. *See* Transcript of July 11, 2023 Hearing at 53.

12. Relator first seeks to file a motion in the Northern District of Georgia to transfer the *qui tam* action to the District of Delaware. PIMCO and Peters have stated that they will not oppose the motion. Counsel is waiting on the position of the Trustee. Because that transfer would transfer the claims against FGMC as well as the claims against PIMCO and Peters, the Relator asks for limited relief of the stay to file that motion with the Northern District of Georgia. The relief requested is limited to this Court's permission to file the motion. The Northern District of Georgia will need to resolve the underlying merits of the motion.

13. Additionally, Relator seeks relief to pursue claims against FGMC and establish FGMC's liability, solely for the purpose of collecting against assets outside the bankruptcy estate or liquidation trust, including any of FGMC's available insurance proceeds. FGMC does not need to take any action in the *qui tam* action while the stay is in place. Therefore, there is no impetus for the insurers to resolve their reservation of rights and decide if they will cover the claims asserted in the *qui tam* action. If the Court lifts the stay, the insurers can decide whether to defend the claims or let FGMC face a default judgment.

## ARGUMENT

14. Courts may grant limited relief from the permanent injunction imposed by a bankruptcy plan when cause exists. *See In re Fucilo*, No. 00-36261(CGM), Chapter 7, 2002 Bankr. LEXIS 475, at *26-27 (Bankr. S.D.N.Y. Jan. 24, 2002) (granting relief from permanent injunction

imposed by 11 U.S.C. § 524 after applying "for-cause" standard used in granting relief from automatic stay). "To establish cause, the party seeking relief from the stay must show that the balance of hardships from not obtaining relief tips significantly in its favor." *Atl. Marine, Inc. v. Am. Classic Voyages, Co. (In re Am. Classic Voyages, Co.)*, 298 B.R. 222, 225 (D. Del. 2003) (evaluating whether cause exists in the context of granting relief from automatic stay imposed in bankruptcy) (internal quotation omitted).

15. Bankruptcy courts in the Third Circuit follow a three-prong test to determine if cause exists:

   a. Whether any great prejudice to either the bankrupt estate or the debtor will result from a lifting of the stay;

   b. Whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and

   c. The probability of the creditor prevailing on the merits.

*E.g., In re Downey Fin. Corp.*, 428 B.R. 595, 608-609 (Bankr. D. Del. 2010).[5] With respect to the final prong, "[e]ven a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case." *American Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 152 B.R. 420, 426 (D. Del. 1993) (citing *In re Fernstrom Storage & Van Co.*, 938 F.2d at 731, 737 (7th Cir. 1991*)* and *Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 578 (Bankr. D. Del. 1992)).

---

[5] Trustee cited the 12-part test in *In re Sonnax Indus, Inc. v. Tri Component Prods. Corp.,* 907 F.2d 1280, 1287 (2d Cir. 1990), as governing but *Sonnax* ought to be read as persuasive precedent, rather than controlling over the three-prong test in *Downey*. Indeed, some courts have merely considered the *Sonnax* factors to be "policies" reflecting the underlying reasons for the imposition of the automatic stay, and evaluated them alongside the three-prong test. *See, e.g., In re SCO Grp., Inc.*, 395 B.R. 852, 857, 860-61 (Bankr. D. Del. 2007) (referring to these twelve factors as "general policies" which are "also considered," and ultimately only noting one of the policies before providing movant relief from the stay). Nonetheless, *arguendo*, Relator considers the *Sonnax* factors here, *see infra* ¶ 19.

16. The initial burden of proof is "on the moving party to establish its prima facie case[,] which then must be rebutted by the party opposing such relief." *In re Rexene Prods. Co.*, 141 B.R. 574, 577 (Bankr. D. Del. 1992).

17. Lifting the stay would not result in any great prejudice to either the bankrupt estate, the liquidation trust or the Debtor. Relator only seeks a lift of the stay to file a motion in the District of Georgia to transfer the *qui tam* action to the District of Delaware, and to pursue the Debtor in this District, with damages limited to those recoverable against assets outside of the bankruptcy estate or liquidated trust, including, but not limited to, those covered by any available insurance.

    a. Transfer will not impose any burden or prejudice on the bankruptcy estate or the Debtor. PIMCO, one of the primary defendants in the *qui tam* action does not oppose the motion. The Trustee should be benefited by transfer as it will allow the bankruptcy and the *qui tam* to be litigated in the same District. The only prejudice would be if the Trustee opposes the motion and therefore needs to spend the time and expense drafting an opposition. However, it is unclear as to what benefit accrues to the bankruptcy or liquidation estate from opposing the motion to transfer.

    b. Further, pursuing the *qui tam* action against FGMC should not prejudice the Debtor or the bankruptcy or liquidation estate. Relator does not seek to collect any funds that are otherwise part of the estate or the liquidation trust. Moreover, since FGMC's liability and expenses in the *qui tam* action will be limited to those most likely already covered by its applicable insurance policy, there is little to no prejudice that would result to the Debtor, and no harm that would result to the liquidation trust.

18. By contrast, great hardship would result to Relator if this limited relief from the Permanent Injunction were not granted.

a. The District of Delaware is Relator's preferred forum, in large part because it allows the court in the *qui tam* action and this Court to be in the same District, and therefore better coordinate any disputes that may arise and work through any complications from bankruptcy. The primary defendants in the *qui tam*, PIMCO and Peters, do not object. Allowing the Permanent Injunction to stand would greatly prejudice the parties in the *qui tam*.

b. Further, Relator is unable to pursue the best source of recovery for FGMC's $80 million estimated liability and $29 million settlement the United States negotiated with FGMC, as well as Relator's retaliation and attorneys' fees claims: FGMC's insurance. The Relator cannot pursue her claims while the *qui* tam action remains subject to this Court's Permanent Injunction. The insurers are therefore not required to make any payments on Relator's covered claims so long as Relator cannot move forward with proving liability. Therefore, the Plan's injunction severely prejudices Relator.

19. Relator is likely to prevail on the merits. It is well-established that "[e]ven a slight probability of success on the merits may be sufficient to warrant stay relief in the appropriate case." *See supra* ¶ 14(c) (citing *In re Continental Airlines, Inc.*, 152 B.R. at 426).

a. With respect to Relator seeking relief from the stay for purpose of transfer, Relator will likely succeed on a motion for transfer with the Northern District of Georgia court. Relator is statutorily entitled to seek a transfer of venue in the *qui tam* action. *See* 28 U.S.C. § 1412 (stating a court "may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties"). Most importantly, no party to the *qui tam* action currently objects to transfer and the motion will therefore most likely be unopposed.

b. Further, Relator is likely to succeed in meeting the Eleventh Circuit's test for a motion to transfer.[6] The location of nonparty witnesses, documents, and nexus of operative facts all strongly favor transfer to this District. Nothing supports keeping the case in Georgia; accordingly, the Permanent Injunction ought not to prevent the Northern District of Georgia from evaluating whether the *qui tam* action should be transferred.

c. Relator is also likely to succeed in her claims against FGMC. The arm's length settlement negotiated before the bankruptcy established a reasonable settlement value that exceeds the insurance policy limits. *See* Ferris Decl. at 4. Therefore, it is unlikely that it is in the best interest of FGMC or the insurers to contest liability. While it is true that the district court case is in its infancy – FGMC has not even answered or moved to dismiss the Complaint – the unique nature of *qui tam* suits, which are often fully and thoroughly investigated by the United States, means that the merits of the underlying claims are known better than a commonplace case in this procedural posture. Further, the United States' declination was not a decision on the merits, but rather encouraged by the Relator so that the Relator could pursue the case through the complicated procedural issues raised by bankruptcy. *See* Ferris Decl. at 7.

20. Courts in this Circuit have also considered the following 12 policies underlying the issuance of a stay in the bankruptcy context, first applied by the Second Circuit in *In re Sonnax*

---

[6] In the Eleventh Circuit, where the Georgia District Court is located, the considerations for when transfer of venue is appropriate are: "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Manuel v. Convergys Corp.,* 430 F.3d 1132, 1135 n.1 (11 Cir. 2005).

*Indus, Inc. v. Tri Component Prods. Corp.*, 907 F.2d 1280, 1287 (2d Cir. 1990), when evaluating whether to grant relief:

> 1) whether relief would result in a partial or complete resolution of the issues; 2) lack of any connection with or interference with the bankruptcy case; 3) whether the other proceeding involves the debtor as a fiduciary; 4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; 5) whether the debtor's insurer has assumed full responsibility for defending it; 6) whether the action primarily involves third parties; 7) whether litigation in another forum would prejudice the interests of other creditors; 8) whether the judgment claim arising from the other action is subject to equitable subordination; 9) whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor; 10) the interests of judicial economy and the expeditious and economical resolution of litigation; 11) whether the parties are ready for trial in the other proceeding; and 12) impact of the stay on the parties and the balance of the harms.

*In re SCO Grp.*, 395 B.R. 852, 857 (Bankr. D. Del. 2007) (quoting *In re Sonnax Indus., Inc.*, 907 F.2d at 1287) (granting movant relief from the automatic stay after considering both three-factor test and *Sonnax* factors). Assuming, *arguendo*, that the *Sonnax* factors are properly considered here, then Relator still carries her burden to show *prima facie* that cause exists for the Court to grant relief from the Permanent Injunction imposed by the Bankruptcy Plan.

21. Not all factors apply in each action and not all factors are weighted equally. *See In re Deep*, 279 B.R. 653, 657 (Bankr. N.D.N.Y. 2002) (granting movants relief from the automatic stay in the action where only two factors weighed in favor of granting movants' motion). While many of the factors largely overlap with the three-factor test, when taken together, they clearly favor granting relief here:

    a. Granting a partial lift of the Permanent Injunction here would, at least, result in a partial resolution of the issues. It would allow the parties to move forward with litigating in their preferred forum. Further, it would allow Relator to pursue recovery from FGMC's insurers and thereby recover at least partial relief.

-10-

b. The transfer motion should have no effect nor interfere with the bankruptcy case. Further, to the extent that FGMC is a party to the *qui tam* action, Relator only seeks to pursue her claim to the extent recovery is from FGMC's insurance policies, which cannot harm the liquidation trust. *See In re Fucilo*, 2002 Bankr. LEXIS 475, at *27-28 (finding this *Sonnax* factor favored movant where "modifying the permanent injunction would not harm the Debtor or his creditors" because "[i]t would not alter the right of any creditor to participate in a distribution from the Debtor's bankruptcy case").

c. Under the FHA program, FGMC acted as a fiduciary to HUD. *See* Crutcher No. 16-cv-3812-TWT, D.I. 94, Second Am. Compl. at ¶¶ 49, 56, 96, 97, 122.

d. There is not a specialized tribunal here, but the District Court is more than capable of hearing the dispute.

e. As this Court correctly identified at the hearing, granting relief will allow the insurers to make a decision as to whether they will assume full responsibility.

f. The associated *qui tam* action primarily involves third parties — PIMCO and Peters — and will only involve FGMC insofar as the claims are covered by insurance and/or recoverable against assets outside of the estate. Relator has asserted direct liability against PIMCO and Peters for causing the false claims of FGMC. As such, PIMCO and Peters are the primary defendants in the *qui tam* action.

g. A partial lift of the Permanent Injunction would not prejudice the creditors in this action. Relator only seeks a lift of the Permanent Injunction for the purposes of seeking transfer and to pursue any insurance claim of the Debtor that may apply to the case. None of this relief would result in prejudice to the creditors because Relator does not seek to collect the judgment of any claim from the liquidated trust, and only seeks to bring the

claim against Debtor insofar as the claim might be covered by Debtor's insurance. Further, at least with respect to the bankrupt estate, "courts have held the cost of defending litigation, by itself, has not been regarded as constituting great prejudice, precluding relief from automatic stay." *In re Deep*, 279 B.R. at 659 (quotations and citations omitted). Accordingly, there is no prejudice here, where lifting the Permanent Injunction would not negatively affect creditor's rights to assets in the liquidation trust. *Cf. id*.

      h.      Here, because Relator is only seeking to recover from insurance proceeds and/or assets outside of the estate, the claim would not be subject to equitable subordination or a judicial lien.

      i.      The interests of judicial economy also weigh in favor of partially lifting the Permanent Injunction. Notably, permitting the Relator to move the Northern District of Georgia court to transfer the *qui tam* action to the District of Delaware would allow the district court and the bankruptcy court to more easily coordinate any future issues that may arise. The judge currently presiding over the *qui tam* action was only assigned on April 21, 2023, after the prior judge recused himself from the action. *See* Order, *Crutcher*, No. 1:16-Cv-3812-TWT, D.I. 89. Indeed, moving the *qui tam* action to the District of Delaware to ensure that it is in the same forum as this action would be a benefit for creditors. *Cf. In re Deep*, 279 B.R. 653, 658 (finding that presence of creditors "at a distance considerabl[y] removed from [the] situs" of a related action meant said action was slightly detrimental to their interests).

      j.      While the *qui tam* action is not ready for trial, given the substantial investigation of the United States, the claims are much farther along than a customary case at this procedural posture.

k. Failure to partially lift the Permanent Injunction would result in substantial harm to the Relator which would far outweigh any effect on the other parties. The debtor negotiated a $29 million settlement before bankruptcy. If the Relator is not allowed to pursue the claims against insurance, she would be left with little to no recovery from FGMC and could only recover against PIMCO and Peters.

22. Accordingly, because Relator both succeeds under the three-prong test establishing the existence of cause, as well as the weight of the relevant factors under the *Sonnax* test, the Court should partially lift the Permanent Injunction to allow Relator the limited relief of permission to file a motion to transfer with the District Court in the Northern District of Georgia and pursue the claims against FGMC, with any recovery to be limited to proceeds from any available insurance and/or sources of recovery outside the bankruptcy estate or liquidation trust.

## CONCLUSION

23. For the foregoing reasons, this Court enter the Proposed Form of Order attached hereto granting Ms. Crutcher's motion for limited relief from the Permanent Injunction.

Dated: August 2, 2023　　　　　　　　　Respectfully Submitted,
　　Wilmington, DE

　　　　　　　　　　　　　　　　　　　*/s/ Joseph H. Huston, Jr.*

　　　　　　　　　　　　　　　　　　　Joseph H. Huston, Jr. (No. 4035)
　　　　　　　　　　　　　　　　　　　Alexis R. Gambale (Delaware admission pending)
　　　　　　　　　　　　　　　　　　　919 North Market Street, Suite 1300
　　　　　　　　　　　　　　　　　　　Wilmington, Delaware 19801
　　　　　　　　　　　　　　　　　　　Telephone: (302) 425-3310
　　　　　　　　　　　　　　　　　　　Facsimile: (610) 371-7972
　　　　　　　　　　　　　　　　　　　E-mail: joseph.huston@stevenslee.com

　　　　　　　　　　　　　　　　　　　J. Nelson Thomas, Esquire
　　　　　　　　　　　　　　　　　　　Jonathan W. Ferris, Esquire
　　　　　　　　　　　　　　　　　　　**THOMAS & SOLOMON LLP**
　　　　　　　　　　　　　　　　　　　693 East Avenue
　　　　　　　　　　　　　　　　　　　Rochester, New York 14607

Telephone: (585) 272-0540
nthomas@ theemploymentattorneys.com
jferris@theemploymentattorneys.com

-and-

Samuel J. Buffone, Jr., Esquire
Michael DeJesus, Esquire
**Black & Buffone PLLC**
1400 Eye St. NW
Suite 200
Washington, D.C. 20005
Telephone: (202) 997-8562
Sam@blackandbuffone.com

*Attorneys for Qui Tam Plaintiff Kari Crutcher*