IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>FIRST GUARANTY MORTGAGE CORPORATION, *et al.*,[1]<br><br>        Debtors. | ) Chapter 11<br>)<br>) Case No. 22-10584 (CTG)<br>)<br>) Jointly Administered<br>)<br>) **Reply Deadline: September 1, 2023 at 5:00**<br>) **p.m.**<br>) **Hearing Date: September 5, 2023 at 10:00 a.m.** |

**OBJECTION BY KARI CRUTCHER'S TO MOTION BY PACIFIC MANAGEMENT COMPANY LLC AND PIMCO INVESTMENTS LLC TO ENFORCE <u>THE CHAPTER 11 PLAN AND CONFRIMATION ORDER</u>**

Ms. Kari Crutcher (the "**Relator**"), the relator in a *qui tam* action pending in the United States District Court for the Northern District of Georgia (the "**Georgia District Court**"), *United States ex rel. Kari Crutcher v. First Guaranty Mortgage Corporation*, No. 16-cv-3812-TWT (N.D. Ga.) ("**the *qui tam* action**" or "**Crutcher**"), submits this objection to the motion styled by defendants Pacific Investment Management Company LLC and PIMCO Investments LLC (the **"PIMCO Defendants"**) as one to "Enforce the Chapter 11 Plan and Confirmation Order." Defendants' motion is flawed both procedurally and substantively. As to procedure, the PIMCO Defendants made the exact arguments that they made to this Court to the District Court for the Northern District of Georgia claiming that filing any of the claims against them would violate the confirmed bankruptcy plan. The court denied the PIMCO Defendants' motion and directed that the clerk file Relator's amended complaint.

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: First Guaranty Mortgage Corporation (9575); and Maverick II Holdings, LLC (5621). The Debtors 'mailing address is 5800 Tennyson Parkway, Suite 450, Plano, TX 75024.

In response, the PIMCO Defendants adopted a new litigation tactic. They filed what was now their third and fourth round of motion papers to seek, yet again, a court order to strike the allegations against them in Relator's complaint based on FGMC's bankruptcy confirmation plan. While that motion is pending, the PIMCO Defendants then filed with this Court a motion seeking the identical relief as they did in the Georgia action and on the same grounds: dismissal of the allegations against them in the complaint due to the bankruptcy confirmation order. The defendants informed neither court that it was also asking the other court to rule on the same request for relief and on the same basis. Asking two courts to do the same work, while perhaps watching to see which courthouse it believed was most favorable, is what 28 U.S.C. § 1927 defines as "multipl[ying] the proceedings…unreasonably and vexatiously." Such conduct is not allowed and this motion should be stricken given their duplicative and earlier Georgia filing. Even if defendants had brought this motion properly, they would still have lost as the defendants' arguments are fundamentally flawed on a substantive level.

## FACTUAL AND PROCEDURAL BACKGROUND

1.  On October 13, 2016, Relator filed the *qui tam* action in the Northern District of Georgia against the Debtor. The Relator amended the complaint to include claims against the PIMCO Defendants. The Amended Complaint seeks to recover damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729–33 ("**FCA**"), for false claims to the United States Department of Housing and Urban Development ("**HUD**") resulting from FGMC's faulty underwriting of residential mortgage loans approved and endorsed by FGMC for Federal Housing Administration ("**FHA**") insurance. Complaint, *United States ex rel. Crutcher v. First Guaranty Mortg. Corp.*, No. 16-cv-3812-TWT (N.D. Ga. Oct. 13, 2016). The Amended Complaint also seeks damages for the retaliation Relator faced for blowing the whistle on FGMC, as well as attorneys' fees for Relator's attorneys' work on this case. *Id.* (Exhibit 1)

2.  On November 28, 2022, the PIMCO defendants moved to dismiss the complaint. (Exhibit 2) Among other things, the PIMCO Defendants claimed that the allegations against them were not sufficient to survive a motion to dismiss. Further, the PIMCO Defendants claimed that the bankruptcy plan's release foreclosed liability against the PIMCO defendants. *Id.* at 12-14.

3.  In response, Relator responded to the PIMCO Defendants' legal challenges and moved the Court to file a Second Amended Complaint (the **"SAC"**) which added detail about the PIMCO Defendants' direct involvement in the fraud. (Exhibit 3)  The SAC described the extensive due diligence performed by the PIMCO Defendants before the acquisition; the heavy-handed role that the PIMCO Defendants played in the underwriting of fraudulent loans; the PIMCO Defendants' day-to-day control over how FGMC ran its business, and in particular shaping the credit risk profile that the PIMCO Defendants; the PIMCO Defendants' desire to push through loans that did not meet standard underwriting requirements and the PIMCO Defendants' knowledge of the higher delinquency and foreclosure rates. Ex. 3 ¶¶ 174-190. The SAC summarizes these allegations stating, "Through the above actions, PIMCO exercised its control over FGMC and directly caused false certifications and false claims of FGMC."  Ex. 3 ¶ 191. In two additional paragraphs Relator alleged that the corporate veil should be pierced between FGMC and the PIMCO Defendants. Ex. 3 ¶¶ 191-192

4.  In their opposition brief to the proposed SAC, the PIMCO Defendants argued to the District Court for the Northern District of Georgia, precisely as it does in this Court, that allowing Relator to make these allegations about the PIMCO Defendants, including those alleging alter ego, would violate FGMC's confirmed bankruptcy plan. (Exhibit 4 at 6-11) The PIMCO Defendants relied on the same facts (the release language and FGMC's ownership of the veil piercing claim) to make the same legal argument as they do in their current papers. *Id.*

5. The PIMCO Defendants leading argument continued to be that court should deny Realtor the ability to file the SAC based on the confirmed bankruptcy plan in arguments that could have been lifted straight from the PIMCO Defendants' current papers before this Court. (*See e.g.* Exhibit 5 at 6-11)

6. On June 15, 2023 the court denied the PIMCO Defendants' motion and ordered that the clerk to docket Relator's proposed SAC as the operative complaint. (Exhibit 6) (The court did note that the PIMCO Defendants were without prejudice in bringing their motion again.) *Id.*

7. In response to the loss, the PIMCO Defendants decided to approach the litigation with a different tactic. They decided to request the same relief (dismissal of the allegations against them) based on the same facts and argument (the terms of the bankruptcy confirmation plan) in front of two courts (this Court and the District Court for the Northern District of Georgia) at the same time, but without informing the courts of what they were doing.

8. The PIMCO Defendants filed a motion to dismiss the SAC allegations against them based on the terms of the confirmed plan in the District Court for the Northern District of Georgia on June 29, 2023. (Exhibit 7)

9. On August 3, 2023 the PIMCO Defendants filed a motion before this Court to dismiss the same SAC allegations against them, also based on the terms of the confirmed plan. Doc 900.

10. The PIMCO Defendants did not alert either court to that the motion before it duplicated issues in a motion before the other court. Tellingly, the PIMCO Defendants made a brief mention to this Court that they had filed a motion to dismiss in Georgia, but then omitted any mention that that motion had contained the same arguments and same request for relief as the one filed in Georgia.

11. The parties explored resolution of the dispute in this action. One issue that confronted Relator was the terms of the PIMCO Defendants' Proposed Order. It was unclear if the PIMCO defendants in ¶ 2 of the Proposed Order were seeking just the dismissal of the two paragraphs of the complaint that made reference to the veil piercing, or if defendants wanted dismissal of more, including claims based on the PIMCO Defendants' direct involvement in the fraud. (Exhibit 8)

12. Therefore, the Relator offered as a possible compromise to remove the paragraphs that related to alter ego liability, while retaining the other allegations of direct violations of the FCA by the PIMCO Defendants. *Id.*

13. The PIMCO Defendants made clear that they wanted all allegations against them removed, even those based on their direct involvement in the FCA fraud. Tellingly, in their revised proposed order, they expanded, not compromised, the definition of claims to be removed to now include "and/or derivative claims." *Id.*

14. Therefore, the parties were unable to resolve the issue.

## ARGUMENT

***The PIMCO Defendants' Motion Should be Stricken as it Seeks Identical Relief to a Motion They Have Already Filed in Another Forum.***

15. The PIMCO Defendants made an affirmative decision to bring their request for relief in the District Court for the Northern District of Georgia. They made that election in their initial unsuccessful effort to dismiss the case, and they made it again when they moved that court to dismiss the claims against them based (again) on this Court's plan confirmation terms.

16. A party cannot file for the same relief on the same basis in multiple forums around the country, have each court expend judicial resources to resolve the issue, and then try to take advantage of the multiple rulings. Nor can a party file a motion with one court, decide that they

are not sure they want a decision from that court, and the file the same motion is another court—particularly when they keep both courts in the dark about their duplicative filings.

17. Such conduct is an example of the vexatiously multiplying pleadings and is prohibited by 28 U.S.C. § 1927.

18. For good or for ill, the PIMCO Defendants made their election to proceed with this motion in the District Court for the Northern District of Georgia and it has waived its right to file that same motion in this Court.

***There is no Basis to Dismiss the Allegations of Direct Fraudulent Action by the PIMCO Defendants***

19. As set forth in both *In re: Emoral, Inc.* and *In re: TPC Group Inc.*, allegations of direct violations by a defendant (really any allegation that would allow for a recovery and is not shared by all creditors) cannot be dismissed based on the mutual releases between defendant and the debtor. 740 F. 3d 875, 879 (3d Cir. 2014); 2023 WL 2168045, * 10 (D. Del. Feb. 22, 2023) ("Other claims that depend on allegations of direct action or inaction by [the defendant], and do not rely on claims of veil piercing or alter ego, are not barred by the plan injunction.").

20. Turning to the requirements of the FCA itself, liability under the FCA turns on whether the defendant knew or "should have known" that he was participating in a scheme that would ultimately result in the submission of a false claim to the government. There is no requirement that the defendant have the intent to defraud. It is enough if the defendant operates under a policy that causes others to present false claims to the government. *United States ex rel. Martino-Fleming v. South Bay Mental Health Centers*, 540 F.Supp.3d 103, 117-18 (D. Mass. 2021).

21. Therefore, liability under the FCA easily reaches members of a private equity firm when they should have known they were running a business that by culture or otherwise was defrauding the government.

22. In *Martino-Fleming*, both the private equity firm that purchased the underlying business that interfaced with the government, as well as some of its individual members of the firm, could be liable based on allegations that the defendant was aware that they relied on government insurance and that was conditioned on the company's compliance with federal regulations but also knew that some false claims had been submitted to the government. *Id.* at 129.

23. Therefore, the allegations in the complaint against the PIMCO Defendants in ¶¶ 189-205 allege the sort of direct violations that both trigger FLSA liability and are also not shared by all creditors and therefore are not released by the confirmation plan terms. To the degree that the PIMCO Defendants argue that are subject to dismissal, that simply runs counter to the law in this Circuit and this Court.

24. Furthermore, defendants' position is to read the terms in their release as broadly as possible to wipe out all claims. As this Court explained in *In re: TPC Group*, one must be very careful with the use of amorphous words like "derivative claims," or analogously "vicarious claims," because such terms are both not precisely defined terms nor do they capture the real test of whether a claim is released.

***Relator is Free to Pursue Alter Ego Claims, as Well As Claims Shared by all Class Members***

25. Under both *In re: TPC Gorup* and *In re: Emoral*, in most cases a creditor will be unable to vindicate claims based on claims shared among all creditors given the language in the confirmation plan.

26. There is, however, one exception and that involves claims brought on behalf of the United States government. As the Order approving the confirmation plan states:

> Notwithstanding anything in the plan [*i.e.*, the releases], this Order, the Order in Aid of Confirmation or any Plan Supplement or other documents (collectively "Documents"):
>
> As to the United States of America ("United States), nothing in the Documents shall:
>
> (1) discharge, release, enjoin, bar, impair or otherwise preclude …any claim of the United States arising after the Confirmation Date…[or] any right defense claim, suit or cause of action of, or obligation or liability owed to, the United States on the part of any non-debtor…[or] any claim, obligation, or liability preserved or established in the order authorizing the sale of mortgage servicing rights, Docket No. 390 (the "Sale Order")
>
> (2) release, nullify, bar, enjoin or preclude the enforcement of any police or regulatory power;
> …
> (6) waive, alter, or otherwise limit the United States' rights with respect to the Federal Interests, including but not limited to, licenses, permits, authorizations; loans insured or guaranteed by FHA, RHS or VA, and loans pooled for securitization for Ginnie Mae;
> …
> (9) be construed as a compromise or settlement of any claim, right, obligation, liability, cause of action, or interest of the United States;
> …
> (13) enjoin or estop the United States from asserting against the Debtors any claim, liability or obligation assumed by any purchaser that the United States would otherwise be entitled to assert against the Debtors and the Debtors' estates under applicable law;
> …
>
> Notwithstanding anything in the Documents, the Debtors, Liquidating Trustee and any purchaser shall abide by and comply with all federal statutes, regulations, rules, policies and procedures, including, without limitation, (1) all applicable Ginnie Mae statutes, regulations, rules, policies and procedures, including, without limitation, 12 U.S.C. § 1721(g), 12 U.S.C. §§ 1716 et seq. and 24 C.F.R. parts 300 - 310; (2) the Ginnie Mae Guide, all Ginnie Mae guaranty agreements, MBS prospectus documents, escrow agreements, unilateral notification, notices of violation, supplements, addendums, amendments, and related documents or agreements, (collectively, the

"Ginnie Mae Agreements"); (3) all applicable FHA statutes, regulations, rules, policies and procedures, including, without limitation, 12 U.S.C.§§ 1702 – 1715z-25 and 24 C.F.R. parts 201 – 203 and 206; (4) FHA handbooks, mortgagee letters, indemnification agreements, and any other documents or agreements; (5) all RHS statutes, regulations, rules. Policies and procedures, including, without limitation, 42 U.S.C. §§ 1471 et seq. and 7 C.F.R. part 3555; (6) all RHS participation agreements, user agreements, guaranty agreements and other documents or agreements; (7) all VA statutes, regulations, rules, policies and procedures, including, without limitation, 38 U.S.C. §§ 3701 et seq., 38 C.F.R. part 36, and all administrative materials issued under such statutes or regulations; and (8) VA handbooks, user guides, circulars, audit letters, hold harmless agreements, and any other documents or agreements.

Doc. 671 at 36-40.

27. In a *qui tam* action, and particularly a declined *qui tam* action, the Relator is a representative of the United States government and therefore stands in the shoes of the United States government (who itself stands to receive the vast majority of the recovery) in the litigation.

28. Therefore, the provisions carve out claims on behalf of the United States government from the normal reach of the mutual releases that are described in *In re: TPC Gorup* and *In re: Emoral*. This in turn means that not only are Relator's allegations of direct violations not subject to dismissal, but her claims for alter ego and any similar theory are also not subject to dismissal either.

## **CONCLUSION**

29. For the foregoing reasons, this Court should deny the PIMCO Defendants' motion in its entirety.

Respectfully submitted this 28th day of August, 2023.

Respectfully Submitted,

*/s/ J. Nelson Thomas*

J. Nelson Thomas, Esquire
Jonathan W. Ferris, Esquire
**THOMAS & SOLOMON LLP**
693 East Avenue
Rochester, New York 14607
Telephone: (585) 272-0540
nthomas@theemploymentattorneys.com
jferris@theemploymentattorneys.com

Joseph H. Huston, Jr. (No. 4035)
Alexis R. Gambale (Delaware admission pending)
919 North Market Street, Suite 1300
Wilmington, Delaware 19801
Telephone: (302) 425-3310
Facsimile: (610) 371-7972
E-mail: joseph.huston@stevenslee.com

-and-

Samuel J. Buffone, Jr., Esquire
Michael DeJesus, Esquire
**Black & Buffone PLLC**
1400 Eye St. NW
Suite 200
Washington, D.C. 20005
Telephone: (202) 997-8562
Sam@blackandbuffone.com

***Attorneys for* Qui Tam *Plaintiff Kari Crutcher***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on the indicated date, the undersigned filed and served the foregoing document, using the Court's CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

August 28, 2023                Respectfully Submitted,

/s/ J. Nelson Thomas

J. Nelson Thomas, Esq.
Jonathan W. Ferris, Esq.
**THOMAS & SOLOMON LLP**
693 East Avenue
Rochester, New York 14607
Telephone: (585) 272-0540
nthomas@theemploymentattorneys.com
jferris@theemploymentattorneys.com

Joseph H. Huston, Jr. (No. 4035)
919 North Market Street, Suite 1300
Wilmington, Delaware 19801
Telephone: (302) 425-3310
Facsimile: (610) 371-7972
E-mail: joseph.huston@stevenslee.com

-and-

Samuel J. Buffone, Jr.
Michael DeJesus
**Black & Buffone PLLC**
1400 Eye St. NW
Suite 200
Washington, D.C. 20005
Telephone: (202) 997-8562
Sam@blackandbuffone.com

***Attorneys for* Qui Tam *Plaintiff Kari Crutcher***