# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* KARI CRUTCHER,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>FIRST GUARANTY MORTGAGE CORPORATION, PACIFIC INVESTMENT MANAGEMENT COMPANY LLC, PIMCO INVESTMENTS LLC, AARON SAMPLES, ANDREW PETERS, JILL WINTERS, and SUZY LINDBLOM,<br><br>　　　　　　Defendants. | Civil Action No.: 16-cv-3812-SCJ<br><br><br><br>**Oral Argument Requested** |

**MEMORANDUM OF LAW IN SUPPORT OF PACIFIC INVESTMENT MANAGEMENT COMPANY LLC AND PIMCO INVESTMENTS LLC'S <u>MOTION TO DISMISS</u>**

**Table of Contents**

Preliminary Statement ................................................................................... 1

Factual Background and Procedural History ................................................. 4

Argument ....................................................................................................... 6

I.      The Amended Complaint Fails to State A Claim Against PIMCO in
        Making No Allegations Against PIMCO. ......................................... 9

II.     Relator's Claims Are Time-Barred. ............................................... 10

III.    This Action Cannot Proceed Against PIMCO Because the Plan's
        Permanent Injunction Forecloses the Predicate Findings Against FGMC
        to Establish Any Other Defendant's Liability. ............................... 12

        A.      The Plan Permanently Enjoins Relator from Obtaining a Judgment
                Against FGMC on the Basis That It Violated the FCA. ..................... 13

        B.      This Action Cannot Proceed Against PIMCO Because FGMC Is
                an Absent But Indispensable Party. ...................................... 14

IV.     The Amended Complaint Fails to State a Claim Against FGMC—the
        Threshold for any Claim Against PIMCO ...................................... 17

        A.      The Amended Complaint Fails to Allege How Any False
                Statements Reached the Government .................................... 18

                1.      Relator's Presentment Claim Fails. ........................... 19

                2.      Relator's False Record Claim Fails. .......................... 20

        B.      Regulatory Violations Are Not Fraud. ................................. 21

        C.      There Is No Plausible Basis to Hold PIMCO Liable Under
                Relator's Retaliation Claim. ............................................... 24

Conclusion ................................................................................................. 25

# Table of Authorities

**Cases**                                                                    **Page(s)**

*Aldana v. Del Monte Fresh Produce, N.A.*,
  416 F.3d 1242 (11th Cir. 2005) ............................................................7

*Allison Engine Co. v. United States ex rel. Sanders*,
  553 U.S. 662 (2008).........................................................................19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................6

*United States ex rel. Atkins v. McInteer*,
  470 F.3d 1350 (11th Cir. 2006) ............................................................7

*Ballard v. Bank of Am. Corp.*,
  No. 1-13-cv-4011,
  2014 WL 11970543 (N.D. Ga. Sept. 10, 2014)..................................10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).........................................................................6

*Brady v. Walsh*,
  No. 2:21-cv-763 ...........................................................................12

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
  116 F.3d 1364 (11th Cir. 1997) ............................................................7

*Bruce v. U.S. Bank, N.A.*,
  770 F. App'x 960 (11th Cir. 2019)....................................................10

*United States ex rel. Brzozowski v. Randall*,
  281 F. Supp. 306 (E.D. Pa. 1968).......................................................8

*Cent. Va. Cmty. Coll. v. Katz*,
  546 U.S. 356 (2006).........................................................................14

*United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*,
  290 F.3d 1301 (11th Cir. 2002) ............................................................7

*Cochise Consultancy, Inc. v. United States ex rel. Hunt*,
    139 S. Ct. 1507 (2019) ........................................................................11

*Corsello v. Lincare, Inc.*,
    428 F.3d 1008 (11th Cir. 2005) ...........................................7, 19, 22

*In re First Guaranty Mortg. Corp., et al.*,
    No. 22-10584 (CTG) (Bankr. D. Del.) .......................................*passim*

*Fla. Wildlife Fed'n Inc. v. U.S. Army Corps of Eng'rs*,
    859 F.3d 1306 (11th Cir. 2017) .........................................................15

*Focus on the Family v. Pinellas Suncoast Transit Auth.*,
    344 F.3d 1263 (11th Cir. 2003) .........................................................15

*Hickman v. Spirit of Athens Ala., Inc.*,
    985 F.3d 1284 (11th Cir. 2021) .........................................................25

*Hilderbrandt v. Butts*,
    550 F. App'x 697 (11th Cir. 2013) ....................................................12

*Hopper v. Solvay Pharm., Inc.*,
    588 F.3d 1318 (11th Cir. 2009) ...........................................18, 19, 20

*Hopper v. Solvay Pharm. Inc.*,
    590 F. Supp. 2d 1352 (M.D. Fla. 2008),
    *aff'd*, 588 F.3d 1318 (11th Cir. 2009)...............................................24

*Jackson v. Bellsouth Telecomm.*,
    372 F.3d 1250 (11th Cir. 2004) ...........................................................7

*La Grasta v. First Union Sec., Inc.*,
    358 F.3d 840 (11th Cir. 2004) ...........................................................10

*Mayo v. Bankers Life & Cas. Co.*,
    No. 2-10-cv-195 (MTP),
    2010 WL 4363392 (S.D. Miss. Oct. 27, 2010).................................8

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015)...........................................................................22

*United States ex rel. Patel v. Fid. Deposit & Disc. Bank*,
  No. 3:19-cv-1824,
  2022 BL 262789 (M.D. Pa. July 27, 2022) .......................................17

*Potter v. Clark*,
  497 F.2d 1206 (7th Cir. 1974) .......................................................8

*Sino-US Inv. & Mgmt. Consultant v. Hyun Soon Ree*,
  No. CV-20-8597,
  2021 WL 5020469 (C.D. Cal. Mar. 9, 2021).......................................16

*United States v. Carrington Mortg. Servs., LLC*,
  No. 16-cv-920,
  2022 BL 126415 (S.D. Ind. Mar. 9, 2022) ..................................20, 24

*United States v. Paddock*,
  187 F.2d 271 (5th Cir. 1951) .......................................................14

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
  579 U.S. 176 (2016).............................................................*passim*

*Urquilla-Diaz v. Kaplan Univ.*,
  780 F.3d 1039 (11th Cir. 2015) ....................................................22

**Statutes**

28 U.S.C. § 1334 .........................................................................14

False Claims Act, 31 U.S.C. §§ 3729 *et seq* ("FCA").....................................*passim*

  § 3729(a)(1)(A).......................................................................19

  § 3729(a)(1)(B) ...................................................................19, 20

  § 3729(b)(1) ...........................................................................8

  § 3729(b)(4) ...........................................................................8

  § 3731(b)..............................................................................11

§ 3731(b)(1) .................................................................................................11

§ 3731(b)(2) .................................................................................................11

## Other Authorities

Fed. R. Civ. P. 9(b) ...........................................................................7, 18, 19, 20

Fed. R. Civ. P. 12(b)(7)..................................................................................15

Fed. R. Civ. P. 19(a) ......................................................................................15

Fed. R. Civ. P. 19(b) ......................................................................................15

## **Preliminary Statement**

The Amended Complaint (ECF No. 19) does not make a single factual allegation about Defendants Pacific Investment Management Company LLC or PIMCO Investments LLC (collectively, "PIMCO"). The absence of any allegations about what PIMCO did fails to meet any standard for stating a claim against PIMCO, let alone the heightened pleading standards applicable to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("FCA"). As a result, the Amended Complaint filed by Kari Crutcher on behalf of the United States ("Relator") must be dismissed as to the PIMCO Defendants.

Relator's allegations demonstrate that she has no claim against PIMCO. Relator's claims arise from her three months of employment at First Guaranty Mortgage Corporation ("FGMC") in 2014. She contends that FGMC's practices fell short of the regulatory requirements of the Federal Housing Administration ("FHA"), an agency within the U.S. Department of Housing and Urban Development ("HUD"), applicable to "direct endorsement lenders." None of those allegations describe any involvement of or actions by PIMCO. The Amended Complaint fails to identify any false claim that PIMCO presented to the government, or any false record PIMCO caused to be submitted for payment. In fact, Relator does not allege that PIMCO ever presented any claims at all.

1

Relator's case has always been focused on FGMC and its conduct. Relator added PIMCO and the other Defendants only when it became clear that FGMC was filing for bankruptcy and would, therefore, be judgment-proof. The FGMC bankruptcy never barred Relator's ability to litigate against PIMCO or the other Defendants. When the time came to submit claims in the FGMC bankruptcy case, Relator filed a proof of claim for a contingent, general unsecured claim based on this action (as amended, the "Claim"), submitting to the jurisdiction of the Bankruptcy Court.

Relator returned to this Court to pursue her purported claims against the other Defendants only after the Bankruptcy Court confirmed FGMC's chapter 11 plan of liquidation. *See In re First Guaranty Mortg. Corp.*, *et al.*, No. 22-10584 (CTG) (Bankr. D. Del.) ("Bankr. Dkt.") 671-1 (as amended, the "Plan"). However, absent relief from the Bankruptcy Court, the permanent injunction imposed by the confirmed Plan prevents Relator from pursuing this action against, or establishing any FCA violation by, FGMC in this Court. Such a finding is a condition precedent to any imposition of liability on any other Defendant. In that regard, FGMC is an indispensable party, whose nominal presence as a named Defendant is insufficient to permit this action to proceed against PIMCO.

The Amended Complaint must be dismissed as to PIMCO for several reasons. *First*, the Amended Complaint is completely devoid of any factual allegations about PIMCO and cannot sustain any claim against PIMCO merely by tacking its name onto the filing without any allegations regarding PIMCO's conduct. *Second*, Relator's claims arise from conduct that precedes the FCA's six-year statute of limitations, and are time-barred.

*Third*, FGMC's bankruptcy impedes Relator's claims against all Defendants here. The Plan's permanent injunction bars Relator from seeking a judgment against FGMC in this Court, but such a finding is necessary to impose liability against PIMCO. Further, the interdependence of the claims against FGMC and the other Defendants makes FGMC an indispensable party, and this action cannot proceed against the other Defendants while FGMC cannot be served and judgment against it cannot be obtained.

*Finally*, Relator's own allegations do not support an FCA claim against FGMC—a prerequisite for establishing any such claim against PIMCO. To state a claim against FGMC, Relator would have to plead with particularity that FGMC presented a false claim to the government for payment, or made or used a false record to cause the government to pay. The Amended Complaint fails to identify any false claim or false record, and falls short of the heightened pleading standards applicable

3

here. Further, as a matter of law, mere regulatory violations do not state an FCA claim. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 195 (2016). Relator also includes a perfunctory claim asserting she faced retaliation at FGMC, but provides no support for this claim, let alone any basis to impose liability on PIMCO. On the foregoing grounds and for the reasons set forth below, the claims against PIMCO must be dismissed.

## Factual Background and Procedural History

Relator filed this action under seal in 2016 against FGMC. In late June 2022, FGMC laid off 80% of its workforce, suggesting that FGMC was heading towards a bankruptcy filing. On June 29, 2022, six years after Relator had filed the complaint against FGMC commencing this action, Relator amended her complaint to add PIMCO (and several individuals affiliated with FGMC) as additional defendants. *See* Bankr. Dkt. 600 ¶ 1. That Amended Complaint makes no factual allegations regarding PIMCO. *See* ECF No. 19. The following day, FGMC commenced its chapter 11 case (the "Bankruptcy Case") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). On August 17, 2022, after completing nearly six years of investigation, the United States filed a notice in this Court that it had decided not to intervene in Relator's lawsuit. ECF No. 28.

On September 20, 2022, Relator filed the Claim in the Bankruptcy Case, submitting herself to the exclusive jurisdiction of the Bankruptcy Court with respect to the adjudication of the Claim. Bankr. Dkt. Claim #93 (Sept. 20, 2022), *as amended*, Claim #124 (Sept. 28, 2022). On October 4, 2022, Relator filed a motion for relief from the automatic stay in the Bankruptcy Case. Bankr. Dkt. 509 (the "Stay Relief Motion"). On October 17, 2022, the Debtors objected to the Claim for Plan voting purposes. Bankr. Dkt. 561. On October 24, 2022, the Debtors opposed the Stay Relief Motion, disputing the validity of the Claim and asserting that, in filing the Claim, Relator had submitted to the jurisdiction of the Bankruptcy Court for the resolution of the Claim. Bankr. Dkt. 594. On October 26, 2022, Relator filed an objection to the Plan. Bankr. Dkt. 600. The Bankruptcy Court overruled Relator's Plan objection and denied her Stay Relief Motion. Bankr. Dkts. 662 & 671.

On November 2, 2022, the Bankruptcy Court entered an order confirming the Plan (Bankr. Dkt. 671, the "Confirmation Order"), permanently enjoining Relator from commencing or continuing any action or other proceeding against FGMC, its bankruptcy estate or its assets, and from taking any act contrary to the Plan, other than litigating the allowance of her Claim in the Bankruptcy Court in accordance with the Plan's claims resolution process. Confirmation Order ¶ 39, Bankr. Dkt. 671 at 34-35. On November 7, 2022, Relator served PIMCO with this lawsuit.

The Amended Complaint describes extensive regulations that lenders, like FGMC, are expected to follow when they endorse mortgage loans for FHA insurance. FGMC was a "direct endorsement lender," meaning it had authority to endorse mortgages as eligible for FHA insurance. Compl. ¶¶ 4, 52-53. FGMC applied to FHA for this authority, certifying in the initial application and annually its compliance with FHA rules. *Id.* ¶¶ 90-91.

The Amended Complaint does not allege that PIMCO had any involvement with the FHA insurance program. In fact, over the 203 numbered paragraphs in the Amended Complaint, PIMCO is mentioned only twice: in Paragraph 1, which names all defendants, and in Paragraph 31, which identifies PIMCO as a Delaware company headquartered in New York, New York. Compl. ¶¶ 1, 31. PIMCO is not named as a defendant in any of the causes of action in this lawsuit, and no factual allegations are made about PIMCO in any way, much less in any way that could conceivably create liability here. Accordingly, the Amended Complaint fails to state a claim upon which relief can be granted, and should be dismissed as to PIMCO.

## **Argument**

Relator bears the burden to plead facts sufficient to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A "plaintiff's obligation to provide the grounds

of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *Jackson v. Bellsouth Telecomm.*, 372 F.3d 1250, 1262 (11th Cir. 2004). Relatedly, "unwarranted deductions of fact are not admitted as true." *Aldana v. Del Monte Fresh Produce, N.A.*, 416 F.3d 1242, 1248 (11th Cir. 2005).

FCA claims must satisfy the particularity requirements of Rule 9(b). *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006) (an FCA complaint must identify "an actual claim for payment" to satisfy Rule 9(b) and not just a "scheme"); *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1308-09 (11th Cir. 2002) (payment on a false claim is the "*sine qua non*" of an FCA claim). An FCA complaint fails to satisfy Rule 9(b) unless it sets forth "facts as to time, place, and substance of the defendant's alleged fraud[:] specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Clausen*, 290 F.3d at 1310. "Because it is the submission of a fraudulent claim that gives rise to liability under the False Claims Act, that submission must be pleaded with particularity and not inferred from the circumstances." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1013 (11th Cir. 2005).

Rule 9(b) does not permit Relator to "simply 'lump[] together' all of the Defendants in their allegations of fraud." *Brooks v. Blue Cross & Blue Shield of Fla.,*

7

*Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997). Rather, "in a case involving multiple defendants, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Id.* (cleaned up). "It is black-letter law that where," as here, "a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent to the defendant except for his name appearing in the caption, the complaint is properly dismissed." *Mayo v. Bankers Life & Cas. Co.*, No. 2-10-cv-195 (MTP), 2010 WL 4363392, at *2 (S.D. Miss. Oct. 27, 2010) (citing *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *United States ex rel. Brzozowski v. Randall*, 281 F. Supp. 306, 312 (E.D. Pa. 1968)).

The FCA's scienter and materiality requirements are "rigorous." *Escobar*, 579 U.S. at 192. While the FCA does not require allegations of a specific intent to defraud, it does require Relator to plead with particularity each defendant's knowledge, which the FCA defines to mean either actual knowledge of the information, or reckless disregard or deliberate ignorance about the truth or falsity of the information. 31 U.S.C. § 3729(b)(1).

False statements are actionable only if they are material. *Escobar*, 579 U.S. at 190. "The materiality standard is demanding. The False Claims Act is not an all-purpose antifraud statute, or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Escobar*, 579 U.S. at 194; *see* 31 U.S.C.

§ 3729(b)(4). In fact, a unanimous Supreme Court rejected the argument that "any statutory, regulatory, or contractual violation is material so long as the defendant knows that the Government **would be entitled to refuse** payment were it aware of the violation." *Escobar*, 579 U.S. at 195 (emphasis added). Instead, the defendant must know that the Government would **actually refuse** to pay, had the defendant disclosed the information. *Id.* (same). The Amended Complaint satisfies none of these requirements with respect to PIMCO, and therefore fails to state a claim upon which relief can be granted against PIMCO.

## I.    The Amended Complaint Fails to State A Claim Against PIMCO in Making No Allegations Against PIMCO.

The Amended Complaint must be dismissed because it states no claim against PIMCO. Indeed, the Amended Complaint fails to assert any claims against PIMCO in reciting its causes of action or the request for relief, and it is impossible to speculate, based on the few references to PIMCO in the Amended Complaint, how PIMCO could possibly have liability here. *See* Compl. ¶¶ 190-203. In fact, aside from the caption and in its descriptions of the parties, the Amended Complaint never mentions PIMCO at all. The Amended Complaint does not allege any facts about PIMCO that bear on this action, or that identify its relationship—if any—to the other parties. In short, the Amended Complaint provides no legal or factual basis to hold PIMCO liable for Relator's claims.

9

The Amended Complaint's cursory mention of PIMCO fails to satisfy any standard, let alone the heightened pleading standards applicable to FCA claims. *Ballard v. Bank of Am. Corp.*, No. 1-13-cv-4011 (ODE-RGV), 2014 WL 11970543, at *16-17 (N.D. Ga. Sept. 10, 2014), *adopted*, 2014 WL 12284028 (Oct. 30, 2014) ("Plaintiffs' complaint does not include facts plausibly establishing any of the essential elements of a FCA claim"); *see also* Compl. ¶ 161 (a drafting note left in the final Amended Complaint regarding the intent to add "Example with names?"). Given this failure, and because the Amended Complaint is deficient on multiple independent grounds that a further amendment of the complaint cannot cure, PIMCO should be dismissed from this action with prejudice.

## II.    Relator's Claims Are Time-Barred.

Even if the Amended Complaint stated a claim against PIMCO, the conduct at issue long predates the June 2022 filing of the Amended Complaint. Dismissal on statute of limitations grounds is appropriate where "it is apparent from the face of the complaint that the claim is time-barred." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). For example, claims should be dismissed to the extent the "allegations contained in their complaint, as well as the documents central to the plaintiff's claim, relate to actions" defendants took before the limitations period. *Bruce v. U.S. Bank, N.A.*, 770 F. App'x 960, 965 (11th Cir. 2019).

The FCA's statute of limitations provides two limitation periods. An action is timely if either: (1) it is brought within 6 years of the violation; or (2) it is brought within 10 years of the violation and within 3 years of the "date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances." 31 U.S.C. § 3731(b). These provisions apply equally regardless of who files or maintains the FCA suit. *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1513 (2019).

Many of the allegations in the Amended Complaint are extremely dated. For example, the Amended Complaint cites directives and handbooks from 2004/2005. *E.g.*, Compl. ¶ 73-76. Relator's personal observations are from her time at FGMC in 2014. *Id.* ¶ 40. And the defaulted loans she lists date back to 2010. *Id.* ¶ 175. The longer limitations period cannot apply here because the original complaint put the responsible government official on notice of the allegations against FGMC more than three years before Relator belatedly named PIMCO as Defendant earlier this year. *See* 31 U.S.C. § 3731(b)(2). The Amended Complaint is thus untimely with respect to the alleged conduct that occurred prior to 2016 because the Amended Complaint was not filed until June 2022. *Id.* § 3731(b)(1).

Relator's time-barred claims cannot be revived. Accordingly, no amendment can cure this fatal deficiency. *Bruce*, 770 F. App'x at 967; *see also Brady v. Walsh*, No. 2:21-cv-763 (SPC-MRM), 2022 BL 202260, at *3 (M.D. Fla. June 10, 2022) (collecting cases). The Court should not grant leave to further amend the Amended Complaint where, as here, amendment is futile. *Hilderbrandt v. Butts*, 550 F. App'x 697, 699 (11th Cir. 2013). As a result, the claims based on conduct preceding June 29, 2016 must be dismissed, as time-barred, with prejudice.

## III. This Action Cannot Proceed Against PIMCO Because the Plan's Permanent Injunction Forecloses the Predicate Findings Against FGMC to Establish Any Other Defendant's Liability.

Relator's decision to submit her Claim, which is based on the allegations in the Amended Complaint, to the Bankruptcy Court gave that forum the exclusive jurisdiction to adjudicate the Claim, and provides an independent basis to dismiss this action. Further, the Plan's permanent injunction makes it impossible for Relator to pursue this action and seek a judgment against FGMC on the basis that it violated the FCA, which Relator must first establish before any other Defendant can be held liable for such violation. Given that this action cannot be pursued, much less a judgment entered, against FGMC—a thereby absent but indispensable party— warrants the dismissal of this action.

## A. The Plan Permanently Enjoins Relator from Obtaining a Judgment Against FGMC on the Basis That It Violated the FCA.

There is no dispute that Relator cannot obtain a judgment against FGMC in this Court because of the permanent injunction imposed under the Confirmation Order and the Plan. Specifically, Relator is permanently enjoined from:

> (a) commencing or *continuing* in any manner, directly or indirectly, any action or other proceeding of any kind against [FGMC], [FGMC's estate], . . . or Liquidating Trust Assets with respect to [the FCA claim against FGMC]; (b) the enforcement, attachment, collection, or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against [FGMC], [FGMC's estate] . . . [or any of the Liquidating Trust Assets] with respect to [the FCA Claim against FGMC]; . . . and (d) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim.

Confirmation Order ¶ 39, Bankr. Dkt. 671 at 34-35 (emphasis added); Plan § 16.3(a), Bankr. Dkt. 671-1 at 92 (same).

The injunction provision in the Confirmation Order and the Plan contains an exception allowing Relator to proceed before the Bankruptcy Court to have its Claim "declared an Allowed Claim and paid in accordance with the distribution provisions of the Plan." *Id*. The Bankruptcy Court thus has the sole power to determine what recovery, if any, Relator can collect from FGMC's bankruptcy estate with respect to her Claim. Plan § 18, Bankr. Dkt. 671-1 at 96. Relator willingly submitted to the

13

Bankruptcy Court's exclusive jurisdiction by filing her Claim in the Bankruptcy Case. 28 U.S.C. § 1334; *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 362-64 (2006) (a bankruptcy court exercises exclusive jurisdiction over "all of the debtor's property, [and] the equitable distribution of that property among the debtor's creditors"); *United States v. Paddock*, 187 F.2d 271, 278 (5th Cir. 1951) (a matter submitted to a bankruptcy court is thereby placed in its exclusive jurisdiction and it is a "serious interference" with that jurisdiction for any agency or court to carry on any proceeding with respect to such a claim). Accordingly, Relator should be precluded from pursuing her FCA claim in this Court because she has already submitted the Claim, which is based on the same grounds, to the Bankruptcy Court and that court is the appropriate forum for adjudicating such claim.

### B. This Action Cannot Proceed Against PIMCO Because FGMC Is an Absent But Indispensable Party.

The Confirmation Order is a final order binding on Relator, and provides an independent basis to dismiss this action because liability of any other Defendant depends on first establishing FGMC's liability. As demonstrated above, however, Relator cannot proceed against FGMC to establish such liability because of the permanent injunction imposed by the Plan and Confirmation Order.

An action must be dismissed where the inability to obtain a judgment against an indispensable party makes it unfair to enter a judgment against the participating

14

defendants. Fed. R. Civ. P. 12(b)(7). "First, the court must ascertain under the standards of Rule 19(a) whether the person in question is one who should be joined if feasible." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1280 (11th Cir. 2003). "If the person should be joined but cannot be (because, for example, joinder would divest the court of jurisdiction) then the court must inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue." *Id.* As discussed above, the Confirmation Order and Plan's permanent injunction bars Relator from serving FGMC, or litigating against FGMC, including seeking a judgment that FGMC violated the FCA.

In this regard, FGMC cannot be "joined" even though it is a named party. The Eleventh Circuit recently addressed a similar situation in another case at the intersection of state and federal regulation of waterways. *Fla. Wildlife Fed'n Inc. v. U.S. Army Corps of Eng'rs*, 859 F.3d 1306, 1309 (11th Cir. 2017). The claims at issue in that case required the court to determine the scope of authority as between the state and federal government where no judgment could be entered against the state entities because of sovereign immunity. *Id.* at 1319. Because a finding against one defendant necessarily implied a finding against the other, the court found that the state entities were indispensable parties, and no judgment against the *federal* entities could be entered in the absence of the state entities. *Id.* at 1319-20. Similarly,

15

here, because a finding against PIMCO would necessarily imply a finding against FGMC, FGMC is an indispensable party. As such, no judgment can be entered against PIMCO without finding liability on the part of FGMC. Because Relator cannot proceed, or obtain a judgment, against FGMC, this action against PIMCO must be dismissed.

A recent case dismissing an action for a similar failure to join a debtor is instructive. *Sino-US Inv. & Mgmt. Consultant v. Hyun Soon Ree*, No. CV-20-8597, 2021 WL 5020469, at *11 (C.D. Cal. Mar. 9, 2021). In that case, the owner and principal of a debtor was a necessary party because California agency law renders a principal liable for a judgment against a debtor. *Id.* at *9. A finding of fraud against the principal, as an agent and officer of the debtor, would likewise bind the debtor. *Id.* In that case, the interdependence of any findings regarding any one defendant on the other defendants rendered the debtor indispensable, such that proceeding against the non-debtors separately would fail to resolve "disputes by wholes." *Id.* at *10.

FCA caselaw further confirms that the party that submitted the allegedly false claims is a necessary party in an FCA case. For example, in a dispute among co-founders in which one alleged that the other used a corporation to submit false claims to obtain government funding, the court held that the corporation, as the "active

16

participant," was indispensable. *United States ex rel. Patel v. Fid. Deposit & Disc. Bank*, No. 3:19-cv-1824, 2022 BL 262789, at \*13 (M.D. Pa. July 27, 2022).

Similarly, here, the Amended Complaint makes clear that any false claims were submitted only by FGMC. Accordingly, FGMC's presence in this action is necessary to afford complete and fair relief. However, the Confirmation Order and Plan's permanent injunction prevents Relator from obtaining such predicate findings against FGMC, which are necessary to impose liability on PIMCO. Accordingly, this action cannot proceed.

## IV.   The Amended Complaint Fails to State a Claim Against FGMC—the Threshold for any Claim Against PIMCO.

While it is not clear from the face of the Amended Complaint, Relator appears to want to assert that PIMCO is somehow vicariously liable for the alleged conduct of FGMC. Because the Relator asserts no allegations against PIMCO, the Amended Complaint provides no basis for PIMCO's vicarious liability, but even if it had, such a claim would fail because it is dependent on establishing FGMC's liability. Unfortunately for Relator, the Amended Complaint does not state a valid FCA claim against FGMC either. At most, Relator asserts a regulatory violation, which falls outside the ambit of the FCA. The few statements that Relator identifies are not "false claims" within the meaning of the FCA. Nor does the Amended Complaint establish if, or how, any such statement influenced the government's decision

17

whether to pay any claim, and thus fails to meet Rule 9(b)'s particularity requirement. Relator separately asserts that she was terminated as retaliation for raising these regulatory issues, but her cursory retaliation claim has nothing to do with PIMCO, so it fails as well.

### A.    The Amended Complaint Fails to Allege How Any False Statements Reached the Government.

Relator must plead with particularity how a false statement by each Defendant reached the government and caused it to pay amounts it did not owe. The FCA provides two ways to make this showing: "presentment" or "false record." Both standards require "that a specific fraudulent claim was in fact submitted to the government." *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1328 (11th Cir. 2009).

To state a presentment claim under Section 3729(a)(1)(A), Relator must allege with particularity a false claim that the defendant submitted to the government for payment. *Id.* at 1326. By contrast, a false record claim under Section 3729(a)(1)(B) does not require that the defendant personally submit the claim, or that the defendant's statement actually reach the government. *Id.* at 1328. Instead, Relator must allege with particularity that a defendant's false statement (to anyone) caused the government to pay amounts it did not owe. *Id.* at 1328-39. Relator must further allege that the "defendant intended that the false record or statement be material to the Government's decision to pay or approve the false claim." *Id.* at 1330 (quoting

18

*Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 664-65 (2008));
*see* 31 U.S.C. § 3729(a)(1)(B). The Amended Complaint fails under either theory.

### 1.    Relator's Presentment Claim Fails.

To establish a presentment claim, Relator must show that each Defendant
"knowingly present[ed], or cause[ed] to be presented, a false or fraudulent claim for
payment or approval." 31 U.S.C. § 3729(a)(1)(A). "Rule 9(b) requires that actual
presentment of a claim be pled with particularity," meaning the Amended Complaint
must "assert the 'who,' 'what,' 'where,' 'when,' and 'how' of fraudulent
submissions to the government." *Hopper*, 588 F.3d at 1327 (quoting *Corsello*, 428
F.3d at 1014).  The Amended Complaint fails to allege that PIMCO did anything,
much less the "what," "where," "when," and "how" it knowingly presented a false
or fraudulent claim for payment or approval. On this basis alone, Relator fails to
allege, much less plead with particularity, presentment by PIMCO.

The Amended Complaint not only fails to make a presentment claim against
PIMCO, the underlying presentment claim against FGMC fails as well. The
Amended Complaint contends that FGMC submitted initial, annual, and loan-level
certifications asserting compliance with FHA rules to endorse the loans for FHA
insurance. None of those submissions constituted a claim for payment. Indeed, the
government would only pay if the holder of the mortgage later submitted an

insurance claim. *United States v. Carrington Mortg. Servs., LLC*, No. 16-cv-920, 2022 BL 126415, at *6 (S.D. Ind. Mar. 9, 2022) (citing *Escobar*, 579 U.S. at 195). There is no basis asserted in the Amended Complaint that FGMC held onto any mortgages to submit claims on them. The Amended Complaint thus fails to plead with particularity that FGMC presented a false claim.

## 2. Relator's False Record Claim Fails.

To state a false record claim, Relator must establish that PIMCO "knowingly ma[de], use[d], or cause[d] to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B). The complaint must "link the alleged false statements to the government's decision to pay false claims." *Hopper*, 588 F.3d at 1330.

Once again, Relator's allegations do not state a claim against PIMCO. The Amended Complaint fails to allege ***any*** facts—much less facts alleged with the particularity required by Rule 9(b)—to support a claim that PIMCO made, used, or caused to be made or used, a false record, or statement material to a false or fraudulent claim, in violation of the FCA. Accordingly, any false record claim against PIMCO must be dismissed.

Again, the Amended Complaint not only fails to make a false record claim against PIMCO, it also fails to make a cognizable false record claim against FGMC

because it does not allege with particularity that FGMC made or used any false record. FGMC's statements merely assert its general regulatory compliance. Further, FGMC underwrote every loan regardless of the initial rating the software indicated. *See* Compl. ¶¶ 63, 67-72. Relator's allegations do not identify any false record FGMC made or used. As the Supreme Court has held, the government's right to decline to pay is not sufficient to plead an FCA claim. *Escobar*, 579 U.S. at 195. Instead, Relator must plead that any Defendant knew that the government would actually decline payment. *Id.* Such concrete factual allegations are entirely missing from the Amended Complaint.

### B.    Regulatory Violations Are Not Fraud.

Relator's allegations reciting "federal regulation and HUD Handbooks," "civil case law," the "level of care," and "due diligence predicated on sound underwriting principles" show that the Amended Complaint does not allege false claims by FGMC. Compl. ¶¶ 62-65. As the Supreme Court observed, "billing parties are often subject to thousands of complex statutory and regulatory provisions. Facing False Claims Act liability for violating any of them would hardly help would-be defendants anticipate and prioritize compliance obligations." *Escobar*, 579 U.S. at 192. Alone, a regulatory violation is rarely material. *Id.* at 195. "Liability under the False Claims Act arises from the submission of a fraudulent claim to the government,

21

not the disregard of government regulations or failure to maintain proper internal procedures." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1045 (11th Cir. 2015) (quoting *Corsello*, 428 F.3d at 1002).

In attempting to identify an FCA violation, Relator points to FGMC's initial and annual certifications, which generically committed FGMC to comply with FHA regulations. *E.g.*, Compl. ¶ 91 (FGMC annually "agree[d]" it will "continue to comply with HUD-FHA regulations" and stated that, to the best of the signer's knowledge, the lender "conforms to all HUD-FHA regulations necessary to maintain its HUD-FHA approval."). But the Supreme Court confirmed that, absent an allegation of a specific regulatory violation, an FCA claim cannot rest on generic certifications of compliance with applicable regulations because the FCA "does not adopt such an extraordinarily expansive view of liability." *Escobar*, 579 U.S. at 196.

The certifications that Relator alleges FGMC submitted with each loan are also too general to constitute a false claim. The loan-level certifications broadly asserted that the relevant loan complied with HUD rules and was "eligible for HUD mortgage insurance under the Direct Endorsement program." Compl. ¶ 93. These certifications contained legal conclusions, not factual details about the relevant loan. *Cf. Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 183-85 (2015) (the statement "I believe" avers that the speaker actually holds

22

that belief, not that the belief is true). At most, these allegations support that the government had the right not to pay, but fail to allege that FGMC knew the government would actually decline to pay. *Escobar*, 579 U.S. at 195.

Here, the Amended Complaint provides no basis to conclude that the government's decision-making would be impacted at all when a lender who initially certified compliance later discovered it had violated some regulation. Logic counsels that if a specific regulatory requirement is critical, the government will act in response to a violation, rather than on the basis of a lender's boilerplate acknowledgement that it is entering a highly regulated space. Accordingly, Relator cannot state a claim—against FGMC or anyone else—based on a regulatory compliance certification submitted by a direct enrollment lender like FGMC.

Relator asserts that the "data entered into [the software] is material to the endorsement of the loan because [the software] is an algorithm that evaluates the overall creditworthiness of a mortgage applicant based on the data supplied by the lender." *Id.* ¶ 74. That allegation is circular. Moreover, it is completely divorced from the test for materiality. The only inference the Amended Complaint supports is that the government never sees the data a lender enters into the software; rather, the software is a starting point to quickly gather key metrics, always subject to further

underwriting. *See* Compl. ¶¶ 63, 67-72 (no matter the method of underwriting, the software is only the first step in the underwriting process).

At its core, Relator's claim is that FGMC would not have been eligible to underwrite FHA-insured loans at all if it had realized its alleged compliance issues and disclosed them to the government. *See id.* ¶¶ 177-180. That theory fails to identify any false statement, and at most identifies the government's right to deny payment rather than any defendant's knowledge that the government would not pay. *Escobar*, 579 U.S. at 195. That FGMC remained a direct enrollment lender and processed a large volume of mortgages during and after the relevant time period indicates that the government did not consider the conduct alleged in the Amended Complaint significant enough to deny payment. *Carrington*, 2022 BL 126415, at *6 (citing *Escobar*, 579 U.S. at 195) (that defendant remained a direct endorsement lender was "strong evidence that the requirements were not material"). The allegations about FGMC's regulatory compliance thus fail to state an FCA claim. *Escobar*, 579 U.S. at 195; *Hopper v. Solvay Pharm. Inc.*, 590 F. Supp. 2d 1352, 1361-62 (M.D. Fla. 2008), *aff'd*, 588 F.3d 1318 (11th Cir. 2009).

## C. There Is No Plausible Basis to Hold PIMCO Liable Under Relator's Retaliation Claim.

Relator contends that her termination after three months of work with FGMC was in retaliation for her complaints to her manager about the underwriting process.

24

Compl. ¶¶ 181-189. "But even if the employees' suspicions about both the fraud and their firings are entirely correct, a False Claims Act retaliation claim requires more." *Hickman v. Spirit of Athens Ala., Inc.*, 985 F.3d 1284, 1285 (11th Cir. 2021). "It is not enough for an employee to suspect fraud; it is not even enough to suspect misuse of federal funds; [. . . the] employee must suspect that her employer has made a false claim to the federal government." *Id.* at 1289.

Read charitably, Relator's allegations suggest, at most, that she suspected FGMC was not complying with HUD regulations, but the Amended Complaint never identifies a specific false claim that the government paid. As the Eleventh Circuit recognizes, such allegations are insufficient. *Id*. Moreover, Relator fails to connect PIMCO to any allegation in the Amended Complaint, including any purported retaliation. Indeed, the allegations do not support an inference that PIMCO was even aware of Relator—based on her three-month tenure or otherwise—much less that PIMCO played any role in her termination. *See* Compl. ¶¶ 181-189. Accordingly, any retaliation claim against PIMCO must be dismissed.

## **Conclusion**

For all the foregoing reasons, this action should be dismissed as to Pacific Investment Management Company LLC and PIMCO Investments LLC with prejudice.

Respectfully submitted this 28th day of November, 2022.

/s/ Craig A. Gillen
Craig A. Gillen
Georgia Bar No. 294838
Anthony C. Lake
Georgia Bar No. 431149
GILLEN, WITHERS & LAKE, LLC
400 Galleria Parkway, SE
Suite 1920
Atlanta, GA 30339
Tel: (404) 842-9700
Fax: (404) 842-9750
Email: cgillen@gwllawfirm.com
        aclake@gwllawfirm.com

-and-

SCHULTE ROTH & ZABEL LLP
Peter H. White
Noah N. Gillespie
901 15th Street NW, Suite 800
Washington, DC 20005

*Pro Hac Vice* applications pending

-and-

Kristine Manoukian
919 Third Avenue
New York, NY 10022

*Pro hac vice* application pending

*Counsel for Pacific Investment Management Company LLC and PIMCO Investments LLC*

# **CERTIFICATION**

Counsel for Defendants Pacific Investment Management Company LLC and PIMCO Investments LLC certifies, pursuant to N.D. Ga. L. Civ. R. 7.1D, that the foregoing document has been prepared with one of the font and point selections (Times New Roman, 14 point) approved by the Court in N.D. Ga. L. Civ. R. 5.1B.

/s/ Craig A. Gillen
Craig A. Gillen
Georgia Bar No. 294838
Anthony C. Lake
Georgia Bar No. 431149
GILLEN, WITHERS & LAKE, LLC
400 Galleria Parkway, SE
Suite 1920
Atlanta, GA 30339
Tel: (404) 842-9700
Fax: (404) 842-9750
Email: cgillen@gwllawfirm.com
        aclake@gwllawfirm.com

*Counsel for Pacific Investment Management Company LLC and PIMCO Investments LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this 28th day of November, 2022, the undersigned electronically filed and served the foregoing document, using the Court's CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

/s/ Craig A. Gillen
Craig A. Gillen
Georgia Bar No. 294838
Anthony C. Lake
Georgia Bar No. 431149
GILLEN, WITHERS & LAKE, LLC
400 Galleria Parkway, SE
Suite 1920
Atlanta, GA 30339
Tel: (404) 842-9700
Fax: (404) 842-9750
Email: cgillen@gwllawfirm.com
        aclake@gwllawfirm.com

*Counsel for Pacific Investment Management Company LLC and PIMCO Investments LLC*