# Exhibit 4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* KARI CRUTCHER,<br><br>               Plaintiff,<br><br>     v.<br><br>FIRST GUARANTY MORTGAGE CORPORATION, PACIFIC INVESTMENT MANAGEMENT COMPANY LLC, PIMCO INVESTMENTS LLC, AARON SAMPLES, ANDREW PETERS, JILL WINTERS, and SUZY LINDBLOM,<br><br>               Defendants. | Civil Action No.: 16-cv-3812-SCJ<br><br><br><br><br>**Oral Argument Requested** |

**THE PIMCO DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO RELATOR'S CROSS-MOTION FOR LEAVE TO AMEND THE AMENDED COMPLAINT**

# **Table of Contents**

Preliminary Statement..................................................................................................1

Argument.......................................................................................................................6

I.    Relator's Cross-Motion Violates the Permanent Injunction in FGMC's Confirmed Plan. .........................................................................................6

II.   The Claims in the SAC Were Released by the Plan.......................................9

III.  The SAC Is Untimely. ................................................................................11

IV.  The Court Should Not Grant Leave to Amend.............................................13

     A.     Relator Belatedly Sought Leave to Amend........................................14

     B.     The SAC Would Prejudice the PIMCO Defendants. ..........................15

     C.     Allowing the SAC Would Be Futile Because It Still Fails to State a Claim. ..............................................................................................17

Conclusion .................................................................................................................22

# Table of Authorities

**Cases**                                                                                                **Page(s)**

*Abramson v. Gonzalez,*
  949 F.2d 1567 (11th Cir. 1992) ...................................................................3, 13

*Allison Engine Co. v. United States ex rel. Sanders,*
  553 U.S. 662 (2008).......................................................................................21

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009).......................................................................................18

*Batts v. Silver Line Bldg. Prods. Corp.,*
  No. 1:08-CV-3355-WSD-ECS,
  2010 BL 401468 (N.D. Ga. Feb. 22, 2010) .......................................................16

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007).......................................................................................18

*Brady v. Walsh,*
  No. 2:21-cv-763 (SPC-MRM), 2022 BL 202260,
  (M.D. Fla. June 10, 2022)..............................................................................11

*Bruce v. U.S. Bank, N.A.,*
  770 F. App'x 960 (11th Cir. 2019) ............................................................11, 13

*Bryant v. Avado Brands, Inc.,*
  187 F.3d 1271 (11th Cir. 1999) .........................................................................2

*C.F. Trust, Inc. v. First Flight LP,*
  580 S.E.2d 806 (Va. 2003) .............................................................................10

*Cochise Consultancy, Inc. v. United States ex rel. Hunt,*
  139 S. Ct. 1507 (2019)....................................................................................11

*Cockrell v. Sparks,*
  510 F.3d 1307 (11th Cir. 2007) .......................................................................17

*Corsello v. Lincare, Inc.,*
  428 F.3d 1008 (11th Cir. 2005) .......................................................................18

*Donnelly v. Wal-Mart Stores E., LP*,
844 F. App'x 164 (11th Cir. 2021) ...................................................................15

*United States ex rel. Ebu-Isaac v. Insys Therapeutics*,
No. 2:16-CV-7937,
2021 BL 327115 (C.D. Cal. June 9, 2021) ..................................................19, 20

*Fidelity Nat'l Title Ins. Co. of N.Y. v. Bozzuto*,
227 B.R. 466 (E.D. Va. 1998) ......................................................................10

*Graceway Pharms., LLC v. River's Edge Pharms., LLC*,
No. 2:08-CV-00067-RWS,
2009 BL 209658 (N.D. Ga. Sept. 30, 2009).......................................................15

*Hilderbrandt v. Butts*,
550 F. App'x 697 (11th Cir. 2013) ............................................................11, 17

*Hopper v. Solvay Pharms., Inc.*,
588 F.3d 1318 (11th Cir. 2009) .........................................................18, 19, 21

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011)....................................................................................2

*K.T. v. Royal Caribbean Cruises, Ltd.*,
931 F.3d 1041 (11th Cir. 2019) .......................................................................2

*La Grasta v. First Union Sec., Inc.*,
358 F.3d 840 (11th Cir. 2004) ..................................................................11, 13

*Maynard v. Bd. of Regents of the Div. of Univs. of the Fla. Dep't of
Educ.*,
342 F.3d 1281 (11th Cir. 2003) ....................................................................14

*Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.*,
187 F.3d 439 (4th Cir. 1999) ......................................................................10

*Norfolk S. Corp. v. Chevron, U.S.A.*,
371 F.3d 1285 (11th Cir. 2004) ....................................................................11

*Norris v. Hicks*,
855 F. App'x 515 (11th Cir. 2021)..................................................................14

*Palms of Destin Club, LLC v. Commc'ns Processing Sys. Inc.*,
No. 21-12202,
2022 WL 293960 (11th Cir. Feb. 1, 2022) ..........................................10

*Sisia v. State Farm Mut. Auto. Ins.*,
No. 1:21-CV-02376-ELR, 2022 BL 303619 ......................................14

*Steyr-Daimler-Puch of Am. Corp. v. Pappas*,
852 F.2d 132 (4th Cir. 1988) ............................................................10

*Tampa Bay Water v. HDR Eng'g, Inc.*,
731 F.3d 1171 (11th Cir. 2013) ........................................................16

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
579 U.S. 176 (2016) ..........................................................................21

*Virtual Studios, Inc. v. Stanton Carpet Corp.*,
No. 4:15-CV-0070-HLM, 2016 WL 5346366 (N.D. Ga. Mar. 21,
2016) ..................................................................................................16

*XY Planning Network, LLC v. SEC*,
963 F.3d 244 (2d Cir. 2020) ..............................................................3

**Statutes**

31 U.S.C. § 3729(a)(1)(A) ......................................................................18

31 U.S.C. § 3729(a)(1)(B) ......................................................................21

31 U.S.C. § 3731(b) ................................................................................11

31 U.S.C. § 3731(b)(2).............................................................................12

**Other Authorities**

Fed. R. Civ. P. ...............................................................................*passim*

  12(a)(1)(A)(i) ...................................................................................4

  12(b) ..............................................................................................13

  15(a)(1)(B) .....................................................................................13

15(a)(2) ...........................................................................................13

26(b)(1) ...........................................................................................15

N.D. Ga. Civ. R. 5.1B ....................................................................23

N.D. Ga. Civ. R. 7.1B ......................................................................4

N.D. Ga. Civ. R. 7.1D.....................................................................23

## **Preliminary Statement**

Courts typically grant leave to amend complaints "where justice so requires." This is not such a case. In fact, under the circumstances of this case, justice demands that the Court deny Relator leave to amend her complaint for the second time.[1]

Relator's proposed Second Amended Complaint ("SAC") is improper because of the Bankruptcy Court's orders, which are binding on Relator because she submitted her claim against FGMC to the Bankruptcy Court. The proposed SAC asserts new allegations against FGMC that differ in kind from those in the Amended Complaint ("FAC") and, as such, violates the permanent injunction in the Bankruptcy Court's Order confirming FGMC's Plan. That Order enjoins Relator from "commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against [FGMC]." Bankr. Dkt. 671 at 34-35; Bankr. Dkt. 671-1 at 92 (same).[2]

Moreover, the SAC would assert new but baseless claims that "PIMCO" is FGMC's alter ego and attempts to pierce the corporate veil of FGMC. Those theories are derivative claims that belong to FGMC, were released through the Plan, and cannot be revived in this Court.

---

[1] The PIMCO Defendants will reply separately in further support of their motion to dismiss the Amended Complaint in due course.

[2] Citations to court filings refer to their ECF-generated page numbers for clarity.

Even if the Court were inclined to overlook Relator's violation of the Bankruptcy Court's orders, the proposed SAC should not be permitted. The SAC is premised on a fundamental misunderstanding about the two named PIMCO Defendants. Pacific Investment Management Company LLC ("PIMCO LLC") serves as the investment manager or investment adviser to various funds and accounts with their own investment strategies. PIMCO LLC *Form ADV Part 2A Brochure* (March 31, 2022);[3] *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 138 (2011) (explaining the difference between an investment adviser and its advisory clients). A PIMCO LLC-managed private fund (through a subsidiary of the private fund) issued loans to FGMC beginning in mid-October 2014. It was not until mid-September 2015, long after Relator worked at FGMC, that a special purpose entity of the same PIMCO LLC-managed private fund acquired certain equity interests in FGMC.

Accordingly, during the very brief time period that Relator alleges she worked at FGMC (September 2014 through November 2014), the only investment that any fund managed or advised by PIMCO LLC had made to FGMC was as a lender to

---

[3] On a motion to dismiss, the Court can consider the well pled factual allegations in the complaint as well as "public records," of which the Court can take judicial notice, such as filings required to be made with the Securities and Exchange Commission. *K.T. v. Royal Caribbean Cruises, Ltd.*, 931 F.3d 1041, 1048 (11th Cir. 2019); *see Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999).

FGMC. At no point in time (whether prior to, during or after Relator's employment) did either of the PIMCO Defendants ever make their own investments (equity or otherwise) in FGMC. Each of the PIMCO Defendants and the subsidiaries of the PIMCO LLC-managed private fund that invested in FGMC is a separate legal entity.

PIMCO Investments LLC ("PI") is a limited purpose broker-dealer that is registered with the Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority, Inc. *See* PIMCO LLC *Form ADV Part 2A Brochure* (March 31, 2022); PIMCO, pimco.com; *XY Planning Network, LLC v. SEC*, 963 F.3d 244, 248 (2d Cir. 2020) (comparing broker-dealers and investment advisers). PI's business does not involve making investments in operating businesses, and it did not make any investment in FGMC nor did it have any relationship with FGMC at all.

Given these corporate realities, it is not surprising that the transactions and occurrences referenced in the SAC could ever state a viable claim against these PIMCO Defendants. Accordingly, the Court should deny leave to file the SAC, and the PIMCO Defendants should be dismissed with prejudice.

Turning to the merits, courts properly deny leave to amend where there is "undue delay, undue prejudice to the defendants, and futility of the amendment."

*Abramson v. Gonzalez*, 949 F.2d 1567, 1581 (11th Cir. 1992). Relator's proposed SAC violates all three of these principles.

This case began in 2016 when Relator filed her original complaint under seal naming FGMC as the sole Defendant. By that time, six-and-a-half years before seeking leave to file the SAC, an indirect subsidiary of a private fund for which PIMCO LLC served as investment manager had already invested in FGMC. SAC ¶¶ 21, 175. By June 2022, Relator was aware that FGMC's bankruptcy filing was imminent and that a special purpose entity of a PIMCO LLC-managed or advised entity was an equity investor in FGMC. In a desperate attempt to name a solvent defendant, Relator rushed to file the FAC to add the PIMCO Defendants without even bothering to assert any claims against them. *See generally* FAC.

Notwithstanding the absence of any claims against the PIMCO Defendants, Relator elected to serve the FAC on the PIMCO Defendants, obligating them to respond within 21 days. Fed. R. Civ. P. 12(a)(1)(A)(i). Relator did not advise the PIMCO Defendants at that point that she intended to seek to further amend the FAC. Accordingly, on November 28, 2022, the PIMCO Defendants timely responded by moving to dismiss the FAC for failing to state a claim against them. ECF No. 49. Relator was required to respond to the PIMCO Defendants' motion to dismiss by no later than December 19, 2022. N.D. Ga. L. Civ. R. 7.1B. Instead, Relator asked the

4

Court to extend her response deadline. ECF No. 56. The Court rejected Relator's request to tie the timing of her response to various external factors, ordering Relator to respond by January 11, 2023. ECF No. 66. At no point during this process did Relator disclose to anyone that she intended to further amend the FAC. Instead, Relator argued that she needed more time to petition the Bankruptcy Court for limited relief from the Plan injunction to permit Relator to ask this Court to transfer this action from her chosen venue to the District of Delaware. *See* ECF Nos. 56, 64.

It was only on January 10, 2023, one day before the deadline this Court set for Relator's response to the motion to dismiss, that Relator's counsel advised counsel for the PIMCO Defendants of her intent to seek leave to file another amended complaint, providing a redline showing the new allegations to be added through the SAC. (The redline Relator's counsel provided is attached hereto as Exhibit A.) Relator then filed her cross-motion on January 11, 2023, alleging for the first time that "PIMCO bought FGMC"—more than seven years prior. SAC ¶ 174.

The proposed SAC is untimely and prejudicial, and is the result of gamesmanship and dilatory conduct by Relator. The SAC is prejudicial to the PIMCO Defendants in adding completely new theories against them, and would be futile in any event because the SAC—like the FAC—does not state a claim against

5

the PIMCO Defendants. The Court should deny Relator's cross-motion and resolve the pending motion to dismiss the FAC.

**Argument**

Justice requires that the Court deny Relator's request to further amend her claims. Relator's cross-motion violates the permanent injunction in FGMC's confirmed Plan, and seeks to add claims that were expressly released by the Plan. The cross-motion further ignores that the time-barred FAC cannot be cured by further amendment, rendering the SAC futile. Even if the Court were inclined to take the SAC at face value, the Court should deny leave to file the SAC for at least three additional reasons. *First*, Relator should have added the new allegations in the SAC much earlier. *Second*, the SAC would prejudice the PIMCO Defendants by adding new theories and significantly expanding the scope and expense of discovery. And *third*, even accepting the SAC's additional factual allegations as true, the SAC still fails to state a claim against the PIMCO Defendants, and accordingly the Court should reject the SAC as futile. Therefore, the Court should deny the cross-motion and resolve the motion to dismiss the FAC.

## I.  Relator's Cross-Motion Violates the Permanent Injunction in FGMC's Confirmed Plan.

Relator chose to file a claim in the FGMC bankruptcy case based on the same underlying conduct as the FAC and the SAC. Claim #93 (Sept. 20, 2022), *as*

6

*amended*, Claim #124 (Sept. 28, 2022). As a holder of a claim against FGMC, Relator is bound by the permanent injunction in FGMC's confirmed Plan. Confirmation Order ¶ 39, Bankr. Dkt. 671 at 34-35 (emphasis added); Plan § 16.3(a), Bankr. Dkt. 671-1 at 92 (same). Specifically, Relator is permanently enjoined from:

> ***commencing or continuing*** in any manner, ***directly or indirectly, any action or other proceeding of any kind against [FGMC]***, [FGMC's estate], . . . or Liquidating Trust Assets with respect to [the FCA claim against FGMC]; (b) the enforcement, attachment, collection, or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against [FGMC], [FGMC's estate] . . . [or any of the Liquidating Trust Assets] with respect to [the FCA Claim against FGMC]; . . . and (d) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim.

*Id.* By asking this Court to allow her to bring new, additional allegations ***against FGMC***, Relator violated this permanent injunction.

Notably, recognizing the breadth of the Plan injunction and its applicability to Relator's prosecution of this action, Relator recently moved the Bankruptcy Court for limited relief from the Plan injunction to petition this Court to transfer the FCA case to the District of Delaware and pursue this action against FGMC as a nominal defendant. Bankr. Dkt. 712. Nowhere in that motion did Relator ask for the Plan injunction to be lifted to allow her to seek leave in this Court to file the SAC, or

otherwise bring further allegations against FGMC. (*See id.*) This violation of the Plan injunction argues against allowing the filing of the proposed SAC.

Relator claims the primary objective of the SAC is to cure the FAC's lack of allegations against the PIMCO Defendants, as demonstrated by the PIMCO Defendants' motion to dismiss. Attempting to correct this failure, the Relator's proposed SAC would significantly expand the claims against FGMC.

For example, the SAC includes more recent (albeit conclusory) allegations about FGMC. *See, e.g.*, SAC ¶¶ 174-192. These more recent allegations could meaningfully impact whether the SAC states a claim against FGMC because the FAC primarily focuses on conduct prior to June 2016, which is barred by the applicable six-year statute of limitations.

Moreover, the allegations in the SAC about FGMC differ from those in the FAC, asserting that FGMC undertook conduct to please its "new rich uncle." SAC ¶ 177. Relator points to FGMC's switch of communications platforms from Microsoft Teams to Cisco WebEx, and relocation of staff from Frederick, Maryland to Plano, Texas as implausible signs of nefarious collaboration, but the much more plausible inference is that those actions resulted from FGMC's exercise of its own reasonable business judgment.

Although the SAC attempts to conceal the implication by couching these actions as the work of "PIMCO," it is plain from Relator's own allegations that the actions described in the SAC took place at FGMC as part of FGMC's operations by FGMC's executives and employees. After all, as the SAC (like the FAC) asserts, only FGMC was a direct endorsement lender, and no other person endorsed mortgage loans for FHA insurance. As a result, the proposed SAC's allegations are levied against FGMC in violation of the Plan's permanent injunction.

## II. The Claims in the SAC Were Released by the Plan.

The SAC is also improper because it attempts to bring claims that were terminated and released through the confirmed Plan. Specifically, the Plan contains a release by the Debtors, which forever foreclosed:

> any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of [FGMC], as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that [FGMC] would have been legally entitled to assert in its own right, or on behalf of [Relator], based on or relating to, or in any manner arising from, in whole or in part, [FGMC] (including the management, ownership, or operation thereof), . . . the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan [including the FCA case].

9

Plan § 16.2(a), Bankr. Dkt. 671-1 at 90.

This binding release was reviewed and approved by the Bankruptcy Court as an "integral part of the consideration to be provided in exchange for the compromises and resolutions embodied in the Plan." Bankr. Dkt. 671 at 10. The Bankruptcy Court further specifically found that the Debtors' releases were "in the best interests of the Debtors, the Estates, and all holders of Claims and Interests," including Relator. *Id.*

These claims in the proposed SAC belong to the bankruptcy estate and have thus been released by the Plan. First, an alter ego claim is a derivative claim that belongs to FGMC, a Virginia corporation. SAC ¶ 28. Under Virginia law, "an alter ego claim . . . is property of the corporation" and thus becomes a part of the corporation's bankruptcy estate when the corporation files for bankruptcy protection. *Steyr-Daimler-Puch of Am. Corp. v. Pappas*, 852 F.2d 132, 135 (4th Cir. 1988); *Fidelity Nat'l Title Ins. Co. of N. Y. v. Bozzuto*, 227 B.R. 466, 471 (E.D. Va. 1998) ("under Virginia law, alter ego claims are the property of the debtor").

Second, the SAC's piercing the corporate veil claim belongs to FGMC's bankruptcy estate. *C.F. Trust, Inc. v. First Flight LP*, 580 S.E.2d 806, 810 (Va. 2003). This is so because otherwise "selected creditors" might be able to "plead their way out of bankruptcy court," which "would unravel the bankruptcy process and

undermine an ordered distribution of the bankruptcy estate." *Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439187 F.3d 439, 442 (4th Cir. 1999).

The Plan's broad and unconditional release settled these claims and precludes Relator from raising them in this Court. *Palms of Destin Club, LLC v. Commc'ns Processing Sys. Inc.*, No. 21-12202, 2022 WL 293960, at *5 (11th Cir. Feb. 1, 2022) (a final judgment approving a settlement has preclusive effect); *Norfolk S. Corp. v. Chevron, U.S.A.*, 371 F.3d 1285, 1288 (11th Cir. 2004) (prior settlement bars relitigation). Accordingly, the alter ego and piercing the corporate veil claims in the SAC have been resolved with finality and must be dismissed with prejudice.

## III. The SAC Is Untimely.

Relator's cross-motion would have the Court turn the statute of limitations on its head by allowing the SAC to revive the time-barred allegations of the FAC. That is not the law. *Bruce v. U.S. Bank, N.A.*, 770 F. App'x 960, 965-67 (11th Cir. 2019); *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004); *see also Brady v. Walsh*, No. 2:21-cv-763 (SPC-MRM), 2022 BL 202260, at *3 (M.D. Fla. June 10, 2022) (collecting cases). In this regard, the SAC should not be allowed because it is futile. *Hilderbrandt v. Butts*, 550 F. App'x 697, 699 (11th Cir. 2013).

The proposed SAC is even more belated than the Relator's already time-barred claims. Relator concedes that (1) the applicable frame of reference is the date

11

that the original complaint was filed and (2) the applicable limitations period is six years. Cross-Motion at 19-20; 31 U.S.C. § 3731(b); *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1513 (2019).

The SAC did not remove the time-barred allegations of the FAC, which focus on the mid-2000s through 2010. Opening Br. at 17. Those allegations—which predate by many years the limitations period cutoff of six years before the filing of the FAC—are even more untimely now.

Relator attempts to salvage the SAC with the bare argument—nowhere alleged in the SAC itself—that the United States must have paid out on FHA-insured mortgages that defaulted within the limitations period. *See* Cross-Motion at 20. But the SAC identifies only two mortgages that allegedly led to claims for payment within the limitations period and provides no facts to support a claim that any payment resulted from any false claim or false statement by anyone. *See* SAC ¶ 168(a), (f). The SAC also lists claims dating back to 2010, but the FCA provides that an FCA claim must be pled "in no event more than 10 years after the date on which the violation is committed." 31 U.S.C. § 3731(b)(2).

Instead, the proposed SAC asserts in conclusory fashion that after "PIMCO bought FGMC" in 2015, it "enabl[ed] and encourage[ed] all of FGMC's worst practices." SAC ¶ 21. Although the SAC adds several paragraphs about "PIMCO,"

12

none of those new allegations plead with particularity any false statement shared with the government or any false claim presented to the government. *See* SAC ¶¶ 174-192. Accordingly, any particularized "allegations and documentation present" in the SAC about endorsing mortgage loans fall outside the limitations period. *Bruce*, 770 F. App'x at 965. It is thus "apparent from the face of the [SAC] that the claim is time-barred." *La Grasta*, 358 F.3d at 845.

## IV. The Court Should Not Grant Leave to Amend.

The SAC does not satisfy the standard for amendment because Relator unreasonably delayed seeking leave to amend, amendment would prejudice the PIMCO Defendants, and the SAC is futile. The Court should deny leave to amend.

Relator must obtain the Court's permission to file the SAC. In the Joint Report, Relator suggested that the deadline to amend as of right had not yet passed because "not all parties have answered this action." ECF No. 67 at 9. Not so. The plain language of Rule 15 holds that the period to amend as of right ends "21 days after service of *a* motion under Rule 12(b)," *i.e.*, a motion to dismiss by even just one Defendant. Fed. R. Civ. P. 15(a)(1)(B) (emphasis added). Accordingly, the proposed SAC can be filed only "with . . . the court's leave." Fed. R. Civ. P. 15(a)(2).

Although courts "freely give leave when justice so requires," the obligation to obtain leave of the court demonstrates that there is no absolute right to amend,

particularly once the time to amend as of right has passed, as it has here. Fed. R. Civ.

P. 15(a)(2). It is proper to deny leave to amend due to "undue delay, undue prejudice

to the defendants, and futility of the amendment." *Abramson*, 949 F.2d at 1581.

### A.   Relator Belatedly Sought Leave to Amend.

Among other grounds, the Court should deny leave to file the proposed SAC

because, as described above, Relator unduly delayed bringing the amendment.

Relator claims that the proposed SAC presents "newly learned information

concerning PIMCO's involvement." Cross-Motion at 9. But Relator was obligated

to be "diligent" and Relator provides no explanation for why she did not conduct

proper diligence in the more than six years this action has been pending or in the

months since she filed the FAC and pursued her Claim against FGMC in the

Bankruptcy Court. *Cf. Norris v. Hicks*, 855 F. App'x 515, 525 (11th Cir. 2021)

(rejecting as unduly delayed an amendment based on "significant information"

where the plaintiff "waited months to seek the amendment"). This alone provides a

reason to deny Relator's motion. *Maynard v. Bd. of Regents of the Div. of Univs. of*

*the Fla. Dep't of Educ.*, 342 F.3d 1281, 1287 (11th Cir. 2003) ("there seems to be

no good reason why Maynard could not have made the motion earlier"); *Sisia v.*

*State Farm Mut. Auto. Ins.*, No. 1:21-CV-02376-ELR, 2022 BL 303619, at *7 ("A

motion to amend may be denied for undue delay where a plaintiff has failed to justify

its failure to move to amend sooner"). The Court should deny leave to amend because of Relator's strategic decision to belatedly request leave to amend for a second time.

### B. The SAC Would Prejudice the PIMCO Defendants.

Another independent ground to deny amendment is that the SAC would prejudice the PIMCO Defendants by adding new theories of liability against them. While amendments in response to a motion to dismiss often add factual details missing from an earlier complaint, especially to meet applicable particularity standards, adding fresh claims effectively brings a new action against the defendant and must be examined for prejudice. *Donnelly v. Wal-Mart Stores E., LP*, 844 F. App'x 164, 171 (11th Cir. 2021) (rejecting amendment where additional allegations sought to add "a new theory" not present in the prior pleading). The Court should deny amendment on this basis alone.

Whereas the FAC provided no basis whatsoever to impose liability on the PIMCO Defendants for any alleged FCA violation by FGMC, the SAC would assert that the Court should pierce the corporate veil to impute FGMC's acts and purported liability to the PIMCO Defendants. SAC ¶ 192. Additionally, the SAC proposes to assert that FGMC was the mere alter ego of the PIMCO Defendants. SAC ¶ 191.

Allowing these two new theories would greatly expand the scope of the case. Moreover, these theories will likely necessitate discovery far beyond that which would have been "proportional to the needs of the case" compared with the FAC that focused only on FGMC's actions. Fed. R. Civ. P. 26(b)(1); *Graceway Pharms., LLC v. River's Edge Pharm., LLC*, No. 2:08-CV-00067-RWS, 2009 BL 209658, at *3 (N.D. Ga. Sept. 30, 2009) (rejecting a counterclaim that would "produce more attempts at discovery, delay[] disposition of the case, and likely prejudice" the opposing party); *Virtual Studios, Inc. v. Stanton Carpet Corp.*, No. 4:15-CV-0070-HLM, 2016 WL 5346366, at *3 (N.D. Ga. Mar. 21, 2016) (finding prejudice where amendment would expand "the scope of discovery" and "increase the costs of discovery"). Permitting these claims to proceed would substantially prejudice the PIMCO Defendants.

Further, the SAC purports to assert, for the first time, a direct claim against the PIMCO Defendants. *See* SAC ¶ 190; Cross-Motion at 11. Although the allegations in the SAC do not support such a claim, they differ from the FAC's claims. The Court should deny the cross-motion on this basis as well. *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1186 (11th Cir. 2013) ("[P]rejudice is especially likely to exist if the amendment involves new theories of recovery or would require additional discovery."); *Batts v. Silver Line Bldg. Prods. Corp.*, No.

1:08-CV-3355-WSD-ECS, 2010 BL 401468, at *4 (N.D. Ga. Feb. 22, 2010)
("Plaintiff's actions constitute undue delay and that allowing the amendment would
cause undue prejudice to Defendant; thus the grant of leave to file the amended
complaint should be, and is, DENIED.").

### C. Allowing the SAC Would Be Futile Because It Still Fails to State a Claim.

The Court should also deny leave to amend because the SAC still fails to state
a claim against the PIMCO Defendants. "Leave to amend a complaint is futile when
the complaint as amended would still be properly dismissed or be immediately
subject to summary judgment for the defendant." *Hilderbrandt*, 550 F. App'x at 699
(quoting *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)).

The proposed SAC would add nothing to the claim against PI. Like the FAC,
the SAC alleges no facts on which to base PI's purported liability, thereby failing to
state a viable claim for relief against PI. Opening Br. at 15-16. No amendment can
cure this deficiency because PI had nothing to do with FGMC. Neither the proposed
SAC nor the FAC assert that PI was involved in FGMC's management, underwriting
of mortgage loans, or endorsement of loans for FHA insurance because it was not.

With respect to both PIMCO Defendants, the SAC concedes that Relator has
no retaliation claim against anyone other than FGMC, her employer. *See* Ex. A at
61-64. To survive a future motion to dismiss, the SAC must satisfy the applicable

17

pleading standards to state a claim against the PIMCO Defendants. The SAC's own allegations defeat this claim, demonstrating that the SAC is futile.

Relator does not contest the legal standards she must meet to state a presentment claim or a statement claim under the FCA. Cross-Motion at 26-27. The proposed SAC is clear that the PIMCO Defendants never presented any claims to the government for payment. *See* SAC ¶¶ 174-192. Because this fails to plead presentment, the SAC cannot survive a motion to dismiss the presentment claim. 31 U.S.C. § 3729(a)(1)(A); *Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1327 (11th Cir. 2009); *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005).

Relator attempts to save her false statement claim by focusing on the causation standard. Cross-Motion at 27. In doing so, Relator overlooks the requirement that ***a false statement*** cause the alleged loss. *Hopper*, 588 F.3d at 1330 (the complaint must "link the alleged false statements to the government's decision to pay false claims."). Relator also overlooks that she must plead each false statement with particularity. *Hopper*, 588 F.3d at 1330. Nowhere does the proposed SAC allege that either of the PIMCO Defendants ever made any statements at all, let alone that those statements were false, or actually reached the government. Opening Br. at 23-30.

Indeed, the SAC, like the FAC, relies on conclusory statements that the Court cannot accept as true on a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Among other things, the proposed SAC would assert without any supporting detail that "on information and belief, PIMCO accomplished those goals [of greater profit] by enabling and encouraging all of FGMC's worst practices." SAC ¶ 21. The SAC goes on to describe changes that allegedly gave "PIMCO" insight into FGMC's operations after the 2015 equity investment by the private fund for which PIMCO LLC was an investment manager, summarily alleging that "[t]hrough the above actions, PIMCO exercised its control over FGMC and directly caused the false certifications and false claims of FGMC." SAC ¶ 190. These unsupported conclusions cannot substitute for the particularity the FCA requires. *Hopper*, 588 F.3d at 1327-28.

Relator attempts to rely on an unpublished decision from a federal court in California to urge that "a venture capital investor" can be held liable under the FCA. *United States ex rel. Ebu-Isaac v. Insys Therapeutics*, No. 2:16-CV-7937, 2021 BL 327115 (C.D. Cal. June 9, 2021). The *Insys* court denied the motion to dismiss due to concrete allegations that went far beyond identifying the "investor" as the owner of the company that submitted the allegedly false claims. The defendants in *Insys* included a drug manufacturer, the distributor who marketed and delivered the drug to doctors and patients, and the parent company of the distributor.

*Insys* centered on the manufacturer and distributor's joint effort to promote its

fentanyl drug for off-label uses in violation of Medicare/Medicaid statutes. The

complaint in *Insys* included particularized allegations, including excerpts from

emails where the parent company's executives negotiated on the distributor's behalf.

*Id.* at *9. By contrast to the SAC, the *Insys* complaint detailed the parent company's

involvement in submitting off-label medication for reimbursement:

> BelHealth promoted the use of Linden Care to INSYS to
> facilitate the large scale distribution [of] SUBSYS [the
> fentanyl drug], directed Linden Care to dispense SUBSYS
> for contraindicated use and off-label use, directed Linden
> Care to dispense the incorrect initial dosages and to
> dispense with the instructions that instructed six-time per
> day use of SUBSYS rather than "as needed" use, and
> directed Linden Care to submit claims based on the
> widespread off-label use of SUBSYS. And as discussed
> below, BelHealth negotiated with INSYS on behalf of
> Linden Care.

*Id.* at *7.

As a result, the *Insys* court easily found falsity because the submission of a

drug expense to Medicare/Medicaid requires connecting the specific drug to its

FDA-authorized use, where instead, Linden Care specifically encouraged—and

submitted for government reimbursement—significantly higher dosages of fentanyl

than the dosage instructions printed on the label allowed. *Id.* at *10. *Insys* also found

materiality because at least one patient died as a result of this unsafe practice, and

20

the complaint alleged that Linden Care supplied the drugs even without a prescription. *Id.* at \*11.[4] There are no comparable allegations in the proposed SAC.

Finally, the SAC fails to show the actual connection between the allegedly false submissions and the government's decisionmaking that the FCA's "rigorous" materiality standard requires. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 192 (2016). Relator must allege that the "defendant intended that the false record or statement be material to the Government's decision to pay or approve the false claim." *Hopper*, 588 F.3d at 1330 (quoting *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 664-65 (2008)); *see* 31 U.S.C. § 3729(a)(1)(B). As the Supreme Court clarified, a submission is material only if the defendant knew the government would not pay if the defendant told the truth. *Escobar*, 579 U.S. at 195. According to the SAC's own allegations, neither of the PIMCO Defendants ever made any statements. Accordingly, the proposed SAC fails to state a claim against the PIMCO Defendants, and Relator's suggestion of filing a *Third* Amended Complaint should be rejected. *See* Cross-Motion at 19.

---

[4] To the extent Relator relies on this case to suggest that the particularity standard does not require pleading the actual presentment of a false claim to the government or making the false statement that caused the government's loss, binding precedent in this Circuit forecloses that argument. *Hopper*, 588 F.3d at 1327-29.

21

## **Conclusion**

For all the foregoing reasons, Relator's cross-motion seeking leave to amend

and file the SAC should be denied.

Respectfully submitted this 24th day of January, 2023.

/s/ Anthony C. Lake
Anthony C. Lake
Georgia Bar No. 431149
Craig A. Gillen
Georgia Bar No. 294838
GILLEN, WITHERS & LAKE, LLC
400 Galleria Parkway, SE
Suite 1920
Atlanta, GA 30339
Tel: (404) 842-9700
Fax: (404) 842-9750
Email: cgillen@gwllawfirm.com
aclake@gwllawfirm.com

-and-

SCHULTE ROTH & ZABEL LLP
Peter H. White
Noah N. Gillespie
901 15th Street NW, Suite 800
Washington, DC 20005

Admitted *Pro Hac Vice*

-and-

Kristine Manoukian
919 Third Avenue
New York, NY 10022

Admitted *Pro Hac Vice*

*Counsel for Pacific Investment Management Company LLC and PIMCO Investments LLC*

23

## **CERTIFICATION**

Counsel for Defendants Pacific Investment Management Company LLC and PIMCO Investments LLC certifies, pursuant to N.D. Ga. L. Civ. R. 7.1D, that the foregoing document has been prepared with one of the font and point selections (Times New Roman, 14 point) approved by the Court in N.D. Ga. L. Civ. R. 5.1B.

/s/ Anthony C. Lake

Anthony C. Lake
Georgia Bar No. 431149
Craig A. Gillen
Georgia Bar No. 294838
GILLEN, WITHERS & LAKE, LLC
400 Galleria Parkway, SE
Suite 1920
Atlanta, GA 30339
Tel: (404) 842-9700
Fax: (404) 842-9750
Email: cgillen@gwllawfirm.com
aclake@gwllawfirm.com

*Counsel for Pacific Investment Management Company LLC and PIMCO Investments LLC*

24

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on this 24th day of January 2023, the undersigned electronically filed and served the foregoing document, using the Court's CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

/s/ Anthony C. Lake
Anthony C. Lake
Georgia Bar No. 431149
Craig A. Gillen
Georgia Bar No. 294838
GILLEN, WITHERS & LAKE, LLC
400 Galleria Parkway, SE
Suite 1920
Atlanta, GA 30339
Tel: (404) 842-9700
Fax: (404) 842-9750
Email: cgillen@gwllawfirm.com
       aclake@gwllawfirm.com

*Counsel for Pacific Investment Management Company LLC and PIMCO Investments LLC*

25