# Exhibit 7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* KARI CRUTCHER,<br><br>Plaintiff,<br><br>v.<br><br>FIRST GUARANTY MORTGAGE CORPORATION, PACIFIC INVESTMENT MANAGEMENT COMPANY LLC, PIMCO INVESTMENTS LLC, AARON SAMPLES, ANDREW PETERS, JILL WINTERS, and SUZY LINDBLOM,<br><br>Defendants. | Civil Action No.: 16-cv-3812-TWT<br><br><br><br><br>**Oral Argument Requested** |

**MEMORANDUM OF LAW IN SUPPORT OF PACIFIC INVESTMENT MANAGEMENT COMPANY LLC AND PIMCO INVESTMENTS LLC'S MOTION TO DISMISS THE SUPPLEMENTAL <u>SECOND AMENDED COMPLAINT</u>**

## Table of Contents

Preliminary Statement ................................................................. 1

Factual Background ....................................................................... 4

Argument ........................................................................................ 7

I.   The SSAC Fails to State an FCA Claim Against the PIMCO Defendants. .... 9

     A.   Relator's Alter Ego and Piercing the Corporate Veil Claims Fail. ....... 9

     B.   The SSAC Does Not Allege that Either of the PIMCO Defendants Made Any False Statement. ................................................. 12

         1.   Relator's Presentment Claim Fails. .......................................... 12

         2.   Relator's False Record Claim Fails. ......................................... 13

     C.   Regulatory Violations Do Not Amount to Fraud Under the FCA. ...... 14

II.  Relator's Actions in FGMC's Chapter 11 Case, and the Plan and Confirmation Order, Preclude Relator from Pursuing this Action Against the PIMCO Defendants. ................................................. 16

     A.   Relator Submitted Her Claim to the Exclusive Jurisdiction of the Bankruptcy Court. ........................................... 17

     B.   FGMC Is an Absent, Indispensable Party. ....................................... 17

     C.   The Permanent Injunction and Releases in FGMC's Bankruptcy Case Bar Relator's Claims in This Action. ......................................... 21

III. Relator's Claims Are Time-Barred. ............................................... 24

Conclusion .................................................................................. 25

# Table of Authorities

**Cases**                                                                 **Page(s)**

*Ala. State Fed'n of Lab. v. McAdory*,
    325 U.S. 450 (1945)........................................................................21

*Allison Engine Co. v. United States ex rel. Sanders*,
    553 U.S. 662 (2008).......................................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................7

*United States ex rel. Atkins v. McInteer*,
    470 F.3d 1350 (11th Cir. 2006) ........................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................7

*Bradley v. Sebelius*,
    621 F.3d 1330 (11th Cir. 2010) ......................................................20

*Brady v. Walsh*,
    No. 2:21-cv-763-SPC-MRM, 2022 WL 2104292 (M.D. Fla. June
    10, 2022) .......................................................................................25

*Bruce v. U.S. Bank, Nat'l Ass'n*,
    770 F. App'x 960 (11th Cir. 2019)............................................24, 25

*Bryant v. Avado Brands, Inc.*,
    187 F.3d 1271 (11th Cir. 1999) ........................................................2

*C.F. Tr., Inc. v. First Flight LP*,
    580 S.E.2d 806 (Va. 2003) .............................................................23

*Cent. Va. Cmty. Coll. v. Katz*,
    546 U.S. 356 (2006).......................................................................17

*Cheatle v. Rudd's Swimming Pool Supply Co.*,
    360 S.E.2d 828 (Va. 1987) ...............................................................9

ii

*United States ex rel. Clausen v. Lab'y Corp. of Am., Inc.*,
  290 F.3d 1301 (11th Cir. 2002) ......................................................7, 8

*Corsello v. Lincare, Inc.*,
  428 F.3d 1008 (11th Cir. 2005) ...........................................................7

*Curry v. Sellers*,
  No. 5:17-cv-00424-MTT-CHW, 2019 WL 4720985 (M.D. Ga.
  Sept. 26, 2019) ...................................................................................25

*Dana v. 313 Freemason*,
  587 S.E.2d 548 (Va. 2003) ................................................................11

*Universal Health Servs., Inc., v. United States ex rel. Escobar*,
  579 U.S. 176 (2016)...........................................................8, 14, 15, 16

*Fid. Nat'l Title Ins. Co. of N.Y. v. Bozzuto*,
  227 B.R. 466 (E.D. Va. 1998) ............................................................23

*Florida Wildlife Federation Inc. v. U.S. Army Corps of Engineers*,
  859 F.3d 1306 (11th Cir. 2017) .........................................................18

*Focus on the Fam. v. Pinellas Suncoast Transit Auth.*,
  344 F.3d 1263 (11th Cir. 2003) ....................................................18, 20

*Hopper v. Solvay Pharms. Inc.*,
  590 F. Supp. 2d 1352 (M.D. Fla. 2008),
  *aff'd*, 588 F.3d 1318 (11th Cir. 2009)..................................... *in passim*

*Jackson v. Bellsouth Telecomms.*,
  372 F.3d 1250 (11th Cir. 2004) ...........................................................8

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011).............................................................................2

*K.T. v. Royal Caribbean Cruises, Ltd.*,
  931 F.3d 1041 (11th Cir. 2019) ...........................................................2

*Kansas v. Colorado*,
  533 U.S. 1 (2001)...............................................................................20

*Krupski v. Cost Crociere S.p.A.*,
    560 U.S. 538 (2010)..................................................................................25

*La Grasta v. First Union Secs., Inc.*,
    358 F.3d 840 (11th Cir. 2004) ..............................................................24

*Mathews v. Eldridge*,
    424 U.S. 319 (1976)..................................................................................20

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950)..................................................................................21

*Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.*,
    187 F.3d 439 (4th Cir. 1999) .................................................................23

*O'Hazza v. Exec. Credit Corp.*,
    431 S.E.2d 318 (Va. 1993) .....................................................................10

*United States ex rel. Patel v. Fid. Deposit & Disc. Bank*,
    No. 3:19-cv-1824, 2022 WL 17726308 (M.D. Pa. July 27, 2022).....................19

*United States ex rel. Schutte v. SuperValu Inc.*,
    143 S. Ct. 1391 (2023)..............................................................................12

*United States ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc.*,
    191 F. Supp. 2d 17 (D.D.C. 2002) .......................................................10

*Sino-US Inv. & Mgmt. Consultant v. Rhee*,
    No. CV-20-8597-AB-MRW, 2021 WL 5020469 (C.D. Cal. Mar. 9,
    2021) .........................................................................................................19

*Steyr-Daimler-Puch of Am. Corp. v. Pappas*,
    852 F.2d 132 (4th Cir. 1988) .................................................................23

*Thermoset Corp. v. Bldg. Materials Corp. of Am.*,
    849 F.3d 1313 (11th Cir. 2017) .............................................................21

*Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen &*
    *Assistants' Local 349*,
    427 F.2d 325 (5th Cir. 1970) .................................................................21

*United States v. Carrington Mortg. Servs., LLC*,
 No. 1:16-cv-00920-RLY-MJD, 2022 WL 1059478 (S.D. Ind. Mar.
 9, 2022) ...........................................................................................................15, 16

*United States v. Paddock*,
 187 F.2d 271 (5th Cir. 1951) ...........................................................................17

*Urquilla-Diaz v. Kaplan Univ.*,
 780 F.3d 1039 (11th Cir. 2015) ........................................................................14

*XY Plan. Network, LLC v. SEC*,
 963 F.3d 244 (2d Cir. 2020) ...............................................................................2

**Statutes**

28 U.S.C. § 1334 ..................................................................................................17

31 U.S.C. § 3729(a)(1)(A) .............................................................................12, 13

31 U.S.C. § 3729(a)(1)(B) .............................................................................13, 14

31 U.S.C. § 3729(b)(1).........................................................................................8

31 U.S.C. § 3729(b)(4).........................................................................................8

31 U.S.C. § 3731(b)(1)........................................................................................24

**Rules**

Fed. R. Civ. P. 12(b)(7)......................................................................................18

Fed. R. Civ. P. 15(c)(1)(C) ................................................................................25

Fed. R. Civ. P. 19(b) ..........................................................................................20

Fed. R. Civ. P. 19(b)(1).......................................................................................20

Fed. R. Civ. P. 19(b)(3).......................................................................................20

Fed. R. Civ. P. 19(b)(4).......................................................................................20

## Filings

Am., Modified and Restated Combined Disclosure Statement and
Chapter 11 Plan of First Guaranty Mortgage Corporation and
Debtor Affiliate, In re First Guaranty Mortgage Corp., Bankr. Dkt.
671-1 (D. Del. Nov. 2, 2022) ....................................................................3, 22, 24

Findings of Fact, Conclusions of Law, and Order (I) Approving
Disclosures on a Final Basis and (II) Confirming the Am.
Combined Disclosure Statement and Chapter 11 Plan of First
Guaranty Mortgage Corporation and Debtor Affiliate, In re First
Guaranty Mortgage Corp., Bankr. Dkt. 671
(D. Del. Nov. 2, 2022) .............................................................................3, 23, 24

Mot. for Order Authorizing the Destruction of Certain Records
Pursuant to Bankruptcy Code Section 105 and 363, In re First
Guaranty Mortgage Corp., Bankr. Dkt. 844 (D. Del. June 15, 2023) ............2, 11

Op. and Order, United States ex rel. Crutcher v. First Guaranty
Mortgage Corp., ECF No. 93 (N.D Ga. June 15, 2023) ......................................7

Order, United States ex rel. Crutcher v. First Guaranty Mortgage
Corp., ECF No. 88 (N.D Ga. Apr. 12, 2023) .................................................6, 7

Pl.-Relator Kari Crutcher's Rule 41 Notice of Voluntarily Dismissal,
United States ex rel. Crutcher v. First Guaranty Mortgage Corp.,
ECF No. 70 (N.D Ga. Jan 1, 2023) .....................................................................6

Proof of Claim, In re First Guaranty Mortgage Corp., Bankr. Dkt.
Claim #93 (D. Del. Sept. 20, 2022), *as amended*, Claim #124 (D.
Del. Sept. 28, 2022). ....................................................................................3, 17

*Qui Tam* Pl. Kari Crutcher's Mot. for Limited Relief from the
Permanent Inj. of the Debtors' Confirmed Chapter 11 Plan to
Allow Her to File a Mot. to Transfer Her *Qui Tam* Bankr. Dkt. 712
(D. Del. Dec. 13, 2022) .......................................................................................20

*Qui Tam* Pl. Kari Crutcher's Mot. for Limited Relief from the
   Permanent Inj. of the Debtors' Confirmed Chapter 11 Plan to (1)
   Allow Her to File a Mot. to Transfer Her Q*ui Tam* Action to the
   District of Delaware and (2) to Pursue the *Qui Tam* Action Solely
   to the Limits and Proceeds of Insurance, In re First Guaranty
   Mortgage Corp., Bankr. Dkt. 833 (D. Del. June 15, 2023) ................................20

Supplemental Second Am. Compl. and Demand For a Jury Trial,
   United States ex rel. Crutcher v. First Guaranty Mortgage Corp.,
   ECF No. 94 (N.D Ga. June 15, 2023)....................................................................1

The United States' Notice of Consent to Dismissal as to Defs.
   Samples, Winters, and Lindblom, United States ex rel. Crutcher v.
   First Guaranty Mortgage Corp., ECF No. 87 (N.D Ga. Apr. 4,
   2023) ......................................................................................................................6

Voluntary Pet. for Non-Individuals Filing for Bankruptcy, In re First
   Guaranty Mortgage Corp., Bankr. Dkt. 1 (D. Del. June 30, 2022) ...................11

## Other Authorities

*PIMCO LLC, Form ADV Part 2A Brochure*, SEC (March 31, 2022),
   https://adviserinfo.sec.gov/firm/brochure/104559 ...........................................1, 2

PIMCO LLC, https://www.pimco.com (last visited June 29, 2023) .........................2

**Preliminary Statement**

The facts alleged in the Supplemental Second Amended Complaint (ECF No. 94) (the "SSAC") confirm that Defendants Pacific Investment Management Company LLC ("PIMCO LLC") and PIMCO Investments LLC ("PI" and, together with PIMCO LLC, the "PIMCO Defendants") had no role in any claim for a payment that First Guaranty Mortgage Corporation ("FGMC") allegedly submitted to the Government, and fail to establish any basis for the PIMCO Defendants' purported liability. The sparse allegations regarding the PIMCO Defendants fail to meet any standard for stating a claim, let alone the heightened pleading standards that apply to the False Claims Act ("FCA"). Accordingly, the SSAC must be dismissed.

The SSAC is premised on a flawed characterization of the relationship between the PIMCO Defendants and FGMC. The SSAC incorrectly alleges that the PIMCO Defendants "bought the majority of FGMC and gained control over FGMC" in 2015 and "own[] [sic] 100 percent of FGMC's equity." SSAC ¶¶ 189, 204. Neither PIMCO Defendant ever owned or controlled FGMC.

PIMCO LLC serves as the investment manager or adviser to various funds and accounts, which are separate legal entities with their own investment strategies. PIMCO LLC *Form ADV Part 2A Brochure, SEC* (March 31, 2022) ("PIMCO LLC

1

Form ADV");[1] *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 138 (2011) (explaining the difference between an investment adviser and its advisory clients). PI is a limited purpose broker-dealer that does not invest in or operate businesses and has no relationship with FGMC. *See* PIMCO LLC *Form ADV*; PIMCO LLC, https://www.pimco.com (last visited June 29, 2023); *XY Plan. Network, LLC v. SEC*, 963 F.3d 244, 248 (2d Cir. 2020) (comparing broker-dealers and investment advisers). At no point has either of the PIMCO Defendants invested in, owned, operated, or controlled FGMC. (*E.g.*, Bankr. Dkt. 844[2] at 2-3.) Kari Crutcher ("Relator") and her counsel are well aware of these facts from their active participation in FGMC's bankruptcy case. Nonetheless, the SSAC attempts to mislead the Court and manufacture ownership and control of FGMC by the PIMCO Defendants where none exists.

Relator's focus has always been on FGMC. Shortly after FGMC filed for chapter 11, Relator submitted her FCA claim against FGMC (the "Claim") to the bankruptcy court where FGMC's chapter 11 case is pending (the "Bankruptcy

---

[1] Available at https://adviserinfo.sec.gov/firm/brochure/104559. On a motion to dismiss, the Court may take judicial notice of "public records," including SEC filings. *K.T. v. Royal Caribbean Cruises, Ltd.*, 931 F.3d 1041, 1048 (11th Cir. 2019); *see Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999).
[2] In this brief all citations to "Bankr. Dkt." refer to the filed docket entries in FGMC's Bankruptcy Case, available online via https://www.kccllc.net/fgmc.

Court"). (Bankr. Dkt. Claim #93 (Sept. 20, 2022), *as amended*, Claim #124 (Sept. 28, 2022)). The Bankruptcy Court subsequently entered an order (Bankr. Dkt. 671, the "Confirmation Order") confirming FGMC's chapter 11 plan (Bankr. Dkt. 671-1, the "Plan"). The Confirmation Order permanently enjoined Relator from commencing or continuing any action or proceeding against FGMC, its bankruptcy estate or its assets, and from taking any act contrary to the Plan, other than litigating the allowance of her Claim in the Bankruptcy Court. (Confirmation Order ¶ 39, Bankr. Dkt. 671 at 34-35.) Likewise, the Confirmation Order released the PIMCO Defendants from any claims that FGMC may have had against them, including derivative claims, and permanently enjoined any action or proceeding relating to such released claims. (Plan § 16.2(a), Bankr. Dkt. 671-1 at 90.) Relator did not appeal the Confirmation Order and the Plan has been substantially consummated.

Nonetheless, Relator continues to prosecute her claim in this Court, asserting alter ego and veil-piercing theories that belong to FGMC and were released and enjoined by the Bankruptcy Court against the PIMCO Defendants. Even if such claims were not released, to prevail here Relator would have to establish that FGMC violated the FCA before any claim could reach the PIMCO Defendants. Yet the Plan and Confirmation Order bar her from proving a violation by FGMC. Because FGMC

is an absent, indispensable party, and for the other reasons set forth herein, the PIMCO Defendants should be dismissed with prejudice.

## Factual Background

FGMC, a Virginia corporation, was a direct endorsement lender that the U.S. Department of Housing and Urban Development ("HUD") authorized to underwrite and endorse home mortgages insured by the Federal Housing Administration ("FHA"). (SSAC ¶¶ 1-4, 46-48). FGMC conducted underwriting diligence on every mortgage it endorsed for FHA insurance. (*See* SSAC ¶¶ 65-71.) Pursuant to HUD requirements, FGMC input data about the mortgages into a software program. (*Id.* ¶ 65.) If the program issued an "accept/approve" rating, FGMC was still required to conduct further diligence regarding those mortgages. (SSAC ¶ 67.) FGMC also conducted further diligence on the mortgages that instead received a "refer" rating. (SSAC ¶ 71.) In other words, no matter what rating the software produced, FGMC was obligated to, and did, perform diligence on every loan.

To become a direct endorsement lender, FGMC certified that it "has and will comply with the requirements of the Secretary of Housing and Urban Development . . . with regard to using and maintaining its FHA lender approval." (SSAC ¶ 84.) FGMC annually certified that, among other things, it "complied with and agree[d] to continue to comply with HUD-FHA regulations . . . [and] [would] conform[] to

4

all HUD-FHA regulations necessary to maintain its HUD-FHA approval." (SSAC ¶ 85.) Finally, for each mortgage, FGMC certified that the loan complied with HUD rules and was "eligible for HUD mortgage insurance under the Direct Endorsement program." (SSAC ¶ 87.) The SSAC does not identify any other statements FGMC made in connection with the mortgage loans it endorsed for FHA insurance.

Relator claims that she worked at FGMC from September to November 2014. (SSAC ¶ 34.) During those three months, Relator alleges that her FGMC supervisor gave her instructions that she disagreed with regarding how to calculate the borrower's income and establish the credit history for a borrower who lacked a credit score. (SSAC ¶¶ 129-136, 151-153.) Relator provides no other concrete allegations and the SSAC fails to demonstrate that she had personal knowledge of any events after November 2014.

The SSAC does not allege that the PIMCO Defendants ever made any statements to or presented any claims for payment to the Government. Further, the SSAC admits that neither of the PIMCO Defendants was ever a direct endorsement lender, much less ever submitted initial, annual, or loan-level certifications.

Recognizing that the PIMCO Defendants did not violate the FCA, the SSAC nonetheless asserts that FGMC was the "alter ego" of the PIMCO Defendants and that they "should not receive the protections of the corporate veil." (SSAC ¶¶ 206-

207.) The SSAC further alleges that "PIMCO" became FGMC's "new rich uncle," (SSAC ¶ 192), when the PIMCO Defendants "bought the majority of FGMC," held "at least two seats" on FGMC's board of directors, and ultimately obtained "100 percent of FGMC's equity." (SSAC ¶¶ 189, 203-204.) The SSAC also alleges that "PIMCO" used its "control" to cause FGMC to switch communication systems (SSAC ¶ 193) and that "PIMCO received reports" and "asked questions to fully understand the responsibilities and work" of FGMC's "credit risk" department (SSAC ¶¶ 197-198). The SSAC alleges that FGMC "was able to increase the originations by over 60 percent while increasing profit by 15-20 percent." (SSAC ¶ 195.) Importantly, Relator does not assert that the PIMCO Defendants made false records or presented false claims.

On January 11, 2023, Relator sought to voluntarily dismiss certain individual defendants. ECF No. 70. The Government consented to such dismissals, noting that it had determined "based on [the] currently available information" accumulated during its multi-year investigation, "that such a dismissal is commensurate with the public interest and the matter does not warrant the continued expenditure of government resources to pursue *or monitor* the action." ECF No. 87 at 2 (emphasis added).[3] The Court subsequently dismissed those individual defendants (ECF No.

---

[3] Citations to court filings refer to their ECF-generated page numbers for clarity.

88) and allowed Relator to file the SSAC, reserving ruling on the merits of the PIMCO Defendants' motion to dismiss until after briefing on motions to dismiss the newly-filed SSAC. ECF No. 93 at 10 n.1. The PIMCO Defendants now move to dismiss the SSAC for failure to state a claim.

## <u>Argument</u>

Relator bears the burden to plead facts sufficient to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004).

To satisfy the FCA's particularity requirements, an FCA complaint must identify "an actual claim for payment" and not just a "scheme." *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006). Payment on a false claim is the "*sine qua non*" of an FCA claim. *United States ex rel. Clausen v. Lab'y. Corp. of Am., Inc.*, 290 F.3d 1301, 1308-09 (11th Cir. 2002). "Because it is the submission of a fraudulent claim that gives rise to liability under the [FCA], that submission must be pleaded with particularity and not inferred from the circumstances." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1013 (11th Cir. 2005). Accordingly, Relator must allege "facts as to time, place, and substance of the defendant's alleged

fraud[:] specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Clausen*, 290 F.3d at 1310. The FCA's "causation" prong requires that Relator plausibly assert that ***a false statement*** caused the alleged loss. *Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1330 (11th Cir. 2009) (the complaint must "link the alleged false statements to the government's decision to pay false claims.").

The FCA's scienter and materiality requirements are "rigorous." *Universal Health Servs., Inc., v. United States ex rel. Escobar*, 579 U.S. 176 (2016) at 192. While the FCA does not require allegations of a specific intent to defraud, it does require Relator to plead with particularity each defendant's knowledge, which under the FCA means actual knowledge or reckless disregard or deliberate ignorance about a materially false statement. 31 U.S.C. § 3729(b)(1). "The materiality standard is demanding. The FCA is not an all-purpose antifraud statute, or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Escobar*, 579 U.S. at 194; *see* 31 U.S.C. § 3729(b)(4). In fact, a unanimous Supreme Court rejected arguments that "any statutory, regulatory, or contractual violation is material so long as the defendant knows that the Government ***would be entitled to refuse*** payment were it aware of the violation." *Escobar*, 579 U.S. at 195 (emphasis added). Instead, the defendant must know that the Government would ***actually***

*refuse* to pay. *Id*. The SSAC satisfies none of these requirements as to the PIMCO Defendants, and, therefore, fails to state a claim upon which relief can be granted.

## I.    The SSAC Fails to State an FCA Claim Against the PIMCO Defendants.

The SSAC is clear that the PIMCO Defendants did not interact with the Government; underwrite mortgages, approve mortgages for FHA insurance, submit certifications to the Government, or present any claims for payment. Relator's own allegations thus establish that the PIMCO Defendants did not violate the FCA. Relator asserts, in conclusory fashion, that FGMC was the PIMCO Defendants' alter ego and seeks to pierce FGMC's corporate veil, but the SSAC fails to state a claim under those theories. (*See* SSAC ¶¶ 189-207.) Further, the purported regulatory violations alleged in the SSAC do not amount to FCA violations.

### A.    Relator's Alter Ego and Piercing the Corporate Veil Claims Fail.

As FGMC is a Virginia corporation, Virginia law governs Relator's alter ego and veil-piercing claims. (SSAC ¶ 28.) Under Virginia law, "a corporation is a legal entity entirely separate and distinct from the shareholders or members who compose it. This immunity of stockholders is a basic provision of statutory and common law and supports a vital economic policy underlying the whole corporate concept." *Cheatle v. Rudd's Swimming Pool Supply Co.,* 360 S.E.2d 828, 831 (Va. 1987). Accordingly, imposing vicarious liability under any theory "is an

extraordinary act to be taken only when necessary to promote justice." *O'Hazza v. Exec. Credit Corp.*, 431 S.E.2d 318, 320 (Va. 1993).

The Virginia Supreme Court "has been very reluctant to permit veil piercing," *C.F. Trust, Inc. v. First Flight LP*, 580 S.E.2d 806, 810 (Va. 2003), and recognizes that the ability to pursue alter ego or veil-piercing theories against other defendants "is dependent upon first obtaining a judgment against the corporation." *Dana v. 313 Freemason*, 587 S.E.2d 548, 553 (Va. 2003). Then, the party seeking "to disregard the corporate entity must show that [another party] controlled or used the corporation to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage." *O'Hazza*, 431 S.E.2d at 320. "Piercing the corporate veil is justified when the unity of interest and ownership is such that the separate personalities of the corporation and [another party] no longer exist and to adhere to that separateness would work an injustice." *Id.* at 320-21. As it relates to an FCA action, allegedly "defrauding the federal government is not the same as defrauding a corporation's shareholders, and only the latter is sanctionable through the piercing of the corporate veil." *United States ex rel. Siewick v. Jamieson Sci. & Eng'g., Inc.*, 191 F. Supp. 2d 17, 22 (D.D.C. 2002).

Even accepting the SSAC's allegations as true, Relator's alter ego and veil-piercing claims fail for several reasons. First, Relator is barred by the Plan injunction

from obtaining a judgment against FGMC—a prerequisite to pursuing alter ego and veil-piercing claims under Virginia law. *Dana*, 587 S.E.2d at 553. Second, even if Relator could obtain a judgment here against FGMC, Relator's allegations do not support an inference that the PIMCO Defendants controlled FGMC (as legally required for an alter ego claim), or had unity of interest and ownership with FGMC (as legally required to pierce FGMC's corporate veil). Relator and her counsel are well aware of FGMC's corporate structure and that neither PIMCO Defendant ever owned or controlled FGMC based on their active involvement in FGMC's chapter 11 case.[4] Rather, B2 FIE XI LLC provided prepetition bridge financing to FGMC (Bankr. Dkt. 671-1, §4.1(c)(iv)) and LVS II SPE XXXIV LLC provided postpetition operating liquidity to FGMC to enable it to operate during chapter 11 (*Id.* §5.2(b)). Both are affiliates of B2 FIE IV LLC, which owned FGMC's equity. (Id. §4.1(c)(iv)). PIMCO LLC is an investment manager of the private investment fund that owned the equity of FGMC, and of the above-referenced pre- and post-petition lenders of FGMC. Each of these is a separate legal entity with its own investment strategy, and none are parties to this action. (Bankr. Dkt. 844 ¶ 4.) PI has no relationship to FGMC whatsoever. Given that neither of the PIMCO Defendants was

---

[4] The List of the Equity Security Holders and the Corporate Ownership Statement, which were attached to FGMC's voluntary chapter 11 petition disclose the equity owners of FGMC. (Bankr. Dkt. 1.)

11

ever a part of FGMC's corporate structure, much less ever had any "unity of interest" with or control over FGMC, Relator's theories of alter ego and veil piercing fail.

Relator uses the term "PIMCO" vaguely in an attempt to obfuscate the distinction between the PIMCO Defendants and FGMC's lenders and owners. Her disregard of FGMC's corporate structure and speculative allegations of control do not satisfy the rigorous pleading standards required to entitle her to the extraordinary remedies that she seeks here.

## B. The SSAC Does Not Allege that Either of the PIMCO Defendants Made Any False Statement.

Relator must plead with particularity how a false statement by each Defendant reached the Government and caused it to pay amounts it did not owe. While the FCA provides two alternative theories under which this showing may be made, both require a showing "that a specific fraudulent claim was in fact submitted to the government." *Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1328 (11th Cir. 2009). Relator here fails to state a claim against the PIMCO Defendants under either theory.

### 1. Relator's Presentment Claim Fails.

To state a claim under the "presentment" theory of Section 3729(a)(1)(A), Relator must allege with particularity both that the PIMCO Defendants submitted a false claim to the government for payment, and that the PIMCO Defendants "knew" at the time that the claim was false. *Hopper*, at 1326; *United States ex rel. Schutte v.*

*SuperValu Inc.*, 143 S. Ct. 1391, slip op. at 9 (2023); *see also* 31 U.S.C. §3729(a)(1)(A) (requiring that each Defendant "knowingly present[ed], or cause[ed] to be presented, a false or fraudulent claim for payment or approval."). The SSAC does not allege that the PIMCO Defendants submitted any claim of any kind to the Government, much less the "what," "where," "when," and "how" the PIMCO Defendants knowingly did so. Accordingly, Relator has not alleged a presentment claim against the PIMCO Defendants.

### 2. Relator's False Record Claim Fails.

To state a claim under the "false record" theory of Section 3729(a)(1)(B), Relator must allege with particularity that the PIMCO Defendants' false statement caused the government to pay amounts it did not owe, and that the "defendant[s] intended that the false record or statement be material to the Government's decision to pay or approve the false claim." *Hopper*, at 1330 (quoting *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 664-65 (2008)); *see* 31 U.S.C. § 3729(a)(1)(B).

To state a false record claim against the PIMCO Defendants, Relator must establish that the PIMCO Defendants "knowingly ma[de], use[d], or cause[d] to be made or used," a materially false record or statement, and must "link the alleged false statements to the government's decision to pay false claims." 31 U.S.C. §

3729(a)(1)(B); *Hopper*, 588 F.3d at 1330. Because the SSAC does not allege that the PIMCO Defendants made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim, Relator's false record claim against them must be dismissed.

### C.   Regulatory Violations Do Not Amount to Fraud Under the FCA.

Relator's reliance on "federal regulation and HUD Handbooks," "civil case law," the "level of care," and "due diligence predicated on sound underwriting principles" (SSAC ¶¶ 62-65) further demonstrate that the SSAC does not state a viable FCA claim. As the Supreme Court observed, "billing parties are often subject to thousands of complex statutory and regulatory provisions. Facing [FCA] liability for violating any of them would hardly help would-be defendants anticipate and prioritize compliance obligations." *Escobar*, 579 U.S. at 192. FCA liability "arises from the submission of a fraudulent claim to the government, not the disregard of government regulations or failure to maintain proper internal procedures." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1045 (11th Cir. 2015).

In attempting to find an FCA violation, Relator contends that FGMC submitted initial, annual, and loan-level certifications regarding its compliance with FHA regulatory requirements. (SSAC ¶¶ 84-87.) None of FGMC's alleged certifications constituted a claim for payment, and none is alleged to have anything

14

to do with the PIMCO Defendants. In fact, the Government would only pay if a mortgage holder later submitted an insurance claim. *United States v. Carrington Mortg. Servs., LLC,* No. 1:16-cv-00920-RLY-MJD, 2022 WL 1059478, at *6 (S.D. Ind. Mar. 9, 2022) (citing *Escobar*, 579 U.S. at 195). The Supreme Court recognizes that an FCA claim cannot rest on generic certifications of compliance with applicable regulations because the FCA "does not adopt such an extraordinarily expansive view of liability." *Escobar*, 579 U.S. at 196.

Relator asserts that the "data entered into [the software] is material to the endorsement of the loan because [the software] is an algorithm that evaluates the overall creditworthiness of a mortgage applicant based on the data supplied by the lender." SSAC ¶ 68. That allegation is both circular and disconnected from the test for materiality. At most, the SSAC supports an inference that the Government never saw the data that lenders entered into the software. Importantly, the SSAC admits that the software is only a starting point, and that every loan is subject to further underwriting by FGMC regardless of the software's rating. *See* SSAC ¶¶ 65-71.

If a specific regulatory requirement is critical, the government will act in response to a violation, rather than on the basis of a boilerplate certification. That FGMC remained a direct enrollment lender and processed a large volume of mortgages during and after the relevant time period here indicates that the

Government did not consider the conduct alleged in the SSAC significant enough to deny payment. *Carrington*, 2022 WL 1059478, at *6 (citing *Escobar*, 579 U.S. at 195) (that defendant remained a direct endorsement lender was "strong evidence that the requirements were not material"). The allegations about FGMC's regulatory compliance thus fail to state an FCA claim—against FGMC or any other party. *Escobar*, 579 U.S. at 195; *Hopper v. Solvay Pharms. Inc.*, 590 F. Supp. 2d 1352, 1361-62 (M.D. Fla. 2008), *aff'd*, 588 F.3d 1318 (11th Cir. 2009).

## II.    Relator's Actions in FGMC's Chapter 11 Case, and the Plan and Confirmation Order, Preclude Relator from Pursuing this Action Against the PIMCO Defendants.

Relator submitted a proof of claim against FGMC to the Bankruptcy Court based on the allegations in the SSAC. That act gave the Bankruptcy Court exclusive jurisdiction to adjudicate the merits of her identical claims in this action. Accordingly, there is no claim against FGMC that can be adjudicated in this Court. Moreover, the Plan's permanent injunction bars Relator from pursuing this action against FGMC anywhere. Given that the permanent injunction prevents this action from being pursued against FGMC, the absence of FGMC as an indispensable party warrants dismissal of this action against the PIMCO Defendants.

Further, pursuant to the Confirmation Order, the PIMCO Defendants were released by FGMC from all claims, causes of action and remedies, including all

16

derivative claims that could be asserted by or on behalf of FGMC. Thus, Relator's FCA claims against the PIMCO Defendants, which are derivative claims belonging to FGMC, were released under the Plan. Even if not released, any such claims belong to FGMC, which the Plan and Confirmation Order enjoin Relator from pursuing.

### A.      Relator Submitted Her Claim to the Exclusive Jurisdiction of the Bankruptcy Court.

As discussed above, Relator submitted the FCA claim she initially commenced in this Court to the Bankruptcy Court. Bankr. Dkt. Claim #93, *as amended*, Claim #124. As a result, the Bankruptcy Court obtained exclusive jurisdiction over that claim. 28 U.S.C. § 1334; *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 362-64 (2006). The claims against the PIMCO Defendants alleged here require a finding that FGMC violated the FCA. However, the determination of that issue falls within the exclusive jurisdiction of the Bankruptcy Court. As such, nothing remains to be adjudicated in this Court. *See United States v. Paddock*, 187 F.2d 271, 278 (5th Cir. 1951) (finding that a matter submitted to a bankruptcy court is placed in its exclusive jurisdiction and it is a "serious interference" with that jurisdiction for any court to carry on any proceeding with respect to such a claim).

### B.      FGMC Is an Absent, Indispensable Party.

The absence of FGMC, as an indispensable party, mandates dismissal here. An action must be dismissed where the inability to obtain a judgment against an

17

indispensable party makes it unfair to enter a judgment against the participating defendants. Fed. R. Civ. P. 12(b)(7). "First, the court must ascertain under the standards of Rule 19(a) whether the [party] in question is one who should be joined if feasible." *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1280 (11th Cir. 2003). "If the [party] should be joined but cannot be . . . then the court must inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue." *Id.*

The Confirmation Order and Plan's permanent injunction bars Relator from seeking a judgment against FGMC. As such, FGMC cannot be "joined" even though it is a named party. The Eleventh Circuit recently addressed a similar situation in *Florida Wildlife Federation Inc. v. U.S. Army Corps of Engineers*, 859 F.3d 1306, 1309 (11th Cir. 2017). In that case, the court was asked to determine the scope of authority as between the state and federal government where no judgment could be entered against the state entities due to sovereign immunity. *Id.* at 1319. Because a finding against one defendant necessarily implied a finding against the other, the court found that the state entities were indispensable parties, and no judgment against the *federal* entities could be entered in the absence of the state entities. *Id.* at 1319-20. Similarly, FGMC is an indispensable party here because establishing FGMC's liability is necessary before a determination as to liability by the PIMCO

18

Defendants can be made. As Relator cannot obtain a judgment against FGMC here, this action against the PIMCO Defendants must be dismissed.

A recent case dismissing an action for a similar failure to join a debtor is instructive. *Sino-US Inv. & Mgmt. Consultant v. Rhee*, No. CV-20-8597-AB-MRW, 2021 WL 5020469, at *11 (C.D. Cal. Mar. 9, 2021). In that case, the owner and principal of a debtor was a necessary party because California agency law renders a principal liable for a judgment against a debtor. *Id.* at *9. A finding of fraud against the principal, as an agent and officer of the debtor, would likewise bind the debtor. *Id.* In that case, impact of any findings regarding any one defendant on the other defendants rendered the debtor indispensable, such that proceeding against the non-debtors separately would not resolve "disputes by wholes." *Id.* at *10.

Here, the SSAC alleges that any false claims were submitted only by FGMC. (*E.g.*, SSAC ¶ 169 ("FGMC submitted the following loans to HUD that resulted in claims paid by HUD to FGMC.").) The party that submitted the allegedly false claims is a necessary party in an FCA case. *United States ex rel. Patel v. Fid. Deposit & Disc. Bank*, No. 3:19-cv-1824, 2022 WL 17726308, at *13 (M.D. Pa. July 27, 2022). Accordingly, FGMC's presence in this action is necessary to afford complete and fair relief. The Confirmation Order and Plan's permanent injunction prevent

Relator from obtaining the predicate findings against FGMC that are necessary to find an FCA violation by the PIMCO Defendants.

The terms of Fed. R. Civ. P. 19(b) demonstrate that this action cannot continue in FGMC's absence. *Focus on the Fam.*, 344 F.3d at 1280. Proceeding without FGMC would be deeply prejudicial to FGMC by denying the protection of the Bankruptcy Court's Order prohibiting the pursuit of any claim or action against FGMC outside of the Bankruptcy Court's claims resolution process. Fed. R. Civ. P. 19(b)(1); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Proceeding without FGMC likewise would prejudice the PIMCO Defendants, because Relator must first prove her claim against FGMC. Fed. R. Civ. P. 19(b)(3). Relator is not without remedy, however, as she has submitted the FCA Claim to the Bankruptcy Court, which is vested with exclusive jurisdiction to resolve that claim. Fed. R. Civ. P. 19(b)(4). Accordingly, this action must be dismissed.

The Court cannot avoid the prejudice of proceeding without FGMC by characterizing FGMC as merely a "nominal" party, as Relator has requested in the Bankruptcy Court. (Bankr. Dkt. 712 at 1-4; Bankr. Dkt. 833 at 5-10.) A nominal party is one from whom no relief is sought. *E.g.*, *Kansas v. Colorado*, 533 U.S. 1, 8-9 (2001) (a State and its Attorney General were the "real parties in interest" and not "nominal part[ies]" because they asserted claims in their own right); *Bradley v.*

*Sebelius,* 621 F.3d 1330, 1332 n.3 (11th Cir. 2010) (an executor is a nominal party, who brings suit to obtain a remedy for "the estate and the decedent's survivors [who are] the real parties in interest"). Indispensable parties like FGMC, by contrast, cannot be nominal parties. *Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen & Assistants' Local 349*, 427 F.2d 325, 327 (5th Cir. 1970) ("nominal" parties are those who are "neither necessary nor indispensable"); *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 849 F.3d 1313, 1318 (11th Cir. 2017) (an action must be dismissed if a party whose liability must be established is absent).

The SSAC asserts that FGMC, not the PIMCO Defendants, violated the FCA. Under these circumstances, proceeding without FGMC raises due process concerns. *Ala. State Fed'n of Lab. v. McAdory*, 325 U.S. 450, 461 (1945) ("The requirements for a justiciable case or controversy are no less strict in a declaratory judgment proceeding than in any other type of suit."); *see also Mathews*, 424 U.S. at 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard"); *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Accordingly, the Plan's permanent injunction requires dismissing this lawsuit.

## C.  The Permanent Injunction and Releases in FGMC's Bankruptcy Case Bar Relator's Claims in This Action.

The Confirmation Order and the Plan permanently enjoin Relator from:

21

> (a) ***commencing*** or ***continuing*** in any manner, directly or
> indirectly, any action or other proceeding of any kind
> against [FGMC], [FGMC's estate], . . . or Liquidating
> Trust Assets with respect to [the Claim]; [and] (b) the
> enforcement, attachment, collection, or recovery by any
> manner or means, directly or indirectly, of ***any judgment,***
> ***award, decree, or order*** against [FGMC], [FGMC's
> estate] . . . [or any of the Liquidating Trust Assets] with
> respect to [the Claim];

(Confirmation Order ¶ 39, Bankr. Dkt. 671 at 34-35 (emphasis added); Plan

§ 16.3(a), Bankr. Dkt. 671-1 at 92 (same)). Based on the permanent injunction,

Relator cannot pursue this action or obtain a judgment against FGMC.

Additionally, under the Plan, FGMC released (the "Debtor Release"):

> any and all claims, obligations, rights, suits, damages,
> Causes of Action, remedies, and liabilities whatsoever,
> including any ***derivative*** claims, asserted or assertable on
> behalf of [FGMC] . . . whether known or unknown,
> foreseen or unforeseen, asserted or unasserted, accrued or
> unaccrued, matured or unmatured, determined or
> determinable, disputed or undisputed, liquidated or
> unliquidated, or due or to become due, existing or
> hereinafter arising, in law, equity, or otherwise, that
> [FGMC] would have been legally entitled to assert in its
> own right, or on behalf of [Relator], based on or relating
> to, or in any manner arising from . . . [FGMC] (including
> the management, ownership, or operation thereof), . . . the
> subject matter of, or the transactions or events giving rise
> to, any Claim . . . treated in the Plan [including the Claim].

(Plan § 16.2(a), Bankr. Dkt. 671-1 at 90 (emphasis added)). The Debtor Release is

binding on Relator. This binding release was approved by the Confirmation Order

22

and was an "integral part of the consideration [that was] provided in exchange for the compromises and resolutions embodied in the Plan." (Bankr. Dkt. 671 at 10.)

The SSAC alleges that the PIMCO Defendants should be treated as the alter ego of FGMC. (*See* SSAC ¶ 206.) Under Virginia law, "an alter ego claim . . . is property of the corporation" and thus becomes a part of the corporation's bankruptcy estate when the corporation files for bankruptcy protection. *Steyr-Daimler-Puch of Am. Corp. v. Pappas*, 852 F.2d 132, 135 (4th Cir. 1988); *Fid. Nat'l Title Ins. Co. of N.Y. v. Bozzuto*, 227 B.R. 466, 471 (E.D. Va. 1998) ("under Virginia law, alter ego claims are the property of the debtor"). Accordingly, the alleged alter ego claims against the PIMCO Defendants, which are part of the FGMC bankruptcy estate, were released as derivative claims through the Debtor Release.

Similarly, Relator's veil piercing claims belong to FGMC's bankruptcy estate. *C.F. Tr., Inc. v. First Flight LP*, 580 S.E.2d 806, 810 (Va. 2003). Otherwise "selected creditors" might be able to "plead their way out of bankruptcy court," which "would unravel the bankruptcy process and undermine an ordered distribution of the bankruptcy estate." *Nat'l Am. Ins. Co. v. Ruppert Landscaping Co*., 187 F.3d 439, 442 (4th Cir. 1999). Accordingly, as with the alter ego claims, Relator's veil-piercing claims are derivative claims that were released under the Plan.

Finally, because Relator's alter ego and veil-piercing claims constitute assets of the Liquidating Trust, the Plan's permanent injunction precludes Relator from pursuing such claims. (*See* Bankr. Dkt. 671-1 at 31, Plan § 3 ("Liquidating Trust Assets' means all assets of the Debtors . . . [including] all Causes of Action the Debtors hold or may hold against any Person or Entity as of the Effective Date (after giving effect to the [Debtor Release])"); *see also* Bankr. Dkt. 671 at 19, 25, 34, Confirmation Order ¶¶ 11, 20, 39.)

## III. Relator's Claims Are Time-Barred.

The statute of limitations for Relator's FCA claim is six years. 31 U.S.C. § 3731(b)(1).[5] Dismissal on statute of limitations grounds is appropriate where "it is apparent from the face of the complaint that the claim is time-barred." *La Grasta v. First Union Secs., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004); *see also Bruce v. U.S. Bank, Nat'l. Ass'n.*, 770 F. App'x 960, 965 (11th Cir. 2019) (dismissal is appropriate when "allegations contained in [the] complaint, as well as the documents central to plaintiff's claim, relate to actions" defendants took prior to the limitations period).

---

[5] The FCA has a longer limitation period for actions brought within three years of when the "official of the United States charged with responsibility to act in the circumstances" should reasonably have known the material facts. *Id.* Relator's 2016 complaint put the United States on notice, foreclosing this limitation period.

24

The conduct asserted in the SSAC long predates when Relator first added the PIMCO Defendants as parties in June 2022. For example, SSAC cites directives and handbooks from 2004/2005, Relator's personal observations are from her time at FGMC in 2014, and the defaulted loans she lists date back to 2010. SSAC ¶¶ 73-76, 40, 175. Such stale allegations predate the statute of limitations period and cannot support a claim against the PIMCO Defendants. Relator's time-barred claims cannot be revived and must be dismissed with prejudice.[6] *Bruce*, 770 F. App'x at 967; *see also Brady v. Walsh*, No. 2:21-cv-763-SPC-MRM, 2022 WL 2104292, at *3 (M.D. Fla. June 10, 2022).

## Conclusion

For all the foregoing reasons, this action should be dismissed as to Pacific Investment Management Company LLC and PIMCO Investments LLC with prejudice.

---

[6] Relator's claims are not salvaged by the relation-back doctrine, which applies only to a mistake of identity, not the deliberate choice not to sue a defendant originally. Fed. R. Civ. P. 15(c)(1)(C); *Krupski v. Cost Crociere S.p.A.*, 560 U.S. 538, 549 (2010); *Curry v. Sellers*, No. 5:17-cv-00424, 2019 BL 364383 at *5 (M.D. Ga. Sep. 26, 2019) ("Since [plaintiff] has not sought to *change* a party named initially in his earlier pleadings but has instead sought simply to *add* entirely new parties to the suit, relation back does not apply.").

Respectfully submitted this 29th day of June, 2023.

/s/ Craig A. Gillen
Craig A. Gillen
Georgia Bar No. 294838
Anthony C. Lake
Georgia Bar No. 431149
GILLEN, WITHERS & LAKE, LLC
400 Galleria Parkway, SE
Suite 1920
Atlanta, GA 30339
Tel: (404) 842-9700
Fax: (404) 842-9750
Email: cgillen@gwllawfirm.com
aclake@gwllawfirm.com

-and-

SCHULTE ROTH & ZABEL LLP
Peter H. White
Noah N. Gillespie
555 13th Street NW, Suite 6W
Washington, DC 20004

Admitted *Pro Hac Vice*

-and-

Kristine Manoukian
919 Third Avenue
New York, NY 10022

Admitted *Pro Hac Vice*

*Counsel for Pacific Investment Management Company LLC and PIMCO Investments LLC*

# **CERTIFICATION**

Counsel for Defendants Pacific Investment Management Company LLC and PIMCO Investments LLC certifies, pursuant to N.D. Ga. L. Civ. R. 7.1D, that the foregoing document has been prepared with one of the font and point selections (Times New Roman, 14 point) approved by the Court in N.D. Ga. L. Civ. R. 5.1B.

*/s/ Craig A. Gillen*
Craig A. Gillen
Georgia Bar No. 294838
Anthony C. Lake
Georgia Bar No. 431149
GILLEN, WITHERS & LAKE, LLC
400 Galleria Parkway, SE
Suite 1920
Atlanta, GA 30339
Tel: (404) 842-9700
Fax: (404) 842-9750
Email: cgillen@gwllawfirm.com
aclake@gwllawfirm.com

*Counsel for Pacific Investment Management Company LLC and PIMCO Investments LLC*

27

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on this 29th day of June 2023, the undersigned electronically filed and served the foregoing document, using the Court's CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

*/s/ Craig A. Gillen*
Craig A. Gillen
Georgia Bar No. 294838
Anthony C. Lake
Georgia Bar No. 431149
GILLEN, WITHERS & LAKE, LLC
400 Galleria Parkway, SE
Suite 1920
Atlanta, GA 30339
Tel: (404) 842-9700
Fax: (404) 842-9750
Email: cgillen@gwllawfirm.com
        aclake@gwllawfirm.com

*Counsel for Pacific Investment Management Company LLC and PIMCO Investments LLC*
