## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> FIRST GUARANTY MORTGAGE CORPORATION, *et al.*,[1] <br><br> Liquidating Debtors. | Chapter 11 <br><br> Case No. 22-10584 (CTG) <br><br> (Jointly Administered) <br><br> Hearing Date: November 3, 2023 at 10:00am (ET) <br> Obj. Deadline: October 19, 2023 at 4:00pm (ET) |

### MOTION OF THE PIMCO PARTIES FOR CONTEMPT FOR VIOLATIONS OF THE COURT'S ENFORCEMENT ORDER AND CONFIRMATION ORDER

Pacific Investment Management Company LLC and PIMCO Investments LLC (collectively, the "PIMCO Parties") hereby submit this motion (this "Motion for Contempt") to compel Relator's compliance with this Court's order entered on September 5, 2023 [D. I. 951] (the "Enforcement Order") enforcing the Plan and Confirmation Order[2] and to compensate the PIMCO Parties for the ongoing harm of Relator's continued defiance of this Court's orders.

### PRELIMINARY STATEMENT

1. On September 5, 2023, this Court held that the Plan and Confirmation Order "conclusively, absolutely, unconditionally, irrevocably, and forever released" "[a]ny and all claims, causes of action, liabilities, remedies, and/or theories relating to alter ego, veil piercing, and/or any form of vicarious liability, including those asserted in the Qui Tam Litigation, against any of the PIMCO Parties (collectively, the 'Released Claims')." D. I. 951, ¶¶ 2–3.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number in the jurisdiction were: First Guaranty Mortgage Corporation ("FGMC") (9575); and Maverick II Holdings, LLC ("Maverick") (5621). The service address for FGMC is 13901 Midway Road, Ste. 102-334, Dallas, Texas 75244.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Confirmation Order, D. I. 671, or the Plan, D. I. 671-1, or the Motion of Pacific Investment Management Company LLC and PIMCO Investments LLC to Enforce the Chapter 11 Plan and Confirmation Order (the "Motion to Enforce"), D. I. 900, as applicable.

2. The Confirmation Order provided that FGMC released:

> any and all claims, . . . including derivative claims, asserted or assertable on behalf of [FGMC], . . . based on or relating to, or in any manner arising from, in whole or in part, [FGMC] (including the management, ownership, or operation thereof), . . . the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, [and] the business or contractual arrangements between [FGMC] and any Released Party[.]

D. I. 671 at 29–31. No party appealed the Confirmation Order, which is final, binding, and conclusive.

3. "In accordance with the Plan and Confirmation Order, Relator, and all other persons, are enjoined, barred, and estopped from asserting, pursuing, or prosecuting the Released Claims in any forum, including in the Qui Tam Litigation." D. I. 951, ¶ 4.

4. This Court "directed" Relator "to immediately cease and refrain from any further acts to commence or continue, in any manner or in any place, any action, or other proceeding, including the Qui Tam Litigation, to prosecute, assert, or enforce the Released Claims asserted against the PIMCO Parties." *Id.* This Court further "directed" Relator "to take all actions necessary to dismiss the Released Claims from the Qui Tam Litigation, without prejudice to the rights of Relator with respect to any claim that may be asserted consistent with the terms of the Plan, Confirmation Order, and this Order." *Id.*, ¶ 5.

5. In direct violation of this Court's orders, Relator has not taken any steps to dismiss the Released Claims from the Qui Tam Litigation. To the contrary, Relator has continued to pursue that action aggressively, opposing lifting the stay on briefing of the PIMCO Parties' motion to dismiss, filing a motion to compel the production of insurance policies regarding claims that she was ordered to dismiss and enjoined from continuing; and asked the District Court to transfer the barred claims to the District Court for the District of Delaware so that "one court can properly

interpret the scope of the release FGMC received in bankruptcy" and hear Relator's appeal of the Enforcement Order. Qui Tam Dkt. 106 at 8.

6. The Enforcement Order and Confirmation Order remain in full effect, are valid, and are enforceable, notwithstanding Relator's appeal of the Enforcement Order. This Court should hold Relator in contempt, impose daily fines until she comes into compliance, and award the PIMCO Parties their reasonable attorney's fees and expenses.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b). This Motion involves a core proceeding as it concerns, *inter alia*, a Chapter 11 plan confirmed by order of this Court and the enforcement of this Court's determination of what constitutes property of the Debtors' estates. *See In re SemCrude L.P.*, 796 F.3d 310, 316 (3d Cir. 2015) ("Because [defendant's] motion to enjoin is related to the Chapter 11 reorganization plan and requires a determination that [plaintiffs'] claims are property of the Litigation Trust, the Bankruptcy Court had subject-matter jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A).").

8. In addition, "[t]his Court retain[ed] jurisdiction with respect to all matters arising from or related to the implementation of the [Enforcement Order]." D. I. 951, ¶ 8. Further, pursuant to Paragraph 53 of the Confirmation Order and Section 18 of the Plan, this Court retained "exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases, the Plan, and each of the Plan Documents." Confirmation Order ¶ 53; *see also* Plan § 18.

9. In accordance with Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the PIMCO Parties confirm their consent to the entry of a final order by this Court in connection with this Motion for Contempt to the extent that it is later determined that this Court, absent consent of the parties,

cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

10. The PIMCO Parties respectfully request that this Court hold Relator in contempt and impose monetary sanctions sufficient to motivate Relator to comply with the Enforcement Order and the Confirmation Order, and to compensate the PIMCO Parties for the harm of noncompliance, including through (a) an award of attorney's fees and costs the PIMCO Parties have expended to enforce the Court's orders, by, among other things, bringing the Motion to Enforce and this Motion for Contempt and in forcing the PIMCO Parties to move to lift the stay of briefing and oppose the motion to compel in the District Court, and (b) the imposition of a daily fine for each day that passes until Relator achieves compliance.

## BASIS FOR RELIEF

11. This Court has jurisdiction to enforce its own orders. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009); *see also In re Resorts Int'l, Inc.*, 372 F.3d 154, 168–69 (3d Cir. 2004) ("[W]here there is a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement, retention of postconfirmation bankruptcy court jurisdiction is normally appropriate."); *In re Midstate Mortg. Inv., Inc.*, 105 F. App'x 420, 422–23 (3d Cir. 2004) (affirming bankruptcy court's decision to enjoin creditors of the debtor from prosecuting a state-court action or instituting any other action that might interfere with the plan or releases).

12. Additionally, "[a] bankruptcy court has statutory authority to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of' the Bankruptcy Code." *Law v. Siegel*, 571 U.S. 415, 420 (2014) (quoting 11 U.S.C. § 105(a)). This general

authority extends to imposing sanctions, bounded only by the express language of the specific provisions of the Code. *Id.*; *In re Ross*, 858 F.3d 779, 783–84 (3d Cir. 2017) (same).

13. As the United States Supreme Court has explained:

> it is firmly established that the power to punish for contempts is inherent in all courts. This power reaches both conduct before the court and that beyond the court's confines, for the underlying concern that gave rise to the contempt power was not . . . merely the disruption of court proceedings. Rather, it was disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial.

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *see also Joubert v. ABN AMRO Mortg. Grp., Inc.*, 411 F.3d 452, 455 (3d Cir. 2005) (holding that "a contempt proceeding pursuant to § 105(a) in bankruptcy court" was the "lone remedy" for alleged violations of Code §§ 524 and 506(a)).

14. "Under traditional principles of equity practice, courts have long imposed civil contempt sanctions to 'coerce the defendant into compliance' with an injunction or 'compensate the complainant for losses' stemming from . . . noncompliance with an injunction." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) (quoting *United States v. Mine Workers*, 330 U.S. 258, 303–04 (1947)); *see also Mine Workers v. Bagwell*, 512 U.S. 821, 829 (1994). Because "civil contempt sanctions," aim "to compel future compliance with a court order, [they] are considered coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *Bagwell*, 512 U.S. at 827.

15. The moving party must establish three elements by clear and convincing evidence to impose contempt, *John T. v. Del. Cty. Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003): "(1) that a valid order of the court existed; (2) that the [party charged] had knowledge of the order; and (3) that the [party charged] disobeyed the order." *Marshak v. Treadwell*, 595 F.3d 478, 485 (3d Cir. 2009). "[A]n alleged contemnor's behavior need not be willful in order to contravene the applicable decree." *FTC v. Lane Labs-USA, Inc.*, 624 F.3d 575, 582 (3d Cir. 2010).

5

16. A party can avoid contempt if it can show "substantial compliance" by demonstrating that (1) its violation was merely "technical" or "inadvertent" and (2) resulted despite having "taken all reasonable steps to comply with the valid court order." *Id.* at 591.

## I. Relator Must Be Held in Contempt.

17. There can be no dispute that the three elements needed to establish contempt exist here: (1) this Court entered the Confirmation Order and the Enforcement Order, (2) Relator had actual knowledge of both orders, and (3) Relator flagrantly violated this Court's express directions in its orders.

18. This Court entered the Confirmation Order approving the Plan, confirming the propriety and effectiveness of the Debtor/Estate Release, and imposing a permanent injunction on Relator and all other persons forbidding any actions contrary to the Plan or Confirmation Order. *See generally* D. I. 671. The Effective Date of the Plan occurred on November 6, 2022. D. I. 678, ¶ 2. Neither Relator nor any other party appealed the Confirmation Order.

19. The PIMCO Parties brought the Motion to Enforce "to enforce the Plan and Confirmation Order, including the Debtor/Estate Release and injunctions therein, and enjoin Relator from pursuing any further, in any manner, the Released Claims" that were already permanently foreclosed by the Confirmation Order. D. I. 900, ¶ 45. Relator objected to the Motion to Enforce and was heard at the hearing on the Motion to Enforce.

20. On September 5, 2023, the Court entered the Enforcement Order, interpreting and enforcing the Confirmation Order and applying binding precedent, to hold that alter ego and veil piercing claims and any other form of vicarious liability asserted against the PIMCO Parties in the Qui Tam Litigation were squarely within the Debtor/Estate Release, had been conclusively released, and are now permanently enjoined. *See generally* D. I. 951. This Court incorporated into the Enforcement Order "the reasons set forth on the record during the September 5, 2023

6

hearing." *Id.* at 2.  This Court explained that it was "satisfied from the review of the operative complaint that the claims it asserts are claims that are under the rationale of *Emoral* and my decision in *TPC*, which simply seeks to give effect to the rationale of *Emoral* estate causes of action" that belonged to FGMC, and which were released and are now permanently enjoined by the Confirmation Order.  Hr'g Tr. 67:14–18.

21. This Court described precisely how Relator must comply with the Confirmation Order.  Relator was "directed" "to take all actions necessary to dismiss the Released Claims from the Qui Tam Litigation."  D. I. 951, ¶ 5.  While such a dismissal is "without prejudice to the rights of Relator with respect to any claim that may be asserted consistent with the terms of the Plan, Confirmation Order, and this [Enforcement] Order," Relator is forever "enjoined, barred, and estopped from asserting, pursuing, or prosecuting the Released Claims in any forum, including in the Qui Tam Litigation."  *Id.*, ¶¶ 4–5.  Accordingly, the Released Claims must be dismissed, and Relator's blatant disregard for this Court's orders should not be countenanced.  *See id.*

22. Additionally, this Court "directed" Relator "to immediately cease and refrain from any further acts to commence or continue, in any manner or in any place, any action, or other proceeding, including the Qui Tam Litigation, to prosecute, assert, or enforce the Released Claims asserted against the PIMCO Parties."  *Id.*, ¶ 4.  Thus, even in the interim, before Relator finished "tak[ing] all actions necessary to dismiss the Released Claims," Relator was specifically enjoined from continuing, prosecuting, asserting, or enforcing the Released Claims in any manner anywhere.

23. Relator was fully aware of the Confirmation Order and the Enforcement Order.  This Court found that "all parties required to be given notice of the Plan and the Confirmation Hearing . . . have been given due, proper, timely, and adequate notice thereof in accordance with

the Plan Procedures Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law, and such parties have had an opportunity to appear and be heard with respect thereto." D. I. 671 at 5–6. Relator appeared and was heard during the confirmation hearing on October 31, 2022. Relator responded to the PIMCO Parties' Motion to Enforce, and was heard at the September 5, 2023 hearing on that motion. Although not necessary to establish contempt, Relator was properly served with a copy of the Enforcement Order. D. I. 957.

24. Relator has not taken any action to dismiss any of the Released Claims from the Qui Tam Litigation. Relator has the power to dismiss claims that she has asserted. Fed. R. Civ. P. 41(a)(1). She can also obtain dismissal by order of the District Court "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Relator has not filed any voluntary dismissal nor any motion seeking the Georgia District Court's approval of a dismissal. Relator's actions demonstrate she will not comply with this Court's orders.

25. Following the entry of the Enforcement Order, the PIMCO Parties moved in the Georgia District Court to lift the stay of briefing on their motion to dismiss the Qui Tam Litigation to inform that court of this Court's rulings regarding the Released Claims. In contravention of this Court's orders, Relator opposed lifting the stay of briefing, arguing that the Qui Tam Litigation as a whole "should remain stayed pending disposition of Plaintiff-Relator's cross-motion to transfer and Plaintiff Relator' [sic] appeal in the Bankruptcy Court." Qui Tam Dkt. 106 at 9. Relator also continued to pursue the barred Qui Tam Litigation in direct violation of this Court's orders, moving to transfer the case—including the Released Claims—to the District of Delaware and to compel production of documents from the PIMCO Parties. *Id.* at 16–22. Relator is pressing for additional

discovery to "continue," "prosecute," "assert," and "enforce" Released Claims, in violation of this Court's orders, all the while requiring the PIMCO Parties to expend additional costs in response.

26. Relator cannot assert that she has substantially complied with this Court's orders here. As the court in *Lane Labs* found on remand, contempt was appropriate—notwithstanding the drug company's good faith and that it had taken all reasonable steps to comply—because the violations went to the "core substance" of the order's obligations and "were not the result of oversight or neglect" and therefore were not merely technical or inadvertent. *FTC v. Lane Labs-USA, Inc.*, No. 00-cv-3174 (DMC), 2011 WL 5828518, at *10–11 (D.N.J. Nov. 18, 2011).

27. Relator plainly has not "taken all reasonable steps to comply with the valid court order." *Lane Labs*, 624 F.3d at 591. The "core substance" of the Enforcement Order was that Relator must dismiss the Released Claims in the Qui Tam Litigation and no longer pursue them in any forum. The Enforcement Order applied the Debtor/Estate Release in the Confirmation Order to Relator's claims in the Qui Tam Litigation. Relator's failure to take any action to dismiss the Qui Tam Litigation with respect to the PIMCO Parties, but rather to actively resist dismissal while pressing for additional discovery, is not technical or inadvertent. Relator should be ordered to demonstrate compliance by a date certain and to pay daily fines thereafter until she achieves full compliance, and should be required to compensate the PIMCO Parties for the harm her noncompliance is causing and will continue to cause until this Court's orders are carried out.

28. Relator's appeal of the Enforcement Order does not affect her obligation to comply with the Enforcement Order (or indeed the Confirmation Order). Nor does it deprive this Court of the power to enforce the Enforcement Order. *See, e.g.*, *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987); *In re Swift Energy Co.*, No. 16-404 (GMS), 2016 WL 3566962, at *5 (D. Del. June 26, 2016). The Enforcement Order remains binding and in full force and effect

notwithstanding Relator's notice of appeal. Further, as this Court found, the Enforcement Order merely "gives effect to the Confirmation Order." Hr'g Tr. 67:19–20. The Confirmation Order already held FGMC's broad release of the PIMCO Parties was proper and effective. D. I. 671 at 29–30. And the Confirmation Order is indisputably a final order that is fully binding and conclusive on, and enforceable against, Relator.

29. Relator's belated attempt to collaterally attack the Confirmation Order will not succeed, and the appeal of the Enforcement Order will not alter the Confirmation Order in any respect. "Claim preclusion commonly occurs when a party fails to raise issues in the plan confirmation process that could have been addressed in that forum, or fails to appeal the confirmation order; in such instances, a collateral attack on the validity of a provision of that plan, such as a non-debtor release or injunction" must fail. *E.g.*, *In re Continental Airlines*, 203 F.3d 203, 208–09 & n.3 (3d Cir. 2000) (collecting authority); *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194–95 (3d Cir. 1999) (collecting authority) (claims that were "already raised, or could have been raised, in their objection to confirmation" are precluded and cannot excuse noncompliance with a prior confirmation order); *In re Dial Bus. Forms, Inc.*, 283 B.R. 537, 542 (B.A.P. 8th Cir. 2002) ("once a plan is confirmed, neither a debtor nor a creditor may assert rights that are inconsistent with its provisions").

30. Moreover, the Delaware District Court hearing the appeal of the Enforcement Order must adhere to *Emoral* as binding precedent, just as this Court did. *Emoral* itself concluded that alter ego and veil piercing claims are estate claims that creditors lack standing to bring. *In re Emoral, Inc.*, 740 F.3d 875, 879–80 (3d Cir. 2014). That binding precedent controls here.

31. Prior to filing this Motion for Contempt, the PIMCO Parties' counsel sent a letter to Relator's counsel seeking confirmation that Relator will dismiss the PIMCO Parties from the

Qui Tam Litigation in compliance with the Court's prior orders and that, in the absence of such confirmation, the PIMCO Parties would file this Motion for Contempt. Relator's counsel responded that she disagrees that she has violated the Court's order. This Court should find Relator in contempt for her continued violations of the Enforcement Order and the Confirmation Order.

**II.     The Court Should Award the PIMCO Parties Their Reasonable Attorney's Fees.**

32.    "Compensatory awards seek to ensure that the innocent party receives the benefit of the injunction." *Robin Woods Inc. v. Woods*, 28 F.3d 396, 400 (3d Cir. 1994). The award should "restore the parties to the position they would have held had the injunction been obeyed." *Id.* (quoting *Hudson Transit Lines, Inc. v. Freund*, 509 F. Supp. 1172, 1178 (E.D.N.Y. 1981)).

33.    The Court has "wide discretion in fashioning a remedy" for civil contempt. *Id.* at 399 (quoting *Delaware Valley Citizens' Council v. Pennsylvania*, 678 F.2d 470, 478 (3d Cir. 1982)). Further, the Third Circuit has "reject[ed] the notion that a finding of willfulness is a prerequisite to an award of attorneys' fees against the violator of an injunction." *Id.*

34.    In *Robin Woods*, the District Court found that a doll designer and her new employer, a competitor, violated the non-compete provisions in the doll designer's prior employment agreement and in the court's injunction enforcing that agreement. *Id.* at 397–98. The court's order provided several specific instructions that restricted the designer's use of her name, to avoid consumer confusion between the two doll companies. *Id.* The designer determined, in consultation with counsel, that she could comply with the order by adopting a *nom de plume*. *Id.* at 398. However, when the new employer announced a new line of dolls, it publicly highlighted that the designs under that *nom de plume* were in fact the work of the designer, violating several provisions of the order. *Id.*

35.    The District Court held the designer and competitor in contempt and the Third Circuit affirmed, finding that "there is no ground to doubt" that the announcement made the very

identification the court's order had forbidden. *Id.* at 399. Contempt was appropriate notwithstanding the designer's good faith in seeking and following the advice of counsel because "good faith is not a defense to civil contempt." *Id.* The Third Circuit further rejected a substantial compliance defense because the designer and the competitor "consciously chose to associate Mrs. Woods with the dolls that Alexander [the competitor] would manufacture," in direct contradiction to the court's order. *Id.*

36. The Third Circuit further found "no basis for disturbing the award of attorneys' fees" in bringing the motion for contempt, and confirmed that "awards to cover the other expenses involved in demonstrating violations" were also appropriately "remedial." *Id.* at 400–01;[3] *In re Meyers*, 344 B.R. 61, 66 (Bankr. E.D. Pa. 2006) (imposing contempt and awarding attorney's fees and other costs against creditor who continued collection attempts following a discharge order).

37. Here, too, the Court should award the PIMCO Parties' reasonable attorney's fees and expenses in enforcing this Court's orders. To date, that includes the fees and expenses incurred in connection with (1) the Motion to Enforce, (2) this Motion for Contempt, (3) the motion to lift the stay of briefing in the district court, (4) Relator's cross-motions thereto in the district court, and (5) any communications and/or documents in connection with the foregoing.

38. As Relator conceded in the District Court, the Enforcement Order "merely reaffirm[ed] the Bankruptcy Court's prior orders," including the Confirmation Order. Qui Tam Dkt. 106 at 8. It was the Confirmation Order that imposed the permanent injunction that Relator is continuing to violate. The Court should award the PIMCO Parties their reasonable attorney's fees and expenses.

---

[3] The Third Circuit remanded for a recalculation of the reasonable expenses, given that the District Court had reduced attorney's fees in proportion to the former employer's success on their motion but had allowed 100% of the additional costs without a comparable proportionate reduction. *Id.* at 401.

**III.     The Court Should Impose a Daily Fine to Secure Relator's Compliance.**

39.     Given that Relator has not yet complied with the Enforcement Order and the Confirmation Order, the Court should impose daily fines for Relator's continued noncompliance sufficient to "coerce[] . . . compliance with the court's order[s]." *Bagwell*, 512 U.S. at 829.

40.     For example, the Third Circuit and the Delaware District Court affirmed the rulings of the Bankruptcy Court that imposed daily fines on a law firm and its principals for their failure to comply with the Bankruptcy Court's prior rulings.  Order, Dkt. 902, *Beskrone v. Wells Fargo Bank, N.A.*, Adv. No. 18-50384 (JTD) (Bankr. D. Del. May 26, 2021) ("*NNN I*"), *aff'd*, *In re NNN 400 Capitol Ctr. 16 LLC*, Civ. No. 21-816-CFC, 2022 WL 872643 (D. Del. Mar. 24, 2022) ("*NNN II*"), *aff'd*, Nos. 21-3013 & 22-1639, 2022 WL 17831445 (3d Cir. Dec. 21, 2022) ("*NNN III*").

41.     In that case, two individual lawyers who in fact operated separate law firms applied jointly to represent the debtor in that case under a single "fictitious trade name," and averred, as required, that the firm would not share the fees it earned with anyone else.  *NNN III*, 2022 WL 17831445, at *1.  In addition to splitting the fees between the underlying law firms, a broker agreed to pay the lawyers if the debtor refinanced its real estate property through him, in violation of the Bankruptcy Code and Bankruptcy Rules.  *Id.*  The Bankruptcy Court ordered the firm to pay the attorney's fees of the moving party in bringing these issues to light, and ultimately disqualified the firm and ordered it to disgorge the fees it had earned as counsel for the debtors.  *Id.*  Each of those orders had "directed" the firm to pay the amounts owing within 30 days of each order.  *NNN II*, 2022 WL 872643, at *4–5.  When the firm failed to pay these amounts, the Bankruptcy Court held the firm in contempt, ordered the firm to pay the amounts due under the prior orders within one week, and further required the law firm to "pay the sum of $1,000 per day [of delay beyond that deadline] until this Order is fully and finally satisfied."  *NNN I*, Dkt. 902, ¶ 4.

42. The District Court affirmed, finding that the law firm must make the required payments, as "[t]hat is precisely the relief the Contempt Order directed." *NNN II*, 2022 WL 872643, at *8. The District Court concluded that "[a]ll of the elements were met [for contempt], and Appellant does not allege otherwise." *Id.* at *10. The District Court rejected the firm's argument that a second hearing was necessary after finding the firm in contempt before imposing a sanction. *Id.* at 11–12. The Third Circuit affirmed entirely, rejecting the firm's baseless contention that "the sanctioned parties should be viewed as one law firm when it is to their benefit, but two law firms when that is to their benefit." *NNN III*, 2022 WL 17831445, at *3. The Third Circuit held that the hearing on the contempt motion provided "sufficient notice and a full opportunity to be heard," sufficient to allow imposing contempt and sanctions. *Id.*; *see also In re Shuma*, 124 B.R. 668, 678 (Bankr. W.D. Pa. 1991) (imposing $200 daily fine on each individual client for continued resistance to orders that are "no longer appealable").

43. Here, too, the notice and hearing afforded by this Motion for Contempt will be more than sufficient to permit the Court to impose daily fines for any continued noncompliance. Relator can readily avoid these fines, even after entry of an order granting this Motion for Contempt, simply by following this Court's prior orders, each of which remain in full force and effect.

## **RESERVATION OF RIGHTS**

44. This Motion for Contempt is submitted without prejudice to, and with a full reservation of, all of the PIMCO Parties' rights, claims, causes of action, defenses, and remedies, at law or in equity, including under the Plan and the Confirmation Order and/or in connection with the Qui Tam Litigation.

45. Without limiting the generality of the foregoing, the filing of this Motion for Contempt does not constitute: (i) a waiver of any of the PIMCO Parties' rights and remedies against any person or entity, including, but not limited to, Relator; (ii) a waiver of any obligation

owed to the PIMCO Parties; (iii) an election of remedies (including, but not limited to, an election of remedies that waives or otherwise affects any other remedies); or (iv) a waiver or limitation of any procedural or substantive rights, or any procedural or substantive defenses, to any claim that may be asserted against the PIMCO Parties.

46. The PIMCO Parties further reserve the right to amend, modify, or supplement this Motion for Contempt in writing or orally at any hearing, to respond to any pleadings filed by any other party, and to introduce evidence at or prior to any hearing relating to the Motion for Contempt, in each case, without limiting any other rights of the PIMCO Parties.

**NOTICE**

47. Notice of this Motion for Contempt will be given to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to Relator: Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, DE 19801 (Attn. R. Stephen McNeill, Jesse L. Noa, and Andrew L. Brown); Cohen Ziffer Frenchman & McKenna, 1325 Avenue of the Americas, New York, NY 10019 (Attn: Chelsea Ireland and Morgan Greene); Stevens & Lee, 1500 Market Street, East Tower, Suite 1800, Philadelphia, PA 19102 (Attn. Charles E. Leasure III); Thomas & Solomon LLP, 693 East Avenue, Rochester, NY 14607 (Attn. J. Nelson Thomas and Jonathan W. Ferris); Bracker & Marcus LLC, 3225 Shallowford Road, Suite 1120, Marietta, GA 30063 (Attn. Julie K. Bracker and Jason Marcus); and Black & Buffone PLLC, 1400 Eye Street NW, Suite 200, Washington, DC 20005 (Attn. Samuel John Buffone, Jr.); (c) counsel to the Liquidating Trust: Dentons US LLP, 601 S. Figueroa Street, Suite 2500, Los Angeles, CA 90017 (Attn. Samuel R. Maizel and Tania M. Moyron), 1221 Avenue of the Americas, New York, NY 10020 (Attn. Claude D. Montgomery) and 1900 K Street, NW, Washington, DC 20006 (Attn. David F. Cook); and Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899 (Attn. Laura Davis Jones, Timothy P. Cairns and Mary F.

Caloway); (d) counsel to the Cash Flow DIP Lender and the Prepetition Bridge Lender, Greenberg Traurig, LLP, 222 Delaware Avenue, Suite 1600, Wilmington, DE 19801 (Attn. Dennis A. Meloro) and 77 West Wacker Dr., Suite 3100, Chicago, IL 60601 (Attn. Nancy A. Peterman and Eric J. Howe); and (e) all parties who have requested notice pursuant to Bankruptcy Rule 2002.

48. A copy of this Motion for Contempt is available on this Court's website, at www.deb.uscourts.gov, and on the website managed by the Debtors' claims and noticing agent, KCC, at https://www.kccllc.net/fgmc.

## CONCLUSION

49. For the reasons set forth above, the PIMCO Parties respectfully request that this Court hold Relator in contempt for violating the Enforcement Order and Confirmation Order, order Relator to pay the PIMCO Parties' reasonable attorney's fees and expenses resulting from Relator's noncompliance with those orders, and order Relator to pay a daily fine for so long as her violations continue.

Dated: October 5, 2023

*/s/ Robert J. Stearn, Jr.*
Robert J. Stearn, Jr. (No. 2915)
Sarah E. Silveira (No. 6580)
Zachary J. Javorsky (No. 7069)
RICHARDS, LAYTON & FINGER P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone: 302-651-7700
Email: stearn@rlf.com
silveira@rlf.com
javorsky@rlf.com

-and-

SCHULTE ROTH & ZABEL LLP
Peter H. White
Noah N. Gillespie
555 13th Street NW, Suite 6W
Washington, DC 20004
Telephone: 202.729.7476
Email:  pete.white@srz.com
            noah.gillespie@srz.com

(Admitted *Pro Hac Vice*)

-and-

Kristine Manoukian (No. 5509)
Kelly V. Knight (Admitted *Pro Hac Vice* )
Paulina Piasecki (Admitted *Pro Hac Vice*)
919 Third Avenue
New York, NY 10022
Telephone:  212.756.2466
Email: kristine.manoukian@srz.com
            kelly.knight@srz.com
            paulina.piasecki@srz.com

*Counsel for Pacific Investment Management Company LLC and PIMCO Investments LLC*