**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| In re:<br><br>FIRST GUARANTY MORTGAGE CORP., et al,[1]<br><br>Debtors. | Chapter 11<br><br>Bankr. Case No. 22-10584 (CTG)<br>(Jointly Administered) |
| --- | --- |
| LORI BUCKLEY, GAYLE ZECH, ROBERTA MARTINEZ, JENNIFER JACKSON and JAMES DAVIES, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FIRST GUARANTY MORTGAGE CORP., et al.<br><br>Debtors. | Adv. Pro. No. 22-50387-CTG |

**JOINT MOTION PURSUANT TO 11 U.S.C. § 105 AND FED. R. BANKR. P. 7023 AND 9019 TO (I) APPROVE A SETTLEMENT PURSUANT TO FED. R. BANKR. P. 9019, (II) PRELIMINARILY APPROVE THE SETTLEMENT PURSUANT TO FED. R. BANKR. P. 7023, (III) APPROVE THE FORM AND MANNER OF SETTLEMENT NOTICE TO CLASS MEMBERS, (IV) SCHEDULE A FAIRNESS HEARING TO CONSIDER FINAL APPROVAL OF THE SETTLEMENT, (V) FINALLY APPROVE THE SETTLEMENT PURSUANT TO FED. R. BANKR. P. 7023 AFTER THE FAIRNESS HEARING, AND (VI) GRANT RELATED RELIEF**

The above-captioned Plaintiffs, Lori Buckley, Gayle Zech, Roberta Martinez, Jennifer Jackson, and James Davies (collectively, "Plaintiffs"), on behalf of themselves and the Class they represent, together with Tanya Meerovich of FTI Consulting, as liquidating trustee (the "Liquidating Trustee"), under the liquidating trust (the "Trust") created pursuant to the Amended, Modified and Restated Combined Disclosure Statement and Chapter 11 Plan of First

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: First Guaranty Mortgage Corporation (9575); and Maverick II Holdings, LLC (5621). The Debtors' mailing address is 13901 Midway Road, Ste. 102-334, Dallas, TX 75244.

Guaranty Mortgage Corporation and Debtor Affiliate (the "Plan") [Docket No. 671-1], and that certain trust agreement dated as of November 4, 2022 (the "Trust Agreement"), appointed in the chapter 11 cases (the "Chapter 11 Cases") of First Guaranty Mortgage Corporation (sometimes referred to as "FGMC", and together with its affiliated debtors in possession, the "Debtors" or "Defendants" and together with Plaintiffs, the "Parties"), by and through their respective counsel, hereby move (the "Joint Motion") this Court pursuant to Section 105 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 23 of the Federal Rules of Civil Procedure (the "Civil Rules"), made applicable hereto by Bankruptcy Rule 7023, for the entry of orders: (a) approving the *Settlement and Release Agreement* (the "Settlement Agreement" or the "Settlement")[2] among the Parties pursuant to Bankruptcy Rule 9019; (b) preliminarily approving the Settlement Agreement pursuant to Civil Rule 23; (c) approving the form and manner of notice to Class of the settlement; (d) scheduling a fairness hearing (the "Fairness Hearing") to consider final approval of the Settlement Agreement pursuant to Civil Rule 23; (e) after the Fairness Hearing, finally approving the Settlement Agreement pursuant to Civil Rule 23; and (f) granting related relief. In support of the Joint Motion, the Parties respectfully represent as follows:

## Preliminary Statement

1.     This Court should approve the Settlement Agreement as it is in the best interest of the Debtors, their creditors, and the Trust. The Settlement Agreement resolves a complex, multifaceted litigation that would require extensive additional discovery, is well above the "lowest level of reasonableness" and saves the Trust substantial litigation costs.

---

[2] A true copy of the Settlement Agreement is attached hereto as Exhibit A. Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Settlement Agreement.

2.      On June 30, 2022, Plaintiffs filed this class action adversary proceeding (the "WARN Action") against Defendants under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101-2109 (the "WARN Act") for recovery of damages of up to 60 days' pay and ERISA benefits for alleged violations of the WARN Act.  In the WARN Action, Plaintiffs assert that they and the other similarly situated employees are "aggrieved employees" as defined by the WARN Act, who were affected by a mass layoff on or about June 24, 2022, ordered by the Defendants, as a "single employer" without the provision of sixty (60) days advance written notice. Further, the Plaintiffs assert the Defendants failure to give the Class members at least 60 days' advance written notice of termination entitles Class Members to recover up to 60 days of wages and ERISA benefits from the Defendants.

3.      On September 30, 2022, FGMC filed its Answer and Affirmative Defenses to the Complaint (the "Answer") in which it denies violating the WARN Act and asserts various defenses and affirmative defenses to the WARN Action, including: (a) the "unforeseeable business circumstances" and "faltering company" statutory reductions to the WARN Act's sixty day notice requirement; (b) the "liquidating fiduciary" exception under the WARN Act and (c) the good faith "mitigation defense" based on FGMC's asserted belief that its actions complied with all provisions of the WARN Act and warrant reduction of any damages that may be assessed against it for a WARN Act violation.

4.      Plaintiffs assert that the priority-capped portion of Defendants' WARN Act liability of up to sixty (60) days' damages and benefits exceeds $4 million.  In exchange for a full release of claims arising under the WARN Act, the Settlement provides that the Liquidating Trustee shall pay $1,750,000 (the "Settlement Amount") to an administrator of Class Counsel's choice, who will in turn, distribute the Settlement Amount to the Class Members in accordance with the terms of the Settlement Agreement.

DE:4895-2321-3458.2 28311.001

5.      From the perspective of the Liquidating Trustee, who, pursuant to the Plan was granted the authority to settle disputed claims against the Debtors, the Settlement Agreement is fair and reasonable. The Settlement was reached after a formal mediation, and months of arms' length negotiations post-mediation. Without the settlement, the Trust would be forced to incur fees and costs in litigation that would delay the wind-down of the Trust.  Accordingly, the Court should approve the Settlement Agreement under Bankruptcy Rule 9019.

6.      For essentially the same reasons, the Settlement Agreement is also fair and reasonable to the Class Members.  Without the settlement, the Class Members could wait years for any payment on their alleged WARN Act claims, even if they were to prevail at trial and on appeal, and risk further depletion of the Trust through continued administrative and litigation costs.

7.      Finally, the Parties request a two-step approval process to facilitate notice to Class members. First, the Court would preliminarily approve the Settlement Agreement and the form of notice to be given to the Class Members, and, thereafter, Class Counsel would provide notice (the "Class Notice"), substantially in the form annexed hereto as Exhibit D to each Class Member that describes the Settlement Agreement and informs the Class Members of their right to object to the Settlement Agreement and of the deadline for objecting. Second, after service of the Class Notice, the Court would hold a Fairness Hearing to consider final approval of the Settlement Agreement.

8.      Based on the foregoing, and as set forth more fully below, the Parties submit that the Court should approve the Settlement Agreement and the procedures proposed in this Joint Motion.

DE:4895-2321-3458.2 28311.001

**JURISDICTION**

9.      The Court has jurisdiction over this Joint Motion under 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are section 105 of the Bankruptcy Code, and Bankruptcy Rules of Procedure 9019 and 7023.

**BACKGROUND**

10.      The Debtors operated as a full service, non-bank mortgage lender that originated residential mortgages through a national platform.

11.      On June 24, 2022, Debtors terminated more than 400 employees who reported to the Plano, Texas office.

12.      On June 29, 2022, laid-off employees filed two separate district court actions alleging WARN Act violations related to their terminations.

13.      On June 30, 2022 (six days after the layoffs), Debtors each filed a Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code. On July 1, 2022, the Debtors' cases were consolidated for joint administration.

14.      On June 30, 2022, the two WARN Act district court actions were combined into the WARN Action, filed in this Court, wherein Plaintiffs asserted claims against Defendants for themselves and the other similarly situated employees for violations under the WARN Act, seeking damages for the class for up to sixty (60) days' wages and benefits.  The Plaintiffs' WARN Act claims against the Debtors comprise, in whole or in part, priority claims under 11 U.S.C. §§ 507(a)(4) and (a)(5) because they are wage and benefit claims arising within 180 days of the Debtors' bankruptcy filings.

15.      On or about July 14, 2022, the Official Committee of Unsecured Creditors (the "Committee") was appointed in this matter by the Office of the United States Trustee. Plaintiff

DE:4895-2321-3458.2 28311.001

Lori Buckley was appointed to the Committee to represent the WARN Act claimants.

16.     On September 6, 2022, the Debtors filed their Combined Disclosure Statement and Chapter 11 Plan (the "Combined Plan") and moved, on September 7, 2022, for interim approval of the adequacy of the disclosures in the Combined Plan.

17.     On September 27, 2022, Plaintiffs joined in the objection of the United States Trustee to the adequacy of the disclosures in the Combined Plan in that, among other things, it did not describe the WARN Action or the risks it posed to the feasibility of the Combined Plan.

18.     On September 30, 2022, FGMC filed its Answer, denying any violation of the WARN Act and asserting various defenses and affirmative defenses to the WARN Action, including: (a) the "unforeseeable business circumstances" and "faltering company" statutory reductions to the WARN Act's sixty day notice requirement; (b) the "liquidating fiduciary" exception under the WARN Act; and (c) the good faith "mitigation defense" based on FGMC's asserted belief that its actions complied with all provisions of the WARN Act and warranted reduction of any damages that may be assessed against it for a WARN Act violation.

19.     On or about October 7, 2022, the Court entered an *Order (I) Granting Interim Approval of the Disclosures; (II) Scheduling a Combined Hearing to Consider Final Approval of Disclosures and Confirmation of the Combined Plan, and Setting Deadlines Related Thereto: (III) Approving Solicitation Packages and Procedures: (IV) Approving the Forms of Ballot; and (V) Granting Related Relief.*  Immediately thereafter, the Debtors filed the Amended Combined Disclosure Statement and Chapter 11 Plan of First Guaranty Mortgage Corporation and Debtor Affiliate (the "Amended Combined Plan").

20.     The Court set October 26, 2022, as the deadline for objections to the Amended Combined Plan and scheduled the confirmation hearing  to take place on October 31, 2022.

DE:4895-2321-3458.2 28311.001

21.     On October 14, 2022, Plaintiffs filed a motion for class certification and sought appointment of Plaintiffs as the class representatives and their counsel as class counsel.

22.     On or about October 26, 2022, Plaintiffs and others filed objections to the Amended Combined Plan.  Plaintiffs' Limited Objection and Reservation of Rights to the Amended Combined Plan ("WARN Limited Objection") asserted that the Amended Combined Plan did not establish an adequate claims reserve for the Plaintiffs' $4+ million priority wage claim.  Plaintiffs also gave notice of their election not to grant the releases set forth in the Amended Combined Plan.

23.     On or about October 28, 2022, Defendant First Guaranty Mortgage Corporation filed its memorandum of law in opposition to Plaintiffs' motion for class certification.

24.     On or about October 28, 2022, Debtors filed a memorandum of law in support of confirmation of the Amended Combined Plan and in reply to the objections, including Plaintiffs'.

25.     The WARN Limited Objected remained unresolved as of the commencement of the contested confirmation hearing on October 31, 2022.  Following Plaintiffs' initiation of their cross-examination of Aaron Samples, Chief Executive Officer of First Guaranty Mortgage Corporation, the Court briefly recessed, at which time the Parties agreed to a reserve of $2.5 million to resolve the WARN Limited Objection (the "WARN Reserve"), which did not waive the Debtors' ability to object to the payment of any damages to Plaintiffs or alleged class members, and was memorialized in the Plan, which the Court confirmed on November 2, 2022.

26.     In November 2022, the Parties began negotiations concerning a stipulation to class certification.

27.     On or about January 10, 2023, the Parties filed their stipulation to the certification of a Class comprised of the 425 employees of Defendant First Guaranty Mortgage Corporation specified by individual name and employee number on Schedule 1 to the stipulation who

DE:4895-2321-3458.2 28311.001

reported to FGMC's Plano, Texas facility and were involuntarily separated from employment on June 24, 2022, but excluding any individuals who timely elected to opt out of the Class.

28.    On or about January 11, 2023, the Court entered the Parties' stipulated Order certifying the Class, appointing Plaintiffs as the Class Representatives, appointing Plaintiffs' counsel as Class Counsel and approving the notice to the Class.

29.    The Class notice was mailed to the Class members on February 6, 2023, at the addresses provided by Defendant First Guaranty Mortgage Corporation. Any individual electing to exclude herself/himself from the Class was required to mail a completed Opt-Out Form so that it was received by Class Counsel by March 13, 2023.  There were no opt-outs.

30.    In February 2023, the Parties agreed to mediate the disputed claims in the WARN Action.  The Parties selected Hon. David H. Coar (Ret.), of  the U.S. District Court for Northern Illinois, as the mediator and agreed to a mediation date of May 31, 2023.

31.    Prior to the mediation, Plaintiffs subpoenaed, and received, employee information from the former payroll provider to Defendant First Guaranty Mortgage Corporation.

32.    The Parties submitted mediation statements to Judge Coar on May 22, 2023, and mediated the matter for a full day on May 31, 2023, via Zoom.  While the Parties were unable to reach a resolution that day, they continued to negotiate in good faith and at arms' length, with the assistance of Judge Coar, over the course of the ensuing five months to resolve the WARN Action.

33.    The Parties acknowledge the risks and delays inherent in litigation.

34.    The WARN Action involves numerous legal issues regarding the application of the WARN Act and its statutory and other legal defenses to complex facts. These issues include, inter alia: (i) whether the Defendants were a covered employer under the WARN Act at the time of the alleged plant closing or mass layoff pursuant to the liquidating fiduciary doctrine; (ii)

DE:4895-2321-3458.2 28311.001

whether the Defendants' WARN Act notice provided adequate notice to the Class Members under the WARN Act; (iii) whether the WARN Act notice was defective under the WARN Act; (iv) whether the Defendants were entitled to give fewer than sixty (60) days notice because of alleged unforeseeable business circumstances; (v) whether the Defendants were entitled to give fewer than sixty (60) days notice because, at the time notice would otherwise have been required, Defendants were seeking new capital which Defendants assert, if obtained, would have obviated the need for or substantially postponed the alleged plant closing or mass layoff; (vi) whether the Defendants efforts to obtain new capital were commercially reasonable under the circumstances; (vii) whether the Defendants have other defenses to the application of the WARN Act; (viii) whether the Defendants gave "as much notice as practicable"; (ix) whether the Defendants constitute a "single employer" under the provisions of the WARN Act such that they would be jointly and severally liable for some or all of the alleged damages;  (x) the computation of the amount of damages; (xi) whether the Defendants are entitled to any reduction of damages based on "good faith;" (xii) whether Plaintiffs' claims are barred by section 502(d) of the Bankruptcy Code to the extent Plaintiffs owe Defendant any amounts under Chapter 5 of the Bankruptcy Code, including payments made to Plaintiffs that constitute avoidable preferential transfers and/or fraudulent conveyances under sections 544, 547, 548 and 550 of the Bankruptcy Code; and (xiii) whether Plaintiffs' claims for priority treatment of claims for damages are subject to the requirements and limitations of section 507(a)(4) of the Bankruptcy Code, and are eliminated or otherwise reduced to the extent other payments to Plaintiffs were made pursuant to, or that otherwise fall within, section 507(a)(4) of the Bankruptcy Code.  The Plaintiffs have the burden of proof on some of these issues and the Defendants have the burden on others, including any affirmative defenses, and the trial of this matter would likely be lengthy, adding to cost and potential delay, with an uncertain outcome.

DE:4895-2321-3458.2 28311.001

35.    On or about November 1, 2023, the Parties reached an agreement in principle, the terms of which were later memorialized in the Settlement Agreement, attached hereto. In general, the Settlement Agreement provides for a payment in the amount of $1,750,000 in full and final settlement of the WARN Action, subject to the approval of this Court.  The Settlement Agreement provides that the Settlement Payment will be paid by the Liquidating Trustee to a settlement administrator of Class Counsel's choice within five (5) business days of the entry of an order approving the Settlement Agreement by the Court. The other essential terms of the Settlement Agreement are as follows:[3]

    a.  <u>Settlement Distribution:</u> A settlement administrator of Class Counsel's choice shall handle the distributions to Class Members. The Settlement Administrator shall be responsible for handling class noticing and all aspects of the administration of the distribution of the Settlement Amount, including, but not limited to: (a) the formation of a qualified settlement fund (the "<u>Qualified Settlement Fund</u>") as authorized by Treasury Regulation 1.486B-1(c) to accept, distribute, and otherwise administer the Settlement, including wiring Class Counsel's Fees and Class Counsel's Expenses to Class Counsel, according to such wiring instructions that Class Counsel will provide to the Settlement Administrator; (b) the preparation and mailing of settlement checks to each Class member based on Schedule 1; (c)the preparation and mailing of all 1099 Forms, where applicable; and (d) the processing of returned settlement checks as undeliverable, including re-mailing to forwarding addresses and tracing of current addresses.  Within two business days of entry of an Order granting preliminary approval of the Settlement, the Liquidating Trustee shall securely provide the Settlement Administrator with a social security number for each Class member, for the Settlement Administrator's use in locating any Class member whose address is stale and/or for use in administration of the Settlement Class Counsel, through the Settlement Administrator, shall provide notice to each Class Member within ten (10) business days following entry of the order preliminarily approving this Settlement Agreement, which describes the Settlement Agreement and informs the Class Member of the Class Member's right to object to the Settlement Agreement and identifies the deadline for doing so.  The projected net amounts allocated to the Class Members from the Settlement Amount are set out on <u>Schedule 1</u> attached to the Settlement Agreement.  These amounts may be non-materially adjusted depending on counsel's final expenses at the

---

[3] This summary of the Settlement Agreement is qualified in its entirety by the terms and provisions of the Settlement Agreement. To the extent that there are any inconsistencies between the description of the Settlement Agreement contained herein and the terms and the provisions of the Settlement Agreement, the Settlement Agreement shall control.

time of distribution  The Class Members' settlement distributions shall be included under the Class Member's name and social security number on an IRS 1099 Form and any applicable state or local tax form to be distributed by the Settlement Administrator.  The Service Payments, Class Counsel's Fees and Class Counsel's Expenses shall be reflected on IRS Form 1099s to be distributed by the Settlement Administrator.  By accepting his or her portion of the Settlement Amount, each Class member agrees that he or she will be solely responsible for any and all tax liabilities stemming from the payment of his or her claim under the Settlement Agreement.

b. <u>Mutual Releases:</u> Except for the rights arising out of, provided for, or reserved in the Agreement, upon the payment of the Settlement Amount to the settlement administrator, the Class Members, for and on behalf of themselves, and their respective predecessors, successors, assigns, affiliates and subsidiaries (collectively, the "<u>Releasing Parties</u>"), will fully and forever release and discharge (a) the Defendants, the Liquidating Trustee, the Trust, the Defendants' current and former directors, parents, subsidiaries, partners, members, lenders, accountants, attorneys, representatives, and all other agents, and all of their respective predecessors, successors and assigns, and (b) the Cash Flow DIP Lender (as defined in the Plan), the Prepetition Bridge Lender (as defined in the Plan), and each of the Related Parties (as defined in the Plan) of each of the Cash Flow DIP Lender and Prepetition Bridge Lender (collectively, the "<u>Released Parties</u>"), of and from any and all claims, obligations, demands, rights, debts, liabilities, liens, actions and causes of action, costs, expenses, attorneys' fees and damages of whatever kind or nature, character, and description, whether in law or in equity, whether sounding in tort, contract, federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law, whether known or unknown, and whether anticipated or unanticipated, suspected or disclosed, which the Releasing Parties may now or hereafter may have against the Released Parties, which relate to or are based on the WARN Act or any federal, state or local law or regulation applying to plant closings (collectively, the "<u>Released Claims</u>").[4]  The Released Parties waive any and all rights to assert any avoidance claims against Class Members arising under chapter 5 of the

---

[4] The Released Claims consist of any and all claims of any kind or nature whatsoever, at law, in equity, and otherwise, whether known or unknown, anticipated, suspected, or disclosed, which the Releasing Parties have or may have as of the Final Approval Date, which relate to or are based on the WARN Act or any federal, state or local law or regulation applying to plan closings. For avoidance of doubt, the following claims and/or rights shall not be released:

   i. any claims for continuation of health or medical coverage, at the Class Member's expense, or at the expense of a beneficiary or dependent of a  Class Member, to the extent required by the relevant provisions of the Consolidated Omnibus Reconciliation Act of 1985 ("<u>COBRA</u>");

   ii. any pre-petition claims for expense reimbursement due individual Class Members;

   iii. rights, if any unrelated to the individual Class Members' WARN Act claims, arising under the Debtors' 401(k) retirement plans; and

   iv. any claims of individual Class Members which the law clearly states may not be released by settlement.

Settlement Agreement, ¶ 8.

DE:4895-2321-3458.2 28311.001

Bankruptcy Code or applicable state law.

c.   Payment of Class Representatives: The Class Representatives shall, subject to Court approval, receive a one-time combined total payment of twenty-seven thousand dollars ($27,000) for their service on behalf of the Class Members ("Service Payments") to be allocated as follows: $7,000 to Lori Buckley and $5,000 each to Gayle Zech, Roberta Martinez, Jennifer Jackson, and James Davies.  The Service Payments will be made in addition to the Class Representatives' individualized settlement amounts and Class Counsel's Fees will not be deducted from the Service Payments.

d.   Class Counsel Fees: Class Counsel shall receive payment in the amount of one-third (1/3) of the Settlement Amount, after deduction of the Service Payments ("Class Counsel's Fees"), plus litigation costs and expenses related to the WARN Action ("Class Counsel's Expenses"). Class Counsel's Fees and Class Counsel's Expenses shall be payment in full for Class Counsel's work and expenses in connection with this matter.

e.   Issuance of Notice of Settlement to the Class: Class Counsel, through their designee, shall send by first class mail to each Class Member's last known address an individualized Class Notice indicating:

- A description of the history of the litigation and the essential terms of the Settlement;

- that the Settlement may become effective only if it is finally approved by the Court;

- that, if so approved, the Settlement shall be effective as to all Class Members;

- that, if so approved, the projected net dollar amount allocated to each Class Member under the Settlement, net of the Service Payments, Class Counsel's Fees and Class Counsel's Expenses is shown on Schedule 1;

- that such Class Member has the right to timely object to this Settlement and be heard in person or through counsel at the Fairness Hearing; and

- that all Released Claims (other than those claims to be paid under the terms of this Settlement) shall be waived, and that no person, including the Class Member, shall be entitled to any further distribution thereon.

## **Relief Requested**

36.   By this Joint Motion, the Parties request that the Court enter orders, substantially

in the form annexed hereto as <u>Exhibits B</u> and <u>C</u>: (i) approving the *Settlement and Release Agreement* (the "<u>Settlement Agreement</u>" or the "<u>Settlement</u>")[5] among the Parties pursuant to Bankruptcy Rule 9019; (ii) preliminarily approving the Settlement Agreement; (iii) approving the form and manner of the Class Notice, substantially in the form annexed as <u>Exhibit D</u>; (iv) scheduling a Fairness Hearing to consider final approval of the Settlement Agreement; and (v) approving the Settlement Agreement on a final basis.

**Basis for Relief Requested**

**A.    The Court Should Approve the Settlement Agreement
Pursuant to Bankruptcy Rule 9019**

37.    The Third Circuit has emphasized that "to minimize litigation and expedite the administration of a bankruptcy estate 'compromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. 1993)); *see also In re Culmtech, Ltd.*, 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990) ("[C]ompromises are favored in bankruptcy and … much of litigation in bankruptcy estates results in settlements"). Bankruptcy Rule 9019 authorizes a bankruptcy court to approve a compromise or settlement after notice and a hearing, FED. R. BANKR. P. 9019(a), and Section 105 of the Bankruptcy Code empowers a court to issue any order that is "necessary or appropriate". 11 U.S.C. § 105(a).

38.    "[T]he authority to approve a compromise settlement is within the sound discretion of the bankruptcy court." *Key3Media Grp., Inc. v. Pulver.com, Inc. (In re Key3Media Grp., Inc.)*, 336 B.R. 87, 92 (Bankr. D. Del. 2005); *see also In re Louise's, Inc.,* 211 B.R. 798, 801 (D. Del. 1997). When exercising such discretion, the bankruptcy court must determine whether the compromise is "fair, reasonable, and in the best interests [sic] of the estate."

---

[5] A true copy of the Settlement Agreement is attached hereto as <u>Exhibit A</u>. Capitalized terms not otherwise defined

DE:4895-2321-3458.2 28311.001

*Key3Media Grp.*, 336 B.R. at 92; *see also Fry's Metals, Inc. v. Gibbons (In re Rfe Indus., Inc.)*, 283 F.3d 159, 165 (3d Cir. 2002); *In re Louise's, Inc.*, 211 B.R. at 801; *In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (Bankr D. Del. 1998).

39.     The bankruptcy court is not required to determine that the proposed settlement is the best possible compromise. *Key3Media Grp.*, 336 B.R. at 92-93 (citing *In re Coram Healthcare Corp.*, 315 B.R. 321, 329 (Bankr. D. Del. 2004)). Rather, the settlement should be approved as long as it does not fall below the lowest point in the range of reasonableness. *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir.), *cert. denied*, 464 U.S. 822 (1983). In this respect, it is unnecessary for the court to consider the information necessary to resolve the factual dispute, nor is necessary for the bankruptcy court to "conclusively determine claims subject to a compromise." *Key3Media Grp.*, 336 B.R. at 92 (quoting *Martin v. Cox (In re Martin)*, 212 B.R. 316, 319 (8th Cir. B.A.P. 1997)).

### 1.    <u>Standard for Approval of the Settlement Agreement</u>

40.     Courts within this Circuit consider the following four factors when determining whether a settlement is in the best interest of the estate: (i) the probability of success in the litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attendant thereto; and (iv) the paramount interest of the creditors and a proper deference to their reasonable opinions. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *Aetna Cas. & Sur. v. Jasmine, Ltd. (In re Jasmine, Ltd.),* 258 B.R. 119, 123 (Bankr. D.N.J. 1999); *Key3Media Grp.*, 336 B.R. at 93; *In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (Bankr. D. Del. 1998).

41.     In addition to the criteria above, other courts have also scrutinized additional

---

herein shall have the meaning ascribed to them in the Settlement Agreement.

DE:4895-2321-3458.2 28311.001

factors, such as (i) the competency and experience of counsel who support the settlement; (ii) the relative benefits to be received by individuals or groups within the class; (iii) the nature and breadth of releases to be obtained by the parties to the settlement; and (iv) the extent to which the settlement is the product of arm's length bargaining. *See Fischer v. Pereira (In re 47-49 Charles St., Inc.)*, 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997); *In re Dow Corning Corp.*, 198 B.R. 214, 223 (Bankr. E.D. Mich. 1996).

      **a.**     **Application of the _Martin_ Factors**

      *i.*     *The Results of a Trial are Uncertain, the Litigation is Complex and Collections above the Reserve would be Highly Difficult.*[6]

     42.     The results of a trial are uncertain and the litigation is complex. As noted above, the WARN Action involves numerous legal issues regarding the application of the WARN Act and its statutory and other legal defenses to complex facts. These issues include, *inter alia*: (i) whether the Defendants were a covered employer under the WARN Act at the time of the alleged plant closing or mass layoff pursuant to the liquidating fiduciary doctrine; (ii) whether the Defendants' WARN Act notice provided adequate notice to the Class Members under the WARN Act; (iii) whether the WARN Act notice was defective under the WARN Act; (iv) whether the Defendants were entitled to give fewer than sixty (60) days' notice because of alleged unforeseeable business circumstances; (v) whether the Defendants were entitled to give fewer than sixty (60) days' notice because, at the time notice would otherwise have been required, Defendants were seeking new capital which Defendants assert, if obtained, would have obviated the need for or substantially postponed the alleged plant closing or mass layoff; (vi) whether the Defendants efforts to obtain new capital were commercially reasonable under the

circumstances; (vii) whether the Defendants have other defenses to the application of the WARN Act; (viii) whether the Defendants gave "as much notice as practicable"; (ix) whether the Defendants constitute a "single employer" under the provisions of the WARN Act such that they would be jointly and severally liable for some or all of the alleged damages;  (x) the computation of the amount of damages; (xi) whether the Defendants are entitled to any reduction of damages based on "good faith;" (xii) whether Plaintiffs' claims are barred by section 502(d) of the Bankruptcy Code to the extent Plaintiffs owe Defendant any amounts under Chapter 5 of the Bankruptcy Code, including payments made to Plaintiffs that constitute avoidable preferential transfers and/or fraudulent conveyances under sections 544, 547, 548 and 550 of the Bankruptcy Code; and (xiii) whether Plaintiffs' claims for priority treatment of damages are subject to the requirements and limitations of section 507(a)(4) of the Bankruptcy Code, and are eliminated or otherwise reduced to the extent other payments to Plaintiffs were made pursuant to, or that otherwise fall within, section 507(a)(4) of the Bankruptcy Code.  The Plaintiffs have the burden of proof on some of these issues and the Defendants have the burden on others, including any affirmative defenses, and the trial of this matter would likely be lengthy, adding to cost and potential delay, with an uncertain outcome.

43.     Continued litigation would be costly and time-consuming and expose the Trust to significant litigation risks.   Class Counsel has asserted that the priority-capped portion of Defendants' WARN Act liability of up to sixty (60) days' damages and benefits exceeds $4 million. The Settlement provides for the payment of a Settlement Amount of $1,750,000, which is within the limits covered by the Court approved WARN reserve under the Plan, although any amount sought above the reserve would be difficult, if not impossible, to collect.  The Settlement

---

[6] This section discusses both the first and third *Martin* factors – uncertainty of success and complexity of litigation – because in this case these issues are intertwined. The second factor – difficulty with collection – does not apply

resolves the WARN Action and related claims and eliminates further accrual of the substantial

litigation expenses which have been associated therewith. Accordingly, the Parties respectfully

submit that approval of the Settlement is warranted.[7]

> ii.  *The Settlement Agreement is in the Best Interest of Creditors and the Estate.*

44.     The Settlement Agreement is in the best interest of the Liquidating Debtor's, their

creditors, and the Trust.  "When determining whether a compromise is in the best interest of the

estate, the Court must 'assess and balance the value of the claim that is being compromised

against the value to the estate of the acceptance of the compromise proposal.'" *Key3Media Grp.*,

336 B.R. at 93 (quoting *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (citing

*TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968))); *see also In re Nationwide

Sports Distribs., Inc.*, 227 B.R. 455, 460 (Bankr. E.D. Pa. 1998) ("[I]n deciding whether to

approve a particular compromise, courts utilize various criteria designed to achieve the objective

of having the Trustee or debtor in possession act in [the] best interests of the estate"). To

properly balance these values, the Court should consider all factors "relevant to a full and fair

assessment of the wisdom of the proposed compromise." *In re Marvel Entm't Grp., Inc.*, 222

B.R. 243, 249 (Bankr. D. Del. 1998) (quoting *TMT Trailer Ferry, Inc.*, 390 U.S. at 424); *see also

Key3Media Grp.*, 336 B.R. at 92 (The bankruptcy court must be "apprised of all relevant

information that will enable it to determine what course of action will be in the best interest of

the estate.") (quoting *Martin*, 91 F.3d at 393).

45.     The paramount interest of creditors favors approval of the Settlement Agreement,

because the Settlement Agreement spares the Debtors, their creditors, and the Trust the

significant expense and uncertainty associated with the litigation of the myriad of issues in the

---

because the Debtors are the defendants.

DE:4895-2321-3458.2 28311.001

WARN Action.

46.    Accordingly, in light of each of the *Martin* factors, the Settlement Agreement should be approved.

**B.    The Court Should Preliminarily Approve the Settlement Agreement Pursuant to Civil Rule 23**

47.    After class certification, approval of a class settlement generally requires two hearings: one preliminary approval hearing and one final "fairness" hearing. *Gates,* 248 F.R.D. at 442-43; MANUAL FOR COMPLEX LITIGATION § 30.632 (2004). Once a settlement is preliminarily approved, notice of the proposed settlement and of the fairness hearing is provided to class members.   At the subsequent fairness hearing, class members may formally object to the proposed settlement. *Gates v. Rohm & Hass Co.,* 248 F.R.D. 434, 439 (E.D. Pa. 2008).

48.    "The preliminary approval decision is not a commitment [to] approve the final settlement; rather, it is a determination that 'there are no obvious deficiencies and the settlement falls within the range of reason.'" *Id.,* at 438 (*quoting from Smith v. Prof'l Billing & Mgmt. Servs., Inc.,* 2007 WL 4191749, at *1 (D. N.J. 2007)). The preliminary approval determination requires the Court to consider whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re GMC Pick-Up Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 785-86 (3d Cir. 1995); *Gates,* 248 F.R.D. at 444.

49.    The Settlement Agreement has no obvious deficiencies and falls well within the range of reason. Further, each of the above-cited factors weighs in favor of preliminary approval of the Settlement Agreement.

50.    First, the Settlement is the result of good faith, arm's length negotiations between

---

[7] In the event that the Settlement Agreement is not approved by the Court or the Settlement Agreement does not

capable adversaries. The Parties have been in discussions with respect to the WARN Act Litigation for over a year and the Class is represented by counsel with extensive experience and expertise in WARN Act matters, as described in detail in Plaintiffs' motion for class certification.

51.     Second, the Parties informally exchanged significant information and documents during their negotiations relating to class certification, damages and Defendants' defenses.

52.     Third, Class Counsel have collectively been appointed as class counsel in well over one-hundred fifty (150) WARN Act cases. Class Counsel have the experience and skill both to vigorously litigate WARN Act claims and to determine when and to what extent settlement is appropriate. They have exercised that judgment in this case with respect to the Settlement Agreement. Defendants' counsel also is experienced in WARN Act cases, having participated in multiple adversary proceedings and contested matters relating to WARN Act claims within bankruptcy cases over many years.

53.     Accordingly, the Court should preliminarily approve the Settlement Agreement.

## C.     The Court Should Approve the Form and Manner of the Proposed Notice of the Settlement

54.     Rule 23(e) requires that all members of the class be notified of the terms of any proposed settlement. FED. R. CIV. P. 23(e). The Rule 23(e) requirement is "designed to summarize the litigation and the settlement and to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation." *Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)*, 148 F.3d 283, 326-27 (3d Cir. 1998).

55.     The proposed Class Notice, which is attached hereto as Exhibit D, will be served

---

become binding and enforceable for any reason, the Parties reserve all of their rights.

DE:4895-2321-3458.2 28311.001

by Class Counsel, through their designee, upon each Class member. Class Counsel proposes that within ten (10) business days following entry of the order preliminarily approving the Settlement Agreement, Class Counsel will prepare and serve the Class Notice substantially in the form attached hereto as Exhibit D, upon each Class member at the last known address of each Class member according to the Defendants' books and records (or as may otherwise be determined). *Cf. id.,* at 327 (holding that mailings to last known address of class members and publication in national newspapers sufficient to provide notice to large, multi-state class).

56.    The Class Notice satisfies Rule 23(e).  The Class Notice outlines the terms of the Settlement Agreement, including the attorneys' fees and expenses proposed to be paid to Class Counsel and describes how each Class Member may obtain a copy of the Settlement Agreement or may contact Class Counsel by telephone or electronic mail for more information. The Class Notice also states the date, time, location and purpose of the Fairness Hearing, informs each Class Member of their right to appear at the Fairness Hearing, and describes the procedure for objecting to the Settlement Agreement. Finally, the Class Notice will contain a personalized attachment for each Class Member setting forth the projected net dollar amount allocated to them from the Settlement Amount, after the deduction of the Service Payments, Class Counsel's Fees and Class Counsel's Expenses. Accordingly, the form and manner of the Class Notice is sufficient and should be approved.

**D.    The Court Should Finally Approve the Settlement at the Fairness Hearing Pursuant to Civil Rule 23**

57.    The Court should set a Fairness Hearing as soon as practical that, subject to the Court's calendar, would be heard no sooner than the earliest date for entry of a binding order

under 28 U.S.C. § 1715, and so that distributions may be made prior to December 31, 2023, if possible.  At the Fairness Hearing, the Court should finally approve the Settlement.

58.    Civil Rule 23 provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed or compromised only with the court's approval." FED. R. CIV. P. 23(e). Final approval of a settlement pursuant to Civil Rule 23(e) turns on whether the settlement is "fair, reasonable and adequate." FED. R. CIV. P. 23(e)(2); *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001). "This inquiry requires the court's independent and objective analysis of the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.,* 2008 WL 3833271 at * 5 (*quoting GMC*, 55 F.3d at 785).

59.    The Third Circuit has held that the following nine (9) factors are relevant in determining whether a proposed class settlement is fair, reasonable, and adequate: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). This list is not exhaustive. *Cmty. Bank*, 2008 WL 3833272 * 6; 2008 U.S. Dist. LEXIS 627872, at * 24.

60.    The following *Girsh* factors strongly support approval of the Settlement Agreement.

- Continued litigation will be complicated, protracted and expensive.

- The Class Representatives support the Settlement Agreement and Class Counsel believe that the other Class members will have a favorable reaction to the Settlement Agreement and will not object to it.

- The Settlement Agreement was reached after the essential facts and applicable law had been thoroughly researched and reviewed by Class Counsel and the Parties had prepared for and participated in a formal mediation on May 31, 2023, which was followed by months of continuing negotiations before reaching a resolution.

- The Settlement Agreement spares the Plaintiffs' and Trust each the significant expense and uncertainty associated with the litigation, including at trial, of the myriad of issues in the WARN Action.

- The proposed settlement amount is $1.75 million, which is at the upper end of the WARN Reserve under the Plan. If the Plaintiffs were not to succeed, they would lose the benefit of the Settlement Agreement and access to the WARN Reserve.

- When considered in light of the best possible recovery and the attendant risks, the settlement falls well within the range of reasonableness.

61.     Based on the foregoing, the Court should finally approve the Settlement Agreement under Civil Rule 23.

## Notice

62.     Bankruptcy Rule 2002 requires the Liquidating Trustee to give all creditors not less than twenty-one (21) days notice of "the hearing on approval of a compromise or settlement of a controversy unless the court for cause shown directs that the notice be not sent…" FED. R. BANKR. P. 2002(a)(3).

63.     The Parties propose that notice, together with a copy of this Joint Motion (exclusive of any personal identifiers of the Class members), be provided to: (i) the Office of the United States Trustee for the District of Delaware, and (ii) all parties which have requested notice pursuant to Bankruptcy Rule 2002. In order to protect the privacy of the Class members, the Parties have redacted the personal identifiers of the Class members on Schedule 1 to the

DE:4895-2321-3458.2 28311.001

Settlement Agreement. In light of the nature of the relief requested, the Parties submit that no other or further notice need be given.

## NO PRIOR REQUEST

64.     No previous application for the relief sought herein has been made to this or any other Court.

## CONCLUSION

WHEREFORE, the Parties respectfully request that the Court enter orders, substantially in the proposed form annexed hereto as Exhibits B and C: (i) granting the Joint Motion in its entirety; (ii) authorizing the Parties to enter into the Settlement Agreement; (iii) preliminarily approving the Settlement; (iv) approving the form and manner of Class Notice; (v) scheduling a Fairness Hearing; (vi) approving the Settlement Agreement on a final basis; and (vii) granting such other relief as the Court deems necessary and appropriate.

DE:4895-2321-3458.2 28311.001

Dated: November 20, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/  Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Mary F. Caloway (DE Bar No. 3059)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
tcairns@pszjlaw.com
mcaloway@pszjlaw.com

-and -

**DENTONS US LLP**
Samuel R. Maizel (*Pro Hac Vice*)
Tania M. Moyron (*Pro Hac Vice*)
601 S. Figueroa Street, #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Email: samuel.maizel@dentons.com
tania.moyron@dentons.com

-and-

**DENTONS US LLP**
Sam J. Alberts (*Pro Hac Vice*)
David F. Cook (DE Bar No. 6352)
1900 K Street, NW
Washington, DC 20006
Telephone: (202) 496-7500
Email: david.f.cook@dentons.com

*Counsel for the Liquidating Trustee and Debtors*

Dated: November 20, 2023

**LOIZIDES, P.A.**

*/s/  Christopher D. Loizides*
Christopher D. Loizides (No. 3968)
1225 King Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 654-0248
Facsimile: (302) 654-0728
E-mail: loizides@loizides.com

-and-

**RAISNER ROUPINIAN LLP**
Jack A. Raisner
René S. Roupinian
270 Madison Avenue, Suite 1801
New York, New York 10016
Telephone: (212) 221-1747
Facsimile: (212) 221-1747
Email: rsr@raisnerroupinian.com
Email: jar@raisnerroupinian.com

-and-

**THE GARDNER FIRM, P.C.**
Mary E. Olsen
M. Vance McCrary
182 St. Francis Street; Suite 103
Mobile, AL 36602
Telephone: (251) 433-8100
molsen@thegardnerfirm.com
vmccrary@thegardnerfirm.com

-and-

**LANKENAU & MILLER, LLP**
Stuart J. Miller (SJM 4276)
100 Church Street, 8th FL
New York, NY 10007
P: (212) 581-5005
F: (212) 581-2122
Email: stuart@lankmill.com

*Counsel for the Class*