# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FIRST GUARANTY MORTGAGE CORPORATION, *et al.*,[1]<br><br>Liquidating Debtors. | Chapter 11<br><br>Case No. 22-10584 (CTG)<br><br>(Jointly Administered)<br><br>Re: Docket Nos. 1017, 1032 |

### RELATOR'S RESPONSE TO THE PIMCO PARTIES' MOTION TO ENFORCE

Ms. Kari Crutcher, by and through undersigned counsel, and pursuant to this Court's Order of November 13, 2023 [D.I. 1032] hereby respectfully submits this response in opposition to the PIMCO Parties' Motion to Enforce [D.I. 1017] (the "TAC Motion to Enforce"), and states as follows:

### PRELIMINARY STATEMENT[2]

1.  The only question for the Court to decide is whether the Relator's proposed Third Amended Complaint (the "TAC") alleges direct claims against the PIMCO Parties[3] under the False Claims Act ("FCA"). For the reasons stated herein, the TAC only asserts direct claims against the PIMCO Parties, and therefore does not seek relief relating to any released claims under the Plan. Specifically, the TAC asserts direct claims against the PIMCO Parties founded on their own

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number in the jurisdiction were: First Guaranty Mortgage Corporation ("FGMC") (9575); and Maverick II Holdings, LLC ("Maverick") (5621). The service address for FGMC is 13901 Midway Road, Ste. 102-334, Dallas, Texas 75244.

[2] Capitalized terms used in the Preliminary Statement, but not otherwise defined therein, shall be defined in subsequent sections. Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in Docket No. 998.

[3] The TAC Motion to Enforce purports to raise arguments on behalf of the BRAVO Entities, however no counsel has appeared on behalf of those entities for that motion, and therefore, any argument on their behalf should be disregarded.

"knowing assistance" in FCA violations. The Court's analysis should begin and end there. That is all that is required to state a direct claim under the FCA and all that is required for this Court to determine that the claims against the PIMCO Parties in the TAC are appropriate. The Court need not and should not evaluate whether those claims are sufficiently pled. That is a question for the Delaware District Court to decide.

2.  In the briefing and at the hearing on the Motion for Contempt, the PIMCO Parties attempted to muddy the waters by seizing on the TAC's use of the word "conspired." The PIMCO Parties contend that this Court needs to look to Virginia law to determine whether a conspiracy claim is a direct or derivative claim.[4] Ms. Crutcher agrees with this Court's instinct that a conspiracy cause of action does not belong to the estate.[5] However, in an attempt to simplify the matter and avoid further argument on this point, Ms. Crutcher proposes a revised TAC, attached hereto as **Exhibit A**, to remove the conspiracy cause of action and focus solely on the PIMCO Parties' knowing assistance in FCA violations. There is no question that the TAC asserts direct causes of action against the PIMCO Parties, and the Court should deny the TAC Motion to Enforce.

## RELEVANT BACKGROUND

**Qui Tam Action**

3.  On June 15, 2023, Ms. Crutcher filed her *Supplemental Second Amended Complaint and Demand for a Jury Trial* (the "Complaint") in the Northern District of Georgia, *United States ex rel. Kari Crutcher v. First Guaranty Mortgage Corporation*, No. 16-cv-3812-TWT (N.D. Ga.) (the "Qui Tam Action"). The Complaint is a qui tam action under the False

---

[4] The argument is also inappropriate because a choice-of-law analysis requires a fact record. *See Dow Chem. Co. v. Organik Kimya Hldg. A.S.*, 2018 WL 2382802, at *6 (Del. Ch. May 25, 2018) ("It should be apparent that, at [the motion to dismiss] stage of the litigation, the choice-of-law question cannot be answered.").

[5] *See* Docket No. 1028, Hr'g Tr. 10:15-19 ("THE COURT: You might say a conspiracy claim is still the estate's cause of action, but that strikes me as counter-intuitive, right. If A conspires … with B to harm C, why is that A's cause of action rather than C's.").

2

Claims Act to recover damages caused by First Guaranty Mortgage Corporation and the Pacific Investment Management Company LLC and PIMCO Investments LLC's (collectively, the "PIMCO Parties") and sustained by the United States Department of Housing and Urban Development.

4. On June 29, 2023, the PIMCO Parties filed a motion to dismiss the Complaint (No. 16-cv-3812-TWT (N.D. Ga.), D.I. 99) (the "Motion to Dismiss"). Ms. Crutcher informed defendants of an anticipated motion to transfer the Qui Tam Action to the District of Delaware, which defendants indicated they did not oppose. The parties agreed to stay the briefing on the Motion to Dismiss pending a decision on the transfer motion. *See* No. 16-cv-3812-TWT, D.I. 102.

5. On August 28, 2023, the court in the Qui Tam Action stayed all briefing on the Motion to Dismiss pending a decision on the anticipated motion to transfer. *See* No. 16-cv-3812-TWT, D. I. 103.

6. On September 22, 2023, Ms. Crutcher filed a motion seeking to enforce the parties' agreement to transfer the Qui Tam Action to Delaware. *See* No. 16-cv-3812-TWT, D.I. 105 (the "Motion to Transfer").

7. On October 13, 2023, Ms. Crutcher filed a motion seeking leave to file a Third Amended Complaint [No. 16-cv-3812-TWT, D.I. No. 108] ("Motion for Leave").

8. On November 6, 2023, the Qui Tam Action was transferred to the United States District Court for the District of Delaware [C.A. No. 1-23-cv-1261]. The Motion to Dismiss and Motion for Leave are currently pending before the Delaware District Court.

**Bankruptcy Proceedings**

9. On October 5, 2023, the PIMCO Parties filed their *Motion of the PIMCO Parties for Contempt for Violations of the Court's Enforcement Order and Confirmation Order* [Docket

No. 988] (the "Motion for Contempt").  The Motion for Contempt asked the Court to find Ms. Crutcher in contempt of the Court's September 5, 2023 order [Docket No. 951].

10. On October 19, 2023, Ms. Crutcher filed an objection to the Motion for Contempt [Docket No. 998].

11. On October 31, 2023, the PIMCO Parties filed their reply in support of the Motion for Contempt [Docket No. 1017].

12. On November 2, 2023, the Court held oral argument on the Motion for Contempt.

13. On November 13, 2023, the Court entered an Order [Docket No. 1032] denying the Motion for Contempt.  Pursuant to the Order, the Court deemed the reply in support of the Motion for Contempt to be a motion to enforce the Confirmation Order against the claims asserted in the in the proposed TAC appended to the Motion for Leave [No. 16-cv-3812-TWT, D.I. No. 108-1].  This is Ms. Crutcher's opposition to the TAC Motion to Enforce.

**ARGUMENT**

14. The PIMCO Parties take a number of swings at the allegations in the TAC, but each fails because they do not cite the relevant law nor apply them to the allegations in the TAC.  Notably, a main thrust of the PIMCO Parties' argument is to challenge the sufficiency of the allegations themselves, which is a question for the District Court.  The only issue before this Court is whether the TAC asserts Released Claims against the PIMCO Parties.  As detailed below, it does not and can proceed before the District Court on the merits.

**I.    THE PIMCO PARTIES ARE DIRECTLY LIABLE UNDER THE FCA IF THEY "KNOWINGLY ASSISTED" IN ANY WAY IN THE FRAUD.**

15. The PIMCO Parties repeatedly claim that the TAC does not state a direct claim against them.  TAC Motion to Enforce ¶¶ 18-28.  Although the PIMCO Parties say many things in their ten paragraphs of argument, they do not, and cannot support, that position.

4

16. It is a straightforward process to determine if the TAC states a direct claim for liability under the FCA. First, look to the applicable law regarding what is legally required for a party to be directly liable under the FCA. Second, apply that law to the allegations in the TAC.

17. For this analysis, the law is clear. A party is directly liable under the FCA if it "knowingly assists" in an FCA violation. 31 U.S.C. § 3279(a)(1)(A) ("[A]ny person who ***knowingly*** presents, or ***causes to be presented***, a false or fraudulent claim for payment or approval … ***is liable*** to the United States Government for a civil penalty ….") (emphasis added). The statute is not framed in derivative liability but direct liability for FCA violations where knowing assistance occurs. *Id.*; *see also U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 378 (5th Cir. 2004) ("The FCA ***applies to anyone who knowingly assists*** in causing the government to pay claims grounded in fraud without regard to whether that person has direct contractual relations with the government.") (internal quotations omitted) (emphasis added).

18. The TAC alleges that the PIMCO Parties did exactly that—knowingly assisted FGMC in presenting false claims to the government and knowingly assisted the PIMCO Parties' managers in extending risky and illegal loans. TAC ¶ 192, 195; First and Second Cause of Action. As the PIMCO Parties themselves point out, the TAC alleges their "knowledge" and "control" of the fraud at FGMC—both examples of the "knowing assistance" that triggers direct FCA liability. TAC Motion to Enforce ¶ 27. This is all that is needed to state a direct claim for liability against the PIMCO Parties under the FCA.

19. Notably, the TAC ***expressly*** disclaims any derivative claims or liability as to the PIMCO Parties under the FCA. *Id.*, ¶ 193. As a result, the TAC Motion to Enforce attacks the *sufficiency* of the pleadings. TAC Motion to Enforce ¶ 27. But the sufficiency of the pleadings has no bearing on whether the TAC asserts direct causes of action. Ultimately, the sufficiency of

5

the allegations is a question for the Delaware District Court to decide on a properly presented Rule 12 motion.

20. Indeed, the PIMCO Parties claim that Ms. Crutcher has not asserted direct causes of action against the PIMCO Parties because the TAC does not allege that the PIMCO Parties were a direct endorsement lender, submitted any loan-level certifications to the government, or made any statements or presented any claims for payment to the government. TAC Motion to Enforce ¶ 23. While this is a sufficiency argument not properly before this Court, it nevertheless fails because the law only requires "knowing assistance" to trigger liability, even if the party never interacted with the government, never presented any claim to the government, never signed any documents with the government, and even if it did not have the final say on whether to present the claim to the government. *Cf. U.S. ex rel Marcus v. Hess*, 317 U.S. 537 (1943), *superseded on other grounds by Statute as stated in Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 412 (2011). This is a long-settled principle of the FCA.

21. For example, as far back as 1943, the United States Supreme Court held that a subcontractor would be directly liable for selling shoddy parts to a contractor, knowing the contractor was going to use those parts in products sold to the government. *See id*. Even though the subcontractor had no contract with the government, never interacted with the government, and never sold any goods to the government, the Supreme Court found he could be directly liable for an FCA violation because he knowingly assisted in having the government pay for bad merchandise. *Hess*, 317 U.S. at 544. As the Supreme Court held, "These provisions [of the FCA], considered together, indicate a purpose to reach any person who ***knowingly assisted*** in causing the government to pay claims which were grounded in fraud, without regard to whether that person had direct contractual relations with the government." *Id*. (emphasis added).

22. The Third Circuit in *U.S. ex rel. Schmidt v. Zimmer, Inc.* similarly held that a defendant was directly liable for fraud on the government even though the defendant itself never certified compliance with governmental requirements and never had any interactions with the government; all such interactions were done by another entity. 386 F.3d 235, 243-44 (3d Cir. 2004) ("It is true, as the District Court stressed, that the amended complaint does not allege [the defendant] 'reviewed, approved, or received copies of [the hospital's] cost reports or participated in their preparation.' The case law indicates, however, that a party may assist the filing of a false claim in other ways.") (citing *U.S. ex rel Marcus*., 317 U.S. at 539). Therefore, the PIMCO Parties' argument that they cannot be held directly liable because they had no interaction with the government is without merit.

23. Further, the PIMCO Parties argue that the allegations in the TAC would be "true of most business owners and managers." TAC Motion to Enforce ¶ 26. However, that is precisely the "knowing assistance" that can trigger direct FCA liability when the businesses are engaged in fraud. *See U.S. ex rel. Martino-Fleming v. S Bay Mental Health Ctr.*, No. 15-13065-PBS, 2018 U.S. Dist. LEXIS 161523, at *11 (D. Mass. Sept. 21, 2018) (finding Plaintiff-Relator adequately pled direct claims against private equity group and owner of health system, and that she "[did] not assert an alter ego or veil piercing theory; rather, her argument hinges on direct liability"). In fact, allegations that "members and principals" of an executive board, were "directly involved in the operations" of an entity that submitted false claims is sufficient: "[a] parent may be liable for the submission of false claims by a subsidiary where the parent had direct involvement in the claims process." *Id.* at *13-14 (declining to grant private equity group Defendants' motion to dismiss which argued Defendants did not directly cause submission of claims) (emphasis added).

24. Other courts have found that merely alleging a private equity group like the PIMCO Parties "was at least aware of the false claims in the applications to the government and did nothing to prevent them from being submitted" suffices to establish FCA liability. *U.S. ex rel. Berkley v. Ocean State, LLC*, No. 20.538-JJM-PAS, 2023 U.S. Dist. LEXIS 76578, at *20-21 (D.R.I. May 2, 2023 (finding those general allegations "sufficient at [the] motion to dismiss stage to keep [private equity Defendant] in the case"). Here, Ms. Crutcher alleged that the PIMCO Parties conducted extensive due diligence that should have alerted it to FGMC's fraudulent practices and the submission of false claims. TAC at ¶ 193.

25. Once the PIMCO Parties' argument is examined, it consists of nothing more than a conclusory statement that the TAC only alleges derivative claims—an argument the PIMCO Parties are unable to support factually or legally. The remaining attacks by the PIMCO Parties should be left to the determination of the District Court either in opposition to the Motion for Leave or a properly briefed Rule 12 motion.

## CONCLUSION

Wherefore, Ms. Crutcher respectfully requests that the Court deny the PIMCO Parties' TAC Motion to Enforce.

*[Signature Page Follows]*

Dated: December 1, 2023

*/s/ Jesse L. Noa*

Jesse L. Noa (No. 5973)
R. Stephen McNeill (No. 5210)
Andrew L. Brown (No. 6766)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Email: jnoa@potteranderson.com
rmcneill@potteranderson.com
abrown@potteranderson.com

*Counsel for Kari Crutcher*