# Objection Letter to the Settlement

RECEIVED
2023 DEC 26 PM 12: 02
CLERK
U.S. BANKRUPTCY COURT
DIS... OF DELAWARE

December 11, 2023

United States Bankruptcy Court

for District of Delaware

824 North Market Street, 3rd Floor

Wilmington, Delaware 19801

Re: Chapter 11 Bankr. Case No. 22-10584 (CTG) First Guaranty Mortgage Corporation

---

I am writing regarding the settlement offer of $3,779.82. I believe this amount is way too low as I should have received a settlement for paychecks that would have been earned during the 60 day period provided by the WARN Act, had First Guaranty Mortgage Corp properly provided notification.

I am disputing the settlement amount as it should be a minimum of $14,334.64. I was let go from First Guaranty Mortgage Corporation on June 24, 2022, and my last day would have been on August 24, 2022. This would be a minimum of 4 paychecks of $3583.66 each.

The next 4 checks would have been on: 7/08/2022, 7/22/2022, 8/5/2022 & 8/19/2022 plus the additional 4 days' pay (8/21-8/24/2022) if I had been provided proper notification required by law.

The damages that I was seeking is $21,231.75 but I will accept $14,334.64 as this would be equal to my final 4 paychecks from First Guaranty Mortgage Corporation who failed to provide me with the proper 60 day WARN Act notification.

The $14,334.64 settlement to me should **not** have any fees taken out of it. Rather all Class counsel fees should be added on top of that and paid directly by First Guaranty Mortgage Corporation. If they had followed the law, then no further action would be needed.

**I have attached the following:**

- Copy of the Bankruptcy Case# 22-10584 – to dispute by 12/26/2023.
- Copy of my FGMC Salary – I was paid biweekly in the amt of $3583.66.
- Copy of my proof of claim that was filed on 10/13/2022.

Please call or email me with any questions and thank you in advance.

*Rebecca Garretson* (signature)

Rebecca Garretson
1822 E Bankhead Drive, Weatherford, Tx 76086
469-233-7100
Rgarretson17@gmail.com

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FIRST GUARANTY MORTGAGE CORP., et al.,[1]<br><br>Debtors. | Chapter 11 Bankr. Case No. 22-10584 (CTG)<br>(Jointly Administered) |
| LORI BUCKLEY, GAYLE ZECH, ROBERTA MARTINEZ, JENNIFER JACKSON and JAMES DAVIES, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FIRST GUARANTY MORTGAGE CORP., et al.<br><br>Debtors. | Adv. Pro. No. 22-50387-CTG<br><br><br><br>Hearing Date: Dec. 29, 2023 at 1:00 pm (ET)<br><br>Objection Deadline: Dec. 26, 2023 at 5:00 pm (ET) |

### NOTICE TO CLASS OF (A) PROPOSED SETTLEMENT OF CLASS ACTION CONCERNING WARN ACT CLAIMS; (B) DATE OF COURT HEARING FOR FINAL APPROVAL OF PROPOSED SETTLEMENT AND AWARD OF ATTORNEYS' FEES AND EXPENSES, AND (C) RIGHT TO OBJECT TO THE SETTLEMENT AND TO APPEAR AT COURT HEARING

### This Notice Contains Important Information About Your Rights As A Class Member. You Should Read This Entire Document

#### Introduction

1. Plaintiffs, Lori Buckley, Gayle Zech, Roberta Martinez, Jennifer Jackson, and James Davies, (collectively, "Plaintiffs") on behalf of themselves and the Class they represent, which you are a member of, together with the Liquidating Trustee for First Guaranty Mortgage Corporation (sometimes referred to as "FGMC", and together with its affiliated debtors in possession, the "Debtors" or "Defendants" and together with Plaintiffs, the "Parties"), have reached a proposed settlement to resolve the claims against Defendants under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101-2109 (the "WARN Act") in this matter, which is memorialized in the *Settlement and Release Agreement* dated as of November 20, 2023 (the "Settlement" or "Settlement Agreement") and which is pending before the Court for final approval.

2. This notice constitutes notice to you and the other Class members of (a) the proposed Settlement and a summary of the Settlement terms, (b) the date of the hearing before the Court on final approval of the proposed Settlement and (c) the right to object to or comment on the Settlement and to appear at the hearing, if you should so choose, at which the Court will consider final approval of the Settlement.

#### Background and Description of the WARN Action

3. The Debtors operated as a full service, non-bank mortgage lender that originated residential mortgages through a national platform.

4. On June 24, 2022, Debtors terminated more than 400 employees who reported to the Plano, Texas office.

5. On June 30, 2022, Debtors each filed a Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code. On July 1, 2022, the Debtors' cases were consolidated for joint administration.

6. On June 30, 2022, Plaintiffs filed this class action adversary proceeding (the "WARN Action") against Defendants under the WARN Act for recovery of damages of up to 60 days' pay and ERISA benefits for alleged violations of the WARN Act. In the WARN Action, Plaintiffs assert that they and the other similarly situated employees are "aggrieved employees" as defined by the WARN Act, who were affected by a mass layoff on or about June 24, 2022, ordered by the Defendants, as a "single employer" without the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: First Guaranty Mortgage Corporation (9575); and Maverick II Holdings, LLC (5621). The Debtors' mailing address is 13901 Midway Road, Ste. 102-334, Dallas, TX 75244.

ice. Further, the Plaintiffs assert the Defendants failure to give the Class members at least
:ntitles Class Members to recover up to 60 days of wages and ERISA benefits from the

juires employers to give their employees working at or reporting to facilities having at
e employees) at least sixty (60) calendar days' advance written notice before ordering a
y (60) days written notice if it can prove that certain defenses, as enumerated in the
f of these defenses, the employer must still give as much notice as practicable and include
ss than sixty (60) days' notice.

: Official Committee of Unsecured Creditors (the "Committee") was appointed in this
e. Plaintiff Lori Buckley was appointed to the Committee to represent the WARN Act

rs filed their Combined Disclosure Statement and Chapter 11 Plan, which was later
of $2.5 million dollars as a result of Plaintiffs' objection to confirmation of the Plan. The
!022.

ndant First Guaranty Mortgage Corp. filed its Answer, denying any violation of the
affirmative defenses to the WARN Action, including: (a) the "unforeseeable business
ry reductions to the WARN Act's sixty day notice requirement; (b) the "liquidating
(c) good faith belief that all of their actions complied with all provisions of the WARN

ffs filed a motion for class certification, which also sought appointment of Plaintiffs as the
ounsel as class counsel.

:, Defendant First Guaranty Mortgage Corp. filed its memorandum of law in opposition to

ted to certification of a Class in this matter, comprised of 425 employees of Defendant
by individual name and employee number on Schedule 1 to the stipulation who reported
luntarily separated from employment on June 24, 2022, but excluding any individuals who
certification stipulation, which was approved by the Court, also appointed Plaintiffs as the
laisner Roupinian LLP, Lankenau & Miller LLP and The Gardner Firm, P.C.) as Class
:e mailed to Class members on February 6, 2023, at the addresses provided by Defendant
ividual electing to exclude herself/himself from the Class was required to mail a completed
Counsel by March 13, 2023. There were no opt-outs.

agreed to mediate the disputed claims in the WARN Action.

vid H. Coar (Ret.) as the mediator and agreed to a mediation date of May 31, 2023. The
e Coar on May 22, 2023 and mediated the matter for a full day on May 31, 2023, via
ι resolution that day, they continued to negotiate in good faith and at arms' length, with the
: ensuing five months in an attempt to resolve the WARN Action.

risks and delays inherent in litigation.

latter are uncertain and the litigation is complex. The WARN Action involves numerous
ARN Act and its statutory and other legal defenses to complex facts. These issues include,
a covered employer under the WARN Act at the time of the alleged plant closing or mass
trine; (ii) whether the Defendants' WARN Act notice provided adequate notice to the Class
he WARN Act notice was defective under the WARN Act; (iv) whether the Defendants
: notice because of alleged unforeseeable business circumstances; (v) whether the
·ty (60) days notice because, at the time notice would otherwise have been required,

limitations of section 507(a)(4) of the Bankruptcy Code, and are eliminated or otherwise reduced to the extent other payments to Plaintiffs were made pursuant to, or that otherwise fall within, section 507(a)(4) of the Bankruptcy Code.

18. The Plaintiffs have the burden of proof on some of these issues and the Defendants have the burden on others, including any affirmative defenses, and the trial of this matter would likely be lengthy, adding to cost and potential delay, with an uncertain outcome.

19. On or about November 1, 2023, the Parties reached an agreement in principle, the terms of which were later memorialized in the Settlement Agreement which has been presented to the Court for approval. In general, the Settlement Agreement provides for a payment in the amount of $1,750,000 in settlement of the WARN Action. The Settlement Agreement provides that the Settlement Payment will be paid by the Liquidating Trustee to a settlement administrator of Class Counsel's choice within five (5) business days of the entry of an order approving the Settlement Agreement by the Court. The other essential terms of the Settlement Agreement are below.

### The Proposed Settlement

20. The following description of the proposed Settlement is only a summary. In the event of any difference between this summary and the terms of the Settlement, the terms of the Settlement shall control. You may secure a copy of the complete Settlement from Class Counsel Mary E. Olsen at the address shown below. The terms of the Settlement relevant to the Class Members may be summarized as follows:

### The Terms of the Settlement

21. In general, the Settlement Agreement requires the Liquidating Trustee to pay $1,750,000 (the "Settlement Amount") to the Settlement Administrator, chosen by Class Counsel, within five business days following final approval of the Settlement. The Settlement Administrator shall then promptly distribute the Settlement Amount as set forth in the Settlement Agreement. The Class Representatives shall, subject to Court approval, receive a one-time combined total payment of twenty-seven thousand dollars ($27,000) for their service on behalf of the Class Members ("Service Payments") to be allocated as follows: $7,000 to Lori Buckley[2] and $5,000 each to Gayle Zech, Roberta Martinez, Jennifer Jackson, and James Davies. The Service Payments will be made in addition to the Class Representatives' individualized settlement amounts and Class Counsel's Fees will not be deducted from the Service Payments. Class Counsel shall receive payment in the amount of one-third (1/3) of the Settlement Amount, after deduction of the Service Payments, ("Class Counsel's Fees") plus litigation costs and expenses related to the WARN Action ("Class Counsel's Expenses"). The remaining amount of the Settlement Amount shall be divided as shown on Schedule 1 to the Settlement. The projected net amount of your individualized share of the Settlement Amount is detailed on Exhibit A hereto. Note that this amount is an estimate and may be adjusted depending on Class Counsel's Expenses at the time of distribution. Class counsel expects any such adjustments to be minimal.[3] By accepting your portion of the Settlement Amount, you agree that you will be solely responsible for any and all tax liabilities stemming from the payment of your claim under the Settlement Agreement.

22. Any distributions that are not cashed or deposited within ninety (90) days of their date of issuance shall be deemed residual funds on the 91st day following the Settlement distribution and treated in accordance with the terms of the Settlement Agreement.

### Class Counsel's Recommendation

23. Class Counsel recommends the Settlement, believing that it is fair, reasonable and adequate to the Class.

### Release of Claims and Effect of Approval of Settlement Agreement

24. Except for the rights arising out of, provided for, or reserved in the Agreement, upon the payment of the Settlement Amount to the settlement administrator, the Class Members, for and on behalf of themselves, and their respective predecessors, successors, assigns, affiliates and subsidiaries (collectively, the "Releasing Parties"), will fully and forever release and discharge the Defendants, the Liquidating Trustee, the Trust, the Defendants' current and former directors, parents, subsidiaries, partners, members, lenders, accountants, attorneys, representatives, and all other agents, and all of their respective predecessors, successors and assigns, and the Cash Flow DIP Lender, the Prepetition Bridge Lender, and each of the Related Parties of each of the Cash Flow DIP Lender and Prepetition Bridge Lender (collectively, the "Released Parties"), of and from any and all claims, obligations, demands, rights, debts, liabilities, liens, actions and causes of action, costs, expenses, attorneys' fees and damages of whatever kind or nature, character, and description, whether in law or in equity, whether sounding in tort, contract, federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law, whether known or unknown, and whether anticipated or unanticipated, suspected or disclosed, which the Releasing Parties may now or hereafter may have against the Released Parties, which relate to or are based on the WARN Act or any federal, state or local law or regulation applying to plant closings (collectively, the "Released Claims").[4] The Released Parties waive any

---

[2] Buckley was selected by the United States Trustee to represent the WARN Claimants on the Committee of Unsecured Creditors and served in that capacity through Plan confirmation.
[3] The Projected Net Settlement Amounts were adjusted on Schedule 1 so that no Class Member's Projected Net Settlement Amount is less than $250.
[4] The Released Claims consist of any and all claims of any kind or nature whatsoever, at law, in equity, and otherwise, whether known or unknown, anticipated, suspected, or disclosed, which the Releasing Parties have or may have as of the Final Approval Date, which relate to or are based on the WARN Act or any federal, state or local law or regulation applying to plan closings. For avoidance of doubt, the following claims and/or rights shall not be released:

3

tinst Class Members arising under chapter 5 of the Bankruptcy Code or applicable state

### How to Object to the Settlement

roposed Settlement including Class Counsel's Fees and Class Counsel's Expenses and
it amount as shown on Exhibit A, you do not need to do anything. Following final Court
it, your share of the Settlement amount will be mailed to your last known address as
or to such address that you have updated with Class Counsel, in accordance with the
it Class Counsel does not have your current address, please promptly notify Class Counsel

    Mary E. Olsen, Esq.
    182 Saint Francis St, Suite 103
    Mobile, AL 36602

    (251) 415-4978

    molsen@thegardnerfirm.com

ieve that the proposed Settlement is unfair or inadequate or are dissatisfied with the amount
s Fees or Class Counsel's Expenses should not be approved, you may object to the
a detailed written statement bearing the caption of this action shown above on the first page
:d States Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd
nding copies of that statement, also by First Class US Mail, to (1) THE GARDNER FIRM,
AL 36602, Attention: Mary E. Olsen, Esq.; and (2) Dentons US LLP, 601 S. Figueroa
ention: Tania M. Moyron, Esq. **Objections must be mailed so as to be received no later
nd must include the caption of the action and your name, address, and telephone
if the basis for your objection and whether you wish to be heard personally or by
ties will be requesting binding Court approval of the Settlement and the award of**
:.

on or by counsel at the final hearing described below, if you so choose.

### tlement and Award Class Counsel's Fees and Class Counsel's Expenses

:ration and approval of the Settlement and the award of Class Counsel's Fees and Class
on December 29, 2023 at 1:00 p.m. (ET) before the Honorable Craig T. Goldblatt, United
3ankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor,
hat hearing may be adjourned without further notice. If you wish to determine if the hearing
: address shown above.

### Other Information

the Settlement or the WARN Action, you may contact Class Counsel Mary E. Olsen at
com.

:d the sending of this notice, that does not indicate, and is not intended to indicate, that the
ms or defenses asserted by the parties in the WARN Action.


)t write to or call the Court concerning this matter.

The Gardner Firm, P.C.
L A W Y E R S
Post Office Drawer 3103
Mobile, Alabama 36652

Rebecca L. Garretson
1822 E Bankhead Dr
Weatherford, TX 76086

## EXHIBIT A

| Projected NetShare of the Settlement Amount, After the Deduction of Service Payments, Class Counsel's Fees and Class Counsel Expenses | $3,779.82 |
|---|---|

To:        Rebecca Garretson
Manager:   Monica Pogue

Date:      03/08/2021
Subject:   2020-2021 Merit Increase

---

This letter outlines the details regarding your recent merit increase, which will be reflected on the 03/19/2021 paycheck:

| | |
|---|---|
| Current Salary: | $93,175 |
| Salary % Increase: | 0.00% |
| Actual Salary $ Increase: | $0 * |
| New Salary: | $93,175 |

*[handwritten: 7764.58 monthly]*

We appreciate your commitment and dedication to the organization and look forward to your future contributions. Delivering Excellence 2021!

Regards,

*[signature: C. Vacante]*

Cassie Vacante
SVP, Human Resources

---

* Actual salary increase amount may reflect a prorated figure based on an individual's hire date, days on a leave of absence, and/or date of last salary increase.



## 2020 Promotion Notification

12/11/2020

Rebecca L Garretson

Dear Rebecca,

Congratulations on your recent promotion! This letter outlines the details regarding your new role:

| | |
|---|---|
| Effective Date: | 12/12/2020 |
| Job Title: | Supervisor, Closing |
| Promotional Increase: | 51.4% |
| Salary: | $93,175       " MAX" PAY |
| Pay Frequency: | Bi-weekly (26 paychecks per year) |
| FLSA Status: | Exempt (salaried) |
| Incentive Compensation: | Eligible under the Ops Manager Incentive Plan at an annual target bonus of $20,000 (or $5,000 per quarter). Will remain eligible under the Ops Retention Bonus Plan. |

*Incentive compensation is not guaranteed and is subject to adjustments based on individual and/or company performance. Payouts may also be prorated based on time spent in the role.*

Report to:        Monica Pogue

We appreciate your commitment and dedication to the organization and look forward to your future contributions in this new role. Go Beyond 2020!

Regards,

*C. Vacante*

Cassie Vacante
SVP, Human Resources



# FGMC Manager Incentive Plan

**Effective Date:** The effective date of this incentive plan is August 1, 2020 and replaces any plans or terms previously in effect.

**Purpose:** The purpose of the Manager Incentive Plan is to reward performance for eligible supervisors, managers, and AVPs at First Guaranty Mortgage Corporation (FGMC) who meet and/or exceed company-defined goals and objectives.

**Eligibility:** All non-producing supervisors, managers, and AVPs in the following job families are eligible to participate in this plan: Channel Operations, Closing, Disclosure, Processing, Account Management, and Underwriting. Eligibility begins the first of the month following the employee's hire date. Employees must be actively employed and in good standing at the time of payout to receive any calculated incentive payments.

**Objective/Metrics:** The Manager Incentive Plan has an annual bonus target of $20,000 (or $5,000 per quarter). Potential payouts are weighted across three separate components: percent of channel production goal (50% weight), cycle time (30% weight), and quality defect (20% weight). The quarterly target payouts for each category at the "meets expectations" level include: $2,500 (channel production goal), $1,500 (cycle time), and $1,000 (quality defect). Incentive components are calculated separately and then added together to determine the final quarterly bonus payment.

| Quarterly Channel Production Goal Payout Structure – 50% Weight<br>Meets Expectations Target of $2,500/Quarter (or $5,000 x 50% weight) | | |
|---|---|---|
| Percent of Channel Goal | Payout % | Payout $ |
| 125.0%+ (Exceptional) | 110% | $2,750 |
| 110.0% - 124.9% (Exceeds Expectations) | 105% | $2,625 |
| 100.0% - 109.9% (Meets Expectations) | 100% | $2,500 |
| 80.0% - 99.9% (Needs Improvement) | 95% | $2,375 |
| < 80.0% (Unacceptable) | 0% | $0 |
| Quarterly Cycle Time Payout Structure: 30% Weight<br>Meets Expectations Target of $1,500/Quarter (or $5,000 x 30% weight) | | |
| Cycle Time (35 Cal Days) Processing/Fund Avg. | Payout % | Payout $ |
| < 30.0 (Exceeds Expectations) | 105% | $1,575 |
| 30.0 – 35.9 (Meets Expectations) | 100% | $1,500 |
| 36.0 – 40.9 (Needs Improvement) | 95% | $1,425 |
| 41.0 – 45.9 (Unacceptable) * temporary payout due to capacity | 90% | $1,350 |
| 46.0+ | 0% | $0 |
| Quarterly Quality Defect Payout Structure: 20% Weight<br>Meets Expectations Target of $1,000/Quarter (or $5,000 x 20% weight) | | |
| Quality Defect Rate "Net" 3% Target | Payout % | Payout $ |
| < 1.0% (Exceptional) | 110% | $1,100 |

| | | |
|---|---|---|
| 1.0% - 2.9% (Exceeds Expectations) | 105% | $1,050 |
| 3.0% - 3.9% (Meets Expectations) | 100% | $1,000 |
| 4.0%+ (Needs Improvement) | 0% | $0 |

*Processing Manager Incentive Calculation Example:*

Quarterly bonus target: $5,000 (or $20,000 annual)
Percent of channel goal for Q1: 120% (payout @ 105%)
Cycle time (35 calendar days) processing/funding average for Q1: 37 days (payout @ 95%)
Quality defect rate "net" 3% target for Q1: 2% (payout @ 105%)

| | | |
|---|---|---|
| Forecast Payout: | Target of $2,500 ($5,000 x 50% weight) $2,500 target x 105% = | $2,625.00 |
| Cycle Time Payout: | Target of $1,500 ($5,000 x 30% weight) $1,500 target x 95% = | $1,425.00 |
| Quality Defect Payout: | Target of $1,000 ($5,000 x 20% weight) $1,000 target x 105% = | $1,050.00 |
| Total Payout: | $2,625.00 + $1,425.00 + $1,050.00 = | $5,100.00 |

**Final Quarterly Payout: $5,100.00**



| Fill in this information to identify the case: | |
|---|---|
| Debtor | First Guaranty Mortgage Corporation |
| United States Bankruptcy Court for the: | District of Delaware (State) |
| Case number | 22-10584 |



Submitted 10/13/22

## Official Form 410
# Proof of Claim
04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies or any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

### Part 1: Identify the Claim

**1. Who is the current creditor?**
Garretson, Rebecca L.
Name of the current creditor (the person or entity to be paid for this claim)
Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**
☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?
Garretson, Rebecca L.
1822 E Bankhead Dr
Weatherford, TX 76086, United States

Contact phone 4692337100
Contact email rgarretson17@gmail.com

Where should payments to the creditor be sent? (if different)

Contact phone _____
Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):
_____

**4. Does this claim amend one already filed?**
☒ No
☐ Yes. Claim number on court claims registry (if known) _____   Filed on ____ / ____ / ____
                                                                              MM    DD    YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☒ No
☐ Yes. Who made the earlier filing? _____

22105842209010441260000130

Official Form 410                    Proof of Claim                    page 1

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

6. Do you have any number you use to identify the debtor?
   - ☐ No
   - ☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: **22-10584**

7. How much is the claim? $ **21231.75**    Does this amount include interest or other charges?
   - ☒ No
   - ☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. What is the basis of the claim?
   Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
   Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
   Limit disclosing information that is entitled to privacy, such as health care information.

   **Services performed wages, 401K hardship withdrawal and medical insurance**

9. Is all or part of the claim secured?
   - ☒ No
   - ☐ Yes. The claim is secured by a lien on property.

   **Nature or property:**
   - ☐ Real estate: If the claim is secured by the debtor's principle residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
   - ☐ Motor vehicle
   - ☐ Other. Describe: _____

   **Basis for perfection:** _____
   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

   Value of property:    $_____
   Amount of the claim that is secured:    $_____
   Amount of the claim that is unsecured:    $_____ (The sum of the secured and unsecured amount should match the amount in line 7.)

   Amount necessary to cure any default as of the date of the petition:    $_____

   Annual Interest Rate (when case was filed) _____ %
   - ☐ Fixed
   - ☐ Variable

10. Is this claim based on a lease?
    - ☒ No
    - ☐ Yes. Amount necessary to cure any default as of the date of the petition.    $_____

11. Is this claim subject to a right of setoff?
    - ☒ No
    - ☐ Yes. Identify the property: _____

Official Form 410    Proof of Claim    page 2

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | | Amount entitled to priority |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ No<br>☑ Yes. Check all that apply: | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☑ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ 15529.17 |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☑ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ 4308.73 |
| | ☑ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $ 1393.85 |

*Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

| 13. Is all or part of the claim pursuant to 11 U.S.C. § 503(b)(9)? | ☑ No<br>☐ Yes. Indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.<br><br>$ _____ |
|---|---|

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgement that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   10/13/2022
                    MM / DD / YYYY

/s/Rebecca L Garretson
Signature

**Print the name of the person who is completing and signing this claim:**

Name     Rebecca L Garretson
         First name    Middle name    Last name

Title    Closing Supervisor

Company  First Guaranty Mortgage Company
         Identify the corporate servicer as the company if the authorized agent is a servicer.

Address

Contact phone   469-233-7100         Email   rgarretson17@gmail.com

# KCC ePOC Electronic Claim Filing Summary

For phone assistance: Domestic (888) 647-1742 | International (310) 751-2626

| | |
|---|---|
| **Debtor:** 22-10584 - First Guaranty Mortgage Corporation **District:** District of Delaware | |
| **Creditor:** Garretson, Rebecca L. 1822 E Bankhead Dr Weatherford, TX, 76086 United States **Phone:** 4692337100 **Phone 2: Fax: Email:** rgarretson17@gmail.com | **Has Supporting Documentation:** Yes, supporting documentation successfully uploaded **Related Document Statement:** |
| | **Has Related Claim:** No **Related Claim Filed By:** |
| | **Filing Party:** Creditor |
| **Other Names Used with Debtor:** | **Amends Claim:** No **Acquired Claim:** No |
| **Basis of Claim:** Services performed wages, 401K hardship withdrawal and medical insurance | **Last 4 Digits:** Yes - 22-10584 | **Uniform Claim Identifier:** |
| **Total Amount of Claim:** 21231.75 | **Includes Interest or Charges:** No |
| **Has Priority Claim:** Yes | **Priority Under:** 11 U.S.C. §507(a)(4): 15529.17 11 U.S.C. §507(a)(5): 4308.73 11 U.S.C. §507(a)( ): 1393.85 |
| **Has Secured Claim:** No | **Nature of Secured Amount:** **Value of Property:** |
| **Amount of 503(b)(9):** No | **Annual Interest Rate:** |
| **Based on Lease:** No | **Arrearage Amount:** **Basis for Perfection:** |
| **Subject to Right of Setoff:** No | **Amount Unsecured:** |
| **Submitted By:** Rebecca L Garretson on 13-Oct-2022 3:18:47 p.m. Eastern Time **Title:** Closing Supervisor **Company:** First Guaranty Mortgage Company | |

VN: 4E6A476AE457442C0DC4F468F57BC622





